OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE

STANLEY E. LEVIN          1152-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com


SHELBY ANNE FLOYD          1724-0
MEI-FEI KUO                7377-0
65-1230 Mamalahoa Hwy., Suite C21
Kamuela, Hawaii 96743
Telephone:  (808) 885-6762
Fax:  (808) 885-8065
E-mail: sfloyd@ahfi.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor, <br><br> Plaintiffs, <br><br> vs. <br><br> DEPARTMENT OF EDUCATION, State of Hawai'i, and ALVIN RHO, in his official capacity as West Hawai'i District Superintendent, <br><br> Defendants. | CIVIL No. CV 04-00442 HG/BMK (Other Civil Action) CONSOLIDATED <br><br> PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANT DEPARTMENT OF EDUCATION; EXHIBITS "1" – "18" |

EXHIBIT __A__          001

ANN KIMBALL WILES and
STANLEY BOND, individually and as
next friend of their son, BRYAN
WILES-BOND, a minor,

               Plaintiffs,

   vs.

DEPARTMENT OF EDUCATION,
State of Hawai'i,
               Defendant.

CIVIL NO. 05-00247 JMS/BMK
(Other Civil Action)
CONSOLIDATED

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANT DEPARTMENT OF EDUCATION

TO:    Lono P.V. Beamer
        Holly T. Shikada
        Deputy Attorneys General
        235 S. Beretania Street, Room 304
        Honolulu, Hawaii 96813

        Attorneys for Defendants

Plaintiffs, above named, by and through his counsel, DAVIS LEVIN LIVINGSTON GRANDE, hereby serves upon Defendant Home Depot USA, Inc. request for admissions pursuant to Rule 36 of the *Federal Rules of Civil Procedure*. Plaintiffs have requested that two copies of the request for admissions be served on the undersigned attorney within thirty (30) days after the date of service.

Pursuant to Rule 26(e) of the *Federal Rules of Civil Procedure*, the request for admissions shall be considered continuing and should admissions or denials to same be changed before trial of this action, you are requested to furnish

such different admissions or denials in writing and under oath, or it will be assumed that the admissions or denials originally given continue as your answers to said request for admissions.

Pursuant to *Federal Rules of Civil Procedure* 37(c), Plaintiffs intend to apply to the Court for an Order requiring Defendants to pay Plaintiffs' reasonable expenses, including attorney's fees, incurred in making proof of any matter which Defendant Department of Education denies.

DATED: Honolulu, Hawaii, August 26, 2005.


_____
STANLEY E. LEVIN

Attorney for Plaintiffs

3

## REQUEST FOR ADMISSIONS

Plaintiffs request that Defendant Department of Education admit or deny the following request for admissions:

REQUEST FOR ADMISSION NO. 1:

Attached as Exhibit "1" is a true and authentic copy of the "Decision and Order" made by Hearing Officer Richard Chun on May 21, 2001 that sets forth what the Petitioners and the Respondents stipulated to on May 7, 2001.

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 2:

Attached as Exhibit "1" is a true and authentic copy of the "Decision and Order" made by Hearing Officer Richard Chun on May 21, 2001 that sets forth what the Petitioners and the Respondents stipulated to on May 7, 2001 which sets forth the agreements of the Plaintiffs and of the authorized representatives of the Hawaii State Department of Education.

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 3:

At issue in the hearing of May 7, 2001 was the Department's failure to follow and implement the Individualized Education Program dated January 29, 2001 and the coordinated service plan dated October 17, 2000 for Bryan Wiles-Bond.

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 4:

At the May 7, 2001 hearing the parties stipulated as follows:

1.    The IEP dated January 20, 2001 and the Coordinated Service Plan dated October 17, 2000 shall be followed.

2.    Notwithstanding any other provision in the IEP or CSP, the Department of Education and/or the Department of Health, State of Hawaii, shall hire and train an adult educational aide for S no later than May 21, 2001.  The training for the adult educational aide shall include instruction in the TEACCH, DTT, and PECS methods for behavioral management and educational instruction. Dr. Jana Ortiz, Ms. Kim Smalley, or someone with similar qualifications and/or experience, shall provide the training for the adult educational aide.

3.    The adult educational aide shall provide services to S during the normal school hours.  Beginning May 31, 2001, the adult educational aide shall also provide after school services to S from 4:00 p.m. to 7:00 p.m. on all regular school days.  The adult educational aide shall provide the services on a consistent basis with the goal of completing all tasks and documentation required b y the TEACCH, DTT, and PECS methods of behavioral management and educational instruction.  However, the failure to complete the trials and documentation required by TEACCH, DTT, and/or PECS on a particular day due to cancellation of session by parents, absences, illnesses or reasons beyond control shall not be considered a breach of Respondent's obligation under this Decision and Order.

4.    The Department of Education and/or Department of Health shall provide an adult educational aide described above for S using the TEACCH, DTT, and PECS methods for behavioral management and educational instruction until October 1, 2001.  For each day that an after school educational aide is not provided for S after May 21, 2001, the Department of Education and/or Department of Health shall be obligated to make up those days beginning after October 1, 2001.

5.    In the event the adult educational aide does not complete his/her services for S during the time periods set forth herein, for any reasons whatsoever, the Department of Education and/or the Department of Health shall locate, secure and have in place a suitable replacement within two weeks from the date of the termination.

6.    In addition to the TEACH, DTT, and PECS methods, the Department of Education and the Department of Health shall be allowed to continue to use or implement any other methodology or services that they may deem appropriate for S.

