IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>               Plaintiffs,<br><br>   vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent,<br><br>               Defendants. | CIVIL NO. 04-00442 HG/BMK<br>CIVIL NO. 05-00247 JMS/BMK<br>CONSOLIDATED (Other Civil Action)<br><br>DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW Defendants' Department of Education, State of Hawaii and Alvin Rho ("Defendants"), by and through their attorneys, hereby submit their Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, filed on February 22, 2006 ("Motion").

I.      __INTRODUCTION__

There are genuine issues of material fact that preclude Plaintiff from obtaining summary judgment. Defendants dispute the majority of the facts contained in Plaintiffs' Concise Statement of Facts. See Defendants' Department of Education, State of Hawaii and Alvin Rho's Separate and Concise

Statement of Facts filed herewith.  The facts presented by Plaintiffs don't support the granting of summary judgment. Defendants set forth facts evidencing Defendants good faith efforts to implement Bryan's IEP and to provide consistent services.

Additionally, Plaintiffs are not entitled to judgment as a matter of law on the issue of liability.  On the contrary, the controlling law in this circuit demonstrates that Plaintiffs' sole claims in this action – § 504 of the federal Rehabilitation Act, 29 U.S.C. § 794 ("§ 504") claims for tort-like damages based solely upon a denial of a free appropriate public education ("FAPE") – are not sufficient to constitute a legally cognizable claim under § 504 for a number of reasons.

As stated in Defendants' Motion for Summary Judgment, based on their claims, Plaintiffs are barred from obtaining damages under § 504.  Plaintiffs are essentially asserting claims of educational malpractice, and by seeking to obtain tort damages under § 504, they are trying to make an "end around the [IDEA] in order to circumvent or enlarge the remedies available under the [IDEA]."  See Smith v. Isle of Wight County School Board, 284 F.Supp.2d 370, 379 (E.D. VA. 2003), aff'd in part, rev'd in part, remand on other grounds, 402 F.3d 468 (4th Cir. 2005) (citation omitted, addressing claim under 42 U.S.C. § 1983).

2

Even assuming *arguendo* that the Plaintiffs have pled a legally cognizable § 504 claim, the evidence in the record shows that the Defendants made "good faith" efforts to comply with the IDEA, which precludes a finding of "deliberate indifference" under established precedent set by the 9th Circuit Court of Appeals.  As such, Plaintiffs should not be permitted to obtain summary judgment in their favor.

## II.    SUMMARY JUDGMENT STANDARD

The party moving for summary judgment bears the initial burden of production to demonstrate that the requisite standard for summary judgment has been met.  DeHorney v. Bank of America Nat. Trust and Sav. Ass'n, 879 F.2d 459, 464 (9th Cir. 1989).  If the movant fails to meet this burden, summary judgment cannot be granted.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The court must view all reasonable inferences from the facts in the light most favorable to the nonmoving party.  High Tech Gays v. Defense Industry Security Clearing Office, 895 F.2d 563, 574 (9th Cir. 1990) (case history omitted).  In addition, "[w]here a party moving for summary judgment is the Plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent."  National State Bank v. Federal Reserve Bank, 979 F.2d 1979, 1582 (3rd Cir. 1992).  In order to prevail on a motion for summary judgment, Plaintiffs must satisfy the initial burden of production.  Id. at 1582.

III.    **ARGUMENT**

Plaintiffs are not entitled to summary judgment because they have failed to meet their burden of proof and have failed to plead a legally cognizable claim under § 504.  Not only are the damages Plaintiffs seek unavailable under § 504, Defendants did not discriminate against Plaintiffs under § 504.  Plaintiffs, thus, have no cognizable claims under § 504.

Section 504 of the Rehabilitation Act provides:

No **otherwise qualified** person with a disability in the United States . . . shall, **solely by reason** of her of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program receiving Federal financial assistance.

