IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor, | CIVIL NO. CV04-00442 HB/BMK (CONSOLIDATED) (Other Civil Action) |
| Plaintiffs, | DECLARATION OF KELLY STERN |
| vs. | |
| DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent, | |
| Defendants. | |
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor, | CIVIL NO. CV05-00247 JMS/BMK (CONSOLIDATED) (Other Civil Action) |
| Plaintiffs, | |
| vs. | |
| DEPARTMENT OF EDUCATION, State of Hawaii, | |
| Defendant. | |

EXHIBIT A

## DECLARATION OF KELLY STERN

I, Kelly A. Stern, hereby declare and state that:

1.    I was the Clinical Supervisor and Program Manager for The Institute for Family Enrichment ("TIFFE") in Kealakekua, Hawaii.  I have a Masters Degree in Clinical Psychology.

2.    I began working for TIFFE in February 3, 2003 and resigned from my position on August 1, 2005.

3.    I have personal knowledge of the efforts made by TIFFE to recruit and provide skills trainers ("ST's") for Bryan Wiles-Bond.

4.    When I began working for TIFFE in February 2003, there were two ST's employed by the agency working with Bryan.  By the end of March, we were providing three ST's for most/all of the services required for Bryan.  As summer approached, two ST's submitted their resignations.  One left in approximately May 2003, and the other by the end of July 2003.

5.    The Department of Education ("DOE") also went to other agencies to recruit ST's (Child and Family Service provided one ST, DOE provided one ST).

6.    By August 2003, only one ST from our agency was working for this family.

7.    We asked one experienced ST to cover just on

2

Saturdays.  She accepted, but then due to personal issues in her life, declined and called the family to let them know that she could not make the commitment.

8.  We also asked substitutes from our agency to cover some of the hours during a time when the ST from the DOE was out sick.  One substitute declined because she felt the case would be too stressful and difficult for her.

9.  Our agency also made numerous efforts to recruit ST's to work with Bryan.  These efforts included advertising in local newspapers; posting posters on bulletin boards throughout both Kona and Waimea, including some schools; interviewing over 50 applicants on the West side from March 2003 – February 2004; and attempting to recruit from within our ranks.

10.  Between April 2003 and January 2004, we had three potential ST's who were sent to the family to interview.  One person, who was a behavior specialist from the mainland, was deemed by the family to be "too religious."

11.  The second person, a substitute teacher, had two master's degrees (Business and Health).  This person was deemed not suitable for the family.

12.  The last person, a special education certified teacher, was selected by the family, but this person had an impending marriage and was planning to be away during the

summer.  By August 2003, our agency only had one ST remaining on the case.

13.  While I hired and trained many new ST's, the new people who came to our agency did not have the "advanced skills or high level of training" to work with Bryan and his family. My ST's, however, were trained according to the standards set forth by the contract for agencies to work with children who have autism.

14.  Our attempts to recruit from our own ST employees were met with reluctance, even with the knowledge of a higher hourly rate of $20.00 per hour.  The reason for the reluctance was as follows:

a.  ST's had commented that Bryan is delightful to work with, but the mother can be very challenging to work with;

b.  ST's have made mention about chaotic and unsanitary conditions in the home;

c.  Bryan had been sent to school with diahrrea and vomiting where unsanitary conditions have presented Health and Safety challenges for STs; and

d.  The litigious nature of this case made the then current ST's concerned and worried about working with this family.

4

15.  There was difficulty finding qualified personnel to fit with the criteria that were being required by the court decree and the family's request.

16.  Of over 50 applicants who had come to me, only a few of the people had the level of experience and expertise that has been requested by the family.

17.  It was difficult to find long-term (those willing to work for at least 1 year) people who will work on this case. The burn-out rate is high.  My agency had always wanted to have back-up personnel for this case, but identification of personnel is always a hold up, including when our agency identifies a person, and the family declines them.

18.  I worked in collaboration with other agencies to find suitable STs for this family.

19.  Other efforts were made by our agency to recruit STs. In August 2004, I posted a job listing for an ST at the American Psychological Association hosted convention, which had over 12,000 attendees from around the world.  The job listing requested ASL training with expertise in various autism curricula.  The business cards and tear off information requesting resumes I left were gone in two days.

20.  Also, during my attendance at numerous workshops on autism, I passed out my cards to professors and graduate

students to get the word out regarding job positions with our agency, particularly with Bryan in mind.

21.  From a professional standpoint, best practice literature indicated that sign language (ASL) was not the best communication system for children with autism. It was my professional opinion that the ASL requirement for STs could sabotage any efforts for recruitment of highly qualified persons who know how to provide services to children with autism. It is highly unusual for those trained in autism to be proficient in ASL.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED:  Kealakekua, Hawaii, _March 10, 2006._

_____ , MA
KELLY A. STERN