IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>       Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent,<br><br>       Defendants. | CIVIL NO. CV04-00442 HB/BMK (CONSOLIDATED) (Other Civil Action)<br><br>DECLARATION OF JUDITH A. RADWICK |
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>       Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii,<br><br>       Defendant. | CIVIL NO. CV05-00247 JMS/BMK (CONSOLIDATED) (Other Civil Action)<br><br>\ |

**DECLARATION OF JUDITH A. RADWICK**

I, Judith A. Radwick, hereby declare and state that:

1.    I am a District Educational Specialist for the

Department of Education, State of Hawaii, West Hawaii

District.

EXHIBIT C

2.   I have personal knowledge of the facts set forth herein and am aware of the efforts made by the DOE to recruit skills trainers in connection with the Wiles-Bond matter.

3.   In 2004, an advertisement ran in the Honolulu Advertiser regarding applications for skills trainer positions.

4.   As detailed in the advertisement, the pay scale for the position was $20.00 to $40.00 per hour, "based on experience."

5.   The advertisement resulted in seven prospects for the position.  The names and resumes of the applicants were given to Bryan's parents for their consideration.

6.   Plaintiffs instead hired Christy Edwards, who lived with the Plaintiffs, at the rate of $40.00 per hour. All of the seven applicants mentioned above had far more experience than Ms. Edwards.  Ms. Edwards only had a bachelor's degree in anthropology (an unrelated field), with no autism or ASL training.

7.   I attempted to negotiate a pay scale with Plaintiffs and Ms. Edwards; however, even in light of Ms. Edward's lack of experience, neither Plaintiffs nor Ms. Edwards would accept anything less than $40.00 per hour.

2

8.    On numerous occasions, Bryan was sent to school
with obvious health conditions, including but not limited
to, a communicable staph infection, vomiting, diarrhea, and
varying eye infections.  Plaintiffs refused to keep Bryan
home on such occasions.  Any child, even if not contagious,
who is miserable and unable to do his/her educational work
should not be in school.  This creates a severe risk to the
health of service providers.

9.    I am aware that at least six skills trainers
asked to be removed from Bryan's case because of the
unsanitary living conditions in the Plaintiffs' home.
Plaintiffs essentially fired the rest.  All six skills
trainers refused to work in the home for extended amounts
of time because of the smell of urine and fecal matter that
permeated Bryan's living area.  This is problematic because
the Department of Education is mandated by law to provide a
hygienic environment for its employees and procured service
providers.

10.    I am also aware of reports that Ann Wiles was
difficult to work with, placing unreasonable demands on
those servicing Bryan.

a.    Ms. Wiles and Mr. Bond continuously left the
skills trainers alone in the house with Bryan in the

3

early evenings so that they could go to the beach to view the sunset with their older child.

b.  On weekends they would be absent all day while the skills trainers were left alone with Bryan. On one such occasion, Bryan closed his bedroom door when the skills trainer entered. The door had a locking mechanism on it, which could only be opened from the outside.  There were bars on the windows. The skills trainer said she was locked in the room with Bryan for more than 3 hours.  She said the room reeked of urine and the mattress in the room was stained with urine and feces.

c.  Skills trainers complained that Ms. Wiles expected the skills trainer to do the family laundry when working with Bryan on life skills.

d.  Skills trainers complained that Ms. Wiles was supposed to leave food for Bryan that he was able to prepare.  She frequently left things that required use of the stove or high levels of preparation, clearly things that Bryan was unable to use or prepare.

11.  Plaintiffs continuously interfered with the procurement of qualified persons to provide services to Bryan; yet when it served their interests they hired a

4

person like Ms. Edwards with a bachelor's degree in anthropology and little to no experience in autism or ASL.

12.   In or around August 2004, Plaintiffs refused an IEP-mandated community-based after school program and fired another skills trainer.

13.   Also in or around August 2004, yet another skills trainer, because of the unsanitary conditions in Plaintiffs' home and Plaintiffs' unreasonableness, refused to work with Bryan any longer.  The Department of Education then procured the services of a person from Hawaii Behavioral Health to provide services to Bryan.  This person was refused by Plaintiffs.

14.   Bryan was unable to sign in American Sign Language.

15.   Parents refusal of skills trainers who were referred to them by the Department of Education was unreasonable and irrational.

16.   Parents refused the services of a skills trainer referred by the Department of Education because she was pregnant despite the fact that the skills trainer was working with a child similarly situated as Bryan.

17.   Parents refused the services of a skills trainer referred by the Department of Education because parents felt the individual was too religious.

5

18.  The Department of Education used their best efforts to comply with Bryan's IEPs, hearing decisions, and settlement agreements, but was hampered in their attempts by parents unreasonable and irrational rejection of the skills trainers referred.

19.  The Department of Education used their best efforts to comply with Bryan's IEPs, hearing decisions, and settlement agreements, but was hampered in their attempts by the unsafe and unsanitary conditions caused by parents.

20.  The Department of Education gave the parents funding to advertise for skills trainers.

21.  To the best of my knowledge, the Department has never caused Bryan to be excluded from any services for which he was eligible because of his disability.

22.  I have not intentionally discriminated against Bryan or his family due to Bryan's disabilities or encouraged anyone to intentionally discriminate against them.

23.  I have not been deliberately indifferent to Bryan as a result of his disability, nor have I shown bad faith in providing Bryan with special education and related services, nor have I encouraged anyone to act with deliberate indifference or bad faith towards Bryan or his family.

6

24.    I have no reason to believe that the Department
of Education has not conducted itself in a professional
manner and has acted in good faith to ensure that Bryan
received a free appropriate public education.

25.    I have no reason to believe that the school Bryan
attended or any of its employees, or any employees in the
West Hawaii District Office acted in bad faith or exercised
gross misjudgment in regards to Bryan and his family.

26.    I have no reason to believe that the school Bryan
attended or any of its employees, or any employees in the
West Hawaii District Office or their agents have not
exercised professional judgment, in such a way as to depart
grossly from accepted standards among educational
professionals.

27.    I know of no law or duty that either I, my
supervisors, the school and its employees, or anyone else
has intentionally violated or were deliberately indifferent
to the rights of Bryan and his family.

Pursuant to 28 U.S.C. § 1746, I declare under penalty
of perjury that the foregoing is true and correct to the
best of my knowledge.

DATED:    Kailua-Kona, Hawaii,    3/16/06    .

JUDITH A. RADWICK

7