Of Counsel:
DAVIS LEVIN LIVINGSTON GRANDE
STANLEY E. LEVIN        1152-0
MICHAEL K. LIVINGSTON   4161-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

SHELBY ANNE FLOYD    1724-0
MEI-FEI KUO          7377-0
65-1230 Mamalahoa Hwy., Suite C21
Kamuela, Hawaii 96743
Telephone: (808) 885-6762
Fax: (808) 885-8065
E-mail: sfloyd@ahfi.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>             Plaintiffs,<br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br>             Defendant. | CIVIL NO. CV 05-00247 HG/BMK<br>CIVIL NO. CV 04-00442 HG/BMK<br>Consolidated (Other Civil Action)<br><br>REPLY TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DECLARATION OF STANLEY E. LEVIN; EXHIBIT "A"; CERTIFICATE OF COMPLIANCE AND CERTIFICATE OF SERVICE<br>DATE:  March 28, 2006<br>TIME:  9:00 a.m.<br>JUDGE: Helen Gillmor<br>TRIAL: July 25, 3006 |

# TABLE OF CONTENTS

                       **PAGE NO.**

TABLE OF AUTHORITIES………………………………………….. ii-iii

I. INTRODUCTION…………………………………………. 2

II. STIPULATED ORDERS AND SETTLEMENT AGREEMENTS……………………………………………… 3

III. IMPORTANT FACTS IGNORED BY THE DEFENDANTS……………………………………………….. 3

IV. MONETARY DAMAGES ARE ONLY SOUGHT FOR THE DELIBERATE INDIFFERENCE OF THE STATE……………………………………………………….. 4

V. SECTION 504 PROVIDES A REAL REMEDY FOR DISABLED PERSONS…………………………………….… 5

VI. DEFENDANTS HAVE ACTED WITH DELIBERATE INDIFFERENCE…………………………………………….... 7

VII. DEFENDANTS MISPLACED RELIANCE ON SEVENTH CIRCUIT CASE LAW………………………….. 13

VIII. MISUSE OF CASE LAW…………………………………… 15

IX. CONCLUSION……………………………………………… 16

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES**                                                    **PAGE NO.**

*ADAPT v. Skinner,*
    881 F.2d 1184 (3rd Cir. 1989).................................... 5

*Aikins v. St. Helena Hosp.,*
    843 F.Supp. 1329 (N.D. Cal. 1994).......................... 7

*Duvall v. County of Kitsap,*
    260 F.3d 1124 (9th Cir. 2001)................................... 8

*Grzan v. Charter Hosp. of N.W. Inc.,*
    104 F.3d 116 (7th Cir. 1997)..................................... 7, 13

*Johnson by Johnson v. Thompson,*
    971 F.2d 1487, 1494 (10th Cir. 1992)...................... 14

*Memmer v. Marin County Courts,*
    169 F.3d 630 (9th Cir. 1999).................................... 16

*Midgett v. Tri County Metropolitan Trans.,*
    254 F.3d 846 (9th Cir. 2001).................................... 16

*Rothschild v. Grottenthaler,*
    716 F.Supp. 801 (S.D.N.Y. 1989) ........................... 6

*Sellers v. Manasssas School Board,*
    141 F.3d 524 (4th Cir. 1998)..................................... 7, 8

*Shuttleworth v. Broward County,*
    639 F.Supp. 654, 659-60 (S.D. Fla. 1986).................. 6

*Smith v. Barton,*
    941 F.2d 1330 (9th Cir. 1990)................................... 5, 7

*Smith v. Ise of Wight County School,*
    284 F.Supp.2d 370 (E.D. Va. 2005)......................... 15

| CASES | PAGE NO. |
|---|---|

*Smith v. Robinson,*
    468 U.S. 992 (1994) ............................................... 6

*Stephen L. v. LeMahieu,*
    ____ F.Supp.2d ____, Civ. No. 00-00338 DAE/KSCC... 9

*Swenson v. Lincoln County School District No.2,*
    260 F.Supp.2d 1136 (D. Wyoming 2003)................ 12, 13

*United States v. University Hosp, State University at Stony Brook,*
    729 F.2d 144, 156 (2d Cir. 1984)............................. 14

