Of Counsel:
DAVIS LEVIN LIVINGSTON GRANDE
STANLEY E. LEVIN            1152-0
MICHAEL K. LIVINGSTON   4161-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

LAW OFFICES OF CARL M. VARADY
CARL M. VARADY              4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447
FAX: 523-8448
E-mail: carl@varadylaw.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i, and ALVIN RHO, in his official capacity as West Hawai'i District Superintendent,<br><br>Defendants. | CIVIL NO. CV 05-00247 HG/BMK<br>CIVIL NO. CV 04-00442 HG/BMK<br>Consolidated (Other Civil Action)<br><br>PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE DOCTRINE OF ISSUE PRECLUSION REGARDING ALL ADMINISTRATIVE HEARING DECISIONS AND THE SETTLEMENT AGREEMENT AND CERTIFICATE OF SERVICE |

|   |
|---|
| HEARING: June 5, 2006<br>TIME:    10:30 a.m.<br>JUDGE:   Helen Gillmor<br><br>TRIAL DATE: October 11, 2006<br>JUDGE: HELEN GILLMOR |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
OF PLAINTIFFS' MOTION TO ENFORCE THE DOCTRINE
OF ISSUE PRECLUSION REGARDING ALL ADMINISTRATIVE
HEARING DECISIONS AND THE SETTLEMENT AGREEMENT**

**I.    INTRODUCTION**

Defendant does not really oppose Plaintiffs' Motion because it cannot. Plaintiffs merely have asked the court to apply the black letter law to this case. Underlying the doctrine of res judicata are strong policies of finality and judicial economy. The Defendants' claim that the facts Plaintiffs seek to establish were not "necessary" to the ultimate administrative holding is incorrect. Memorandum in Opposition at 3. Defendant's position is wrong and misreads the law of res judicata.

Defendants make no suggestions about specifics of issues or facts which they agree are precluded. This lack of specifics is fatal to their position. They have not contested the facts asserted and thus, they are undisputed for purposes of this motion. The doctrine of res judicata precludes further evidence that conflicts with any of the Administrative Rulings of May 11, 2004 and July 23, 2004.

## II.   ARGUMENT

### A.   PRIOR RULINGS BY THE NINTH CIRCUIT AND IN THIS COURT APPLY HAWAII RES JUDICATA PRINCPLES TO FINDINGS IN IDEA DUE PROCESS HEARINGS

The Ninth Circuit has explained the function of issue preclusion in federal court cases in which results of Hawaii administrative decisions are at presented.

> Federal courts must accord a state court judgment the same preclusive effect that the judgment would receive in state court. *Allen v. McCurry*, 449 U.S. 90, 94-96, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980); *Trujillo v. County of Santa Clara,* 775 F.2d 1359, 1363 (9th Cir. 1985); s*ee University of Tennessee v. Elliott*, 478 U.S. 788, 798-99, 92 L. Ed. 2d 635, 106 S. Ct. 3220 (1986) (rule applies to fact-finding by administrative agencies acting in quasi-judicial capacity). Under Hawaii law, state courts give preclusive effect to the findings of an administrative agency if the issue decided in the prior action is identical to the issue in the current action, a final judgment on the merits was issued, and the parties in the current action are the same or in privity to the parties in the prior action. *Santos v. State*, 64 Haw. 648, 646 P.2d 962, 965-66 (Haw. 1982).

*Bator v. Hawaii*, 39 F.3d 1021, 1026-1027 (9th Cir. 1994); *accord, Ancheta v. Watada,* 135 F. Supp. 2d 1114, 1119 (D. Haw. 2001).

