IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next of friend of their son, BRYAN WILES-BOND, a minor,<br><br>   Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, STATE OF HAWAII, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent,<br><br>   Defendants. | CIVIL NO. 04-00442 HG-BMK<br>CIVIL NO. 05-00247 HG-BMK<br>CONSOLIDATED (Other Civil Action) |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, CONSTRUED AS A MOTION FOR JUDGMENT ON THE PLEADINGS**
**AND**
**DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND**
**DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION TO ENFORCE THE DOCTRINE OF ISSUE PRECLUSION REGARDING ALL ADMINISTRATIVE HEARING DECISIONS AND THE SETTLEMENT AGREEMENT**
**AND**
**DENYING PLAINTIFFS' MOTION TO STRIKE DECLARATIONS FOR NON-COMPLIANCE WITH RULE 56(E)**
**AND**
**DENYING PLAINTIFFS' MOTION TO AMEND AND/OR SUPPLEMENT THE RECORD**

Plaintiffs Ann Kimball Wiles and Stanley Bond, individually and as next of friend of their son, Bryan Wiles-Bond, a minor ("Plaintiffs") are seeking partial summary judgment, asking the Court for an order establishing that Defendants the Department of Education, State of Hawaii ("DOE"), and Alvin Rho, in his official capacity as West Hawaii District Superintendent (collectively, "Defendants"), are liable to Plaintiffs for

**EXHIBIT ___A___**

damages, in an amount to be determined by a jury, under the Rehabilitation Act, 29 U.S.C. § 794, for Defendants' repeated failure to provide a free appropriate public education to their son in compliance with administrative decisions and the parties' settlement agreement.    Defendants move for summary judgment, seeking dismissal of Plaintiffs' Rehabilitation Act claim on the grounds that the facts alleged do not support a claim for such relief.    In addition to their motion for partial summary judgment, Plaintiffs have also moved: to strike declarations submitted by Defendants in opposition to Plaintiffs' motion for summary judgment, to enforce the doctrine of issue preclusion as to the administrative decisions, and to amend or supplement the record.

For the reasons set forth below,

1.    Defendants' Motion for Summary Judgment, construed as a Motion for Judgment on the Pleadings, is DENIED.

2.    Plaintiffs' Motion for Partial Summary Judgment is DENIED.

3.    Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement is GRANTED IN PART AND DENIED IN PART.

4.    Plaintiffs' Motion to Strike Declarations for Non-Compliance with Rule 56(e) is DENIED.

5.    Plaintiffs' Motion to Amend and/or Supplement the

2

Record is DENIED.

## PROCEDURAL HISTORY OF CONSOLIDATED CASES

On July 21, 2004, Plaintiffs filed a Verified Complaint in Civil Case No. 04-00442 HG-BMK and on July 1, 2005, Plaintiffs filed a "Verified Amended and Supplemental Complaint" against Defendants DOE, and Alvin Rho, in his official capacity as West Hawaii District Superintendent ("Rho").

On April 8, 2005, Plaintiffs filed a new Complaint against Defendant Department of Education, State of Hawaii ("DOE") in Civil Case No. 05-00247 SOM-BMK.

On July 26, 2005, the Court entered an Order granting the parties' Stipulation to Consolidate, thereby consolidating Civil Case No. 05-00247 SOM-BMK and Civil Case No. 04-00442 HG-BMK.

On August 8, 2005, the consolidated cases were assigned to Judge Helen Gillmor.

## MOTIONS BEFORE THE COURT

1. **Defendants' Motion for Summary Judgment Construed as a Motion for Judgment on the Pleadings**

On February 24, 2006, Defendants filed a "Motion for Summary Judgment".

On March 10, 2006, Plaintiffs filed a "Memorandum in Opposition to Defendants' Motion for Summary Judgment".

On March 17, 2006, Defendants filed a "Reply Memorandum in Support of Defendants' Motion for Summary Judgment". In their reply Defendants "acknowledge that their Motion for Summary

3

Judgment was mistakenly titled as such, and respectfully request that Defendants' Motion for Summary Judgment be converted to and treated as a Motion for Judgment on the Pleadings."

The Court agrees that Defendants' Motion should be treated as a Motion for Judgment on the Pleadings and construes it as such.

On March 28, 2006, the Court held a hearing on Defendants' Motion for Judgment on the Pleadings and took Defendants' Motion for Judgment on the Pleadings under advisement.

2.    <u>**Plaintiffs' Motion for Partial Summary Judgment**</u>

On February 22, 2006, Plaintiffs filed a Motion for Partial Summary Judgment with a separate concise statement of facts in support.  Subsequently, on March 21, 2006, Plaintiffs filed a "Submission of Declaration of Dr. Kimberly Smalley in Support of Plaintiffs' Concise Statement of Facts Filed on February 22, 2006."

On March 10, 2006, Defendants filed a Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment and a separate and concise statement of facts in support.

On March 17, 2006, Plaintiffs filed an Opposition to Defendants' Concise Statement of Fact filed March 10, 2006.

On March 17, 2006, Plaintiffs filed a reply to Defendants'

Opposition to Plaintiffs' Motion for Partial Summary Judgment.[1]

On March 28, 2006, the Court held a hearing on Plaintiffs'
Motion for Partial Summary Judgment and took Plaintiffs' Motion
for Partial Summary Judgment under advisement.

3.  **Plaintiffs' Motion to Strike Declarations for Non-Compliance
    with Rule 56(e)**

On March 17, 2006, Plaintiffs filed a "Motion to Strike
Declarations for Non-Compliance with Rule 56(e)."  Plaintiffs'
motion seeks to strike certain portions of declarations filed in
support of Defendants' Memorandum in Opposition to Plaintiffs'
Motion for Partial Summary Judgment and attached to the
Defendants' concise statement of facts.

On March 23, 2006, Defendants filed an Opposition to
Plaintiffs' Motion to Strike Declarations for Non-Compliance with
Rule 56(e) and a Supplemental Separate and Concise Statement of
Facts.

4.  **Plaintiffs' Motion to Enforce the Doctrine of Issue
    Preclusion Regarding All Administrative Hearing Decisions
    and the Settlement Agreement**

On April 24, 2006, Plaintiffs filed a "Motion to Enforce the
Doctrine of Issue Preclusion Regarding All Administrative Hearing
Decisions and the Settlement Agreement."

───────────────────

[1] Plaintiffs erroneously entitled their March 17, 2006
document "Reply to *Plaintiffs*' Motion for Partial Summary
Judgment" when it should have been entitled Reply to *Defendants*'
Opposition to Plaintiffs' Motion for Partial Summary Judgment.

On May 18, 2006, Defendants filed "Defendants' Memorandum in Opposition to Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement."

On May 25, 2006, Plaintiffs filed a "Reply Memorandum in Support of Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement."

On June 2, 2006, the Court took Plaintiffs' "Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement" under advisement without a hearing.

5.    **Plaintiffs' Motion to Amend and/or Supplement the Record**

On August 17, 2006, Plaintiffs filed a "Motion to Amend and/or Supplement the Record". Defendants did not file an opposition to this motion.

**BACKGROUND**

**Overview**

Bryan Wiles-Bond ("Bryan") is a severely autistic minor who was living on the Island of Hawaii. His parents enrolled him in the Hawaii public school system when his family moved to Hawaii in 1999. Bryan's disability requires that he be placed in a fully self-contained special education classroom for children with autism. Bryan's Individualized Education Program ("IEP")

6

required, among other services, one-on-one assistance from a trained aide or skills trainer during the entire school day, after school, and on weekends.

On February 27, 2001, Bryan's parents submitted a request to the Department of Education ("DOE") for a due process hearing, claiming that the DOE had failed to implement the IEP. The parties stipulated to a Decision and Order, dated May 21, 2001 (Plaintiffs' Motion for Partial Summary Judgment at Exhibit A at Bates Stamp 015-019 ("May 21, 2001 Decision")).

The May 21, 2001 Decision, in effect from May 7, 2001 through October 1, 2001, required the DOE to follow the IEP dated January 29, 2001, and the Coordinated Service Plan dated October 17, 2000. The May 21, 2001 Decision required that the Department of Health and the Department of Education hire and train an adult skills trainer to provide specific services to Bryan.

The DOE was not complying with the May 21, 2001 Decision. On February 15, 2002, Plaintiffs filed a complaint against the DOE in federal court seeking to enforce the May 21, 2001 Decision and to require the DOE to comply with Bryan's then-current IEP. See Wiles v. DOE, Civil Case No. 02-00101 (D. Haw.).

