Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys at Law
A Law Corporation

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 0 1 2005

at ____ o'clock and ____ min. ___M
SUE BEITIA, CLERK

SHELBY ANNE FLOYD      1724-0
MEI-FEI KUO            7377-0
ALLISON KIRK           8156-0
65-1230 Mamalahoa Hwy., Suite C21
Kamuela, Hawai'i 96743
Telephone:     (808) 885-6762
Facsimile:     (808) 885-8065
Email:         sfloyd@ahfi.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor, <br><br> Plaintiffs, <br><br> vs. <br><br> DEPARTMENT OF EDUCATION, State of Hawai'i, and ALVIN RHO, in his official capacity as West Hawai'i District Superintendent, <br><br> Defendants. | CIVIL NO. CV04-00442 HG BMK <br><br> **VERIFIED AMENDED AND SUPPLEMENTAL COMPLAINT; EXHIBITS "A"- "C"; CERTIFICATE OF SERVICE** |

278110-1/6515-1

# EXHIBIT    B

## VERIFIED AMENDED AND SUPPLEMENTAL COMPLAINT

### I.    INTRODUCTION

1.    This action is brought by Plaintiffs ANN KIMBALL WILES and STANLEY BOND ("Plaintiffs"), who are the parents of Bryan Wiles-Bond, an autistic 12-year-old boy, on behalf of themselves and as next friends for Bryan.

2.    The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, requires that educational agencies provide children with disabilities a free appropriate public education ("FAPE") with special education and related services designed to meet their unique needs.

3.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 729 ("Section 504"), prohibits discrimination against the disabled in any program receiving federal funds.

4.    Defendants the Department of Education, State of Hawai'i (the "DOE"), and Alvin Rho, the West Hawai'i District Superintendent, have routinely failed to provide Bryan with the

specialized services set forth in his Individualized Education Plans ("IEP"), and in a Release and Settlement Agreement dated July 1, 2002, thereby depriving him of a FAPE. Despite these agreements and three orders from administrative hearings officers, the DOE still failed to or refused to deliver services needed in order for Bryan to successfully learn the skills he needs to live with his family and in the community. As a result, Bryan's family has been forced to leave Hawai'i , and Bryan has lost multiple educational opportunities.

## II.   JURISDICTION

5.   This Court has federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 which afford original jurisdiction of actions arising from federal questions under the Constitution or laws of the United States, including the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e) ("IDEA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 729 ("Section 504").

6.   Plaintiffs bring this action against Defendant Rho pursuant to 42 U.S.C. § 1983 ("Section 1983") to challenge the deprivation of their rights under the IDEA and Section 504 by

Defendant's actions under color of state law.

7.    Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201-02.

8.    Injunctive relief is authorized pursuant to Rule 65 of the Federal Rules of Civil Procedure.  Bryan Wiles-Bond has no adequate remedy at law and will suffer irreparable injury.

9.    Supplemental jurisdiction is conferred over nonfederal claims by 28 U.S.C. § 1367.

10.    As set forth below, Plaintiffs have exhausted their administrative remedies to the extent necessary under the IDEA and the Rehabilitation Act.  However, the strict application of the exhaustion requirement in the fact of the routine failure of the DOE to comply with its obligations to provide services included in Bryan's IEPs, and with administrative decisions, will create undue hardship on his family, who would be forced to participate in administrative hearings on a continual basis, with no hope of securing needed services for Bryan.

## III.  PARTIES

11.    Bryan Wiles-Bond is a minor who attended a public

school or received a public education in the State of Hawaiʻi until the end of 2004.

12.   Ann Kimball Wiles and Stanley Bond are Bryan's natural parents. They have standing under federal law to pursue injunctive and compensatory relief on behalf of Bryan and, as next friends of Bryan, have standing to assert claims on his behalf as well as on behalf of themselves.

13.   Plaintiffs are citizens of the State of Hawaiʻi and were residents of the County of Hawaiʻi, State of Hawaiʻi at all times relevant hereto until January 2005. They are now residents of California.

14.   The DOE is the state educational agency under 20 U.S.C. § 1400 *et. seq.*, and is responsible for the identification of special education needs and the provision of services to children in the public school system who are disabled and in need of special education. The DOE receives federal funds for its special education programs.

15.   Defendant Alvin Rho was the Complex Area Superintendent of the school complex in which Bryan Wiles-Bond

attended school until approximately December 15, 2004.

Defendant Rho had full authority over the complex to see that its

policies and practices conform to law.  Defendant Rho is sued in his

official capacity.

## IV.  FACTUAL ALLEGATIONS

16.   Bryan, who was born on October 28, 1991, is the

youngest child of Ann Kimball Wiles and Stanley Bond.  At age 2,

Bryan was diagnosed with pervasive developmental delay and

hyperactivity and, at age five or six, he was labeled autistic.

17.   Autism is a developmental disability that

significantly affects verbal and nonverbal communication and social

interaction as well as a child's educational performance.  Although

no cure for autism exists, the condition is best treated with early

diagnosis, intervention, and education.

18.   Bryan has been enrolled in the Hawai'i public

school system since his family moved to Hawai'i in 1999.  Bryan is

partially toilet-trained, and has severe developmental delays in

cognition, speech and social abilities.

19.   For the last several years, Bryan's Individualized

Education Program (IEP) has required one-on-one assistance from a trained aide ("skills trainer") during the entire school day, after school, and on weekends.

20.   On February 27, 2001, Bryan's parents submitted a request to the DOE for a due process hearing pursuant to 20 U.S.C. § 1415(e), identifying several issues to be decided concerning special education provided to Bryan.  They included:

a.    Failure to provide a trained  aide for 1:1 services specified in the IEP; and as a result

b.    Failure to provide speech services as identified in the IEP; and

c.    Failure to implement the autism programs specified in the IEP.

21.   At a scheduled May 7, 2001 due process hearing before hearing officer Richard Chun, no hearing was held. Instead, Plaintiffs and the DOE placed their stipulated hearing decision on the record.  The terms of the stipulation were to be in effect from May 7 through October 1, 2001.

22.   Hearing officer Richard Chun set forth the terms of

the parties' stipulation in a Decision and Order dated May 21, 2001("Order").  Among other things, the Order provided:

      a.    The IEP dated January 29, 2001 was to be followed;

      b.    The DOE was to hire and train an adult aide for Bryan;

      c.    The aide was to provide services to Bryan during normal school hours and after school.

      d.    If services were not provided as required by Bryan's IEP during the period May 7 through October 21, 2001, the DOE was required to make up those services after October 21, 2001.

      23.    The DOE failed to comply with the Order, as, *inter alia*, it did not provide the mandated services during the specified period, and did not make up the missing services thereafter.  As a result, Plaintiffs filed a Complaint in the United States District Court on February 15, 2002 against the DOE, to enforce the Order, and to have the DOE comply with Bryan's then-current IEP.  Plaintiffs also sought preliminary injunctive relief.

24.   The Complaint alleged that the State had breached federal regulations by, among other things, failing to implement the terms of the Order, failing to provide a free and appropriate public education to Bryan under the IDEA, and violating Section 504 of the Rehabilitation Act.

