```
        IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF HAWAII
                       - - -


ANN KIMBALL WILES and STANLEY
BOND, individually and as next
friend of their son, BRYAN
WILES-BOND, a minor,
           Plaintiff,
vs.                    Civil No. CV-05-00247 HG/BMK
DEPARTMENT OF EDUCATION    No. CV-04-00442 HG/BMK
State of Hawai'i, and ALVIN     CONSOLIDATED
RHO, in his official capacity  (Other Civil Action)
as West Hawai'i District
Superintendent,
           Defendants.
------------------------------/
```

**CERTIFIED COPY**

```
              DEPOSITION OF
               STANLEY BOND
            WALNUT CREEK, CALIFORNIA
                MAY 11, 2007


ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com


REPORTED BY: DANUTA KRANTZ, CSR NO. 4782
FILE No.: A103D1F
```

EXHIBIT   E

1

```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF HAWAII
                            - - -


ANN KIMBALL WILES and STANLEY
BOND, individually and as next
friend of their son, BRYAN
WILES-BOND, a minor,
          Plaintiff,
vs.                        Civil No. CV-05-00247 HG/BMK
DEPARTMENT OF EDUCATION       No. CV-04-00442 HG/BMK
State of Hawai'i, and ALVIN       CONSOLIDATED
RHO, in his official capacity  (Other Civil Action)
as West Hawai'i District
Superintendent,
          Defendants.
_____/



       Deposition of STANLEY BOND, taken on behalf
of Defendants, at Embassy Suites 1345 Treat Boulevard,
Walnut Creek, California, commencing at 9:15, Friday,
May 11, 2007, before Danuta Krantz, CSR No. 4782.
```

```
 1                    A P P E A R A N C E S
 2

 3   FOR THE PLAINTIFF:
 4   LAW OFFICES OF CARL. M. VARADY
     1001 Bishop Street
 5   Suite 2870
     Honolulu, HI 96813
 6   BY:  CARL M. VARADY, ESQUIRE
 7

 8
     FOR THE DEFENDANTS:
 9
     LAW OFFICES OF WATANABE, ING & KOMEIJI
10   999 Bishop Street
     23rd floor, First Hawaiian Center
11   Honolulu, HI 96813
     BY:  GREGG M. USHIRODA, ESQUIRE
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                     I N D E X
 2  STANLEY BOND:
 3  EXAMINATION                                    PAGE
         BY MR. USHIRODA                             5
 4
 5  EXHIBITS
 6  DEFENDANT'S                                    PAGE
 7  1   Stanley Bond's Amended Responses to
        Answers to Interrogatories                  13
 8
    2   Stanley Bond's Response to Answers to
 9      Interrogatories                             14
10  3   Pacific Child & Family associates Revised
        Proposal:  Bryan Wiles Bond 11-5-04        103
11
    4   Letter to Robert Gentzel from
12      Stanley Bond 9-20-04                       157
13  5   Letter to Mr. Bond from
        Robert Gentzel                             158
14
    6   Release and Settlement Agreement 7-1-02    163
15
    7   Findings of Fact, Conclusions of Law and
16      Decision 5-11-04                           207
17  8   Verified Amended and Supplemental
        Complaint                                  218
18
    9   Complaint; Exhibits A-D; Demand for
19      Jury Trial; Summons                        218
20
21
22
23
24
25
```

```
 1                    STANLEY BOND,
 2         having first been duly sworn, was
 3         examined and testified as follows:
 4              EXAMINATION BY MR. USHIRODA
 5         MR. USHIRODA:  Q.  Good morning.  Could you
 6  please state your name for the record?
 7         A.  Stanley, S-T-A-N-L-E-Y, Crews, C-R-E-W-S,
 8  Bond, B-O-N-D, Junior.
 9         Q.  Good morning, Stan.  My name is Greg
10  Ushiroda.  We met just before the court reporter swore
11  you in.  And I represent the defendants in this case,
12  the Department of Education for the State of Hawaii and
13  Alvin Rho in his capacity as the West Hawaii
14  superintendent.
15             And I am here today to take your
16  deposition, and before we get started I would like to
17  go through some what we call admonitions and cautionary
18  instructions.  Okay?
19         A.  Okay.
20         Q.  Before we get to that, what is your current
21  address, Stan?
22         A.  My current address is 510 Cooper Drive,
23  C-O-O-P-E-R, Drive, in Benicia, and that is
24  B-E-N-I-C-I-A, California, 54 -- I am sorry, 94510.
25  Too many zips.
```

