CARL M. VARADY
ASB Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawai'i 96813
Telephone 808 523-8447
Facsimile 808 523-8448

OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE
STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON    4161-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor<br><br>          Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i<br><br>          Defendants. | CV04-00442 HG/BMK<br>CV05-00247 HG/BMK<br>CONSOLIDATED<br>(Other Civil Action)<br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS DEPARTMENT OF EDUCATION AND ALVIN RHO'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: PLAINTIFFS ANN KIMBALL WILES AND STANLEY BOND'S INDIVIDUAL CLAIMS FOR NON-ECONOMIC DAMAGES PURSUANT TO THE REHABILITATION ACT 29 U.S.C. SEC. 729; CERTIFICATE OF SERVICE |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS DEPARTMENT OF EDUCATION AND ALVIN RHO'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: PLAINTIFFS ANN KIMBALL WILES AND STANLEY BOND'S INDIVIDUAL CLAIMS FOR NON-ECONOMIC DAMAGES PURSUANT TO THE REHABILITATION ACT 29 U.S.C. SEC. 729

# <u>TABLE OF CONTENTS</u>

I.   <u>FACTS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.  <u>STANDARD FOR DECISION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

III. <u>ARGUMENT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    A.   <u>*Winkleman* Alters the Analysis of Plaintiff-parents' Claims</u> . . . . . -4-

    B.   <u>Courts Have Recognized That the Rights of Non-Disabled are
          Protected Under Section 504</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

    C.   <u>Section 504 Prohibits Retaliation Against Advocates for the Disabled</u>
          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

IV.  <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alex G. v. Bd. of Trs.*, 387 F. Supp. 2d 1119 (D. Cal. 2005) . . . . . . . . . . . . . .   -15-

*Alexander v. Choate*, 469 U.S. 287 (1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . .   -12-

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990)  . . . . . . . . . . .   -3-

*Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) . . . . . . . . . .   -4-

*Cavanaugh v. Cardinal Local School District*, 409 F. 3d 753 (6th Cir. 2005)  . .   -5-

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . .   -3-

*Child v. San Bernardino Unified Sch. Dist.*, 35 Fed. Appx. 521 (9th Cir. 2002)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -16-

*Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -4-

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989)  . . . . . . . . . .   -3-

*E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008 (9th Cir. 1983)  . . . . . . .   -18-

*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998)  . . . . . . . . . . . . . . .   -14-

*Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103 (9th Cir. 1987)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -9-

*Hesling v. Avon Grove Sch. Dist.*, 428 F. Supp. 2d 262 (D. Pa. 2006)  . . . . . .   -16-

*Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 762-763
(D. Or. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -9-

*Innovative Health Sys. v. City of White Plains*, 117 F.3d 37 (2d Cir. 1997) . . .   -11-

*K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860 (D. Cal. 2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -15-

*Mark H. v. Lemahieu*, 372 F. Supp. 2d 591 (D. Haw. 2005) . . . . . . . . . . . . . . . -1-

*Maroni v. Pemi-Baker Regional School District* 346 F. 3d 247 (1st Cir. 2003) . -6-

*Mondzelewski v. Pathmark Stores*, 162 F.3d 778 (3d Cir. 1998) . . . . . . . . . . . -17-

*Mosely v. Board of Education of the City of Chicago*, 434 F.3d 527 (7th Cir. 2006)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

*Nelson v. City of Irvine*, 143 F.3d 1196 (9th Cir. 1998) . . . . . . . . . . . . . . . . . -3-

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1997) . . . . . . . . . . . -3-

*Patricia N. v. LeMahieu*, 141 F. Supp. 2d 1243 (D. Haw. 2001) . . . . . . . . -9-, -10-

*Sanders v. Marquette Public Schools*, 561 F. Supp. 1361 (W.D. Mich. 1983)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004) . . . . . . -15-

*Sias v. City Demonstration Agency*, 588 F.2d 692 (1978) . . . . . . . . . . . . . . . -18-

*Smith v. Barton*, 914 F.2d 1330 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . -17-

*State Farm Fire & Casualty Co. v. Martin*, 872 F.2d 319 (9th Cir. 1989) . . . . . -4-

