Of Counsel:
DAVIS LEVIN LIVINGSTON GRANDE

STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON     4161-0
ANNE L. WILLIAMS          1662-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

SHELBY ANNE FLOYD        1724-0
MEI-FEI KUO              7377-0
65-1230 Mamalahoa Hwy., Suite C21
Kamuela, Hawaii 96743
Telephone: (808) 885-6762
Fax: (808) 885-8065
E-mail: sfloyd@ahfi.com
Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 08 2005

at ___ o'clock and 40 min. ___ P.M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>                   Plaintiffs,<br><br>       vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i<br><br>                   Defendant. | CIVIL NO. CV05 00247 SOM<br>(Other Civil Action)<br><br>COMPLAINT; EXHIBITS "A"–"D"; DEMAND FOR JURY TRIAL; SUMMONS                    BMK |

EXHIBIT C

ATTEST A True Copy
WALTER A.Y.H. CHINN
Clerk, United States District
Court, District of Hawaii

By_____ Deputy

05-08504

## **COMPLAINT**

I. **INTRODUCTION**

1. This action is brought by Plaintiffs ANN KIMBALL WILES and STANLEY BOND ("Plaintiffs"), who are the parents of Bryan Wiles-Bond, an autistic 12-year-old boy, on behalf of themselves and as next friend for their son Bryan.

2. The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Section 1400 *et. seq.*, requires that educational agencies provide children with disabilities a free appropriate public education ("FAPE") with special education and related services designed to meet their unique needs.

3. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 729 ("Section 504"), prohibits discrimination against the disabled in any program receiving federal funds.

4. Defendant, the DEPARTMENT OF EDUCATION, STATE OF HAWAI'I ("DOE"), has routinely failed to provide Bryan with the specialized services set forth in his Individualized Education Program ("IEP"), and in a Release and Settlement Agreement dated July 1, 2002, thereby depriving him of a FAPE. Despite these agreements and the three orders from administrative hearings officers, the DOE has failed to and refused to deliver services needed in order for Bryan to successfully learn the skills he needs to live with his family.

## II. JURISDICTION

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343 which afford original jurisdiction of actions arising from federal questions under the Constitution or laws of the United States, including the Individuals with Disabilities Education Act, 20 U.S.C. Section 1415(e) ("IDEA"), and the Rehabilitation Act of 1973, 29 U.S.C. Section 729 ("Section 504").

6. Declaratory relief is authorized pursuant to 28 U.S.C. Sections 2201-02.

7. As set forth below, Plaintiffs have exhausted their administrative remedies to the extent necessary under the IDEA and the Rehabilitation Act. Plaintiffs have no fewer than three unappealed administrative decisions which in part form the basis of the monetary compensation claim herein.

## III. PARTIES

8. Bryan Wiles-Bond is a minor who currently attends a public school in the State of California.

9. Ann Kimball Wiles and Stanley Bond are Bryan's natural parents, and, as next friends of Bryan, have standing to assert claims on his behalf as well as on behalf of themselves.

10. Plaintiffs are citizens of the State of Hawai'i and residents of the State of California. From 1999 to 2005 Plaintiffs lived in Hawaii until they were forced to relocate to California in order for them to get FAPE for their son Bryan.

11. The DOE is the state educational agency under 20 U.S.C. Section 1400 *et. seq.*, and is responsible for the identification of special education needs and the provision of services to children in the public school system who are disabled and in need of special education. The DOE receives federal funds for its special education programs.

## IV.   FACTUAL ALLEGATIONS

12. Bryan, who was born on October 28, 1991, is the youngest child of Ann Kimball Wiles and Stanley Bond. At age 2, Bryan was diagnosed with pervasive developmental delay and hyperactivity and, at age five or six, he was labeled autistic.

13. Autism is a developmental disability that significantly affects verbal and non-verbal communication and social interaction as well as a child's educational performance. Although no cure for autism exists, the condition is best treated with early diagnosis, and appropriate intervention, and education.

14. Bryan has been enrolled in the Hawai'i public school system since his family moved to Hawai'i in 1999. Bryan is partially toilet-trained, and has severe developmental delays in cognition, speech and social abilities. When he arrived in

Hawaii, he had gained certain skills and progressed to the point that his parents were pleased with his progress.

15. Bryan was making progress in some academic areas when we left Maryland in 1999. However, he was not fully toilet trained or had his behavior under control. Both were major issues which is why the IEP team decided to provide him with one-on-one services. Although his use of the toilet regressed in Hawaii, there is no objective measure of the baseline.

16. For the last several years, Bryan's Individualized Education Program ("IEP") has required one-on-one assistance from a trained aide ("skills trainer") during the entire school day, after school, and on weekends.

17. Bryan needed skills trainers every day for at least ten hours per day.

18. On February 27, 2001, Bryan's parents submitted a request to the DOE for a due process hearing pursuant to 20 U.S.C. Section 1415(e), identifying several issues to be decided concerning special education provided to Bryan. They included:

    a. Failure to provide a trained aide for 1:1 services specified in the IEP, and as a result;

    b. Failure to provide speech services as identified in the IEP; and

    c. Failure to implement the autism programs specified in the IEP.

