1

```
1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3

4    ANN KIMBALL WILES AND STANLEY    ) CIVIL NO. 04-00442HG-BMK
     BOND, INDIVIDUALLY AND AS NEXT   )
5    FRIEND OF THEIR SON, BRYAN       )
     WILES-BOND, A MINOR,             )
6                                     )
                    Plaintiffs,       )
7                                     )
          vs.                         )
8                                     )
     DEPARTMENT OF EDUCATION, STATE   )
9    OF HAWAII, AND ALVIN RHO, IN HIS )
     OFFICIAL CAPACITY AS WEST HAWAII )
10   DISTRICT SUPERINTENDENT,         )
                                      )
11                  Defendants.       )
     _____)
12

13               TRANSCRIPT OF PROCEEDINGS

14        The above-entitled matter came on for hearing on

15   Monday, September, 17, 2007, at 9:04 a.m., at Honolulu, HI,

16   BEFORE:        THE HONORABLE HELEN GILLMOR
                    Chief Judge, United States District Court
17
     REPORTED BY:   STEPHEN B. PLATT, RMR, CRR
18                  Official U.S. District Court Reporter

19   APPEARANCES:   CARL M. VARADY, ESQ.
                    2870 American Savings Bank Tower
20                  1001 Bishop Street
                    Honolulu, Hawaii  96813
21
                    STANLEY E. LEVIN, ESQ.
22                  Davis Levin Livingston Grande
                    851 Fort Street, Suite 400
23                  Honolulu, Hawaii  96815

24                             Attorneys for the Plaintiffs

25
```

**EXHIBIT ___A___**

2

1    APPEARANCES (Continued):

2

3

4                    JOHN T. KOMEIJI, ESQ.
                     LEIGHTON M. HARA, ESQ.
5                    Watanabe Ing & Komeiji
                     23rd Floor, First Hawaiian Center
6                    999 Bishop Street
                     Honolulu, Hawaii  96813
7

8                    HOLLY T.M. SHIKADA, ESQ.
                     Department of the Attorney General
9                    235 South Beretania Street
                     Room 304
10                   Honolulu, Hawaii  96813

11                            Attorneys for the Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1   MONDAY, SEPTEMBER 17, 2007                    9:04 A.M.

 2                        -oo0oo-

 3            THE CLERK:  Civil 04-00442HG, Ann Kimball Wiles

 4   versus Department of Education, et al.

 5            This case is called for defendants' motion for

 6   partial summary judgment.

 7            Appearances, please, counsel, for the record.

 8            MR. VARADY:  Good morning, Your Honor.

 9            Carl Varady and Stan Levin on behalf of the

10   plaintiffs.

11            THE COURT:  Good morning.

12            MR. LEVIN:  Good morning, Your Honor.

13            MR. KOMEIJI:  Good morning, Your Honor.

14            John Komeiji, Leighton Hara and Holly Shikada on

15   behalf of the defendant.

16            THE COURT:  Good morning.

17            Okay, before we proceed, Mr. Varady, I am looking at

18   your filings, and there are two references to e-mails to a

19   judge:

