**EXHIBIT "2" TO DECLARATION OF CARL M. VARADY**

Page 285

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

- - -

ANN KIMBALL WILES and STANLEY
BOND, individually, and as next
friend of their son, BRYAN
WILES-BOND, a minor,

    Plaintiffs,

vs.

DEPARTMENT OF EDUCATION
State of Hawai'i, and ALVIN
RHO, in his official capacity
as West Hawai'i District
Superintendent,

    Defendants.
_____/

Civil No. CV-05-00247 HG/BMK
No. CV-04-00442 HG/BMK
CONSOLIDATED
(Other Civil Action)

VOLUME II

(Pages 285 through 437)

DEPOSITION OF

STANLEY BOND

WALNUT CREEK, CALIFORNIA

SATURDAY, JUNE 30, 2007

ATKINSON-BAKER, INC.
COURT REPORTERS
www.depo.com
(800) 288-3376

REPORTED BY: MARYANN P. COSTA RPR, RMR, CSR NO. 5820

FILE NO.: A104D03

Page 409

1  reason he should be out.
2      Q.  No, I did not mean that. I think the refusal
3  to participate in a program --
4      A.  No, we would never have refused to have Bryan
5  participate in a community program. That would have
6  benefitted his education.
7      Q.  Now, going to page 29 of Exhibit 1 --
8      A.  Is this Exhibit 1?
9      Q.  Yes.
10     A.  Sorry. Okay.
11     Q.  Okay, #16 asks you to fully describe each fact,
12 condition, act, or omission, and the legal basis upon
13 which you base your allegations, that the defendants were
14 deliberately indifferent and should be held liable for
15 damages.
16     Do you see that?
17     A.  Yes, I do.
18     Q.  And I know, at the last session, we spoke at
19 length, you know, about your -- what you felt were
20 specific examples of the state being deliberately
21 indifferent towards Bryan --
22     A.  Yes.
23     Q.  -- for this case --
24     A.  Yes.
25     Q.  -- and, since then, have you -- are there

Page 410

1  anymore instances?
2      MR. VARADY: I'm just going to renew my objection on
3  the basis that this would call for a legal conclusion or
4  opinion that's beyond expertise.
5      MR. USHIRODA: So noted, counsel.
6      THE WITNESS: I think the main thing that I have to
7  add is that, you know, in relooking at papers and things
8  that we have, that I go back to the fact that, to me, it
9  was beyond indifference, but -- it was intent. Bryan was
10 harmed in many ways in an attempt to harm us.
11     We felt that much of what was done was retaliatory
12 after -- you know, once we filed in Federal Court, that
13 the denial of his program was retaliatory; that there
14 were many instances -- we've talked about some -- there
15 may be others that I'd have to go back and look at --
16 where they, intentionally, denied a program, or refused
17 to go beyond -- go beyond, you know, the basics of what
18 they do in terms of working with the agencies of, you
19 know, advertising -- even though we brought to the table
20 a number of options where Bryan's program may have
21 been -- we may have been able to develop a good program
22 for Bryan, and those were just dismissed out of hand by
23 the Department of Education.
24     And, you know, we purely advocated for our son --
25 what we believed was the best thing for our son -- and we

Page 411

1  advocated on the basis of what was in his IEP. And,
2  ultimately, we advocated on the basis of what was signed
3  in agreements by all the parties. And we advocated on
4  the basis of hearing officers' orders for Bryan. And we
5  felt like a lot of what happened was in retaliation of
6  our attempt to advocate for his needs for services.
7      And Bryan was damaged in an attempt to damage us and
8  to, ultimately, drive us from the State of Hawaii. And
9  they did succeed in forcing us to leave the State of
10 Hawaii to find a program for Bryan -- for the services he
11 would require.
12     MR. USHIRODA: Off the record.
13         (Discussion off the record)
14     MR. USHIRODA: Back on.
15     Q.  Well, thank you, Stan, for that answer. I
16 appreciate your candor. I think -- I don't think I need
17 to go back over that because I think we covered that at
18 length in your prior session.
19     A.  Yes.
20     Q.  Now -- but, I did want to kind of cover this
21 interrogatory response because what it asks for was, you
22 know, basically, the factual bases for your allegations
23 that the defendants, the DOE and the State of Hawaii,
24 were deliberately indifferent towards Bryan --
25     A.  Yes.

