IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next of friend of their son, BRYAN WILES-BOND, a minor, | ) ) ) ) | CIVIL NO. 04-00442 HG-BMK CIVIL NO. 05-00247 HG-BMK CONSOLIDATED (Other Civil Action) |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING PLAINTIFFS ANN KIMBALL WILES' AND STANLEY BOND'S MOTION TO AMEND THEIR COMPLAINT TO INCLUDE AN EXPRESS CLAIM FOR NON-ECONOMIC DAMAGES FOR RETALIATION**

Plaintiffs Ann Kimball Wiles and Stanley Bond, individually and as next of friend of their son, Bryan Wiles-Bond, a minor, have filed a motion to amend their complaint to add a retaliation claim, on their own behalf, against Defendants under the anti-retaliation provisions of the Rehabilitation Act, 29 U.S.C. § 794.

For the reasons set forth below, Plaintiffs' motion to amend is GRANTED.

**PROCEDURAL HISTORY OF CONSOLIDATED CASES**

On July 21, 2004, Plaintiffs filed a Verified Complaint in

1

Civil Case No. 04-00442 HG-BMK and on July 1, 2005, Plaintiffs filed a "Verified Amended and Supplemental Complaint" against Defendants Department of Education, State of Hawaii ("DOE"), and Alvin Rho, in his official capacity as West Hawaii District Superintendent ("Rho").

On April 8, 2005, Plaintiffs filed a new Complaint against Defendant DOE in Civil Case No. 05-00247 SOM-BMK.

On July 26, 2005, the Court entered an Order granting the parties' Stipulation to Consolidate, thereby consolidating Civil Case No. 05-00247 SOM-BMK and Civil Case No. 04-00442 HG-BMK.

On August 8, 2005, the consolidated cases were assigned to Judge Helen Gillmor.

On December 19, 2006, the Court entered an Order denying Defendants' Motion for Summary Judgment, construed as a Motion for Judgment on the Pleadings; denying Plaintiffs' Motion for Partial Summary Judgment; granting in part and denying in part Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement; denying Plaintiffs' Motion to Strike Declarations for Non-Compliance with Rule 56(e); and denying Plaintiffs' Motion to Amend and/or Supplement the Record.

On September 17, 2007, the Court entered a Minute Order granting in part and denying in part Defendants' motion for partial summary judgment as to Plaintiffs Ann Kimball Wiles and

2

Stanley Bond's individual claims for non-economic damages

pursuant to the Rehabilitation Act, 29 U.S.C. § 729.

<u>BACKGROUND</u>

The background is set forth in detail in the Court's

December 2006 Order and much of it need not be repeated here.

**Plaintiffs' Complaints**

***Civil Case No. 05-00247:***

On April 8, 2005, Plaintiffs filed a Complaint in Civil Case

No. 05-00247 for violation of the Rehabilitation Act, 29 U.S.C. §

729.  The April 2005 Complaint alleges:

> Paragraph 36:  Beginning in June 2004 [and up to the time
> this Verified Complaint was filed], despite the
> Settlement Agreement and May 2004 Decision, there was no
> pool of trained substitutes in place, and Bryan was not
> receiving and did not receive 95% of the hours of
> services from skills trainers identified in the May 11,
> 2004 Decision.  The toileting program ordered has not
> been implemented.  No [American Sign Language] training
> has been conducted and no skills trainers have been hired
> who are qualified as required by the Decision.

(Compl. at ¶ 36.)

> Paragraph 37:  Bryan's teacher in the 2004-2005 school
> year was a Columbus teacher.  This teacher may or may not
> have been licensed or certified under state law to
> deliver special education services.  Bryan's teacher did
> not know [American Sign Language] and was not familiar
> with the methodologies used with Bryan.  Bryan's ESY
> [extended school year] teacher was not certified as a
> teacher.

(Compl. at ¶ 37.)

> Paragraph 38:  The failure to provide proper toileting
> was particularly troublesome because Bryan's rate of
> 'accidents' at school had greatly increased to as many as

18 documented incidents per day.  This was a result of a
lack of program, lots of down time, not being able to
communicate with anyone.  Defendant's failures in this
regard forced Bryan to regress in his toileting to a
level at which was at or below the level that he was at
when he arrived in Hawaii.

