IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>    Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent,<br><br>    Defendants. | CIVIL NO. CV 04-00442 ACK-BMK<br>CIVIL NO. CV 05-00247 ACK-BMK<br>CONSOLIDATED<br>(Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

**MEMORANDUM IN SUPPORT OF MOTION**

I.  **INTRODUCTION**

Plaintiffs allege that the DOE's failure to provide Bryan Wiles-Bond with trained and consistent skills trainers, have somehow caused damage to Bryan Wiles-Bond. See First Amended Complaint filed on November 20, 2007 in CV 05-00247SOM/BMK ("First Amended Complaint") at ¶47; and Verified Amended and Supplemental Complaint in CV04-00442 HG/BMK ("Amended Complaint") at ¶52.

Plaintiffs further allege that during the years 1999 - 2005, "Plaintiffs lived in Hawaii until they were forced to relocate to California in order for them to get FAPE for their

son Bryan." First Amended Complaint at ¶10. Plaintiffs also allege that the alleged failure by the DOE to provide a proper toileting program "forced Bryan to regress in his toileting to a level at which was at or below the level that he was at when he arrived in Hawaii." First Amended Complaint at ¶38.

Plaintiffs claim that the actions and inactions of the State of Hawaii have caused permanent damage to Bryan and his parents. See First Amended Complaint at ¶40. Moreover, Plaintiffs claim that the State's failure to provide Bryan with services mandated by law have damaged and will continue to damage Bryan. See Amended Complaint at ¶55.

Despite Plaintiffs' numerous allegations to the permanency of the alleged damages suffered by Bryan Wiles-Bond, Plaintiffs' experts have failed to show that the alleged failure to provide autism specific services to Bryan Wiles-Bond have caused the claimed damages to a reasonable degree of probability or certainty. Moreover, any assertion of Plaintiffs' experts of a causal relationship between the failure to provide such services and the claimed damages, including permanent and irreversible injury, is entirely unproven and unreliable. Accordingly, all expert testimony regarding alleged damages and causation must be excluded.

Finally, Plaintiffs experts must be precluded from amending or otherwise supplementing their written reports at trial.

## II. DISCUSSION

A. **Plaintiffs' Experts Have Not Shown that Asserted Damages Have Been Caused by Defendants' Alleged Failure to Provide Autism Specific Services To a Reasonable Degree of Probability, and, Therefore, Such Testimony Must Be Excluded.**

In <u>Bachran v. Morishige</u>, 52 Hawaii 61, 469 P.2d 808 (1970), the Hawaii Supreme Court held that proof of future pain and suffering and <u>permanency</u> of an injury required expert testimony that such pain or permanency would be reasonably probable. The Court stated:

> We believe the awarding of damages for future pain and suffering should not be left to the guesswork of the jury and that the test generally to be applied as to future pain and suffering is whether future suffering appears to be **reasonably probable**. [Citations omitted.] . . .
>
> * * *
>
> We have held that where the issue as to **permanency** of an injury or as to future pain or suffering is subjective in character, there must be competent expert opinion testimony as to the **permanency** of an injury or as to future pain and suffering before a jury may be permitted to consider such damages. However, we are not saying any particular words of art are necessary to express the degree of proof required. It is sufficient if the expert's words can be interpreted to show **reasonable probability**. [Citations omitted.]

<u>Id</u>. at 68-69 (emphasis added).

Although no particular words of act are required, the Bachran decision holds that "reasonable probability" is the standard that must be met before expert testimony is admissible. Something is probable when it is likely to occur. Black's Dictionary defines "probable" as "having the appearance of truth; having the character of probability; appearing to be founded in reason or experience. Having more evidence for than against. . . ."

In Bachran, the Hawaii Supreme Court cited the reasoning of the Superior Court of New Jersey, in pertinent part, as follows:

> . . . Basically, our view comes down to this: a consequence of an injury which is **possible**, which **may possibly ensue**, is a **risk which the injured person must bear** because the law cannot be administered so as to do reasonably efficient justice if **conjecture and speculation** are to be used as a measure of damages. On the other hand, a consequence which stands on the plane of **reasonable probability**, although it is not certain to occur, may be considered in the evaluation of the damage claim against the defendant. . . . [citation omitted.]

