LEXSTAT (LexisNexis Provided Search)

WEIL'S CODE OF HAWAII RULES

Copyright (c) 2001 by Weil Publishing Co., Inc.

All rights reserved

*** THIS DOCUMENT IS CURRENT THROUGH THE JUNE 2001 REVISION ***

TITLE 8. DEPARTMENT OF EDUCATION

CHAPTER 56. PROVISION OF A FREE APPROPRIATE PUBLIC EDUCATION FOR A STUDENT WITH A DISABILITY

WCHR 8-56  (2001)

8-56. PROVISION OF A FREE APPROPRIATE PUBLIC EDUCATION FOR A STUDENT WITH A DISABILITY

___SUBCHAPTER 1 GENERAL PROVISIONS

§ 8-56-1 Purpose and scope. (a) The purposes of this chapter are:

(1) To ensure that all students with a disability have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for post-school activities, including post-secondary education, employment and independent living;

(2) To strengthen the role of parents, and to ensure that the rights of students with a disability and their parents are protected;

(3) To encourage the participation of students with a disability in all school improvement efforts;

(4) To encourage whole-school approaches and pre-referral intervention to reduce the need to label students as disabled in order to address their learning needs;

(5) To encourage high expectations for students with a disability and to improve and increase educational achievement; and

(6) To encourage all students with a disability to develop skills needed to lead a self determined life.

(b) Provisions of this chapter shall be construed as supplemental to, and in the context of, federal laws and regulations relating to the provision of a free appropriate public education to a student with a disability. A student with a disability under this chapter shall also be eligible as a student with a disability under chapter 8-53, relating to the Provision of a Free Appropriate Public Education For Students with a Disability Under Section 504, Subpart D. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-1112, 302A-436; 34 C.F.R. § 300.1)

§ 8-56-2 Definitions. As used in this chapter, unless the context indicates otherwise:

"Consent" means that:

(1) The parent has been fully informed of all information relevant to the activity for which consent is sought, in the parent's native language, or other appropriate mode of communication;

(2) The parent understands and agrees in writing to the carrying out of the activity for which the parent's consent is sought, and the consent describes

that activity and lists the records (if any) that will be released and to whom; and

(3) The parent understands that the granting of consent is voluntary on the part of the parent and may be revoked at any time.

"Day" means calendar day unless otherwise indicated as school day or business day.

(1) "Business day" means Monday through Friday, except for federal and state holidays unless holidays are specifically included in the designation of business day, as in section 8-56-51 (d) (1).

(2) "School day" means any day, including a partial day, that students are in attendance at school for instructional purposes. The term has the same meaning for all students in school, including students with and without a disability.

"Department" means the state department of education.

"Education records" means those records that are directly related to the student; maintained by the department or other individual or agency acting for the department in the identification, evaluation, educational placement, or the provision of a free appropriate public education to the student; and are the type of records covered under such definition in 34 C.F.R. Part 99 and chapter 8-34.

"Evaluation" as used in this chapter, has the meaning given that term in section 8-56-6.

"Free appropriate public education" means special education and related services that are provided at public expense in the least restrictive environment, under public supervision and direction and at no cost to a parent, except for incidental fees which are normally charged to a student without a disability or the parent as a part of the regular education program; meet the standards of the department; include preschool, elementary, or secondary school education; and are provided in conformity with an individualized education program.

"General curriculum", as used in this chapter, means the same curriculum as for students without a disability and relates to the content of the curriculum and not to the setting in which it is used. To the extent applicable to an individual student with a disability and consistent with the least restrictive environment provisions, the general curriculum may be used in any educational environment.

"Include" means that the items named are not all of the possible items that are covered, whether like or unlike the ones named.

"Individualized education program or "IEP" means a written statement for a student with a disability that is developed, reviewed and revised in accordance with sections 8-56-30 to 8-56-42.

"Native language", if used with reference to an individual of limited English proficiency, means the following:

(1) The language normally used by that individual, or, in the case of a student, the language normally used by the parents of the student, except as provided in paragraph (2).

(2) In all direct contact with a student (including evaluation of the student), the language normally used by the student in the home or learning environment.

(3) For an individual with deafness or blindness, or for an individual with no written language, the mode of communication is that normally used by the individual, such as sign language, Braille, or oral communication.

"Parent" means:

(1) A natural or adoptive parent of a student;

(2) A guardian but not the State if the student is a ward of the State;

(3) A person acting in the place of a parent (such as a grandparent or stepparent with whom the student lives, or a person who is legally responsible for the student's welfare;) or

(4) A surrogate parent who has been appointed in accordance with section 8-56-80.

(5) A foster parent may act as a parent under this chapter if the natural parents' authority to make educational decisions on the student's behalf has been extinguished under state law and it is not otherwise contrary to the relevant court order; and the foster parent:

(A) Has a long-term parental relationship with the student;

(B) Is willing to make the educational decisions required of parents under this chapter; and

(C) Has no interest that would conflict with the interests of the student.

"Placement" means an appropriate educational setting for the implementation of the program for a student with a disability based upon the individualized education program. Placement shall be provided in the least restrictive environment in a continuum of educational arrangements.

"Qualified" means that an individual has met the department-approved or -recognized certification, licensing, registration, or other comparable requirements that apply to the area in which the individual is providing special education or related services.

"Regular education teacher" means a person assigned by the department who is qualified under state standards to provide instruction in the general curriculum.

"Related services" means transportation and such developmental, corrective, and other supportive services as are required to assist a student with a disability to benefit from special education, and includes speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, early identification and assessment of disabilities in children, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services for diagnostic or evaluation purposes. The term also includes school health services, social work services in schools, and parent counseling and training.

"Special education" means specially designed instruction, at no cost to the parents, to meet the unique needs of a student with a disability. Specially designed instruction means adapting, as appropriate to the needs of a student with a disability, the content, methodology, or delivery of instruction to address the unique needs of the student that result from the student's disability and to ensure access of the student to the general curriculum, so that the student can meet the educational standards of the department that apply to all students. The term includes:

(1) instruction in physical education and

(2) vocational education.

(3) Speech-language pathology services when the speech-language impairment is the primary disabling condition;

(4) Orientation and mobility when the visual impairment is the disabling condition; and

(5) Travel training, as appropriate, if it is the provision of specially designed instruction to students with significant cognitive disabilities, and any other students with a disability who require this instruction, to enable them to:

(A) Develop an awareness of the environment in which they live; and

(B) Learn the skills necessary to move effectively and safely from place to place within that environment (e.g., in school, in the home, at work, and in the community).

"Special education teacher" means a person assigned by the department who is qualified under state standards to provide the specially designed instruction that meets the definition of special education in this section.

"Student with a disability" or "students with a disability" means a student or students residing in the State, evaluated and identified in accordance with sections 8-56-6 to 8-56-13 on evaluation and reevaluation and who meets or meet the eligibility criteria in sections 8-56-15 to 8-56-29.

"Supplementary aids and services" means aids, services, and other supports, including assistive technology devices and services, as defined in section 8-56-30 that are provided in regular education classes or other education-related settings to enable a student with a disability to be educated with students without a disability to the maximum extent appropriate in accordance with sections 8-56-43 to 8-56-47 on placement and least restrictive environment. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A -101, 302A-439; 34 C.F.R. § § 300.7 to 300.9, 300.13 to 300.14, 300.19 to 300.20, 300.23 to 300.24, 300.26, 300.28, 300.347, 300.500, 300.560)

§ 8-56-3 Free appropriate public education. (a) The department shall ensure that each student with a disability who resides in the State, including a student with a disability who has been suspended for more than ten school days in a given school year or dismissed from school, is provided a free appropriate public education in accordance with this chapter.

(b) The services provided to a student under this chapter shall address all of the student's identified special education and related services needs.

(c) The services and placement needed by each student with a disability to receive a free appropriate public education shall be based on the student's unique needs and not on the disability. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-1112, 302A-436; 34 C.F.R. § 300.300)

SUBCHAPTER 2 CHILD FIND AND REFERRAL

§ 8-56-4 Child find. (a) The department shall annually:

(1) Identify all students with a disability residing in the State, regardless of the severity of the disability, who are in need of special education and related services, including:

(A) Students with a disability attending private schools;

(B) Highly mobile students with a disability (such as homeless students); and

(C) Students who are suspected of being a student with a disability under sections 8-56-15 to 8-56-29, even though they are advancing from grade to grade.

(2) Notify students with a disability and their parents of the department's duty under this chapter, including the procedure to initiate a referral.

(b) The department shall establish identification procedures, that include a systematic method of utilizing referrals from teachers, parents, agencies, professional persons and members of the public, to identify students suspected of having a disability under chapter 8-53 or suspected of having a disability under this chapter.

(c) Identification and referral procedures under this chapter to determine if a student has a disability and is in need of special education and related services shall not be construed to limit those school site activities designed to address learning difficulties in general, including the consideration and utilization of the resources of the regular education program.

(d) Infants and toddlers under 3 years of age suspected of needing early intervention services pursuant to *20 U.S.C. Sections 1431*-1445 shall be referred by the department to the state department of health for identification and evaluation. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.125)

§ 8-56-5 Referral. (a) All referrals for the evaluation of a child to determine eligibility as a student with a disability under chapter 8-53 or this chapter shall be documented and shall be in accordance with this section.

(b) Within twenty days from the date of receipt of a referral for an evaluation, the parent shall:

(1) Receive a written notice in accordance with section 8-56-68 of the department's proposal to assess the student under this chapter; request for consent to assess in accordance with section 8-56-70; and the procedural safeguards notice in accordance with section 8-56-69; or

(2) Receive a written notice in accordance with section 8-56-68 of the department's refusal to assess under this chapter and the procedural safeguards notice in accordance with section 8-56-69; or,

(3) Receive a written notice of the department's proposal or refusal to evaluate under chapter 8-53, including an explanation of the distinctions between an evaluation and determination of eligibility under chapter 8-53 and this chapter.

(c) If a student initially referred for an evaluation under chapter 8-53 is further suspected of being eligible as a student with a disability under this chapter, the parent shall receive notice in accordance with subsection (b) (1) as soon as possible.

(d) During the evaluation process, the department shall continue to implement classroom modifications and modification plans under chapter 8-53 in existence at the time of the initial referral under this chapter, for or on behalf of the student. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.125, 300.530)

SUBCHAPTER 3 EVALUATION AND REEVALUATION

§ 8-56-6 Definitions. As used in this subchapter, unless the context indicates otherwise:

"Assessment" means the administration of specific tests, instruments, tools, strategies, and other materials used selectively with an individual student in accordance with section 8-56-9 to determine whether a student has a disability and the nature and extent of the special education and related services the student needs.

"Evaluation" means procedures used selectively with an individual student in accordance with sections 8-56-7 to 8-56-14 to determine whether a student has a disability and the nature and extent of the special education and related services the student needs. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. 300.533)

§ 8-56-7 Determination of needed assessment data. (a) As part of an initial evaluation (if appropriate) and as part of any reevaluation, a group that includes the individuals required for the IEP team, in accordance with section 8-56-34, and other qualified professionals, as appropriate, shall:

(1) Review existing assessment data on the student, including:

(A) Assessments and information provided by the parent of the student;

(B) Current classroom-based assessments and observations; and

(C) Observations by teachers and related service providers; and

(b) On the basis of that review, and input from the student's parent, identify what additional data, if any, are needed to determine:

(1) Whether the student has a disability as described in sections 8-56-15 to 8-56-29 or, in the case of a reevaluation of a student, whether the student continues to have such a disability;

(2) The present levels of performance and educational needs of the student;

(3) Whether, in accordance with section 8-56-15, the student needs special education and related services because of the disability, or in the case of a reevaluation of a student, whether the student continues to need special education and related services because of the disability; and

(4) Whether any additions or modifications to the special education and related services are needed to enable the student to:

(A) Meet the measurable annual goals set out in the IEP of the student; and

(B) Participate, as appropriate, in the general curriculum.

(c) The group described in subsection (a) may conduct its review without a meeting.

(d) The department shall administer tests and other assessment materials as may be needed to produce the data identified under subsection (b).

(e) If the determination under subsection (a) and subsection (b) is that no additional data are needed to determine whether the student continues to be a student with a disability, the department shall notify the student's parent:

(1) Of that determination and the reasons for it; and

(2) Of the right of the parent to request an assessment to determine whether, for purposes of services under this chapter, the student continues to be a student with a disability.

(f) The department is not required to conduct the assessment described in subsection (e) (2) to determine whether the student continues to be a student with a disability unless requested to do so by the student's parent. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. 300.533)

§ 8-56-8 Initial evaluation. (a) The department shall conduct a full and individual initial evaluation, in accordance with section 8-56-7 on the determination of needed assessment data and section 8-56-9 on assessment, before the initial provision of special education and related services under this chapter.

(b) The initial evaluation shall consist of procedures:

(1) To determine if the student is a student with a disability; and

(2) To determine the educational needs of the student.

(c) For the initial evaluation only, at least one member of the team of qualified professionals required by section 8-56-10 on the determination of eligibility, other than the student's teacher, shall observe the student during an activity relevant to the area of suspected disability.

(1) In the case of a student of less than school age or out of school, the observation shall take place in an environment appropriate to a student of that age.

