Of Counsel:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON     4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY            4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447
Fax: (808) 523-8448
Email: carl@varadylaw.com

Attorneys for Plaintiffs

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 07 2008

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor, <br><br> Plaintiffs, <br><br> vs. <br><br> DEPARTMENT OF EDUCATION, State of Hawai'i, <br><br> Defendant. | CIVIL NO. CV 04-00442 ACK/BMK <br> CIVIL NO. CV 05-00247 ACK/BMK <br> Consolidated (Other Civil Action) <br><br> **PLAINTIFFS' MOTION IN LIMINE #1 TO EXCLUDE THE TESTIMONY OF RICHARD GOKA, M.D.; DECLARATION OF STANLEY E. LEVIN; EXHIBITS "A" AND "B" AND CERTIFICATE OF SERVICE** <br><br> **DATE:** February 26, 2008 <br> **TIME:** 9:00 a.m. <br> **JUDGE:** Alan C. Kay <br><br> **TRIAL DATE: February 26, 2008** |

# TABLE OF CONTENTS

I.   GOKA RELIED EXCLUSIVELY ON THE INCOMPETENT AND INADMISSABLE OPINION TESTIMONY OF BRYNA SIEGEL IN REACHING HIS CONCLUSIONS ..................................................... 3

II.  GOKA'S OPINION THAT LUKENS OVERBUDGETED FOR SERVICES TO MEET BRYAN'S NEEDS AND REACHED AN INCORRECT VALUATION OF HIS LIFE CARE PLAN IS CONCLUSORY, UNRELIABLE, AND DOES NOT ASSIST THE JURY .............................. 8

III. GOKA'S INABILITY TO DO ANY COST ANALYSIS OF THE NECESSARY SERVICES CONTAINED IN THE LIFE CARE PLAN RENDERS HIS OPINION UNHELPFUL TO THE JURY ....................... 14

IV.  EVIDENCE OF SPOILATION REQUIRES STRIKING OF DR. GOKA'S TESTIMONY AT TRIAL .......................................................... 19

V.   CONCLUSION ...................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Daubert v. Merrell Dow Pharmaceuticals,*
   509 U.S. 579, 113 S. Ct. 2786 (1993) .......................................................... 15, 18

*Hewitt v. Allen Canning Co.,*
   321 N.J. Super. 178, 728 A.2d 319 (App. Div. 1999) ......................................... 20

*Mannino v. International Mfg. Co.,*
   650 F.2d 846, 849 (6th Cir.1981) ........................................................................ 4

*Matsuura v. E.I. du Pont de Nemours,*
   102 Hawaii 149, 73 P.3d 687 (2003) ................................................................. 20

*Salem v. United States Lines Co.,*
   370 U.S. 31, 35 (1962) ......................................................................................... 4

*United States v. 0.59 Acres of Land,*
   109 F.3d 1493, 1496 (9th Cir.1997) ..................................................................... 5

*United States v. Finley,*
   301 F.3d 1000, 1007 (9th Cir. 2002) ............................................................... 4, 10

*United States v. Murillo,*
   255 F.3d 1169, 1178 (9th Cir. 2001) .................................................................... 4

## Rules

Fed. R. Evid. Rule 702 ............................................................................... passim
Fed. R. Evid. Rule 703 ................................................................................... 5, 10

**PLAINTIFFS' MOTION IN LIMINE #1**
**TO EXCLUDE THE TESTIMONY OF RICHARD GOKA**

COME NOW PLAINTIFFS ANN KIMBALL WILES and STANLEY
BOND, individually and as next friend of their son, BRYAN WILES-BOND
(Plaintiffs), by and through their counsel, move this Court in limine for an order
excluding the testimony of DEFENDANT'S DEPARTMENT OF EDUCATION
(Defendant) expert witness Richard Goka, M.D.

This motion is made pursuant to Rule 7 of the Federal Rules of Civil
Procedure and all applicable local rules of practice for the United States District
Court for the District of Hawaii, Rules 401, 402 and 403 of the Federal Rules of
Evidence and bases it upon the Memorandum, Declaration, and exhibits in support
of this motion, and the records and files herein.

