Of Counsel:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN               1152-0
MICHAEL K. LIVINGSTON          4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii  96813
Telephone:  (808) 524-7500
Fax:  (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY                 4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii  96813
Telephone:  (808) 523-8447
Fax:  (808) 523-8448
Email: carl@varadylaw.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 07 2008

at 3 o'clock and 15 min P.M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>                    Plaintiffs,<br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>                    Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>**PLAINTIFFS' MOTION IN LIMINE #2 TO EXCLUDE THE TESTIMONY OF BRYNA SIEGEL; DECLARATION OF STANLEY E. LEVIN; EXHIBITS A – D; AND CERTIFICATE OF SERVICE**<br><br>DATE:  February 26, 2008<br>TIME:  9:00 a.m.<br>JUDGE: Alan C. Kay<br><br>**TRIAL DATE:  February 26, 2008** |

# PLAINTIFFS' MOTION IN LIMINE #2
## TO EXCLUDE THE TESTIMONY OF BRYNA SIEGEL

COME NOW PLAINTIFFS ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND (Plaintiffs), by and through their counsel, move this Court for an in limine order striking the testimony of DEFENDANT DEPARTMENT OF EDUCATION, State of Hawai'i's, (Defendant) expert witness Bryna Siegel, Ph.D. (Siegel).

This motion is made pursuant to Rule 7 of the Federal Rules of Civil Procedure and all applicable local rules of practice for the United States District Court for the District of Hawai'i, Rules 401, 402 and 403 of the Federal Rules of Evidence and bases it upon the Memorandum, Declaration, and exhibits in support of this motion, and the records and files herein.

Plaintiffs submit this *Motion to Exclude the Testimony of Dr. Bryna Siegel* and respectfully submit that the motion should be granted because:

(1) The Department of Education (DOE) intends to call Dr. Bryna Siegel to testify about her report, Bryan's current level of functioning and long-term outcomes of people with autistic disorders. Siegel should not be allowed to testify because she is not currently licensed as a clinical psychologist, and thus lacks the credentials to offer such a diagnosis. Siegel is therefore incompetent to testify on those matters. The type of analysis contained in Siegel's report is not the "product of reliable principles and methods" as required by the Federal Rules of Evidence. Siegel is not qualified to render the opinions that she does because she lacks the requisite clinical knowledge, skill, experience, training or education to opine or testify about Bryan's present and future needs.

2

(2) Siegel expressly said that her opinions were not reached as a result of independent research but were made for purposes of litigation. Hence, a higher level of scrutiny is warranted in this case. Siegel should not be allowed to testify concerning Bryan's current functioning and progress since leaving Hawai`i because (a) she reached those opinions for purposes of litigation and (b) there are no independent research opinions contained in her report.

(3) Siegel's report relies on outcome studies made on children who are now adults that were based on interventions that are approximately 20 years old and are not based on current best practice standards. Siegel's testimony does not rest on a reliable foundation and is not relevant to this case.

## I. SIEGEL IS NOT CURRENTLY LICENSED AS A CLINICAL PSYCHOLOGIST AND IS THEREFORE INCOMPETENT TO RENDER EXPERT OPINIONS REGARDING BRYAN'S CONDITION AND EXPECTED OUTCOMES

Dr. Siegel was retained to offer expert opinion regarding Bryan's current condition, his progress since leaving Hawai`i, including an assessment of whether the education he is receiving is providing FAPE and a comparison of her observations with the test results of Drs. LeGoff and Freeman. *See* Exhibit A, Deposition of Dr. Bryna Siegel at p. 162:15-25.

However, she lacks the requisite credentials to reach the diagnostic conclusions that Defendants seek to offer in this case. Dr. Siegel is not licensed as a clinical psychologist in either Hawai`i or California and yet has been contracted by Defendants to perform observations, assessments and evaluations of Bryan and include clinical diagnoses in her expert reports in direct contravention of the

3

governing licensing provisions contained in Hawai'i Revised Statutes (HRS) §465-1 and California Business and Professional Code §2910. Attached as Exhibit D.

