Of Counsel:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN              1152-0
MICHAEL K. LIVINGSTON         4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii  96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY                4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii  96813
Telephone: (808) 523-8447
Fax: (808) 523-8448
Email: carl@varadylaw.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 07 2008

at 3 o'clock and 15 min. P.M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>**PLAINTIFFS' MOTION IN LIMINE #5 TO EXCLUDE EVIDENCE, TESTIMONY, ARGUMENT AND COMMENT CONCERNING THE CONDITION OF THE WILES-BOND HOME; DECLARATION OF STANLEY E. LEVIN; EXHIBITS "A" AND "B"; AND CERTIFICATE OF SERVICE** |

| | |
|---|---|
| DATE: | February 26, 2008 |
| TIME: | 9:00 a.m. |
| JUDGE: | Alan C. Kay |
| TRIAL DATE: | February 26, 2008 |

## PLAINTIFFS' MOTION IN LIMINE #5 TO EXCLUDE EVIDENCE, TESTIMONY, ARGUMENT AND COMMENT CONCERNING THE CONDITION OF THE WILES-BOND HOME

COMES NOW PLAINTIFFS ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND (Plaintiffs), by and through their counsel, move this Court for an in limine order restraining DEFENDANT DEPARTMENT OF EDUCATION, State of Hawai'i, (Defendant) from attempting to introduce evidence, testimony, argument and comment concerning the condition of the Wiles-Bond home.

This motion is made pursuant to Rule 7 of the Federal Rules of Civil Procedure and all applicable local rules of practice for the United States District Court for the District of Hawaii, Rules 401, 402 and 403 of the Federal Rules of Evidence and bases it upon the Memorandum, Declaration, and exhibits in support of this motion, and the records and files herein.

Plaintiffs anticipate that Defendant will attempt to introduce evidence, testimony, argument and comment concerning the condition of the Wiles-Bond home as "unsanitary" or "unclean."

2

Plaintiffs seek an order excluding the condition of the Wiles-Bond from evidence in the instant action. Evidence of this sort is inadmissible because it is irrelevant and inflammatory. The district court has broad discretion to exclude irrelevant, unfairly prejudicial and unreliable evidence. *See Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005). Except as otherwise provided by the rule, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Fed. R. Evid. Rule 402. There will be unfair prejudice arising from the admission of this evidence. *See* Fed. R. Evid. 403.

Plaintiffs contend that admission of the evidence will be unfairly prejudicial because the evidence concerns trumped up rumors regarding personal hygiene and will only serve to set off a red herring sideshow with amorphous discussions of differing standards of what constitutes a sanitary home. This evidence must be excluded because it is a malicious attempt to reduce and demean dedicated and hard-working parents in the eyes of the jury. The net effect will take us far a field of the real issues in the case.

One of the central issues in the case involves the Defendant's repeated intentional failure for almost 5 years to provide a necessary educational program, including qualified, trained skills trainers as required by prior Individual Education Plans, Hearings Officers' Orders and settlement agreements.

This issue of housecleaning was raised at the eleventh hour, following years of complaint-free skills trainers and therapeutic aides working with Bryan in his home. The first time the issue was raised in this case was in the form of a letter from Department of Education (DOE) attorney Mr. Lono Beamer that arrived at the Wiles-Bond home on December 24, Christmas Eve of 2003. Dr. Bond explained the communication as follows:

> Q. The first time you heard any complaints about – from the DOE or skills trainers about unsanitary conditions at your home was in these declarations?
>
> A. No. The first time I heard it was in a letter from Lono Beamer that we received on Christmas Eve of 2003, stating that our house conditions were unsanitary and my wife was difficult to work with. And I don't know any other way to take that except to say that it was intended to come at a time, you know, when it should have been a joyous time in our household and make it a less joyous time in our household.
>
> Q. Were there issues of sanitary conditions at your home?
>
> A. I don't believe there were issues of sanitary conditions at our house. I don't – I don't believe that. But everyone has a right to opinion, I guess, in the sense of what, you know, what are their standards and things, but I don't believe so.
>
> We have had psychologists in our house every week for three hours, you know, to go over programs and to – they were all over our house. They were downstairs in Bryan's area preparing things and all. Never one of them said, you know, It's pretty nasty down here. You guys really need to clean your house up better.
> We never had a skills trainer, supervisor, Ms. Kelly Stern or Dr. Price, before that letter, none of them ever came to us and said, You know, we lost a really good skill trainer because the sanitary – your

4

house sanitary conditions were pretty bad and they didn't feel like they could work here.

No. And even after me (sic) made those claims, not one of those people ever came to our house to inspect our house, either prior to that, prior to making that claim or after making the claim, saying, you know, These house conditions are really bad.

I mean, it was only done as soon as we filed the lawsuit. I feel like it was done both to intimidate us in a way and to also throw – well, it tends, you know, it's a way to blame the victim for what is happening to them, and it also, you know, pushes it off on a different – it takes the eyes away from the real issue about service – are the services being provided that Bryan is supposed to get, and it puts it onto a different issue, which is a nonissue, because if they truly felt that was true, there were ways to mitigate that, too. They could have done his program in another location if they felt like hour (sic) was unsanitary.

