ORIGINAL

Of Counsel:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON     4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii  96813
Telephone:  (808) 524-7500
Fax:  (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY            4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii  96813
Telephone:  (808) 523-8447
Fax:  (808) 523-8448
Email: carl@varadylaw.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 07 2008

at 3 o'clock and 15 min ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>    Plaintiffs,<br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>    Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>PLAINTIFFS' MOTION IN LIMINE #9 TO EXCLUDE EVIDENCE, TESTIMONY, ARGUMENT AND COMMENT CONCERNING THE PROPOSED COST OF THE PACIFIC CHILD AND FAMILY PROGRAM; DECLARATION OF STANLEY E. LEVIN; EXHIBITS "A", "B" AND "C" AND CERTIFICATE OF SERVICE<br>**DATE:**  February 26, 2008<br>**TIME:**   9:00 a.m.<br>**JUDGE:** Alan C. Kay<br>**TRIAL DATE:** February 26, 2008 |

**PLAINTIFFS' MOTION IN LIMINE #9 TO EXCLUDE EVIDENCE, TESTIMONY, ARGUMENT AND COMMENT CONCERNING THE PROPOSED COST OF THE PACIFIC CHILD AND FAMILY PROGRAM**

COMES NOW PLAINTIFFS ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND (Plaintiffs), by and through their counsel, move this Court for an in limine order restraining DEFENDANT DEPARTMENT OF EDUCATION, State of Hawai'i, (Defendant) from attempting to introduce evidence, testimony, argument and comment concerning the cost of the Pacific Child and Family program.

This motion is made pursuant to Rule 7 of the Federal Rules of Civil Procedure and all applicable local rules of practice for the United States District Court for the District of Hawaii, Rules 401, 402 and 403 of the Federal Rules of Evidence and bases it upon the Memorandum, Declaration, and exhibits in support of this motion, and the records and files herein.

Plaintiffs anticipate that Defendant will attempt to introduce evidence, testimony, argument and comment concerning the proposed cost of a program provided by Pacific Child and Family (PCF).

Plaintiffs seek an order excluding the cost of the PCF program from evidence in the instant action. Evidence of this sort is inadmissible because it is irrelevant. Alternatively, if it the Court were to find it relevant, any probative value is outweighed by unfair prejudice. The district court has broad discretion to

exclude irrelevant or prejudicial evidence. *See Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005). Except as otherwise provided by the rule, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Fed. R. Evid. Rule 402.

Unfair prejudice will arise from the admission of this evidence. *See* Fed. R. Evid. 403. Plaintiffs contend that admission of the evidence will be unfair and prejudicial because it concerns a wholly unconsummated proposal that followed an incomplete observation of Bryan, his school and his home by PCF director Cara Entz. Additionally, it is wholly inappropriate and irrelevant to use unreliable evidence that the DOE was prepared to spend considerable funds on Bryan as evidence of compliance. Furthermore, financial burden or cost is not a defense to providing a FAPE. Indeed, as recognized by the Court in *Cedar Rapids Comm. Sch. Dist. v. Garret F.*, 526 U.S. 66, 119 S.Ct. 992 (1999), cost based standards were not employed by Congress in drafting 20 U.S.C. §1401(a)(26) and would frustrate Congress' intent and the purposes of the IDEA's goals of "open[ing] the door of public education" to all "qualified children." *Board of Educ. Of Hendrick Hudson Sch. Dist. v. Rowley*, 458 U.S. 176, 192, 102 S.Ct. 3034 (1982).

The DOE has previously demonstrated their willingness to parade this irrelevant and misleading evidence as proof of their effort to provide a program for Bryan. Indeed, instead of allowing Ms. Entz to complete the necessary evaluation

on October 22, 2004, the second day of her two day observation trip, the DOE suddenly whisked her off to Oahu to parade her at a hearing before Judge Kurren where they presented Ms. Entz and her efforts to provide a proposal as evidence of their ability and willingness to spend considerable funds to comply with the various IEPs, Hearings Orders and settlement agreements.

In her deposition, Ms. Entz testified regarding her observation schedule located at Exhibit 8 to her deposition as follows:

> Mr. Ushiroda:   … But now if you go down to October 22nd, '04, Friday, it has two items, DOE/AG meeting from 9:00 to 12:00 and also a meeting with DOE/AG and PCFA at the West Hawai`i District Office. But both appear to be crossed off.
>
> A.   Yes. It all changed and we flew to Honolulu to meet with a judge. And I can't remember his name.
>
> Q.   Oh, okay.
>
> A.   So that kind of took up the whole day.
>
> Q.   And that went from 9:00 to 5:00?
>
> A.   Yes.
>
> \*\*\*
>
> Q.   Do you know why these meetings got cancelled?
>
> A.   I can't really tell you why. We where just told that we needed to go and present our findings to this judge and they wanted to do it before I left. I was leaving, I think, that evening. So they wanted him to hear from me before I left.

4

> Q. And when you say "they," who is "they"?
>
> A. Well, Kate and then there was another attorney, I believe, for the district.
>
> Q. Lono Beamer?
>
> A. What was the name again?
>
> Q. Lono?
>
> A. No. It was a woman.
>
> Q. Holly?
>
> A. Holly, yes.
>
> Q. Holly Shikada?
>
> A. Yes, yes.

*See* Exhibit A, Deposition of Cara Entz at p. 110:11-25; p. 111:3-19.