7.    Petitioners and Respondent agreed that Petitioners shall be entitled to reasonable fees and costs in this matter.  In the event the parties cannot agree on the amount, either party may apply to a court of competent jurisdiction for relief.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 5:

Attached as Exhibit "2" is a true, correct and authentic copy of the complaint in Civil No. CV02-00101 SOM/BMK filed by the Plaintiffs here against the Defendant Department of Education and the Department of Health on February 15, 2002.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 6:

The Complaint was made necessary by the Department of Education's failure to comply with the obligations set forth in the Decision and Order dated May 21, 2001.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 7:

Attached as Exhibit "3" is a true, correct and authentic copy of the Release and Settlement Agreement which was intended by the Department to halt all legal proceedings under Civil No. CV02-00101 SOM/BMK.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 8:

In Exhibit "3" the Settlement Agreement required the Department to:

1.    Therapeutic Aide ("TA") Services

a.    By August 1, 2002, the State shall hire, train, and have in place the TAs needed to consistently provide Bryan with not less than ninety-five percent (95%) per calendar month of the TA hours to which he is entitled.[1]

b.    The State shall continue to provide TA services through its contract with the current service provider and/or its successor.

c.    By August 1, 2002, the State shall procure TA services for Bryan to be provided by qualified individuals through an "expedited contract process". Under this expedited contract process, the State shall pay qualified individuals a minimum of $20.00 per hour, and may offer effective bonus/incentive payments to encourage retention of the TAs for three (3) months or longer. The State shall pay these TAs within 30 days of the TAs' submittal of properly verified time sheets to the State.

d.    To assist the State in meeting the requirements of Paragraph II.c above, the Bonds shall be authorized to advertise for TAs in State and national newspapers and other publications, with the costs of said advertising to be paid by the State, up to a total of $1,000.00 per year. The Bonds may refer potential TAs identified through advertising or other means to the State. The State shall determine the individuals' qualifications and pay level, conduct criminal background checks, and require that the individuals undergo and pass physical examinations prior to being hired.

e.    By August 1, 2002, the State shall create a pool of substitute TAs who are qualified and trained to provide services to Bryan. This pool of substitutes shall consist of a maximum of three individuals, who shall be subject to the Bonds' reasonable approval as to these individuals' presence in the home (but not as to their qualifications). Before providing services to Bryan, each substitute TA shall have reviewed Bryan's IEP, shall be trained to implement Bryan's IEP, and shall have observed Bryan receiving TA services for a minimum of two (2) hours in school and a minimum of two (2) hours in the home. These substitute TAs shall be available to provide services to Bryan on an occasional basis when his regular TAs are unavailable.

---

[1] Under his current IEP, Bryan is entitled to 68.25 hours of TA services per week, consisting of the following:
Seven and one-fourth (7.25) hours of in-school TA services every weekday;
Four (4) hours of after-school TA services every weekday; and
Six (6) hours of weekend TA services every Saturday and Sunday.

f.    The above-described TA services shall be provided by qualified TAs who meet the standards for a Level III TA, and are trained in DTT, TEACCH, and PECs methods for autistic children.

g.    The TAs shall complete Bryan's daily behavioral logs and daily log sheets showing the number and completion percentage of DTT and TEACCH trials utilized, and shall complete the DTT log for each trial. Each TA shall sign and date the entries in the daily behavioral logs and daily log sheets.

h.    Oversight and monitoring services for the TAs shall continue to be provided by the current autism consultants contracted by the State, or equally trained personnel. The State is not precluded from removing the current autism consultants and/or their successors for malfeasance, misfeasance, or nonfeasance of their duties.

i.    When school is not in session, either during the regular or extended school year, the State shall provide TA services to Bryan at his home or at another setting deemed appropriate by the IEP team, including a school classroom. The State shall provide Bryan with curb-to-curb transportation to the school or other setting.

On weekends and on State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under Paragraphs II.A.1.e. above), the Bonds shall be responsible for ensuring that at least one of them or another responsible adult is in the home during those times. On weekdays, other than State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under Paragraphs II.A.1.c and II.A.1.e above), the State shall be responsible for providing and paying for an additional adult to be present when either of the parents is unable to be in the home during those times; contingent upon the Bonds providing the State with at least two (2) business days' prior notice of the need for an additional adult to be in the home with Bryan and his TA. Any such individuals shall be subject to the Bonds' reasonable approval as to those individuals' presence in the home. The State shall conduct criminal background checks on these individuals, and shall pay these individuals within 30 days of the individuals' submittal of properly verified time sheets to the State.

The Bonds agree to execute an "assumption of risk" provision to permit: (1) specific TAs to be alone with Bryan in the home while providing services, if acceptable to the specific TA's contracting agency, if any; and (2) an additional adult to be present in the home with Bryan and his TA.

2.    <u>Additional Occupational and Speech/Language Therapy.</u>

a.    Pursuant to his IEP, Bryan currently receives two half-hour sessions per week of occupational therapy and two half-hour sessions per week of speech/language therapy.

8

**008**

b.    For an eight-week period, starting as of July 15, 2002, Bryan shall receive two additional half-hour sessions per week of occupational therapy and two additional half-hour sessions per week of speech/language therapy. After this eight-week period, if deemed appropriate by Bryan's IEP team, with input from Bryan's current autism consultants or their successors, the additional therapy sessions shall be included in Bryan's IEP.

_____ ADMIT          _____ DENY


REQUEST FOR ADMISSION NO. 9:

Since October 2003 to December 2004, the State has failed to hire, train, and have in place the TAs needed to consistently provide Plaintiff with not less than ninety-five percent (95%) per calendar month of the TA hours to which he was entitled.

_____ ADMIT          _____ DENY


REQUEST FOR ADMISSION NO. 10:

Since October 2003 to December 2004, the State has failed to hire, train, and have in place the TAs needed to consistently provide Plaintiff with seventy-five percent (75%) per calendar month of the TA hours to which he was entitled.

_____ ADMIT          _____ DENY


REQUEST FOR ADMISSION NO. 11:

An IEP was developed for Bryan on January 9, 2004.

_____ ADMIT          _____ DENY

9

REQUEST FOR ADMISSION NO. 12:

That January 9, 2004 IEP required 1:1 Adult instructional support on Monday, Tuesday, Thursday and Friday at a frequency of 6.5 hours and 5.5 hours on Wednesday, extended school day with 1:1 Adult instructional support on Monday, Tuesday, Thursday and Friday at a frequency of 4.5 hours and 5.5 hours on Wednesday and 1:1 Adult instructional support for extended week of 6.0 hours two times per week.