29 U.S.C. § 794(a) (emphasis added).

A.    **There Are Genuine Issues of Material Fact That Preclude The Granting of Plaintiffs' Motion**

Defendants dispute much of the facts contained in Plaintiffs' Concise Statement of Facts.  See Defendants' Department of Education, State of Hawaii and Alvin Rho's Separate and Concise Statement of Facts filed herewith.  Viewing the facts in the light most favorable to the nonmoving party, clearly establishes that Plaintiffs have failed to meet their burden.  The facts presented by Plaintiffs do not support the granting of summary judgment.  Plaintiffs allege broad facts regarding the Defendants alleged failures to implement Bryan's IEP and to consistently provide services to Bryan.  Even

assuming that there was a denial of FAPE, the mere denial of

FAPE is not sufficient to warrant damages under § 504 absent a

showing of deliberate indifference.  Plaintiffs' facts do not

support a finding of deliberate indifference.  The facts of this

case instead support a finding that Defendants acted in good

faith in attempting to implement Bryan's IEPs, the hearing

decisions, and the settlement agreements, but were hampered from

doing so by the acts or omissions of Plaintiffs themselves.


**B.    Plaintiffs Cannot Recover Under Section 504 For The Mere Denial of FAPE.**

To support their § 504 claims, Plaintiffs merely

allege that Bryan Wiles-Bond ("Bryan") has been denied FAPE.

Claims based solely on a denial of FAPE must be addressed

exclusively through the IDEA, not § 504, which does not permit

recovery of damages solely for the denial of FAPE.

The purpose of the Rehabilitation Act "is to prevent

old-fashioned and unfounded prejudices against disabled persons

from interfering with those individuals' rights to enjoy the

same privileges and duties afforded to all United States

citizens." Galloway v. Superior Court of the District of

Columbia, 816 F.Supp. 12, 20 (D. D.C. 1993).  Section 504 is

merely "prohibitory, forbidding exclusions from federally-funded

programs on the basis of handicap, rather than mandatory,

creating affirmative obligations.  The (IDEA), by contrast,
because of its focus on appropriate education, imposes
affirmative duties regarding the content of the programs that
must be provided to the handicapped." School Dist. of Wisconsin
Dells v. Z.S., 184 F.Supp.2d 860, 884 (W.D. Wis. 2001) (citation
omitted).  Thus, because § 504 "forbids exclusion from programs
rather than prescribing the programs' content **it reaches grosser
kinds of misconduct than the IDEA**." Id. (citation omitted,
emphasis added).

     The IDEA does not allow tort damages for the denial of
FAPE.  Witte v. Clark County District, 197 F.3d 1271, 1275 (9th
Cir. 1999).[1]  Moreover, had Congress intended for tort damages to
be recoverable in § 504 actions, it would have expressly
included a right to such damages in the statutory language, as
it did for violations of § 501 of the federal Rehabilitation

---

[1]     Plaintiffs' use of Witte is mistaken.  Plaintiffs use Witte
for the proposition that exhaustion of the IDEA administrative
process is not required if plaintiffs seek a relief, such as
monetary damages, that is not available under the IDEA.  Witte
is not applicable to the instant case as the damages sought in
Witte were for malicious physical abuse of a handicapped child
and not for educational malpractice, as is the issue in this
case.

     Similarly, Plaintiffs' use of Robb v. Bethel School Dist. #
403, 308 F.3d 1047 (9th Cir. 2002) is also misplaced.  Plaintiffs
use Robb for the proposition that exhaustion is not required
when the claims are for retrospective damages for injuries
suffered that cannot be cured through service under the IDEA.
The court in Robb, however, held that plaintiff cannot avoid
exhaustion merely by limiting their prayer to money damages.

Act, 29 U.S.C. § 791 ("§ 501").  See 42 U.S.C. § 1981a
(permitting right to compensatory and punitive damages, subject
to caps based on the size of the employer).  Significantly, the
remedial compensatory damage provisions of § 501 were not made
applicable to § 504 violations.  It would be inconsistent to
conclude that § 504 impliedly authorizes an **unlimited** amount of
compensatory tort damages while Congress **explicitly** added a
carefully **limited** compensatory damage remedy to another section
of the Rehabilitation Act **and did not apply that remedy
provision to § 504**.  Clearly, under established caselaw, and §
504 itself, Plaintiffs' claims must fail.