*W.B. v. Matula,*
    67 F.3d 484 (3rd 1995)........................................... 10

*Whitehead By and Through Whitehead v. School Board*
    *of Hillsborough County, Fla.,*
    918 F.Supp. 1515 (M.D. Fla. 1996)........................ 10

# REPLY TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This memorandum is in reply to Defendants' misguided and ill-informed memorandum filed in opposition to Plaintiffs' Motion for Partial Summary Judgment. Defendants' memorandum is an amalgam of partially correct citations, hyperbole, and innuendo. Defendants have filed a memorandum about the proper manner of interpreting the law as they hope it will be interpreted. In this circuit, Section 504 is a viable and cognizable basis for damages for a severely disabled student who, because of the DOE's actions, has regressed in important life changing ways. Moreover, under the facts of this case, with Defendants' repeated and continual broad legally enforceable commitments to maintain and improve the services to Bryan, there clearly is not only a cause of action, but undoubtedly liability by Defendants. This obviously occurs when the Defendants never came anywhere close to meeting these commitments. Finally, what is absolutely clear is that while supervisors of the DOE were unconditionally and repeatedly promising ever-growing commitments, there was little, if any, communication between them and staff. The bottom line is that Plaintiffs' motion should be granted as requested and the Defendants' motion should be denied.[1]

---

[1] Plaintiffs have added to its opposition to the Defendants' statement of concise facts portions of the annotated transcript of the April, 2004 hearing before Hearing Officer Alm. That transcript leaves no doubt that there are no genuine issues of material fact.

2

## II.   STIPULATED ORDERS AND SETTLEMENT AGREEMENTS

All of the following documents were attached to Plaintiffs' Concise Statement of Fact:

1. May 21, 2001 Stipulated Decision, of Hearing Officer, Richard Chun.

2. February 15, 2002 Enforcement Complaint filed (This complaint was required because the Defendants did not provide an after school aide and it refused to make up lost time).

3. July 1, 2002 Compromise and Settlement Agreement (This was an effort to resolve all controversies. The Defendants had ignored and disregarded its agreed obligation to provide qualified skills trainers 68 hours per month and it also agreed to provide a "pool of qualified substitutes.").

4. May 11, 2004 Findings of Fact, Conclusions of Law signed by Hearing Officer Alm who made devastating findings about the inability of Defendants to meet its obligation to provide FAPE and of the "regression occurring in Bryan" because of the Defendants' failures.

5. July 21, 2004 Second complaint filed to require compliance with the July 1, 2002 settlement agreement and the May 11, 2004 hearing decision.

6. July 23, 2004 Hearing Officer Decision (This decision was only on a very limited issue regarding whether Bryan was denied FAPE by having a special education teacher who was untrained in American Sign Language. After Defendants stipulated to certain facts and liability on this issue, Ms. Alm ruled that it violated Bryan's right to FAPE to have such an untrained teacher.)

7. April 14, 2005 Present Complaint.

8. June 30, 2005 Motion to Consolidate and Stipulated Motion.

## III.   IMPORTANT FACTS IGNORED BY THE DEFENDANTS

While the Defendants were negotiating agreements and were subject to Stipulated Orders, they never communicated the content of the agreements or

3

orders to the agencies in the Big Island community the terms of these agreements and orders. For example:

1. The DOE made commitments regarding levels of training/experience for skills trainers that the Defendants never told the agencies tasked with recruiting skills trainers, who never knew what standards their skills trainers had to meet. *See* Plaintiffs' Opposition to Defendants Concise Statement of Fact filed March 10, 2006 at 1, 2 3, 5 & 6; *see also* Defendants' Exhibit "A" at 13.

2. The Settlement Agreement provided that the agency had to develop a pool of trained substitutes yet the agency had no knowledge of that requirement. *See* Plaintiffs' Opposition to Defendants Concise Statement of Fact filed March 10, 2006 at 1, 2 3, 5 & 6.

3. The Settlement Agreement of 2002 provided for respite care for the parents, but the administrators complained that skills trainers were left alone with Bryan. *See* Exhibit "A" at 036 of Petitioner' Concise Statement of Fact filed March 7, 2006.

4. The June 2004 Order provided that the skills trainers be trained and proficient in American Sign Language (ASL), but none of the skills trainers had such training. *See* Plaintiffs' Opposition to Defendants Concise Statement of Fact filed March 10, 2006 at 1, 2 3, 5 & 6.