Thus, in 2001, Judge Ezra carefully considered claim and issue preclusion arising from prior IDEA due process hearings. *Stephen L. v. LeMahieu*, Civil No. 00-338 DAE/KSCC; Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment and Granting Plaintiffs' Motion for Partial Summary Judgment filed June 18, 2001, *Patricia N. v. LeMahieu*, 141 F.Supp.2d 1243 (D. Haw. 2001), *Mark H. v. LeMahieu*, Civil No. 00-282 DAE/LEK; Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment

3

and Granting Plaintiffs' Motion for Partial Summary Judgment.  In *Patricia N. v. LeMahieu,* Judge Ezra agreed with the Plaintiffs that the findings of fact from due process hearings would be given preclusive effect.  After thoroughly examining the arguments, Judge Ezra ruled that Defendant, which had appeared in the prior due process hearings, was precluded from relitigating whether Defendant failed to provide FAPE and whether the parents' own program was appropriate.

> The court does not understand the Plaintiffs to be asking (at this juncture) that their administrative victory be automatically translated into a victory on their present §504 claims, but rather only that Defendants be precluded from re-litigating whether Defendants failed to provide FAPE and whether the parents' own program was appropriate. *Id.* at 1256.

Judge Ezra then explained why giving preclusive effect to the administrative findings was mandated by *Bator*.  He found the issues to be identical in the due process hearing and the subsequent Section 504 lawsuit; final judgment was rendered at the administrative hearing and the decisions were not appealed by the State, which participated directly in both aspects of the case.  Turning to the last element—one of fairness—Judge Ezra considered the DOE argument that there had not been the same opportunity to litigate that would have been available in federal court.  Judge Ezra rejected this contention, noting that the opportunity not be identical to court proceedings, but merely fair, and concluded that there had been a full and fair opportunity litigate at the administrative hearing level.  Of that opportunity, he found that:

> In this case, Defendants had plenty of incentive to fully address whether Amber received a FAPE. Although the hearing officer would not have the power to grant money damages, he or she can order the state to provide costly educational benefits to the students (as well as reimbursement for money spent by the parents). Further, the prevailing party at an IDEA hearing is entitled to (potentially great) attorneys fees and costs. Defendants do not cite any evidence that they did not put on as a result of the limited discovery available in the IDEA hearing, nor that they would have more vigorously rebutted Plaintiffs' witnesses had more time been available.

*Id.* at 1257.

The Court offered additional reasons why res judicata should apply. Judge Ezra stated:

> In addition to meeting the requirements under the rule, the court notes a few additional reasons why Defendants should be estopped from litigating the narrow issues presented here. First, they did not appeal the administrative decision, thereby essentially waiving their right to challenge the validity of the FAPE determination. Second, the court finds that res judicata should apply as a matter of judicial economy. As stated above, Defendants have not pointed this court to what they would have done differently had the administrative proceeding been more "formal." Therefore, the court must conclude that re-examining the issue of whether FAPE was provided to Amber would be merely a re-hash of the administrative proceeding, a proceeding which (at least under circumstances of an administrative appeal) is entitled to some deference by this court. *See Ojai Unified Sch. Dist. V. Jackson,* 4 F.3d 1467, 1472 (1993). *Id.* at 1257.

This analysis is particularly apt given the torturous history presented in the present case of a decade-long series of due process hearings and settlement agreements that were never implemented by DOE. Despite the obvious

persuasiveness of Judge Ezra's reasoning when applied to the instant case, Defendants do not refer to his rulings at all.

Defendant offers a very confusing interpretation of the case law and says nothing regarding specific the findings presented for the Court's application of the rule. Without focusing on a single finding, Defendant attempts to distract the Court by arguing that the findings of fact are not really what they purport to be.

Plaintiffs agree that, to apply the doctrine properly, it is very important to determine what was at issue in the first proceeding. As one noted commentator on federal law observed about the first proceeding:

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sec, 94 U.S. 351, 352 [24 L.Ed. 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

Wright, Miller & Cooper, *Federal Practice and Procedure*: § 4406 at p. 45.