On July 1, 2002, Plaintiffs and the DOE entered into a Release and Settlement Agreement as to the claims raised in the federal lawsuit. (Complaint in Civil Case No. 05-00247 ("Compl.") at Exhibit A, "Settlement Agreement".) Plaintiffs

7

contend that the DOE failed to fully comply with the Settlement Agreement.

The DOE developed additional IEPs for Byran in November 2002, November 2003, and January 2004, entitling him to skills trainer services for a certain number of hours each week. Bryan's January 2004 IEP required 1:1 instructional support during the school day for 6.5 hours (5.5 hours on Wednesday), and 6.0 hours per day on the weekend.  It also required that he receive special education and related services for 360 days per year.

On February 26, 2004, Plaintiffs submitted a request for a due process hearing, alleging, among other things, that from October 2003 through February 2004 the DOE had failed to provide the services and skills trainers required by his November 2002, November 2003 and January 2004 IEPs.  The Administrative Hearings Officer ("Hearings Officer"), after a hearing on April 5, 2004, issued a Findings of Fact, Conclusions of Law and Decision dated May 11, 2004. (Compl. at Exhibit B, "May 11, 2004 Decision".)

In its May 11, 2004 Decision, the Hearings Officer found that the DOE denied Bryan a free appropriate public education ("FAPE") by failing to provide some of the required services and skills trainers.  The Hearings Officer ordered the DOE to hire and have in place the skills trainers needed to consistently provide Bryan with not less than 95% per calendar month of the

skills trainer hours to which he was entitled in his IEP; hire trainers who were trained in Treatment and Education of Autistic and related Communication-Handicapped Children method, Discrete Trials Training, and American Sign Language; provide additional authorization to Bryan's autism consultant to train new skills trainers; and provide additional hours of service from a knowledgeable consultant to design, implement, and monitor a toileting program for Bryan.  Neither party appealed the May 11, 2004 Decision.  It is a final order.

In early June 2004[2], Plaintiffs submitted a request for a due process hearing, alleging failures by the DOE to hire and have in place a trained, certified, and qualified special education teacher to deliver Bryan's special education program during his "extended school year," e.g., the period he would receive services outside of the regular academic year.  The request also alleged that Bryan's special education teacher for the 2004-2005 school year was unqualified.

On June 24 or 25, 2004, the DOE stipulated to the facts alleged in the hearing request and to liability.

On July 6, 2004, an administrative hearing was held on the remaining issue in the June due process hearing request: the need for a qualified teacher with experience in teaching autistic

_____

[2] The exact date the Plaintiffs made, and the DOE received, the due process hearing request is unclear from the record.

children during all portions of Bryan's extended school year.
Because the parties had stipulated to relief on June 24 or 25,
2004, the parties only submitted evidence on this narrow issue.

Pursuant to the parties' stipulated facts, a Stipulated
Partial Decision and Order was issued on July 23, 2004.  (Compl.
at Exhibit C, July 23, 2004 "Stipulated Partial Decision and
Order".)  The July 23, 2004 Stipulated Partial Decision and Order
required the DOE to prepare a written structured social skills
curriculum for implementation beginning no later than the end of
the first week of the 2004-2005 school year.  The July 23, 2004
Stipulated Partial Decision and Order also required the DOE to
hire and have in place by the beginning of the 2004-2005 school
year a licensed, certified special education teacher with
experience teaching autistic children and proficiency with
American Sign Language.

On July 23, 2004, the Hearings Officer also entered a
"Findings of Fact, Conclusions of Law, and Decision" regarding
the issue at the July 6, 2004 hearing.  (Compl. at Exhibit D,
July 23, 2004 "Findings of Fact, Conclusions of Law, and
Decision".)  The July 23, 2004, "Findings of Fact, Conclusions of
Law, and Decision" required the DOE to hire and have in place a
qualified special education teacher with experience in teaching
autistic children and who is proficient in American Sign Language
to provide services and coordination of services during the

10

extended school period.

Plaintiffs have brought the current lawsuit because of the DOE's failure to provide the services required by Bryan's IEP.

**Plaintiffs' Verified Amended and Supplemental Complaint filed July 1, 2005, in Civil Case No. 04-00442**

On July 21, 2004, Plaintiffs filed a Verified Complaint in Civil Case No. 04-00442 HG-BMK.

On July 1, 2005, Plaintiffs filed a Verified Amended Complaint ("Amended Complaint").

Plaintiffs' Amended Complaint states the following claims for relief:  (Count One) Declaratory, Compensatory and Injunctive Relief for Violations of the IDEA and Enforcement of Administrative Decisions; (Count Two) Violations of Section 504; (Count Three) Violation of Section 1983; (Count Four) Breach of Contract.

At the March 28, 2006 hearing, Plaintiffs clarified that they are only seeking money damages under the Rehabilitation Act, 29 U.S.C. § 729 ("Section 504").  With regard to their Section 504 claim, Plaintiffs' Amended Complaint alleges that Section 504 "prohibits the DOE, which receives federal financial assistance, from discriminating against handicapped individuals in the provision of equal educational opportunities, and requires the DOE to provide qualified students with disabilities with a FAPE." (Amended Compl. at ¶ 49.)  Plaintiffs' Section 504 claim is based on the following:

11

Paragraph 50:  The DOE has repeatedly been informed of the need to hire and train an adequate number of skills trainers to provide services to autistic children like Bryan.  The DOE has intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan resulting from the lack of trained and consistent skills trainers.

(Amended Compl. at ¶ 50.)

Paragraph 51:  Since entering into the Settlement Agreement, and despite administrative orders and agreements to provide services specified in Bryan's IEPs, the DOE has failed to comply with its obligations to Bryan.

(Amended Compl. at ¶ 51.)

**Plaintiffs' Complaint, filed April 8, 2005, in Civil Case No. 05-00247**

On April 8, 2005, Plaintiffs filed a Complaint in Civil Case No. 05-00247 for violation of the Rehabilitation Act, 29 U.S.C. § 729.  The facts set forth in the overview section above.  The April 2005 Complaint alleges:

Paragraph 36:  Beginning in June 2004 [and up to the time this Verified Complaint was filed], despite the Settlement Agreement and May 2004 Decision, there was no pool of trained substitutes in place, and Bryan was not receiving and did not receive 95% of the hours of services from skills trainers identified in the May 11, 2004 Decision.  The toileting program ordered has not been implemented.  No [American Sign Language] training has been conducted and no skills trainers have been hired who are qualified as required by the Decision.

(Compl. at ¶ 36.)

Paragraph 37:  Bryan's teacher in the 2004-2005 school year was a Columbus teacher.  This teacher may or may not have been licensed or certified under state law to deliver special education services.  Bryan's teacher did not know [American Sign Language] and was not familiar with the methodologies used with Bryan.  Bryan's ESY

[extended school year] teacher was not certified as a teacher.

(Compl. at ¶ 37.)

Paragraph 38: The failure to provide proper toileting was particularly troublesome because Bryan's rate of 'accidents' at school had greatly increased to as many as 18 documented incidents per day. This was a result of a lack of program, lots of down time, not being able to communicate with anyone. Defendant's failures in this regard forced Bryan to regress in his toileting to a level at which was at or below the level that he was at when he arrived in Hawaii.

(Compl. at ¶ 38.)

The Complaint further alleges that: the DOE's actions and inactions "were done with an intention that was deliberately indifferent to the federal (IDEA) rights of Bryan" (Compl. at ¶ 39); the "DOE has a pattern and practice of failing to provide Bryan with trained skills trainers to carry out their educational program, irrespective of the provisions in his IEPs, agreements made by the DOE, and various orders of the administrative hearings officer" (Compl. at ¶ 42); and "[t]he Defendant has repeatedly been informed of the need to hire and train an adequate number of skills trainers to provide services to autistic children like Bryan. The Defendant has intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan resulting from the lack of trained and consistent skills trainers." (Compl. at ¶ 47.)

Plaintiffs' July 2005 Amended Complaint in Civil Case No. 04-00442 contains substantially the same allegations as their

13

April 8, 2005 Complaint in Civil Case No. 05-00247. (Amended
Compl. at ¶¶ 38-39.)

## Plaintiffs' Requested Relief Is Limited to Money Damages

At the hearing before this Court on March 28, 2006, the
Plaintiffs conceded that in this consolidated lawsuit the only
remedy they seek is money damages under Section 504 "for the harm
caused to Bryan and his parents by the DOE" as a result of the
"DOE's deliberate indifference". (Transcript of March 28, 2006
Hearing on Plaintiffs' Motion for Partial Summary Judgment and
Defendants' Motion for Summary Judgment, "Tr." at 17, lines 21-
24); see Tr. at 16, line 25 ("We're only seeking a 504 remedy");
Tr. at 17, lines 8-10 ("The exclusive remedy that plaintiffs are
seeking is an economic remedy. And the economic remedy is one
provided only under [Section] 504").