25.   On July 1, 2002, in the federal action, Plaintiffs and the DOE entered into a Release and Settlement Agreement ("Settlement Agreement"), a true and correct copy of which is attached as Exhibit A.

26.   The Settlement Agreement requires the DOE to, *inter alia,*

a.   Hire, train and have in place the skills trainers (formerly "therapeutic aides" or "TAs") needed to consistently provide Bryan with not less than 95% per calendar month of the skills trainer hours to which he is entitled under his IEP;

b.   Procure skills trainer services for Bryan through an "expedited contract process," in which the DOE committed to pay a minimum salary and pay the skills trainers promptly.

    c.    Reimburse Plaintiffs for newspaper advertising to attract skills trainers.

    d.    Create a pool of substitute skills trainers who are qualified and trained to provide services to Bryan when his normal skills trainers are not available.

27.  Between October 2003 and February 2004, despite the requirements of Bryan's IEP and the Settlement Agreement, the DOE failed to provide skills trainers to deliver 95% of the services in Bryan's IEP and the skills trainers provided all lacked the qualifications set out in the Settlement Agreement. The DOE provided only approximately 75% of the services mandated. In addition, the DOE never created a pool of qualified substitutes to provide interim services while recruitment of fully trained and committed skills trainers were hired.

28.  Bryan's IEP, developed in January 2004, required 1:1 instructional support during the school day for 6.5 hours (5.5 hours on Wednesday), after school for 4.5 hours (5.5 hours on Wednesday), and 6.0 hours per day on the weekend. It also required that Bryan receive special education and related services

for 360 days per year.

29.    On February 26, 2004, Plaintiffs submitted a request for a due process hearing under Hawai'i Administrative Rules ("HAR") Title 8, Chapter 56.   The issues raised by the request for hearing were: a) the DOE's repeated failure to provide the services required by Bryan's IEP; b) the DOE's failure to ensure that trained skills trainers are hired and available to provide services for children like Bryan; c) the DOE's failure to provide skills trainers who can communicate with Bryan, who communicates through American Sign Language; and d) the failure of the DOE to comply with the Settlement Agreement.

30.    After a hearing held on April 5, 2004, the administrative hearings officer issued Findings of Fact, Conclusions of Law and Decision on May 11, 2004 ("May 2004 Decision").   The May 2004 Decision held that the DOE's failures to provide Bryan with "1) the required number of skills trainer service hours as specified in his IEPs, 2) trained skills trainers capable of providing services to Bryan, and 3) skills trainers who can communicate with Bryan using ASL, resulted in a loss of educational benefit to

Bryan".

31.    In the May 2004 Decision, the DOE was ordered to:
1) hire, train and have in place the skills trainers needed to
consistently provide Bryan with not less than 95% per calendar
months of the skills trainer hours to which he is entitled to in his
IEP; 2) hire skills trainers who are trained in Discrete Trial Training
and TEACCH and American Sign Language to sufficiently
implement Bryan's IEP program; 3) provide additional authorization
to Bryan's autism consultant to train new skills trainers; and 4)
provide additional hours of service from a knowledgeable
consultant to design, implement and monitor a toileting program
for Bryan.

32.    The May 2004 Decision was not appealed by the
DOE and is now a final order.  A true and correct copy of the May
2004 Decision is attached as Exhibit B.

33.    Pursuant to the May 2004 Order, on June 2, 2004,
a meeting was held at which the DOE agreed to the number of
additional hours for training pursuant to the May 2004 Decision, to
American Sign Language ("ASL") training, and to the hiring of an

experienced behavioralist to oversee the toileting program.

34.    On June 11, 2004, Plaintiffs submitted a request for a due process hearing under Hawai'i Administrative Rules ("HAR") Title 8, Chapter 56.  The issues raised by the request for hearing were: 1) the failure of the DOE to hire and have in place a trained, certified and qualified special education teacher to deliver Bryan's special education program during his "extended school year", e.g., the period he received services outside of the regular academic year; and 2) the DOE's hiring of an unqualified special education teacher for Bryan for the 2004-2005 school year.

35.    On June 24, 2004, the DOE stipulated to the facts alleged in the hearing request and to liability.  A Stipulated Partial Decision and Order ("July 2004 Stipulated Order") was issued on July 23, 2004.  A true and correct copy of the July 2004 Order is attached as Exhibit C.

36.    The July 2004 Stipulated Order requires the DOE to 1) prepare for Bryan "a written structured social skills curriculum for implementation beginning no later than the end of the first week of the 2004-2005 school year;" 2) "hire and have in

place by the beginning of the  2004-2005 school year a licensed, certified special education teacher with experience teaching autistic children and proficiency with American Sign Language;" and 3) "cause a functional behavioral assessment to be completed for Bryan and delivered to his parents no later than August 7, 2004."

37.  On July 6, 2004, a hearing was held on the remaining issue--the need for a qualified teacher during all portions of Bryan's extended school year--in the June due process hearing request.  On July 23, 2004, Findings of Fact, Conclusions of Law, and Order was entered by the hearings officer ("the July Decision and Order".  The July Decision and Order required the DOE to "hire and have in place, a qualified special education teacher with experience in teaching autistic children and who is proficient in ASL to provide special education and coordination of services" to Bryan during extended school year periods.  A true and correct copy of the July Decision and Order is attached as Exhibit D.

38.  Beginning in June 2004 and up to the time this Verified Complaint was filed, despite the Settlement Agreement and

May 2004 Decision, there was no pool of trained substitutes in place, and Bryan was not receiving and is still not receiving 95% of the hours of services from skills trainers identified in the May 2004 Decision. The toileting program ordered was not implemented. No ASL training was conducted and no skills trainers were hired who are qualified as required by the Decision.

39.    Despite the July 2004 Decision and Order, Bryan continued to receive special education services at school from a teacher who is neither licensed nor certified under state law to deliver special education services, and who was not proficient in ASL and therefore cannot communicate with Bryan.

## V.     FIRST CLAIM FOR RELIEF - Declaratory, Compensatory and Injunctive Relief for Violations of the IDEA and Enforcement of Administrative Decisions

40.    Plaintiffs reallege and incorporate the allegations of paragraphs 1-39.

41.    Federal law requires state agencies to provide a free appropriate public education ("FAPE") to a child with a disability.

42.    Bryan is autistic and is disabled under the IDEA.

43.   For special education and related services to meet the requirement of providing a child with a FAPE, they must be provided in conformity with the child's IEP.

44.   The DOE has a pattern and practice of failing to provide Bryan with trained skills trainers to carry out their educational program, irrespective of the provisions in his IEPs, agreements made by the DOE, and various orders of the administrative hearings officer.

45.   Bryan's IEP provides that his program will be provided through the services of a skills trainer for almost 70 hours a week for virtually every day of the year.  If those services are not provided on a daily basis, there is no additional time in Bryan's life in which compensatory services can be provided to make up for his loss, without interfering with Bryan's time with his family or his sleep.  In addition, when skills trainers are not trained in ASL, they cannot communicate with Bryan and he cannot communicate his needs to them.