1  of his after school plan, and that was, you know,
2  rarely implemented.  And so his ability to go out and
3  learn how to shop in a store or go sit in a restaurant
4  or McDonald's, whatever.  I think that -- and act
5  appropriately, I think that has been severely limited
6  by what happened, by the lack of -- by the lack of
7  people to carry out that plan.
8          So I think that you look at it, it's going
9  to impact, really, every aspect of his life as a, you
10 know, as a teenager and as an adult.
11     Q.  Do you have a belief that Bryan will have
12 to be -- require institutional care?
13     A.  You know, I don't know at this point.  And
14 our hope is that Bryan will be able to live in some
15 form of independence, but at this point I don't think
16 that there is any way to know what the ultimate, you
17 know, ultimate outcome for Bryan will be when he is an
18 adult.
19     Q.  Any other things -- anything else to add?
20     A.  I think that is probably it.
21     Q.  Now, Stan, how have you been permanently
22 damaged?
23     A.  Well, I think that it created an extreme
24 amount a of stress on our on life.  And Bryan's lack of
25 independence will continually create, you know, a

274

```
 1  significant impact on our life.
 2           And it's created an important impact on our
 3  ability to spend time with our older son Will.  And I
 4  mean, conversely, it impacted him because, you know,
 5  for Will, for a teenager, it's kind of tough to bring
 6  friends over to the house and not know if your little
 7  brother is going to come running out of the room
 8  screaming and naked when he's 10 or 11 years old and he
 9  shouldn't be doing it.  You know, it's one thing when
10  he's an infant.
11           And so I think that there are, you know,
12  for him, there are a lot of social issues that have
13  revolved around Bryan that have been difficult.  You
14  know, because of our need to maintain Bryan, we can't
15  really take Bryan on vacations.  And so because of our
16  need to, you know, to be with Bryan it has limited our
17  ability to, you know, to travel as family.
18           So at times I will take my son somewhere or
19  my wife will take him somewhere, but our ability to
20  travel a family was severely limited in Hawaii, and I
21  think that as long as Bryan is in our household, that
22  is certainly going to be a significant limitation.
23           In a lot of -- you know, I just -- we have
24  been -- we have been damaged as a family, we have been
25  damaged as individuals.  But, you know, Bryan has been
```

1  damaged, you know.  We were are adults, and my son is
2  a, you know, normal, functioning person, and we will
3  all get through some of that.
4           I mean, it's not to say that this is going
5  to be perfect, but we can understand it.  But Bryan is
6  the one that has really been damaged.  That is what
7  this case is really about.  Bryan has been severely
8  damaged.
9           He can't understand how or why he was
10 damaged or understand what is going to happen, because
11 he has just lost so much potential that could have been
12 there and was frittered away because the DOE was not
13 willing to give him an appropriate program.
14      Q.  I understand that you are bringing this
15 case on behalf of Bryan.  You told me how he has been
16 damaged, but you have also made claims, from what I
17 gather, are claims for personal injuries?
18      A.  Yes.  Well, of course, we were forced to
19 leave Hawaii.  We had to move to --
20           (Ann Kimball Wiles came in.)
21           THE WITNESS:  We were forced to leave
22 Hawaii.  We had to move to a significantly more
23 expensive part of the country.  My commute to work has
24 altered from, you know, 15 minutes to an hour and 20
25 each way or, you know, somewhere.

```
 1              Living expenses are higher.  We have paid
 2  for my son to be at Parker School.  We had to take him
 3  out in the middle of the year.
 4              MR. USHIRODA:  Q.  You lost the tuition?
 5       A.  We lost the tuition.  Kim had to leave her
 6  job in the middle of the school year, didn't find
 7  another job until the beginning of the next school
 8  year.  So there was a significant half year -- more
 9  than half year's loss of income.
10              So I mean, there were -- so yes, there were
11  monetary damages to us.  And then there are those
12  things we never really claimed, like all of my flights
13  to Oahu to go to the court, and, you know, never
14  produced anything and were never -- I mean --
15              Yes, I mean, there is a lot -- there are
16  other things as well.
17       Q.  And you have identified those in your
18  interrogatory answers?
19       A.  Yes.
20       Q.  What I have -- and I want to clean those up
21  in the sense of just tying down what it exactly is.
22  But right now my focus is more on your claim for
23  personal injuries, your own personal injuries.
24              Right now one of the things you talked
25  about is stress that you endured because of the
```