*Sturm v. Rocky Hill Bd of Ed*, 2005 U.S. Dist. LEXIS 4954 (D. Conn. Mar. 29,
2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir.
1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Trent v. Valley Elec. Ass'n*, 41 F.3d 524 (9th Cir. 1994) . . . . . . . . . . . . . . . . . -18-

*Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2000) . . . . . . . . . . . . . -16-

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138 (2d Cir. 2002) . . . . . . . . . . -15-, -16-

*Whitehead v. School Board of Hillsborough County*, 918 F. Supp. 1515 (M.D. FL
1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

*Winkleman v. Parma City School District*, 550 U.S. \_\_\_, 127 S. Ct. 1994, 167 L. Ed. 904 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

## Statutes and Regulations

28 C.F.R. § 42.503(b)(1)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

28 C.F.R. § 42.503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

28 C.F.R. § 42.503(b)(1)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-, -17-

29 U.S.C. § 794a(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -14-

29 U.S.C. § 794a(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

42 U.S.C. § 2000d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

42 U.S.C. § 2000e-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

42 U.S.C. § 12203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

42 U.S.C. § 12133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

## Secondary Authorities

EEOC Guidance No. 915.003 (5/20/98) ¶ 8-II B . . . . . . . . . . . . . . . . . . . . . . . . -18-

# I. <u>FACTS</u>.

This memorandum opposes the Defendants' efforts to limit Plaintiffs' claims and the jury's role in this case. The issue on which the Defendants seek partial summary judgment is whether the Plaintiffs-Parents may sue for emotional distress, physical pain and suffering they suffered directly as a result of Defendants' failure to provide special education and related services to their son, and/or for emotional distress physical pain and suffering resulting from retaliation against them by Defendants for seeking special education and related services for their son. Defendants rely exclusively on this Court's prior ruling on cross motions for summary judgment. Docket No. 215 (CV04-442). The Court's prior ruling must be reconsidered in light of recent United States Supreme Court precedent. Stated simply, the legal landscape was altered by the intervening decision of the Supreme Court in *Winkleman v. Parma City School District*, 550 U.S. ___, 127 S. Ct. 1994, 167 L. Ed. 904 (2007). Because of *Winkleman* the Court must reconsider its prior ruling. Secondly, Plaintiffs assert that whatever decision this Court entered on December 19, 2006, is subject to possible reconsideration, once the pending appeal in *Mark H. v. Lemahieu*, 372 F. Supp. 2d 591 (D. Haw. 2005), which now has been argued and submitted for decision to the Ninth Circuit. Finally, Plaintiffs present their response on the merits, demonstrating that they have live claims for emotional distress physical pain and suffering resulting from retaliation against them by Defendants for seeking special

education and related services for their son.

Defendants are certainly aware that Plaintiffs Ann Kimball Wiles and Stanley Bond are seeking not only emotional distress damages they suffered directly as a result of Defendants' failure to provide special education and related services to their son, but also seek damages for retaliation against them by Defendants for seeking special education and related services for their son. Plaintiffs' Concise Statement of Disputed Facts ¶ 1. In their deposition testimony they refer to specific instances in which Defendants' retaliatory conduct was apparent, based on the years-long struggle Plaintiffs were subjected to in attempting to obtain special education and related services for their son, and the complete abandonment of that program by Defendants after the parents filed suit to enforce existing decrees that the Defendants refused to obey. *Id.* ¶¶ 1 & 2. Clearly, Defendants were well aware of these claims that they now seek to deny.

## II. <u>STANDARD FOR DECISION.</u>

Though entitled a motion for "summary judgment" Plaintiffs submit that even a casual reading of Defendants' motion reveals that it is in fact a motion predicated on the assertion that Plaintiff-parents have no claims as a matter of law. As such, it is more appropriate to consider the Rule 12 standards and corollary presumptions that would apply to such a motion. A Fed. R. Civ. P. 12(b) or (c) motion tests the legal sufficiency of the claims asserted in the complaint. The

standard for judgment on the pleadings is essentially the same as applies under

Rule 12(b)(6). *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th

Cir. 1989). A dismissal is proper where there is a "lack of a cognizable legal

theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). "A judgment

on the pleadings [may be] granted when, taking all the allegations in the pleadings

as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City

of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998).