19. At a scheduled May 7, 2001 due process hearing before hearing officer Richard Chun, no hearing was held. Instead, Plaintiffs and the DOE placed their stipulated hearing decision on the record. The terms of the stipulation were to be in effect from May 7 through October 1, 2001.

20. Hearing Officer Richard Chun set forth the terms of the parties' stipulation in a Decision and Order dated May 21, 2001 ("Order"). Among other things, the Order provided:

    a. The IEP dated January 29, 2001 was to be followed;

    b. The DOE was to hire and train an adult aide for Bryan;

    c. The aide was to provide services to Bryan during normal school hours and after school; and

    d. If services were not provided as required by Bryan's IEP during the period May 7 through October 21, 2001, the DOE was required to make up those services after October 21, 2001.

21. The DOE failed to comply with the Order, as, *inter alia*, it did not provide the mandated services during the specified period, and did not make up the missing services thereafter. As a result, Plaintiffs filed a Complaint in the United States District Court on February 15, 2002 against the DOE, to enforce the Order, and to have the DOE comply with Bryan's then-current IEP.

22. The Complaint alleged that the State had breached federal regulations by, among other things, failing to implement the terms of the Order, failing to provide a free and appropriate public education to Bryan under the IDEA, and violating Section 504 of the Rehabilitation Act. The complaint was filed on July 21, 2004.

23. On July 1, 2002, in the federal action, Plaintiffs and the DOE entered into a Release and Settlement Agreement ("Settlement Agreement"), a true and correct copy of which is attached as Exhibit "A".

24. The Settlement Agreement required the DOE to, *inter alia,*

    a. Hire, train and have in place the skills trainers (formerly "therapeutic aides" or "Tas") needed to consistently provide Bryan with not less than 95 percent per calendar month of the skills trainer hours to which he is entitled under his IEP;

    b. Procure skills trainer services for Bryan through an "expedited contract process," in which the DOE committed to pay a minimum salary and pay the skills trainers promptly;

    c. Reimburse Plaintiffs for newspaper advertising to attract skills trainers; and

     d.    Create a pool of substitute skills trainers who are qualified and trained to provide services to Bryan when his normal skills trainers are not available.

25.    Between October 2003 and February 2004, despite the requirements of Bryan's IEP and the Settlement Agreement, the DOE failed to provide skills trainers to deliver 95 percent of the services in Bryan's IEP. The skills trainers that were provided lacked the qualifications set out in the Settlement Agreement. The DOE provided only approximately 75 percent of the services mandated. In addition, the DOE never created a pool of qualified substitutes to provide interim services while recruitment of fully trained and committed skills trainers were hired.

26.    Bryan's IEP, developed in January 2004, required 1:1 instructional support during the school day for 6.5 hours (5.5 hours on Wednesday), after school for 4.5 hours (5.5 hours on Wednesday), and 6.0 hours per day on the weekend. It also required that Bryan receive special education and related services for 360 days per year.

27.    On February 26, 2004, Plaintiffs submitted a request for a due process hearing under Hawaii Administrative Rules ("H.A.R.") Title 8, Chapter 56. The issues raised by the request for hearing were:

    a. the DOE's repeated failure to provide the services required by Bryan's IEP;

   b. the DOE's failure to ensure that trained skills trainers are hired and available to provide services for children like Bryan;

   c. the DOE's failure to provide skills trainers who can communicate with Bryan, who communicates through American Sign Language; and

   d. the failure of the DOE to comply with the Settlement Agreement.

  28. After a hearing held on April 5, 2004, the administrative hearings officer issued Findings of Fact, Conclusions of Law and Decision on May 11, 2004 ("May 2004 Decision"). The May 2004 Decision held that the DOE's failures to provide Bryan with: "1) the required number of skills trainer service hours as specified in his IEPs, 2) trained skills trainers capable of providing services to Bryan, and 3) skills trainers who can communicate with Bryan using ASL, resulted in a loss of educational benefit to Bryan".

  29. In the May 2004 Decision, the DOE was ordered to: 1) hire, train and have in place the skills trainers needed to consistently provide Bryan with not less than 95 percent per calendar months of the skills trainer hours to which he is entitled to in his IEP; 2) hire skills trainers who are trained in Discrete Trial Training and TEACCH and American Sign Language to sufficiently implement Bryan's IEP program; 3) provide additional authorization to Bryan's autism consultant to train new skills trainers; and 4) provide additional hours of service

9

from a knowledgeable consultant to design, implement and monitor a toileting program for Bryan.

30. The May 11, 2004 Decision was not appealed by the DOE and is now res judicata. A true and correct copy of the May 11, 2004 Decision is attached as Exhibit "B".

31. Pursuant to the May 2004 Order, on June 2, 2004, a meeting was held at which the DOE agreed to the number of additional hours for training pursuant to the May 2004 Decision, to American Sign Language ("ASL") training, and to the hiring of an experienced behaviorist to oversee the toileting program.