20            One in the deposition of Ms. Wiles, on the first

21   actual deposition page, and --

22            MR. VARADY:  This is in the concise statement,

23   Exhibit Number 1?

24            THE COURT:  Yes.

25            -- and then there is in Exhibit 3, in an answer to
```

4

1    an interrogatory.

2           I have checked with Judge Kurren.  He has no

3    recollection of anything of this nature.

4           What are you talking about?

5           MR. VARADY:  This is -- requires a bit of

6    explanation.  But I'll --

7           THE COURT:  It sure does.

8           MR. VARADY:  -- I'll tell you what it refers to.

9           The e-mails that are referred to are not e-mails to

10   a judge.  They are e-mails that were somehow obtained by the

11   Department of Education, even though the department was not an

12   addressee to those e-mails.

13          They were presented to the court --

14          THE COURT:  The way this is written --

15          And I assumed you assisted in writing this answer to

16   the interrogatory.  And this is the bottom of Page 16.

17          -- this was discovered when the DOE submitted

18   private e-mails Mrs. Wiles had written to another person from

19   her computer in her bedroom to a judge --

20          MR. VARADY:  Right.

21          THE COURT:  -- in one of the legal proceedings.

22          The judge dismissed the e-mails saying they were

23   private, and later, District SES, Ms. Hill, was subpoenaed but

24   did not show up at the deposition.

25          It says e-mails she had written in her bedroom to a

5

1    judge.

2              MR. VARADY:  That was submitted to a judge.

3              THE COURT:  Okay, do you know the difference between

4    "submitted" and "to a judge"?

5              MR. VARADY:  Your Honor, first of all, it may

6    interest the court to know that I did not assist in drafting

7    that language.

8              But, even if I had, what happened in that case

9    was -- what happened in that instance was, the DOE obtained

10   private e-mails, to which it was not a party, including

11   private e-mails including the PayPal account, information, and

12   making very serious allegations regarding the skills trainer

13   in this case, stating that she was under investigation for

14   unlawful activity and whatnot.

15             These were not true.

16             The e-mails were actually presented to you, I

17   believe, at a hearing by Lono Beamer, at which point you said

18   to him, "I don't want to look at those."

19             Ms. Floyd then immediately -- because there was no

20   way of determining how the DOE had obtained these, there was a

21   strong objection by Shelby Floyd, who was the attorney at the

22   time.

23             Ms. Floyd then followed up and sought immediate

24   discovery from Joanne Hill, who was in possession of the

25   e-mails.

6

1          And there's actually a docket entry, I believe,

2   September of '05, in which Judge Kurren granted Ms. Floyd's

3   request for immediate discovery on this issue.

4          Now, my understanding is, for reasons that have

5   nothing to do with the e-mails themselves, that was not

6   pursued.

7          We now have, only as of last month, obtained clean

8   copies of them.

9          Redacted copies were presented to the court, because

10  the person who had obtained these e-mails surreptitiously and

11  provided them to DOE had requested that his name be removed

12  from them.  And that's reflected in --

13          THE COURT:  I have a recollection of that.

14          What I don't have a recollection of is Ms. Kimball

15  writing e-mails to a judge in her bedroom.

16          MR. VARADY:  She did not.

17          She is -- what she's referring to is private e-mails

18  that she had written that were somehow obtained

19  surreptitiously --

20          THE COURT:  And one of the reasons that I was not

21  going to look at them was there was no authenticity based on

22  this inability to have someone come forward and say, "I got

23  them in this chain of custody, and they are" -- wherever they

24  came from, and what they are.

25          MR. VARADY:  Right.

1     And, as I understand it, although I was not present

2     at the hearing, what's been represented by the client was, was

3     that you instructed Mr. Beamer to retrieve them, to not

4     present them to you, and that was the end of the matter before

5     you --

6               THE COURT:  Right.  Because it was the state putting

7     them forward.

8               MR. VARADY:  Right.

9               And then, subsequently, because of the obvious

10    concern that the clients had, our clients had, about how these

11    e-mails had been obtained, and from whom, Ms. Floyd made an

12    immediate request to Judge Kurren for discovery of the origin

13    -- how these e-mails originated, that is, the ones that were

14    not sent by our clients, and how they were obtained, and why

15    they were being presented to the court.

16              As I said, up until last month, we've requested