Page 412

1      Q.  -- and what I don't get is a statement of
2  facts, but a list of documents.
3      And the first one is a May 21, 2001 Stipulated
4  Decision signed by Richard Chun.
5      Do you see that?
6      A.  Yes, I do.
7      Q.  What does that have to do with your
8  deliberative indifference?
9      A.  Well, I think you can see the requirements of
10 Bryan's program were made well aware to the DOE as early
11 as 2001 and, here we are in 2004, still trying to have it
12 implemented.
13         (Defendants' Exhibit No. 14
14         marked for identification)
15     MR. USHIRODA: Okay, Stan, I've handed you what I've
16 marked as Exhibit 14 to your deposition. It is a
17 Decision and Order Rendered in the matter of the
18 Arbitration between Student and State of Hawaii
19 Department of Education and it is signed by Richard C.F.
20 Chun as Hearings Officer on May 21, 2001.
21     Q.  My first question is, have you seen this
22 document?
23     A.  I believe I have seen this document.
24     Q.  And is this the document that's referenced
25 in -- is that the first document that is referenced in

Page 425

1   A. To be honest, no. I don't see that they really
2  made any true effort to comply with this.
3   Q. Okay, so, it's your testimony, today, that the
4  DOE did absolutely nothing to comply with this order?
5   A. Well, absolute is a big word.
6   Q. Well, you're saying nothing, so, that's why I
7  ask.
8   A. Well, I think what I'm saying is that the DOE
9  didn't make what I would think of as a reasonable attempt
10 to comply with this order --
11  Q. Okay.
12  A. -- and, in so far in the fact that we gave the
13 DOE information that would allow them to make a
14 reasonable attempt to comply with this order, which they
15 refused to acknowledge or act upon.
16  Q. Basically, no attempt -- no attempt -- was made
17 in light of the information?
18  A. I think, in light of Bryan's needs and the
19 information that we provided, I think that no reasonable
20 attempt was made to provide these types of services for
21 Bryan.
22  Q. Reasonable or not, was any attempt made by the
23 state, to your knowledge -- any effort made by the state?
24  A. I'm sure that they did things that could be
25 construed as an effort. But, the types of efforts that

Page 426

1  they put out were not going to go forward in terms of
2  being able to comply with this -- with these needs --
3  even though they may want to claim that those efforts
4  would, I don't think the types of efforts that they put
5  out were going to be able to comply with this hearing
6  order. And I don't think they truly thought that what
7  they did -- that they were going to find the people
8  necessary.
9   Q. Okay, can you think of any effort made by the
10 DOE that went towards compliance with the hearing order
11 which is Exhibit 7?
12  A. Well, I mean, you have, obviously, showed, and
13 we've discussed, that they advertised in the Honolulu
14 newspaper; but, to my knowledge, they never followed up
15 with any of the resumes. And so, to me, putting an
16 advertisement in a newspaper, without actually -- with no
17 follow-up -- is not really an effort.
18   They continued to attempt to utilize the agencies on
19 the big island, on the island of Hawaii, that had been a
20 failed course of action for over three years. So, I
21 don't see that as really a legitimate attempt at trying
22 to provide, or a legitimate effort as trying to provide,
23 Bryan services.
24  Q. Okay, any other efforts that you could see as
25 going towards compliance with the decision rendered?

Page 427

1   A. The only other effort that occurred was ordered
2  by Judge Gilmore, and that was to bring in Pacific Family
3  and Child to, potentially, put together a program for
4  him; but, that was so far into the process by then, it
5  was, you know -- it was only done because it was ordered
6  by the court.
7   Q. Is there a written order stating that the DOE
8  had to bring in Pacific Child and Family Associates?
9   A. I would have to look at the minutes of that
10 hearing. But, I believe that the Judge did directly tell
11 them to bring that company in to perform a proposal.
12  Q. Okay, any other efforts that you can think of?
13  A. Well, of course, they're going to also say
14 that --
15  Q. Not what they're going to say. I want to know
16 what you saw.
17  A. No, I can't think of any efforts that directly
18 related to Bryan's program.
19  Q. Okay, I'm not interested in what you think the
20 state is saying --
21  A. Okay.
22  Q. -- but what you observed. Okay?
23   All right, okay, you also reference Second
24 Enforcement Complaint and that's -- I assume you have it
25 listed there because it was filed to compel compliance