(Compl. at ¶ 38.)

The Complaint, in civil case number 05-00247, further
alleges that: the DOE's actions and inactions "were done with an
intention that was deliberately indifferent to the federal (IDEA)
rights of Bryan" (Compl. at ¶ 39); the "DOE has a pattern and
practice of failing to provide Bryan with trained skills trainers
to carry out their educational program, irrespective of the
provisions in his IEPs, agreements made by the DOE, and various
orders of the administrative hearings officer" (Compl. at ¶ 42);
and "[t]he Defendant has repeatedly been informed of the need to
hire and train an adequate number of skills trainers to provide
services to autistic children like Bryan.  The Defendant has
intentionally or with deliberate indifference failed to take
necessary action to prevent damage to Bryan resulting from the
lack of trained and consistent skills trainers." (Compl. at ¶
47.)

### *Civil Case No. 04-00442:*

Plaintiffs' July 2005 Amended Complaint in Civil Case No.
04-00442 contains substantially the same allegations as their
April 8, 2005 Complaint in Civil Case No. 05-00247. (Amended
Compl. at ¶¶ 38-39.)

With regard to their Section 504 claim, Plaintiffs' Amended Complaint alleges that Section 504 "prohibits the DOE, which receives federal financial assistance, from discriminating against handicapped individuals in the provision of equal educational opportunities, and requires the DOE to provide qualified students with disabilities with a FAPE." (Amended Compl. at ¶ 49.)  Plaintiffs' Section 504 claim is based on the following:

> Paragraph 50:  The DOE has repeatedly been informed of the need to hire and train an adequate number of skills trainers to provide services to autistic children like Bryan.  The DOE has intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan resulting from the lack of trained and consistent skills trainers.

(Amended Compl. at ¶ 50.)

> Paragraph 51:  Since entering into the Settlement Agreement, and despite administrative orders and agreements to provide services specified in Bryan's IEPs, the DOE has failed to comply with its obligations to Bryan.

(Amended Compl. at ¶ 51.)

**Court's December 2006 Order**

In its December 2006 Order, the Court rejected Defendants' argument that Plaintiffs could not, as a matter of law, bring a Section 504 claim under the circumstances of this case.  This Court reasoned:

> Monetary damages are not available for a state's mere failure to comply with either Section 504's or IDEA's regulations regarding the provision of a free appropriate public education.  A plaintiff may,

however, bring a Section 504 claim for monetary damages in the education context where the school has intentionally discriminated against the child. See, e.g., N.L. v. Knox County Schools, 315 F.3d 688, 695 (6th Cir. 2003) (the 1986 amendment to IDEA "has not been held to have altered the prior holdings that more harm [i.e., discrimination on the basis of handicap] is required than a denial of a free appropriate public education to make out a section 504 claim); Janet G. v. Hawaii, Dep't of Educ., 410 F. Supp. 2d 958, 965 n.5 (D. Haw. 2005) (discussing difference between IDEA and Section 504 claims).

The question before the Court in this case is whether Plaintiffs have alleged sufficient facts to state a discrimination claim. Plaintiffs have mixed in statements about IDEA with their Section 504 claims in a way that is sometimes confusing. Applying the liberal federal pleading standard, however, the Court finds that Plaintiffs have alleged sufficient facts to state a Section 504 claim and to potentially establish liability on the basis of intentional discrimination.

         *          *          *

The primary basis for Plaintiffs' Section 504 claim is that Defendants intentionally discriminated against Bryan by, after having repeatedly gone through the IDEA procedures, continually failing to provide Bryan a FAPE despite knowing of their express obligations to do so. The Court construes Plaintiffs' theory of discrimination to be that Bryan was qualified to participate in the State's public education system except for his disability,[1] that the school's failures repeatedly precluded him from doing so, therefore he was precluded from participating in the State's public education system because of his

---

[1] See Janet G., 410 F. Supp. 2d at 966 ("if Joshua is a 'handicapped person' under the Act, he would also be 'otherwise qualified' because age is the only program requirement applicable to public elementary education.").