52 Hawaii at 69 (emphasis added). See also Craft v. Peebles, 78 Haw. 287, 893 P.2d 138 (1995). Cf. In re Marine Asbestos Cases, 265 F.3d 861 (9th Cir. 2001; D. Hawaii) (adopting **reasonable degree of medical certainty** standard); Burgess v. Arita, 5 Haw. App. 581, 704 P.2d 930 (1985) (breach of contract loss must be shown with **reasonable certainty** that excludes any showing or conclusion that founded upon mere speculation or guess).

In Craft, the court upheld a jury instruction which stated that the jury was to disregard any medical opinion "not based upon reasonable medical probabilities." The court in Craft

- 4 -

made clear that the opinion testimony of a medical expert regarding causation "must be grounded upon reasonable medical probability as opposed to a mere possibility because possibilities are endless in the field of medicine." Id. (citations omitted). The court further noted that in a medical malpractice action, a plaintiff must show with reasonable medical probability a causal nexus between the physician's treatment **or lack thereof** and the plaintiff's injury. Id. (citations omitted). In addition, the court found the jury instruction "important and appropriate" because the expert testimony introduced included new theories of medical causation, which might not in the jurors' eyes rise to the requisite degree of certainty to establish reasonable probability; indeed the jury could have concluded that certain hypotheses testified to by plaintiff's expert were not sufficiently tested to establish plaintiff's damages to a reasonable probability.

Thus, at the very least, Plaintiffs must show causation and damages to a reasonable probability, if not certainty.

In the present case, Plaintiffs' experts can only speculate as to the actual impact of the alleged failure of the DOE to provide Bryan Wiles-Bond with appropriate autism related services (e.g. "Trained and consistent skills trainers"). See Amended Complaint at 50. Critically, Plaintiffs' experts only provide conclusory statements without a showing of reasonable

probability that a causal nexus exists between the DOE's alleged lack of appropriate services and Plaintiffs' claimed damages. The following are representative excerpts from Plaintiffs' experts' reports and deposition testimony:

- "The current backsliding appears to be associated with inconsistent programming, communication gaps, staff change, and of course behavior." August 18, 2004, Kimberly A. Smalley, Ph.D., BCBA Report, p10, attached as Exhibit "I" to Plaintiffs' Disclosure of Expert Witnesses Pursuant to Rule 26(a)(2) FRCP, filed 5/30/06.

- Dr. Smalley testified in her deposition that in her opinion, Bryan's behavioral drift was the most important factor which caused Bryan's deteriorating behavior as "his plan kind of faded away." See Deposition of Kimberly Smalley dated July 27, 2006 at 75:13-25, attached hereto as Exhibit "A". Dr. Smalley further testified that "**I don't think it was intentional.** But either the staff wasn't available, or trained staff wasn't available, or the rules got a little lax, or it was summer school."

- Dr. Smalley could not testify to any certainty as to the permanency of Bryan's alleged damages. Specifically, she testified "But I would hope he could pick back up some of the vocabulary he lost. He learned it once. I would hope he could remember or get back in the habit of using the vocabulary he had, and I would hope that he could learn more." Id. at 151:6-10.

- Further, she testified "It's not my opinion that anybody's incapable of learning. I can't-I can't assume what- you know, **where he's at now or what the damage is or**, you know, how long it will take for him to learn anything else. **I don't know any of those things.**" Id. at 151:22-25; 152:1. When asked whether Bryan irretrievably lost certain skills, Dr. Smalley testified, "I hope not, **but I have no way of knowing without seeing.**" Id. At 152:10-23.

- Unfortunately, due to inconsistencies of staffing and availability of qualified educational consultants, Bryan's educational program has not been consistently implemented, and as a result, his current functioning is much lower than it might be. Daniel B. LeGoff, Ph.D. Report, p7 (emphasis added), attached as part of Exhibit "A" to Plaintiffs' Disclosure of Expert Witnesses Pursuant to Rule 26(a)(2) FRCP filed 5/30/06.

- **It seems unlikely** that Bryan will be able to improve his adaptive and communication skills to a level commensurate with his potential without a significant increase in the intensity of his current educational program. Id.