(2) If recent observation data is available that meets the requirements of this subsection, then an additional observation is not required. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.320, 300.531)

§ 8-56-9 Assessment. The department shall ensure that:

(1) Tests and other materials used to assess a student under this chapter:

(A) Are selected and administered so as not to be discriminatory on a racial or cultural basis; and

(B) Are provided and administered in the student's native language or other mode of communication, unless it is clearly not feasible to do so; and

(C) Materials and procedures used to assess a student with limited English proficiency are selected and administered to ensure that they measure the extent to which the student has a disability and needs special education, rather than measuring the student's English language skills.

(2) A variety of assessment tools and strategies are used to gather relevant functional and developmental information about the student, including information provided by the parent, information related to enabling the student to be involved in and progress in the general curriculum (or for a preschool student to participate in appropriate activities) that may assist in determining:

(A) Whether the student is a student with a disability under sections 8-56-15 to 8-56-29; and

(B) The content of the student's IEP.

(3) Any standardized tests that are given to a student shall:

(A) Have been validated for the specific purpose for which they are used; and

(B) Are administered by trained and knowledgeable personnel in accordance with any instructions provided by the producer of the tests.

(4) If an assessment is not conducted under standard conditions, a description of the extent to which it varied from standard conditions (e.g., the qualifications of the person administering the test, or the method of test administration) shall be included in the evaluation report.

(5) Tests and other assessment materials shall include those tailored to assess specific areas of educational need and not merely those that are designed to provide a single general intelligence quotient.

(6) Tests are selected and administered so as best to ensure that if a test is administered to a student with impaired sensory, manual, or speaking skills, the test results accurately reflect the student's aptitude or achievement level or whatever other factors the test purports to measure, rather than reflecting the student's impaired sensory, manual, or speaking skills (unless those skills are the factors that the test purports to measure).

(7) No single procedure is used as the sole criterion for determining whether a student is a student with a disability and for determining an appropriate educational program for the student.

(8) A student is assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, visual and auditory processing, and motor abilities, and is assessed by at least one teacher or other specialist with knowledge in the area of suspected disability.

(9) The assessment of the student is sufficiently comprehensive to identify all of the student's special education and related service needs, whether or not linked to the suspected disability or disability in which the student may be or has been determined to be eligible under section 8-56-15.

(10) Technically sound instruments are used to assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors.

(11) Assessment tools and strategies are used to provide relevant information that directly assists persons in determining the educational needs of the student.

(12) An accurate assessment of a student who may be limited English proficient includes:

(A) A determination of the student's proficiency in English and the student's native language, including an objective assessment of reading, writing, speaking, and understanding;

(B) Consideration of information about the student's language proficiency in the determination of the assessment of the student to prevent misclassification; and

(C) The selection and administration of tests to ensure a student with limited English proficiency is not assessed on the basis of criteria that essentially measure English language skills. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.532)

§ 8-56-10 Determination of eligibility. (a) Upon completing the administration of tests and other assessment materials in accordance with section 8-56-7 on the determination of needed assessment data and section 8-56-9 on assessment:

(1) A team of qualified professionals and the parent of the student shall determine whether the student is a student with a disability in accordance with sections 8-56-15 to 8-56-29; and

(2) The department shall provide a copy of the evaluation report and the documentation of the determination of eligibility to the parent.

(b) A student shall not be determined to be a student with a disability if:

(1) The determinant factor for that determination is:

(A) Lack of instruction in reading or math; or

(B) Limited English proficiency; and

(2) The student does not otherwise meet the eligibility criteria in sections 8-56-15 to 8-56-29. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § 302A-439; 34 C.F.R. § 300.534)

§ 8-56-11 Procedures for determining eligibility and placement. (a) In interpreting evaluation data for the purpose of determining if a student is a student with a disability in accordance with sections 8-56-15 to 8-56-29, and the educational needs of the student, the department shall:

(1) Draw upon information from a variety of sources, including, as appropriate, aptitude and achievement tests, parent input, teacher recommendations, physical condition, social or cultural background, and adaptive behavior; and

(2) Ensure that information obtained from all of these sources is documented and carefully considered.

(b) If a determination is made that a student has a disability and needs special education and related services, the department shall develop an IEP for the student in accordance with sections 8-56-30 to 8-56-42.

(c) The department shall ensure that the special education and related services and supplementary aids and services provided to the student with a disability and the student's placement are determined based on the student's educational needs in accordance with sections 8-56-30 to 8-56-47, and not by the student's eligibility category. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § 302A-439; 34 C.F.R. § 300.535)

§ 8-56-12 Additional procedures for evaluating students with specific learning disabilities and determining eligibility. (a) For a student suspected of having a specific learning disability, at least one team member other than the student's regular education teacher shall observe the student's academic performance in the regular classroom setting.

(b) In the case of a student of less than school age or out of school who is suspected of having a specific learning disability, a team member shall observe the student in an environment appropriate for a student of that age.

(c) The determination of whether a student suspected of having a specific learning disability is a student with a disability shall be made by the student's parent and a team of qualified professionals which shall include:

(1) The student's regular education teacher; or

(2) If the student does not have a regular education teacher, a regular education teacher qualified to teach a student of that age; or

(3) For a student of less than school age, an individual qualified to teach a student of that age; and

(4) At least one person qualified to conduct individual diagnostic examinations of students, such as a school psychologist, speech-language pathologist, or remedial reading teacher.

(d) For a student suspected of having a specific learning disability, the documentation of eligibility as required by section 8-56-10(a)(2), shall include a statement of:

(1) Whether the student has a specific learning disability;

(2) The basis for making the determination;

(3) The relevant behavior noted during the observation of the student;

(4) The relationship of that behavior to the student's academic functioning;

(5) The educationally relevant medical findings, if any;

(6) Whether there is a severe discrepancy between achievement and ability pursuant to 8-56-26(b) that is not correctable without special education and related services; and

(7) The determination of the team concerning the effects of environmental, cultural, or economic disadvantage.

Each team member shall certify in writing whether the report reflects the member's conclusion. If it does not reflect the member's conclusion, the team member shall submit a separate statement presenting the member's conclusion. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.540 to 300.543)

§ 8-56-13 Reevaluation. The department shall ensure that:

(1) A reevaluation of each student, in accordance with section 8-56-7 on the determination of needed assessment data, section 8-56-9 on assessment and sections 8-56-10 and 8-56-11 on eligibility and placement, is conducted if conditions warrant a reevaluation, or if the student's parent or teacher requests a reevaluation, but at least once every three years.

(2) The results of any reevaluations shall be addressed by the student's IEP team under sections 8-56-30 to 8-56-41 in reviewing and, as appropriate, revising the student's IEP. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.321, 300.536)

§ 8-56-14 Rescission of eligibility. (a) Before a determination may be made that a student currently identified as a student with a disability is no longer a student with a disability:

(1) The department shall evaluate the student pursuant to section 8-56-7 on the determination of needed assessment data and section 8-56-9 on assessment; and

(2) In accordance with section 8-56-10, a team of qualified professionals and the parent shall determine the student does not meet the required eligibility criteria in sections 8-56-15 to 8-56-29.

(b) The evaluation described in subsection (a) is not required before the termination of a student's eligibility under this chapter due to graduation with a regular high school diploma or exceeding the age eligibility for a free appropriate public education under section 8-56-15. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § 302A-439; 34 C.F.R. § 300.534)

SUBCHAPTER 4 ELIGIBILITY CRITERIA

§ 8-56-15 General requirement. The determination of whether a student qualifies as a student with a disability shall be made on the basis of an evaluation that meets the requirements of sections 8-56-6 to 8-56-13 by a team of qualified professionals and the parent pursuant to section 8-56-10, and the student shall meet all of the following criteria:

(1) The student has a disability described in sections 8-56-16 to section 8-56-29 including, for a student aged three through eight, a student who is experiencing developmental delays as set forth in section 8-56-19; and

(2) The student needs special education and related services because of the disability described in paragraph (1). If it is determined that a student has a disability described in sections 8-56-16 to section 8-56-29, but only needs a related service and not special education as defined in section 8-56-2, the student is not a student with a disability; and

(3) The student resides in the State and comes within the following age range:

(A) At least three years of age. A student:

(i) Whose birthday falls between January 1 and August 31 may enter school upon reaching the age of three, on the first instructional day for the school the student would attend, except that if a student's third birthday occurs during the summer, the student's IEP team shall determine the date when services under the IEP shall begin;

(ii) Whose third birthday falls between September 1 and December 31 may enter school on the first instructional day of the school year for the school the student would attend; and

(B) Under twenty on the first instructional day of the school year set by the department. A student who is under twenty years of age on the first instructional day of the school year set by the department, but who reaches the age of twenty during the school year, shall be eligible for the full school year, including extended school year when the requirements of section 8-56-40 are met. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-16 Autism. (a) A student shall be eligible under the category of autism if the student has a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age three, that adversely affects the student's educational performance. The student may have one or more of the following other characteristics often associated with autism:

(1) Engagement in repetitive activities and stereotyped movements.

(2) Resistance to environmental change or change in daily routines.

(3) Unusual responses to sensory experiences.

(b) A student who manifests the characteristics of "autism" after age three may be diagnosed as having "autism" if the criteria in subsection (a) are satisfied.

(c) A team of qualified professionals and the parent may not identify a student as having autism if the student's educational performance is adversely affected primarily because the student has an emotional disturbance pursuant to

section 8-56-20. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-17 Deaf-blindness. A student shall be eligible under the category of deaf-blindness.

(1) If the student meets the criteria under either section 8-56-18, the category of deafness, or section 8-56-21, the category of hearing impairment, and section 8-56-29, the category of visual impairment; and

(2) The concomitant hearing and visual impairments cause severe communication and other developmental and educational needs. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-18 Deafness. A student shall be eligible under the disability category of deafness if the student has a hearing loss averaging greater than 70 decibels in the speech frequencies (500Hz to 4,000Hz) and:

(1) The hearing loss impairs the student's auditory processing of linguistic information through hearing, with or without amplification; or

(2) The hearing loss adversely affects the student's educational performance. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-19 Developmental delay. (a) A student, aged three through five, shall be eligible for any eligibility category in this subchapter if the applicable criteria are met, or for the category of developmental delay if, as measured by appropriate diagnostic instruments and procedures, one or more of the following is met:

(1) Cognitive development and adaptive behavior are delayed equivalent to one and one-half standard deviations below the mean when compared with the standard score expected for the chronological age.

(2) One of the following areas is delayed one and one-half standard deviations below a standard score for:

(A) Motor development, including fine motor, gross motor, sensory motor, and perceptual-motor development.

(B) Communication, including speech and language development.

(C) Academic development.

(D) Adaptive behavior.

(b) A student, aged six through eight, shall be eligible for any eligibility category in this subchapter if the applicable criteria are met, or for the category of developmental delay if as measured by appropriate diagnostic instruments and procedures, three of the five areas are delayed one and one-half standard deviations below a standard score for:

(1) Motor development, including fine motor, gross motor, sensory motor, and perceptual-motor development.

(2) Communication, including speech and language development.

(3) Academic development.

(4) Adaptive behavior.

(5) Cognition.

(c) If assessment materials would not conclusively demonstrate eligibility as required under subsections (a) or (b), the team of qualified professionals and the parent may find the student eligible under the category of developmental delay if the team determines the student's patterns of learning deviate from age expectations across settings. The documentation of eligibility required by section 8-56-10 shall include a statement of the patterns of learning that deviate from age expectations across settings and the basis and method used in

determining eligibility. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-20 Emotional disturbance. (a) A student shall be eligible under the disability category of emotional disturbance if the student exhibits one or more of the following characteristics over a long period of time and to a marked degree that adversely affect the student's educational performance:

(1) An inability to learn that cannot be explained by intellectual, sensory, or health factors

(2) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.

(3) Inappropriate types of behavior or feelings under normal circumstances.

(4) A general pervasive mood of unhappiness or depression.

(5) A tendency to develop physical symptoms or fears associated with personal or school problems.

(b) Emotional disturbance includes schizophrenia. Emotional disturbance does not apply to a student who is socially maladjusted, unless it is determined that the student has an emotional disturbance. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-21 Hearing impairment. A student shall be eligible under the disability category of hearing impairment if the student has a hearing loss, whether permanent or fluctuating, averaging 26 to 70 decibels in the speech frequencies (500 Hz to 4,000 Hz), and:

(1) The hearing loss impairs the student's auditory processing of linguistic information, with or without amplification; or

(2) The hearing impairment adversely affects the student's educational performance. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-22 Mental retardation. A student shall be eligible under the disability category of mental retardation when all of the following are met:

(1) The student has subaverage general intellectual functioning, as demonstrated by evidence of intellectual functioning two or more standard deviations below the mean;

(2) The subaverage intellectual functioning exists concurrently with deficits in at least two adaptive skill areas; and

(3) The subaverage intellectual functioning and deficits in adaptive skill areas were manifested during the developmental period and adversely affect the student's educational performance. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-23 Multiple disability. (a) A student shall be eligible under the category of multiple disability if the student has concomitant impairments, the combination of which causes severe educational needs and all of the following criteria are met:

(1) The student has subaverage general intellectual functioning, as demonstrated by evidence of intellectual functioning three or more standard deviations below the mean;

(2) The subaverage intellectual functioning exists concurrently with deficits in at least two adaptive skill areas;

(3) The subaverage intellectual functioning and deficits in adaptive skill areas were manifested during the developmental period and adversely affect the student's educational performance; and

(4) The student is not eligible under the category of deaf-blindness, as set forth in section 8-56-17, and the student is eligible under one or more of the following disability categories:

(A) Autism, as set forth in section 8-56-16;

(B) Deafness, as set forth in section 8-56-18;

(C) Hearing impairment, as set forth in section 8-56-21;

(D) Orthopedic impairment, as set forth in section 8-56-24;

(E) Other health impairment, as set forth in section 8-56-25; or

(F) Visual impairment including blindness, as set forth in section 8-56-29.