Plaintiffs file this *Motion to Strike the Testimony of Richard Goka, M.D.*
(Goka) and respectfully submit that the motion should be granted because Goka's
testimony is conclusory, unreliable, and offers no assistance to the jury.
Specifically:

(1)     Goka asserts that he relied exclusively on Bryna Siegel's diagnosis of
        Bryan. Indeed, Goka admits that he reached no independent diagnosis
        and did not perform any independent evaluations or assessments of
        Bryan. Goka cannot identify a single issue with respect to costing the
        recommended life care plan that he claims was improperly reached
        nor does Goka explain or calculate how the evaluation done by
        Mr. Von Elsner was improperly valued.  He merely asserts his opinion
        what is reasonable and obtainable within what Dr. Siegel felt was a

reasonable treatment plan. These types of unreliable, conclusory and unsubstantiated opinions are inadmissible under Fed. R. Evid. 702-03.

(2)    Goka also cannot tell the jury the future costs faced by Plaintiffs. He is not an Economist. Goka simply concludes that the valuation of Plaintiffs' expert witnesses, Loretta Lukens and Keynes Von Elsner are wrong without properly offering any competing valuation of Plaintiffs' claims. Indeed, Goka admits that he is not an autism expert and undertook no independent investigation to determine the future costs faced by the Wiles-Bonds. Goka's analysis as contained in his report of projected needs and costs fails to meet even the most basic valuation requirements and he does not qualify as an expert under even the most basic standards of Fed. R. Civ. P. 702. Thus, Goka's criticism provides no value to the jury in determining damages in this case.

(3)    Goka destroyed evidence in this case despite his express knowledge of the existing lawsuit. Goka was hired specifically as an expert after the onset of the litigation. Defendant is presenting Dr. Goka as an expert to contradict the opinions of Ms. Lukens' opinions and the findings contained in her life care plan and yet he destroyed the notes used to prepare Mr. Ushiroda for Ms. Lukens' deposition. This conduct constitutes spoilation of evidence warranting the striking of his testimony.

## I.    GOKA RELIED EXCLUSIVELY ON THE INCOMPETENT AND INADMISSABLE OPINION TESTIMONY OF BRYNA SIEGEL IN REACHING HIS CONCLUSIONS

Ostensibly, Goka is being called solely to attack the reliability of the reports provided by Plaintiffs' witnesses, economist Keynes Von Elsner and life care planner Loretta Lukens. He relied directly and exclusively on the opinions reached by Dr. Bryna Siegel (Siegel), who is not a licensed clinical psychologist. Therefore, Siegel is not qualified to testify as an expert on matters related to

3

diagnosis and the proposed treatment course. Without a clinical license, Dr. Siegel is unable to reach the clinical diagnoses relied on by Goka.

Goka himself is neither an economist nor an expert on autism and is not qualified to reach the opinions he proffers in this case. Goka himself is unqualified to offer his opinion on economic feasibility of the life care plan or the value of the grievous damage caused to Bryan in this case.

It is a "fundamental proposition that the determination of the qualifications of an expert is largely within the discretion of the trial court, and unless it has erred or abused that discretion, its determination" is to be sustained. *Mannino v. International Mfg. Co.*, 650 F.2d 846, 849 (6th Cir.1981); *see also Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962). In order to permit expert testimony to be heard by the jury, the trial court must satisfy itself that the proffered witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. Rule 702.

In general, this court reviews for abuse of discretion a district court's decision to admit or exclude scientific evidence and expert testimony. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). "[A] trial court has 'broad discretion' in assessing the relevance and reliability of expert testimony." *Id.* (quoting *United States v. Murillo*, 255 F.3d 1169, 1178 (9th Cir. 2001)).

Several rules apply specifically to expert testimony. Under Fed. R. Evid. Rule 702, an expert witness may provide opinion testimony if "the testimony is based upon sufficient facts or data" and "is the product of reliable principles and methods," which have been "applied ... reliably to the facts of the case." The rule "affirms the court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." Advisory Comm. Notes, Fed. R. Evid. Rule 702 (2000).