Dr. Siegel did not testify regarding the condition of autism generally as part of her professional capacity, rather her testimony was specifically related to a clinical observation and assessment of Bryan. She is simply unqualified to reach the psychological diagnoses and opinions she proffered in her October 15, 2007 deposition and is expected to offer at trial. These types of unreliable and unsubstantiated opinions are inadmissible under Fed. R. Evid. Rules 702-03. As such, she is incompetent to testify at trial regarding Bryan's present condition or expected outcome.

Siegel intends to testify that Bryan has made up all of the deficits caused by the five years of educational neglect in Hawai'i within two short years in California.

> Q.  So there was a period of five years where he didn't learn in Hawaii; isn't that correct?
>
> A.  Right. Correct. But I think he is caught up, and he is back on track and that he has capacity that wasn't accessed when he was in Hawaii and that – I don't think that the kind of gains we have seen in his first two years in California are going to continue at that rate for the next two years and the two years after that, and so forth.
>
> Q.  Can you say that with a certainty?
>
> A.  I can say it with a fair degree of certainty. In other words, I don't think he will have 400 signs in

4

|   |   |
|---|---|
|   | another year's time, for example, if you were going to try to characterize it that way. I think that would be extremely unlikely. |
| Q. | Wouldn't you want to see where he is next year before making predictions about where he is going to end up? |
| A. | I mean, ideally, one wants to see, but I can tell you that based on my experience over the years with kids like Bryan, it would be unlikely. It would be much more improbable than probable to me. |
| Q. | So your testimony is that even though he made no progress for five years in Hawai'i and, in fact regressed, that he's recouped to the point he would have been had he been given appropriate services in Hawai'i; is that correct? |

MR. USHIRODA:   Objection.   Asked and answered. Also, misstates prior testimony.

BY MR. VARADY:

|   |   |
|---|---|
| Q. | Is that your testimony? |
| A. | I think he has largely recouped. |
| Q. | Well, that is a big word, "largely." Now, you are qualifying it? |
| A. | No. |
| Q. | Did he recoup or not? |
| A. | Well, I mean, as you pointed out yourself, there is no way to know exactly. This is not a precise science. I think that he's shown a lot of improvement in the behavioral domain. And in doing so, he's much more open to instruction. |
|   | So he is doing many more things, but he is still a very severely impaired young man, and a lot of what he has learned, a lot of the signs that he's learned don't really have much functional use for |

5

him, like labeling objects and colors and numbers and animals, and so forth.

So as far as where he is going in life, as I have said, he needs to have a much more functional turn in the road for his curriculum. And typically that happens at age 14, when the transition for adult planning first gets talked about at an IEP meeting. I think in Bryan's case, he was still – the primary focus was still on behavioral management, but I think that as that becomes more of a consolidated gain, hopefully his curriculum will move into more functional skills development, which I anticipate he will be able to master to the degree that moderate to severely retarded nonverbal autistic individuals master such things.

Q. So doors are now open to him that were not open when he was in Hawaii because of the program that he has received here?

A. The program. In other words, Bryan is the same Bryan. What I said earlier that the way I typically see it, and I see it in Bryan's case, is that 50 percent of what happens is the child's neurology, the child's neuropathology, his wiring. 50 percent is the treatment.

And in Hawaii, the treatment was not doing – carrying its weight in moving him forward. But Bryan's still the same Bryan.

Q. So had those doors been open in Hawaii, wouldn't you agree that he would be further along than he is today.

MR. USHIRODA: Objection. Asked and answered.

THE WITNESS: Yeah. I think I have – I think that is the case, but I think – no, I think he's – he's recouped, he's caught up. Just the way when kids go to kindergarten, or go to first grade, the first month of kindergarten is relearning first grade, and they relearn

6

>first grade – relearn kindergarten in a month, because the recruitment process is not as difficult.