Skills trainers continue to work with us in our house. Skills trainers that have worked with us over a period of time continue to work with us in our house. We didn't get any complaints from them. We didn't ever get a direct complaint from a skill trainer saying, Your house is unsanitary.

And we never actually got a direct complaint from anyone else saying our house was unsanitary until Mr. Beamer's letter and then Ms. Radwick made that statement in our February meeting at the district office.

*See* Exhibit A, Deposition of Dr. Stanley Bond at pp. 153:22-25; 154:11-25; 155:1-25; 156:1-9.

Even if it were indeed true that the reason Defendants were unable to hire key personnel was solely due to Plaintiffs housecleaning, it is a nonstarter because alternatives were provided once they raised the issue. The concern could have

been quickly addressed by ensuring another location the DOE felt was appropriate. At his deposition, Dr. Stan Bond testified that during that February 2004 district office meeting, Judy Radwick engaged in smear tactics in order to blame the parents somehow for Defendant's failure to secure the appropriate program for Bryan. Judy Radwick told the parents that the difficulties they faced with skill trainers were due to unsanitary conditions of the home.

After indicating that Ms. Radwick has never visited the Wiles-Bond home, nor did she request an inspection of the home, Dr. Bond continued as follows:

> Q. How about any response to Judy's comment that your home is unsanitary?
>
> A. There were comments toward that, and I made comments and also -- so did our attorney -- and I think that our comments went to the fact that, well, if that was the issue, then it was really up to the DOE to find an appropriate setting for Bryan -- for his educational needs -- if the DOE didn't feel like the house was the appropriate setting for him to work on his life skill needs in that after school setting, then the DOE needed to find -- to supply a setting that they felt was appropriate.
>
> Q. Do you recall what Ms. Floyd said?
>
> A. I think that was basically her comment.
>
> Q. Do you recall any response to that retort?
>
> A. I don't recall exactly what the response was, but, I'm sure that they -- I'm sure, you know, it was rejected out of hand, basically, as not -- basically, they weren't going to do something like that.
>
> . . .

6

> Q. And did you take notes?
>
> A. I didn't take notes, but, Ms. Floyd did; so I relied on her notes.

See Exhibit B, Deposition of Dr. Stanley Bond at p. 323:1-19; p. 324:1-3.

Despite numerous attempts to redirect Defendants to the real issues in this case, they have stubbornly held on to red herring excuses that blame the parents rather than constructively addressing the devastating impact of Defendants' documented failure to address Bryan's unique needs had on the family and his quality of life.

Also, it was clear that the rumors about the house were propagated by DOE employees who never visited the house. For example, Linda Price described how this rumor was fostered. She testified that:

> Q. Who are the skill trainers who stated that the environment in plaintiffs' home was unsanitary and unclean?
>
> A. Oxsana Savenko.
>
> Q. Did Ms. Savenko ever go to the home?
>
> A. No.
>
> Q. Who else?
>
> A. Roberto Valentino.
>
> Q. Did Mr. Valen -- is it a mister? Did Mr. Valentino ever go to the plaintiffs' home?
>
> A. No.

> Q. Who else?
>
> A. Lea Scruton.
>
> Q. Ms. Scruton, did she ever go to the plaintiffs' home?
>
> A. No.
>
> Q. Who else?
>
> A. That's it.

See Exhibit B, Deposition of Linda Price at p. 88: 5-21.

This inflammatory allegation is made on a razor's thin edge, because Ms. Price also testified that neither the DOE nor the DOH did any follow up investigation that would be necessary if this indeed were a bona fide complaint:

> Q. Did you know if the reference to the specific portion of the home -- do you know what that portion of the home was?
>
> A. Yes.
>
> Q. What was the portion?
>
> A. The bedroom and bathroom that Bryan used.
>
> Q. At any time after these skills trainers told you this, the three -- or four told you, did you investigate?
>
> A. No.

> Q. Why not?
>
> A. There was no way that me as an administrator could go investigate a private home.
>
> Q. Did you ask anybody, say the Department of Education, to investigate?
>
> A. No.
>
> Q. Did you ask the Department of Health to investigate?
>
> A. No.
>
> Q. Did you encourage anybody -- your skills trainers to ask the Department of Health to investigate?
>
> A. No.

*See* Exhibit B, Deposition of Linda Price at p. 92: 3-25.

By Defendants own witnesses testimony, the allegations were either made by potential skills trainers who never visited the home, did not warrant further inquiry or investigation and did not account for all of the people who worked in the home regularly who did not complain. These vile and defamatory communications were merely spurred on by the DES, i.e., Judith Radwick, Kate Tolentino and JoAnn Hill. The allegations of an unsanitary home are inadmissible because they are untrue, false, inaccurate and irrelevant.

For the foregoing reasons, Plaintiffs' respectfully request that the Court exclude any evidence, testimony, argument and comment concerning the condition of the Wiles-Bond home, or that it is "unsanitary" or "unclean."

DATED: Honolulu, Hawai`i, January 7, 2008.

STANLEY E. LEVIN
CARL M. VARADY
MICHAEL K. LIVINGSTON

Attorneys for Plaintiffs