Later in her deposition, Ms. Entz testified as follows:

> Mr. Varady: ... When you were originally scheduled to go to the Big Island, you were going to spend Thursday making observations and then had meetings on Friday.
> How was it determined that instead of having meetings on Friday, you would be flying over to Honolulu to meet with Judge Kurren?
>
> A. I don't know how it was determined, but Holly or someone said that that's what needed to happen, basically, I guess. I don't – I can't remember why.
>
> Q. So was any –
>
> A. Well, sorry.

5

Q. Go ahead.

A. Except that they wanted me to be able to present my information before I left, I think.

Q. That's what I was going to ask you.

A. Yeah.

Q. Why were you told that you needed to go tell the judge what at least the outline of your proposal was going to be, what was explained to you?

A. It wasn't really explained to me.

Q. Okay.
You were just told this is what you're going to do next?

A. They wanted me to present it to the judge before I left Hawaii. Yeah, I mean, I don't remember the reason why.

Q. And I think what you said was Shelby [Floyd] was already in Honolulu at that time, she was not traveling with you?

A. No.

Q. And when you were told you would be meeting with Judge Kurren, she was not party to that discussion; is that correct?

A. Correct.

*See* Exhibit A, Deposition of Cara Entz at p. 303:25; p. 304:1-25, p. 305:1-8.

Despite having concerns regarding the discrepancy between what the DOE represented in advance regarding Bryan's high levels of needs, versus what she

observed firsthand, Ms. Entz was not allowed to meet with the DOE and resolve those concerns on Friday as contemplated by the schedule. PCF therefore made alternative proposals based on the DOE's description versus her observation.

However, any effort to introduce evidence of the PCF proposal is wholly disingenuous for a number of reasons. First, there was never a final contract between the DOE and PCF and no efforts were made to negotiate a final accepted program. A proposal was received on November 23, 2004 and yet the DOE did nothing further to accept, reject or modify the proposal. As exemplified in this following exchange regarding the November proposal, Ms. Entz testified that she did not hear anything back from the DOE:

> Q. Now, after this proposal was sent to Kate and Shelby on November 23rd, did you receive any response, feedback?
>
> A. No, I don't remember any feedback. I may have followed up with phone calls to see what was going on. I – yeah, that's about all I can recall. I don't remember a lot of feedback or --
>
> Q. Do you have any –
> Do you have a recollection or perhaps speaking with Kate Tolentino about this proposal?
>
> A. No, actually, I don't recall that. I have a vague recollection, but I couldn't – I'm not sure what the conversation was about.
>
> Q. A vague recollection of –
>
> A. Of having a conversation with her.

7

> Q. With Kate?
>
> A. Following this, yes, but not remembering.
>
> Q. Okay.
> Other than this vague recollection, do you have any recollection of further work that was done once this proposal was sent out?
>
> A. No.
>
> Q. Just never heard back?
>
> A. Right.
>
> \*\*\*
>
> Q. Did you receive any information that the DOE or the school district was willing to pay for this proposal?
>
> A. No.
>
> Q. Do you know or have any information as to whether the DOE approved this proposal?
>
> A. No information.

*See* Exhibit A, Deposition of Cara Entz at p. 216: 23-25; p. 217:1-21; p. 218:13-20. No steps were taken by PCF to register their business in Hawaii or to employ people in Hawaii because the proposal was not accepted and they would not undertake formal measures without it. *See* Exhibit A, Deposition of Cara Entz at pp. 282: 14-23.

Secondly, at the time PCF submitted a proposal, the DOE was actively looking at various residential placements for Bryan on the mainland. As of

8

November 16, 2004, the following institutions had space available and were under consideration by the DOE: Heartspring School in Kansas, Indiana Developmental Training Center, The Center for Discovery in New York and Chileda in Wisconsin. *See* Exhibit "B" which is Ex. 185, November 16, 2004 Facsimile Transmittal from Cynthia Esaki to Kate Tolentino. See Exhibit "C" which is Ex. 186, November 17, 2004 Facsimile Transmittal from Kate Tolentino to Holly Shikada and Lono Beamer.

Defendants may seek to introduce evidence that the proposed cost of a PCF program indicates that the DOE was prepared spend a significant amount of funds to provide Bryan's program as required. Plaintiffs nonetheless argue that any probative value is substantially outweighed by the risk that the jury would be confused or mislead by the PCF proposal. Evidence of some proposed amount of money that may have spent contracting with PCF is wholly irrelevant. Not only did the DOE not fund a PCF proposal, they did not respond to it or negotiate with them to reduce the proposal to a final contract. There was no contract between the DOE and PCF for providing Bryan's program. More importantly, any evidence of the cost of PCF will only mislead and confuse the jury because not only was there no money spent on the PCF proposal, it is of no consequence whatsoever, because the DOE has to provide FAPE no matter the cost.

The cost of a PCF program is inadmissible because it is irrelevant. Cost is not a defense to providing a FAPE. *Cedar Rapids Comm. Sch. Dist. v. Garret F.*, 526 U.S. 66, 77-78, 119 S.Ct. 992, 999 (1999). Therefore, a necessary corollary is that evidence of cost cannot be used to demonstrate that FAPE has been provided. This type of prejudicial, misleading and irrelevant evidence is untrustworthy and does not help the jury evaluate the liability issues in this case.

Any probative value is outweighed by unfair prejudice as proscribed by Fed. R. Evid. 403. For the foregoing reasons, Plaintiffs' respectfully request that the Court exclude any evidence, testimony, argument and comment concerning the PCF proposal.

DATED: Honolulu, Hawai`i, January 7, 2008.

_____
STANLEY E. LEVIN
CARL M. VARADY
MICHAEL K. LIVINGSTON

Attorneys for Plaintiffs