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 13:

Attached as Exhibit "4" is an authentic, true and accurate copy of a letter signed by Jerilynn Ono Hall dated July 2, 2002 and addressed to Pamela A. Toguchi, Esq. in her capacity as Deputy Attorney General, Department of the Attorney General, who represented the Department of Education at the May 7, 2001 hearing.

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 14:

Pamela A. Toguchi did not provide a written response to Exhibit "4".

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 15:

Attached as Exhibit "5" is an authentic, true and accurate copy of a letter signed by Jerilynn Ono Hall dated July 19, 2002 and addressed to Pamela A. Toguchi, Esq. in her capacity as Deputy Attorney General, Department of the Attorney General, who represented the Department of Education at the May 7, 2001 hearing.

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 16:

Attached as Exhibit "6" is an authentic, true and accurate copy of the "School Psychiatric Evaluation" by Dr. Richard Mesco dated October 19, 1999 and signed by Dr. Richard Mesco on October 19, 1999.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 17:

Attached as Exhibit "7" is an authentic, true and accurate copy of a sign-in log prepared by Kim Wiles Bond to accurately show the attendance of the skills trainers assigned to her son during the period August 5, 2003 through March 8, 2004.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 18:

Attached as Exhibit "8" is an authentic, true and accurate copy of the Behavior Management Plan developed for the Department of Education and used by it during the period of August, 2003 and February, 2004.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 19:

Attached as Exhibit "9" is an authentic, true and accurate copy of the IEP developed for Bryan Wiles-Bond as of January 28, 2002.

_____ ADMIT    _____ DENY

REQUEST FOR ADMISSION NO. 20:

Attached as Exhibit "10" is an authentic, true and accurate copy of the "discussion points that need to be addressed" agreed to by the Department of Education and the parents dated September 9, 2003.

_____ ADMIT    _____ DENY

11

011

REQUEST FOR ADMISSION NO. 21:

The Principal at Kealekehe Intermediate School on or about November 12, 2003 is Robert Gentzel.

_____ ADMIT    _____ DENY


REQUEST FOR ADMISSION NO. 22:

Attached as Exhibit "11" is an authentic, true and accurate copy of the letter signed by Kim Wiles-Bond and dated November 13, 2003 with the salutation to Bob who is Robert Gentzel.

_____ ADMIT    _____ DENY


REQUEST FOR ADMISSION NO. 23:

Attached as Exhibit "12" is an authentic, true and accurate copy of the Alaka'i Na Keki quarterly report prepared by Dr. Dru Copeland which reports Bryan's progress toward each IEP/MP Goals(s)/Objective(s) during the second school quarter of the months of October, November, and December, 2003.

_____ ADMIT    _____ DENY


REQUEST FOR ADMISSION NO. 24:

Attached as Exhibit "13" is an authentic, true and accurate copy of a letter signed by Holly T. Shikada dated November 28, 2003 and addressed to Shelby Anne Floyd, Esq.

_____ ADMIT    _____ DENY

012

REQUEST FOR ADMISSION NO. 25:

Attached as Exhibit "14" is an authentic, true and accurate copy of a letter signed by Shelby Anne Floyd dated November 21, 2003 and addressed to Joelle Chiu, Esq. in her capacity as Deputy Attorney General, Department of the Attorney General, who represented the Department of Education.

_____ ADMIT          _____ DENY


REQUEST FOR ADMISSION NO. 26:

Attached as Exhibit "15" is an authentic, true and accurate copy of a letter signed by Lono P.V. Beamer dated December 17, 2003 and addressed to Ms. Shelby Floyd, Esq.

_____ ADMIT          _____ DENY

REQUEST FOR ADMISSION NO. 27:

Attached as Exhibit "16" is an authentic, true and accurate copy of the quarterly report for the quarter consisting of April, May, June, July, 2003 prepared by Dr. Dru Copeland and included with the reports are authentic, true and accurate copies of the Addendum to the Quarterly Report, a House Boundaries Plan, a training plan, a list of sight words for Bryan, and a three-paged sight-word worksheet—all prepared by Dr. Dru Copeland.

_____ ADMIT          _____ DENY


REQUEST FOR ADMISSION NO. 28:

Attached as Exhibit "17" is an authentic, true and accurate copy of a letter signed by Shelby Anne Floyd dated December 2, 2003 and addressed to Holly Shikada, Esq. in her capacity as Deputy Attorney General, Department of the Attorney General, who represented the Department of Education.

_____ ADMIT          _____ DENY

013

REQUEST FOR ADMISSION NO. 29:

Attached as Exhibit "18" is an authentic, true and accurate copy of a letter from Kim Wiles-Bond to Dr. Dru Copeland dated October 1, 2003. That letter accurately sets forth the events that occurred as the direct result of the state not having a pool of substitute skills trainers who are qualified and available to help Bryan.

_____ ADMIT        _____ DENY

**014**

STATE OF HAWAII DEPARTMENT OF EDUCATION

CHAPTER 36 HEARING OFFICER

In the Matter of the                    )
Arbitration Between                     )
                                        )
                                        )
                                        )
                    Student,            )        Decision and Order
                                        )
    and                                 )
                                        )
STATE OF HAWAII DEPARTMENT              )
OF EDUCATION,                           )
                                        )
                    Respondent.         )
_____)

<u>Background</u>

        This case involves a dispute over the failure to provide educational services for a 9-year old male student, who will be referred to as "S", under the Individuals with Disabilities Education Act, 20 U.S.C. 1415(e) and Chapter 56 of the Hawaii Administrative Rules.

        The request for a hearing was submitted to Respondent, the Department of Education of the State of Hawaii, by Petitioners on February 27, 2001 and received by Respondent on March 2, 2001. On March 9, 2001, this Hearing Officer was assigned to conduct an impartial hearing.

        On March 28, 2001, a pre-hearing conference was held and the hearing was scheduled to begin on April 9, 2001.  There were

EXHIBIT 1

several continuances of the hearing date by agreement, with the hearing being held on Monday, May 7, 2001.