Even assuming *arguendo* that Plaintiffs are allowed to
recover tort-like damages under § 504, their recovery of damages
should be limited to the two years prior to the filing of the
instant Complaint by the applicable statute of limitations.  The
reauthorization of the IDEA in P.L. 108-446 set forth a two year
statute of limitations for claims brought under the IDEA.

### 1.    Section 504 Prohibits Only Intentional Discrimination.

There is no dispute as to the law in this area.  The
9th Circuit has clearly set forth in Duvall v. County of Kitsap,
260 F.3d 1124 (9th Cir. 2001), that: (1) a plaintiff seeking to
recover money damages under the Rehabilitation Act must prove
intentional discrimination on the part of the defendant; (2) the

standard for proving intentional discrimination is deliberate indifference; and (3) deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. Id. at 1138-39 (citations omitted).

With respect to the "deliberate indifference" standard, the 9th Circuit has articulated that the first element of "knowledge that a harm to a federally protected right is substantially likely" is satisfied when the public entity has notice that an accommodation is required. Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002). The second element of "a failure to act upon that likelihood" is satisfied if the entity's failure to act is more than negligent, and **involves an element of deliberateness.** Id. (emphasis added).

In Ferguson v. City of Phoenix, 157 F.3d 668 (9th Cir. 1998), the 9th Circuit determined that the City of Phoenix could not be held liable under § 504 for failing to maintain an emergency 9-1-1 system to respond to deaf or hearing impaired users because there was no evidence that the City was deliberately indifferent to violating the plaintiffs' rights:

> In light of the evidence in the record, **the situation clearly appears to be no more than at times some not uncommon bureaucratic inertia as well as some lack of knowledge and understanding about the DOJ Manual requirements. There is nothing to show, or even suggest, any deliberate indifference or discriminatory animus on the part of the City towards plaintiffs.**

Id. at 675 (emphasis added).  And, in Midgett v. Tri-County Metropolitan Trans. Dist. of Oregon, 254 F.3d 846 (9th Cir. 2001), the 9th Circuit Court of Appeals held that a defendant's good faith intent to comply with the disability discrimination laws precludes finding of "deliberate indifference" as a matter of law.  See also Memmer v. Marin County Courts, 169 F.3d 630 at 633 (9th Cir. 1999) (plaintiff's failure to produce evidence of discriminatory intent is fatal to ADA claim).  Mere reckless or negligent behavior will not create liability under § 504.

In contrast, the only reported 9th Circuit decision in which the appellate court determined that the "deliberate indifference" standard was met was a case involving a facially discriminatory policy, i.e., a policy that categorically excluded disabled persons from a program **solely on the basis of their disability**.  See Lovell, 303 F.3d at 1057.  No reported 9th Circuit decision, however, has held that a mere failure to provide FAPE or otherwise comply with IDEA is adequate to even raise an issue of fact as to whether the "deliberate indifference" standard has been met.

Moreover, even assuming arguendo that Plaintiffs have pled a legally cognizable claim, there can be no finding of "deliberate indifference" in this case as a matter of law, because the evidence clearly shows that the Defendants acted in

good faith in servicing Bryan.  This evidence of good faith
precludes a finding of deliberate indifference under 9th Circuit
precedent.

### 2.    A Mere Denial Of FAPE Is Insufficient to Establish Intentional Discrimination Under § 504.

The law in this area is that it is insufficient to
make out a claim under § 504 or to establish intentional
discrimination by premising a claim merely on the denial of
FAPE.  "To prove discrimination in the education context, courts
have held that something more than a simple failure to provide a
free appropriate public education must be shown."  N.L. v. Knox
County Schs., 315 F.3d 688, 695 (6th Cir. 2003) (citing Monahan
v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982) and Lunceford v.
D.C. Bd. Of Educ., 745 F.2d 1577, 1580 (D.C. Cir. 1984)); see
also Sellers v. The Sch. Bd. of the City of Manassas, Virginia,
141 F.3d 524, 528-29 (4th Cir. 1998) (quoting Monahan and
Lunceford for the purpose of setting forth the position that, in
order to prove discrimination in an education situation,
Plaintiffs must show something more than a mere failure to
provide the FAPE required by IDEA).