5. After the May 2004 Hearing Officer's decision, on June 2004, the DOE agreed to the number of additional hours for training pursuant to the May 2004 Decision, to ASL training and to the hiring of an experienced person dealing with Bryan's behavior to oversee the toileting program. The Defendants failed to implement these provisions. *See* Exhibit "B" at 052 of Petitioner' Concise Statement of Fact filed March 7, 2006.

### IV. MONETARY DAMAGES ARE ONLY SOUGHT FOR THE DELIBERATE INDIFFERENCE OF THE STATE

The State repeatedly claims that Plaintiffs are seeking money damages for the mere denial of FAPE. This is a knowing misrepresentation of the Plaintiffs'

4

position because Plaintiffs have always described their claims as one which seeks recovery for the deliberate indifference of the Defendants.[2]

## V. SECTION 504 PROVIDES A REAL REMEDY FOR DISABLED PERSONS

The basic message of the Defendants' memorandum (repeated many times) is that Section 504 does not provide another avenue of access to the disabled to redress their rights. Nothing could be further from the truth.

Section 504 has been called the "civil rights bill of the disabled," *ADAPT v. Skinner*, 881 F.2d 1184, 1187 (3rd Cir. 1989) (en banc), or the "cornerstone of the civil rights movement of the mobility-impaired." *Id.* at 1205. This federal law prohibits any program receiving federal funds from discriminating against persons with disabilities.

In *Smith v. Barton*, 941 F.2d 1330 (9th Cir. 1990), the court of appeals issued a seminal ruling on the availability of Section 504 to disabled persons to vindicate perceived discrimination. In *Smith*, a group of blind individuals complained about the actions of individuals who were high executives with the Idaho Commission for the Blind. The complaint set forth two types of injuries to the Plaintiffs – one because they were blind and the other because of their activities

---

[2] See Exhibit "D" attached to the Concise Statement of Facts which provides Dr. Kim Smalley's independent view of the case:

> Brian had a seemingly effective program that while never fully implemented contained all the requisite component parts. What to do is known. The issue is implementation, quality assurance, monitoring, and constant updating and augmenting for slow but gradual success.

5

and their exercise of their First Amendment rights of free association. In granting the Plaintiffs the right to proceed with their two separate claims, the court rejected the analysis of *Smith v. Robinson*, 468 U.S. 992 (1994) and its restrictive views on section 1983 and 504. The circuit court ruled that while *Smith* may require the assertion of Section 504 rights when the source of those rights is a Section 1983 claim, Congress did not intend a *Smith v. Robinson* preclusion when the rights asserted were independent of Section 504 – i.e. were rights which every citizen had. The court recognized that two lower federal courts had reached the same result. (*Rothschild v. Grottenthaler*, 716 F.Supp. 801 (S.D.N.Y. 1989) (Rehabilitation Act held not to be so comprehensive as to [leave] no room for additional private remedies under Section 1983); *Shuttleworth v. Broward County*, 639 F.Supp. 654, 659-60 (S.D. Fla. 1986)(Rehabilitation Act held not to preclude actions brought under Section 1983; court noted reluctance of the Supreme Court to infer congressional intent to preclude reliance on Section 1983)). The *Smith* court proceeded with its analysis stating:

> The rights plaintiffs seek to vindicate in their section 1983 claim were not created by section 504, but rather by the First Amendment. While there is disagreement over whether Congress intended to foreclose section 1983 claims that could have been brought under the Rehabilitation Act, there is no indication that Congress intended to foreclose section 1983 claims that are unrelated to handicap discrimination. The Rehabilitation Act should not serve as a barrier to handicapped individuals who allege violations of their rights under the First Amendment. The magistrate erred in granting summary judgment on plaintiffs' section 1983 claim alleging violation

of their First Amendment rights. We reverse that portion of the magistrate's judgment and remand for proceedings consistent with this opinion.

*Smith v. Barton*, at, 1335.