If the plaintiff wins, the entire claim is merged in the judgment, the plaintiff cannot bring a second independent action for additional relief and they cannot avoid the judgment by offering new defenses. The process of defining the claim or cause of action the matters that both might have and should have been advanced in the first litigation. The RESTATEMENT (SECOND) OF JUDGMENTS provides what has

been described as a "transactional" approach by defining the claim that was at issue and thus, precluded such a claim:

> (1) [I]ncludes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Wright, Miller & Cooper, *Federal Practice and Procedure*: § 4407 at p. 55.

Utilizing this test, it is apparent that the transactions at issue here consist of the facts related to the Plaintiffs' rights to remedies under IDEA that underlie the due process decisions. The findings made within the context of Plaintiffs' pursuit of those IDEA remedies now are preclusive.

### B. DEFENDANT IS PRECLUDED FROM RE-LITIGATING THE ISSUES UNDERLYING THE FAPE RULINGS BELOW

Just as in *Patricia N.*, findings were made by the hearing officers against DOE in the present case in administrative hearings and those findings led to the ultimate conclusion that Plaintiffs were denied FAPE. Defendant relies not on Hawaii law, but on a federal antitrust case for the proposition that, although preclusive force attaches to determinations that were necessary to support the court's judgment in the first action, litigants conversely are not precluded from

relitigating an issue if its determination was merely "incidental" to the judgment in the prior action. *Segal v. American Tel. & Tel. Co., Inc.*, 606 F.2d 842, 845 n.2 (9th Cir. 1979). *Segal* is more properly cited for noting the exception to issue preclusion where "the issue is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context." *Id.* Nor, does Defendant properly explain that:

> "In determining whether an issue was 'actually litigated and determined' in an earlier adjudication, the court is 'allowed to draw necessary inferences from the prior adjudication in order to determine whether an issue was actually decided.'" Disimone, 121 F.3d at 1268 (quoting *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.,* 106 F.3d 894, 901 (9th Cir.), cert. denied, 522 U.S. 857, 139 L. Ed. 2d 101, 118 S. Ct. 155 (1997)).

*Alberto-Culver Co. v. Trevive, Inc.,* 199 F. Supp. 2d 1004, 1010 (D. Cal. 2002).

Thus, issue preclusion has been applied in complex trade cases in which extensive factual findings have been made to support the ruling of the administrative body, where there has been a full and fair opportunity to contest the issues for which preclusion is sought. *Id.* It is the thoroughness of the process that is critical to a determination that the findings should be treated as preclusive, not whether every comma and period can be inexorably tied to the decision. *Id. Lum v. City and County of Honolulu*, 732 F. Supp. 1070 (1990), *Wailua Associates v. The Aetna Casualty & Surety Company*, 27 F.Supp.2d 1211 (1988).

8

All Plaintiffs seek here, is the same relief granted by Judge Ezra in the *Patricia N.* case—to be relieve from relitigating these facts, which were clearly tied to a full and fair airing of issues and the determination that Bryan had been denied FAPE.

Ninth Circuit law is consistent with the RESTATEMENT and Hawaii law. *See Owens v. Kaiser Foundation*, 244 F.3d 709, 723 (9th Cir. 2001).[1] The "prevailing law" includes the judge-made law of the State of Hawaii. That Hawaii law includes decisions that recognized the offensive use of the issue of preclusion. In *Exotics Hawaii Kona, Inc. Eiduponte Demours & Company*, 104 Haw. 358, 90 P.3d 250 (2004), the Hawaii Supreme Court ruled that precluding a defendant from relitigating an issue that he previously litigated would stop the defendant from "re-hashing the same issue a second time around." *Exotics*, 90 P.3d at 260. (citations omitted).

Precluding Defendant from relitigating such an issue will ensure that what has been determined by competent tribunals will be accepted as undeniable truth and that legal efficacy of judicial pronouncements will not be undermined. *Exotics*

---

[1] The *Kaiser* court recited the oft-quoted language as:

> Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.

at 263.  *See also Keahole Defense Coalition, Inc. v. Board of Land and Natural Resources*, __ P.3d __, 2006 WL 1351674 (Haw.Sup.Ct. 2006) (citations omitted).