### STANDARD OF REVIEW

### Motion for Judgment on the Pleadings

A Fed. R. Civ. P. 12(c) motion, like a Fed. Rule Civ. P.
12(b)(6) motion, tests the legal sufficiency of the claims
asserted in the complaint. The standard for judgment on the
pleadings is essentially the same as applies under Rule 12(b)(6).
See Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th
Cir. 1989). A dismissal is proper where there is a "lack of a
cognizable legal theory" or "the absence of sufficient facts
alleged under a cognizable legal theory." Balistreri v. Pacifica

14

<u>Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). "A judgment on the pleadings [may be] granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." <u>Nelson v. City of Irvine</u>, 143 F.3d 1196, 1200 (9th Cir. 1998).

**Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. <u>Celotex</u>, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of

law.  That burden is met simply by pointing out to the district
court that there is an absence of evidence to support the
nonmovant's case.  Id.

If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).  The opposing party must present admissible
evidence showing that there is a genuine issue for trial.  Fed.
R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d
1044, 1049 (9th Cir. 1995).  "If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted."  Nidds, 113 F.3d at 916 (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the
non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872
F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions,
evidence obtained through discovery, and matters judicially
noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The
opposing party cannot, however, stand on its pleadings or simply
assert that it will be able to discredit the movant's evidence at
trial.  Fed. R. Civ. P.  56(e); T.W. Elec. Serv., 809 F.2d at
630.  The opposing party cannot rest on mere allegations or

16

denials.  Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut.</u>

<u>Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the

opposing party rest on conclusory statements.  <u>National Steel</u>

<u>Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir.

1997).

<u>ANALYSIS</u>

I.  <u>Federal Statutory Framework</u>

Central to this case is the relationship between the IDEA,

20 U.S.C. § 1400 <u>et seq.</u>, and Section 504 of the Rehabilitation

Act, 29 U.S.C. § 794(a).  In particular, the issue of when, in

the education context, a plaintiff has an independent cause of

action under Section 504.  As one district court has noted,

"[s]ince the passage of the IDEA, courts have struggled with the

interaction of it with the Rehabilitation Act, . . . particularly

in regard to the remedies available to aggrieved parents for a

school system's failure to provide services to a disabled child."

<u>W.L.G. v. Houston County Bd. of Educ.</u>, 975 F. Supp. 1317, 1320

(M.D. Ala. 1997).  Generally, "[u]nlike the IDEA, § 504 focuses

not on creating rights and entitlements but on proscribing

certain discriminatory acts.  As the Third Circuit put it,

'[w]hile the IDEA is phrased in terms of a state's affirmative

duty to provide a free appropriate public education, § 504 is

worded as a negative prohibition against disability

discrimination in federally funded programs.'"  <u>Sellers v. School</u>

<u>Bd. of the City of Manassas, Va</u>., 960 F. Supp. 1006, 1010 (E.D.

17

Va. 1997) (footnote and citation omitted).

### A.   IDEA

Congress enacted IDEA to financially assist state and local agencies in educating students with disabilities.  See <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1469 (9th Cir. 1993). IDEA's goal is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living . . . "  20 U.S.C. § 1400(d)(1)(A).  IDEA defines the term "free appropriate public education" ("FAPE") as "special education and related services that . . . are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. § 1401(9).

The mechanism for ensuring FAPE is the development of a detailed, individualized instruction plan known as an "individualized education program."  IDEA defines the term "individualized education program" ("IEP") as "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of this title."  20 U.S.C. § 1401(14).  The "IEP team" that meets to discuss and formulate the disabled student's IEP consists of several individuals, including the student's parents, regular teacher, special education teacher, a representative of the local

18

educational agency, and other individuals with relevant knowledge about the student's disability.  20 U.S.C. § 1414(d)(1)(B).

In addition to a substantive right to a free appropriate public education, IDEA and its regulations provide certain procedural safeguards to parents.  For example, parents may examine all relevant records regarding identification, evaluation, and educational placement of their children; must receive prior written notice if a school proposes or refuses to alter the child's identification, evaluation, or educational placement; may request an impartial due process hearing regarding the education of their disabled child; and may obtain judicial review of an administrative decision they do not agree with regarding the identification, evaluation, or educational placement of their child.  20 U.S.C. §§ 1415(b)(1), (b)(3), (b)(6), and (f); see 34 C.F.R. § 300.1 et seq.

Recipients of federal funds, such as the State of Hawaii, Department of Education must "establish and maintain procedures in accordance with [§ 1415] . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies."  20 U.S.C. § 1415(a).  The DOE has implemented the IDEA by promulgating regulations for the "Provision of a Free Appropriate Public Education for Student with a Disability" contained in Title 8, Chapter 56 of the Hawaii Administrative Rules.

19

In 1986 Congress amended the IDEA to clarify:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). "[T]he 1986 amendments to the IDEA, . . . restored the availability of remedies under the federal Constitution and section 504 of the Rehabilitation Act of 1973. . . ." in appropriate cases. <u>Hoeft v. Tucson Unified School Dist.</u>, 967 F.2d 1298, 1304 n.4 (9th Cir. 1992).

**B.    Section 504 of the Rehabilitation Act**

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a).

Section 504 further provides that "[t]he head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978." Pursuant to Section 504, the Office

20

of Civil Rights, Department of Education, promulgated regulations designed to eliminate discrimination in education on the basis of disability.  See 34 C.F.R. § 104.31 et seq.; see also H.A.R. § 8-53-1 et seq. ("Provision of a Free Appropriate Public Education for Students with a Disability Under Section 504, Subpart D"). These regulations, like IDEA, provide that a school receiving federal funds "shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction . . . " 34 C.F.R. § 104.33(a).  A school may comply with the Rehabilitation Act regulations by implementing an individualized education program in accordance with the IDEA. See 34 C.F.R. § 104.33(b)(2).

Generally, to maintain an action under Section 504 of the Rehabilitation Act in the education context, plaintiffs must show that: (1) their children are disabled as defined by the Act; (2) their children are "otherwise qualified" to participate in school activities; (3) the School or the District receives federal financial assistance; and (4) their children were excluded from participating in, denied the benefits of, or subject to discrimination at, the school.  See W.B. v. Matula, 67 F.3d 484, 492 (3rd Cir. 1995).

II.   **Plaintiffs' "Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement"**

Plaintiffs ask the Court to take judicial notice of and apply the doctrine of res judicata (i.e., issue preclusion) to

21

various factual findings contained in the three prior Hearings Officers' decisions on May 21, 2001, May 11, 2004, and July 23, 2004.  (Reply at 12-14.)

**A.    Judicial Notice**

The doctrine of judicial notice does not apply.  To be judicially noticed under Fed. R. Evid. 201(b) a fact must be indisputable.  "[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201."  Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003); see United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (a "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings'").  In this case, Plaintiffs ask the Court to judicially notice not just the fact that the prior administrative decisions exist, but to judicially notice the factual findings contained in those decisions.  The Court will not take judicial notice of the factual findings contained in the administrative decisions.

**B.    Issue Preclusion**

"Federal courts must accord a state court judgment the same preclusive effect that the judgment would receive in state court."  Bator v. State of Hawaii, 39 F.3d 1021, 1026-27 (9th Cir. 1994).  "Findings of fact by administrative agencies acting in quasi-judicial capacities as well as legal determinations may receive preclusive effect."  Ancheta v. Watada, 135 F. Supp. 2d

22

1114, 1119  (D. Haw. 2001) (citations omitted).  Preclusive

effect should be given to the findings of administrative agencies

if:

> (1) the issue decided in the prior action is
>
> identical to the one presented in the action in
>
> question;
>
> (2) there is a final judgment on the merits;
>
> (3) the party against whom issue preclusion is
>
> asserted was a party or in privity with a party to
>
> the prior adjudication; and
>
> (4) the issue decided in the prior adjudication
>
> was essential to the final judgment.

Exotics Hawaii-Kona, Inc. v. E.I. Dupont De Nemours & Co., 90 P.

3d 250, 264 (Haw. 2004); see Patricia N. v. Lemahieu, 141 F.