46.   The administrative remedies available to Plaintiffs

are inadequate, as the hearing officers have no authority to grant

relief appropriate to ensure that the DOE will actually provide the

services it commits to provide in the IEP, to enforce the Settlement

Agreement, or to enforce their prior orders.  However, with respect

to the Defendant DOE's failure to provide services required by

Bryan's 2003 and 2004 IEPs, Plaintiffs have exhausted their

administrative remedies through hearings held in April and in June

2004, for which decisions have been rendered in Bryan's favor, but

which the DOE has failed or refused to comply with.

      47.    The DOE has repeatedly failed to provide Bryan

with a FAPE in conformity with Bryan's IEP, administrative orders

and the Settlement Agreement, and is therefore in violation of the

IDEA.  Bryan has suffered loss of educational opportunities and will

continue to be harmed by the DOE's failure to provide services

mandated by law.   Monetary relief is inadequate to compensate

Bryan for the loss of services specified in his IEP and he therefore is

entitled to injunctive relief.  In the alternative, he is entitled to

compensatory services to address that loss of educational

opportunity resulting from the DOE's failure to comply with the various 2004 Orders.

## VI.  SECOND CLAIM FOR RELIEF - Violations of Section 504

48.  Plaintiffs reallege and incorporate the allegations of paragraphs 1-47.

49.  The Rehabilitation Act, 29 U.S.C. § 729, prohibits the DOE, which receives federal financial assistance, from discriminating against handicapped individuals in the provision of equal educational opportunities, and requires the DOE to provide qualified students with disabilities with a FAPE.

50.  The DOE has repeatedly been informed of the need to hire and train an adequate number of skills trainers to provide services to autistic children like Bryan.  The DOE has intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan resulting from the lack of trained and consistent skills trainers.

51.  Since entering into the Settlement Agreement, and despite administrative orders and agreements to provide services

specified in Bryan's IEPs, the DOE has failed to comply with its obligations to Bryan.

52.    The DOE's consistent and knowing failure to provide the skills trainers required by Bryan's IEP and the Settlement Agreement has resulted in a violation of the Rehabilitation Act, 20 U.S.C. § 729, thus entitling Plaintiffs to injunctive and declaratory relief, or in the alternative to compensatory services.

## VII.  THIRD CLAIM FOR RELIEF - Violation of Section 1983.

53.    Plaintiffs reallege and incorporate the allegations of paragraphs 1 - 52.

54.    Defendant Rho, acting under color of state law, violated the rights of Plaintiffs under 42 U.S.C. § 1983 by committing the acts and omissions set forth above in violation of rights secured by federal statute, specifically violations of the IDEA and its supporting regulations, and failure to require compliance with the Settlement Agreement designed to ensure the provision of services mandated by Bryan's IEP.

55.    As a direct and proximate result of Defendant's actions, Bryan has been damaged and will continue to be damaged by the failure to be provided services mandated by law. Monetary relief is inadequate to compensate Bryan for the loss of services specified in his IEP and he therefore is entitled to injunctive and declaratory relief.

**VIII.    BREACH OF CONTRACT**

56.    Plaintiffs reallege and incorporate the allegations of paragraphs 1 - 55.

57.    The Settlement Agreement is a contract which can be enforced under state law.

58.    Plaintiffs have performed all their obligations under the Settlement Agreement

59.    As set forth above, the DOE has failed to perform its obligations.

60.    By failing to comply with the Settlement Agreement entered into by the DOE, Defendant DOE has breached its contract with Plaintiffs.

278110-1/6515-1                                        19

61.   As a result of the breach of the Settlement Agreement, Plaintiffs are entitled to injunctive or other equitable relief, including compensatory services for Bryan, to enforce their rights under the Settlement Agreement.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.   Declare that Defendants DOE and Rho have violated Plaintiffs' rights as set forth herein;

B.   Provide preliminary and permanent injunctive relief ordering Defendant to provide a free, appropriate public education to Bryan in accordance with the IDEA, the May 2004 Decision, the June 2, 2004 agreements, the July 2004 Orders, all other administrative orders, as well as with the Settlement Agreement and his IEPs, or in the alternative to order compensatory services as permitted under the IDEA and Section 504 of the Rehabilitation Act.

C.   Award Plaintiffs' costs and attorneys' fees;

D.    Grant Plaintiffs such other relief as may be just and

proper.

DATED: Honolulu, Hawai'i, July 1, 2005.

_Allison Kirk_
SHELBY ANNE FLOYD
MEI-FEI KUO
ALLISON KIRK
Attorneys for Plaintiffs

RELEASE AND SETTLEMENT AGREEMENT

COPY

THIS RELEASE AND SETTLEMENT AGREEMENT ("Agreement") is made and entered into this 1 day of July_____, 2002, by and between:

RELEASORS:     ANN KIMBALL WILES and STANLEY BOND (the "Bonds"), by and on behalf of their son, BRYAN WILES-BOND ("Bryan"), a minor

RELEASEES:     DEPARTMENT OF EDUCATION ("DOE"), STATE OF HAWAI'I; DEPARTMENT OF HEALTH ("DOH"), STATE OF HAWAI'I (collectively, the "State")

## I. RECITALS

A.     On or about February 27, 2001, the Bonds, on behalf of Bryan, filed a request for a due process hearing with the DOE, pursuant to Section 8-56-72, Hawai'i Administrative Rules, due to the State's alleged failure to provide all of the services to Bryan as specified in his Individualized Education Program ("IEP") and Coordinated Service Plan ("CSP").

B.     At a May 7, 2001 due process hearing, the parties presented a stipulated hearing decision (the "Stipulation") by which the State agreed to provide Bryan with the services specified in the Stipulation during the period from May 7 until October 1, 2001 (the "Stipulation Period"), with any hours of adult educational aide services that were not provided during that period to be made up beginning after October 1, 2001.

200347.1/6513-1/FINAL

**EXHIBIT A**

C.     During the Stipulation Period, Bryan did not receive the full number of hours of adult educational aide services required under the Stipulation, with the parties disputing whether the State made up such hours.

D.     On or about February 15, 2002, the Bonds filed a civil case, Civil No. 02-00101 SOM/BMK, and a Motion for Preliminary Injunctive Relief against the State in the U.S. District Court for the District of Hawai'i.

E.     The Bonds alleged that the State had breached federal regulations by, among other things, failing to implement the terms of the Stipulation, failing to provide a free and appropriate public education to Bryan under the Individuals with Disabilities Education Act ("IDEA"), and violating Section 504 of the Rehabilitation Act.

F.     The parties hereto desire to enter into this Agreement in order to provide for the full and final settlement and discharge of all claims which have been made, or might be made, by reason of the claims described in the Recitals above, upon the terms and conditions set forth below.