1  situation. Anything else?
2      A. Well, as I said, you know, family time, you
3  know time, with my son, lost time with my son, lost
4  time with Bryan in many ways, because we couldn't
5  interact with him in the way we would have liked to.
6  We had to interact with him in ways that dealt with his
7  behavior because he had not had the, you know, his
8  needs fulfilled.
9      So, I mean, we -- it's hard. We have been
10 damaged.
11     Q. Have you seen a psychologist or a mental
12 health care provider?
13     A. No, I have not.
14     Q. Have you taken any medication for your
15 stress?
16     A. No.
17     Q. Any other personal injuries that you
18 sustained, you believe you sustained? I know you have
19 been pretty candid, but I am trying -- what I am doing
20 right now try is just trying to exhaust you in terms of
21 what --
22     A. I think that probably deals with the
23 personal.
24     Q. If you look quickly at Exhibit 1, and we --
25     A. Okay.

```
 1        Q.   You have some -- off the record.
 2             (Discussion off the record.)
 3        MR. USHIRODA:  Q.   If you look at the --
 4             (Discussion off the record.)
 5        MR. USHIRODA:  Q.   Now, if you look at page
 6   17.
 7        A.   Okay.
 8        Q.   No. 9 asks for any claims of past or future
 9   loss of income, and I take it you are not claiming
10   anything at this time?
11        A.   I am not personally claiming loss of
12   income.  I believe Kim is.
13        Q.   And for No. 8, it asks you to identify all
14   educational, medical and health care expenses you claim
15   as a result of the DOE's actions and inactions.
16             And you state that all of the above are
17   future claims, correct?
18        A.   Yes.
19        Q.   And I believe you -- when I asked you in
20   exhibit -- interrogatory No. 12 on page 19, you
21   referred to an Exhibit A?
22        A.   Yes.
23        Q.   I believe that is a Dr. Von Elsner's
24   calculations?
25        A.   I believe so.
```

```
 1            Q.   If you could turn to Exhibit A.  I believe
 2   that is Exhibit 2.
 3            A.   Okay.
 4            Q.   If you look at -- there is a figure of
 5   future expenses and damages that Dr. Von Elsner has
 6   calculated.  It's $3,719,000 -- $3,719,950, correct?
 7            A.   That's what this shows.
 8            Q.   It's been discounted to a present value
 9   figure of $1,975,000 -- $1,975,792.
10            MR. VARADY:  I am just going to object
11   insofar as it asks for an answer beyond the witness's
12   competence or expertise.  He is not an economist.
13            MR. USHIRODA:  Q.  You are relying on
14   Dr. Von Elsner for these calculations?
15            A.   Yes, I am.
16            Q.   And to your understanding, is this based on
17   the calculations that, or the cost figures that
18   Dr. LeGoff prepared for cost of living, education?
19            A.   That is not what it says here, but I do
20   believe that it's based on things that Dr. LeGoff did,
21   but it does say the cost would be incurred.  And the
22   cost without education, based on -- so I am -- so I
23   don't know that -- I am not --
24            Q.   I know you are not an economist.
25            A.   As my attorney said, I am not an economist
```

1  and I really can't tell you exactly or even begin to
2  tell you how he calculated that.
3          Q.  But you are claiming this?
4          A.  That is -- I have to trust that that is
5  where --
6          Q.  Fair enough.  Exhibit -- interrogatory
7  No. 11 on Exhibit 1, page 19.
8          A.  Uh-huh.
9          Q.  And I think you have covered this was, you
10 also are claiming the difference in the cost of
11 comparable housing, correct?
12         A.  Yes.
13         Q.  And that is because the purchase price of
14 your home in California is greater than what you sold
15 it for?
16         A.  Yes.  And this is the correct amount.  I
17 know that we had -- you asked that question earlier,
18 how much, and I didn't give you -- I gave you a figure
19 that was not totally correct, but not far off either,
20 what our sale place was.
21         Q.  Actually, you were pretty close.
22         A.  Okay.
23         Q.  And then again, the loss of tuition from
24 the school?
25         A.  Yes.

```
 1                    CERTIFICATE OF REPORTER
 2        I, DANUTA KRANTZ, a Certified Shorthand
 3   Reporter, hereby certify that the witness in the
 4   foregoing deposition was by me duly sworn to tell
 5   the truth, the whole truth and nothing but the
 6   truth in the within-entitled cause;
 7        That said deposition was taken down in
 8   shorthand by me, a disinterested person, at the
 9   time and place therein stated, and that the
10   testimony of the said witness was thereafter
11   reduced to typewriting, by computer, under my
12   direction and supervision.
13        I further certify that I am not of counsel
14   or attorney for either or any of the parties to
15   the said deposition nor in any way interested in
16   the event of this cause and that I am not related
17   to any of the parties thereto.
18
19            DATED: MAY 11                 , 2007
20
21
22
23            _____
24            DANUTA KRANTZ, CSR 4782
25
```