Summary judgment is appropriate when there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be sufficient evidence that a reasonable jury

could return a verdict for the nonmoving party. *Nidds v. Schindler Elevator Corp.*,

113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court

the portions of the materials on file that it believes demonstrate the absence of any

genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors

Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (*citing Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986)). The moving party, however, has no burden to negate or disprove

matters on which the opponent will have the burden of proof at trial. The moving

party need not produce any evidence at all on matters for which it does not have

the burden of proof. *Celotex*, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met simply by pointing out to the district court that there is an absence of evidence to support the non-movant's case. *Id*.

If the moving party meets its burden, then the opposing party must offer probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). The court views the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

## III. <u>ARGUMENT</u>.

A.    <u>*Winkleman* Alters the Analysis of Plaintiff-parents' Claims</u>.

This Court's December 19, 2006, Order was entered prior to the Supreme Courts decision in *Winkleman*, which alters the analysis applicable to Section 504 claims. At issue in *Winkleman* was whether parents could proceed *pro se*, in the federal courts, when appealing hearing decisions regarding their children's educational programs under the Individuals with Disabilities Education

Act ("IDEA"). In *Winkelman v. Parma*, the parents of an autistic child participated with the Parma City School District in Ohio in the development of an IEP for their son. Ultimately, however, they concluded that the program offered to Jacob was not appropriate to meet his needs, and they enrolled him in a private school. In accordance with the procedural rights provided to them by the IDEA, the parents requested an administrative hearing in which they asserted that the program in the public school offered to Jacob did not provide him with a free, appropriate public education ("FAPE"). They identified a number of procedural violations they contended deprived them of a real role in the formulation of their son's IEP.

Unsuccessful in the administrative process, the Winkelmans appealed to federal district court, and when again unsuccessful, to the Court of Appeals for the Sixth Circuit. Although they had the assistance of an attorney at times, they filed the appeals in federal court without a lawyer. The Court of Appeals for the Sixth Circuit refused to permit the Winkelmans to proceed unless they retained attorneys to directly represent them in the appeal. Citing its previous ruling in *Cavanaugh v. Cardinal Local School District*, 409 F. 3d 753 (6th Cir. 2005) the Sixth Circuit ruled that the IDEA does not grant parents the right to represent their children in federal court. The appellate court acknowledged that the IDEA allows the parents to pursue their child's right to a FAPE in the administrative process, but found the federal court proceedings governed by the common-law rule that

non-lawyers may not represent the claims of others in court. In *Cavanaugh*, the appellate court previously rejected the assertion that parents have personal rights in their child's education under IDEA, or that parents share those rights with their children. The *Cavanaugh* court ruled that any procedural or rights to reimbursement enjoyed by parents were derivative of the child's statutory right under IDEA to special education. Thus, even those rights could not be vindicated by parents without the assistance of counsel.

Other Courts of Appeals had taken differing positions on the issues presented in *Winkelman*. The Seventh Circuit, for example, drew a distinction between procedural and substantive claims, finding that the statute gives procedural but not substantive rights to parents. Thus, in *Mosely v. Board of Education of the City of Chicago*, 434 F.3d 527 (7th Cir. 2006), the parent could proceed *pro se* on her procedural claim, but she could not raise her son's entitlement to appropriate services without an attorney. In the First Circuit, on the other hand, parents could proceed *pro se* on all issues. The First Circuit, in *Maroni v. Pemi-Baker Regional School District* 346 F. 3d 247 (1st Cir. 2003), found that the IDEA made no distinction between substantive and procedural claims, so none would be imputed. The appellate court held that, because parents were "parties" at the administrative level, they were likewise "parties" for purposes of filing suit. Parents, therefore, could proceed *pro se* like any other party.