32. On June 11, 2004, Plaintiffs submitted a request for a due process hearing under Hawaii Administrative Rules ("H.A.R.") Title 8, Chapter 56. The issues raised by the request for hearing were: 1) the failure of the DOE to hire and have in place a trained, certified and qualified special education teacher to deliver Bryan's special education program during his "extended school year", e.g., the period he received services outside of the regular academic year; and 2) the DOE's hiring of an unqualified special education teacher for Bryan for the 2004-2005 school year.

33. On July 23, 2004, the DOE stipulated to the facts alleged in the hearing request and to liability. A Stipulated Partial Decision and Order ("July 2004 Order") was approved by the DOE's counsel and the administrative hearings

officer. A true and correct copy of the July 2004 Order approved by DOE's counsel is attached as Exhibit "C".

34. The July 2004 Order required the DOE to: 1) prepare for Bryan "a written structured social skills curriculum for implementation beginning no later than the end of the first week of the 2004-2005 school year;" 2) "hire and have in place by the beginning of the 2004-2005 school year a licensed, certified special education teacher with experience teaching autistic children and proficiency with American Sign Language;" and 3) "cause a functional behavioral assessment to be completed for Bryan and delivered to his parents no later than August 7, 2004."

35. On July 6, 2004, a hearing was held on the remaining issue—the need for a qualified teacher during all portions of Bryan's extended school year—in the June due process hearing request. On July 23, 2004, the administrative hearings officer ruled in favor of Bryan. See Exhibit "D".

36. Beginning in June 2004, despite the Settlement Agreement and May 2004 Decision, there was no pool of trained substitutes in place, and Bryan was not receiving and did not receive 95 percent of the hours of services from skills trainers identified in the May 11, 2004 Decision. The toileting program ordered has not been implemented. No ASL training has been conducted and no skills trainers have been hired who are qualified as required by the Decision.

37. Bryan's teacher in the 2004-2005 school year was a Columbus teacher. This teacher may or may not have been licensed or certified under state law to deliver special education services. Bryan's teacher did not know ASL and was not familiar with the methodologies used with Bryan. Bryan's ESY teacher was not certified as a teacher.

38. The failure to provide proper toileting was particularly troublesome because Bryan's rate of "accidents" at school had greatly increased to as many as 18 documented incidents per day. This was a result of a lack of program, lots of down time, not being able to communicate with anyone. Defendant's failures in this regard forced Bryan to regress in his toileting to a level at which was at or below the level that he was at when he arrived in Hawaii.

39. All of the actions and inactions by the State of Hawaii, by and through its employees were done with an intention that was deliberately indifferent to the federal (IDEA) rights of Bryan.

40. Bryan and his parents have been and are being permanently damaged by Defendant's actions and inactions in an amount to be proven at trial.

41. Defendant has caused Plaintiffs economic and non-economic harm.

42. The DOE has a pattern and practice of failing to provide Bryan with

trained skills trainers to carry out their educational program, irrespective of the provisions in his IEPs, agreements made by the DOE, and various orders of the administrative hearings officer.

43. The DOE has a pattern and practice of failing to provide Bryan with a trained special education teacher, irrespective of the provisions of his IEPs, agreements made by the DOE, and order of the administrative hearings officer.

44. Bryan's IEP provides that his program will be provided through the services of a skills trainer for almost 70 hours a week for virtually every day of the year. If those services are not provided on a daily basis, there is no additional time in Bryan's life in which compensatory services can be provided to make up for his loss, without interfering with Bryan's time with his family or his sleep. In addition, when skills trainers are not trained in ASL, they cannot communicate with Bryan and he cannot communicate his needs to them.

45. Defendant's actions and inactions have directly caused such regression in Bryan that he no longer can have FAPE provided at home or in a school setting, but must at some point in time in the near future be institutionalized or in an assisted living setting.

46. The Rehabilitation Act, 29 U.S.C. Section 729, prohibits the Defendant, which receives federal financial assistance, from discriminating against

handicapped individuals in the provision of equal educational opportunities, and requires the DOE to provide qualified students with disabilities with a FAPE.

47. The Defendant has repeatedly been informed of the need to hire and train an adequate number of skills trainers to provide services to autistic children like Bryan. The Defendant has intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan resulting from the lack of trained and consistent skills trainers.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. Declare that Defendant DOE are liable to the Plaintiffs;

B. Enter judgment against Defendant and in favor of Plaintiffs for an amount of money that will properly and justly recompense Plaintiffs for the losses experienced and the economic and non-economic damages caused by the Defendant's conduct herein;

C. Enter judgment in favor of Plaintiffs and against Defendant that Defendant has exacerbated Bryan's condition to such an extent as to make institutionalization or an assisted living setting which are the only real alternatives for Plaintiffs;

D. Award the costs of prosecuting this case to the Plaintiffs, including but not limited to an award of attorneys' fees; and

E.  Grant Plaintiffs such other relief as may be just and proper.

DATED: Honolulu, Hawaii, April 17, 2005.

———————————————
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
ANNE L. WILLIAMS
SHELBY ANNE FLOYD
MEI-FEI KUO

Attorneys for Plaintiffs