17    copies -- clean copies of these again and again and again, up

18    until last month.  We did not have them.

19              We now have what we have been told is a complete set

20    of the unredacted copies, indicating the originator of the

21    e-mails.

22              I apologize to the court for any --

23              THE COURT:  I'm reading this going, "what?"

24              MR. VARADY:  No.  Of course.

25              Just for the record, there's absolutely no

1    representation being made by plaintiffs that any e-mail was

2    sent to any judge in this case ex parte, either to yourself or

3    to Judge Kurren.

4            I apologize to you for the language seeming to

5    reflect that.  That is not what was intended.

6            What was intended to be said was that, once the

7    hearing was convened --

8            And, by the way, I think you'll also recall that

9    plaintiffs and Ms. Floyd were completely unaware at that

10   hearing that Mr. Beamer, for the state, was intending to

11   present you with these e-mails.  They didn't have a copy in

12   advance of the hearing.  Obviously that --

13           THE COURT:  I don't remember all the particulars.  I

14   just remember that they had incomplete chain of custody, and

15   there were questions about the propriety of them even having

16   them.

17           MR. VARADY:  Right.  And that's why the court

18   correctly said take them away, and you were not going to look

19   at them for purposes --

20           THE COURT:  Okay.  Now I understand --

21           MR. VARADY:  It was a loose end, that unfortunately

22   we're still trying to tie up at this point, and --

23           THE COURT:  Okay, but please talk to your client

24   about talking about them as if they were addressed to a judge.

25           MR. VARADY:  I will send an e-mail to them

1    immediately upon --

2              THE COURT:  No.  Talk on the phone.

3              MR. VARADY:  I will do that.  All right.

4              THE COURT:  Talk directly.

5              MR. VARADY:  Okay.

6              THE COURT:  Exchange information.

7              MR. VARADY:  All right.  I will do that, Your Honor.

8              THE COURT:  I know we are in 2007, but phones still

9    work.

10             MR. VARADY:  No, the reason I said that, Your Honor,

11   is because of the time differences and the fact that they have

12   certainly care responsibilities for their son.  It's not

13   always easy to get them to pick up a phone.

14             It seems like e-mail, somehow, is better than voice

15   mail nowadays.  I don't know if that's --

16             THE COURT:  I think exchange of information is

17   always a good idea when you get to something that she's

18   already speaking about in a way that is ambiguous at best.

19             MR. VARADY:  I will be happy to follow up with a

20   personal --

21             THE COURT:  Yeah.  Talk to her.  Yeah.

22             MR. VARADY:  I will do that.

23             THE COURT:  Okay.

24             I guess it's the...

25             Whose motion is it?

1           MR. VARADY:  It's defendants' motion.

2           MR. KOMEIJI:  It's my motion, Your Honor.

3           THE COURT:  Defendants' motion.

4           Mr. Komeiji.

5           MR. KOMEIJI:  Thank you, Your Honor.

6           Our motion is pretty straightforward, as -- we think

7     it's pretty straightforward.

8           The court, in its order in regards to this case,

9     made a determination that the parents were not entitled to

10    bring a claim for non-economic general damages.

11          We tried to get some clarity from the plaintiffs in

12    terms of the plaintiffs' position based upon your order.

13          We believe that the Sanders and the Zolan cases are

14    still, as the court noted, still good case law.

15          Winkelman, the plaintiffs contend, somehow add

16    substantive right.

17          And I know the court has reviewed Winkelman, but

18    Winkelman does not add any rights as it relates to this

19    particular matter as to whether or not the parents can bring

20    individual claims for general damages and/or non-economic

21    damages.

22          What Winkelman talked about was whether or not, from

23    a procedural standpoint, the plaintiff parents had the right

24    to pursue, on a pro se basis, their appeal in the courts.

25          And in analyzing that particular question, what the

1  Supreme Court found was that, in fact, the parents do have a

2  right -- or they are a party in interest as it relates to

3  their child's ability to get a free and appropriate education,

4  but it did not create additional substantive rights, which

5  somehow would overrule Sanders or somehow would overrule

6  Zolan.

7          So that the case, as we see it, clearly does not

8  apply to this.

9          In fact, a careful of reading of Winkelman will show

10 that, in fact, the plaintiffs in that particular case made no

11 claim, even, for any non-economic/general damages rights on

12 their own -- on the parents' behalf.