Page 428

1  with the May 11, 2004 hearing order; correct?
2   A. And --
3   Q. The settlement?
4   A. -- July settlement agreement, and his IEP, and
5  all of those other legal documents, too, that required he
6  have a qualified teacher and skills trainer and summer
7  school.
8   Q. In your words. I don't want to put words in
9  your mouth.
10  Why is the July 21, 2004 second enforcement
11 complaint listed here?
12  A. Well, because the DOE did not have a qualified
13 teacher in place for the ESY -- for the extended school
14 year program.
15  The individual that he put in did not even have a
16 teaching certificate much less, you know, training in
17 special education.
18  Q. That individual is who?
19  A. Bill Brown -- I believe -- yes.
20  Q. Okay.
21  A. And, once we realized that -- what was
22 happening -- then we tried to, you know, get in as
23 quickly as we could. But, of course, by the time this
24 happened it was well past the date. But, you know, they
25 were certainly well aware that they should have had a

Page 429

1  qualified teacher in place for Bryan's program.
2      You know, I'll have to say that I would -- you know,
3  I'm not really sure, actually, what this July 21 is,
4  because this July 23 is the one that actually deals with
5  the summer school issue.
6      MR. USHIRODA: Okay.
7      Q. So, you're not sure why the July 1, 2004 --
8      A. Except I think, you know, here it was May,
9  June, July, you know, basically, three months out, and
10 they still are not complying with the hearing order. And
11 I think that's why we went forward with that one is we're
12 still trying to get compliance with the hearing order.
13     Q. And that, again, is an example of deliberative
14 indifference, according to you?
15     A. I think three months into -- well, now, we're
16 like three years into the issue; but, certainly, I would
17 think that, in three months' time, they should have been
18 able to bring together a program that would have been
19 appropriate for Bryan.
20     Q. And, again, my question was, you have July 21,
21 2004 second enforcement complaint listed here because
22 it's a further instance -- it was filed because --
23     A. Because the DOE refused to or was not putting
24 a --
25     Q. And you're saying that that's a further example

Page 430

1  of deliberative indifference on the part of the state?
2      A. Yes.
3      Q. Okay.
4      A. Yes.
5         (Defendants' Exhibit No. 16
6          marked for identification)
7      MR. USHIRODA: Q. And then what I've handed you has
8  been marked as Exhibit 16 to your deposition. It's a
9  July 23, 2004 Hearing Officer Decision.
10     And this dealt with the summer school issue;
11 correct?
12     A. Yes, this dealt with the summer school issue.
13     Q. And that's listed here in your response to
14 Exhibit 16?
15     A. Yes.
16     Q. I mean Interrogatory 16?
17     A. Yes.
18     Q. And we talked at length about the present
19 complaint, which you have listed as April 14, 2005, that
20 was our last session.
21     Do you remember that?
22     A. Yes, I'm sure that --
23     Q. Now, you also have listed June 30, 2005 Motion
24 to Consolidate and Stipulated Motion.
25     What was that about, Stan?

Page 431

1      A. You know, those are all things that our lawyers
2  have done for us, and I really don't know what that was
3  about except -- about -- so, it was a legal issue, I'm
4  sure.
5      Q. And then, can you go to page 30, talk about
6  important facts ignored by the defendants.
7      What is this about?
8      A. I think it lists out that the defendants never
9  made those agencies aware of what the requirements were
10 for skills trainers, or other needs of Bryan, you know;
11 and so they couldn't really recruit for people without
12 knowing what they were recruiting for.
13     Q. So, these are like the settlement agreement,
14 the various hearing decisions?
15     A. Yes.
16     Q. Those were not passed on to the agencies?
17     A. Yes.
18     Q. Okay, and I believe there are some citations
19 here to support that; correct?
20     A. Yes.
21     Q. Is that another example of deliberate
22 indifference on the part of the DOE?
23     A. I believe it very much is. You know, how could
24 you expect your agents to recruit the right people if
25 they don't know what the qualifications are that they're