> disability.[2]  In order to state a Section 504 claim,
> Plaintiffs' Complaint must allege Defendants
> discriminated against Bryan based *solely* on his
> disability.  The Court construes the complaints to
> allege such an allegation and declines to enter
> judgment on the pleadings in favor of Defendants.

(Order at 34-36.)

The Court declined to issue summary judgment in favor of

Plaintiffs on their Section 504 claim:

> Plaintiffs have not presented sufficient undisputed
> facts to show that Defendants' failures rise to the
> level of intentional discrimination as a matter of
> law.  Plaintiffs have not shown that the Defendants
> intentionally discriminated against Bryan so as to
> be entitled to summary judgment on their Section
> 504 claim.

(Order at 54.)

The Court also held that plaintiff parents do not have

standing to recover damages allegedly incurred by them for

discrimination *against their son*.  The Court's December 2006

Order said:

> The Court agrees with the courts that have held that
> the plaintiff parents do not have standing to bring an
> action for their own personal injuries allegedly arising
> from the discrimination against the handicapped
> individual.  See Sanders by Sanders v. Marquette Pub.
> Schools, 561 F. Supp. 1361, 1368-70 (W.D. Mich. 1983)
> (minor student's father did not have standing to sue
> under Section 504 for personal injuries, trauma, and
> expenses he claimed to have suffered as a result of
> discrimination against minor child).  In Sanders, the

---

[2]  Defendants concede that Byran is an individual with a
disability as required to satisfy the first element of a prima
facie case under Section 504.  (Reply at 3.)  It is also
undisputed that the DOE receives federal financial assistance.

court considered whether a minor student's father could bring claims on his own behalf for money damages for the school's alleged violation of Section 504.  The minor student's father sought damages for trauma and expenses he allegedly suffered as a result of the school's conduct.  <u>Sanders</u>, 561 F. Supp. at 1370.  The court held that the father did not have standing to sue under Section 504 for purely personal injuries because he could not show that he was either a participant in, or a beneficiary of, a program receiving federal funds.  <u>Id</u>.  The father had standing to sue only on behalf of his minor daughter.  <u>Id</u>.

That said, if Plaintiffs are able to show intentional discrimination, Ninth Circuit case law shows that Plaintiffs may be able to recover economic damages reasonably and foreseeably incurred.  In <u>Greater Los Angeles Council on Deafness, Inc. v. Zolin</u>, 812 F.2d 1103 (9th Cir. 1987), the court distinguished <u>Sanders</u>.  <u>Zolin</u> involved claims by an organization created for the benefit of hearing-impaired persons challenging a decision not to provide sign-language interpreters to enable deaf individuals to serve as jurors.  In addressing the organization's right to recover monetary damages under Section 504, the <u>Zolin</u> court reasoned:

> We cannot accept the *Sanders* ruling to the extent that it precluded the father from recovering expenses he incurred to secure for his daughter an education that the school district was legally obligated to provide. The expenses were incurred for the daughter's benefit, and the father's relationship made the expenditures foreseeable and appropriate, and rendered him a suitable person to assert and enforce rights of his daughter.

<u>Zolin</u>, 812 F.2d at 1115.  <u>See</u> <u>United States v. Forest Dale, Inc.</u>, 818 F. Supp. 954, 970 (N.D. Tex. 1993) (although intervenor wife had no standing to sue for her own personal injuries arising from the alleged discrimination against her husband, theoretical possibility existed that wife could recover economic damages she reasonably and foreseeably incurred).  Under the <u>Zolin</u> court's reasoning, Plaintiffs may recover economic damages reasonably and foreseeably incurred as a result of Defendants' intentional discrimination against Bryan.

(Order at 40-41.)

The damages recoverable by the plaintiff parents for intentional discrimination against their disabled son are limited to economic damages reasonable and foreseeably incurred.