- If Bryan had received appropriate educational services in Hawaii and had not regressed in terms of his behavioral issues and communication and self-care skills, **he likely would have been** able to receive much less intensive services, including being able to attend a less-restrictive educational setting, and being eligible for group home placement. Daniel B. LeGoff, Ph.D. Report dated 12/13/05 attached as Exhibit "B" to Plaintiffs' Disclosure of Expert Witnesses Pursuant to Rule 26(a)(2) FRCP filed 5/30/06.

- Dr. LeGoff also testified in his deposition that had Bryan received the consistent services in Hawaii, he would still be moderately impaired. See Deposition of Daniel B. LeGoff, Ph.D. dated August 23, 2007, at 222:22-25; 223:1 attached hereto as Exhibit "B". He also testified that even if Bryan received all of his education and intervention in Hawaii, Bryan would be placed in a residential program and institutional setting. Id. at 268:1-6

- At this point it is not clear whether Bryan will be able to achieve any high degree of developmental catch-up. 7/22/06-7/26/06 Report of B.J. Freeman, Ph.D., at 19 attached as Exhibit "M" to Plaintiffs' Amended Disclosure of Expert Witnesses Pursuant to Rule 26(a)(2) FRCP filed 6/05/07.

- 7 -

- Further, reports indicate that Bryan is not exhibiting significant behavioral problems at this point. Report of B.J. Freeman dated May 25, 2007, at 4, attached as Exhibit "N" to Plaintiffs' Amended Disclosure of Expert Witnesses Pursuant to Rule 26(a)(2) FRCP filed 6/05/06 (plan is unnumbered) (emphasis added).

There is no expert testimony stating to a **reasonable probability or certainty** that the alleged failure to provide autism specific services caused permanent and irreversible harm to Bryan Wiles-Bond. As stated above, Plaintiffs' experts have only provided conclusory, unsupported, and speculative statements regarding causation and damages. Evidence of future consequences which are **merely possible and not probable** cannot be admitted. To allow such evidence would invite speculation, conjecture, and confusion, and would severely prejudice the DOE.

Indeed, Plaintiffs' own liability expert, Dr. LeGoff, admitted that even if Bryan Wiles-Bond received the services which Plaintiffs complain were not provided, Bryan Wiles-Bond would still have been moderately impaired (retarded). See Exhibit "B" at 222:22-25; 223:1. Dr. LeGoff also testified that regardless of whether Bryan Wiles-Bond had or had not received adequate services in Hawaii, Bryan Wiles-Bond would still need to be institutionalized. Id. at 268:1-7. This is not a case, and no expert will testify, that had Bryan Wiles-Bond received appropriate services in Hawaii, he would be unimpaired. In fact, Bryan Wiles-Bond was impaired before he came to Hawaii, when he

came to Hawaii, and is still impaired in California. To suggest that somehow, during a five-year period when Bryan Wiles-Bond was in Hawaii, services that were not provided to Bryan Wiles-Bond caused permanent, irreversible injury to Bryan Wiles-Bond is nothing more than conjecture and speculation.

Furthermore, Plaintiffs have not shown that the services that were in fact provided caused the alleged damage to Bryan Wiles-Bond to a reasonable probability or certainty. This is not a case where absolutely no services were provided to the Bryan Wiles-Bond; to the contrary, he received reasonable targeted special education. It is undisputed that Bryan Wiles-Bond received 75% of the education provided in his educational plan.

Accordingly, all of Plaintiffs' experts' testimony regarding alleged damages and causation must be excluded.

> B. **Plaintiffs' Experts' Testimony Regarding Alleged Harm Caused by the Failure to Provide Autism Specific Services (Trained and Consistent Skills Trainers) Must Be Excluded as Being Unreliable and Prejudicial.**

The U.S. Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), stated that the district courts are "gatekeepers" regarding expert opinion testimony, and are to admit such testimony only if it is **both reliable and relevant.** Daubert, at 589. The Court held that a

trial judge faced with a proffer of expert scientific testimony must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  Daubert, at 592. The Court noted that factors that may be considered by courts in determining whether to admit expert testimony include whether the theory or technique employed by the expert is generally accepted in the scientific community, whether it has been subject to peer review and publication, whether it can be and has been tested, and whether the known or potential rate of error is acceptable. Id., at 593-595.