(b) If assessment materials would not conclusively demonstrate eligibility as required under subsection (a) (4), the team of qualified professionals and the parent may find the student eligible under the category of multiple disability if the criteria in subsection (a) (1) to (3) are met and the team documents the existence of a concomitant impairment in the determination of eligibility required by section 8-56-10. The documentation of eligibility shall include a statement of the concomitant impairment and the basis and method used in determining eligibility. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-24 Orthopedic impairment. A student shall be eligible under the disability category of orthopedic impairment if there is medical evidence that a severe orthopedic impairment exists that adversely affects the student's educational performance. The term includes impairments caused by congenital anomaly (e.g., clubfoot, absence of some member), impairments caused by disease (e.g., poliomyelitis, bone tuberculosis), and impairments from other causes (e.g., cerebral palsy, amputations, and fractures or burns that cause contractures). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-25 Other health impairment. A student shall be eligible under the category of other health impairment if both of the following are met:

(1) The student has limited strength, vitality or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that is due to chronic or acute health problems or a medically fragile condition such as asthma, attention deficit disorder or attention deficit hyperactivity disorder, diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis, rheumatic fever, and sickle cell anemia; and

(2) The health impairment adversely affects the student's educational performance. [Eff] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-26 Specific learning disability. (a) General. Specific learning disability means a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, that may manifest itself in an imperfect ability to listen, think, speak, read, write, spell, or to do mathematical calculations, including such conditions as perceptual disabilities, such as visual and auditory processing, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia.

(b) Eligibility. A student shall be eligible under the disability category of specific learning disability if, provided with learning experiences appropriate for the student's age and ability levels, the student does not achieve commensurate with the student's age and ability levels; and the student has a severe discrepancy between actual achievement and intellectual ability as demonstrated by one of the following:

(1) The student shall have a severe discrepancy between actual achievement and intellectual ability by a difference of at least one and one-half standard deviations in one or more of the following areas:

(A) Oral expression;

(B) Listening comprehension;

(C) Written expression;

(D) Basic reading skill;

(E) Reading comprehension;

(F) Mathematics calculation;

(G) Mathematics reasoning; or

(2) When standardized tests are considered to be invalid for a specific student, the severe discrepancy shall be measured by alternative means. The alternative means and severe discrepancy shall be documented in the determination of eligibility required by sections 8-56-10 and 8-56-12; or

(3) If the standardized tests do not reveal a severe discrepancy as defined in paragraph (1) or (2), the team of qualified professionals and the parent required by section 8-56-12 may find that a severe discrepancy between ability and achievement exist, provided the team documents in the determination of eligibility required by sections 8-56-10 and 8-56-12 that the severe discrepancy between ability and achievement exists in one or more basic psychological processes. The documentation of eligibility shall include a statement of the area, the degree, the basis and method used in determining the discrepancy and shall contain information considered by the team which shall include:

(A) Data obtained from standardized assessment instruments;

(B) Information provided by the parent;

(C) Information provided by the student's current teacher;

(D) Evidence of the student's performance in the classroom obtained from observations and work samples;

(E) Consideration of the student's age, particularly for young students; and

(F) Any additional relevant information, such as the student's performance on group test scores.

(c) The team of qualified professionals and the parent required by section 8-56-12 may not identify a student as having a specific learning disability if the severe discrepancy between the student's ability and achievement is primarily the result of:

(1) A visual impairment;

(2) A hearing impairment;

(3) A motor impairment;

(4) Mental retardation;

(5) Emotional disturbance; or

(6) Environmental, cultural or economic disadvantage. [Eff MAR 16 2000] (Auth: HRS § § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534, 300.541)

§ 8-56-27 Speech-language impairment. A student shall be eligible under the category of speech-language impairment when a significant problem in the comprehension or production, or both, of an oral communication system, which is not consistent with the student's other developmental or cognitive abilities, or both, adversely affects the student's educational performance and is evident in one or more of the following:

(1) Articulation or phonological condition, or both.

(2) Voice condition.

(3) Fluency condition.

(4) Language conditions, as documented by:

(A) Multiple sources of data; and

(B) A discrepancy of one and one-half standard deviations between the student's estimated cognitive level and performance on at least two standardized measures in the areas of semantics or grammar, or both. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-28 Traumatic brain injury. (a) A student shall be eligible under the category of traumatic brain injury if both of the following are met:

(1) There is medical evidence that the student has an acquired injury to the brain, caused by an external physical force, resulting in total or partial functional disability or psychosocial impairment, or both that adversely affects the student's educational performance; and

(2) The traumatic brain injury is either an open or closed head injury, resulting in impairments in one or more areas such as:

(A) Cognition.

(B) Language.

(C) Memory.

(D) Attention.

(E) Reasoning.

(F) Abstract thinking.

(G) Judgment.

(H) Problem-solving.

(I) Sensory, perceptual and motor abilities.

(J) Psychosocial behavior.

(K) Physical functions.

(L) Information processing.

(M) Speech.

(b) The team of qualified professionals and the parent may not identify a student as having a traumatic brain injury if the brain injury is congenital or degenerative, or induced by birth trauma. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

§ 8-56-29 Visual impairment including blindness. A student shall be eligible for the disability category of visual impairment, including both partial sight and blindness, if the impairment in vision, even with the best correction, adversely affects the student's educational performance and one or more of the following are met:

(1) Partially-sighted. The student's visual acuity is 20/70 to 20/200 in the better eye and with the best correction.

(2) Blind. The student's visual acuity is 20/200 in the better eye and with the best correction, or less, or the student has a subtended visual field of less than 20 degrees, regardless of central visual acuity.

(3) The student has a significant functional visual impairment such as nystagmus, so severe that it interferes with functions such as visual fixation, focus and tracking.

(4) The student has a progressive visual impairment, such as retinitis pigmentosa, that will lead to eventual visual impairment as set forth in

paragraphs (1) and (2). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: HRS § § 302A-101; 302A-439; 34 C.F.R. § § 300.7; 300.534)

SUBCHAPTER 5 INDIVIDUALIZED EDUCATION PROGRAM

§ 8-56-30 Definitions. As used in this subchapter:

"Assistive technology device" means any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve the functional capabilities of a student with a disability.

"Assistive technology service" means any service that directly assists a student with a disability in the selection, acquisition, or use of an assistive technology device. The term includes:

(1) The evaluation of the needs of a student with a disability, including a functional evaluation of the student in the student's customary environment;

(2) Purchasing, leasing, or otherwise providing for the acquisition of assistive technology devices by students with a disability;

(3) Selecting, designing, fitting, customizing, adapting, applying, maintaining, repairing, or replacing assistive technology devices;

(4) Coordinating and using other therapies, interventions, or services with assistive technology devices, such as those associated with existing education and rehabilitation plans and programs;

(5) Training or technical assistance for a student with a disability or, if appropriate, that student's family; and

(6) Training or technical assistance for professionals (including individuals providing education or rehabilitation services), employers, or other individuals who provide services to, employ, or are otherwise substantially involved in the major life functions of that student.

"Individualized family service plan" or "IFSP" means a written plan developed in accordance with *20 U.S.C. Section 1436,* to address the needs of an infant or toddler with a disability and the family.

"Transition services" means a coordinated set of activities for a student with a disability that:

(1) Is designed within an outcome-oriented process, that promotes movement from school to post-school activities, including postsecondary education, vocational training, integrated employment (including supported employment), continuing and adult education, adult services, self-determination, supported living, independent living, or community participation;

(2) Is based on the individual student's needs, taking into account the student's preferences and interests;

(3) Includes:

(A) Instruction;

(B) Related services;

(C) Community experiences;

(D) The development of employment and other post-school adult living objectives; and

(E) If appropriate, acquisition of daily living skills and functional vocational evaluation; and

(4) May be special education, if provided as specially designed instruction, or related services if required to assist a student with a disability to benefit from special education.

§ 8-56-31 When IEPs must be in effect. (a) At the beginning of each school year, the department shall have an IEP in effect, for each student with a disability within its jurisdiction.

(b) The department shall ensure that:

(1) An IEP is in effect before special education and related services are provided to a student;

(2) An IEP is implemented as soon as possible following the meetings described under section 8-56-32, including any case in which the payment source for providing or paying for special education and related services to the student is being determined;

(3) The student's IEP is accessible to each regular education teacher, special education teacher, related service provider, and other service provider who is responsible for its implementation; and

(4) Each teacher and provider described in paragraph (3) is informed of:

(A) The teacher's or provider's specific responsibilities related to implementing the student's IEP; and

(B) The specific accommodations, modifications, and supports that shall be provided for the student in accordance with the IEP.

(c) In the case of a student with a disability aged three through five, an IFSP that contains the content described in *20 U.S.C. Section 1436* and that is developed in accordance with this subchapter, except for sections 8-56-35 and 8-56-41 on transition services and 8-50-38 on the content of an IEP, an IFSP may serve as the IEP of the student if using that plan as the IEP is agreed to by the department and the student's parent.

(d) In implementing the requirements of subsection (c), the department shall:

(1) Provide to the student's parent a detailed explanation of the differences between an IFSP and an IEP; and

(2) If the parent chooses an IFSP, obtain consent from the parent. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. 300.342)

§ 8-56-32 IEP meetings and timelines. (a) As used in this section, the phrase within a reasonable period of time means within 60 days, except when exceptional circumstances cause a delay.

(b) The department shall initiate and conduct meetings for the purpose of developing, reviewing and revising the IEP of a student with a disability, or an IFSP for each student with a disability aged three through five, if the requirements of section 8-56-31 are met.

(c) The department shall ensure that within a reasonable period of time following the receipt of parental consent to the initial assessment under section 8-56-70(a)(1) or, within a reasonable period of time following the date of a determination under section 8-56-7 that no additional assessment data is needed:

(1) The student is assessed, as necessary; and

(2) If determined eligible under section 8-56-15, special education and related services are made available to the student in accordance with an IEP.

(d) In meeting the timeline in subsection (c), a meeting to develop an IEP for the student shall be conducted within thirty days of a determination, in accordance with sections 8-56-10 to 8-56-12, that the student needs special education and related services.

(e) The department shall ensure that within a reasonable period of time following the receipt of parental consent to reevaluation under section 8-56-70(a)(1) or the commencement of an assessment in accordance with section 8-56-

70(e) or within a reasonable period of time following the date of a determination under section 8-56-7 that no additional assessment data is needed:

(1) The student is assessed, as necessary; and

(2) If the student continues to be eligible under section 8-56-15, special education and related services are made available to the student in accordance with an IEP.

(f) If for an individual student, exceptional circumstances cause a delay in meeting the requirements of subsections (c) or (e), the parent of the student with a disability shall be given a written notice:

(1) Informing the parent of the delay;

(2) Describing the reason for the delay; and

(3) Informing the parent of the date for special education and related services to be made available to the student in accordance with an IEP.

(g) A copy of the written notice required in subsection (f) shall be maintained in the student's educational records.

(h) The parent may file a complaint in accordance with sections 8-56-95 to 8-56-98 regarding an alleged violation of the requirements of this section. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.343, 300.505, 300.533)

§ 8-56-33 Review and revision of the IEP. The department shall ensure that the IEP team reviews the student's IEP periodically, but not less than annually, and upon the request of a member of the IEP team, to determine whether the annual goals for the student are being achieved, and revises the IEP as appropriate to address:

(1) Any lack of expected progress toward the annual goals, related to the general curriculum, if appropriate, and meeting each of the student's other needs that result from the student's disability;

(2) The results of any reevaluation conducted;

(3) Information about the student provided to, or by, the parent as described in section 8-56-7(a)(1)(A) on existing assessment data;

(4) The student's anticipated needs; or

(5) Other matters. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.343)

§ 8-56-34 IEP team. (a) The department shall ensure that the IEP team for each student with a disability includes:

(1) The parent of the student;

(2) At least one regular education teacher of the student (if the student is, or may be participating in the regular education environment). As a member of the IEP team, the regular education teacher of a student with a disability shall, to the extent appropriate, participate in the development, review, and revision of the student's IEP, including assisting in:

(A) The determination of appropriate positive behavioral interventions and strategies for the student; and

(B) The determination of supplementary aids and services, program modifications, or supports for school personnel consistent with section 8-56-38(a)(3);

(3) At least one special education teacher, or if appropriate, at least one of the student's qualified special education provider(s);

(4) A representative of the department who is:

(A) Qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of students with a disability;

(B) Knowledgeable about the general curriculum; and

(C) Knowledgeable about the availability of resources of the department;

(5) An individual who can interpret the instructional implications of evaluation results, who may be a member of the team described in paragraphs (2) through (6);

(6) At the discretion of the parent or the department, other individuals who have knowledge or special expertise regarding the student, including related services personnel as appropriate; and

(7) If appropriate, the student.

(b) The representative of the department under subsection (a)(4) shall be able to commit resources. Representatives from other agencies who attend the IEP meeting on behalf of that agency shall also be able to commit resources.

(c) The determination of the knowledge or special expertise of any individual described in subsection (a)(6) shall be made by the party (parents or department) who invited the individual to be a member of the IEP team.

(d) The department may designate another department member of the IEP team to also serve as the agency representative, if the criteria in subsections (a)(4) and (b) are satisfied. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.344)

§ 8-56-35 Transition services participants. (a) Under section 8-56-34 (a)(7), the department shall invite a student with a disability of any age if a purpose of the meeting will be the consideration of the statement of transition service needs or transition services for the student under section 8-56-38 (b) or section 8-56-38 (c).

(b) If the student does not attend the IEP meeting, the department shall take other steps to ensure that the student's preferences and interests are considered.

(c) In implementing the requirements of subsection (a), the department also shall invite a representative of any other agency that is likely to be responsible for providing or paying for transition services.

(d) If an agency invited to send a representative to a meeting does not do so, the department shall take other steps to obtain participation of the other agency in the planning of any transition services. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.344)

§ 8-56-36 Parent participation. (a) The department shall take steps to ensure that one or both of the parents of a student with a disability are present at each IEP meeting or are afforded the opportunity to participate, including contacting the parent to schedule the meeting at a mutually agreed upon time and place early enough to ensure the parent will have an opportunity to attend.

(b) The notice required in subsection (a) shall:

(1) Indicate the purpose, time, and location of the meeting and who will be in attendance; and

(2) Inform the parent of the provisions in section 8-56-34 (a)(6) and section 8-56-34 (c), relating to the participation of other individuals on the IEP team who have knowledge or special expertise about the child.

(c) In meeting the requirements of subsections (a) and (b), the department shall have:

(1) A detailed record of telephone calls made or attempted and the results of those calls; and

(2) Copies of correspondence sent to the parent and any responses received.

(d) For a student with a disability beginning at age fourteen, or younger, if appropriate, the notice shall also:

(1) Indicate that a purpose of the meeting will be the development of a statement of the transition service needs of the student required in section 8-56-38 (b); and

(2) Indicate that the department will invite the student.

(e) For a student with a disability beginning at age sixteen, or younger, if appropriate, the notice shall:

(1) Indicate that a purpose of the meeting is the consideration of needed transition services for the student required in section 8-56-38 (c);

(2) Indicate that the department will invite the student; and

(3) Identify any other agency that will be invited to send a representative.

(f) If neither parent can attend, the department shall use other methods to ensure parent participation, including individual or conference telephone calls.

(g) A meeting may be conducted without a parent in attendance if the department is unable to convince the parents that they should attend. In this case the department shall have a record of its attempts to arrange a mutually agreed upon time and place, such as:

(1) Detailed records of telephone calls made or attempted and the results of those calls;

(2) Copies of correspondence sent to the parent and any responses received; and

(3) Detailed records of visits made to the parent's home or place of employment and the results of those visits.

(h) The department shall take whatever action is necessary to ensure that the parent understands the proceedings at a meeting, including arranging for an interpreter for a parent with deafness or whose native language is other than English.

(i) The department shall give the parent a copy of the IEP at no cost to the parent and, upon request, a copy of the record of notice required under subsections (a), (b), and (g). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.345)

§ 8-56-37 Development, review, and revision of IEP. (a) In developing each student's IEP, the IEP team shall consider:

(1) The strengths of the student and the concerns of the parent for enhancing the education of the student;

(2) The results of the initial or most recent evaluation of the student; and

(3) As appropriate, the results of the student's performance on any general statewide assessment programs.

(b) The IEP team shall also:

(1) In the case of a student whose behavior impedes the student's learning or that of others, consider strategies, including positive behavioral interventions, strategies, and supports to address that behavior;

(2) In the case of a student with limited English proficiency, consider the language needs of the student as these needs relate to the student's IEP;

(3) In the case of a student who is blind or visually impaired, provide for instruction in Braille and the use of Braille unless the IEP team determines, after an evaluation of the student's reading and writing skills, needs, and appropriate reading and writing media (including an evaluation of the student's future needs for instruction in Braille or the use of Braille), that instruction in Braille or the use of Braille is not appropriate for the student;

(4) Consider the communication needs of the student, and in the case of a student who is deaf or hard of hearing, consider the student's language and communication needs, opportunities for direct communications with peers and professional personnel in the student's language and communication mode, academic level, and full range of needs, including opportunities for direct instruction in the student's language and communication mode; and

(5) Consider whether the student requires assistive technology devices and services as a part of the student's special education, related services or supplementary aids and services.

(c) In conducting a meeting to review, and, if appropriate, revise a student's IEP, the IEP team shall consider the factors described in subsections (a) and (b).

(d) If, in considering the special factors described in subsections (a) and (b), the IEP team determines that a student needs a particular device or service (including an intervention, accommodation, or other program modification) in order for the student to receive a free appropriate public education, the IEP team shall include a statement to that effect in the student's IEP.

(e) Nothing in this section shall be construed to require the IEP team to include information under one component of a student's IEP that is already contained under another component of the student's IEP. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.346)

§ 8-56-38 Content of IEP. (a) The IEP for each student shall include:

(1) A statement of the student's present levels of educational performance, including:

(A) How the student's disability affects the student's involvement and progress in the general curriculum; or

(B) For preschool students, as appropriate, how the disability affects the student's participation in appropriate activities;

(2) A statement of measurable annual goals, including benchmarks or short-term objectives, related to:

(A) Meeting the student's needs that result from the student's disability to enable the student to be involved in and progress in the general curriculum, or for preschool students, as appropriate, to participate in appropriate activities; and

(B) Meeting each of the student's other educational needs that result from the student's disability;

(3) A statement of the special education and related services and supplementary aids and services to be provided to the student, or on behalf of the student and a statement of the program modifications or supports for school personnel that will be provided for the student:

(A) To advance appropriately toward attaining the annual goals;

(B) To be involved and progress in the general curriculum in accordance with paragraph (1) and to participate in extracurricular and other nonacademic activities; and

(C) To be educated and participate with other students with a disability and students without a disability in the activities described in this section;

(4) An explanation of the extent, if any, to which the student will not participate with students without a disability in the regular class and in the activities described in paragraph (3);

(5) A statement of:

(A) Any individual modifications in the administration of statewide assessments of student achievement that are needed in order for the student to participate in the assessment; or

(B) If the IEP team determines that the student will not participate in a particular statewide assessment of student achievement (or part of an assessment), a statement of:

(i) Why that assessment is not appropriate for the student; and

(ii) How the student will be assessed;

(6) The projected date for the beginning of the services and modifications described in paragraph (3), and the anticipated frequency, location, and duration of those services and modifications; and

(7) A statement of:

(A) How the student's progress toward the annual goals described in paragraph (2) will be measured; and

(B) How the student's parent will be regularly informed (through such means as periodic report cards), at least as often as parents of students without a disability are informed of the student's progress, of:

(i) The student's progress toward the annual goals; and

(ii) The extent to which that progress is sufficient to enable the student to achieve the goals by the end of the year.

(b) For each student beginning at age fourteen (or younger, if determined appropriate by the IEP team), and updated annually, the IEP shall include a statement of the transition service needs of the student under the applicable components of the student's IEP that focuses on the student's courses of study (such as participation in advanced-placement courses or a vocational education program).

(c) For each student beginning at age sixteen (or younger, if determined appropriate by the IEP team), the IEP shall include a statement of needed transition services for the student as defined in section 8-56-30, including, if appropriate, a statement of the interagency responsibilities or any needed linkages.

(d) Beginning at least one year before a student reaches age eighteen, the student's IEP shall include a statement that the student has been informed of the rights under this chapter that will transfer to the student with a disability on reaching age eighteen consistent with section 8-56-81. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.347)

§ 8-56-39 Transportation. (a) The provision of transportation as a related service includes:

(1) Travel to and from school when the student is unable to utilize the regular modes of transportation;

(2) Travel between the student with a disability's school and other sites where services specified in the IEP are provided;

(3) Travel in and around the student with a disability's school and other sites where services specified in the IEP are provided; and

(4) Specialized equipment (such as special or adapted buses, lifts, and ramps), if required to provide special transportation for a student with a disability.

(b) Notwithstanding chapter 8-27-9, transportation is a related service if it meets the standards of a related service. If, pursuant to sections 8-56-30 to 8-56-42, a student with a disability is determined not to require transportation as a related service, the parent may apply for transportation as provided in

chapters 8-27 and 8-28. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.24)

§ 8-56-40 Extended school year services. (a) As used in this section, the term "extended school year services" means special education and related services:

(1) Are provided to a student with a disability:

(A) Beyond the normal school year of the school the student attends or will attend;

(B) In accordance with the student's IEP; and

(C) At no cost to the parent of the student; and

(2) Meet the standards of the department.

(b) The department shall ensure that extended school year services are available as necessary to provide a free appropriate public education, consistent with subsection (c).

(c) Extended school year services shall be provided only if the student's IEP team determines, on an individual basis, in accordance with sections 8-56-30 to 8-56-42, that the services are necessary for the provision of a free appropriate public education to the student.

(d) The IEP team shall consider factors that include the following in determining whether a student with a disability needs extended school year services:

(1) The nature of the student's disabling condition;

(2) The severity of the disabling condition;

(3) The areas of learning crucial to attaining the goal of self-sufficiency and independence from caretakers;

(4) The extent of regression caused by the interruption of educational programming; and

(5) The rate of recoupment following interruption of educational programming.

(e) In implementing the requirements of this section, the department may not:

(1) Limit extended school year services to particular categories of disability; or

(2) Unilaterally limit the type, amount, or duration of those services. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.309)

§ 8-56-41 Agency responsibilities for transition services. (a) If a participating agency, other than the department, fails to provide the transition services described in the IEP in accordance with section 8-56-38(c), the department shall reconvene the IEP team to identify alternative strategies to meet the transition objectives for the student set out in the IEP.

(b) Nothing in this chapter relieves any participating agency, including the state vocational rehabilitation agency, of the responsibility to provide or pay for any transition service that the agency would otherwise provide to students with a disability who meet the eligibility criteria of that agency. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.348)

§ 8-56-42 Individualized education program; accountability. (a) Subject to subsection (b), the department shall:

(1) Provide special education and related services to a student with a disability in accordance with the student's IEP; and

(2) Make a good faith effort to assist the student to achieve the goals and objectives or benchmarks listed in the IEP.

(b) This chapter does not require that any agency, teacher, or other person be held accountable if a student does not achieve the growth projected in the annual goals and benchmarks or objectives.

(c) Nothing in this section limits a parent's right to ask for revisions of the student's IEP or to invoke procedural safeguards if the parent feels the efforts required in subsection (a) are not being made. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.350)

SUBCHAPTER 6 PLACEMENT AND LEAST RESTRICTIVE ENVIRONMENT

§ 8-56-43 Least restrictive environment. The department shall ensure:

(1) That to the maximum extent appropriate, all students with a disability eligible pursuant to section 8-56-15, including students in public or private institutions or other care facilities, are educated with students without a disability; and

(2) That special classes, separate schooling or other removal of students with a disability from the regular educational environment occurs only if the nature or severity of the disability is such that education, including special education, in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.550)

§ 8-56-44 Continuum of alternative placements. (a) The department shall ensure that a continuum of alternative placements is available to meet the needs of students with a disability for special education and related services.

(b) The continuum required in subsection (a) shall make provision for:

(1) Alternative placements, including instruction in regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions;

(2) Supplementary services to be provided in conjunction with regular class placement; and

(3) Special Education and related services in the classroom, in the home, in hospitals, institutions, and in other settings, as appropriate to meet the needs of a student with a disability. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.551)

§ 8-56-45 Placements. In determining the educational placement of a student with a disability, including a preschool student with a disability, the department shall ensure that:

(1) The placement decision:

(A) Is made by a group of persons, including the parent, and other persons knowledgeable about the student, the meaning of the evaluation data, and the placement options; and

(B) Is made in conformity with sections 8-56-43 to 8-56-47;

(2) The student's placement:

(A) Is determined at least annually;

(B) Is based on the student's IEP; and

(C) Is as close as possible to the student's home;

(3) Unless the IEP of a student with a disability requires some other arrangement, the student is educated in the school that the student would attend if nondisabled;

(4) In selecting the least restrictive environment, consideration is given to any potential harmful effect on the student or on the quality of services that the student needs; and

(5) A student with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general curriculum. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.552)

§ 8-56-46 Nonacademic settings. In providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, counseling services, athletics, transportation, health services, recreational activities, special interest groups or clubs sponsored by the department, referrals to agencies that provide assistance to individuals with disabilities, and employment of students in and out of school, the department shall ensure that each student with a disability participates with students without a disability in those services and activities to the maximum extent appropriate to the needs of that student. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.306, 300.553)

§ 8-56-47 Residential placement. If placement in a public or private residential program is necessary to provide special education and related services to a student with a disability, the program, including non-medical care and room and board, shall be at no cost to the parent of the student. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.302)

SUBCHAPTER 7 STUDENTS WITH DISABILITIES IN PRIVATE SCHOOLS PLACED OR REFERRED BY THE DEPARTMENT

§ 8-56-48 Applicability. Sections 8-56-48 to 8-56-51 apply only to students with a disability who are or have been placed in or referred to a private school or facility by the department as a means of providing special education and related services. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.400)

§ 8-56-49 Responsibility of the department. The department shall ensure that a student with a disability who is placed in or referred to a private school or facility:

(1) Is provided special education and related services:

(A) In conformance with an IEP that meets the requirements of sections 8-56-30 to 8-56-42;

(B) At no cost to the parent;

(2) Is provided an education that meets the standards that apply to education provided by the department, including the requirements of this chapter; and

(3) Has all of the rights of a student with a disability who is served by the department. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.401)

§ 8-56-50 Private school placements. (a) Before the department places a student with a disability in, or refers a student to, a private school or facility, the department shall initiate and conduct a meeting to develop an IEP for the student in accordance with sections 8-56-37 and 8-56-38.

(b) The department shall ensure that a representative of the private school or facility attends the meeting. If the representative cannot attend, the department shall use other methods to ensure participation by the private school or facility, including individual or conference telephone calls.

(c) After a student with a disability enters a private school or facility, any meetings to review and revise the student's IEP may be initiated and conducted by the private school or facility at the discretion of the department. If the private school or facility initiates and conducts these meetings, the department shall ensure that the parent and a representative of the department:

(1) Are involved in any decision about the student's IEP; and

(2) Agree to any proposed changes in the program before those changes are implemented.

(d) Even if a private school or facility implements a student's IEP, responsibility for compliance with this chapter remains with the department. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.349)

§ 8-56-51 Placement of students by parents if a free appropriate public education is at issue. (a) This chapter does not require the department to pay for the cost of education, including special education and related services, of a student with a disability at a private school or facility if the department made a free appropriate public education available to the student and the parent elected to place the student in a private school or facility. However, the department shall include that student in the population whose needs are addressed consistent with sections 8-56-52 to 8-56-58.

(b) Disagreements between a parent and the department regarding the availability of a program appropriate for the student, and the question of financial responsibility, are subject to the due process procedures of sections 8-56-64 to 8-56-81.

(c) If the parent of a student with a disability, who previously received special education and related services under the authority of the department, enrolls the student in a private preschool, elementary or secondary school without the consent of or referral by the department, a court or a hearing officer may require the department to reimburse the parent for the cost of that enrollment if the court or hearing officer finds that the department had not made a free appropriate public education available to the student in a timely manner prior to that enrollment and that the private placement is appropriate. A parental placement may be found to be appropriate by a hearing officer or a court even if it does not meet the state standards that apply to education provided by the department.

(d) The cost of reimbursement described in subsection (c) may be reduced or denied:

(1) If:

(A) At the most recent IEP meeting that the parent attended prior to removal of the student from the public school, the parent did not inform the IEP team that the parent was rejecting the placement proposed by the department to provide a free appropriate public education to the student, including a statement of the concerns and the intent to enroll the student in a private school at public expense; or

(B) At least ten business days (including any holidays that occur on a business day) prior to the removal of the student from the public school, the parent did not give written notice to the department of the information described in subparagraph (A);

(2) If, prior to the parent's removal of the student from the public school, the department informed the parent, through the notice requirements described in section 8-56-68(a), of its intent to evaluate the student (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parent did not make the student available for the evaluation; or

(3) Upon a judicial finding of unreasonableness with respect to actions taken by the parent.

(e) Notwithstanding the notice requirement in subsection (d)(1), the cost of reimbursement may not be reduced or denied for failure to provide the notice if:

(1) The parent is illiterate or cannot write in English;

(2) Compliance with subsection (d)(1) would likely result in physical or serious emotional harm to the student;

(3) The school prevented the parent from providing the notice; or

(4) The parent had not received notice of the notice requirement in subsection (d)(1). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.403)

SUBCHAPTER 8 STUDENTS WITH A DISABILITY ENROLLED BY THEIR PARENTS IN PRIVATE SCHOOLS

§ 8-56-52 Applicability. Sections 8-56-52 to 8-56-58 apply only to students with a disability enrolled by their parents in private schools or facilities other than students with a disability covered under sections 8-56-48 to 8-56-51. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.450)

§ 8-56-53 Basic requirement; services. (a) In accordance with *20 U.S.C. Section 1412*(a)(10)(A), to the extent consistent with their number and location in the State, the department shall provide for the participation of private school students with a disability in the program assisted or carried out under *20 U.S.C. Sections 1411* - 1419, the Individuals With Disabilities Education Act, Part B.

(b) The department shall ensure that, in accordance with subsection (a) and sections 8-56-54 to 8-56-57, a services plan is developed and implemented for each private school student with a disability who has been designated to receive special education and related services under this subchapter. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.452)

§ 8-56-54 No individual right to special education and related services. No private school student with a disability has an individual right to receive some or all of the special education and related services that the student would receive if enrolled in the public school. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.454)

§ 8-56-55 Students with a disability in private schools. If a student with a disability is enrolled in a private school pursuant to sections 8-56-52 to 8-56-58 and will receive special education or related services from the department, the department shall:

(1) Initiate and conduct meetings to develop, review, and revise a services plan for the student in accordance with section 8-56-56(b);

(2) Ensure that a representative of the private school attends each meeting. If the representative cannot attend, the department shall use other methods to ensure participation by the private school, including individual or conference telephone calls. [Eff MAR 16 2000] (Auth: HRS § 296-12) (Imp: 34 C.F.R. § 300.454(c))

§ 8-56-56 Services provided. (a) The services provided private school students with a disability shall be provided by personnel meeting the same standards as personnel providing services in the public schools.

(b) Private school students with a disability may receive a different amount of services than students with a disability in public schools.

(c) No private school student with a disability is entitled to any service or to any amount of a service the student would receive if enrolled in a public school.

(d) Each private school student with a disability who has been designated to receive services under section 8-56-53 shall have a services plan that describes the specific special education and related services that the department will provide to the student in light of the services that the department has determined, through consultation with representatives of private school students with a disability, it will be made available to private school students with a disability.

(e) The services plan shall to the extent appropriate:

(1) Meet the requirements of section 8-56-38, with respect to the services provided; and

(2) Be developed, reviewed, and revised consistent with sections 8-56-31 to 8-56-37. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.455)

§ 8-56-57 Location of services. (a) The department may provide services to a private school student with a disability on-site at the student's private school, to the extent consistent with state law.

(b) If necessary for the student to benefit from or participate in the other services provided under this subchapter, a private school student with a disability shall be provided transportation:

(1) From the student's school or the student's home, to a site other than the private school; and

(2) From the service site to the private school, or to the student's home depending on the timing of the services.

(c) The department is not required to provide transportation from the student's home to the private school. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R., § 300.456)

§ 8-56-58 Complaints. (a) The procedures in sections 8-56-69 to 8-56-80 on due process hearings do not apply to a complaint that the department has failed to meet the requirements of sections 8-56-53 to 8-56-58, including the provision of services indicated on the student's services plan.

(b) The procedures in sections 8-56-69 to 8-56-80 do apply to the department's proposal or refusal to initiate or change the identification or evaluation of a private school student with a disability residing in the State who is in need of special education and related services, including the appropriate evaluation of the student in accordance with sections 8-56-6 to 8-56-14.

(c) Complaints that the department has failed to meet the requirements of sections 8-56-52 to section 8-56-58 may be filed under sections 8-56-95 to 8-56-98. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.457)


SUBCHAPTER 9 CONFIDENTIALITY OF INFORMATION

§ 8-56-59 Applicability. All of the provisions of chapter 8-34, relating to the Protection of Educational Rights and Privacy of Students and Parents, and the Family Educational Rights and Privacy Act *(20 U.S.C. Section 1232g*; 34 C.F.R. Part 99) apply to students with a disability or students suspected of having a disability and the students' parents. The additional rights provided for students with a disability under the Individuals With Disabilities Education Act *(20 U.S.C. Section 1400* et seq.; 34 C.F.R. Sections 300.560 to 300.577) shall also apply. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.560 to 300.577)

§ 8-56-60 - § 8-56-63 "Reserved."


SUBCHAPTER 10 PROCEDURAL SAFEGUARDS

§ 8-56-64 General responsibility. The department shall provide each student with a disability and the student's parent the procedural safeguards set forth in sections 8-56-64 to 8-56-94. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.500)

§ 8-56-65 Opportunity to examine records. In accordance with section 8-56-59, the department shall afford the parent of a student with a disability an opportunity to inspect and review all education records with respect to the identification, evaluation, and educational placement of the student and the provision of a free appropriate public education to the student. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.501)

§ 8-56-66 Parent participation in meetings; placement decisions. (a) The department shall afford the parent of a student with a disability the opportunity to participate in meetings with respect to:

(1) The identification, evaluation, and educational placement of the student; and

(2) The provision of free appropriate public education to the student.

(b) The department shall notify the parent of a student with a disability of the meetings described in subsections (a) and (e) in accordance with section 8-56-36 (a) and section 8-56-36 (b) on IEP meetings to ensure that the parent of a student with a disability has the opportunity to participate in the meetings.

(c) A meeting does not include informal or unscheduled conversations involving department personnel and conversations on issues such as teaching methodology, lesson plans, or coordination of service provision if those issues are not addressed in the student's IEP. A meeting also does not include preparatory activities that department personnel engage in to develop a proposal or response to a parent proposal that will be discussed at a later meeting with the parent.

(d) The department shall make reasonable efforts to ensure that the parent understands, and is able to participate in, any group discussions at the meetings, including arranging for an interpreter for a parent with deafness, or whose native language is other than English.

(e) The department shall ensure that the parent of a student with a disability is a member of any group that makes decisions on the educational placement of the student.

(1) If neither parent can participate in a meeting in which a decision is to be made relating to the educational placement of the student, the department shall use other methods to ensure participation, including individual or conference telephone calls, or video conferencing.

(2) A placement decision may be made by a group without the involvement of the parent, if the department is unable to obtain the parent's participation in the decision. In this case, the department shall have a record of its attempt to ensure involvement, including information that is consistent with the requirements of section 8-56-36(g) on IEP meetings. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.501)

§ 8-56-67 Independent education evaluation. (a) The parent of a student with a disability has the right to obtain an independent educational evaluation of the student, subject to subsections (d) through (h).

(b) The department shall provide to a parent, on request, information about where an independent educational evaluation may be obtained, and the agency criteria applicable for independent educational evaluations as set forth in subsections (g) and (h).

(c) For the purposes of this section:

(1) "Independent educational evaluation" means an evaluation conducted by a qualified examiner who is not employed by the department.

(2) "Public expense" means that the department either pays for the full cost of the evaluation or assessment or ensures that the evaluation or assessment is otherwise provided at no cost to the parent.

(d) A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the department.

(1) If a parent requests an independent educational evaluation at public expense, the department shall, without unnecessary delay, either:

(A) Initiate a hearing under section 8-56-72 to show that its evaluation or assessment is appropriate; or

(B) Ensure an independent educational evaluation is provided at public expense unless the department demonstrates in a hearing under section 8-56-72 that the independent educational evaluation obtained by the parent did not meet department criteria.

(2) If the department initiates a hearing and the final decision is that the department's evaluation and assessment are appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

(3) If a parent requests an independent educational evaluation, the department may ask for the parent's reason why the parent objects to the public evaluation or assessment. However, the explanation by the parent may not be required and the department may not unreasonably delay either providing the independent educational evaluation at public expense or initiating a due process hearing to defend the public evaluation and assessment.

(e) If the parent obtains an independent educational evaluation at private expense, the results of the independent educational evaluation:

(1) Shall be considered by the department, in any decision made with respect to the provision of a free appropriate public education to the student; and

(2) May be presented as evidence at a hearing regarding the student

(f) If a hearing officer requests an independent educational evaluation as part of a hearing, the cost of the evaluation shall be at public expense.

(g) If an independent educational evaluation is at public expense, the criteria under which the evaluation is obtained, including the location of the evaluation and the qualifications of the examiner, shall be the same as the criteria that the department uses when it initiates an evaluation, to the extent those criteria are consistent with the parent's right to an independent educational evaluation.

(h) Except for the criteria described in subsection (g), the department may not impose conditions or timelines related to obtaining an independent educational evaluation at public expense. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.502)

§ 8-56-68 Prior notice by the department; content of notice. (a) Written notice that meets the requirements of subsection (c) shall be given to the parent of a student with a disability a reasonable time before the department:

(1) Proposes to initiate or change the identification, evaluation, or educational placement of the student or the provision of a free appropriate public education to the student; or

(2) Refuses to initiate or change the identification, evaluation, or educational placement of the student or the provision of a free appropriate public education to the student.

(b) If the notice described under subsection (a) relates to an action proposed by the department that also requires parental consent under section 8-56-70, the department may give notice at the same time it requests parent consent.

(c) The notice required under subsection (a) shall include:

(1) A description of the action proposed or refused by the department;

(2) An explanation of why the department proposes or refuses to take the action;

(3) A description of any other options that the department considered and the reasons why those options were rejected;

(4) A description of each evaluation procedure, test, record, or report the department used as a basis for the proposed or refused action;

(5) A description of any other factors that are relevant to the department's proposal or refusal;

(6) A statement that the parent of a student with a disability has protection under the procedural safeguards of this chapter; and

(7) Sources for the parent to contact to obtain assistance in understanding the provisions of this chapter.

(d) The notice required under subsection (a) shall be:

(1) Written in language understandable to the general public; and

(2) Provided in the native language of the parent or other mode of communication used by the parent, unless it is clearly not feasible to do so.

(e) If the native language or other mode of communication of the parent is not a written language or when the written native language translation is not available, the department shall take steps to ensure:

(1) That the notice is translated orally or by other means to the parent in the parent's native language or other mode of communication;

(2) That the parent understands the content of the notice; and

(3) That there is written evidence that the requirements in this subsection have been met. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.503)

§ 8-56-69 Procedural safeguards notice. (a) A copy of the procedural safeguards available to the parent of a student with a disability shall be given to the parent, at a minimum:

(1) Upon initial referral for evaluation;

(2) Upon each notification of an IEP meeting;

(3) Upon giving the parent a written notice for any purpose under section 8-56-68 (a) and

(4) Upon receipt of a request for due process under section 8-56-72.

(b) The procedural safeguards notice shall include a full explanation of all of the procedural safeguards available under sections 8-56-51, 8-56-59, and 8-56-64 to 8-56-94 and the department's complaint procedures under sections 8-56-95 to 8-56-98 relating to:

(1) Independent educational evaluation;

(2) Prior written notice;

(3) Parental consent;

(4) Access to educational records;

(5) Opportunity to initiate due process hearings;

(6) The student's placement during pendency of due process proceedings;

(7) Procedures for a student with a disability who is subject to placement in an interim alternative educational setting;

(8) Requirements for unilateral placement by parents of students in private schools at public expense;

(9) Mediation;

(10) Due process hearings, including requirements for disclosure of evaluation results and recommendations;

(11) Civil actions;

(12) Attorneys' fees; and

(13) The department's complaint procedures under sections 8-56-95 to 8-56-98, including a description of how to file a complaint and the timelines under those procedures.

(c) The notice required under subsection (a) shall be:

(1) Written in language understandable to the general public; and

(2) Provided in the native language of the parent or other mode of communication used by the parent, unless it is clearly not feasible to do so.

(3) If the native language or other mode of communication of the parent is not a written language or when the written native language translation is not available, the department shall take steps to ensure:

(A) That the notice is translated orally or by other means to the parent in the parent's native language or other mode of communication;

(B) That the parent understands the content of the notice; and

(C) That there is written evidence that the requirements in this subsection have been met. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.504)

§ 8-56-70 Parental consent. (a) Subject to subsections (b), (d) and (e), informed parental consent shall be obtained before:

(1) Conducting an initial evaluation or reevaluation involving the administration of tests or other assessment materials pursuant to section 8-56-9; and

(2) The initial provision of special education and related services to a student with a disability.

(b) Parental consent is not required before:

(1) Reviewing existing data as part of an evaluation or a reevaluation; or

(2) Administering a test or other evaluation that is administered to all students unless, before administration of that test or evaluation, consent is required of parents of all students.

(c) Consent for initial evaluation under subsection (a) (1) may not be construed as consent for initial placement under subsection (a) (2).

(d) If the parent of a student with a disability refuses consent for initial evaluation or a reevaluation as described in subsection (a), the department may continue to pursue those evaluations by using the due process procedures under sections 8-56-72 to 8-56-75, or the mediation procedures under section 8-56-71.

(e) Informed parental consent need not be obtained for reevaluation if the department can demonstrate that it has taken reasonable measures to obtain that consent, and the student's parent has failed to respond.

(1) To meet the reasonable measures requirement in this subsection, the department shall use procedures consistent with those in section 8-56-36(g) on IEP meetings.

(f) If a parent revokes consent, the revocation of consent shall be effective on the date the department receives notice of the revocation, and does not negate an action that occurred after consent was given, but before receipt of the notice of revocation.

(g) The department may not use a parent's refusal to consent to evaluation or placement under subsection (a) to deny the parent or the student any other service, benefit, or activity of the department, except as required in this chapter. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.505)

§ 8-56-71 Mediation. (a) Parties to special education disputes are encouraged to seek resolution through mediation. The mediation process is intended to be an informal process conducted in a nonadversarial atmosphere to

resolve issues relating to the identification, evaluation, or educational placement of a student with a disability or the provision of a free appropriate public education to the student.

(b) The department shall offer mediation to parties to disputes involving any matter described in section 8-56-68(a) to allow the parties to resolve the disputes whenever a hearing is requested under sections 8-56-72 or 8-56-93.

(c) The department shall ensure the mediation process:

(1) Is voluntary on the part of the parties;

(2) Is not used to deny or delay a parent's right to a due process hearing under sections 8-56-72 or 8-56-93_to deny any other right afforded under this chapter; and

(3) Is conducted by a qualified and impartial mediator who is trained in effective mediation techniques.

(d) A party's participation in a mediation conference shall not be a prerequisite to the right to a due process hearing under sections_8-56-72 or 8-56-93.

(e) Each session in the mediation process shall include the party or party representative with the authority to resolve the issues that are the basis for the request for a hearing under sections_8-56-72 or 8-56-93.

(f) Each session in the mediation process shall be scheduled in a timely manner and shall be held in a location that is convenient to the parties to the dispute.

(g) An agreement by the parties to the dispute in the mediation process shall:

(1) Be to the satisfaction of both parties;

(2) Not conflict with state or federal law; and

(3) Be set forth in a written mediation agreement.

(h) Discussions that occur during the mediation process shall be confidential and may not be used as evidence in any subsequent due process hearings or civil proceedings and the parties to the mediation process shall be required to sign a confidentiality pledge prior to the commencement of the process.

(i) If the mediation process fails to resolve the issue or issues to the satisfaction of the parties, the mediator may assist the party requesting the hearing to identify the precise issue or issues to be heard in the due process hearing and the relief the party is seeking.

(j) An individual who serves as a mediator under this section:

(1) May not be an employee of the department; and

(2) Shall not have a personal or professional conflict of interest.

(3) Is not an employee of the department solely because the mediator is paid by the department to serve in that capacity.

(k) The department shall:

(1) Maintain a list of individuals who are qualified mediators and knowledgeable in laws and regulations relating to the provision of special education and related services;

(2) Assume the cost of the mediation process; and

(3) Select the mediator on a random (e.g., a rotation) basis from the list described in paragraph (1).

(1) Notwithstanding the procedures for mediation set forth in this section, the department and the parent may meet informally at any time to resolve any issue or issues through facilitation or conciliation.

(1) Such facilitation or conciliation:

(A) Shall be voluntary, and may not deny or delay a parent's right to a due process hearing under sections 8-56-72 or 8-56-93 or deny any other right afforded under this chapter; and

(B) Shall be at no cost to the parent.

(2) An agreement reached by the parties through facilitation or conciliation shall be to the satisfaction of both parties, meet the standards and include the participants required to make the decision in accordance with sections 8-56-6 to 8-56-29; 8-56-30 to 8-56-42; and 8-56-43 to 8-56-47. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.506)

§ 8-56-72 Impartial due process hearing. (a) A parent or the department may initiate a hearing on any of the matters described in section 8-56-68 (a) (relating to the identification, evaluation or educational placement of a student with a disability, or the provision of a free appropriate public education to the student).

(b) The hearing officer may allow other issues outside the scope of this chapter to be joined in the hearing, if the hearing officer determines the issue(s) raised by the party substantively impact(s) on the allowable issues under subsection (a).

(c) When a hearing is initiated under subsection (a), the department shall inform the parents of the availability of mediation described in section 8-56-71.

(d) The department shall inform the parent of any free or low-cost legal and other relevant services available in the area.

(e) Upon receipt of a request for a due process hearing, the department shall:

(1) Notify the parties of:

(A) The receipt of the request for a hearing;

(B) The date by which the decision must be rendered and mailed to meet the timelines set forth in section 8-56-77; and

(C) The selection process for the impartial hearing officer and contact information.

(2) Provide the notice of procedural safeguards to the parents in accordance with section 8-56-69; and

(3) Inform the parent of the availability of an interpreter, if needed.

(f) The department shall be responsible for the conduct of the hearing described in subsection (a). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.507)

§ 8-56-73 Notice of request for a hearing. (a) All requests for a due process hearing shall be filed in writing with the district superintendent of the student's district of enrollment. The party initiating a due process hearing shall provide the other party to the hearing with a copy of the request at the same time as the request is filed with the district superintendent.

(b) The party, or party representative, initiating a due process hearing shall provide notice (which shall remain confidential) in the request for a hearing under subsection (a).

(1) The notice required in this subsection shall include:

(A) The name of the student;

(B) The address of the residence of the student;

(C) The name of the school the student is attending;

(D) A description of the nature of the problem of the student relating to the proposed or refused initiation or change, including facts relating to the problem; and

(E) A proposed resolution of the problem except, for the parent, the proposed resolution to the extent known and available to the parent at the time.

(c) The department shall provide a model form, upon request, to the parent to assist the parent in filing a request for a due process hearing that includes the information required in subsection (b) (1).

(d) The department may not deny or delay a parent's right to a due process hearing for failure to provide the notice required in subsection (b) (1). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.500, 300.507)

§ 8-56-74 Impartial hearing officer. (a) A hearing may not be conducted:

(1) By a person who is an employee of the department or any state agency that is involved in the education or care of the student; or

(2) By any person having a personal or professional interest that would conflict with the person's objectivity in the hearing.

(b) A person who otherwise qualifies to conduct a hearing under subsection (a) is not an employee of the department solely because the person is paid by the department to serve as the hearing officer.

(c) The department shall keep a list of the persons who serve as hearing officers. The list shall include a statement of the qualifications of each of those persons. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.508)

§ 8-56-75 Pre-hearing and hearing. (a) The hearing officer shall conduct a pre-hearing conference. The hearing officer may conduct all or part of the pre-hearing conference by telephone if both parties or party representatives have an opportunity to participate in and to hear the entire proceeding while it is taking place. The pre-hearing conference shall include the identification of the precise issues to be heard under section 8-56-72 (a).

(b) Hearings conducted pursuant to section 8-56-72 shall not be conducted according to the technical rules of evidence and those related to witnesses. All testimony shall be under oath or affirmation which the hearing officer is empowered to administer.

(c) Any party to a hearing conducted pursuant to section 8-56-72 has the right to:

(1) Be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of students with a disability;

(2) Present evidence and confront, cross-examine, and compel the attendance of witnesses;

(3) Prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing;

(4) Obtain a written, or, at the option of the parents, electronic, verbatim record of the hearing; and

(5) Obtain written, or, at the option of the parents, electronic findings of fact and decisions.

(d) At least five business days prior to a hearing conducted pursuant to section 8-56-72, each party shall disclose to all other parties all evaluations completed by that date and recommendations based on the offering party's evaluations that the party intends to use at the hearing

(e) A hearing officer may bar any party that fails to comply with subsection (d) from introducing the relevant evaluation or recommendation at the hearing without the consent of the other party.

(f) The parent involved in the hearings shall be given the right to:

(1) Have the student who is the subject of the hearing present;

(2) Open the hearing to the public; and

(3) Receive the record of the hearing and the findings of fact and decisions described in subsections (c)(4) and (c)(5) at no cost to the parent. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.500, 300.509)

§ 8-56-76 Hearing decision; finality. (a) Except as provided in sections 8-56-85 and 8-56-90(d), the hearing decision shall be based on the preponderance of the evidence.

(b) A decision made in a hearing conducted pursuant to section 8-56-72 is final, except that any party involved in such hearing may appeal such decision under section 8-56-78. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.510, 300.512)

§ 8-56-77 Timelines and convenience of hearings. (a) The department shall ensure that not later than forty-five days after the receipt of a request for a hearing:

(1) A final decision is reached in the hearing; and

(2) A copy of the decision is mailed to each of the parties.

(b) Except as provided in section 8-56-93 (a)(2), a hearing officer may grant for good cause specific extensions of time beyond the period set out in subsection (a) at the request of either party. Any extension shall be documented in writing and extend the time for rendering a final decision for a period only equal to the length of the extension.

(c) Each hearing shall be conducted at a time and place that is reasonably convenient to the parent and the student involved. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.511)

§ 8-56-78 Civil action. Any party aggrieved by the findings and decision made under sections 8-56-72 and 8-56-93 has the right to bring a civil action within thirty days of the receipt of the findings and decision with respect to the complaint presented pursuant to sections 8-56-72 or 8-56-93. The action may be brought in any state court of competent jurisdiction or in the district court of the United States without regard to the amount in controversy. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.512)

§ 8-56-79 Student's status during proceedings. (a) Except as provided in section 8-56-91 on discipline, during the pendency of any administrative or judicial proceeding regarding a complaint under section 8-56-72, unless the department and the parent of the student agree otherwise, the student involved in the complaint shall remain in the current educational placement.

(b) If the complaint involves an application for initial admission to public school, the student, with the consent of the parent, shall be placed in the public school until the completion of all of the proceedings.

(c) If the decision of a hearing officer in a due process hearing agrees with the student's parent that a change of placement is appropriate, that placement shall be treated as an agreement between the department and the parent for purposes of subsection (a). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.514)

§ 8-56-80 Surrogate parents. (a) The department shall ensure that the rights of a student are protected when:

(1) No parent can be identified;

(2) The department, after reasonable efforts, cannot discover the whereabouts of a parent; or

(3) The student is a ward of the State under the laws of the State.

(b) The duty of the department under subsection (a) includes the assignment of an individual to act as a surrogate parent. This shall include a method:

(1) For determining whether a student needs a surrogate parent; and

(2) For assigning a surrogate parent to the student.

(c) The department shall ensure that a person selected as a surrogate:

(1) Is not an employee of the department, or any other agency that is involved in the education or care of the student, except that an individual who is an employee of a private agency that only provides non-educational care for the student and who meets the standards in this subsection may be selected;

(2) Has no interest that conflicts with the interest of the student the surrogate parent represents; and

(3) Has knowledge and skills that ensure adequate representation of the student.

(d) An individual who otherwise qualifies to be a surrogate parent under subsection (c) is not an employee of the agency solely because the individual is paid by the agency to serve as a surrogate parent.

(e) The surrogate parent may represent the student in all matters relating to:

(1) The identification, evaluation, and educational placement of the student; and

(2) The provision of a free appropriate public education to the student. [Eff MAR 16 2000] (Auth: HRS §  302A-1112) (Imp: 34 C.F.R. §  300.515)

§  8-56-81 Transfer of parental rights at age of majority. (a) When a student with a disability reaches eighteen years of age, the rights accorded to the parent transfer to the student, except for a student with a disability who has been determined to be incompetent under state law. The department shall provide any notice required by this chapter to both the student with a disability and the parent. All other rights accorded to the parent under this chapter transfer to the student with a disability.

(b) Whenever there is a transfer of rights pursuant to subsection (a), the department shall notify the student with a disability and the parent of the transfer of rights. [Eff MAR 16 2000] (Auth: HRS §  302A-1112) (Imp: 34 C.F.R. §  300.517)


SUBCHAPTER 11 DISCIPLINE PROCEDURES

§  8-56-82 Definitions. As used in this subchapter:

"Controlled substance" means a drug or other substance identified under schedules I, II, III, IV, or V in section 202(c) of the Controlled Substances Act *(21 U.S.C. Section 812*(c)).

"Illegal drug":

(1) Means a controlled substance; but

(2) Does not include such a substance that is legally possessed or used under the supervision of a licensed health-care professional or that is legally possessed or used under any other authority under the Controlled Substances Act *(21 U.S.C. 812*(c)) or under any other provision of federal law.

"Substantial evidence" means beyond a preponderance of the evidence.

"Weapon" means a weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury, except that such term does not include a pocket knife with a blade of less than 2 1/2 inches in length, as defined in paragraph (2) of the first subsection (g) of section 930 of title 18, United States Code. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.519)

§ 8-56-83 Change of placement for disciplinary removals. For purposes of removals of a student with a disability from the student's current educational placement under sections 8-56-82 to 8-56-94, the following general requirements apply to the disciplinary action.

(a) Disciplinary action that results in the suspension, including crisis suspension, or other removal of a student with a disability from the student's current educational placement for ten consecutive school days or fewer at a time or for each series of short-term suspensions, including crisis suspensions, or removals for ten cumulative school days or fewer in a given school year:

(1) Is not considered a change in placement and subject to the requirements of this subchapter or section 8-56-45.

(2) Shall be in accordance with chapter 8-19.

(b) Disciplinary action that results in the suspension, including crisis suspension, or other removal of a student with a disability from the student's current educational placement for more than ten consecutive school days at a time or for each series of short-term suspensions, including crisis suspensions, or removals for more than ten cumulative school days in a given school year:

(1) Is a change of placement, and shall be in accordance with section 8-56-45; or

(2) Shall be in accordance with this subchapter and chapter 8-19, including the procedures and standards for regular school discipline if the student is referred for discipline after the requirements of this subchapter are met. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.519)

§ 8-56-84 Authority of school personnel. (a) School personnel may order:

(1) Disciplinary action that results in the suspension, including crisis suspension, or other removal of a student with a disability from the student's current educational placement for not more than ten consecutive school days at a time or for not more than ten cumulative school days for each series of short-term suspensions, including crisis suspensions, or removals in a given school year for any violation of school rules:

(A) To the extent the suspension or other removal would be applied to students without a disability under chapter 8-19; and

(B) Consistent with the authority and procedures in chapter 8-19; and

(2) A change in placement of a student with a disability to an appropriate interim alternative educational setting pursuant to section 8-56-86(e) and (f) for the same amount of time that a student without a disability would be subject to discipline, but for not more than forty-five days, if:

(A) The student carries or possesses a weapon to or at school, on school premises, or to or at a school function under the jurisdiction of the department; or

(B) The student knowingly possesses or uses illegal drugs or sells or solicits the sale of a controlled substance while at school or a school function under the jurisdiction of the department.

(b) School personnel shall not order disciplinary action that results in the suspension, including crisis suspension, or other removal of a student with a disability from the student's current educational placement if that suspension or removal is for more than ten consecutive school days at a time or for more

than ten cumulative school days for each series of short-term suspensions, including crisis suspensions, or removals in a given school year unless:

(1) The removal to an interim alternative educational setting is authorized under subsection (a) (2) on the removal of a student with a disability for weapon, drug and controlled substance offenses.

(A) Nothing in this section prohibits a student from being placed in a forty-five day interim alternative education setting for subsequent misconduct that meets the standards in subsection (a) (2) and a free appropriate public education is provided in accordance with section 8-56-86 (e) and (f); or

(2) The IEP team determines, for suspensions or removals for more than ten consecutive school days at a time or for each series of short-term suspensions for more than ten cumulative school days in a given school year that the behavior is not a manifestation of the disability in accordance with section 8-56-88; or

(3) The change in placement:

(A) Is made by a group of persons, including the parent and other persons knowledgeable about the student, the evaluation data and the placement options in accordance with section 8-56-45;

(B) Is in accordance with the procedural safeguards in sections 8-56-64 to 8-56-81, and includes the provision of a prior written notice to the parent of the student with a disability under section 8-56-68(a) of the proposed or refused change of placement and the parent does not request a hearing pursuant to section 8-56-72; and

(C) Provides a free appropriate public education to the student; or

(4) The basis for a crisis suspension pursuant to chapter 8-19 exists, and school personnel determine that the crisis suspension, together with the previous days of suspension and disciplinary removal, does not subject the student with a disability to a series of removals that constitute a pattern because they cumulate to more than 10 school days in a school year, and because of factors such as the length of each removal, the total amount of time the student is removed, and the proximity of the removals one to another.

(c) If school personnel determine the authority for a crisis suspension exists pursuant to paragraph (b) (4):

(1) The crisis suspension shall be in accordance with chapter 8-19-7, including the student's right to resume attendance at school as soon as the exclusion pursuant to chapter 8-19-7 (a) is no longer necessary;

(2) The student with a disability shall be provided a free appropriate public education in accordance with section 8-56-86 (d) during the period of the crisis suspension;

(3) The IEP team shall be convened immediately after the initiation of the crisis suspension to conduct the functional behavioral assessment in accordance with section 8-56-87;

(4) If the student's parent disagrees with the determination under subsection (b) (4), the parent may request a hearing pursuant to section 8-56-90. For purposes of section 8-56-79 on the student's status during the proceedings, the current placement is the free appropriate public education provided in accordance with subsection (c) (2) until the end of the crisis suspension, at which time the student shall resume attendance at school; and

(5) For purposes of subsequent disciplinary action, the school days of crisis suspension shall be included as days of suspension under section 8-56-83 (b). Nothing in this paragraph prohibits a student from being the subject of a subsequent crisis suspension in a given school year if the requirements of chapter 8-19, subsection (b) (4), and this subsection are met. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.500, 300.520)

§ 8-56-85 Authority of hearing officer. (a) A hearing officer may order a change in the placement of a student with a disability to an appropriate interim alternative educational setting for not more than forty-five days if the hearing officer, in an expedited due process hearing:

(1) Determines that the department has demonstrated by substantial evidence that maintaining the current placement of the student is substantially likely to result in injury to the student or to others;

(2) Considers the appropriateness of the student's current placement;

(3) Considers whether the department has made reasonable efforts to minimize the risk of harm in the student's current placement, including the use of supplementary aids and services; and

(4) Determines that the interim alternative educational setting that is proposed by school personnel who have consulted with the student's special education teacher meets the requirements of section 8-56-86 (f). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.521)

§ 8-56-86 Free appropriate public education for students suspended or dismissed from school. (a) The department need not provide services during periods of suspension or removal under section 8-56-84(a) (1) to a student with a disability who has been removed from the student's current placement for not more than ten consecutive or cumulative school days in a given school year.

(b) In the case of a student with a disability who has been suspended or otherwise removed for disciplinary reasons from the student's current placement for more than ten consecutive or cumulative school days in the same school year, the department shall provide services to the extent required under subsections (c) to (f), as appropriate.

(c) More than ten school days. In the case of a student with a disability who has been suspended, or otherwise removed for disciplinary reasons, from the student's current placement for more than ten consecutive or cumulative school days in a given school year, the services shall, beginning on the eleventh school day of the suspension or other removal and for the remainder of the suspension or other removal and for any subsequent suspension or other removal for more than ten consecutive school days or for any subsequent series of short-term suspensions for more than ten cumulative school days in a given school year:

(1) Be determined by the student's IEP team; and

(2) Be provided to the extent necessary to enable the student to appropriately progress in the general curriculum and appropriately advance toward achieving the goals set out in the student's IEP.

(d) Subsequent suspension of ten school days or fewer. In the case of a student with a disability who has been suspended from the student's current placement for more than ten consecutive or cumulative school days in a given school year, the services shall, for any subsequent suspensions for ten consecutive school days or fewer or for any subsequent series of short-term suspensions for ten cumulative school days or fewer in a given school year:

(1) Be determined by school personnel, in consultation with the student's special education teacher; and

(2) Be provided to the extent necessary to enable the student to appropriately progress in the general curriculum and appropriately advance toward achieving the goals set out in the student's IEP.

(e) Determination of interim alternative educational setting. In the case of a student with a disability who has been removed from the student's current placement for weapon, drug or controlled substance offenses under section 8-56-84 (a) (2) the interim alternative educational setting in which a student may be placed shall be determined by the IEP team.

(f) Standards for interim alternative educational setting. The interim alternative educational setting under subsection (e) and the setting in which the student is placed based on a hearing officer's determination that maintaining the current placement of the student is substantially likely to result in injury to the student or others under section 8-56-85 shall:

(1) Be selected so as to enable the student to progress in the general curriculum, although in another setting, and to continue to receive those services and modifications, including those described in the student's current IEP, that will enable the student to meet the goals set out in that IEP; and

(2) Include services and modifications to address the behavior described in sections 8-56-84 (a) (2) or 8-56-85, that are designed to prevent the behavior from recurring. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.121(d), 300.522)

§ 8-56-87 Functional behavioral assessment. (a) If a student with a disability is suspended or otherwise removed for disciplinary reasons from the student's current educational placement for more than ten consecutive or cumulative school days in a given school year, either before or not later than ten business days after taking such action, including the action described in section 8-56-84 (a) (2) for weapon, drug or controlled substance offenses:

(1) If the department did not conduct a functional behavioral assessment and implement a behavioral intervention plan for the student before the behavior that resulted in the removal, the department shall convene an IEP meeting to determine how to conduct the functional behavioral assessment and develop an assessment plan. As soon as practicable after developing the assessment plan and conducting the functional behavioral assessment, the department shall convene an IEP meeting to develop appropriate behavioral interventions to address that behavior and shall implement those interventions.

(2) If the student already has a behavioral intervention plan, the IEP team shall meet to review the plan and its implementation, and, modify the plan and its implementation, as necessary, to address the behavior.

(b) If a student with a disability who has a behavioral intervention plan and who has been suspended or otherwise removed for disciplinary reasons from the student's current educational placement for more than ten school days in a given school year is subsequently suspended or removed for disciplinary reasons for ten consecutive school days or fewer, or for any subsequent series of short-term suspensions or other removals for disciplinary reasons for ten cumulative school days or fewer in a given school year, the IEP team members shall review the behavioral intervention plan and its implementation to determine if modifications are necessary.

(c) If one or more of the IEP team members believe that modifications are needed, the team shall meet to modify the plan and its implementation, to the extent the team determines necessary.

(d) If the student with a disability is suspended or removed for disciplinary reasons from the student's current educational placement for ten consecutive or cumulative school days or fewer in a given school year, the activities in this section need not be conducted. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.520)

§ 8-56-88 Manifestation determination review.

(a) If an action is contemplated involving the removal of a student with a disability from the student's current educational placement under section 8-56-84 (a) (2) for weapons, drug or controlled substance offenses or section 8-56-85 under the authority of a hearing officer or involving the suspension or other removal of a student with a disability from the student's current educational placement for disciplinary reasons for more than ten consecutive school days at a time or for each series of short-term suspensions for more than ten cumulative school days in a given school year for engaging in other behavior that violated any rule or code of conduct of the department that applies to all students:

(1) Not later than the date on which the decision to take that action is made, the parent shall be notified of that decision and provided the procedural safeguards notice described in section 8-56-69; and

(2) Immediately, if possible, but in no case later than ten school days after the date on which the decision to take that action is made, a review shall be conducted of the relationship between the student's disability and the behavior subject to the disciplinary action.

(b) If the student is suspended or removed for disciplinary reasons from the student's current educational placement for ten consecutive school days or fewer at a time or for each series of short-term suspensions for ten cumulative school days or fewer in a given school year the review in subsection (a) need not be conducted.

(c) The review described in subsection (a) shall be conducted by the IEP team as set forth in section 8-56-34 and other qualified personnel in a meeting.

(d) In carrying out a review described in subsection (a), the IEP team and other qualified personnel may determine that the behavior of the student was not a manifestation of the student's disability only if the IEP team:

(1) First consider, in terms of the behavior subject to disciplinary action, all relevant information, including:

(A) Evaluation and diagnostic results, including the results or other relevant information supplied by the parent of the student;

(B) Observations of the student; and

(C) The student's IEP and placement; and

(2) Then determine that:

(A) In relationship to the behavior subject to disciplinary action, the student's IEP and placement were appropriate and the special education services, supplementary aids and services, and behavior intervention strategies were provided consistent with the student's IEP and placement;

(B) The student's disability did not impair the ability of the student to understand the impact and consequences of the behavior subject to disciplinary action; and

(C) The student's disability did not impair the ability of the student to control the behavior subject to disciplinary action.

(e) If the IEP team and other qualified personnel determine that any of the standards in subsection (d) (2) were not met, the behavior shall be considered a manifestation of the student's disability.

(f) The review described in subsection (a) may be conducted at the same IEP meeting that is convened under section 8-56-87.

(g) If in the review in subsections (c) and (d), the IEP team identify deficiencies in the student's IEP or placement or in their implementation, the department shall take immediate steps to remedy those deficiencies. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.523)

§ 8-56-89 Determination that behavior was not manifestation of disability. (a) If the result of the review described in section 8-56-88 is a determination, consistent with section 8-56-88(e), that the behavior of the student with a disability was not a manifestation of the student's disability, the relevant disciplinary procedures applicable to students without a disability under chapter 8-19 may be applied to the student in the same manner in which they would be applied to students without a disability, except that the student with a disability shall be provided a free appropriate public education pursuant to section 8-56-86.

(b) If the department initiates disciplinary procedures under chapter 8-19, the department shall ensure that the special education and disciplinary records

of the student with a disability are transmitted for consideration by the person or persons making the final determination regarding the disciplinary action.

(c) Except as provided in section 8-56-91, section 8-56-79 on the student's status during the pendency of administrative or judicial proceedings applies if a parent requests a hearing to challenge a determination, made through the review described in section 8-56-88, that the behavior of the student was not a manifestation of the student's disability. [Eff MAR 16 2000) (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.524)

§ 8-56-90 Parent appeal. (a) If the student's parent disagrees with a determination that the student's behavior was not a manifestation of the student's disability or with any decision regarding placement under this subchapter, the parent may request a due process hearing.

(b) The department shall arrange for an expedited hearing in any case described in this section when requested by a parent.

(c) In reviewing a decision with respect to the manifestation determination, the hearing officer shall determine whether the department has demonstrated that the student's behavior was not a manifestation of the student's disability consistent with the requirements of section 8-56-88 (e).

(d) In reviewing a decision under section 8-56-84 (a) (2) to place the student in an interim alternative educational setting for weapon, drug and controlled substance offenses, the hearing officer shall apply the standards in section 8-56-85 used to determine whether maintaining the current placement is substantially likely to result in injury to the student or to others. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.525)

§ 8-56-91 Placement in interim alternative educational setting during appeals. (a) If a parent requests a hearing regarding a disciplinary action described in section 8-56-84(a) (2) or section 8-56-85 to challenge the interim alternative educational setting or the manifestation determination, the student shall remain in the interim alternative educational setting pending the decision of the hearing officer or until the expiration of the time period provided for in sections 8-56-84(a) (2) or 8-56-85, whichever occurs first, unless the parent and the department agree otherwise.

(b) If a student is placed in an interim alternative educational setting pursuant to sections 8-56-84(a) (2) or 8-56-85 and school personnel propose to change the student's placement after expiration of the interim alternative placement, during the pendency of any proceeding to challenge the proposed change in placement the student shall remain in the current placement (the student's placement prior to the interim alternative educational setting), except as provided in subsection (c).

(c) If school personnel maintain that it is dangerous for the student to be in the current placement (placement prior to removal to the interim alternative education setting) during the pendency of the due process proceedings, the department may request an expedited due process hearing.

(1) In determining whether the student may be placed in the interim alternative educational setting or in another appropriate placement ordered by the hearing officer, the hearing officer shall apply the standards in section 8-56-85.

(2) A placement ordered pursuant to this subsection may not be longer than forty-five days. If, at the expiration of the forty-five days, school personnel maintain that the student is still dangerous, the procedure in this subsection may be repeated, as necessary. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.526)

§ 8-56-92 Protections for students not yet eligible for special education and related services. (a) A student who has not been determined to be eligible for special education and related services under this chapter and who has engaged in behavior that violated any rule or code of conduct of the department including any behavior described in sections 8-56-84 and 8-56-85, may assert any

of the protections provided for in this chapter if the department had knowledge (as determined in accordance with subsection (b)) that the student was a student with a disability before the behavior that precipitated the disciplinary action occurred.

(b) The department shall be deemed to have knowledge that a student is a student with a disability if:

(1) The parent of the student has expressed concern in writing (or orally if the parent does not know how to write or has a disability that prevents a written statement) to personnel of the appropriate educational agency that the student is in need of special education and related services;

(2) The behavior or performance of the student demonstrates the need for these services in accordance with section 8-56-15 on eligibility;

(3) The parent of the student has requested an evaluation of the student pursuant to sections 8-56-6 to 8-56-13; or

(4) The teacher of the student, or other personnel of the department, has expressed concern about the behavior or performance of the student to personnel of the department in accordance with sections 8-56-4 and 8-56-5 on child find and referral.

(c) The department would not be deemed to have knowledge under subsection (a) if as a result of receiving the information specified in that subsection, the department:

(1) Either:

(A) Conducted an evaluation under sections 8-56-6 to 8-56-14, and determined that the student was not a student with a disability under this chapter; or

(B) Determined that an evaluation was not necessary; and

(2) Provided notice to the student's parent of its determination under paragraph (1), consistent with section 8-56-68 on prior notice.

(d) If the department does not have knowledge that a student is a student with a disability in accordance with subsection (b) prior to taking disciplinary measures against the student, the student may be subjected to the same disciplinary measures as measures applied to students without a disability who engaged in comparable behaviors consistent with subsection (d).

(e) If a request is made for an evaluation of a student during the time period in which the student is subjected to disciplinary measures under sections 8-56-84 or 8-56-85, the evaluation shall be conducted in an expedited manner.

(1) Until the evaluation is completed, the student remains in the educational placement determined by school authorities, which can include suspension or dismissal without educational services.

(2) If the student is determined to be a student with a disability, taking into consideration information from the evaluation conducted by the department and information provided by the parent, the department shall provide special education and related services in accordance with the provisions of this chapter, including requirements of this subchapter and section 8-56-3. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.527)

§ 8-56-93 Expedited due process hearing. (a) An expedited due process hearing under this subchapter shall be requested in accordance with section 8-56-73 and shall:

(1) Meet the requirements of sections 8-56-72 (c) to (f), 8-56-75, 8-56-76 (a) and 8-56-77 (c), except that the time periods identified in section 8-56-75 (c) (3) and section 8-56-75 (d) for disclosure of evidence and evaluations may be less than five business days and shall be set by the hearing officer at the pre-hearing conference;

(2) Result in a written decision being mailed to the parties within forty-five days of the department's receipt of the request for the hearing, without

exceptions or extensions. The hearing officer may set a shorter timeline for the issuance of the decision at the prehearing conference at the request of either party; and

(3) Be conducted by a due process hearing officer who satisfies the requirements of section 8-56-74;

(b) Mediation, in accordance with section 8-56-71, shall be available to the parties to an expedited due process hearing, so long as the requirement of subsection (a) (2) is met.

(c) The department shall be responsible for the conduct of an expedited due process hearing. The timeline under subsection (a) (2) shall be the same for hearings requested by parents or the department.

(d) A decision made in a hearing conducted pursuant to this section is final, except that any party involved in such hearing may appeal such decision under section 8-56-78. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.528)

§ 8-56-94 Referral to and action by law enforcement and judicial authorities. (a) Nothing in this subchapter prohibits the department from reporting a crime committed by a student with a disability to appropriate authorities or prevents state law enforcement and judicial authorities from exercising their responsibilities with regard to the application of federal and state law to crimes committed by a student with a disability.

(b) When reporting a crime committed by a student with a disability, the department may transmit copies of the student's special education and disciplinary records for consideration by the appropriate authorities to whom the department reports a crime only to the extent that the transmission is consistent with section 8-56-59 on the confidentiality of information. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.529)

SUBCHAPTER 12 COMPLAINT PROCEDURES

§ 8-56-95 Complaint procedures; applicability. (a) This subchapter applies to the filing, investigation, and resolution of a complaint, including a complaint filed by an organization or individual from another state, regarding an alleged violation by the department of one or more requirements of any of the following:

(1) Provisions of the Hawaii Revised Statutes relating to the education of students with a disability or this chapter; or

(2) Part B of the Individuals with Disabilities Education Act *(20 U.S.C. Section 1400* et seq.) or the implementing regulations (34 C.F.R. Part 300).

(b) The department shall widely disseminate the complaint procedures established by this subchapter to parents, and other interested individuals, including parent training and information centers, protection and advocacy agencies, independent living centers, and other appropriate entities. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.660)

§ 8-56-96 Filing a complaint. (a) An organization or individual may file a signed written complaint under the procedures described in this subchapter with the department.

(b) Nothing in this subchapter precludes the department from attempting to resolve a complaint voluntarily.

(c) The complaint shall include:

(1) A statement that the department has violated a requirement of state or federal law in accordance with section 8-56-95(a); and

(2) The facts on which the statement is based.

(d) The complaint shall allege a violation that occurred not more than one year before the date that the complaint is received in accordance with

subsection (a) unless a longer period is reasonable because the violation is continuing or the complainant is requesting compensatory services for a violation that occurred not more than three years before the date the complaint is received under subsection (a). [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.662)

§ 8-56-97 Requirements. The investigation and resolution of a complaint filed under section 8-56-96 shall meet the following requirements:

(a) Within sixty days after a complaint is filed:

(1) An independent on-site investigation shall be completed, if such an investigation is necessary;

(2) The complainant shall be given the opportunity to submit additional information, either orally or in writing, about the allegations in the complaint;

(3) All relevant information shall be reviewed and an independent decision shall be made as to whether the department is violating a requirement of federal or state law as set forth in section 8-56-95(a); and

(4) A written decision shall be issued to the complainant that addresses each allegation in the complaint and contains:

(A) Findings of fact and conclusions; and

(B) The reasons for the department's final decision.

(b) The time limit under subsection (a) may be extended only if exceptional circumstances exist with respect to a particular complaint.

(c) The department shall ensure effective implementation of the decision by any means authorized by law to effect compliance, including technical assistance activities, negotiations, and corrective actions to achieve compliance. In resolving a complaint in which it has found a failure to provide appropriate services, the department shall address:

(1) How to remediate the denial of those services, including, as appropriate the awarding of monetary reimbursement or other corrective action appropriate to the needs of the student; and

(2) Appropriate future provision of services for all students with a disability.

(d) If a written complaint is received that is also the subject of a due process hearing under section 8-56-72 or section 8-56-93, or contains multiple issues, of which one or more are part of that hearing, the department shall set aside any part of the complaint that is being addressed in the due process hearing, until the conclusion of the hearing. However, any issue in the complaint that is not part of the due process action shall be resolved using the time limit and procedures described in this section.

(e) If an issue is raised in a complaint filed under this section that has previously been decided in a due process hearing involving the same parties:

(1) The hearing decision is binding; and

(2) The department shall inform the complainant to that effect.

(f) A complaint alleging a public agency's failure to implement a due process decision shall be resolved by the department. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § 300.661)

§ 8-56-98 Alternative Complaint Resolution. Nothing in this subchapter shall be construed to restrict or limit an individual or organization from filing a complaint through alternative complaint resolution processes available under state or federal law. [Eff MAR 16 2000] (Auth: HRS § 302A-1112) (Imp: 34 C.F.R. § § 300.500, 300.660)

NOTES:

Historical Note: This chapter is based substantially upon Department of Education "Chapter 36, Provision of a Free Appropriate Public Education for Exceptional Children with Disabilities" [Eff. 1/6/86; am and comp 7/18/94; R MAR 16 2000] which chapter was based substantially upon Department of Education "Rule 49, Relating to the Provision of a Free Appropriate Public Education for Exceptional Children Who Are Handicapped." [Eff 11/29/73; am 4/23/77; am 10/2/78; am 1/8/78; R 1/6/86]