Under Fed. R. Evid. Rule 703, the "facts or data ... upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." However, if the expert relies on facts or data that are otherwise inadmissible, then those facts "shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."[1]

---

[1] To the extent that inadmissible evidence is reasonably relied upon by an expert, a limiting instruction typically is needed - i.e., where the evidence is admitted only to help the jury evaluate the expert's evidence. *E.g.*, *United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir.1997) (reversible error to admit hearsay offered as the basis of an expert opinion without a limiting instruction). There is a presumption against disclosure to the jury of inadmissible information used as the basis for expert's opinion. See Advisory Comm. Notes, Rule 703 (2000).

Goka's proffered testimony is inherently unreliable as it relies on inadmissible evidence in this case.  The gist of Goka's testimony is: "I do not know what Bryan's current or future needs are, I made no attempt to ascertain what they are, but based on the opinions of Dr. Siegel, the Plaintiffs overbudgeted for levels of services and their corresponding costs."  Such testimony is conclusory, unreliable, and does not assist the jury.

Goka explained his reliance on Siegel during his deposition:

> Q.    Now, you've identified Bryna Siegel as a person who assisted you in forming your opinions; is that correct?
>
> A.    She was the one that – these are her opinions, other than the costs.
>
> Q.    So you're expressing no opinion on the needs for services. You're only expressing an opinion as to cost. Is that the substance of your testimony?
>
> A.    Essentially, what's reasonable and what's obtainable within, you know, what Dr. Siegel felt was a reasonable treatment plan.
>
> Q.    Well, you're not vouching for her opinions, because that's not permitted; you understand that?
>
> A.    No. But I'm utilizing her opinions to establish my opinions.
>
> Q.    Okay. So you can say you relied on them; is that correct?
>
> A.    True.

Q.    But your reliance on them was for one purpose
only and that was to calculate the cost of specific
services; is that correct?

A.    True.

Q.    You were not making an independent assessment
as to whether or not those particular services were
necessary; is that correct?

A.    That is true.

*See* Exhibit B, Deposition of Richard Goka at p 83:12-25; p 84:1-14.

Goka has no adequate or independent basis to support his opinions and stated repeatedly throughout his deposition that he is not an expert on autism.  In this case Goka is not competent to provide expert evidence on costs related to the proposed life care plan in this case where treatment following a competent diagnosis of Bryan's medical condition and its consequential effects are a critical inquiry.

Furthermore, Goka relied on the inadmissible clinical opinions of Siegel. However, as exemplified in this following exchange regarding credentials, Dr. Goka testified that he would not rely on the clinical opinions of someone without proper credentials or certification:

Q.    And you would be forced to reject the opinion of
someone who didn't have the proper credentials in
that case; isn't that correct?

Mr. Ushiroda: Objection. Calls for speculation, assumes
facts not in evidence. It's also argumentative.

7

A.    We're talking from a clinical aspect?

By Mr. Varady:

Q.    Yes.

A.    Okay.  If the person didn't have – if I didn't – if I knew the person was not validly credentialed and certified and whatever else and received all the blessings from everybody that they need to, I probably wouldn't have sent them in the first place, so therefore, that's a moot point.

Q.    So you wouldn't accept – you wouldn't have sent them to such a person if you knew the person was not properly credentialed?

A.    Correct.

*See* Exhibit B, Deposition of Richard Goka at p. 47:17-25; p. 48:1-10.

Based on this testimony, Goka's testimony should be stricken.  Goka himself indicated that he would not rely on the opinions of someone like Dr. Siegel – an unlicensed doctor improperly offering clinical opinions.  However, in forming his opinions he did just that – he relied on the secondhand evidence of an incompetent witness, Dr. Siegel.

## II.    GOKA'S OPINION THAT LUKENS OVERBUDGETED FOR SERVICES TO MEET BRYAN'S NEEDS AND REACHED AN INCORRECT VALUATION OF HIS LIFE CARE PLAN IS CONCLUSORY, UNRELIABLE, AND DOES NOT ASSIST THE JURY

Goka's analysis as contained in his report of projected needs and costs fails to meet even the most basic valuation requirements and he does not qualify as an expert under even the most basic standards of Fed. R. Civ. P. 702.

Goka's testimony consists entirely of bald assertions without any firsthand knowledge of Bryan, his family or the ravages of Bryan's condition. Goka opines that Dr. LeGoff, Ms. Lukens and Von Elsner, overbudgeted for services such as speech therapy, occupational therapy, dental services, residential care, psychological care and psychiatric care to valuate Bryan's current and future needs, which resulted in an inflated valuation of the life care plan. Strikingly, Goka admitted in his deposition that he made no independent evaluations or assessments to determine whether the services were indeed necessary. Further, Goka does not attempt to provide any bases for his recommendations that Bryan's services, treatments, therapies be dramatically reduced. He merely concludes that it is reasonable that they are reduced.

Similarly, although Goka is being offered to opine that Luken's and Von Elsner's valuation of Bryan's life care plan is incorrect, he cannot tell the jury what the basis for the appropriate levels of care should be. In fact, Goka admits that he relied exclusively on the opinions of Siegel, a witness who is incompetent to make diagnostic conclusions and recommendations. Because Goka cannot offer an independent evaluation and assessment of the life care plan offered by Lukens and

Von Elsner, his testimony provides no assistance to the jury in valuing Bryan's life care plan. It should therefore be excluded under F.R.E. 702-03.

United States District Courts have broad discretion to determine the reliability and admissibility of expert testimony. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Under Fed. R. Evid. Rule 702, expert testimony is only admissible "if it will assist the trier of fact to understand the evidence or determine a fact in issue" and it is trustworthy. Accordingly, a trial judge must "disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." Fed. R. Evid. Rule 703. In this case, Goka's testimony, which is nothing more than a conclusory vouching for the opinions of Siegel is untrustworthy and provides no assistance to the jury. The centerpiece of Goka's opinion is that many of the services in Ms. Lukens' life care plan "would be required to a lesser extent." Exhibit "A", See September 21, 2007 Deposition of Richard S. Goka, M.D. Both his two page report and his deposition testimony reveal the conclusory and unreliable nature of Goka's opinions. First, although Goka asserts that the level of services used in Lukens' life care plan were inappropriate, he readily concedes that he has no independent, trustworthy source of information, i.e. evaluations, test data or assessments to support those conclusions.

10

In addition to Goka's unfamiliarity with Bryan and his family, he conceded that he did not perform any independent evaluation upon which to base his future needs valuation.

In his deposition, Goka testified as follows:

Q.      My question is – you state that in reviewing Ms. Leukens' (sic) life care plan and a discussion with Dr. Siegel, many of the services would be required to a lesser extent. Do you see that?

A.      Correct.

Q.      Now my question for you is: Are you saying that after Bryan's in a group home, many of the services will be needed to a lesser extent, or are you saying something else? Because that doesn't seem to be tied to anything other than the prior paragraph, which talks about him going to a group home.

A.      It's to the entire plan that Ms. Leukens (sic) had presented by that time.

Q.      Okay. So that's both before and after Bryan turns 18 you think she's recommending services at too high a level; is that correct?

A.      Correct.

Q.      An that's without any expertise in the field of autism and without having met or assessed Bryan on your own; is that correct?

A.      That's with feedback from Dr. Siegel.

Q.      So Dr. Siegel told you that and you put that in your report; is that correct?

A.    Essentially.

*See* Exhibit B, Deposition of Richard Goka at p. 113:14-25; p. 114:1-14. Based on this testimony, Goka's testimony should be excluded. Goka clearly has not evaluated Bryan and offers no qualified opinion on costs for his care plan. Thus, his opinions are baseless, and do not assist the jury in deciding damages in this case.

Goka's conclusory testimony also does not explain how or to what extent the use of test data, evaluations and assessments by Dr. LeGoff and Ms. Lukens should be reduced to reach the lesser extent of services reached by Siegel. The stated intention of Goka's report is to show the reasonableness of proposed services, yet in this case, he finds a reduction in services is warranted apropos to nothing. Goka simply states this premise as a conclusion and does not explain the basis for his opinion. Simply put, he asks the jury to take his word for it.

For instance, with regard to psychiatric services, Dr. Goka states that Ms. Lukens recommends a Psychiatrist six times a year, continuing that there "are neither specifics nor medical records that indicate this frequency." However, he agrees that Bryan may require medication in the future and yet, despite suffering adverse reactions in the past while on medication, that "it would be reasonable for him to see a Psychiatrist two to four times a year." Exh. 9 at 1.

In his deposition, Goka testified as follows:

12

Q.    All right. You say Ms. Lukens has recommended a psychiatrist six times a year, period. There are neither specifics or medical records that indicate this frequency. Did I read that accurately?

A.    That's true.

Q.    Did you assess Bryan for whether or not he needs psychiatric or psychotropic medications?

A.    No.

Q.    Do you know whether he's taking any psychiatric or psychotropic medications at this time?

A.    Prior to – as of Dr. Bonds' reevaluation – not Dr. Bonds – Dr. LeGoff's reevaluation, no, he was not.

Q.    Is it your testimony that you are competent to express an opinion to a reasonable medical probability that he will never need psychiatric or psychotropic medication?

A.    No.

Q.    Your answer would be you don't know whether he will or not; is that correct?

A.    That's correct.

Q.    You do state that if Bryan were to be placed on medications, it would be reasonable for him to see a psychiatrist two to four times a year. Did I read that accurately?

A.    That's correct.

Q.    You're not a psychiatrist?

A.    Correct.

13

*See* Exhibit B, Deposition of Richard Goka at pp. 115:21-25; pp. 116:1-25.  This type of conclusory and unsubstantiated testimony is untrustworthy and does not help the jury calculate damages.

In sum, Goka criticizes Lukens' life care plan even though he has no idea (1) what Bryan's present and future needs are and (2) how the evaluation and test scores specifically affected the analysis.  His testimony should therefore be excluded.

## III.  GOKA'S INABILITY TO DO ANY COST ANALYSIS OF THE NECESSARY SERVICES CONTAINED IN THE LIFE CARE PLAN RENDERS HIS OPINION UNHELPFUL TO THE JURY

Defendants must prove that the opinions of Dr. Goka "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702. His opinions are not relevant because he has no direct knowledge of Bryan or his present or future needs.  Dr. Goka's opinions are also unreliable.  His testimony in this case should be struck on his incompetence alone.  Dr. Goka concedes that he is not an economist and is therefore not competent to offer opinion testimony regarding the cost of Bryan's present and future services contained in Ms. Lukens' reports.  He is unable to do the cost analysis that he was retained to perform. Dr. Goka's opinions reach an even greater level of unreliability and uselessness when

considering his complete lack of knowledge regarding any costing or economic evaluation.

The Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786 (1993) held that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589, 113 S. Ct. at 2795. Dr. Goka did not derive his findings through scientific method or base his testimony on scientifically valid or reliable principles and they should be rejected under Fed. R. Evid. Rule 403 or Rule 702.[2] *Daubert*, 509 U.S. 579, 595, 113 S. Ct. 2786, 2798 (1993).

> The Supreme Court's opinion in *Daubert* focuses closely on the language of Fed. R. Evid. 702, which permits opinion testimony by experts as to matters amounting to "scientific ... knowledge." The Court recognized, however, that knowledge in this context does not mean absolute certainty. 509 U.S. at ----, 113 S.Ct. at 2795. Rather, the Court said, "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." Id. Elsewhere in its opinion, the Court noted that Rule 702 is satisfied where the proffered testimony is "based on scientifically valid principles." Id. at ----, 113 S.Ct. at 2799. Our task, then, is to analyze not what the experts say, but what basis they have for saying it.

*Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

---

[2] While the Court declined to set forth a "definitive checklist or test," *Daubert*, 509 U.S. at 593, 113 S.Ct. at 2796, the Court explicated several factors federal judges can consider in determining whether to admit expert scientific testimony under Fed R. Evid. 702: whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable. *Id.* at 593-94, 113 S.Ct. at 2796-97.

Dr. Goka fails to meet the requirements under Rule 702 and *Daubert.* He is not an expert in calculating damages and lacks the necessary training, experience and credentials to do so. He relied on no approach that is generally accepted. He is not a member of any professional organizations, for example, the Association of Forensic Economics, the National Association of Certified Valuation Analysts or the American Society of Appraisers – affiliations that one would normally expect from an expert performing forensic damage calculations. He has no basis to support his opinions beyond what Dr. Siegel provided and a few informal phone calls to inquire about costs. The lack of trustworthiness in Goka's concept of the cost of Bryan's life care in this case, as well as his inability to testify about critical facts in the analysis of Bryan's grievous damages is further exemplified in this following exchange regarding Bryan's future dental needs:

> Q.    Looking at the next paragraph, it refers to dental care.
>
> A.    Correct.
>
> Q.    And Ms. Lukens suggested it be done monthly. Do you see that?
>
> A.    Correct.
>
> Q.    You indicate that it could be done twice a year. Do you see that?
>
> A.    Correct.
>
> Q.    Is that your opinion or Dr. Siegel's opinion?

A.    That's my opinion, I think, on that one.  But most dentists, basically – under anesthesia, in talking to my own personal dentist, they'd only do it twice a year.

Q.    Are you aware of any special problems related to dental hygiene that Bryan's case presents?

A.    It presents a major problem with dental hygiene, because of the fact of his autism and his behavior and the frequency of his brushing his teeth. Therefore, that – you know, that he needs to basically really have a twice a year exam and cleaning.

Q.    So am I correct that the basis of your opinion here is a conversation with your own dentist?

A.    Correct.

Q.    Who is that?

A.    Tsutsui.

***

A.    What is Dr. Tsutsui's first name and where is he --.

Q.    Kenneth. And he retired.

A.    Where is he located?

Q.    In Fresno.
      I just asked him hypothetically what he would do with someone.  Again, I didn't specifically use Bryan's name to any of these people I discussed it with.

17

*See* Exhibit B, Deposition of Richard Goka at p. 126:13-25; p. 127:1-25; p. 128:1-5.

Goka himself acknowledges that he is not an expert in autism and is not an economist. This kind of analysis is not the "product of reliable principles and methods" as required by the Federal Rules of Evidence. The methodology used in Goka's valuation in his report is not clear and is not even remotely principled. Goka is not qualified to render the opinions that he does and he does not possess the requisite knowledge, skill, experience, training or education to opine or testify about a valuation of Bryan's future needs. Other than his personal experience, his background fails to incorporate the necessary professional experience in valuation analysis.

Based on this failure to meet the requirements of Rule 702 and *Daubert*, Goka's testimony should be excluded. This excerpt from his testimony embodies the caliber of the bases for his opinions – calling up his retired personal dentist to ask hypothetically "what he would do with someone." Goka is clearly not qualified to render the opinions he has in this case. He relied on the secondhand evidence of an incompetent witness, Dr. Siegel. He never evaluated Bryan or valuated his future life care needs on his own and has no idea regarding Bryan's future life care future needs. Thus, his opinions are baseless, and do not assist the jury in deciding damages in this case.

Again, it is clear that Goka has left out one critical fact after another in formulating the opinions that he is not even qualified to make. He has not performed an evaluation or analysis of Bryan's condition and the costs of his rehabilitation costs and struggled throughout his deposition to identify what this case is about. He cannot name a single basis for his conclusory opinion that many of the services contained in the life care plan "would be required to a lesser extent" beyond Siegel's opinion. Without a viable competing opinion about what Bryan's service and treatment needs are and the reasonable costs of those treatments and therapies, Goka's opinion does not assist the jury in determining damages.

In light of all these deficiencies, he simply concludes that Lukens is wrong. Goka's testimony is not admissible under Fed. R. Evid. Rules 702-03. Thus, he should be prohibited from testifying in this case.

## IV.    EVIDENCE OF SPOILATION REQUIRES STRIKING OF DR. GOKA'S TESTIMONY AT TRIAL

Dr. Goka admitted during his deposition that he intentionally destroyed evidence despite his express knowledge of the existing lawsuit. Indeed, Goka was hired specifically as an expert after the onset of the litigation. Defendants are seeking to have Dr. Goka testify in contradiction of Ms. Lukens' opinions and the findings contained in her life care plan. Yet, incredibly, Dr. Goka testified during

his deposition that he destroyed the notes used to prepare Mr. Ushiroda for Ms. Lukens' deposition. This conduct constitutes spoilation of evidence.

Essentially, the tort action for spoilation of evidence provides damages where the actor knows that litigation exists or is probable, the spoliator willfully or negligently destroys evidence with a design to disrupt plaintiff's case, or where such disruption is foreseeable, plaintiff's case is in fact disrupted and plaintiff suffers damages proximately caused by the spoliator's acts. *Hewitt v. Allen Canning Co.*, 321 N.J. Super. 178, 728 A.2d 319 (App. Div. 1999).

In *Matsuura v. E.I. du Pont de Nemours*, 102 Hawaii 149, 73 P.3d 687 (2003) the Supreme Court of Hawai`i held that Plaintiffs were entitled to an independent cause of action for fraud arising from the discovery and settlement process arising from an earlier litigation. However, they did not resolve the certified question from the United States District Court for the District of Hawai`i of whether Hawai`i recognizes an independent tort of intentional spoilation of evidence. However, they recognized that "[e]vidence of spoilation, if produced at trial, may be addressed by a variety of trial devices such as appropriate instructions, striking of defenses, limitation of testimony, etc." 102 Hawaii at 169, 73 P.3d at 707 (Acoba, J., concurring).

Goka destroyed potentially key evidence to prove that Lukens' report contained accurate information despite his knowledge of existing and ongoing

litigation.  His total lack of trustworthiness is further exemplified in this following

exchange regarding his assistance and preparation of Mr. Ushiroda for

Ms. Lukens' deposition:

> Q.    Did you identify to Mr. Ushiroda any questions you had about Ms. Leukens' report?
>
> A.    Such as?
>
> Q.    Any.
>
> A.    Well, yeah.  I mean, I told him what I felt was – I mean, what I felt, you know, as I documented in my supplemental and primary reports.
>
> Q.    My question isn't did you tell him you disagreed with it.  That's not my point.
>        My point is: Were there any questions in your mind about things contained within her report that you wanted clarification on that you talked to Mr. Ushiroda about and said, Gee, Mr. Ushiroda, I'd like to get more information about why she's coming to this conclusion?
>
> A.    I think there's some figures I wanted validated, how she came to that conclusion and how she got them, and who made the recommendations of – some of the recommendations, and she verified that.
>
> Q.    And she did that in her deposition, is that correct?
>
> A.    Yes.
>
> Q.    Did you assist Mr. Ushiroda in preparing for Loretta Luekens' deposition by providing those types of questions?

A.    A couple like those.  That's – you know, those are the type things.  I wanted to figure out where she got her figures from and, you know, the biggest question I had was how come she didn't – what was the reason that the financial figures didn't change from her two reports.

\*\*\*

Q.    My question to you is: Did you provide a list of questions to Mr. Ushiroda to ask Ms. Leukens?

A.    I gave him some questions, yes.

Q.    Were those in writing?

A.    Some were.  Some were verbal.

Q.    Have copies of those been produced to us?

A.    No.  I don't have them anymore.  It was just I wrote some notes, I thought about it and I told him, and then I just got rid of it.

Q.    What do you mean you got rid of it?  You destroyed them?

A.    Yeah.

Q.    There's no copy of those remaining?

Q.    Not that I know of.

*See* Exhibit B, Deposition of Richard Goka at p. 158:1-25; p. 159:1-6, 23-25; p. 160:1-12.

A reasonable inference can be drawn that Dr. Goka was told to come up with a substantially lower figure than those contained in Ms. Lukens' conclusions and

opinions and that Ms. Lukens' figures were indeed accurate representations of the reasonable costs of Bryan's life care planning needs.  Based on this intentional destruction of evidence, Goka's testimony should be excluded.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that Dr. Richard Goka's expert testimony be excluded.

DATED:  Honolulu, Hawai`i, January 7, 2008.

_____

STANLEY E. LEVIN
CARL M. VARADY
MICHAEL K. LIVINGSTON

Attorneys for Plaintiffs