See Exhibit A, Deposition of Dr. Bryna Siegel at p. 274:23-25; p. 275:1-25; p. 276: 1-25. Siegel's testimony regarding clinical opinions such as this should be excluded because she is not a licensed clinician and is therefore unqualified to render such opinions.

This Court has discretion to determine the reliability of expert testimony. *U.S. v. Hankey*, 203 F.3d 1160, 1166 (9th Cir. 2000). A district court's decision to exclude or admit evidence under FRE 403 is reviewed with "considerable deference." *United States v. Cordoba*, 194 F.3d 1053, 1063 (9th Cir. 1999). A district court's rulings on the admissibility of expert testimony are reviewed for an abuse of discretion. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999).

A trial judge must determine if the expert's opinion is trustworthy and should "disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." Fed. R. Evid. 703. Here, Siegel's opinion fails on all accounts.

As an initial matter, Rule 702 assigns the district court "the task of ensuring an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 2799 (1993).

II. **SIEGEL'S TESTIMONY ABOUT BRYAN'S CURRENT CONDITION AND PROJECTED OUTCOME FOLLOWING HIS CHANGE OF SCHOOLS TO CALIFORNIA IS SUBJECT TO A HIGHER STANDARD OF SCRUTINY SINCE SHE FORMED THOSE OPINIONS FOR PURPOSES OF LITIGATION**

Alternatively, should the Court determine that an expert unlicensed as a clinical psychologist is competent to render clinical opinions, the Court should limit her testimony because her opinions were formed expressly for the purposes of litigation.

Circuit Courts have recognized for some time that expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work should be viewed with some caution. For example, in a decision predating *Daubert*, the Sixth Circuit Court pointed out that "expert witnesses are not necessarily always unbiased scientists," because they are "paid by one side for their testimony." *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992); *see also Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 252 (6th Cir. 2001) ("If anything, *Kumho* supports the magistrate judge's consideration of factors not mentioned by the Supreme Court, including the fact that [the expert's] study was conducted and the experts' opinions were formed for purposes of litigation."); *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 Fed. Appx. 479, 484 (6th Cir. 2002)

(noting that the prepared-solely-for-litigation factor is often assessed in addition to those specifically enumerated in *Daubert*).

The best explication of the prepared-solely-for-litigation factor comes from this circuit, when the court revisited the *Daubert* case following remand by the Supreme Court. *See Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*"). In that case, the prepared-solely-for-litigation test was layered onto the four factors previously articulated by the Supreme Court. By so doing, the court stated:

> One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying. That an expert testifies for money does not necessarily cast doubt on the reliability of his testimony, as few experts appear in court merely as an eleemosynary gesture. But in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office. . . . That an expert testifies based on research he has conducted independent of the litigation provides important, objective proof that the research comports with the dictates of good science. . . . If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on "scientifically valid principles."

43 F.3d at 1317-18. (internal citations omitted).

A trial judge's assessment of the prepared-solely-for-litigation factor is, of course, well within his broad gate keeping function. Dr. Siegel's testimony concedes that her report was drafted expressly for the purpose of litigation. This

9

raises the "quintessential expert for hire" scenario rather than a situation presented by a pure research scientist whose loyalties are to the laboratory and the dictates of good science and not the courtroom. Therefore, if the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on "scientifically valid principles." 43 F.3d at 1317-18.

This type of testimony is extremely unreliable because Siegel expressly formed her opinions in anticipation of litigation and Defendants failed to support her opinions with other objective, verifiable evidence. Dr. Siegel testified that the opinions she reached in this case were formed exclusively for purposes of litigation. The lack of trustworthiness in Siegel's assessments of Bryan is further exemplified in this following exchange regarding her opinions in this case:

> Q. Now, these opinions are formed exclusively for this litigation; is that correct?
>
> A. I am sorry, could you restate that?
>
> Q. Yeah.
> They were formed for your work as an expert witness in this litigation, and not for any kind of independent research?
>
> A. My opinions?
>
> Q. Yes.
>
> A. Yes.

*See* Exhibit A, Deposition of Dr. Bryna Siegel at p. 75:23-25; p. 76:1-7. Similarly, the June 25, 2007 expert opinion, attached hereto as Exhibit C, regarding Bryan's progress, including an assessment of whether the current education he is receiving is providing FAPE, as well as a comparison of her observations with the test results of Drs. LeGoff and Freeman were also prepared for purposes of litigation. *See* Exhibit A, Deposition of Dr. Bryna Siegel at p. 162:15-25. Dr. Siegel's opinions are unreliable and no objective, verifiable evidence has been presented to support them. Indeed, these unreliable, inadmissible opinions were merely adopted by Defendants' other trial expert – Dr. Richard Goka.

As in the case here, *Daubert II* involved scientific experts and the Ninth Circuit continues to apply this formula today. *See, e.g., Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001). Therefore, the trial judge must view the prepared-solely-for-litigation factor as a very important one. Where it is clear that a proposed expert's opinion testimony flows naturally from his own current or prior research, then it may be appropriate for a trial judge to apply the *Daubert* factors in somewhat more lenient fashion. It would not follow that such an expert is to be accorded a presumption of reliability, but it would be on all fours with the notion that an expert who testifies based on research conducted independent of the litigation "provides important, objective proof that the research comports with the

11

dictates of good science." *Daubert II*, 43 F.3d at 1317. However, if a proposed expert is a "quintessential expert for hire," as was conceded by Dr. Siegel's own testimony, then it is well within a trial judge's discretion to apply the *Daubert* factors with necessary rigor. Such an expert is not accorded a presumption of unreliability, but the party proffering the expert must show some objective proof supporting the reliability of the expert's testimony. *Daubert II*, 43 F.3d at 1317-18 ("If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence . . . .").

Accordingly, Plaintiffs respectfully request that Siegel's opinion concerning Bryan's abilities be excluded because (1) it is not based upon sufficient facts or data; and (2) is misleading to the jury.

### III. SIEGEL SHOULD NOT BE ALLOWED TO TESTIFY AS TO BRYAN'S PROJECTED LEVEL OF FUNCTION OR PROGNOSIS SINCE THE STUDIES SHE RELIES ON INCLUDE OUTDATED INTERVENTION PRACTICES

Siegel's report nowhere mentions that the outcome studies made on children who are now adults were based on interventions that are approximately 20 years old. *See* Exhibit B, Siegel's Report. The interventions done at that time are not current best practice standards. Such a report will undoubtedly be confusing and misleading to the jury and should be excluded as irrelevant under the Federal Rules of Evidence.

Plaintiffs understand that Defendants intend to call Siegel to give an opinion of Bryan's current levels of function and projected outcome. It would be improper to elicit such testimony because this opinion relies on irrelevant outcome studies. Therefore, Plaintiffs ask that the Court strike Dr. Bryna Siegel's testimony concerning Bryan's progress, whether the education he is receiving is currently providing him with FAPE and the viability of the test results of Drs. LeGoff and Freeman.

## IV. CONCLUSION

For the foregoing reasons and for the reasons stated in Plaintiffs' Memorandum, Plaintiffs respectfully request that Bryna Siegel's expert testimony be excluded as inadmissible. Alternatively, if allowed to testify, her testimony should be limited because she formed her opinions expressly for the purpose of litigation. If allowed to testify, her testimony should be further limited to generalities regarding autism and not Bryan's condition in particular, as she lacks the requisite clinical knowledge, skill, experience, training or education to opine or testify about a valuation of Bryan's future needs.

DATED: Honolulu, Hawai`i, January 7, 2008.

                                 _____
                                 STANLEY E. LEVIN
                                 CARL M. VARADY
                                 MICHAEL K. LIVINGSTON
                                 Attorneys for Plaintiffs