The May 7, 2001 hearing was held by telephone conference; Petitioners were not present, but were represented by the counsel, Shelby Anne Floyd, Esq.; Respondent was represented by Pamela A. Toguchi, Deputy Attorney General. Judith Radwick, the Hawaii District Educational Specialist for the Department of Education, was also present.

<u>Issue</u>

At issue was the failure of Respondent to follow and implement the Individualized Education Program ("IEP") dated January 29, 2001 and the Coordinated Service Plan ("CSP") dated October 17, 2000, for S. In part, the plans recommended that services be provided to S including, but not limited to, the following techniques for use with autistic children: (1) Treatment and Education of Autistic and related Communication Handicapped CHildren (TEACCH), Discrete Trial Training (DTT), and Picture Exchange Communication System (PECS).

<u>Findings and Order</u>

At the May 7, 2001 hearing, the parties, through their respective representatives, stipulated and IT IS SO ORDERED as follows:

-2-

1.    The IEP dated January 29, 2001 and the CSP dated October 17, 2000, for S, shall be followed.

2.    Notwithstanding any other provision in the IEP or CSP, the Department of Education and/or the Department of Health, State of Hawaii, shall hire and train an adult educational aide for S no later than May 21, 2001.  The training for the adult educational aide shall include instruction in the TEACCH, DTT, and PECS methods for behavioral management and educational instruction. Dr. Jana Ortiz, Ms. Kim Smalley, or someone with similar qualifications and/or experience, shall provide the training for the adult educational aide.

3.    The adult educational aide shall provide services to S during the normal school hours.  Beginning May 31, 2001, the adult educational aide shall also provide after school services to S from 4:00 p.m. to 7:00 p.m. on all regular school days.  The adult educational aide shall provide the services on a consistent basis with the goal of completing all tasks and documentation required by the TEACCH, DTT, and PECS methods of behavioral management and educational instruction.  However, the failure to complete the trials and documentation required by TEACCH, DTT, and/or PECS on a particular day due to cancellation of session by parents, absences, illnesses or reasons beyond control shall not be

017

considered a breach of Respondent's obligation under this Decision and Order.

4.    The Department of Education and/or Department of Health shall provide an adult educational aide described above for S using the TEACCH, DTT, and PECS methods for behavioral management and educational instruction until October 1, 2001. For each day that an after school educational aide is not provided for S after May 21, 2001, the Department of Education and/or Department of Health shall be obligated to make up those days beginning after October 1, 2001.

5.    In the event the adult educational aide does not complete his/her services for S during the time periods set forth herein, for any reasons whatsoever, the Department of Education and/or the Department of Health shall locate, secure and have in place a suitable replacement within two weeks from the date of the termination.

6.    In addition to the TEACCH, DTT, and PECS methods, the Department of Education and the Department of Health shall be allowed to continue to use or implement any other methodology or services that they may deem appropriate for S.

7.    Petitioners and Respondent agreed that Petitioners shall be entitled to reasonable fees and costs in this matter. In

-4-

the event the parties cannot agree on the amount either party may

apply to a court of competent jurisdiction for relief.

Notice of Appeal Rights

      This Decision and Order shall be binding on all parties to this hearing and is the final administrative decision.  Either party aggrieved by the findings and decision has the right to appeal this decision to a court of competent jurisdiction.  The appeal must be made within 30 days after receipt of this decision.

      DATED: Honolulu, Hawaii, May 21, 2001.

RICHARD C.F. CHUN
Hearing Officer

Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys at Law
A Law Corporation

SHELBY ANNE FLOYD    1724-0
JERILYNN ONO HALL    5552-1
65-1235A Opelo Road, Suite 5
Kamuela, Hawai'i  96743
Telephone:  (808) 885-6762

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 1 5 2002

at ___ o'clock and ___ min. ___ M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, by and on behalf of their son, BRYAN WILES-BOND, a minor<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i, DEPARTMENT OF HEALTH, State of Hawai'i,<br><br>　　　　　Defendants. | Civil No. C V 0 2 - 0 0 1 0 1 SOM<br>COMPLAINT; SUMMONS IN A CIVIL ACTION<br><br>BMK |

## COMPLAINT

### I.    INTRODUCTION

　　　　1.    This action is brought by Plaintiffs ANN KIMBALL WILES and

STANLEY BOND ("Plaintiffs"), who are the parents of Bryan Wiles-Bond, an autistic 10-

year-old boy, on behalf of themselves and Bryan.

EXHIBIT 2

184033/6515-1

020

2.      The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, requires that educational agencies provide children with disabilities a free appropriate public education ("FAPE") with special education and related services designed to meet their unique needs.

3.      Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 729 ("Section 504"), prohibits discrimination against the disabled in any program receiving federal funds.

4.      On May 24, 1994, the United States District Court for the District of Hawai'i entered an Order Granting In Part and Denying In Part Plaintiffs' Motion for Summary Judgment and Granting In Part and Denying In Part Defendants' Motion for Dismissal Or For Summary Judgment, holding that the State of Hawai'i has "systematically failed to provide required and necessary educational and mental health services to qualified handicapped children of the State of Hawai'i in violation of the Individuals with Disabilities Education Act and the Rehabilitation Act of 1973."

5.      Defendant the Department of Education, State of Hawai'i (the "DOE") has failed to provide Bryan with the specialized services set forth in his Individualized Education Plan ("IEP") and in a May 7, 2001 stipulation, thereby depriving him of a FAPE.

## II.    JURISDICTION

6.      This Court has jurisdiction over this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e), and the Rehabilitation Act of 1973, 29 U.S.C. § 729.

III.    PARTIES

7.    Bryan Wiles-Bond is a minor who currently attends a public school in the State of Hawai'i.

8.    Ann Kimball Wiles and Stanley Bond are Bryan's natural parents. They have standing under federal law to pursue injunctive relief on behalf of Bryan and, as next friends of Bryan, have standing to assert claims on his behalf as well as on behalf of themselves.

9.    Plaintiffs are citizens of the State of Hawai'i and residents of the County of Hawai'i, State of Hawai'i.

10.    The DOE is the state educational agency under 20 U.S.C. 1400 *et. seq.*, and is responsible for the identification of special education needs and the provision of services to children in the public school system who are disabled and in need of special education. The DOE receives federal funds for its special education programs.

IV.    FACTUAL ALLEGATIONS

11.    Bryan, who was born on October 28, 1991, is the youngest child of Ann Kimball Wiles and Stanley Bond. At age 2, Bryan was diagnosed with pervasive developmental delay and hyperactivity and, at age five or six, he was labeled autistic.

12.    Autism is a developmental disability that significantly affects verbal and nonverbal communication and social interaction as well as a child's educational performance. Although no cure for autism exists, the condition is best treated with early diagnosis, intervention, and education.

13.    Bryan has been enrolled in the Hawai'i public school system since his family moved to Hawai'i in 1999.

184033/6515-1                                  3

022

14.    On September 1, 2000, the DOE, the Department of Health ("DOH"), Bryan's parents, and other members of the IEP team (collectively, the "IEP Team") met to develop an IEP for Bryan (the "September 2000 IEP"). An IEP is a written statement for a disabled child that identifies educational goals and the means to achieve those goals.

15.    Among other things, the September 2000 IEP required one-on-one assistance from a trained therapeutic aide ("TA") during the entire school day and after school.

16.    A Coordinated Service Plan dated October 17, 2000 ("October 2000 CSP") stated that "Bryan should be receiving 1:1 service during the school day to work on D.T.T. goals & objectives. Bryan also receives weekend T.A. work on D.T.T. and is in need for after-school intervention."

17.    Between September 2000 and December 2000, Bryan had three different TA's. From December 5, 2000 to January 9, 2001, Bryan did not have any TAs. Thus, the DOE failed to effectively and fully implement the September 2000 IEP or the October 2000 CSP.

18.    The IEP Team met again in January 2001. The IEP developed at that meeting identified Bryan's needs as "physically and visually structured classroom, visual schedule, discrete repetitious teaching to learn new skills, 1:1 instruction, 1:1 supervision." The IEP specified "1:1 instruction and an individualized program," including "full day 1:1 services" and activities using the Treatment and Education of Communication-Handicapped Children method ("TEACCH method"), Discrete Trials Training ("DTT"), and the Picture Exchange Communications System ("PECS").

19.    On February 27, 2001, Bryan's DOH care coordinator observed

184033/6515-1                                4

023

that "[t]he impact of no 1:1 has created an environment that does not create a conducive learning environment."

20. On February 27, 2001, Bryan's parents submitted a request to the DOE for a due process hearing pursuant to 20 U.S.C. § 1415(e), identifying several issues to be decided. They were:

a. Failure to provide a trained Therapeutic Aide for 1:1 services specified in the IEP; and as a result

b. Failure to provide speech services as identified in the IEP insofar as PECS was not being provided; and

c. Failure to implement the Discrete Trials Training and TEACCH Programs specified in the IEP.

21. At a May 7, 2001 Chapter 56 Hearing before hearing officer Richard Chun, the parties placed their stipulated hearing decision on the record. The terms of the stipulation were to be in effect from May 7 through October 1, 2001.

22. Hearing officer Richard Chun set forth the terms of the parties' stipulation in a Decision and Order dated May 21, 2001. Among other things, the Decision and Order provided as follows:

a. The IEP dated January 29, 2001 and the CSP dated October 17, 2000 shall be followed;

b. The DOE and/or DOH shall hire and train an adult EA for Bryan no later than May 21, 2001, with the training to include instruction in the TEACCH, DDT, and PECS methods for behavioral management and educational instruction;

c. The EA shall provide services to Bryan during normal school hours and, beginning May 31, 2001, the EA shall also provide after-school services to Bryan

from 4:00 p.m. to 7:00 p.m. on regular school days;

d.      For each day after May 21, 2001 that the DOE and/or DOH did not provide an EA for Bryan, the DOE and/or DOH shall be obligated to make up those days beginning after October 1, 2001; and

e.      If the EA does not complete his or her services for Bryan during the required time periods, the DOE and/or DOH shall locate, secure and have in place a suitable replacement within two weeks from the date of the termination.

23.      From May 29 through August 2, 2001 Bryan had three different in-school TAs, an after-school TA for only three days, and no weekend TA.  Two of the three in-school TAs were located by Plaintiffs rather than the DOE.  The DOE located the third TA, who worked for only three days in June 2001.

24.      During the May 7 to October 1, 2001 period covered by the Stipulation, Bryan did not have an in-school TA for at least 53[1] days, did not have an after-school TA (from 4 to 7 p.m.) for all but three days[2], and had a weekend TA on an irregular schedule.   A full-time in-school TA started on September 28, 2001 and continues to work with Bryan as of the date of this Complaint.   Since October 15, 2001, Bryan has had an after-school TA for two hours each on Mondays, Wednesdays, and Fridays.  Subsequently, an after-school TA was added for two hours each on Tuesdays and Thursdays.

25.      Although the Stipulation obligated the DOE and/or the DOH to

---

[1]  This figure does not include days on which the TAs were absent from school.

[2]  Cheryl Mark, who was Bryan's TA during the summer of 2001, worked from 8 a.m. to 4 p.m.; however, Bryan did not have a TA from 4 - 7 p.m., as provided in the Stipulation.

make up each day between May 7 and October 1, 2001 for which Bryan was not provided with an after-school educational aide, since October 1, 2001, the DOE and/or the DOH have refused to fully make-up those days.

## V.    FIRST CLAIM FOR RELIEF - Injunctive Relief

26.    Plaintiffs realleges and incorporates the allegations of paragraphs 1-25.

27.    Federal law requires state agencies to provide a FAPE to a child with a disability.

28.    Bryan suffers from autism and is disabled under the IDEA and Section 504.

29.    In *Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 883 (9th Cir. 2001), the Court of Appeals held as follows:

> Although autism manifests itself in different ways, its symptoms in children are often measurable by eighteen months of age. The main characteristics that differentiate autism from other developmental disorders include "behavioral deficits in eye contact, orienting to one's name, joint attention behaviors (e.g., pointing, showing), pretend play, imitation, nonverbal communication, and language development." . . . Early diagnosis is crucial because education (of children as well as of parents and teachers) is the primary form of treatment, and the earlier it starts, the better. Education covers a wide range "of skills or knowledge--including not only academic learning, but also socialization, adaptive skills, language and communication, and reduction of behavior
>
> problems--to assist a child to develop independence and personal responsibility. "
>
> . . .
>
> [I]ntensive early intervention "makes a clinically significant difference for many children." All of the models presented "positive and remarkably similar findings, which included better-than-expected gains in IQ scores, language, autistic symptoms, future school placements, and several measures of social behavior." Further, "at least two retrospective studies

184033/6515-1

have found less restrictive placement outcomes for children who began intervention at earlier rather than later ages." Thus, the available research strongly suggests that intensive early intervention can make a critical difference to children with autistic disorders. (citations omitted)

30.    For special education and related services to meet the requirement of providing a child with a FAPE, they must:

a.    Be provided at public expense;

b.    Meet the standards of the State DOE;

c.    Include an appropriate elementary school education in Hawai'i; and

d.    Be provided in conformity with the child's IEP.

31.    The DOE has failed to provide Bryan with a FAPE in conformity with Bryan's IEP, his CSP, and the Stipulation, and is therefore in violation of federal law. Bryan has been damaged and will continue to be damaged by the DOE's failure to provide services mandated by law, and therefore is entitled to injunctive relief.

## V.    SECOND CLAIM FOR RELIEF - Section 504

32.    Plaintiffs realleges and incorporates the allegations of paragraphs 1-31.

33.    The Rehabilitation Act, 29 U.S.C. 729, prohibits the DOE, which receives Federal financial assistance, from discriminating against handicapped individuals in the provision of an equal educational opportunities, and requires the DOE to provide qualified students with disabilities with a FAPE.

34.    The DOE and its agent the Department of Health (DOH) have repeatedly been informed of the need to hire and train an adequate number of TAs to provide services to autistic children like Bryan. The DOE and DOH have intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan

184033/6515-1

8

027

resulting from the lack of trained and consistent TAs.

35.    Since entering into the May 7, 2001 Stipulation, the DOE has failed to comply with its obligations to Bryan.

36.    The DOE's failure to provide the TAs required by Bryan's IEP, his CSP, and the Stipulation has resulted in a violation of the Rehabilitation Act, 20 U.S.C. 729, thereby damaging Plaintiffs and entitling them to relief under this Act.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.    Declare that Defendant has violated Plaintiffs' rights as set forth herein;

B.    Order Defendant to provide a FAPE to Bryan in accordance with its agreement and his needs;

C.    Award Plaintiffs damages in amounts to be proven at trial;

D.    Award Plaintiffs costs and attorneys' fees;

E.    Grant Plaintiffs such other relief as may be just and proper.

DATED:  Kamuela, Hawai'i, _____ JAN 15 2002 _____.

SHELBY ANNE FLOYD
JERILYNN ONO HALL
Attorneys for Plaintiffs

184033/6515-1

9

028

# United States District Court

_____DISTRICT OF_____
HAWAI'I

ANN KIMBALL WILES and STANLEY BOND, by
and on behalf of their son, BRYAN WILES-
BOND, a minor, Plaintiffs,

**SUMMONS IN A CIVIL ACTION**

vs.

CASE NUMBER:

DEPARTMENT OF EDUCATION, STATE OF
HAWAI'I, Defendant.


TO:    The Above-Named Defendant(s)


YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve
upon

PLAINTIFF'S ATTORNEY (name and address)

SHELBY ANNE FLOYD, ESQ.
JERILYNN ONO HALL, ESQ.
Alston Hunt Floyd & Ing
65-1235 Opelo Street, Suite 5
Kamuela, Hawai'i 96743

an answer to the complaint which is herewith served upon you, within ____20_____
days after service of this summons upon you, exclusive of the day of service.  If you fail
to do so, judgment by default will be taken against you for the relief demanded in the
complaint.

(S) WALTER A.Y.H. CHINN                      FEB 1 5 2002

CLERK                                        DATE


BY DEPUTY CLERK

184033/6515-1                    10

# RELEASE AND SETTLEMENT AGREEMENT

THIS RELEASE AND SETTLEMENT AGREEMENT ("Agreement") is made and entered into this _1_ day of _July_____, 2002, by and between:

**RELEASORS:**    ANN KIMBALL WILES and STANLEY BOND (the "Bonds"), by and on behalf of their son, BRYAN WILES-BOND ("Bryan"), a minor

**RELEASEES:**    DEPARTMENT OF EDUCATION ("DOE"), STATE OF HAWAI'I;

DEPARTMENT OF HEALTH ("DOH"), STATE OF HAWAI'I

(collectively, the "State")

## I. RECITALS

A.    On or about February 27, 2001, the Bonds, on behalf of Bryan, filed a request for a due process hearing with the DOE, pursuant to Section 8-56-72, Hawai'i Administrative Rules, due to the State's alleged failure to provide all of the services to Bryan as specified in his Individualized Education Program ("IEP") and Coordinated Service Plan ("CSP").

B.    At a May 7, 2001 due process hearing, the parties presented a stipulated hearing decision (the "Stipulation") by which the State agreed to provide Bryan with the services specified in the Stipulation during the period from May 7 until October 1, 2001 (the "Stipulation Period"), with any hours of adult educational aide services that were not provided during that period to be made up beginning after October 1, 2001.

:00347-1/6513-1/FINAL

**EXHIBIT 3**

030

C.    During the Stipulation Period, Bryan did not receive the full number of hours of adult educational aide services required under the Stipulation, with the parties disputing whether the State made up such hours.

D.    On or about February 15, 2002, the Bonds filed a civil case, Civil No. 02-00101 SOM/BMK, and a Motion for Preliminary Injunctive Relief against the State in the U.S. District Court for the District of Hawai'i.

E.    The Bonds alleged that the State had breached federal regulations by, among other things, failing to implement the terms of the Stipulation, failing to provide a free and appropriate public education to Bryan under the Individuals with Disabilities Education Act ("IDEA"), and violating Section 504 of the Rehabilitation Act.

F.    The parties hereto desire to enter into this Agreement in order to provide for the full and final settlement and discharge of all claims which have been made, or might be made, by reason of the claims described in the Recitals above, upon the terms and conditions set forth below.

## II. RELEASE AND AGREEMENT

WHEREAS, the parties have engaged in full and complete discussions of the issues raised by each side and the parties having reached an agreement on the disposition of this case without further court or administrative hearings, the parties agree to the following:

A.    The Individualized Education Program ("IEP") dated May 24, 2002, as it may hereafter be revised in accordance with Chapter 56, Hawai'i Administrative Rules, shall be implemented as follows:

    1.    Therapeutic Aide ("TA") Services

        a.    By August 1, 2002, the State shall hire, train, and have in place the TAs needed to consistently provide Bryan with not less than ninety-five percent (95%) per calendar month of the TA hours to which he is entitled.[1]

        b.    The State shall continue to provide TA services through its contract with the current service provider and/or its successor.

        c.    By August 1, 2002, the State shall procure TA services for Bryan to be provided by qualified individuals through an "expedited contract process". Under this expedited contract process, the State shall pay qualified individuals a minimum of $20.00 per hour, and may offer effective bonus/incentive payments to encourage retention of the TAs for three (3) months or longer. The State shall pay these TAs within 30 days of the TAs' submittal of properly verified time sheets to the State.

---

[1] Under his current IEP, Bryan is entitled to 68.25 hours of TA services per week, consisting of the following:

    Seven and one-fourth (7.25) hours of in-school TA services every weekday;
    Four (4) hours of after-school TA services every weekday; and
    Six (6) hours of weekend TA services every Saturday and Sunday.

    d.    To assist the State in meeting the requirements of Paragraph II.c. above, the Bonds shall be authorized to advertise for TAs in State and national newspapers and other publications, with the cost of said advertising to be paid by the State, up to a total of $1,000.00 per year. The Bonds may refer potential TAs identified through advertising or other means to the State. The State shall determine the individuals' qualifications and pay level, conduct criminal background checks, and require that the individuals undergo and pass physical examinations prior to being hired.

    e.    By August 1, 2002, the State shall create a pool of substitute TAs who are qualified and trained to provide services to Bryan. This pool of substitutes shall consist of a maximum of three individuals, who shall be subject to the Bonds' reasonable approval as to these individuals' presence in the home (but not as to their qualifications). Before providing services to Bryan, each substitute TA shall have reviewed Bryan's IEP, shall be trained to implement Bryan's IEP, and shall have observed Bryan receiving TA services for a minimum of two (2) hours in school and a minimum of two (2) hours in the home. These substitute TAs shall be available to provide services to Bryan on an occasional basis when his regular TAs are unavailable.

    f.    The above-described TA services shall be provided by qualified TAs who meet the standards for a Level III TA, and are trained in DTT, TEACCH, and PECs methods for autistic children.

g. The TAs shall complete Bryan's daily behavioral logs and daily log sheets showing the number and completion percentage of DTT and TEACCH trials utilized, and shall complete the DTT log for each trial. Each TA shall sign and date the entries in the daily behavioral logs and daily log sheets.

h. Oversight and monitoring services for the TAs shall continue to be provided by the current autism consultants contracted by the State, or equally trained personnel. The State is not precluded from removing the current autism consultants and/or their successors for malfeasance, misfeasance, or nonfeasance of their duties.

i. When school is not in session, either during the regular or extended school year, the State shall provide TA services to Bryan at his home or at another setting deemed appropriate by the IEP team, including a school classroom. The State shall provide Bryan with curb-to-curb transportation to the school or other setting.

On weekends and on State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under Paragraphs II.A.1.c. and II.A.1.e. above), the Bonds shall be responsible for ensuring that at least one of them or another responsible adult is in the home during those times. On weekdays, other than State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under

**034**

team, with input from Bryan's current autism consultants or their successors, the additional therapy sessions shall be included in Bryan's IEP.

3.   Curb-to-Curb Transportation and Supervision of Bryan.

The State shall ensure that Bryan is individually escorted from the bus which transports him from Kealakehe Elementary to the A+ Program at Kahakai Elementary, and shall be turned over to an A+ staff member. He shall not be dropped off in the parking lot and/or left unattended after being escorted to the A+ program.

4.   Respite Care.

The Bonds shall be entitled to 32 hours of respite care per month, subject to adjustment through Bryan's IEP. by the Department of Health, Developmental Disabilities Session or its successor.   *(initials)* 7/3/02

B.   Stipulation Regarding Need for Intensive Support and Consistent Services.

The parties hereby stipulate that the Bonds currently maintain Bryan in the home environment with intensive support and consistent services from qualified providers. If the required level of support and services are not provided, a higher level of placement, as determined by the IEP team, may be necessary.

C.   Term of Agreement

The parties agree that Paragraphs II.A.1.a., b., c., d., e., f., and i. of this Agreement shall remain in effect for a period of two (2) years from the date of this Agreement. All other provisions shall remain in effect for a period of one

036

Paragraphs II.A.1.c and II.A.1.e above), the State shall be responsible for providing and paying for an additional adult to be present when either of the parents is unable to be in the home during those times; contingent upon the Bonds providing the State with at least two (2) business days' prior notice of the need for an additional adult to be in the home with Bryan and his TA. Any such individuals shall be subject to the Bonds' reasonable approval as to those individuals' presence in the home. The State shall conduct criminal background checks on these individuals, and shall pay these individuals within 30 days of the individuals' submittal of properly verified time sheets to the State.

The Bonds agree to execute an "assumption of risk" provision to permit: (1) specific TAs to be alone with Bryan in the home while providing services, if acceptable to the specific TA's contracting agency, if any; and (2) an additional adult to be present in the home with Bryan and his TA.

2.    <u>Additional Occupational and Speech/Language Therapy.</u>

a.    Pursuant to his IEP, Bryan currently receives two half-hour sessions per week of occupational therapy and two half-hour sessions per week of speech/language therapy.

b.    For an eight-week period, starting as of July 15, 2002, Bryan shall receive two additional half-hour sessions per week of occupational therapy and two additional half-hour sessions per week of speech/language therapy. After this eight-week period, if deemed appropriate by Bryan's IEP

(1) year from the date of this Agreement, except where an effective date is otherwise specified.

D.    Continuing Jurisdiction of the Court/Future Disputes

1.    The parties agree to submit to the continuing jurisdiction of the U.S. District Court for purposes of enforcing this Agreement for a period of one (1) year from the date of this Agreement.

2.    Disputes relating to issues raised by future IEPs, if any, will be decided through the procedures of Chapter 56.

E.    Reimbursement/Fees and Costs

The State will pay reasonable attorneys' fees and costs to the Bonds as prevailing parties.  The Bonds' counsel shall provide the State with copies of invoices for legal fees and costs within ten (10) days of the execution of this Agreement, and the State shall respond within ten (10) days of receipt of said invoices.  If the parties cannot resolve the amount of fees and costs to be paid, the Bonds' counsel shall file a fee application in federal court within twenty (20) days of receipt of the State's response.

F.    Release and Dismissal

1.    Upon execution of this Agreement, all pending proceedings and all claims asserted in Civil No. 02-00101 SOM/BMK shall be dismissed.

2.    The Bonds will prepare and the State will execute a stipulation to dismiss with prejudice the claims and proceedings in Civil No.

02-00101 SOM/BMK. The stipulation shall incorporate by reference the terms of this Agreement and be subject to approval of the Court.

3.    In consideration of the provisions set forth above, the Bonds hereby completely waive, and release, and forever discharge the State from any and all past, present, or future claims or demands, obligations, actions, causes of actions, rights, damages, costs, expenses, attorneys fees, and any compensation of any nature whatsoever, arising out of the claims described in the Recitals above.

4.    It is specifically understood and agreed that the provisions set forth and recited herein are intended to compensate the Bonds for loss of income, attorneys' fees, and any element of special damages arising out of the claims described in the Recitals above.

5.    The obligations in this Agreement shall apply to the State's past, present, and future attorneys, agents, servants, representatives, employees, predecessors, and successors in interest.

6.    This Agreement, on the part of the Bonds, shall be a fully binding, and complete settlement between the Bonds, and the State, and their respective representatives, heirs, assigns, and successors as to the claims described in the Recitals above. It is understood and agreed to by the parties that this Agreement is a compromise of disputed claims, and that any payments are not to be construed as an admission of liability on the part of the State, by whom liability and obligation is expressly denied.

7.     The State denies liability, negligence, breach of duty, breach of any assignment, misconduct, violation of federal and state statutes and laws, and/or wrongdoing of any kind, character or nature whatsoever, and any consideration paid by the State to the Bonds is solely in compromise of disputed claims.

## III. INDEMNITY

The Bonds hereby stipulate and agree, for the foregoing consideration, to indemnify and forever hold harmless, and defend the State and its respective officers, directors, attorneys, agents, servants, representatives, employees, subsidiaries, agencies, affiliates, predecessors and successors in interest, against loss and liability from any and all claims, services, liens, judgments, costs, expenses, attorneys fees, demands or actions, claims or actions for contribution, indemnity or reimbursement (contractual or otherwise), cross-claim and third-party claims, whether such claims or actions have merit or not, that may have or may be hereafter at any time be made or brought against the State by the Bonds or by anyone acting on their behalf, or holding by or through them, against the parties herein released which may be sustained in consequences of the claims described the Recitals above.  It is understood and agreed that the Bonds are not indemnifying the State against claims arising in the future for payment of obligations created by this Agreement.

## IV. WARRANTY OF CAPACITY TO EXECUTE AGREEMENT

The Bonds represent and warrant that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, except as otherwise set forth herein; that the Bonds have the sole right and exclusive authority to execute this Agreement and receive the sums specific in it; and that the Bonds have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Agreement.

## V. GOVERNING LAW

This Agreement shall be construed and interpreted in accordance with the laws of the State of Hawai'i.

## VI. FULL COOPERATION; ADDITIONAL DOCUMENTS

Each of the Parties agrees to cooperate fully and act in good faith by taking all necessary steps to give full force and effect to the basic terms and intent of this Agreement, including but not limited to executing any and all supplementary documents.

## VII. NO RELIANCE BY RELEASORS

The Bonds and their counsel have not relied upon any express or implied representation of the State, or any of their agents as to the tax consequences of this Agreement, and the Bonds release the State from any and all liabilities in connection with such tax consequences.

040

## VIII. ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Agreement contains the entire agreement between the Bonds and the State with regard to the matters set forth in it and shall be binding upon, and inure to the representatives, heirs, successors and assigns of each.

## IX. EFFECTIVENESS

This Agreement shall become effective immediately following execution by each of the parties.

_____
ANN KIMBALL WILES

Date: 7/1/02

_____
STANLEY BOND

Date: July 1, 2002

"RELEASORS"

_____
DEPARTMENT OF EDUCATION,
STATE OF HAWAI'I

Date: 7/3/02

041

DEPARTMENT OF HEALTH,
STATE OF HAWAI'I

Date:     JUL 1 2 2002

"RELEASEES"

APPROVED AS TO FORM:

SHELBY ANNE FLOYD, ESQ.
JERILYNN ONO HALL, ESQ.
Attorneys for Releasors

EARL I. ANZAI, ESQ.
Attorney General
PAMELA A. TOGUCHI, ESQ.
Deputy Attorney General
Attorneys for Releasees

200347-1/6515-1/FINAL

13

042