In Doe v. Arlington County School Board, 41 F.Supp.2d
599, 608 (E.D. Va. 1999), the Court found that "In the special
education context, the standard of proving a § 504 claim is
extraordinarily high."  To recover compensatory damages under §

504, a plaintiff must prove "intentional discrimination," which
can be inferred when a policymaker acts with "deliberate
indifference" to the strong likelihood that a violation of
federally protected rights will result from the implementation
of the policy.  See Powers v. MJB Acquisition Corp., 184 F.3d
1147, 1153 (10th Cir. 1999) (citation omitted).  Cf. Dempsey v.
Ladd, 840 F.2d 638, 641 (9th Cir. 1987) (denial of access to a
benefit is not actionable under Section 504 where it is for non-
discriminatory reasons); Weinreich v. Los Angeles Metro. Transp.
Auth., 114 F.3d 976, 978 (9th Cir. 1997) (same).

In the case of Mark H. v. LeMahieu, 372 F.Supp.2d 591,
603 (D. Haw. 2005), where the legal issues are exactly the same
as the legal issues presented in this case, this court stated
that, "It strains the logic of the requirement for intentional
discrimination to say that a dispute of educational procedures,
adopted pursuant to the IDEA, is intentional discrimination
under § 504."[2]

Courts are uniform in holding that § 504 claims
premised on a mere denial of FAPE are simply insufficient to
impose § 504 liability for compensatory damages, under any
standard.  Because Plaintiffs claim for damages under § 504 is

---

[2]    The Mark H. v. LeMahieu case is currently on appeal in the
9th Circuit Court on those very same legal issues.

merely a claim for the denial of FAPE, Plaintiffs are unable to meet the high standard.

The 9th Circuit has refused to impose § 504 liability based on a denial of FAPE in several cases.  In <u>Doe by Gonzales v. Maher</u>, 793 F.2d 1470 (9th Cir. 1986), the 9th Circuit Court of Appeals held that the Education of All Handicapped Children Act (predecessor to the IDEA), **provides the sole remedy for disabled children who have been denied their right to FAPE**.  793 F.2d at 1494 (emphasis added).[3]  <u>See also</u> <u>Alexopulos by Alexopulos v. Riles</u>, 784 F.2d 1408 (9th Cir. 1986) (same).  This holding was reaffirmed by the 9th Circuit in <u>Ramon v. Soto</u>, 916 F.2d 1377 (9th Cir. 1989):

> We have held, however, that the rights of handicapped children regarding suspension and expulsion are enumerated in the Education of the Handicapped Act rather than the Rehabilitation Act.

916 F.2d at 1380 (<u>citing</u> <u>Doe by Gonzales v. Maher</u>).

Thus, it is clear that a denial of FAPE is insufficient *as a matter of law* to constitute a § 504 claim.

---

[3]    Although <u>Gonzales</u> was decided prior to the amendment to the IDEA, 20 U.S.C. 1415(1), which provides, "Nothing in this chapter shall be construed to restrict the rights, procedures, and remedies available under . . . title V of the Rehabilitation Act of 1973," this amendment **has not been held to have altered the prior holding that more harm is required than a denial of free appropriate public education to make out a section 504 claim."**  <u>See</u> <u>N.L.</u>, <u>Infra</u> at 695 (citations omitted, emphasis added).  Thus, the holding of <u>Gonzales</u> that the IDEA provides the sole remedy for a denial of FAPE remains good law, evidenced and affirmed by the subsequently decided <u>Ramon</u> case, <u>supra</u>.

Just challenging a denial of FAPE is insufficient without a showing that the actions of defendants rise to the level of "intentional" or "bad faith" or that such actions constitute "gross misjudgment."  See also MS. S. v. Vashon Island School District, 337 F.3d 1115, 1125 n. 14 (9th Cir. 2003), cert. denied, 125 S.Ct. 1662 (2005) (§ 504 claims which were merely "derivative" of IDEA claims presented no plausible independent basis for recovery).  Nothing here shows that there was intentional action, bad faith, or gross misjudgment on the part of the Defendants.  In fact, Defendants' acted in good faith in attempting to secure the services deemed appropriate for Bryan by his IEPs, hearing decisions, and settlement agreements.

The substantial majority of courts in other jurisdictions, which also hold that mere denials of FAPE (or IDEA violations) are insufficient to sustain claims under § 504. See, e.g., Sellers, supra; Monahan, supra; Hoekstra v. Independent Sch. Dist. No. 283, 103 F.3d 624 (8th Cir. 1996); N.L., supra; E.W. and E.W. v. The School Bd. of Miami-Dade County Fla., 307 F.Supp.2d 1363 (S.D. Fla. 2004); Arlington County, supra.

These courts generally hold that to prove discrimination in a special education context, "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown."  Monahan, 687 F.2d 1164.

These courts have not been persuaded by plaintiffs who attempt to couch their § 504 allegations in terms of "gross misjudgment," "intentional discrimination," "deliberate indifference," and/or "bad faith."  For example, in Sellers, the plaintiffs claimed that the complete failure by the school board to provide any special education services to their child for over ten years, despite persistent and repeated requests by the mother to do so, was a total failure of its responsibilities and exhibited "gross misjudgment" sufficient to at least raise an issue of material fact on their § 504 claim.  See Appellants' Opening Brief, 1997 WL 33492433 at *7-10 and *18-21.

Similarly, in Isle of Wight, supra, the plaintiffs alleged that the school board "ignored" the requirements of an IEP and failed to give them notice of their rights under the IDEA.  284 F.Supp.2d at 378 (decided under 42 U.S.C. § 1983). And, in Hoekstra, supra, the plaintiffs argued that the defendants deliberately delayed in providing her with tutoring, which resulted in a deprivation of FAPE.  103 F.3d at 625 (decided under ADA).  However, in these cases, the courts dismissed the claims as a matter of law.  These courts found that these types of allegations, despite the legal catchphrases, basically consisted of "mere denials of FAPE" that were insufficient to create liability under the disability discrimination laws.

3.   **Plaintiffs Cannot Meet Their Burden Of Proving Intentional Discrimination Under § 504.**

To prevail on their § 504 claims, the Plaintiffs have the ultimate burden of proving intentional discrimination. See Memmer v. Marin County Courts, 169 F.3d at 633 (9th Cir. 1999) (plaintiff has the burden to show intentional discrimination to recover money damages under § 504); Moubry v. Independent School Dist. 696, 9 F.Supp.2d 1086, 1111 (D. Minn. 1998) (same).

In the instant case, Plaintiffs allege nothing more than a denial of FAPE as the basis for their § 504 claims.  In their motion, the crux of Plaintiffs' deliberate indifference claim is that "continual promises by Defendants to provide Bryan with FAPE are the basis of the deliberate indifference claim." See Motion at p. 4.  Plaintiffs' allegations are insufficient to state a § 504 cause of action as a matter of law in this circuit.  See Ramon v. Soto, 916 F.2d 1377 (9th Cir. 1989); and Doe by Gonzales v. Maher, 793 F.2d 1470 (9th Cir. 1986).

Plaintiffs' allegations are virtually identical to claims that were deemed insufficient as a matter of law to raise even an issue of fact regarding whether defendants acted with "deliberate indifference" in both this circuit and other jurisdictions.  See Sellers, supra (failure to provide special education services, despite knowledge that services were needed and repeated requests to provide services from parent).

The facts in this case clearly evidence that the Defendants did not act with deliberate indifference.  Defendants made significant efforts to recruit skills trainers.  In addition to their own efforts, the Defendants contracted with private agencies to assist with the recruitment.  See Declarations of Kelly Stern and Linda Price, attached as Exhibits "A" and "B," respectively to the Declaration of Holly T. Shikada.  These efforts included advertising in newspapers with local and statewide distribution, posting signs on bulletin boards throughout the Kona and Waimea communities, including in the schools, posting job listing at conventions, leaving business cards at conventions and passing them out at workshops, placing advertisements on agency websites, and even gave parents funding to advertise for skills trainers.  See Declarations of Kelly Stern, Linda Price, and Judith A. Radwick, attached as Exhibits "A" – "C," respectively to the Declaration of Holly T. Shikada.  Moreover, at the insistence of Plaintiffs, Defendants hired a mainland company (Pacific Child and Family Associates) with expertise in servicing autistic children, to work with Bryan and his family.  See Declaration of Kate Tolentino, attached as Exhibit "D" to the Declaration of Holly T. Shikada. The Defendants paid for two individuals from Pacific Child and Family Services to come to Hawaii to assess Bryan and his family.  Pacific Child and Family Services was willing to

service Bryan and his family and while in the midst of entering into a contract for their services, the Plaintiffs relocated to the mainland.  Id.

Defendants' efforts to implement Bryan's IEP, the hearing decisions, and the settlement agreements were hampered by Plaintiffs' unreasonable and irrational refusal of skills trainers referred to them.  Parents refused skills trainers for various reasons, including, but not limited to pregnancy of the skills trainer and another skills trainer being too religious. See Declaration of Judith A. Radwick, attached as Exhibit "C" to the Declaration of Holly T. Shikada.  See also Declaration of Linda Price, attached as Exhibit "B" to the Declaration of Holly T. Shikada.  Defendants' efforts were additionally hampered because of the unreasonable demands and other actions of the parents.  Skills trainers that the Defendants hired asked to be removed from Bryan's case because of the unsanitary living conditions in the Plaintiffs' home, because they were continuously left alone in the house with Bryan in the early evenings so the rest of the family could go to the beach, because they were left alone with Bryan all day on the weekends, and because they were expected to do the family laundry while working with Bryan on his life skills.  See Declaration of Judith A. Radwick, attached as Exhibit "C" to the Declaration of Holly T. Shikada.  Skills trainers from The Institute for Family

17

Enrichment also confirmed that Bryan's home was chaotic and unsanitary and that Bryan had been sent to school with diahrrea and vomiting, which caused a health and safety concern for the skills trainers.  See Declaration of Kelly Stern, attached as Exhibit "A" to the Declaration of Holly T. Shikada.

Plaintiffs have not even pled a legally cognizable § 504 claim, and are certainly not entitled to judgment as a matter of law on liability for their § 504 claim.

C.    **Plaintiffs Fail To Meet The Statutory Requirement That The Discrimination Was "Solely By Reason Of Disability."**

Plaintiffs are further disqualified from seeking § 504 damages because not only are they unable to meet the standard of deliberate indifference, but they are also unable to meet the statutory requirement of "solely by reason of disability."

Plaintiffs' claims are that services for Bryan were not provided as had been agreed upon by Defendants.  The question, however, is not whether the services were provided, but the question is whether the alleged failure to provide services was a result of discrimination on the basis of disability.  Plaintiffs' claim for § 504 money damages is flawed because special education programs and related services required by the IDEA are open only to children with disabilities. Without his disability, Bryan would not have been entitled to receive any special education program or related services.

18

Bryan cannot claim discrimination by a comparison to non-disabled children, because non-disabled children are not eligible to and do not receive special education and related services.

There may be other children also eligible to receive special education and related services with the same disabilities as Bryan who were receiving their services more regularly.  But that does not amount to discrimination "solely by reason of" the disability.  Bryan's situation instead proves non-discrimination:

> Section 504, by its very terms, does not cover discrimination among similarly handicapped persons. The word "solely" provides the key: the discrimination musts come from the handicap and from the handicap alone.  **If others with the same handicap do not suffer the discrimination, then the discrimination does not result "solely by reason of [the] handicap.**

Grzan v. Charter Hosp. Of N.W. Ind., 104 F.3d 116, 121 (7th Cir. 1997) (emphasis added) (quoting Johnson by Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992)).

Defendants did not intentionally deny services to all special education children with autism or to all special education children within any other disability category.  Some children in the special education system or within a given disability category received more consistent delivery of services than Bryan.  But unequal delivery of services to

similarly situated special education students is not

discrimination solely by reason of the disability.

**D.    Plaintiffs Fail To Meet the § 504 Requirement Of "Otherwise Qualified."**

Additionally, Plaintiffs are unable to meet the § 504

requirement of "otherwise qualified."  IDEA requires affirmative

action by a federally funded program.  In contrast, Section 504

does not require affirmative action by a federally funded

program.  It requires only non-discriminatory, "evenhanded

treatment" between an otherwise qualified individual with a

disability and an individual without the disability.

Southeastern Cmty Coll. v. Davis, 442 U.S. 397, 410 (1979).  "An

otherwise qualified person is one who is able to meet all of a

program's requirements in spite of his handicap."  Id. at 406.

The 7th Circuit addressed the "otherwise qualified"

issue in the Grzan case and concluded that, there is no basis

for a § 504 claim where inclusion in a program that treats the

disability is triggered specifically because of the existence of

the disability:

> Grzan is not "otherwise qualified" because, absent her
> handicap, she would not have been eligible for
> treatment in the first place.  Charter Hospital treats
> psychiatric patients.  Grzan was a psychiatric
> patient.  She therefore qualified for Charter's
> program, and was in fact treated, albeit negligently
> according to her complaint.  Had she not suffered from
> the psychiatric condition, she would not have
> qualified for Charter's Program and would not have
> been treated, negligently or otherwise.  "Without a

disability is triggered specifically because of the existence of

the disability:

> Grzan is not "otherwise qualified" because, absent her
> handicap, she would not have been eligible for
> treatment in the first place.  Charter Hospital treats
> psychiatric patients.  Grzan was a psychiatric
> patient.  She therefore qualified for Charter's
> program, and was in fact treated, albeit negligently
> according to her complaint.  Had she not suffered from
> the psychiatric condition, she would not have
> qualified for Charter's Program and would not have
> been treated, negligently or otherwise.  "Without a
> showing that the non-handicapped received the
> treatment denied to the "otherwise qualified"
> handicapped, the appellants cannot assert that a
> violation of section 504 has occurred."

104 F.3d at 121 (quoting Johnson, 971 F.2d at 1494).

The reasoning of the Grzan court applies to this case.

The federally funded special education program provided by

Defendant Department of Education serves only children with

disabilities.  Bryan was not "otherwise qualified" for special

education in spite of his disability.  Rather, it was

specifically because of his disability that he qualified for

special education.  Plaintiffs cannot show that non-disabled

students received the special services that were allegedly

denied to Bryan.

**IV.**        **CONCLUSION**

Plaintiffs have failed to meet their burden.  Genuine

issues of material fact exist, which precludes Plaintiffs'

request for summary judgment.  See Defendants' Department of

Education, State of Hawaii, and Alvin Rho's Separate and Concise Statement of Facts filed herewith.[4]  Moreover Plaintiffs are not entitled to judgment as a matter of law on the issue of liability.  Plaintiffs fail to plead a cognizable claim under § 504.  And, even assuming, *arguendo*, that Plaintiffs do have a cognizable claim under § 504, at the very least there questions of material fact exist with respect to Plaintiffs' allegations of deliberate indifferent.

For the foregoing reasons, Defendants respectfully request that this Court deny the Plaintiffs' Motion for Partial Summary Judgment in its entirety.

DATED:    Honolulu, Hawaii, March 10, 2006.

HOLLY T. SHIKADA
GARY K. KAM
Deputy Attorneys General

Attorneys for Defendants

---

[4]    Plaintiffs' Concise Statement of Facts exceeds the page limit set forth in L.R. 56.1(d) and alternatively, fails to certify the word count.