It is telling that a litigant in a Section 504 case can file a brief on Section 504 rights and never mention *Smith v. Barton*. They have purported to brief the issue and yet they do not discuss, indeed, even mention, the seminal case in 504 jurisprudence. This is particularly disturbing when one considers that the Defendants chose to include for example, an uncited, peculiar and irrelevant decision of the Seventh Circuit in its brief. *See Grzan v. Charter Hosp. of N.W. Inc.*, 104 F.3d 116 (7th Cir. 1997). Compounding this blatant failure is Defendants' intentional tactic to avoid even discussing the progeny of *Smith v. Barton* and an absolute failure to deal honestly and fairly with adverse precedent in the Ninth Circuit. *See Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329 (N.D. Cal. 1994).

## VI. DEFENDANTS HAVE ACTED WITH DELIBERATE INDIFFERENCE

There is also a penchant for misanalysis of Section 504 and the rights that it provides every disabled public school student in Hawaii. For example, the state cites *Sellers v. Manasssas School Board*, 141 F.3d 524 (4th Cir. 1998) for the proposition that there was egregious conduct in that case and it supports Defendants' view of Section 504. However, there are many distinctions and there

7

is at least one major difference between *Sellers* and this case and that is the fact that *Sellers* was trying to hold the school board liable for its omission of its duty. In the case at bar, Plaintiffs are saying that the Defendants are liable for the conscious and deliberate acts of entering into multiple settlements that the Defendants never implemented or came close to implementing. Indeed, this conduct could easily cause a conclusion that the defendants never intended to provide Bryan with FAPE.

There is no doubt that the Ninth Circuit ruling in *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) requires only knowledge of the disability and the conscious decision not to provide the accommodation. It is absolutely beyond discussion that the Defendants knew early on about the Student's disability. Defendants do not claim that their failure to provide the personnel was not intentional or conscious. It is glossed over with the finger pointing engaged in by the Defendants and is placed in real perspective by the agencies' stating that they were unaware of the terms of the Orders and Agreements between the DOE and the Parents. This conduct leaves the impression that the DOE never intended to provide Bryan with the required and necessary services or the personnel; instead the DOE decided to point fingers at the parents in an amazing turn about with an "attack the victim" defense.

Defendants are not liable (like *Sellers*) for what they could have done. Rather, they are liable for the unmet commitments actually made to Plaintiffs on many occasions. It is clear from the numerous broken agreements that Defendants' conduct have satisfied the minimum in this case.

Indeed, the Defendants' conduct in this case is much more like the defendants' conduct in *Stephen L. v. LeMahieu*, ___ F.Supp.2d ___, Civil No. 00-00338 DAE/KSCC (Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment and Granting Plaintiffs' Motion for Partial Summary Judgment filed June 18, 2001)(a copy of that order is attached hereto as Exhibit "A"). In *Stephen L.*, Judge Ezra ruled that the Hawaii Department of Education had been deliberately indifferent within the meaning of Section 504 by intentionally failing to hire adequate qualified teachers and speech pathologists for Molokai. This was based on a four-year track record of promises to the Molokai parents of disabled students.

The same or very similar situation pertains here in the instant case. The DOE made representations to parents about its enforceable commitments but did not tell the agencies that were supplying the personnel of the minimum qualifications it had legally promised of Bryan's parents. In other words, the DOE was excellent at making false commitments and not telling its subordinates about the true nature of the commitments. If a private party were to conduct itself in this

9

manner, the court would definitely find that there was fraud. *See generally, Whitehead By and Through Whitehead v. School Board of Hillsborough County, Fla.*, 918 F.Supp. 1515 (M.D. Fla. 1996); *W.B. v. Matula*, 67 F.3d 484 (3rd 1995).

On pages 15 and 16, Defendants argue that their actions were taken in "good faith," whatever that term means. However, the Defendants miss the point because these actions could not be calculated to meet the terms and conditions of the two decisions and the two Settlement Agreements. For instance, the first settlement agreement focused the issue driving the administrative hearing: "the failure of Respondent to follow and implement the [IEP] dated January 19, 2001 and the coordinated service plan dated October 17, 2000." That Stipulated Order provided:

> . . . In part, the plans recommended that services be provided to [Bryan] including, but not limited to, the following techniques for use with autistic children: (1) Treatment and Education of Autistic and related Communication Handicapped Children (TEACCH), Discrete Trial Training (DTT), and Picture Exchange Communication System (PECS).

<u>Findings and Order</u>

> At the May 7, 2001 hearing, the parties, through their respective representatives, stipulated and IT IS SO ORDERED as follows:
>
> 1. The IEP dated January 29, 2001 and the CSP dated October 17, 2000, for [Bryan], shall be followed.
>
> 2. Notwithstanding any other provision in the IEP or CSP, the Department of Education and/or the Department of Health, State of Hawaii, shall hire and train an adult educational aide for [Bryan] no later than May 21, 2001. The training for the adult educational aide shall include

10

instruction in the TEACCH, DTT, and PECS methods for behavioral management and educational instruction. Dr. Jana Ortiz, Ms. Kim Smalley, or someone with similar qualifications and/or experience, shall provide the training for the adult educational aide.

3. The adult educational aide shall provide services to [Bryan] during the normal school hours. Beginning May 31, 2001, the adult educational aide shall also provide after school services to [Bryan] from 4:00 p.m. to 7:00 p.m. on all regular school days. The adult educational aide shall provide the services on a consistent basis with the goal of completing all tasks and documentation required by the TEACCH, DTT, and PECS methods of behavioral management and educational instruction. However, the failure to complete the trials and documentation required by TEACCH, DTT, and/or TECS on a particular day due to cancellation of session by parents, absences, illnesses or reasons beyond control shall not be considered a breach of Respondent's obligation under this Decision and Order.

4. The Department of Education and/or Department of Health shall provide an adult educational aide described above for [Bryan] using the TEACCH, DTT, and PECS methods for behavioral management and educational instruction until October 1, 2001. For each day that an after school educational aide is not provided for [Bryan] after May 21, 2001, the Department of Education and/or Department of Health shall be obligated to make up those days beginning after October 1, 2001.

5. In the event the adult educational aide does not complete his/her services for [Bryan] during the time periods set forth herein, for any reasons whatsoever, the Department of Education and/or the Department of Health shall locate, secure and have in place a suitable replacement within two weeks from the date of the termination.

Plaintiffs' Concise Statement of Fact at pp. 16 to 18.

In this first agreement, Respondent promised and committed to provide a fully trained (in the specified methodologies) skills trainer, it provides for the training and replacement of skills trainers and a commitment to makeup time missed. Despite the assurances and commitments, Defendants did not provide an after school aide and the Defendant refused to agree to makeup days. So began a clear series of ever-increasing commitments promised or required in legally enforceable document which the DOE never implemented.

The DOE developed a strategy of promising all of these excellent services or being required by the administrative hearings officer without ever intending or trying to implement them. Another example of this clear deliberate indifference is in Respondents' response to the adverse decision rendered on May 4, 2004 in which the hearing officer made devastating findings of fact, a decision the Respondent did not appeal, but at the same time Respondent never complied with the decision. *See* pp. 43 to 52. For the Defendants to claim that there are genuine issues of material fact is pure sophistry. There is no dispute about what they agreed to do and the fact that they failed miserably to meet that duty. That is all that is sought by Plaintiffs' Motion.

Plaintiffs' situation is very much like the one presented to the court in *Swenson v. Lincoln County School District No.2*, 260 F.Supp.2d 1136 (D.

Wyoming 2003) where the court determined that plaintiffs had a viable claim for damages where the court ruled that:

> The Court finds that Plaintiff has carried her summary judgment burden on both elements for several reasons. First, Defendant admits that it knowingly violated Title II of the ADA. (Def.'s Answer, at Paragraphs 12, 14). The ADA does not provide any exceptions for what Defendant perceives as "minor technical violations." These "minor technical violations" of the ADA resulted in, for one example, Plaintiff and her family having to park across the street from the high school and then trek through the snow to attend a performance in the auditorium because there were no handicapped parking spaces marked or available. Plaintiff has also presented ample evidence that Defendant was aware that its policies were in violation of Plaintiff's federally protected rights. The School District's superintendent, principals, and special services director were all aware that the Cokeville High School was not ADA compliant, yet they failed to make the high school compliant before Plaintiff graduated.

*Swenson* at 1146.

## VII. DEFENDANTS MISPLACED RELIANCE ON SEVENTH CIRCUIT CASE LAW

In arguing for summary judgment, the State relies heavily on *Grzan v. Charter Hosp. of N.W. Ind.*, 104 F.3d 116 (7th Cir. 1997). A careful reading of *Grzan* reveals that the State's reliance is misplaced. The plaintiff in *Grzan*, a psychiatric patient, was admitted to Charter Hospital for medical treatment. 104 F.3d at 118. According to *Grzan*, soon after arriving at Charter, a hospital counselor took advantage of his position and her vulnerable condition by enticing her into a sexual relationship. *Id.* Grzan filed a civil complaint under §504,

claiming that the hospital discriminated against her on the basis of her disability. Additionally, Grzan alleged that the hospital committed various state tort violations. *Id.*

In affirming the district court's decision to dismiss Grzan's §504 complaint, the Seventh Circuit held, *inter alia*, that Grzan was not "otherwise qualified" to receive psychiatric treatment from Charter Hospital, because absent her handicap, she would not have been eligible for treatment in the first place. *Id.* at 120-21. Holding that a medical malpractice claim does not fit into the four-element framework required by §504, the court stated appellants cannot assert that a violation of §504 occurred, "without a showing that the non-handicapped received the treatment denied to the 'otherwise qualified' handicapped." *Id.* at 121 (quoting *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1494 (10th Cir. 1992). The court agreed with *Johnson* that: "§504 is ill-suited for bringing claims of discriminatory medical treatment against a facility when the Plaintiff is comparing her treatment (medical or non-medical) to the treatment afforded other handicapped individuals." *Id.* at 121-22. Citing with approval the Second Circuit's decision in *United States v. University Hosp, State University at Stony Brook*, 729 F.2d 144, 156 (2d Cir. 1984), the court stated that "the mainstream of cases under section 504 exemplifies [that] the phrase 'otherwise qualified' is geared toward relatively static programs or activities such as education,

employment, and transportation systems." The court further stated with approval the holding in *Johnson* that the "term otherwise qualified cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.' " *Id.* at 121. *(*quoting *Johnson,* 971 F.2d at 1493- 94 (*quoting* University Hospital, 729 F.2d at 156).

Thus, *Grzan* is easily distinguishable. Indeed, *Grzan* is a highly unusual case, where the court ruled that the medical malpractice plaintiff was not otherwise qualified under §504, the court made no new pronouncements about §504; it simply applied existing 504 analysis to find no cause of action. There were legitimate questions about the plaintiff's eligibility to be entitled to §504 protections and *Grzan* was not relied on by any other circuit for guidance.

## VIII. MISUSE OF CASE LAW

In order to create the illusion of decisional law supporting their position, Defendants offer many cases – most are clearly inapplicable to this case. For example, the citation to *Smith v. Ise of Wight County School,* 284 F.Supp.2d 370 (E.D. Va. 2005); *aff'd in part and rev'd in part, remand on other grounds,* 402 F.3d 468 (4th Cir. 2005) as saying that Plaintiff cannot establish that 504 allows for damages upon a denial of FAPE. That appellate case does hold that a proper Section 504 claim requires compliance with the statute of limitations and it offers nothing helpful for the proper disposition of the instant case.

15

Likewise, Defendants appear to rely on the truncated decisions in *Memmer v. Marin County Courts*, 169 F.3d 630 (9th Cir. 1999) and in *Midgett v. Tri County Metropolitan Trans.*, 254 F.3d 846 (9th Cir. 2001). The facts in both these cases readily contrast with the facts here. In *Midgett*, a disabled passenger of the bus system sued for money damages under the ADA and the court ruled that his having to wait for a serviceable bus was not a compensable claim. Similarly, in *Memmer*, the blind plaintiff had been accommodated, so she had no claim.

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be granted.

DATED: Honolulu, Hawaii, March 17, 2006.

/S/ STANLEY E. LEVIN
_____
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
SHELBY ANNE FLOYD
MEI-FEI KUO

Attorneys for Plaintiffs

# **CERTIFICATE OF COMPLIANCE**

I certify that this reply complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This reply uses a proportional typeface and contains 3,886 words.

DATED: Honolulu, Hawaii, March 17, 2006.

/S/ STANLEY E. LEVIN
_____
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
SHELBY ANNE FLOYD
MEI-FEI KUO

Attorneys for Plaintiffs