DOE should be precluded from relitigating all of the facts pertinent to the finding that it denied Bryan FAPE.  The instant case is very similar to the *Exotics Hawaii*.  The *Exotic* court ruled there are four standards which must be satisfied before non-mutual issue preclusion should be granted when:

> As previously indicated, four requirements must be satisfied before issue preclusion may be applied in any case:  (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

*Exotics Hawaii-Kona, Inc. v. E.I. Dupont De Nemours & Company*, 90 P.3d 250, at p. 17.

As no challenge has been made to the fairness of either the May, 2001, the May, 2004 or the July, 2004 hearings, then the application of non-mutual claim or issue preclusion is clearly warranted.  *See Ross v. Alaska*, 189 F.3d 1107, 1112-1113 (9th Cir. 1999).  Just like the chemical company in *Exotics*, the DOE here was provided with ample opportunity to present all their evidence and then the DOE was provided with a clear chance to appeal and the DOE eschewed that chance.

### III. ISSUE PRECLUSION AS APPLIED HERE

Applying the principles discussed above, all facts supporting the finding of a denial of FAPE to Bryan by the DOE also are fixed for purposes of the instant case. This would necessarily include the finding that the DOE failed to provide adequate, trained and qualified skills trainers. Additionally, in 2004, the DOE unilaterally with no advance notice or agreement, transferred Bryan to a classroom where he was the <u>only</u> student. DOE should be precluded from adducing any evidence contrary to the specific findings which dispute:

In the Decision and Order dated May 21, 2001, Findings of Fact, Conclusion of Law and Decision in paragraphs 2 and 3, the findings establish that Bryan's individual and unique needs required DOE:

---

[2] Mrs. Wiles-Bond observed that:

When I picked up Bryan today I found him using a mat as a slip and slide with his own urine while four adults watched. They were Sven, Jennifer, Larry and Wendy Clark. Bryan was having a wonderful time and was attempting to urinate more in order to make the surface more slippery. This self-stimulation increases negative behaviors we are trying to avoid as well as completely reinforces his urinating inappropriately. The room was small, usually used a conference room and seemed to lack materials. It was our understanding from the discussion with Dayle on 9/20 that Bryan was in his regular room and the other students were moved to a different location. When we received the letter from Bob Gentzel that identified this as the primary space Bryan uses we became very concerned since it is very confined (smaller than his bedroom) with very limited materials and no visual stimulation. He apparently only goes into the regular classroom for computer (3 times per day, who knows how long each session is, and apparently a computer will be moved into F-2 which will eliminate him going to the regular classroom for computer activities. The only other time he is in the classroom is for music but it is unspecified how often that occurs and for mat-sensory activities. I am unsure what sensory mat activities are and wonder if they are referring to the urine slip and slide. Since a mat was in the small room I am wondering if he is accessing F-101 for "mat-sensory activities" at all. The question I have is how much time per day is Bryan spending in F-101. It is not acceptable that he is placed in such an area (slightly larger than a closet) all day. Bryan is rapidly regressing with the structure in the school setting. He has been placed in a very confined space (almost a closet) for probably 95% of his day. It may be 100% soon now that the mat is moved into the room and they are anticipating moving in a computer. How often is music? Once a week is my guess and are we talking live and interactive or watching the tired old film from the summer when it used to be interactive. No wonder he is frustrated. Even an adult would go stir crazy in a room that size for 6-8 hours. Today before 11:00 a.m. he had gone through at least 7 pairs of pants. Obviously this is behavioral and indicates how serious his regression is from the lack of instructional program, trained staff to implement it an inappropriate "classroom" setting. At this point if this is the only space the school can provide I would like to see the teacher/IISC provide a curriculum to be implemented at home until the PASC company can start. This current placement is not only cruel it is clear—it is causing significant regression.

>To hire and train an adult educational aide for no later than May 21, 2001. Trained in the TEACCH, DTT, and PECS methods for behavioral management and educational instruction.
>
>Retain Dr. Jana Ortiz, Ms. Kim Smalley, or someone with similar qualifications and/or experience, to provide the training for the adult educational aide.
>
>Assure that the adult educational aide provided services to S during the normal school hours.
>
>Beginning May 31, 2001, to assure the adult educational aide also provided after school services to Bryan from 4:00 p.m. to 7:00 p.m. on all regular school days.
>
>Assure that the adult educational aide provided the services on a consistent basis with the goal of completing all tasks and documentation required by the TEACCH, DTT, and PECS methods of behavioral management and educational instruction.

The Findings of Fact, Conclusions of Law and Decision dated May 11, 2004 paragraphs 2 to 8, 10, 12 to 15 and 17 to 18 as, established that:

>Bryan's disability required that he be placed in a fully self-contained special education classroom for children with autism.
>
>Bryan was moderately toilet regulated in school with accidents still occurring.
>
>Appropriate toileting skills continued to be a strong need for Bryan at home and in the community.
>
>Bryan does not speak.
>Bryan communicates mainly through American Sign Language ("ASL"). He used approximately 20 signs spontaneously and has approximately 100 words in his receptive/expressive vocabulary.
>
>A person needs to know ASL and Bryan's current bank of ASL vocabulary words to communicate with him.

12

Direct adult supervision is needed for Bryan while on campus due to the severity of his disability. 1:1 adult instruction support ("skills trainer") is necessary for Bryan to progress through the objectives on his Individualized Education Program ("IEP").

From October 2003 to February 2004, the Department of Education ("DOE") failed to provide Bryan with the required number of skills trainer service hours per week as required in his relevant IEPs.

The six skills trainers DOE provided to Bryan in the Fall of 2003 through February 2004 did not have prior experience working with autistic children. Five of the six skills trainers had no prior experience with ASL.

Bryan's teacher did not know ASL and did not use ASL to communicate with Bryan and two other children in his class who use signs as their primary mode of communication.

When Bryan did not receive the number of skills trainer hours specified in his IEPs from October 2003 through February 2004, he regressed in a number of areas.

One significant area of regression involved Bryan's toileting skills.

A second significant area of regression involved learning to behave independently and respecting the personal space and personal property of others.

In the Fall of 2003 through February 2004, DOE was unable to provide Bryan with the number of skills trainer hours required by his IEPs.

The Findings of Fact, Conclusions of Law and Decision dated July 23, 2004,

establish:

Byran's IEP required that he receive special education services every day of the year except on five holidays: Thanksgiving, Christmas, New Year's Day, Easter, and the Fourth of July.

Bryan's IEP provided that he was to receive approximately seventy hours of services a weeks, in school, at home, and in the community.

DOE provided Bryan with four weeks of ESY special education in a classroom under the supervision of a teacher ("summer school").

During the rest of the ESY period, there is no trained, certified, and/or qualified teacher who provides special education to Student.

The teacher hired for 2004 summer school session was not a qualified special education teacher, had no experience teaching autistic children, and did not know ASL.

The proper delivery of Student's program required the coordination of special education and related services under the supervision of a special education teacher who is trained and qualified to deliver services to an autistic child and is proficient in ASL.

DOE did not supply a qualified, trained SPED teacher for Bryan who is trained in ASL and can deliver the special education services specified in the Bryan's IEPs during the ESY periods.

The Defendants did not appeal the May 21, 2001, the May 11, 2004, and the July 23, 2004 hearing decisions, and these findings are conclusive.

DATED:  Honolulu, Hawaii, May 25, 2006.

/S/ STANLEY E. LEVIN
_____
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
CARL M. VARADY

Attorneys for Plaintiffs