Supp. 2d 1243, 1256 (D. Haw. 2001) (citing Bator, 39 F.3d at

1027).  The administrative agency must have also been acting in a

judicial capacity, it must have resolved issues of fact properly

before it, and the parties must have had an adequate opportunity

to litigate the issue.  See Ancheta, 135 F. Supp. 2d at 1119.

The doctrine of issue preclusion applies to the Hearings

Officers' decisions to the extent discussed below.  First, as to

the question of whether Defendants denied Bryan a FAPE the issues

in this case and in the administrative proceedings are the same.

Second, the Hearings Officers' decisions are all final judgments

on the merits.  Third, the parties are the same.

23

The fourth requirement, that the issue decided in the prior adjudication be essential to the final judgment, requires closer examination. Plaintiffs argue that the "DOE should be precluded from relitigating all of the facts pertinent to the finding that it denied Bryan FAPE." (Reply at 10.) As Defendants point out, issue preclusion does not apply to preclude relitigation of an issue that was not "necessary" to the judgment reached in the prior litigation. See United States v. Weems, 49 F.3d 528, 532 (9th Cir. 1995); Segal v. American Telephone and Telegraph Co., Inc., 606 F.2d 842, 845 n.2 (9th Cir. 1979); Alberto-Culver Co. v. Trevive, Inc., 199 F. Supp. 2d 1004, 1008 (C.D. Cal. 2002) (determination of the issue in the prior litigation must be a critical and necessary part of the judgment in the earlier action). For the purposes of issue preclusion "necessary" means that "the disposition in the first suit was the basis for the holding with respect to the issue and not 'mere dictum'". McLaughlin v. Bradlee, 803 F.2d 1197, 1204 (D.C. Cir. 1986) (citations omitted). "Litigants are conversely not precluded from relitigating an issue if its determination was merely incidental to the judgment in [the] prior action." Alberto-Culver Co., 199 F. Supp. 2d at 1011 (citation omitted).

In Bator, a workers' compensation case, the Court of Appeals for the Ninth Circuit affirmed the district court's holding that the only administrative finding that could be given preclusive effect was that the plaintiff suffered an injury. The court held

24

that the district court properly determined that the administrative agency's finding that the injury was caused, unintentionally, by an elbow should not be given preclusive effect. Bator, 39 F.3d at 1027.

Defendants do not object to the application of issue preclusion to the finding that the DOE denied Bryan a FAPE. (Opposition to Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion at 10 n.4.). The Court finds that the finding that Bryan was denied a FAPE as set forth in the May 11, 2004 and July 23, 2004 Hearings Officers' decisions is entitled to preclusive effect.[3]    See Patricia N., 141 F. Supp. 2d at 1257 (defendant precluded from relitigating issue of whether student was denied a FAPE and whether parents provided student with an appropriate education for which DOE was required to reimburse them).

The Court further finds that resolution of the following issues was critical and necessary to the Hearings Officers' ultimate findings that the DOE denied Bryan a FAPE. As such these issues are entitled to preclusive effect:

- May 11, 2004 Decision:  "from October 2003 through February 2004 1) The DOE repeatedly failed to provide the skills trainer services required by Bryan's

_____

    [3] While Plaintiffs also seek to apply issue preclusion to the Hearings Officer's May 21, 2001 Decision, that Decision set forth stipulated findings and did not contain a finding that the DOE denied Bryan a FAPE.

November 18, 2002, November 25, 2003, and January 9,
2004 IEPs; 2) The DOE failed to ensure that trained
skills trainers were hired and available to provide
services to Bryan; and 3) The DOE failed to provide
skills trainers who could communicate with Bryan using
[American Sign Language]."

- <u>July 23, 2004 Decision</u>:  the DOE failed to provide
  Bryan "with a qualified special education teacher who
  has experience teaching autistic children and is
  proficient in [American Sign Language] during the
  [Extended School Year] period. . . "

The Hearings Officers specifically relied on resolution of
these issues in concluding that the DOE had denied Bryan a FAPE.
Giving preclusive effect to these issues is in the interest of
judicial economy as it prevents rehashing of necessary and
critical issues already decided in the administrative
proceedings.  <u>See</u> <u>Alberto-Culver Co.</u>, 199 F. Supp. 2d at 1011
(finding of likelihood of confusion was critical and necessary to
Trademark Trial and Appeal Board's decision to refuse to register
defendant's mark).  Because these issues were central to the
administrative proceedings, the DOE had a full and fair
opportunity to litigate them.

The Court cannot say, as Plaintiffs ask it to do, that the
numerous factual findings referenced in the Hearings Officers'
decisions -- <i>e.g.</i>, that Bryan communicates using American Sign

Language,  appropriate toileting skills continued to be a strong need for Bryan at home and in the community (Reply at 12-14) -- were necessary to the Hearings Officers' ultimate conclusion that the DOE denied Bryan a FAPE.  To do so would unfairly preclude Defendants from litigating issues that may be central to the present case, but were not necessary to the Hearings Officers' decisions.

Accordingly, Plaintiffs' "Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement" is **GRANTED IN PART AND DENIED IN PART**.

## III. Defendants' Motion for Judgment on the Pleadings

In Defendants' Motion for Summary Judgment, construed as a Motion for Judgment on the Pleadings, Defendants do not dispute that Bryan is disabled and that he did not receive the full amount of services that he was supposed to have received under his individualized education plan ("IEP") and pursuant to the Hearings Officers' decisions.  (Tr. at 37, lines 9-13.)  Rather, Defendants argue that because Plaintiffs' claims arise from the educational process and, Defendants contend, they are based solely upon the denial of FAPE, Plaintiffs' claims must be addressed exclusively through the IDEA, not Section 504. Defendants concede that damages are recoverable in a properly pled Section 504 case, but contend that this is not such a case. (Reply at 2; Tr. at 32.)

27

### A.    Plaintiffs May Bring a Section 504 Claim for More Than a Mere Denial of FAPE

It is well-settled that "[m]oney damages for retrospective and non-educational injuries are not available under the IDEA." Blanchard v. Morton School District, 420 F.3d 918, 921 (9th Cir. 2005).  For this reason, there are a number of cases in which the plaintiffs seek general money damages against the DOE or a school district under Section 504.

District and appellate courts in various circuits, district courts within the Ninth Circuit, and even district courts judges within the United States District Court for the District of Hawaii have diverged regarding the appropriate application of Section 504 in the education context.

In Patricia N. v. Lemahieu, 141 F. Supp. 2d 1243 (D. Haw. 2001), Judge Ezra addressed whether the parents of an autistic student had alleged sufficient facts to establish a violation of Section 504.  See also Stephen L. v. LeMahieu, Civil No. 00-282 (J. Ezra, Order filed Oct. 18, 2000) (finding that plaintiffs who have either lost or prevailed in administrative proceedings brought under IDEA may file an independent claim in federal district court for monetary relief under Section 504).  In Patricia N., the parents alleged that the defendants had failed, despite repeated requests, to provide a FAPE to the student, and that they had to use their own financial resources to do so. Patricia N., 141 F. Supp. 2d at 1255.  Plaintiffs also presented

evidence that the defendants knew the student was entitled to a FAPE, but ignored their responsibility to provide one.  Id. Based on the particular facts presented in that case, Judge Ezra denied the defendants' motion to dismiss or, in the alternative, for summary judgment and found that there were "genuine issues of material fact as to whether Defendants acted with 'deliberate indifference' such as to support Plaintiffs' claims for damages" under Section 504.  Id.  The court, however, declined to grant summary judgment in favor of plaintiffs, reasoning that "[w]hile it is clear that Defendants did not meet their obligations under the law to provide FAPE to Amber (as determined by the administrative hearing), there still remain questions as to whether this failure rises to the level of 'deliberate indifference'".  Id. at 1258.

In Mark H. v. Lemahieu, 372 F. Supp. 2d 591 (D. Haw. 2005) (J. Real), presently on appeal before the Ninth Circuit (Appeal No. 05-16236), Judge Real considered whether plaintiffs even had a private cause of action before considering whether plaintiffs had put forth sufficient evidence of deliberate indifference to survive summary judgment.  Mark H. involved parents' claims, on their own behalf and on behalf of their minor child, for money damages under Section 504 of the Rehabilitation Act for the school's past failure to comply with the IDEA.

Judge Real rejected the plaintiffs' attempt to "recast their IDEA claim as a damages claim under the Rehabilitation Act [by]

29

contending that a denial of a free appropriate public education under the IDEA constitutes discrimination within § 504." Judge Real distinguished IDEA claims from claims under Section 504 of the Rehabilitation Act. "Where the IDEA guarantees a disabled child's right to a free appropriate public education, § 504 of the Rehabilitation Act simply prohibits discrimination on the basis of disability." Mark H., 372 F. Supp. 2d at 596-97.

In distinguishing IDEA claims from Section 504 claims, Judge Real discussed the difference between a private right of action to enforce a statute versus a private right of action to enforce regulations promulgated under a statute. Id. In the case of Section 504, the court reasoned that there is a private right of action to enforce Section 504's statutory prohibition against discrimination, but there is no private right of action to enforce Section 504's regulations which contain provisions similar to IDEA, such as the requirement that a child receive a FAPE. See 34 C.F.R. § 104.1, et seq. The court held that "failing to provide a free appropriate public education is not conduct that § 504 forbids. Thus, the Plaintiffs do not have any rights, procedures, or remedies available to them under § 504 for a violation of regulations adopting the IDEA right to a free appropriate education." Mark H., 372 F. Supp. 2d at 597-98; see id. at 597 ("In the view of this Court, the Plaintiffs may not assert claims under § 504 for conduct not prohibited by the

statute itself").[4]

Despite the disagreement over when relief under Section 504 is available in the education context, a few issues are relatively clear. The mere denial of FAPE does not give rise to a Section 504 claim for money damages. See N.L. v. Knox County, 315 F.3d 688, 695 (6th Cir. 2003). For the DOE to be liable for money damages under Section 504, Plaintiffs must prove intentional discrimination, meaning that it acted with "deliberate indifference". See Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001).

As the Ninth Circuit stated in Duvall, "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. The first element is met by showing that the public entity is on notice that accommodation of the disability is required. Id. As to the second element, the public entity must determine what is required for a reasonable accommodation and offer that accommodation. Id. In Duvall, the Ninth Circuit reasoned: "Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may

---

[4] The court did, however, note that a plaintiff may have a Section 504 claim "to remedy a situation where [a child has] been excluded from participation in a State's IDEA program, 'solely by reason of her or his disability'." Id. at 598 n.2.

simply have been overlooked, or a complaint may reasonably have

been deemed to result from events taking their normal course . .

. . . . Rather, in order to meet the second element of the

deliberate indifference test, a failure to act must be a result

of conduct that is more than negligent, and involves an element

of deliberateness." Id. (citation omitted).

For there to be discrimination under Section 504 in the

education context the majority of courts have also required a

showing of "bad faith" or "gross misjudgment." See Sellers v.

School Bd. of the City of Manassas, Virginia, 141 F.3d 524, 529

(4th Cir. 1998) (plaintiffs "allege no facts which would suggest

the defendants discriminated, i.e., that they acted with bad

faith or gross misjudgment"); Monahan v. State of Nebraska, 687

F.2d 1164, 1171 (8th Cir. 1982) ("either bad faith or gross

misjudgment should be shown before a § 504 violation can be made

out, at least in the context of education of handicapped

children"); Alex G. ex rel. Dr. Steven G. v. Bd. of Trustees of

Davis Joint Unified School Dist., 387 F. Supp. 2d 1119, 1124

(E.D. Cal. 2005) (same); Zayas v. Commonwealth of Puerto Rico,

378 F. Supp. 2d 13, 21 (D. P.R. 2005) (dismissing plaintiffs'

Section 504 claim with prejudice where "[p]laintiffs presented no

evidence of deliberate indifference or bad faith" and "[i]nstead,

a genuine disagreement existed between the parties as to what

constituted an 'appropriate' education"); Brantley v. Independent

Sch. Dist. No. 625, 936 F. Supp. 649 (D. Minn. 1996) (showing of

bad faith or gross misjudgment required for Section 504 claim);

Breen v. St. Charles R-IV Sch. Dist., 2 F. Supp. 2d 1214, 1221

(E.D. Mo. 1997) ("To show discrimination under the

[Rehabilitation Act] plaintiffs must show more than the failure

to provide a FAPE, an incorrect evaluation, or a faulty [IEP]");

Johnston v. Ann Arbor Public Schools, 569 F. Supp. 1502 (E.D.

Mich. 1983) (failure to observe affirmative dictates of the

predecessor statute to IDEA by transferring child from less

restrictive educational setting to more restrictive one does not

constitute discrimination under Section 504).

    As the Monahan court stated, a bad faith or gross

misjudgment standard of liability:

> reflects what we believe to be a proper balance
> between the rights of handicapped children, the
> responsibilities of state educational officials,
> and the competence of courts to make judgments in
> technical fields.  So long as the state officials
> involved have exercised professional judgment, in
> such a way as not to depart grossly from accepted
> standards among educational professionals, we
> cannot believe that Congress intended to create
> liability under § 504.

Monahan, 687 F.2d at 1171.

    Bad faith or gross misjudgment is similar to the deliberate

indifference standard.  Absent such evidence, a plaintiff's claim

for monetary damages under Section 504 should be dismissed.

    While Judge Real's private cause of action analysis in Mark

H. is persuasive, the Court declines to hold that the allegations

made by Plaintiffs in this case fail to state a Section 504 claim

as a matter of law.  Monetary damages are not available for a
state's mere failure to comply with either Section 504's or IDEA's
regulations regarding the provision of a free appropriate public
education.  A plaintiff may, however, bring a Section 504 claim
for monetary damages in the education context where the school
has intentionally discriminated against the child.  See, e.g.,
N.L. v. Knox County Schools, 315 F.3d 688, 695 (6th Cir. 2003)
(the 1986 amendment to IDEA "has not been held to have altered
the prior holdings that more harm [i.e., discrimination on the
basis of handicap] is required than a denial of a free
appropriate public education to make out a section 504 claim);
Janet G. v. Hawaii, Dep't of Educ., 410 F. Supp. 2d 958, 965 n.5
(D. Haw. 2005) (discussing difference between IDEA and Section
504 claims).

The question before the Court in this case is whether
Plaintiffs have alleged sufficient facts to state a
discrimination claim.  Plaintiffs have mixed in statements about
IDEA with their Section 504 claims in a way that is sometimes
confusing.  Applying the liberal federal pleading standard,
however, the Court finds that Plaintiffs have alleged sufficient
facts to state a Section 504 claim and to potentially establish
liability on the basis of intentional discrimination.
Plaintiffs, for instance, have alleged that:

- the DOE's actions and inactions "were done with an
  intention that was deliberately indifferent to the

federal (IDEA) rights of Bryan"   (Compl. in Civil Case
No. 05-00247 at ¶ 39);

- the "DOE has a pattern and practice of failing to
  provide Bryan with trained skills trainers to carry out
  their educational program, irrespective of the
  provisions in his IEPs, agreements made by the DOE, and
  various orders of the administrative hearings officer"
  (Compl. in Civil Case No. 05-00247 at ¶ 42);

- "[t]he Defendant has repeatedly been informed of the
  need to hire and train an adequate number of skills
  trainers to provide services to autistic children like
  Bryan.  The Defendant has intentionally or with
  deliberate indifference failed to take necessary action
  to prevent damage to Bryan resulting from the lack of
  trained and consistent skills trainers."  (Compl. in
  Civil Case No. 05-00247 at ¶ 47);  and

- "The DOE has intentionally or with deliberate
  indifference failed to take necessary action to prevent
  damage to Bryan resulting from the lack of trained and
  consistent skills trainers"  (Amended Compl. in Civil
  Case No. 04-00442 at ¶ 50.)

The primary basis for Plaintiffs' Section 504 claim is that

Defendants intentionally discriminated against Bryan by, after

having repeatedly gone through the IDEA procedures, continually

failing to provide Bryan a FAPE despite knowing of their express

35

obligations to do so.  The Court construes Plaintiffs' theory of
discrimination to be that Bryan was qualified to participate in
the State's public education system except for his disability,[5]
that the school's failures repeatedly precluded him from doing
so, therefore he was precluded from participating in the State's
public education system because of his disability.[6]   In order to
state a Section 504 claim, Plaintiffs' Complaint must allege
Defendants discriminated against Bryan based *solely* on his
disability.  The Court construes the complaints to allege such an
allegation and declines to enter judgment on the pleadings in
favor of Defendants.

In sum, Plaintiffs' allegations are sufficient to state a
Section 504 claim and their allegations of deliberate
indifference suggest that this case may involve more than a mere
denial of FAPE.  Such allegations are sufficient to survive
Defendants' motion for judgment on the pleadings.  See <u>DL v.
District of Columbia</u>, 450 F. Supp. 2d 21, 23 (D.D.C. 2006)
(allegations by several representative plaintiffs that even after
a favorable determination by a hearing officer, the school

---

[5] See <u>Janet G.</u>, 410 F. Supp. 2d at 966 ("if Joshua is a
'handicapped person' under the Act, he would also be 'otherwise
qualified' because age is the only program requirement applicable
to public elementary education.").

[6] Defendants concede that Byran is an individual with a
disability as required to satisfy the first element of a prima
facie case under Section 504.  (Reply at 3.)  It is also
undisputed that the DOE receives federal financial assistance.

district did not bring itself into compliance with pertinent IDEA requirements were sufficient to state a Section 504 claim); <u>R.S. v. District of Columbia</u>, 292 F. Supp. 2d 23, 28 (D.D.C. 2003)(suggesting that court would not have dismissed plaintiffs' Section 504 claim for failure to state a claim had plaintiffs alleged bad faith or gross misjudgment in relation to school district's failure to provide services under IDEA).

Accordingly, Defendants' Motion for Judgment on the Pleadings is **DENIED**.

## IV.  <u>Other Issues Raised in Defendants' Motion for Judgment on the Pleadings</u>

Before addressing Plaintiffs' motion for partial summary judgment, the Court addresses the other issues of Eleventh Amendment immunity, damages, statute of limitations, and plaintiff parents' standing to bring claims on their own behalf raised in Defendants' motion for judgment on the pleadings.

### A.  **The State Has Waived Eleventh Amendment Immunity**

By accepting Rehabilitation Act funds, the State waived Eleventh Amendment immunity for claims under the Rehabilitation Act.  <u>See Lovell v. Chandler</u>, 303 F.3d 1039, 1051 (9th Cir. 2002) ("Congress validly conditioned a state's receipt of RA funding on its consent to waive its Eleventh Amendment immunity from suit under § 504 of the RA."); <u>Douglas v. Calif. Dep't of Youth Authority</u>, 271 F.3d 812 (9th Cir. 2001).  It is undisputed that the State receives federal funds and under Section 504 it is

proscribed from using those funds in a discriminatory manner. Because the Court finds that Plaintiffs have stated a cause of action under Section 504 of the Rehabilitation Act, the State cannot avail itself of Eleventh Amendment immunity.

**B.   Compensatory, But Not Punitive, Damages Are Recoverable for Violation of Section 504**

Defendants acknowledge that damages are available in an appropriately pled Section 504 case. The law is clear that compensatory damages are available under Section 504 upon a showing of intentional discrimination (*i.e.*, deliberate indifference). See <u>Lovell</u>, 303 F.3d at 1056. Punitive damages are not recoverable for a violation of Section 504. See <u>Barnes v. Gorman</u>, 536 U.S. 181, 185-189 (2002); <u>Moreno v. Consolidated Rail Corp.</u>, 99 F.3d 782 (6th Cir. 1996).

**C.   Statute of Limitations**

Because the Court denies Plaintiffs' motion for partial summary judgment and Defendants' motion for judgment on the pleadings, the Court declines to reach the statute of limitations issue at this time. The statute of limitations for a claim under the Rehabilitation Act is two years.[7] There is a question as to the application of the continuing violation doctrine on the facts

_____

[7] The statute of limitations for a Section 504 claim is provided by analogous state law. Hawaii's two-year statute of limitations for personal injury actions provides the analogous state law for Plaintiffs' Section 504 claim. See <u>Douglas</u>, 271 F.3d at 823 n.11; Haw. Rev. Stat. § 657-7.

of this case.  See Douglas, 271 F.3d at 822 ("The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights up to a point in time that falls within the applicable limitations period.") (citation and quotations omitted).  The parties have not briefed this issue.

### D.  The Parent Plaintiffs' Standing to Bring Claims on Their Own Behalf

The Court agrees with the courts that have held that the plaintiff parents do not have standing to bring an action for their own personal injuries allegedly arising from the discrimination against the handicapped individual.  See Sanders by Sanders v. Marquette Pub. Schools, 561 F. Supp. 1361, 1368-70 (W.D. Mich. 1983) (minor student's father did not have standing to sue under Section 504 for personal injuries, trauma, and expenses he claimed to have suffered as a result of discrimination against minor child).  In Sanders, the court considered whether a minor student's father could bring claims on his own behalf for money damages for the school's alleged violation of Section 504.  The minor student's father sought damages for trauma and expenses he allegedly suffered as a result of the school's conduct.  Sanders, 561 F. Supp. at 1370.  The court held that the father did not have standing to sue under Section 504 for purely personal injuries because he could not show that he was either a participant in, or a beneficiary of, a

39

program receiving federal funds.  Id.  The father had standing to sue only on behalf of his minor daughter.  Id.

That said, if Plaintiffs are able to show intentional discrimination, Ninth Circuit case law shows that Plaintiffs may be able to recover economic damages reasonably and foreseeably incurred.  In Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103 (9th Cir. 1987), the court distinguished Sanders.  Zolin involved claims by an organization created for the benefit of hearing-impaired persons challenging a decision not to provide sign-language interpreters to enable deaf individuals to serve as jurors.  In addressing the organization's right to recover monetary damages under Section 504, the Zolin court reasoned:

> We cannot accept the *Sanders* ruling to the extent that it precluded the father from recovering expenses he incurred to secure for his daughter an education that the school district was legally obligated to provide.  The expenses were incurred for the daughter's benefit, and the father's relationship made the expenditures foreseeable and appropriate, and rendered him a suitable person to assert and enforce rights of his daughter.

Zolin, 812 F.2d at 1115.  See United States v. Forest Dale, Inc., 818 F. Supp. 954, 970 (N.D. Tex. 1993) (although intervenor wife had no standing to sue for her own personal injuries arising from the alleged discrimination against her husband, theoretical possibility existed that wife could recover economic damages she reasonably and foreseeably incurred).  Under the Zolin court's reasoning, Plaintiffs may recover economic damages reasonably and

foreseeably incurred as a result of Defendants' intentional discrimination against Bryan.

**V.   Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs ask the Court to find that Defendants are liable to Plaintiffs for money damages under Section 504 because they have acted with deliberate indifference. Plaintiffs claim that Defendants have failed to provide certain services as required by Bryan's IEP, the Hearings Officer's decisions, and the parties' Settlement Agreement. Plaintiffs' chief complaint is that Defendants have repeatedly failed to provide Bryan a skills trainer or provided only "very spotty and erratic skills trainer services". On three separate occasions Hearings Officers found that the failure to provide enough trained skills trainers amounted to a denial of FAPE.

**A.   Plaintiffs' Motion to Strike**

The Court first addresses Plaintiffs' motion to strike portions of various declarations submitted by Defendants in support of their Opposition to Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs ask the Court to strike:

(1)    Declaration of Kelly Stern at paragraphs 5, 10, and 14

(2)    Declaration of Linda Price at paragraph 11

(3)    Declaration of Judy Rathwick at paragraphs 8 to 19

(4)    Declaration of Katherine Tolentino at paragraph 8; and

(5)    Defendants' Concise Statement of Facts at paragraphs 2

- 4.

41

Plaintiffs contend that the above evidence contains hearsay and false statements.

Fed. R. Civ. P. 56(e) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Hearsay is generally insufficient to create a genuine issue for trial. Evidence opposing summary judgment, however, need not be in a form admissible at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A party may rely on a declaration or affidavit containing a hearsay statement if it is reducible to admissible evidence at trial. See Hughes v. United States, 953 F.2d 531, 543 (9th Cir. 1992) ("Rule 56 permits the use of affidavits in evaluating a motion for summary judgment. While the facts underlying the affidavit must be of a type that would be admissible as evidence, Fed. R. Civ. P. 56(e), the affidavit itself does not have to be in a form that would be admissible at trial."). An affiant may repeat the statements of a witness who would be available at trial and able to testify directly. The portions of the declarations which Plaintiffs ask the Court to strike deal primarily with the unsanitary and unclean condition of Plaintiffs' home. The above individuals testified to the skills trainers' observations regarding the unsanitary conditions of Plaintiffs' home and to the skills trainers' difficulties in dealing with Plaintiffs. The declarants also

testified as to Plaintiffs' interference with the Defendants' efforts to hire and retain an experienced skills trainer. This is the type of evidence that is admissible for purposes of summary judgment because it may be reduced to admissible form at trial. The declarations establish that the declarants had knowledge regarding the Defendants' efforts to recruit skills trainers and of the skills trainers' experiences in attempting to work with Bryan. At trial, the skills trainers themselves would be able to testify as to these facts.

Defendants, however, have alleviated any concern regarding the admissibility of this testimony by submitting additional evidence. In response to Plaintiffs' motion to strike, Defendants submitted a Supplemental Separate and Concise Statement of Facts, containing declarations from the skills trainers who had worked with Bryan, one of Bryan's special education teachers, and supplemental declarations by Kelly Stern and Katherine Tolentino. For example, Kelly Stern, Clinical Supervisor and Program Manager for The Institute for Family Enrichment, testified that "Bryan had been sent to school with diahrrea and vomiting where unsanitary conditions have presented Health and Safety challenges for [skills trainers]" (Stern Decl. at ¶ 14(c)), and William Beljean, one of Bryan's skills trainers, has also testified to that same fact. (Beljean Decl. at ¶ 4.) The Court finds that the evidence submitted by Defendants in opposition to Plaintiffs' motion for partial summary judgment is

admissible and Plaintiffs' Motion to Strike is **DENIED**.

### B.    Plaintiffs' Motion to Amend and/or Supplement the Record

Plaintiffs filed a motion to amend and/or supplement the record which attached the deposition testimony of Dr. Kimberly Smalley and a psychological assessment of Bryan prepared by B. J. Freeman, Ph.D. Dr. Smalley conducted a functional behavior assessment of Bryan in August 2004 and had observed Bryan's behavior at other times. Plaintiffs submit that the additional evidence shows that Defendants acted with deliberate indifference. Plaintiffs did not file their motion to supplement the record with this evidence until nearly five months after they filed their motion for partial summary judgment. While Plaintiffs may present this information at trial, the Court finds that it need not consider the evidence at this stage of the proceedings. The evidence is cumulative of the evidence initially submitted by Plaintiffs and, even if the Court were to consider it, it would not change the Court's finding that there is a genuine issue of material fact as to whether Defendants intentionally discriminated against Bryan based solely on his disability.

Accordingly, Plaintiffs' Motion to Amend and/or Supplement the Record is **DENIED**. The Court does not consider the additional evidence submitted by Plaintiffs in their supplemental motion. Even if the Court were to consider this additional evidence, it

would not change the Court's holding.

### C.    Undisputed Facts

Bryan suffers from autism.  (Plaintiffs' SCSF at ¶ 1.)
Because Bryan suffers from autism the Department of Education
("DOE") developed various individualized education plans ("IEPs")
for Bryan beginning in January 2001 to address Bryan's need for
educational services.  The parties do not dispute that the IEPs
are adequate.  The parties are subject to three administrative
orders and a Settlement Agreement concerning the DOE's efforts to
implement Bryan's IEPs.

### 1.    May 21, 2001 Decision

On February 27, 2001, Plaintiffs submitted a request to the
DOE for a due process hearing pursuant to 20 U.S.C. § 1415(e).
Plaintiffs' request listed several areas of concern, including
the school's alleged failure to provide a trained aide for
services specified in the IEP which resulted in the failure to
provide speech services and to implement the autism programs
specified in the IEP.  (Plaintiffs' SCSF at Exhibit A at 015-
016.)

Instead of participating in a due process hearing, the
Plaintiffs and the DOE entered into a stipulated Decision and
Order dated May 21, 2001.  (Id. at 015-019.)  The May 21, 2001
Order provided, among other things, that the DOE would hire and
train an adult educational aide for Bryan no later than May 21,
2001.  (Id.)  The Order specified the type of training for the

adult educational aide and the services to be provided by the aide. (<u>Id</u>.)  The Order required the DOE to provide an aide until October 1, 2001, with a provision for making up each day that an after school aide was not provided. (<u>Id</u>.)  If the aide did not complete his or her service, the Order required the DOE to have in place a suitable placement within two weeks from the date of the termination. (<u>Id</u>.)

On February 15, 2002, Plaintiffs filed a complaint in this Court alleging that the DOE had failed to comply with the May 21, 2001 Order and Bryan's IEP. (<u>Id</u>. at 020-029.)  In July 2002, the parties resolved the lawsuit by entering into a Settlement Agreement ("Settlement Agreement"). (<u>Id</u>. at 030-042.)

### 2.  July 2002 Settlement Agreement

In the July 2002 Settlement Agreement, the DOE agreed to: (1) hire, train, and have in place teacher's assistants (TAs) needed to consistently provide Bryan with not less than ninety-five percent (95%) per calendar month of the TA hours to which he is entitled; (2) continue to provide TA services through its contract with the current service provider or its successor; (3) procure TA services to be provided by qualified individuals through an expedited contract process through which it would pay qualified individuals a minimum of $20.00 per hour, and may offer effective bonus/incentive payments to encourage retention of the TAs for three months or longer; (4) pay for the Plaintiffs to advertise for TAs in the amount of $1,000 per year; (5) create a

pool of substitute TAs who are qualified and trained to provide services to Bryan; (6) ensure that the Bryan would be provided services by qualified TAs trained in specific methods of dealing with autistic children; and (7) provide Bryan additional occupational and speech/language therapy.

Defendants did not provide consistent services pursuant to the Settlement Agreement (Defendants' SCSF at ¶ 15.)

### 3.    May 11, 2004 Decision

On February 26, 2004, Plaintiffs requested a due process hearing.  The Hearings Officer entered an Order on May 11, 2004. The Order held "that from October 2003 through February 2004, 1) The DOE repeatedly failed to provide the skills trainer services required by Bryan's November 18, 2002, November 25, 2003, and January 9, 2004 IEPs; 2) The DOE failed to ensure that trained skills trainers were hired and available to provide services to Bryan; and 3) The DOE failed to provide skills trainers who could communicate with Bryan using ASL.  As a result Bryan was denied FAPE."  (May 11, 2004 Decision at 9-10.)

The May 11, 2004 Decision, among other things, required the DOE to hire and have in place the skills trainers needed to consistently provide Bryan with not less than 95% per calendar month of the skills trainer hours to which he is entitled in his IEP, hire trainers who are trained in Treatment and Education of Autistic and related Communication-Handicapped Children method, Discrete Trials Training, and American Sign Language, provide

additional authorization to Bryan's autism consultant to train
new skills trainers, and provide additional hours of service from
a knowledgeable consultant to design, implement, and monitor a
toileting program for him.  The May 11, 2004 Decision was not
appealed and is a final order.

####    4.    July 23, 2004 Decisions

In early June 2004[8], Plaintiffs submitted a request for a
due process hearing, alleging failures by the DOE to hire and
have in place a trained, certified, and qualified special
education teacher to deliver Bryan's special education program
during his "extended school year," e.g., the period he would
receive services outside of the regular academic year.  The
request also alleged that Bryan's special education teacher for
the 2004-2005 school year was unqualified.

On June 24 or 25, 2004, the DOE stipulated to the facts
alleged in the hearing request and to liability.

On July 6, 2004, an administrative hearing was held on the
remaining issue in the June due process hearing request: the need
for a qualified teacher with experience in teaching autistic
children during all portions of Bryan's extended school year.
Because the parties had stipulated to relief on June 24 or 25,
2004, the parties only submitted evidence on this narrow issue.
Pursuant to the parties' stipulated facts, a Stipulated Partial

---

[8] The exact date the Plaintiffs made, and the DOE received,
the due process hearing request is unclear from the record.

Decision and Order was issued on July 23, 2004. (Compl. at Exhibit C, July 23, 2004 "Stipulated Partial Decision and Order".)  The July 23, 2004 Stipulated Partial Decision and Order required the DOE to prepare a written structured social skills curriculum for implementation beginning no later than the end of the first week of the 2004-2005 school year.  The July 23, 2004 Stipulated Partial Decision and Order also required the DOE to hire and have in place by the beginning of the 2004-2005 school year a licensed, certified special education teacher with experience teaching autistic children and proficiency with American Sign Language.

On July 23, 2004, the Hearings Officer also entered a "Findings of Fact, Conclusions of Law, and Decision" regarding the issue at the July 6, 2004 hearing. (Compl. at Exhibit D, July 23, 2004 "Findings of Fact, Conclusions of Law, and Decision".)  The July 23, 2004, "Findings of Fact, Conclusions of Law, and Decision" required the DOE to hire and have in place a qualified special education teacher with experience in teaching autistic children and who is proficient in American Sign Language to provide services and coordination of services during the extended school period.

     5.   <u>Summary of Undisputed Facts</u>

In sum, it is undisputed that the DOE failed to provide Bryan a FAPE, primarily by failing to provide Bryan adequate skills trainers as it was required to do under the IEPs, as

agreed to in the Settlement Agreement, and as ordered to do in three administrative decisions.

Yet, it is also undisputed that the DOE made some effort to comply with its obligation to provide skills trainers and other services to Bryan. The DOE's efforts at recruiting skills trainers included newspaper advertising, posting signs on bulletin boards through the Kona and Waimea communities, posting job listings at conventions, leaving business cards at conventions and passing them out at workshops, placing advertisements on agency websites, and giving Plaintiffs funding to advertise for skills trainers. (Defendants' SCSF at ¶¶ 1, 7; Plaintiffs' SCSF in Opp. at ¶ 1.)

At Plaintiffs' insistence, the DOE hired a mainland company, Pacific Child and Family Associates, with expertise in servicing autistic children, to work with Bryan and his family. (Defendants' SCSF at ¶ 9.) The DOE paid for two individuals from Pacific Child and Family Associates to come to Hawaii and assess Bryan and his family. (Id. at ¶ 10; Tolentino Decl. at ¶ 4) In November 2004, Pacific Child and Family Associates submitted a proposal indicating that it was willing to service Bryan and his family. (Id.; Tolentino Decl. at ¶ 6.) The DOE was willing to pay one hundred ninety-one thousand six hundred seventy dollars ($191,670.00) for a one-year program. (Id.; Tolentino Decl. at ¶ 7.) In the midst of entering into a contract for Pacific Child and Family Associates' services, Plaintiffs relocated to the

50

mainland.  (*Id.* at ¶ 10; Tolentino Decl. at ¶ 8.)

The DOE had a problem retaining skills trainers.  Defendants maintain that skills trainers asked to be removed from Bryan's case because of such circumstances as the unsanitary living conditions in Plaintiffs' home, being left alone with Bryan all day on weekends, and being expected to do household chores. (Defendants' SCSF at ¶ 2; Plaintiffs' SCSF in Opp. at ¶ 2.)

### D. Plaintiffs Have Not Shown that Defendants Acted With Deliberate Indifference So as to Be Entitled to Summary Judgment

To support their Section 504 claim for money damages, Plaintiffs must show that Defendants intentionally discriminated against Bryan.  In this case, while Plaintiffs have alleged intentional discrimination based on deliberate indifference, they have not put forth sufficient undisputed facts to show that Defendants engaged in discriminatory conduct.  Plaintiffs' primary complaint is that the DOE continually failed to provide Bryan a qualified skills trainer in violation of the administrative orders and the Settlement Agreement and therefore repeatedly denied Bryan a FAPE.  While the DOE did not fulfill its obligations under the administrative orders and the Settlement Agreement, the DOE presents evidence that it made efforts to do so.  There is a material factual dispute as to whether Defendants acted in bad faith and with deliberate indifference in failing to provide the services to Bryan.

Bryan was not completely excluded from receiving a public

51

education.  Plaintiffs even acknowledge that the DOE "provided
approximately 75 percent of the mandated services." (Tr. at 35;
Compl. at ¶¶ 25, 27.)  Defendants contracted with private
agencies to assist with the recruitment of qualified skills
trainers, including advertising in newspapers with local and
statewide distribution, posting signs on bulletin boards
throughout the Kona and Waimea communities, posting job listings
at conventions, leaving business cards at conventions and passing
them out at workshops, placing advertisements on agency websites,
and giving parents funding to advertise.  Defendants did not
provide their agents with the terms of the administrative
decisions or the Settlement Agreement which specified the levels
of experience and training each skills trainer was to have in
order to work with Bryan.  The evidence shows, however, that some
of Defendants' failures may have been attributable to the lack of
available skills trainers and Plaintiffs' own actions.

    Courts have found that similar facts did not support a
finding of deliberate indifference. The Ninth Circuit Court of
Appeals' opinion in Ferguson v. City of Phoenix, 157 F.3d 668
(9th Cir. 1998) is instructive as to the evidence required to
make a showing of intentional discrimination.  In Ferguson, a
class of hearing-impaired plaintiffs alleged discrimination
because of the city's failure to provide them with sufficient
access to 9-1-1 emergency telephone services.  The Ninth Circuit
Court of Appeals found that the Plaintiffs did not make out an

adequate case of intentional discrimination, observing that their
claims amounted to no more than "some not uncommon bureaucratic
inertia as well as some lack of knowledge and understanding about
the DOJ Manual's requirements." Ferguson, 157 F.3d at 675.  The
Court found such evidence not to rise to the level of intentional
discrimination, concluding that "[t]here is nothing to show, even
suggest, any deliberate indifference or discriminatory animus on
the part of the City towards plaintiffs."  Id.

    The court's decision in Brantley, 936 F. Supp. 649 is also
instructive.  The Brantley court held that plaintiffs did not
have actionable Section 504 claims since their claims stemmed
from "IDEA type educational decisions", in particular, that the
district failed to timely assess and diagnose the student's
disability; the district failed to implement the student's IEP,
and the district failed to provide reasonable accommodations for
the student's disabilities.  Id. at 657.  The court held that
such actions did not amount to evidence that the district acted
in bad faith or with gross misjudgment with respect to the
student's education, concluding that "[t]o the extent the
District made any inappropriate decisions, they were, at most,
errors in professional judgment."  Id.
The Court in Zasslow v. Menlo Park City School District, 2001 WL
1488617, at *17 (N.D. Cal. Nov. 19, 2001) likewise found that the
plaintiffs' Section 504 claim based on the school district's
failure to comply with the IDEA was insufficient to survive

defendant's motion for summary judgment. <u>See also</u> <u>Breen</u>, 2 F.
Supp. 2d at 1221 ("To show discrimination under the RHA
plaintiffs must show more than the failure to provide a FAPE, an
incorrect evaluation, or a faulty IEP."); <u>cf</u>. <u>Roe v. State of
Nevada</u>, 332 F. Supp. 2d 1331, 1340 (D. Nev. 2004) (plaintiff
stated prima facie case under Section 504 of Rehabilitation Act
where complaint alleged that teacher abused child because he was
autistic, that abuse deprived child of his education, and school
knew of abuse but failed to inform child's parents).

In this case, Plaintiffs have not presented sufficient
undisputed facts to show that Defendants' failures rise to the
level of intentional discrimination as a matter of law.
Plaintiffs have not shown that the Defendants intentionally
discriminated against Bryan so as to be entitled to summary
judgment on their Section 504 claim.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY ORDERS that:

1. Defendants' Motion for Summary Judgment, construed as a
   Motion for Judgment on the Pleadings, (Doc. 27 in Civil
   No. 05-00247, Doc. 87 in Civil No. 04-00442) is **DENIED**;

2. Plaintiffs' Motion for Partial Summary Judgment (Doc.
   22 in Civil No. 05-00247, Doc. 103 in Civil No. 04-
   00442) is **DENIED**;

3. Plaintiffs' Motion to Enforce the Doctrine of Issue
   Preclusion Regarding All Administrative Hearing

Decisions and the Settlement Agreement (Doc. 82 in

Civil No. 05-00247, Doc. 159 in Civil No. 04-00442) is

**GRANTED IN PART AND DENIED IN PART;**

4.    Plaintiffs' Motion to Strike Declarations for Non-

Compliance with Rule 56(e) (Doc. 41 in Civil No. 05-

00247 and Doc. 116 in Civil No. 04-00442) is **DENIED;**

and

5.    Plaintiffs' Motion to Amend and/or Supplement the

Record (Doc. 131 in Civil No. 05-00247, Doc. 210 in

Civil No. 04-00442) is **DENIED.**

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, December 19, 2006.



_____ /S/ Helen Gillmor
Helen Gillmor
Chief United States District Judge

---

Ann Kimball Wiles and Stanley Bond, individually and as next friend
of their son, Bryan Wiles-Bond, a minor v. Department of Education,
State of Hawaii, and Alvin Rho, in his official capacity as West
Hawaii District Superintendent, CIVIL NO. 04-00442; CIVIL NO. 05-
00247 (CONSOLIDATED)(OTHER CIVIL ACTION) HG-BMK.    ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT, CONSTRUED AS A MOTION FOR
JUDGMENT ON THE PLEADINGS; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT; DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION TO ENFORCE THE DOCTRINE OF ISSUE PRECLUSION REGARDING ALL
ADMINISTRATIVE HEARING DECISIONS AND THE SETTLEMENT AGREEMENT;
DENYING PLAINTIFFS' MOTION TO STRIKE DECLARATIONS FOR NON-COMPLIANCE
WITH RULE 56(E); AND DENYING PLAINTIFFS' MOTION TO AMEND AND/OR
SUPPLEMENT THE RECORD