## II. RELEASE AND AGREEMENT

WHEREAS, the parties have engaged in full and complete discussions of the issues raised by each side and the parties having reached an agreement on the disposition of this case without further court or administrative hearings, the parties agree to the following:

A.    The Individualized Education Program ("IEP") dated May 24, 2002, as it may hereafter be revised in accordance with Chapter 56, Hawai'i Administrative Rules, shall be implemented as follows:

   1.    <u>Therapeutic Aide ("TA") Services</u>

      a.    By August 1, 2002, the State shall hire, train, and have in place the TAs needed to consistently provide Bryan with not less than ninety-five percent (95%) per calendar month of the TA hours to which he is entitled.[1]

      b.    The State shall continue to provide TA services through its contract with the current service provider and/or its successor.

      c.    By August 1, 2002, the State shall procure TA services for·Bryan to be provided by qualified individuals through an "expedited contract process". Under this expedited contract process, the State shall pay qualified individuals a minimum of $20.00 per hour, and may offer effective bonus/incentive payments to encourage retention of the TAs for three (3) months or longer. The State shall pay these TAs within 30 days of the TAs' submittal of properly verified time sheets to the State.

---

[1] Under his current IEP, Bryan is entitled to 68.25 hours of TA services per week, consisting of the following:

   Seven and one-fourth (7.25) hours of in-school TA services every weekday;
   Four (4) hours of after-school TA services every weekday; and
   Six (6) hours of weekend TA services every Saturday and Sunday.

d.    To assist the State in meeting the requirements of Paragraph II.c. above, the Bonds shall be authorized to advertise for TAs in State and national newspapers and other publications, with the cost of said advertising to be paid by the State, up to a total of $1,000.00 per year. The Bonds may refer potential TAs identified through advertising or other means to the State. The State shall determine the individuals' qualifications and pay level, conduct criminal background checks, and require that the individuals undergo and pass physical examinations prior to being hired.

e.    By August 1, 2002, the State shall create a pool of substitute TAs who are qualified and trained to provide services to Bryan. This pool of substitutes shall consist of a maximum of three individuals, who shall be subject to the Bonds' reasonable approval as to these individuals' presence in the home (but not as to their qualifications). Before providing services to Bryan, each substitute TA shall have reviewed Bryan's IEP, shall be trained to implement Bryan's IEP, and shall have observed Bryan receiving TA services for a minimum of two (2) hours in school and a minimum of two (2) hours in the home. These substitute TAs shall be available to provide services to Bryan on an occasional basis when his regular TAs are unavailable.

f.    The above-described TA services shall be provided by qualified TAs who meet the standards for a Level III TA, and are trained in DTT, TEACCH, and PECs methods for autistic children.

g.    The TAs shall complete Bryan's daily behavioral logs and daily log sheets showing the number and completion percentage of DTT and TEACCH trials utilized, and shall complete the DTT log for each trial. Each TA shall sign and date the entries in the daily behavioral logs and daily log sheets.

h.    Oversight and monitoring services for the TAs shall continue to be provided by the current autism consultants contracted by the State, or equally trained personnel. The State is not precluded from removing the current autism consultants and/or their successors for malfeasance, misfeasance, or nonfeasance of their duties.

i.    When school is not in session, either during the regular or extended school year, the State shall provide TA services to Bryan at his home or at another setting deemed appropriate by the IEP team, including a school classroom. The State shall provide Bryan with curb-to-curb transportation to the school or other setting.

On weekends and on State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under Paragraphs II.A.1.c. and II.A.1.e. above), the Bonds shall be responsible for ensuring that at least one of them or another responsible adult is in the home during those times. On weekdays, other than State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under

Paragraphs II.A.1.c and II.A.1.c above), the State shall be responsible for providing and paying for an additional adult to be present when either of the parents is unable to be in the home during those times; contingent upon the Bonds providing the State with at least two (2) business days' prior notice of the need for an additional adult to be in the home with Bryan and his TA. Any such individuals shall be subject to the Bonds' reasonable approval as to those individuals' presence in the home. The State shall conduct criminal background checks on these individuals, and shall pay these individuals within 30 days of the individuals' submittal of properly verified time sheets to the State.

The Bonds agree to execute an "assumption of risk" provision to permit: (1) specific TAs to be alone with Bryan in the home while providing services, if acceptable to the specific TA's contracting agency, if any; and (2) an additional adult to be present in the home with Bryan and his TA.

2.    <u>Additional Occupational and Speech/Language Therapy.</u>

a.    Pursuant to his IEP, Bryan currently receives two half-hour sessions per week of occupational therapy and two half-hour sessions per week of speech/language therapy.

b.    For an eight-week period, starting as of July 15, 2002, Bryan shall receive two additional half-hour sessions per week of occupational therapy and two additional half-hour sessions per week of speech/language therapy. After this eight-week period, if deemed appropriate by Bryan's IEP

team, with input from Bryan's current autism consultants or their successors, the additional therapy sessions shall be included in Bryan's IEP.

    3.   <u>Curb-to-Curb Transportation and Supervision of Bryan.</u>

The State shall ensure that Bryan is individually escorted from the bus which transports him from Kealakehe Elementary to the A+ Program at Kahakai Elementary, and shall be turned over to an A+ staff member. He shall not be dropped off in the parking lot and/or left unattended after being escorted to the A+ program.

    4.   <u>Respite Care.</u>

The Bonds shall be entitled to 32 hours of respite care per month, subject to adjustment through Bryan's IEP.

    B.   <u>Stipulation Regarding Need for Intensive Support and Consistent Services.</u>

The parties hereby stipulate that the Bonds currently maintain Bryan in the home environment with intensive support and consistent services from qualified providers. If the required level of support and services are not provided, a higher level of placement, as determined by the IEP team, may be necessary.

    C.   <u>Term of Agreement</u>

The parties agree that Paragraphs II.A.1.a., b., c., d., e., f., and i. of this Agreement shall remain in effect for a period of two (2) years from the date of this Agreement. All other provisions shall remain in effect for a period of one

(1) year from the date of this Agreement, except where an effective date is otherwise specified.

    D.    <u>Continuing Jurisdiction of the Court/Future Disputes</u>

        1.    The parties agree to submit to the continuing jurisdiction of the U.S. District Court for purposes of enforcing this Agreement for a period of one (1) year from the date of this Agreement.

        2.    Disputes relating to issues raised by future IEPs, if any, will be decided through the procedures of Chapter 56.

    E.    <u>Reimbursement/Fees and Costs</u>

    The State will pay reasonable attorneys' fees and costs to the Bonds as prevailing parties. The Bonds' counsel shall provide the State with copies of invoices for legal fees and costs within ten (10) days of the execution of this Agreement, and the State shall respond within ten (10) days of receipt of said invoices. If the parties cannot resolve the amount of fees and costs to be paid, the Bonds' counsel shall file a fee application in federal court within twenty (20) days of receipt of the State's response.

    F.    <u>Release and Dismissal</u>

        1.    Upon execution of this Agreement, all pending proceedings and all claims asserted in Civil No. 02-00101 SOM/BMK shall be dismissed.

        2.    The Bonds will prepare and the State will execute a stipulation to dismiss with prejudice the claims and proceedings in Civil No.

02-00101 SOM/BMK. The stipulation shall incorporate by reference the terms of this Agreement and be subject to approval of the Court.

3.    In consideration of the provisions set forth above, the Bonds hereby completely waive, and release, and forever discharge the State from any and all past, present, or future claims or demands, obligations, actions, causes of actions, rights, damages, costs, expenses, attorneys fees, and any compensation of any nature whatsoever, arising out of the claims described in the Recitals above.

4.    It is specifically understood and agreed that the provisions set forth and recited herein are intended to compensate the Bonds for loss of income, attorneys' fees, and any element of special damages arising out of the claims described in the Recitals above.

5.    The obligations in this Agreement shall apply to the State's past, present, and future attorneys, agents, servants, representatives, employees, predecessors, and successors in interest.

6.    This Agreement, on the part of the Bonds, shall be a fully binding, and complete settlement between the Bonds, and the State, and their respective representatives, heirs, assigns, and successors as to the claims described in the Recitals above. It is understood and agreed to by the parties that this Agreement is a compromise of disputed claims, and that any payments are not to be construed as an admission of liability on the part of the State, by whom liability and obligation is expressly denied.

7.    The State denies liability, negligence, breach of duty, breach of any assignment, misconduct, violation of federal and state statutes and laws, and/or wrongdoing of any kind, character or nature whatsoever, and any consideration paid by the State to the Bonds is solely in compromise of disputed claims.

### III. INDEMNITY

The Bonds hereby stipulate and agree, for the foregoing consideration, to indemnify and forever hold harmless, and defend the State and its respective officers, directors, attorneys, agents, servants, representatives, employees, subsidiaries, agencies, affiliates, predecessors and successors in interest, against loss and liability from any and all claims, services, liens, judgments, costs, expenses, attorneys fees, demands or actions, claims or actions for contribution, indemnity or reimbursement (contractual or otherwise), cross-claim and third-party claims, whether such claims or actions have merit or not, that may have or may be hereafter at any time be made or brought against the State by the Bonds or by anyone acting on their behalf, or holding by or through them, against the parties herein released which may be sustained in consequences of the claims described the Recitals above. It is understood and agreed that the Bonds are not indemnifying the State against claims arising in the future for payment of obligations created by this Agreement.

## IV. WARRANTY OF CAPACITY TO EXECUTE AGREEMENT

The Bonds represent and warrant that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, except as otherwise set forth herein; that the Bonds have the sole right and exclusive authority to execute this Agreement and receive the sums specific in it; and that the Bonds have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Agreement.

## V. GOVERNING LAW

This Agreement shall be construed and interpreted in accordance with the laws of the State of Hawai'i.

## VI. FULL COOPERATION; ADDITIONAL DOCUMENTS

Each of the Parties agrees to cooperate fully and act in good faith by taking all necessary steps to give full force and effect to the basic terms and intent of this Agreement, including but not limited to executing any and all supplementary documents.

## VII. NO RELIANCE BY RELEASORS

The Bonds and their counsel have not relied upon any express or implied representation of the State, or any of their agents as to the tax consequences of this Agreement, and the Bonds release the State from any and all liabilities in connection with such tax consequences.

## VIII. ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Agreement contains the entire agreement between the Bonds and the State with regard to the matters set forth in it and shall be binding upon, and inure to the representatives, heirs, successors and assigns of each.

## IX. EFFECTIVENESS

This Agreement shall become effective immediately following execution by each of the parties.

_____
ANN KIMBALL WILES

Date: ___7/1/02___

_____
STANLEY BOND

Date: ___July 1, 2002___

"RELEASORS"

_____
DEPARTMENT OF EDUCATION,
STATE OF HAWAI'I

Date: ___7/3/02___

200347.1/6515-1/FINAL                    12

_____

**DEPARTMENT OF HEALTH,
STATE OF HAWAI'I**

Date: _____ JUL 12 2002 _____

"RELEASEES"

APPROVED AS TO FORM:

_____
SHELBY ANNE FLOYD, ESQ.
JERILYNN ONO HALL, ESQ.
Attorneys for Releasors

_____
EARL I. ANZAI, ESQ.
Attorney General
PAMELA A. TOGUCHI, ESQ.
Deputy Attorney General
Attorneys for Releasees

200347-1/GS1S-1/FINAL                    13

I HEREBY CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN THE DEPARTMENT
OF COMMERCE & CONSUMER AFFAIRS.

DEPT. OF COMMERCE
AND CONSUMER AFFAIRS

2004 MAY 11 P 3: 35

HEARINGS OFFICE

OFFICE OF ADMINISTRATIVE HEARINGS
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS
STATE OF HAWAI'I

In the Matter of                                    )
                                                    )    DOE-2004-026
BRYAN WILES-BOND, by and through his                )
Parents, DR. and MRS. STAN BOND,                    )    FINDINGS OF FACT,
                                                    )    CONCLUSIONS OF LAW
                                                    )    AND DECISION
                Petitioners,                        )
                                                    )
        vs.                                         )
                                                    )
DEPARTMENT OF EDUCATION,                            )
STATE OF HAWAI'I,                                   )
                                                    )
                Respondent.                         )
                                                    )
_____)

FINDINGS OF FACT,
CONCLUSIONS OF LAW AND DECISION

I.    INTRODUCTION

        On February 26, 2004, the Department of Education, State of Hawai'i
("Respondent") received a request for a due process hearing under Hawaii Administrative
Rules ("HAR") Title 8, Chapter 56 from Bryan Wiles-Bond, by and through his parents,
Dr. and Mrs. Stan Bond (hereafter collectively referred to as "Petitioners"). A pre-
hearing conference was held on March 9, 2004 and attended by Shelby Anne Floyd, Esq.,
attorney for Petitioners, via telephone and Lono P.V. Beamer, Esq., attorney for
Respondent.

        On April 5, 2004, the hearing was convened by the undersigned Hearings Officer.
Dr. Stan Bond and Mrs. Bond, also known as Ann Kimball Wiles and Kim Wiles, were
present and were represented by Ms. Floyd. Respondent was represented by Stella M.L.
Kam, Esq.

EXHIBIT B

At the close of the hearing, the Hearings Officer requested that the parties file written closing arguments by April 23, 2004. By agreement of the parties, the decision deadline was extended from April 11, 2004 to May 3, 2004. On April 23, 2004, the parties requested an extension to file written closing arguments. On April 24, 2004, the Hearings Officer granted an extension of the briefing deadline from April 23, 2004 to April 28, 2004. On April 29, 2004, the Hearings Officer granted an extension of the decision deadline from May 3, 2004 to May 11, 2004.

Having reviewed and considered the evidence and arguments presented, together with the entire record of this proceeding, the Hearings Officer renders the following findings of fact, conclusions of law and decision.

## II.    FINDINGS OF FACT

1.    Bryan Wiles-Bond is 12 years old (dob 10/28/91) and severely autistic.

2.    Bryan's disability requires that he be placed in a fully self-contained special education classroom for children with autism. Bryan is moderately toilet regulated in school with accidents still occurring. Appropriate toileting skills continue to be a strong need for Bryan at home and in the community.

3.    Bryan does not speak. He communicates his needs through signs, gestures, and verbal word approximations. Bryan communicates mainly through American Sign Language ("ASL"). He uses approximately 20 signs spontaneously and has approximately 100 words in his receptive/expressive vocabulary. A person needs to know ASL and Bryan's current bank of ASL vocabulary words to communicate with him.

4.    Bryan seeks interaction with the key adults in his program. Direct adult supervision is needed for Bryan while on campus due to the severity of his disability. 1:1 adult instructional support ("skills trainer") is necessary for Bryan to progress through the objectives on his Individualized Education Program ("IEP"). Bryan's most recent IEP[1] requires that he have the services of a skills trainer at the following times:

---

[1] Bryan's most recent IEP was developed on January 9, 2004. The previous IEP is dated November 25, 2003. The only IEP Team ("Team") members who could attend that meeting were David Stanley (principal), Dayle Yokoyama (special education teacher), and Dr. and Mrs. Bond. This meeting was to be

a) During the school day, Monday through Friday, for 6.5 hours (from approximately 7:30 a.m. to 2:00 p.m.);

b) During after school hours, Monday, Tuesday, Thursday, Friday, for 4.5 hours (from approximately 2:00 p.m. to 6:30 p.m.) and Wednesday for 5.5 hours (from approximately 2:00 p.m. to 7:30 p.m.); and

c) On Saturday and Sunday for 6 hours per day (from approximately 12:30 p.m. to 6:30 p.m.).

A total of 68 hours of skills trainer services per week.

5. According to the January 9, 2004 IEP, among his other needs, Bryan should (1) increase his signing vocabulary and continue spontaneous use of sign language; (2) learn appropriate toileting skills in the school, home, and community settings; and (3) learn to respect the personal space and the personal property of others (boundaries).

6. Dr. Dru Copeland, Bryan's Intensive Instructional Services Consultant ("IISC"), testified that her goal for Bryan is that he be as functional in the world as he can possibly be. This includes having some means of communication, including signing, written words and more verbal approximations, and necessary functional skills. Necessary functional skills include social skills, appropriate behaviors in public, and toileting skills. Without necessary functional skills, Bryan's life will be very narrow and confined.

7. From October 2003 to February 2004, the Department of Education ("DOE") failed to provide Bryan with the required number of skills trainer service hours per week as required in his relevant IEPs.[2]

---

Bryan's annual IEP review. The Team decided that the November 25, 2003 IEP was complete and a new meeting would be held in the near future. The next IEP meeting was held on January 9, 2004.

[2] Bryan's November 18, 2002 IEP is also relevant because it covers the period from November 18, 2002 to November 18, 2003. The November 18, 2002 IEP required Bryan to have 30 hours of skills trainer services during the school day, 23.5 hours of skills trainer services after school, and 12 hours of skills trainer services on the weekend days for a total of 65.5 skills trainer hours per week. From October 2003 through November 2003, the DOE failed to provide Bryan with 65.5 hours of skills trainer services per week as required by his IEP.

8.    The six skills trainers Respondent provided to Bryan in the Fall of 2003 through February 2004 did not have prior experience working with autistic children. Five of the six skills trainers had no prior experience with ASL.

9.    Neither of the two agencies, Child and Family Services ("CFS") and The Institute for Family Enrichment ("TIFFE"), who provided skills trainers to Bryan during that period were able to locate individuals who had experience working with autistic children or who were proficient in ASL.

10.    Since Bryan's skills trainers had no experience in working with autistic children, Dr. Copeland had to train them. During the 18 months she worked with Bryan Dr. Copeland trained 12 skills trainers.  Training included instruction in two basic programs[3] used to teach autistic children, managing Bryan's behavior, developing Bryan's social skills, and data collection.  Dr. Copeland works with Bryan for 6 hours each week. Training his skills trainers leaves little time for her other related duties such as coordinating matters with Petitioners and working on and expanding Bryan's program.

11.    Petitioners, on their own, placed advertisements in newspapers to locate skills trainers for Bryan.  Over time, Petitioners located 8 skills trainers for Bryan who were hired by Respondent.

12.    Naomi Shiraishi, Bryan's speech pathologist, communicates with Bryan through ASL.  Ms. Shiraishi testified that Bryan uses ASL in single words or short phrases and needs prompting to use short phrases. The person prompting Bryan must use ASL.  Bryan understands language and processes language better if a combination of verbal and visual cues (ASL) are used. Bryan's skills trainers must be proficient in ASL and use Bryan's vocabulary bank of ASL signs.

13.    Mrs. Bond testified that Bryan's teacher does not know ASL and does not use ASL to communicate with Bryan and two other children in his class who use signs as their primary mode of communication.  It is frustrating for Bryan to communicate with someone who does not know ASL and he does not progress.

14.    When Bryan did not receive the number of skills trainer hours specified in his IEPs from October 2003 through February 2004, he regressed in a number of areas.

---

[3]This included the Treatment and Education of Autistic and Related Communications Handicapped Children ("TEACCH") program and Discreet Trial Training ("DTT").

15.    One significant area of regression involved toileting skills.  Petitioners testified that Bryan does better with toileting when his skills trainer services are in place. With more people around, Bryan can be monitored frequently and will use ASL to express his need to use the toilet. When services were not in place, Petitioners noticed an increase in toileting problems. Bryan started doing things he hadn't done for several months to a year and a half. This included urinating on the sofa, developing a self-stimulating pattern of drinking and urinating, and a preference for urinating outdoors, instead of in the toilet.

16.    A second significant area of regression involved learning to behave independently and respecting the personal space and personal property of others (boundaries). Bryan has no concept of respecting the personal space or the personal property of others. Skills trainers are required to monitor Bryan's behavior and provide consistent feedback to him regarding his actions and behaviors in these areas.  For example, each door in Petitioners' house has a lock on it. Without locks Bryan might engage in activities that would jeopardize his safety or cause damage to property. Bryan must be taught what is and is not acceptable behavior. The goal is to have Bryan learn appropriate behavior and eventually remove the locks from all of Petitioners' doors. Petitioners testified that before the gap in service, Bryan could remain in the downstairs room alone for an hour without any boundary problems. At that point, Petitioners were almost ready to remove the lock from the downstairs room. As a result of the gap in service, Bryan must now relearn appropriate boundary behaviors.

17.    Bryan must learn appropriate boundary behaviors in order to function at school and in the community. Petitioners testified to two incidents where Bryan acted inappropriately in the community. In the first incident, he took a man's sunglasses while he was at the beach.  In the second incident, Bryan went back to his old habits of randomly pulling items off of shelves, touching people in the grocery store and taking items out of their carts. Bryan had not acted this way for quite a while. Before the gap in service, Bryan could go to the grocery store and act appropriately.

18.    In the Fall of 2003 through February 2004, Respondent attempted to locate skills trainers for Bryan through CFS and TIFFE. Respondent, however, was unable to

5

provide Bryan with the number of skills trainer hours required by his January 9, 2004 IEP until March 2004.

III.    **CONCLUSIONS OF LAW**

It is not disputed that Bryan is a student with a disability and entitled to special education services pursuant to HAR Title 8, Chapter 56. There is also no dispute that he is entitled to 65.5 hours of skills trainer services per week according to his November 18, 2002 IEP and 68 hours of skills trainer services per week according to his November 25, 2003 and January 9, 2004 IEPs. Petitioners' February 26, 2004 request for impartial hearing raises the following issues with regard to Bryan's services from October 2003 through February 2004:

1)  The DOE's repeated failure to provide the services required by Bryan's IEP;

2)  The DOE's failure to ensure that trained skills trainers are hired and available to provide services for children like Bryan;

3)  The DOE's failure to provide skills trainers who can communicate with Bryan, who communicates with American Sign Language;

4)  The DOE's failure to comply with the Settlement Agreement;[4]

5)  The DOE's failure to provide Bryan's parents with prompt and complete information about complaints which the DOE now states prevented it from providing skills trainers;[5] and

6)  The DOE's failure to promptly address Bryan's needs for additional expertise to provide effective toilet training, after acknowledging the need in October 2003. Hawaii Administrative Regulations [sic] provide that if "the IEP team determines that a student needs a particular device or

---

[4] The settlement agreement contained in Petitioners' Exhibit "P4" does not specifically relate to the issues raised in Petitioners' February 26, 2004 request for hearing. Therefore, the Hearings Officer does not have jurisdiction and will not rule on this matter.

[5] There was insufficient evidence for the Hearings Officer to determine whether the DOE failed to provide Bryan's parents with prompt complete information about complaints which the DOE now states prevented it from providing skills trainers.

6

service (including an intervention, accommodation, or other program modification) in order for this student to receive a free appropriate public education, the IEP team shall include a statement to that effect in the student's IEP."[6]

Based on the evidence presented at the hearing, the Hearings Officer concludes that Petitioners proved by a preponderance of the evidence that from October 2003 through February 2004 1) The DOE repeatedly failed to provide the skills trainer services required by Bryan's November 18, 2002, November 25, 2003, and January 9, 2004 IEPs; 2) The DOE failed to ensure that trained skills trainers were hired and available to provide services to Bryan; and 3) The DOE failed to provide skills trainers who could communicate with Bryan using ASL.

From October 2003 to November 18, 2003 Bryan's IEP required that he receive 65.5 hours of skills trainer services per week. From November 25, 2003 to January 9, 2005, Bryan's IEPs require that he receive 68 hours of skills trainer services per week. Neither party disputes the number of skills trainer service hours Bryan should have received during October 2003 through February 2004. Nor is it disputed that Bryan failed to receive the number of skills trainer service hours specified by his IEPS. Respondent's failure to provide Bryan with the number of skills trainer service hours specified in his November 18, 2002, November 25, 2003, and January 4, 2004 IEPs is a denial of FAPE.

Respondent agreed to provide skills trainers for Bryan who had experience working with autistic children. Respondent worked with CFS and TIFFE to provide skills trainers to Bryan. CFS provided one skills trainer to Bryan from Fall 2003 to January 2004. TIFFE provided one skills trainer for Bryan during this time and was not able to provide any others. Neither the CFS nor TIFFE skills trainers had experience in working with autistic children. Respondent's failure to hire trained skills trainers to work with Bryan during October 2003 through February 2004 for Bryan is a denial of FAPE.

Respondent failed to provide Bryan with skills trainers who could communicate with him using ASL. Bryan's January 9, 2004 IEP specifically states that skills trainers

---

[6] During the hearing Ms. Floyd stated that Petitioners did not intend to introduce evidence relating to the toilet training issue and requested a decision on the other stated issues. Ms. Floyd did, however, present evidence on the need for a night time toilet monitor for Bryan as part of Petitioners' request for compensatory relief.

are necessary for Bryan to progress through the objectives of his IEP and his 1:1 instructional support need to know and respond to Bryan's ASL vocabulary. During October 2003 through February 2004, Bryan had six skills trainers. Of those six skills trainers, five did not know ASL.[7] Dr. Copeland testified that when she first worked with Bryan he knew 6 signs. Now Bryan knows 140 signs and any person working with him must already know ASL or be able to jump in, learn Bryan's 140 signs and become proficient in ASL. According to Dr. Copeland, the skills trainers know the 140 signs, but don't always use them with Bryan. If Bryan's skills trainers are not proficient in ASL, they cannot work with him on the goals and objectives of his IEP and his learning opportunities will be severely curtailed. Respondent submitted no evidence to the contrary. Respondent's failure to provide Bryan with skills trainers who can communicate with Bryan using ASL during October 2003 through February 2004 is a denial of FAPE.

Having determined that Petitioners have been denied FAPE, the Hearings Officer must now consider whether Bryan is entitled to compensatory education. A court may "grant such relief as [it] determines is appropriate" and "Equitable considerations are relevant in fashioning relief". *School Comm. of Burlington v. Department of Education, 471 U.S. 359 (1985).* The testimony of Dr. Copeland and Petitioners was very compelling. During the five month gap in services Bryan seriously regressed in the areas of toileting skills and respecting the personal space and personal property of others (boundaries). In addition to being part of his IEP, these are basic skills Bryan needs to function in school, at home, and in the community. Except for "Rae", Bryan's skills trainers are not proficient in ASL and do not consistently use his 140 signs to communicate with him. Although trained by Dr. Copeland, Bryan's skills trainers had no prior experience working with autistic children. Respondent provided no evidence to the contrary.

The Hearings Officer finds that Bryan's November 18, 2002, November 25, 2003, and January 9, 2004 IEPs were reasonably calculated to enable Bryan to receive educational benefit. Respondent's failures to provide Bryan with 1) the required number of skills trainer service hours as specified in his IEPs, 2) trained skills trainers capable of

---

[7] "Rae", the only skills trainer proficient in ASL, was hired in January 2004.

providing services to Bryan, and 3) skills trainers who can communicate with Bryan using ASL, resulted in a loss of educational benefit to Bryan. As such, Bryan is entitled to the following relief:

1)    Respondent shall hire, train, and have in place the skills trainers needed to consistently provide Bryan with not less than 95% per calendar months of the skills trainer hours to which he is entitled to in his IEP. If Respondent fails to provide Bryan with qualified skills trainers, Petitioners shall be authorized to hire directly at Respondent's expense. Any skills trainer hired by Petitioners shall meet DOE standards and shall be trained in a) DTT and TEACCH methods and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

2)    Skills trainers hired by Respondent for Bryan shall meet DOE standards and shall be trained in a) DTT and TEACCH methods and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

3)    Bryan's IISC shall be given an extra allotment of hours to train new skills trainers who do not meet the requirements set forth in numbers 1) and 2) above. The number of additional hours shall be determined by Bryan's IEP team; and

4)    Respondent will provide additional hours of service from a knowledgeable consultant to design, implement, and monitor a toileting program for Bryan. The number of additional hours shall be determined by Bryan's IEP team.

IV.    <u>DECISION</u>

For the reasons stated above, the Hearings Officer finds that Petitioners proved by a preponderance of the evidence that from October 2003 through February 2004 1) The DOE repeatedly failed to provide the skills trainer services required by Bryan's

November 18, 2002, November 25, 2003, and January 9, 2004 IEPs; 2) The DOE failed to ensure that trained skills trainers were hired and available to provide services to Bryan; and 3) The DOE failed to provide skills trainers who could communicate with Bryan using ASL. As a result, Bryan was denied FAPE.

Based upon the foregoing, IT IS HEREBY ORDERED:

1.    Respondent shall hire, train, and have in place the skills trainers needed to consistently provide Bryan with not less than 95% per calendar months of the skills trainer hours to which he is entitled to in his IEP. If Respondent fails to provide Bryan with qualified skills trainers, Petitioners shall be authorized to hire directly at Respondent's Expense. Any skills trainer hired by Petitioners shall meet DOE standards and shall be trained in a) DTT and TEACCH methods and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

2.    Skills trainers hired by Respondent for Bryan shall meet DOE standards and shall be trained in a) DTT and TEACCH and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

3.    Bryan's IISC shall be given an extra allotment of hours to train new skills trainers who do not meet the requirements set forth in numbers 1) and 2) above. The number of additional hours shall be determined by Bryan's IEP team; and

4.    Respondent will provide additional hours of service from a knowledgeable consultant to design, implement, and monitor a toileting program for Bryan. The number of additional hours shall be determined by Bryan's IEP team.

## RIGHT TO APPEAL

The parties to this case have the right to appeal this decision to a court of competent jurisdiction. The appeal must be made within thirty (30) days after receipt of this decision.

DATED: Honolulu, Hawaii, _____ May 11, 2004 _____

_____

HAUNANI H. ALM
Administrative Hearings Officer
Department of Commerce
and Consumer Affairs

10

Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

SHELBY ANNE FLOYD
65-1230 Mamalahoa Hwy, C21
Kamuela, Hawai'i 96743
Telephone: (808) 885-6762
Fax: (808) 885-8065
E-mail: sfloyd@ahfi.com

Attorneys for Petitioners

OFFICE OF ADMINISTRATIVE HEARINGS
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS
STATE OF HAWAI'I

| | |
|---|---|
| In the Matter of | ) DOE - 2004-070 |
| | ) |
| BRYAN WILES-BOND, | ) STIPULATED PARTIAL |
| by and through his parent, | ) DECISION AND ORDER |
| Dr. Stan Bond, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF EDUCATION, | ) |
| STATE OF HAWAI'I, | ) |
| | ) |
| Respondent. | ) |
| | ) |

STIPULATED PARTIAL DECISION AND ORDER

Whereas, on June 2, 2004, the Department of Education, State of

Hawai'i ("Respondent") received a request for a due process hearing

under Hawai'i Administrative Rules ('HAR") Title 8, Chapter 56 from

EXHIBIT _C_

Bryan Wiles-Bond, by and through his father, Dr. Stanley Bond
("Petitioner").

Whereas, on June 25, 2004, by telephone conference with the
Hearings Officer Haunani H. Alm, the Respondent, represented by Lono
K. Beamer, Esq., stipulated to the facts alleged in the Request and to
Respondent's liability under the law,

Whereas, a hearing on relief was scheduled on July 6, 2004 before
Hearings Officer Alm, and

Whereas, the parties have partially agreed to the relief to be
ordered by the Hearing Officer, and have submitted one issue of relief to
the Hearing Officer after submission of testimony,

NOW IT IS THEREFORE STIPULATED as follows:

1.    Respondent shall cause to be prepared for Bryan a written
      structured social skills curriculum for implementation
      beginning no later than the end of the first week of the 2004-
      2005 school year.

2.    Respondent shall hire and have in place by the beginning of
      the 2004-2005 school year a licensed, certified special
      education teacher with experience teaching autistic children
      and proficiency with American Sign Language.

3.     Respondent shall cause a functional behavioral assessment to be completed for Bryan and delivered to his parents no later than August 7, 2004.

IT IS FURTHER STIPULATED that the Hearing Officer shall render a decision on the relief requested concerning Bryan's entitlement to a licensed and certified special education teacher for the provision of special education outside the standard academic school year.

DATED this ___ day of July, 2004.


_____
Lono K. Beamer, Esq.
Deputy Attorney General

Counsel for Respondent

_____
Shelby Anne Floyd, Esq.
Counsel for Petitioner


APPROVED AND SO ORDERED:


_____
HAUNANI H. ALM
Administrative Hearings Officer
Department of Commerce
  and Consumer Affairs

## **VERIFICATION**

STATE OF _California_ )
                              ) SS
COUNTY OF _Solano_ )

We, ~~Stanley Bond~~ and Ann Kimball Wiles, being duly sworn

upon our oath, state that the foregoing facts set forth in the Verified

Complaint are true and correct.

_Stanley Bond_
STANLEY BOND

_Ann Kimball Wiles_
ANN KIMBALL WILES

SUBSCRIBED AND SWORN TO before me
on this _6th_ day of _June_ , 2005.

_Megan L. Richardson_
Notary Public, State of _California_

Name Printed _Megan L. Richardson_

My Commission Expires:
_May 3, 2007_

MEGAN L. RICHARDSON
Commission # 1415190
Notary Public - California
Solano County
My Comm. Expires May 3, 2007

278110-1/6515-1                      23

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**

State of California

County of _Solano_ } ss.

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_[signature]_
_____
Signature of Document Signer No. 1

n/a
_____
Signature of Document Signer No. 2 (if any)

Subscribed and sworn to (or affirmed) before me on this

_6th_ day of _June_ , _2005_ , by
Date        Month        Year

(1) _Stanley Bond_ ,
Name of Signer

☐ Personally known to me
☑ Proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)
(and

(2)_____ ,
Name of Signer

☐ Personally known to me
☐ Proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

_[signature] Meg L Richard_
_____
Signature of Notary Public

```
MEGAN L. RICHARDSON
Commission # 1415190
Notary Public - California
Solano County
My Comm. Expires May 3, 2007
```

_____
Place Notary Seal Above

――――――― *OPTIONAL* ―――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document:_____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5910    Reorder: Call Toll-Free 1-800-876-6827

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was duly served upon the following party on this date, by hand delivery or depositing said copy, postage prepaid, first class, in the United States Post Office, at Honolulu, Hawai'i, as indicated and addressed as set forth below:

|  | MAILED | HAND DELIVERED |
|---|---|---|
| MARK BENNETT<br>Attorney General<br>LONO BEAMER<br>Deputy Attorney General<br>Office of the Attorney General<br>State of Hawai'i<br>235 South Beretania Street, Room 304<br>Honolulu, HI 96813 | ( X ) | ( ) |

Attorneys for Defendants

DATED:  Honolulu, Hawai'i, July 1, 2005.

*allison kirk*

SHELBY ANNE FLOYD
MEI-FEI KUO
ALLISON KIRK
Attorneys for Plaintiffs

278110-1/6515-1