In *Winkleman*, the Supreme Court established this principle as law of the land, resolving the disagreement among the circuit courts. Reversing the holding in the Sixth Circuit, Justice Kennedy embraced the First Circuit's analysis. Although the IDEA does not explicitly state that parents can proceed on IDEA claims in federal court without an attorney, the Court found that the "interlocking statutory provisions" reveal a Congressional intent to give independently enforceable rights to parents. 127 S. Ct. 1999, 167 L. Ed. 915. The Court noted that statute's purpose includes ensuring that "the rights of children with disabilities and parents of such children are protected." 127 S. Ct. 2000, 167 L. Ed. 916. The statute expressly allows parents to proceed on their own throughout the administrative process and allows any "party" to that administrative proceeding to file a civil action in federal court, which includes *pro se* parents. 127 S. Ct. 2001, 167 L. Ed. 917. The Court noted that the IDEA allows any "party" to obtain judicial review on any issue decided by the administrative hearing officer, not just procedural and reimbursement issues. *Id.*

The Court stated that there was nothing in the IDEA that would support a distinction between various rights that would have support the Seventh Circuit's analysis. "The statute's procedural and reimbursement-related rights are intertwined with the substantive adequacy of the education provided to a child . . . and it is difficult to disentangle the provisions in order to conclude that some rights

adhere to both parent and child while others do not." 127 S. Ct. 2004-05, 167 L.

Ed. 921. Thus, the Court concluded that IDEA set forth enforceable substantive

rights for parents, as well as their children.

A similar conclusion is required in the present case. Bryan's

disability prohibits him from understanding the injury that has been caused him;

his parents do not enjoy such ignorance and are sole vehicle by which his rights

under Section 504 can be advanced. Like *Winkleman*, it would be specious to

distinguish between substantive and procedural rights in parsing their claims. As

noted in the following section, numerous cases have recognized the associational

rights of third parties, including parents, protected by the ADA and Section 504 of

the Rehabilitation Act.

B.     <u>Courts Have Recognized That the Rights of Non-Disabled are
       Protected Under Section 504</u>.

Plaintiffs alleges a violations of Section 504 of the Rehabilitation Act.

Section 504 of the Rehabilitation Act of 1973 (as amended) states in pertinent part:

No otherwise qualified individual with a disability in the United States . . . shall,

solely by reason of her or his handicap, be excluded from the participation in, be

denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance . . . .29 U.S.C. § 794. Section 504's

remedial provision states: The remedies, procedures, and rights set forth in Title VI

of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.] shall be available to

any person aggrieved by any act or failure to act by any recipient of Federal

assistance or Federal provider of such assistance under section 794 of [the

Rehabilitation Act].29 U.S.C. § 794a(a)(2).  The "aggrieved by" language brings

non-disabled individuals like Plaintiffs within the zone of interests of the

Rehabilitation Act's remedial provision. *See Greater Los Angeles Council on*

*Deafness v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987); *Patricia N. v. LeMahieu*,

141 F. Supp. 2d 1243 (D. Haw. 2001) (holding that the "aggrieved by" language of

29 U.S.C. § 794a(a)(2) gave parents of autistic child a cause of action under

section 504 of the Rehabilitation Act).  To quote another court, it is proper under

Section 504 to permit third party claims:

> if the plaintiff is the class of persons with disabilities or,
> in this case, the plaintiff organization as their de facto
> representative. *Cf. Williams v. United States*, 704 F.2d
> 1162, 1163 (9th Cir. 1983) (allowing organizations that
> represent persons with disabilities to maintain action
> aimed at improving the quality of life for such persons,
> and listing similar decisions in other circuits); *Greater
> Los Angeles Council on Deafness v. Zolin*, 812 F.2d
> 1103, 1115 (9th Cir 1987).

*Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 762-763

(D. Or. 1997).  The District Court explained, further:

> Limitations on a litigant's assertion of *jus tertii* are not
> constitutionally mandated, and therefore jurisdictional,
> but are merely prudential limitations designed to
> minimize unwarranted intervention into controversies
> where the applicable constitutional questions are
> ill-defined and speculative. *Craig*, 429 U.S. at 193-94;

> *Board of Natural Resources v. Brown*, 992 F.2d 937,
> 945-46 (9th Cir 1993). The instant case would appear to
> be an appropriate candidate for *jus tertii* standing.

*Id.* at 763.

This same analysis applied to parents of disabled children must result in a conclusion that they can bring an action in their own name and, based on *Winkleman*, that both substantive and procedural remedies are available to them in such circumstances.  Thus, in *Patricia N. v. LeMahieu,*, 141 F. Supp. 2d 1243 (D. Haw. 2001), the court rejected a motion to dismiss and confirmed that the Plaintiff-parents had standing to pursue the Section 504 action on their own behalf and on behalf of their disabled child.

Citing *Zolin* and numerous other cases, the Court concluded: "Considering the language of the Rehab Act and the authorities cited above, the court concludes that Amber's parents have standing to sue in their own capacities. They are clearly 'persons aggrieved' within the meaning of the Act -- their Complaint alleges that both parents suffered serious hardships as a result of Defendants' alleged denial of a FAPE to Amber. The court, therefore, will not dismiss Amber's parents from the Complaint."  141 F. Supp. 2d at 1253-54.

Similarly, the Second Circuit has concluded that as "the Rehabilitation Act extends its remedies to 'any person aggrieved' by the discrimination of a person on the basis of his or her disability. . . . [T]he use of such broad language in

the enforcement provisions of the statutes 'evinces a congressional intention to define standing to bring a private action under 504 [and Title II] as broadly as is permitted by Article III of the Constitution.'" *Innovative Health Sys. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997).

Any assertion by Defendants that the Ninth Circuit has adopted the rationale of *Sanders v. Marquette Public Schools*, 561 F. Supp. 1361 (W.D. Mich. 1983), is incorrect. *Zolin* expressly rejected the suggestion that *Sanders* be adopted in this Circuit and, instead, indicated an opposite inclination permitting parents to recover for their own claims.

> We cannot accept the *Sander*s ruling to the extent that it precluded the father from recovering expenses he incurred to secure for his daughter an education that the school district was legally obligated to provide. The expenses were incurred for the daughter's benefit, and the father's relationship made the expenditures foreseeable and appropriate, and rendered him a suitable person to assert and enforce rights of his daughter. See Singleton v. Wulff, 428 U.S. 106, 114-15, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976)(plurality opinion).
>
> This court has already held that organizations of or for handicapped persons have standing to sue for injunctive relief under section 504. *Williams v. United States*, 704 F.2d 1162, 1163 (9th Cir. 1983). GLAD is therefore clearly entitled to invoke section 504 for some purposes. So long as its claim is for expenses reasonably and foreseeably expended to secure for a handicapped juror an interpreter that the defendants were legally obligated to provide, we see no reason why GLAD, organized for the benefit of hearing-impaired persons, cannot maintain a damages action under section 504. Whether GLAD

> may actually recover its expenses must await further
> litigation of the merits in district court; our holding is that
> GLAD has standing to litigate that claim.

*Zolin*, 812 F.2d at 1115.

Thus, like *Wilkerson's* rejection of an artificial distinction between procedural and substantive rights, the Ninth Circuit instead has focused on the statutory definition of "aggrieved person" and permitted those with an identity of interest to bring claims under Section 504 in their own name.

      C.    <u>Section 504 Prohibits Retaliation Against Advocates for the Disabled</u>.

Section 504 was intended to stop all discrimination against the disabled by federal grantees, whether intentional or merely a result of "thoughtlessness and indifference — by benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). Regulations promulgated pursuant to the Rehabilitation Act provide that it is unlawful to intimidate or retaliate "for the purpose of interfering with any right" protected by the Act. 28 C.F.R. § 42.503(b)(1)(vii).[1]

---

1. 28 C.F.R. § 42.503 Discrimination prohibited.

\* \* \* \*

(b) Discriminatory actions prohibited. (1) A recipient may not discriminate on the basis of handicap in the following ways directly or through contractual, licensing, or other arrangements under any program or activity receiving Federal financial assistance:

\* \* \* \*

Plaintiffs allege that, as a proximate result of the State's violation of the Section 504, as well as retaliation against them, they suffered extreme emotional and physical distress, for which they may recover compensatory damages.[2]

---

> (vii) Intimidate or retaliate against <u>any individual</u>, whether handicapped or not, for the purpose of interfering with any right secured by section 504 or this subpart.

2. Like the Rehabilitation Act, the Americans with Disability Act and Title VII provide remedies for persons who suffer retaliation as a result of opposing discrimination. The ADA provides:

> 42 U.S.C. § 12203. Prohibition against retaliation and coercion

> (a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act;

Title VII provides:

> This provision is similar to Title VII's prohibition of retaliation. See 42 U.S.C. § 2000e-3(a).

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e-2000e-17], or because he has made a charge,

Section 504 of the Rehabilitation Act, like Title II of the ADA, borrows its remedies from Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq. See*, 29 U.S.C. § 794a(a)(2) (Rehabilitation Act borrows remedies from Title VI).  The Plaintiffs invoke Section 504 of the Rehabilitation Act, seeking to recover damages for the discrimination and retaliation directed at them for asserting their disabled son's rights.  Such damages are available under 29 U.S.C. § 794a of the Rehabilitation Act. *E.g.*,  *Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) (holding that compensatory damages are available under Rehabilitation Act and Title II of ADA for intentional discrimination).   Plaintiffs, therefore, are eligible to receive an award of compensatory damages for physical and emotional pain and suffering, resulting from discrimination or directed at them in retaliation for advocacy on behalf of their disabled child.  *E.g, Ferguson*, 157 F.3d 668 (9th Cir. 1998).

Plaintiff-parents allege that, as a proximate result of the State's retaliation against them for seeking services for their disabled son, they can assert violation of Section 504's anti-retaliation provisions.  Compensatory damages have been awarded under Section 504 where the state has acted retaliated toward those

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 USCS §§ 2000e-2000e-17].

eligible to participate in programs receiving federal funds or those who advocate for them. The Ninth Circuit has accepted compensatory damages as an available for retaliation claims, upholding a jury award under Section 504. *E.g., Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004)(sustaining award of $500,000 in non-economic damages for retaliation against teacher who advocated for disabled students)[3]; *accord Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138 (2d Cir. 2002)(and cases cited therein acknowledging cause of action on behalf of parents claiming retaliation for seeking educational services for disabled child); *Alex G. v. Bd. of Trs.*, 387 F. Supp. 2d 1119 (D. Cal. 2005)(adopting *Weixel*'s analytical framework); *K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860 (D. Cal. 2007)(same).

There is no question that parents enjoy a direct right of action for economic and psychological harm suffered as a result of retaliation against them for opposing prohibited discrimination directed at their children under Section 504's anti-retaliation provisions. *See, e.g., Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2000); (Section 504, with lengthy explanation); *Weixel,* 287 F.3d

---

3.    Plaintiff *Settlegoode* asserted claims under 42 U.S.C. § 1983, the ADA (Title II) and Section 504. The Court analyzed the 42 U.S.C. § 1983 claims first, ruling that an affirmative holding for plaintiff on those claims would be sufficient to support the jury's finding that all three statutes had been violated by school district and its employees. The Court did not in anyway imply that the Section 504 claim was not valid.

at 149 (ADA  and Section 504); *Whitehead v. School Board of Hillsborough County*, 918 F. Supp. 1515 (M.D. FL 1996), (Section 504); *Sturm v. Rocky Hill Bd of Ed*, 2005 U.S. Dist. LEXIS 4954 (D. Conn. Mar. 29, 2005) (Section 504).

> Section 504's implementing regulations prohibit retaliation against any person for the purpose of interfering with their rights, or because of their filing of a complaint or participation in an investigation. See 34 C.F.R. § 100.7(e); 28 C.F.R. § 42.503(b)(1)(vii); see also Weber, 212 F.3d at 47-49 (explaining that the Rehabilitation Act was amended in 1978 to incorporate the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964," and noting that the anti-retaliation regulation adopted pursuant to Title VI applies to any right or privilege secured by the Rehabilitation Act).

*Hesling v. Avon Grove Sch. Dist.*, 428 F. Supp. 2d 262, 276-277 (D. Pa. 2006) *citing, Child v. San Bernardino Unified Sch. Dist.*, 35 Fed. Appx. 521 (9th Cir. 2002) (ADA and Section 504).

> The Third Circuit has explained:

> [A] person's status as a 'qualified individual with a disability' is not relevant in assessing the person's claim for retaliation under the ADA." *Krouse v. American Sterilizer*, Co., 126 F.3d 494, 498 (3d Cir. 1997). The Court wrote:

> > By its own terms, the ADA retaliation provision protects "any individual" who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA. 42 U.S.C. § 12203(a). This differs from the scope of the ADA disability discrimination provision, 42 U.S.C. §

> 12112(a), which may be invoked only by a
> "qualified individual with a disability." An
> individual who is adjudged not to be a
> "qualified individual with a disability" may
> still pursue a retaliation claim under the
> ADA.

> Id. at 502. Under this analysis, we see no basis for
> holding that a person who is adjudged not to have a
> disability may not assert a retaliation claim based on
> some form of protected activity other than the filing of a
> formal complaint.

*Mondzelewski v. Pathmark Stores*, 162 F.3d 778, 786 (3d Cir. 1998).

Section 504 and its implementing regulations expressly protect

advocates such Bryan's parents from retaliation, irrespectively of whether they are

disabled.  The regulations, 28 C.F.R. §  42.503(b)(1)(vii), prohibit retaliation

against any individual, whether handicapped or not, for the purpose of interfering

with the exercise of any right secured by Section 504.

As noted above, the remedies, procedures, and rights available under

Title VI of the Civil Rights Act apply to violations of Section 504.   When

analyzing these remedies, procedures and rights, the Ninth Circuit will look to

cases interpreting Title VII, in determining rights and procedures available under

Title VI.  *Smith v. Barton*, 914 F.2d 1330, 1336 (9th Cir. 1990). Looking to Title

VII of the Civil Rights Act for additional guidance, it is indisputable that third-

party opposition to prohibited conduct is protected activity under Title VII.  *E.g.,*

*Sias v. City Demonstration Agency*, 588 F.2d 692 (1978)(plaintiff-employee

terminated after he wrote to Regional Administrator for HUD, complaining of a deficiency in the number of Mexican-American employees at Agency). When an employee protests the actions of a supervisor such opposition is a "protected activity." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1014 (9th Cir. 1983). A plaintiff does not need to prove that the employment practice at issue actually was unlawful under Title VII. To fall within this protection, a plaintiff must only show that s/he acted on a "reasonable belief" that the employment practice the plaintiff protested was prohibited under Title VII. *Trent v. Valley Elec. Ass'n*, 41 F.3d 524, 526 (9th Cir. 1994).

> This is consistent with the EEOC's Guidance, which states:
>
> The anti-retaliation provisions make it unlawful to discriminate against an individual because s/he has opposed any practice made unlawful under the employment discrimination statutes. This protection applies if an individual explicitly or implicitly communicates to his or her employer or other covered entity a belief that its activity constitutes a form of employment discrimination that is covered by any of the statutes enforced by the EEOC.

EEOC Guidance No. 915.003 (5/20/98) ¶ 8-II B.

> Defendants are incorrect in their assertions. Plaintiffs have brought

forth disputed facts in support of their claims of retaliation. Plaintiff parents, have a direct right of action for Bryan's parents nor a right of action for retaliation under Section 504 and, at the least, material facts are in dispute concerning Defendants'

action.  Both direct discrimination against them, and retaliation against the

Plaintiff-parents' advocacy for their son are protected under Section 504.

## IV.  <u>CONCLUSION</u>.

For the reasons set forth herein, Plaintiffs respectfully request that

Defendants' motion be DENIED.

DATED:  Honolulu, Hawai'i , August 30, 2007.

/s/ Carl M. Varady
CARL M. VARADY
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON


Attorneys for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I certify the attached document was served electronically via CM/ECF

on the date indicated below addressed to:


Gregg M. Ushiroda gushiroda@wik.com
Daniel K. Obuhanych dobuhanych@wik.com
Leighton M. Hara lhara@wik.com, rgeorge@wik.com
Watanabe Ing & Komeiji
First Hawaiian Center
999 Bishop St 23rd Flr
Honolulu  HI 96813


Holly T. Shikada holly.t.shikada@hawaii.gov,
Cheryl.H.Oeda@hawaii.gov, michael.t.burke@hawaii.gov
Deputies Attorney General
235 S. Beretania, Room 304
Honolulu HI 96813

Attorneys for Defendants

DATED: Honolulu, Hawai'i, August 30, 2007

/s/ Carl M. Varady
Carl M. Varady