13          Therefore, Your Honor, what we are trying to do is

14 to clarify the record as we go forward.  And I brought this

15 motion just to get clarity on the record as to the claims that

16 are actually -- or, that can actually, pursuant to this

17 court's order, be pursued.

18          I would be happy to answer any questions that you

19 might have.

20          THE COURT:  Well, Winkelman is about IDEA, and it is

21 just about parents proceeding pro se; and the Supreme Court

22 decided to go a little farther than saying, yes, you can

23 proceed pro se, and say that they had the same ability to

24 bring the claims under IDEA that their child did.

25          But I don't see that as impacting 504.

1          But, I am interested in what the plaintiffs have

2    said at this point about retaliation and the question of

3    whether or not they have pled retaliation in their complaints;

4    and, if not, can they amend at this point.

5          We're not talking about the EEOC, where you have

6    administrative steps that have to be gone through that prevent

7    you from amending your complaint later.

8          So I think this is a legal issue that needs to be

9    looked into.

10          And it's recently, of course, but the plaintiffs

11    have pointed out in their depos where their clients, the

12    parents, are using the term "retaliation."

13          My question is, this appears to be sort of a

14    different approach at looking at 504 than has previously been

15    pled, where it was just a matter of the parents have

16    independent rights.

17          Here, this seems to be taking 504 and putting it in

18    the context of something actually being done intentionally to

19    the parents, as opposed to intentionally to the child.

20          They have pled, I believe, that there was -- there's

21    a question of whether -- I have allowed the trial to go

22    forward with the question of deliberate indifference, or

23    intentional acts on the part of how they responded to the

24    child.

25          But this seems to be a little bit different, in that

1   this would be, as the plaintiffs have indicated, looking at

2   the parents being retaliated against as people who are putting

3   forward the rights of their child; and, similar to a teacher

4   who is championing the rights -- or anyone else who is

5   championing the rights of somebody who is disabled, and some

6   action happens to them just because they are in that position.

7         So, this hasn't come up before in this case.  And I

8   believe that we need to look at that from the point of view of

9   are they able to amend at this point.

10        MR. KOMEIJI:  I would suggest to you that my reading

11   of the pleadings this morning reflect that they have not pled

12   that particular issue -- pled retaliation before.

13        In fact, my review of the pleadings indicate that

14   their memo in opposition to this motion was the first time

15   that this new theory was raised.

16        I'm not sure what the court is suggesting, in terms

17   of a process, whether they should file -- if the court

18   agrees --

19        THE COURT:  Well, let's say that's true,

20   Mr. Komeiji --

21        MR. KOMEIJI:  Right.  If the court --

22        THE COURT:  Take a moment.

23        MR. KOMEIJI:  No, that's okay.

24        THE COURT:  No, take a moment.

25        MR. KOMEIJI:  It will make him feel better,

14

 1    Your Honor.

 2              THE COURT:  Well, but not only that.  They are

 3    always one step farther ahead than we think they are.  So...

 4              (Discussion off the record.)

 5              MR. KOMEIJI:  Okay.

 6              He just wanted to tell us --

 7              THE COURT:  Where it is?

 8              MR. KOMEIJI:  -- or he wanted to let you know where

 9    the deadline for the --

10              THE COURT:  Amendment is?

11              MR. KOMEIJI:  Yeah.

12              THE COURT:  Okay.

13              But we all know that you can conform -- in some

14    situations -- conform the pleadings to the evidence.

15              MR. KOMEIJI:  That's right.

16              THE COURT:  And that's what I'm asking.

17              Because we don't have something like an EEOC claim,

18    in a 504 retaliation, can they put on evidence and conform the

19    pleadings to the evidence?

20              That's a legal question that we need to look at, in

21    my mind.

22              MR. KOMEIJI:  I agree, Your Honor.

23              And my general recollection of that rule is that, if

24    there is no objection from the defendants, and that type of

25    evidence is placed into the record at trial, that, at that

15

1   point, the court can amend the pleadings to reflect that

2   particular cause of action based on those particular facts.

3          But I guess our position, so it's clear, is that we

4   would object, and we'll let the court decide, I think at a

5   later date, whether or not they can amend -- or maybe we have

6   to brief it further -- but whether or not they can amend and

7   whether or not it's a viable claim that somehow -- what their

8   legal basis is to bring the claim that in fact there's

9   retaliation against the parents, as well as what legal basis

10  there is to bring that particular claim.

11         THE COURT:  Okay, thank you, Mr. Komeiji.

12         Let's hear from Mr. Varady.

13         MR. KOMEIJI:  Thank you.

14         MR. VARADY:  Thank you, Your Honor.

15         I will focus on the retaliation issue, because that

16  seems to be the focus of the court's attention here.

17         Some of the things the defendants must acknowledge,

18  I think, are, A, that, like plaintiffs, and everyone else in

19  this courtroom, we're all charged with knowledge of the

20  statute and its implementing regulations, irrespective of

21  whether or not they are set out in their entirety in the

22  complaint or merely the statute is referred to.

23         So defendants cannot argue that they are unaware

24  that these protections exist.

25         The second point that I would like to make is, we

1    are not alleging new facts.  The facts of the case are the

2    facts of the case, as they have been from the beginning.

3              And looking back to the interrogatory responses that

4    are set forth that the court referred to earlier in our

5    hearing as Exhibits 3 and 4, Pages 16 and 17 -- and this is

6    going back to April, 2006 -- the parents clearly state that

7    they were targeted by the DOE, that they feared for themselves

8    and their child as a result of the DOE's actions, after

9    setting out in great detail what those actions are.

10             As the court's well aware, in any Rule 12 or Rule 15

11   analysis, the question is, reading together the complaint,

12   interrogatory responses and other discovery, did the

13   defendants have fair notice of what it is that is being

14   alleged.

15             And, in this case, we would assert that they do.

16             If the court were to conclude that an amendment is

17   necessary to state retaliation, or reference to the statute,

18   obviously we would ask to do so.

19             But we think that, on the basis of the citation to

20   the statute itself, which infers its implementing

21   regulations --

22             The statute, by the way, I'll remind the court,

23   refers to -- in the "remedies" provision, it doesn't talk

24   about disabled people.  It talks about aggrieved persons, and

25   gives persons who are aggrieved, under the statute and its

1    implementing regulations, all the remedies under Title VI.

2         Those Title VI remedies include all the remedies

3    available under Title VII.

4         And, as this court is aware from Lovell versus

5    Chandler and all the Med-Quest cases from the early part of

6    2000-2001 of this decade, that the Ninth Circuit in that case

7    concluded that remedies for emotional distress and general

8    damages are available.

9         The citation to Lovell is 303 Fed 3d, and the

10   specific page cite is 1047.  The case cite begins at 1039.

11        So, with Lovell on the books, with plaintiffs

12   setting out in great detail, in their interrogatory responses

13   and in their depositions, what it is that they are asserting,

14   with the regulations protecting against retaliation, and with

15   the statute itself guaranteeing to aggrieved persons -- and

16   that's why we spent quite a bit of time in the brief talking

17   about that -- there is a breadth of protection that applies

18   beyond just the disabled individual.

19        As a result of that, we think the defendants have

20   been on notice since the beginning of this case as to the fact

21   that the motive for DOE's actions was under scrutiny.

22        And that's really what we're talking about, is, if

23   the DOE is aware that its motives are being questioned, and if

24   the parents are alleging a retaliatory motive, isn't the DOE

25   on notice that the parents are asserting claims under the

1  statute and regulations that the courts have recognized are

2  protected?

3          We think the defendants certainly have had fair

4  notice of this.

5          And, really, what we're talking about in this case,

6  Your Honor, is a very small point, and that is a question of

7  remedies.

8          As the court is aware, plaintiffs in a case are not

9  bound by the prayer for relief.  That is, the prayer for

10 relief does not limit the remedies.

11         What limits the remedies in any case are the

12 remedies that are available either under the common law

13 statute or regulation.

14         In this case, both the statute and the regulation

15 provide a remedy for people who have been targets of

16 retaliation.

17         And we think that, at the very least since April of

18 2006, DOE has been on notice that that is an element of relief

19 that plaintiffs would be seeking in this case.

20         They're not bound by their initial prayer for relief

21 in seeking that relief.

22         At some point there may be an election of remedies

23 issue, and what have you, if the case goes to the jury.

24         But at this point in time, what we're really talking

25 about is, based on the universe of known facts that we have

1  been talking about in this case, or these consolidated cases,

2  since the beginning, is this a remedy that would otherwise be

3  available to the parents.

4          And clearly, under the statute and the regulations,

5  it is.

6          And we would ask for you to deny the motion, and, if

7  necessary, you know, grant us the opportunity to make a

8  specific amendment that cites the regulations in question, or

9  uses the term "aggrieved persons," which, you know, is

10 contained within the statute already cited in our complaint,

11 and permit the plaintiffs to go to the jury on this issue of

12 retaliation.

13         All right, that's all I have, Your Honor.

14         If there's anything else that you would like to ask

15 about or any point that I have made that's not clear, I would

16 be happy to clarify it.

17         I guess the one other point I would like to make is,

18 just looking at the Lovell case, the arguments that the remedy

19 is -- I mean the state's I think ultimate position is, even if

20 they have pleaded properly or we have had notice through the

21 discovery process and the pleadings, the remedy they are

22 seeking is not available.

23         That argument is clearly disposed of by the Lovell

24 case.  And the Lovell case cites the most recent Supreme Court

25 case, which is Barnes v Gorman, and says that general damages

1   are available as a remedy, a Title VI-type remedy, for 504

2   plaintiffs.

3           So I think that the final point that defendants

4   make, that the remedy is not available, is simply wrong, based

5   on Lovell.

6           That's all.

7           THE COURT:  Okay, thank you.

8           Mr. Komeiji, did you wish to speak again?

9           MR. KOMEIJI:  Just briefly, Your Honor.

10          If I might speak from here?  Is that's okay?

11          THE COURT:  Okay, if it's that brief...

12          MR. KOMEIJI:  I just wanted to kind of remind

13  everyone that this is not the first motion that has been

14  brought on this particular issue.

15          And that underscores the fact that, in fact, they

16  never raised the idea regarding retaliation.

17          The court, in its original order, didn't consider

18  the idea of retaliation, because that was never raised before.

19          For them to say now that either the defendants or

20  the court should have been on notice that somehow that a

21  retaliation claim was being brought I think is unfair to both

22  the court and to the defendants.

23          Secondly, I would agree that, in fact, the -- well,

24  I wouldn't agree.  I would argue that the -- that we would

25  challenge their statutory basis, or their claim that there is

21

1    a statutory basis to bring this particular claim, as well as

2    the remedies.

3            But I think to raise this in a memo in opposition to

4    a motion -- a second motion, it doesn't provide the court with

5    adequate foundation to make a ruling on this issue.

6            Thank you.

7            THE COURT:   Thank you.

8            I believe there really are two parts to the motion

9    that is before the court.

10           And the first part had to do with Winkelman, to

11   clarify whether the court felt that Winkelman changed the

12   order that the court issued last December.

13           To the extent that that was the question that was

14   asked --

15           And I think that the proper way would be to say that

16   the motion asks that the court grant clarity in the form of

17   saying that Winkelman does not impact this case.

18           And to the extent that the motion asks that, I am

19   granting the motion.

20           To the extent that the motion asks to rule on the

21   retaliation issue, I think it is in a posture that requires

22   the court to deny it.

23           So I am granting in part and denying in part the

24   motion.

25           And I'm not going to issue a written order.

1          Anybody can read Winkelman.  Winkelman's about IDEA.

2     It is not far-reaching, and does not come to 504, in my mind.

3          And at this point in time, the Supreme Court has not

4     said anything about 504 in Winkelman.

5          Now, turning to the other, I believe that

6     Mr. Komeiji makes a very appropriate point.

7          There is an extremely lengthy order that I have

8     issued last December responding to what issues were still

9     alive in this case, what were the possible causes of action.

10         And we're not talking about retaliation, and it

11    wasn't raised.

12         At this point, I am going to place the burden on the

13    plaintiffs.

14         If you believe that you are entitled to a

15    retaliation claim, I am going to give you -- let's see where

16    we are -- (perusing documents) -- some time to file a memo

17    dealing with all the issues that have been raised about this,

18    whether it's in the complaint; if it isn't in the complaint,

19    where do you find the support for being allowed to amend your

20    complaint?

21         Because this case has been difficult because there

22    is this factual dispute.

23         There's no doubt that the Wiles -- that the child

24    was not given the appropriate FAPE.  But how that came about

25    is the factual dispute, and what flows from however those

1    facts are resolved, I believe that it's very important that we

2    have a complaint that reflects what is actually before the

3    court.

4           Today is the 17th. I'm going to give you until

5    October 2nd to -- if you wish to -- file a motion to amend,

6    with the legal rationale, and an amended motion that would

7    include whatever this --

8           And we're limiting it to this retaliation. This

9    close to trial, we're not going to have anything else come up

10   in that.

11          But you have until October 2nd to file a motion to

12   amend your complaint, and a memo that explains the legal basis

13   for you being entitled to amend your complaint at this point.

14          Given that, as of December, 2006, it was nowhere on

15   the map. And that's after April, 2006.

16          That's the 2nd.

17          And then I would give the government until October

18   16th to respond.

19          And probably this is going to be a non-hearing

20   motion.

21          And I'm going to limit you each to 15 pages. I want

22   something concise and about the law.

23          And, please, no more arguing all the facts. We'll

24   let the jury worry about that.

25          So I'm ruling on this from the bench, granting in

24

1    part, denying in part.

2            And this is the point at which, if you actually have

3    something, then you need to articulate it clearly, your basis

4    in law, that you are able to do this at this late date.

5            Because it is my intention to go ahead and have this

6    trial.

7            Now, I really hope that the Ninth Circuit is going

8    to rule on the Mark H case.  And if the Ninth Circuit rules in

9    a way that impacts this case, that's great; that makes our

10   lives easier.

11           And I think that we have a really good chance that

12   they will.  I suspect that we will get something before then.

13           But, we can't wait forever.  And this is a very old

14   case.  So if they haven't ruled by then, we'll go ahead and

15   have a trial.

16           So, anything else that needs to come before the

17   court?

18           MR. VARADY:  (Standing.)

19           THE COURT:  Yes, Mr. Varady?

20           MR. KOMEIJI:  (Standing.)

21           THE COURT:  Mr. Komeiji?

22           Mr. Varady, you moved first.

23           MR. VARADY:  It's just a question, Your Honor.

24           What I heard the court say was, and also file an

25   amended motion -- or amended memorandum.  But I --

1              THE COURT:  Okay, let me say it again.

2              You want to bring a different cause of action than

3     you've talked about before.

4              And so I'm not going to let you do that unless you

5     file a motion to amend your complaint, and in your memo you

6     give me the legal basis for amending your complaint, and you

7     append the proposed amended complaint.

8              MR. VARADY:  All right.

9              THE COURT:  Because I'm not going to try this case

10    without a clear roadmap as to what is at stake.

11             And I think we will all actually ultimately be

12    happier if we are clear about what's on trial.

13             MR. VARADY:  Thank you, Your Honor.

14             THE COURT:  But you have to give me the reasons why

15    you ought to be able to do that at this point.

16             Deal with the issue of whether it's in the

17    complaint; and, if it's not in the complaint, what's your

18    legal basis for being able to do this.

19             And then Mr. Komeiji will respond with respect to

20    whether he just says, oh, go ahead, or he has a legal basis

21    for objecting.

22             Okay?

23             And, as I say, non-hearing.  There's no point in

24    having us come back.

25             Anything further?

26

1      MR. VARADY:  Nothing, Your Honor.

2      MR. KOMEIJI:  Nothing, Your Honor.

3      THE COURT:  Thank you.

4      We stand in recess.

5      THE CLERK:  All rise.

6      This court stands recessed until 9:45.

7      (The hearing in the above-entitled

8      cause was concluded at 9:35 a.m.)

9                    - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7                                    -ooOoo-

8            I, Stephen B. Platt, Official Court Reporter,

9    United States District Court, District of Hawaii, do hereby

10   certify that the foregoing is a true and correct transcript of

11   proceedings before the Honorable Helen Gillmor, Chief Judge,

12   United States District Court.

13

14

15

16

17

18

19                            /s/ Stephen B. Platt

20                            -------------------------------

21   FRIDAY, SEPTEMBER 21, 2007    STEPHEN B. PLATT, CSR NO. 248

22

23

24

25