Page 432

1  recruiting for? So --
2      Q. Okay, do you know why, if at all, these
3  decisions and orders were not passed on to the agencies?
4      A. No, I really don't know why the DOE wouldn't
5  have done that.
6      Q. Okay, is there anything else you need to add in
7  your response to Interrogatory 16?
8      A. No, I don't think so.
9      Q. That's pretty complete?
10     You've given me your complete answers?
11     A. I think I have -- well, to the best of my
12 memory I've given you a complete answer. But, these are
13 all very legalistic documents, as well, and so I probably
14 don't understand all of the legal components of them.
15     Q. Okay, but, sitting here today, based on your
16 best recollection, that you've given me all of the
17 examples of deliberate indifference by the DOE?
18     A. I probably have not given all of the examples,
19 but, I would have to really go back and go through my
20 records to give, you know, more specific answers. But, I
21 would say there probably are some more answers that are
22 more specific about what happened, but --
23     Q. Can you think of anymore?
24     A. I can think of a few documents, right now, but,
25 I can't think exactly what they say.

Page 433

1  Q. What documents are there?
2  A. Well, there were some documents between us and
3  Barbara Coffman and JoAnn Hill about, basically, who was
4  in charge of the program.
5    And they just basically stated, this is the way it
6  is and, you know, it doesn't matter what the court order
7  says. This is who you're going to get for your summer
8  school teacher and this is who you're going to get for
9  your aides.
10  Q. And that's it?
11  A. And that's it. You know, we don't care what
12  they say.
13  Q. And that, to you, is an example of deliberate
14  indifference?
15  A. Exactly. Well, it goes beyond that. It's an
16  example of denial -- deliberate denial -- of his program.
17  Q. Okay.
18  A. You know, to me, it's beyond indifference.
19  It's way beyond indifference. It's negligence. It's
20  denial. It's intent to harm him, intent to harm us,
21  retaliation against us. You know, I think it's all of
22  those things.
23  Q. Well, I'm not trying to harp on this issue,
24  but, it's just important for me because I don't want to
25  have to re-depose you because I need to know everything

Page 434

1  you have to say.
2  A. I know. I'm trying to give you, let's say, the
3  majority the big, high points; but, there is just a lot
4  of correspondence between us and DOE, and there were many
5  conversations, and it's hard -- you know, I can't
6  remember each one, but --
7  Q. To the best of your knowledge, have you given
8  me everything?
9  A. I've given you everything I can remember today.
10  MR. USHIRODA: Okay, well, on that note, then, Stan,
11  thank you very much for your time.
12    (Deposition ends at 12:35 p.m.)

Page 435

1  REPORTER'S CERTIFICATE
2
3    I, MARYANN P. COSTA RPR, RMR, C.S.R. NO.
4  5820, Certified Shorthand Reporter, certify:
5    That the foregoing proceedings were taken
6  before me at the time and place therein set forth, at
7  which time the witness was put under oath by me;
8    That the testimony of the witness, the
9  questions propounded, and all objections and statements
10  made at the time of the examination were recorded
11  stenographically by me and were thereafter transcribed;
12    That the foregoing is a true and correct
13  transcript of my shorthand notes so taken.
14    I further certify that I am not a
15  relative or employee of any attorney of the parties, nor
16  financially interested in the action.
17    I declare under penalty of perjury under
18  the laws of California that the foregoing is true and
19  correct.
20    Dated this    day of    , 2007.

    MARYANN P. COSTA RPR, RMR, C.S.R. NO. 5820

Page 436

1  REPORTER'S CERTIFICATION OF CERTIFIED COPY
2
3    I, MARYANN P. COSTA, RPR, RMR, CSR No.
4  5820, a Certified Shorthand Reporter in the State of
5  California, certify that the foregoing pages 285 through
6  434, constitute a true and correct copy of the original
7  deposition, Volume II, of STANLEY BOND, taken on
8  Saturday, June 30, 2007.
9    I declare under penalty of perjury under
10  the laws of the State of California that the foregoing is
11  true and correct.
12
13    Dated this    day of    , 2007.

    MARYANN P. COSTA RPR, RMR, C.S.R. No. 5820