**Court's September 17, 2007 Order**

In its September 17, 2007 Order, the Court reaffirmed its December 2006 holding that the Plaintiffs Ann Kimball Wiles and Stanley Bond can recover economic damages reasonably and foreseeably incurred as a result of Defendants' intentional discrimination against Bryan.  The Court also reiterated that Plaintiffs Ann Kimball Wiles and Stanley Bond are not entitled to recover for their own alleged non-economic damages, namely pain and suffering/emotional distress, based on the Defendants' alleged intentional discrimination against Plaintiffs' son, as opposed to any alleged intentional acts against them.  This is because the plaintiff parents, who are not disabled, do not have a direct cause of action for discrimination.

In their opposition to Defendants' motion for partial summary judgment regarding non-economic damages, the plaintiff parents expressly asserted a retaliation claim under Section 504 of the Rehabilitation Act.  Defendants responded by arguing that Plaintiffs had not previously alleged a retaliation claim and that it is too late for them to do so now.

As to any retaliation claim by Plaintiffs under the

9

Rehabilitation Act, the Court denied Defendants' motion without prejudice. The Court further instructed that if Plaintiffs intended to pursue a retaliation claim under the Rehabilitation Act, Plaintiffs were required to file a motion to amend their Complaint.

**Plaintiffs' Motion to Amend**

The questions before this Court are:

(1)  whether the plaintiff parents, who are the non-disabled parents of a disabled child, can bring a retaliation claim under the Rehabilitation Act for retaliation against them;

(2)  if so, whether the plaintiff parents can recover non-economic damages for emotional distress, pain, and suffering; and

(3)  whether Plaintiffs may amend their Complaint to add a retaliation claim.

**ANALYSIS**

**I.   Plaintiff parents have standing to bring a retaliation claim under the Rehabilitation Act**

The Rehabilitation Act provides:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

Neither Plaintiff Ann Wiles nor Plaintiff Stanley Bond

is a qualified individual with a disability.  As non-disabled individuals they cannot bring a direct claim for discrimination under Section 504.[3]  In <u>Blanchard v. Morton School District</u>, __ F.3d ___ , 2007 WL 2728772 (9th Cir. Sept. 20, 2007), the Ninth Circuit Court of Appeals recently affirmed a federal district court's holding that a plaintiff parent could not bring a claim under either Section 504 of the Rehabilitation Act or under Title II of the Americans with Disabilities Act because "[u]nder either statute, she must demonstrate that she is a 'qualified individual with a disability.'"  <u>Id</u>. at *2 (citing 29 U.S.C. § 705(2); 42 U.S.C. § 12132)); <u>see</u> <u>Blanchard v. Morton School District</u>, 2006 WL 1075222, at *3 (W.D. Wash. April 20, 2006).  The <u>Blanchard</u> court did not address whether the plaintiff parent could bring a *retaliation* claim under Section 504 of the Rehabilitation Act.

Plaintiffs' retaliation claim is based on Section 504's implementing regulations.  The implementing regulations promulgated by the Department of Justice provide:

(b) Discriminatory actions prohibited.

(1) A recipient may not discriminate on the basis of handicap in the following ways directly or

---

[3]  One of the elements of a prima facie case of discrimination under Section 504 is that the plaintiff is disabled.  <u>See</u> <u>Wong v. Regents of Univ. of Cal.</u>, 192 F.3d 807, 816 (9th Cir. 1999).

through contractual, licensing, or other
arrangements under any program or activity
receiving Federal financial assistance:

*     *     *

(vii) Intimidate or retaliate against any
individual, whether handicapped or not, for the
purpose of interfering with any right secured by
section 504 or this subpart.

28 C.F.R. § 42.503(b)(1)(vii); see also 29 C.F.R. § 1614.101

("(b) No person shall be subject to retaliation for opposing any

practice made unlawful by title VII of the Civil Rights Act

(title VII) (42 U.S.C. 2000e et seq.), the Age Discrimination in

Employment Act (ADEA) (29 U.S.C. 621 et seq.), the Equal Pay Act

(29 U.S.C. 206(d)) or the Rehabilitation Act (29 U.S.C. 791 et

seq.) or for participating in any stage of administrative or

judicial proceedings under those statutes").

     The plaintiff parents argue that they, as non-disabled

individuals, have a cause of action for retaliation under the

Rehabilitation Act's anti-retaliation implementing regulations.

A number of federal circuit courts of appeals have read Section

504's implementing regulations as permitting a cause of action

for retaliation by any person engaged in some form of protected

activity even if that person does not have a disability.  See

Weixel v. Bd. of Educ. of the City of New York, 287 F.3d 138 (2d

Cir. 2002) (recognizing Rehabilitation Act retaliation claim);

Weber v. Cranston School Committee, 212 F.3d 41, 47-49 (1st Cir.

2000) (mother had standing to pursue claim under Rehabilitation

Act that defendants had retaliated against her for her complaints

relating to her child's education); see also Mondzelewski v.

Pathmark Stores, 162 F.3d 778, 786 (3rd Cir. 1998) (non-disabled

person may bring retaliation claim under ADA, 42 U.S.C. §

12203(a), for engaging in protected activity).

Courts recognizing a retaliation claim point to the fact

that the "broadly protective anti-retaliation regulation is

firmly grounded in the enforcement provisions of Title VI [of the

Civil Rights Act of 1964] and the Rehabilitation Act."  Weber,

212 F.3d at 48.[4]  As the Weber court noted:

> The Rehabilitation Act extends its remedies to "any
> person aggrieved by any act or failure to act by any
> recipient of Federal assistance ... under section 794 of
> this title." 29 U.S.C. § 794a(a)(2). Courts have
> construed the phrase "any person aggrieved" as an
> expression of Congressional intent to accord standing to
> the fullest extent permitted by the case and controversy
> provision of Article III. . . .

Weber, 212 F.3d at 48; see Hesling v. Avon Grove Sch. Dist., 428

F.Supp.2d 2d 262, 276-77 (D. Pa. 2006)("Section 504's

implementing regulations prohibit retaliation against any person

for the purpose of interfering with their rights, or because of

their filing of a complaint or participation in an

investigation") (citing Child v. San Bernardino Unified Sch.

---

[4]    The Rehabilitation Act was amended in 1978 to
incorporate the "remedies, procedures, and rights set forth in
title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et
seq.]."

Dist., 35 Fed. Appx. 521 (9th Cir. 2002) (unpublished)
(recognizing claims under anti-retaliation provisions of the ADA
and Section 504)).

Although not squarely addressing the issue, the Ninth
Circuit has also acknowledged that an advocate for the disabled
has standing to bring a Section 504 retaliation claim.  See
Settlegoode v. Portland Schools, 371 F.3d 503, 512 n.6, 516 n.11
(9th Cir. 2004); see also Duffey v. Oregon Youth Authority, 2003
WL 23979013, at *1 (D. Or. April 17, 2003) (plaintiff teacher had
standing to bring retaliation claim under Rehabilitation Act).

A California federal district court recently addressed a
retaliation claim brought by parent plaintiffs under the
Rehabilitation Act.  In Alex G. ex rel. Dr. Steven G. v. Board of
Trustees of Davis Joint Unified School Dist., 387 F.Supp. 2d
1119, 1128 (E.D. Cal. 2005), the court set forth the requirements
"[t]o establish a prima facie claim of retaliation under § 504."
The plaintiffs must show: "(1) they engaged in a protected
activity; (2) the defendants knew they were involved in the
protected activity; (3) an adverse action was taken against them;
and (4) a causal connection exists between the protected activity
and the adverse action."  Id.  In Alex G., the parents of a
student sued the school district claiming that the way the school
handled the student violated the Rehabilitation Act.  The
plaintiff parents brought both discrimination and retaliation

14

claims under the Rehabilitation Act.  In finding that the
plaintiffs had arguably established a prima facie case of
retaliation, the Alex G. court noted several protected activities
engaged in by the plaintiff parents along with several allegedly
retaliatory adverse actions taken by the defendants.  Id. at
1128.  Examples of the protected activities engaged in by the
student's parents, and of which the defendant school district was
aware, included: withdrawing their consent to the use of physical
restraints, filing a request for a due process hearing in
December 2002, refusing to agree to the school district's
individualized education plan proposal, and writing a letter to
the school district complaining about the implementation of the
settlement agreement.  Id.

    Alex G. has substantial similarities to the present case.  A
fair reading of Plaintiffs' complaints in this case shows that
they have alleged several protected activities of which
Defendants were aware, and that they have also identified a
number of allegedly retaliatory adverse actions taken by
Defendants.  This is true even though Plaintiffs' Complaints do
not specifically use the word retaliation.

    In sum, the Court finds that the Plaintiffs may bring a
retaliation claim under the Rehabilitation Act to recover for
Defendants' allegedly retaliatory conduct against them.

**II.  Plaintiffs may recover non-economic damages**

Although federal courts are divided on the issue of whether non-economic damages, such as those for pain and suffering and emotional distress, are available under the Rehabilitation Act, Ninth Circuit case authority weighs in favor of recognizing that such damages are recoverable.  See Settlegoode, 371 F.3d 503 (sustaining award of $500,000 in non-economic damages for retaliation against teacher who advocated for disabled students); Ferguson v. City of Phoenix, 157 F.3d 668, 675 n. 4 (9th Cir. 1998) (noting that emotional distress alleged in connection with violation of Title II of the ADA, if intentionally inflicted, would be compensable);  Smith v. Barton,  914 F.2d 1330, 1338 (9th Cir. 1990) (plaintiffs suing under Section 504 of the Rehabilitation Act "may pursue the full panoply of remedies, including equitable relief and monetary damages.") (citation omitted); Recanzone v. Washoe County School District, 696 F.Supp. 1372, 1378 (D. Nev. 1988) (handicapped plaintiff awarded emotional distress damages for discrimination against her);  see also Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 66 (1992) (damages remedy for intentional violations by federal funding recipients is plainly available under Title VI, and thus under Section 504 of the Rehabilitation Act as well).  The Eleventh Circuit Court of Appeals recently addressed this issue in a well reasoned opinion.  In Sheely v. MRI Radiology Network,

16

P.A., ___ F.3d ___, 2007 WL 3087215, at *18 (11th Cir. Oct. 24, 2007), the court held that non-economic compensatory damages are available under Section 504 of the Rehabilitation Act for intentional discrimination. Id. at *20 ("emotional damages are recoverable for intentional violations of § 504 of the [Rehabilitation Act].")

Plaintiff parents may recover non-economic damages suffered by them as a result of Defendants' allegedly retaliatory conduct to the extent proven at trial. As discussed in the Court's December 2006 Order, the Plaintiffs must prove that school officials acted with deliberate indifference in order to recover such damages. See, e.g., Ferguson, 157 F.3d at 675.

### III. Plaintiffs are granted leave to amend their Complaint

In accordance with the Court's September 17, 2007 Order, the Plaintiffs have attached a proposed first amended complaint to their filing. (Mot. at Exh. 5.) Generally, Fed. R. Civ. P. 15(a) permits a party to amend its complaint with leave of court. "[L]eave shall be freely given when justice so requires." Id.; Foman v. Davis, 371 U.S. 178, 182 (1962). But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. See Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999).

The Court also notes that Rule 15(b) allows amendments to

the pleadings to conform to the evidence based on the evidence
presented at trial where "the merits of the action will be
substantially served thereby and the objecting party fails to
satisfy the court that the admission of such evidence would
prejudice the party in maintaining the party's action or defense
upon the merits."

Defendants argue that Plaintiffs' proposed amendment is
governed by the good cause standard applicable to modifying
scheduling orders as provided by Fed. R. Civ. P. 16(b) because
Plaintiffs did not file their motion for leave to amend within
the deadline set forth in the scheduling order. See Johnson v.
Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir.
1992)(amendment to complaint after entry of scheduling order
subject to good cause standard under Fed. R. Civ. P. Rule 16(b));
see also Amerisourcebergen Corp. v. Dialysist West, Inc., 465
F.3d 946, 952-53 (9th Cir. 2006) (distinguishing Johnson because
plaintiff filed motion for leave to amend within deadline set by
district court).

Plaintiffs have satisfied both the good cause standard and
the requirements for amendment under Rule 15. Under the Amended
Scheduling Order, dated January 8, 2007, the deadline to amend
pleadings was May 4, 2007. Plaintiffs did not file their motion
to amend until October 2, 2007. Plaintiffs' response shows that,
until the hearing before this Court on September 17, 2007, they

18

were not aware that the Court would require an amendment in order
for them to advance their retaliation claim.  As discussed
further below, Defendants were on notice before October 2007,
that Plaintiffs are pursuing a retaliation claim.  The Court's
September 17, 2007 Minute Order authorized Plaintiffs to move to
amend their Complaint to add a retaliation claim so that
Defendants would have the benefit, at trial, of a more clearly
stated claim.  The Court also authorized the amendment so that
it, and the parties, would have the opportunity to address any
potential legal issues relating to a claim under Section 504's
anti-retaliation provisions.  Under these circumstances, the
Court finds that Plaintiffs had good cause to move to amend after
the deadline set forth in the Court's scheduling order.  The
imposition of deadlines in a scheduling order does not deprive
the Court of its discretion to determine whether leave to amend
should be given under Rule 15(a).

     Allowing Plaintiffs to amend their Complaint to add a
retaliation claim will not substantially prejudice Defendants.
As set forth above, the facts alleged in Plaintiffs' Complaint
are sufficient to put Defendants on notice of a retaliation
claim.  See Weixel, 287 F.3d at 148 (reversing district court's
dismissal of retaliation claims where allegations in the
complaint gave rise to "strong inference of retaliation raised by
several of plaintiffs' allegations").  Defendants' allegedly

19

discriminatory conduct, which is at the crux of this case, is the same conduct that Plaintiffs rely on to support their retaliation claim.

Defendants have not suffered any hardship as a result of the delay.  Aside from the fact that Plaintiffs' prior complaints put Defendants on notice of the facts underlying their retaliation claim, Defendants have been on notice of Plaintiffs' retaliation claim since taking Plaintiffs' depositions and reviewing their interrogatory answers in May and June 2007.  Defendants have not made a showing of undue prejudice and, as set forth above, the amendment is not futile.  The Court also finds authority to allow the amendment under Rule 15(b), which the Ninth Circuit has applied to pretrial motions.  See Bobrick Corp. v. American Dispenser Co., 377 F.2d 334 (9th Cir. 1967).

Finally, as stated in the Court's previous rulings, there are material issues of fact with respect to Plaintiffs' Section 504 claim on behalf of their disabled son.  These same disputed issues of material fact preclude Defendants from prevailing on a motion for summary judgment with respect to Plaintiffs' retaliation claim under Section 504.

## CONCLUSION

For the foregoing reasons,

(1)    Plaintiffs Ann Kimball Wiles' and Stanley Bond's Motion
       to Amend Their Complaint to Include an Express Claim

20

for Non-Economic Damages for Retaliation (Doc. 303) is

**GRANTED**;

(2)    Plaintiffs' First Amended Complaint, attached as

Exhibit 5 to the Declaration of Carl M. Varady attached

to Plaintiffs' Motion, is deemed filed as of the date

of this Order.

IT IS SO ORDERED.

DATED: November 13, 2007, Honolulu, Hawaii.



_/s/ Helen Gillmor_____
Chief United States District Judge

_____
Ann Kimball Wiles and Stanley Bond, individually and as next friend
of their son, Bryan Wiles-Bond, a minor v. Department of Education,
State of Hawaii, and Alvin Rho, in his official capacity as West
Hawaii District Superintendent, CIVIL NO. 04-00442; CIVIL NO. 05-
00247 (CONSOLIDATED)(OTHER CIVIL ACTION) HG-BMK; **ORDER GRANTING
PLAINTIFFS ANN KIMBALL WILES' AND STANLEY BOND'S MOTION TO AMEND
THEIR COMPLAINT TO INCLUDE AN EXPRESS CLAIM FOR NON-ECONOMIC
DAMAGES FOR RETALIATION**