Subsequently, the U.S. Supreme Court in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999), held that a district court's "gatekeeping" obligation regarding expert testimony applies not only to "scientific" testimony, but to all expert testimony.  The Court stated:

> We conclude that Daubert's general principles apply to the expert matters described in Rule 702. The Rule, in respect to all such matters, "establishes a standard of evidentiary reliability."  509 U.S., at 590, 113 S.Ct. 2786. It "requires a valid ... connection to the pertinent inquiry as a precondition to admissibility."  Id., at 592, 113 S.Ct. 2786.  And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of

>[the relevant] discipline." 509 U.S., at 592, 113 S.Ct. 2786.

Kumho, 526 U.S. at 149.

As noted by the court in Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir. 1987), "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403." (citations omitted).

In General Electric Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512 (1997), the United States Supreme Court, in affirming the district court's exclusion of an expert's opinion on causation, stated that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."

In United States v. Saya, 961 F.Supp. 1395, 1397 (D. Haw. 1996), the United States District Court for the District of Hawaii in holding an expert's testimony inadmissible, the court found significant, inter alia, that the expert's theory had not been subjected to peer review and publication and that the expert had put forward no evidence on the rate of error on the accuracy of his theory. The court further noted that bald assurances of validity simply did not suffice for Daubert. The proffered testimony was therefore "speculative and hypothetical."

In the present case, Plaintiffs' experts have failed to show that their theory that the failure to provide autism specific services, through trained and consistent skills trainers, **caused permanent and irrevocable injury** to Bryan Wiles-Bond, is generally accepted in the scientific community. Plaintiffs' experts further have not shown that this theory has been subject to peer review and publication or that it has been tested. Further, these experts have put forth no rate of error on the accuracy of this theory. This is clearly inadequate to establish any kind of reliability under Daubert.

In short, the testimonies of Plaintiffs' experts is nothing more than Plaintiffs' claims "dressed up and sanctified as the opinion of an expert." Viterbo, 826 F.2d at 424. "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." Id.

Moreover, the opinions of Plaintiffs' experts should also be excluded because the probative value of their testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. See FRE Rule 403.

Accordingly, Plaintiffs' experts' opinions regarding alleged damages and causation are not reliable and must be excluded at trial.

C.  **Plaintiffs' Experts Are Precluded From Amending Or Otherwise Supplementing at Trial The Opinions Set Forth In Their Existing Reports.**

Plaintiffs cannot avoid the deficiencies in their experts' reports by having their experts amend their reports or otherwise provide further opinions not set forth in their existing reports at trial. FRCP 26(a)(2)(b) required plaintiffs' expert reports to include "**a complete statement of all opinions to be expressed and the basis and reasons therefor**, [and] the data or other information considered by the witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(b) (emphasis added). Where a party fails "without substantial justification" to provide an opinion or other information required by Rule 26(a), that party "**is not ... permitted to use as evidence at trial ... any information not so disclosed.**" Fed. R. Civ. P. 37(c). The preclusion of undisclosed expert testimony is automatic, so as "to give[] teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." <u>Yeti Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1105 (9th Cir. 2001) (quoting Rule 37(c) Adv. Comm. Notes). "Courts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." <u>Id</u>. at 1106 (affirming district court granting of motion in limine to exclude testimony of defendant's only damages expert); <u>Nutrasweet Co. v. X-L Engineering Co.</u>, 227

F.3d 776, 785 (7th Cir. 2000) ("If the expert's report contains only incomplete opinions, the court may choose to restrict the expert's testimony to those opinions alone.") (affirming district court order limiting expert testimony to what was contained in his initial report); Moore N. Amer., Inc. v. Poser Business Forms, Inc., 2001 WL 253117, *7 (D. Del. 2001) (granting summary judgment on affirmative defense where defendant's expert report contained no opinion to support that defense).

Finally, any attempt by Plaintiffs to circumvent the rules regarding disclosure of expert opinions by offering additional opinions as "rebuttal" is impermissible and should be sanctioned. To allow Plaintiffs to expand their experts' testimony at this late date would unfairly prejudice the DOE.

## V. CONCLUSION

Under these circumstances and based upon the foregoing authorities, it is respectfully requested that this Honorable Court grant the instant motion.

DATED: Honolulu, Hawaii, January 7, 2008.

/s/ Gregg M. Ushiroda
JOHN T. KOMEIJI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendants