395298.1

**MARK J. BENNETT #2672-0**
Attorney General, State of Hawaii
**GARY K.H. KAM #4391-0**
**GEORGE S. S. HOM #2487-0**
**HOLLY T. M. SHIKADA #4017-0**
Deputy Attorneys General
Department of the Attorney General, State of Hawaii
235 S. Beretania Street, Suite 304
Honolulu, Hawaii 96813
Telephone No. (808)586-1255
Facsimile No. (808)586-1488
E-Mail: Gary.K.Kam@hawaii.gov

WATANABE ING & KOMEIJI LLP
A Limited Liability Law Partnership
**JOHN T. KOMEIJI #2498-0**
**GREGG M. USHIRODA #5868-0**
**LEIGHTON M. HARA #7826-0**
**ROSS T. SHINYAMA #8830-0**
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii 96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-Mail: gushiroda@wik.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent,<br><br>Defendants. | CIVIL NO. CV 04-00442 HG/BMK<br>CIVIL NO. CV 05-00247 HG/BMK<br>CONSOLIDATED<br>(Other Civil Action)<br><br>**DEFENDANT DEPARTMENT OF EDUCATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE # 1 TO EXCLUDE THE TESTIMONY OF RICHARD GOKA, M.D.; DECLARATION OF GREGG M. USHIRODA; EXHIBIT "A"; CERTIFICATE OF SERVICE** |

) **HEARING:**
) DATE: January 24, 2008
) TIME: 10:00 a.m.
) JUDGE: Honorable Alan C. Kay
) **TRIAL: February 26, 2008**
)

**DEFENDANT DEPARTMENT OF EDUCATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE # 1 TO EXCLUDE THE TESTIMONY OF RICHARD GOKA, M.D.**

Comes now Defendant DEPARTMENT OF EDUCATION("DOE") by and through its attorneys, WATANABE ING & KOMEIJI LLP, and hereby submits its Memorandum in Opposition to Plaintiffs' Motion in Limine # 1 to Exclude the Testimony of Richard Goka, M.D. filed on January 7, 2008 (hereinafter "Plaintiffs' MIL No. 1").

**I. INTRODUCTION**

Plaintiffs ANN KIMBALL-WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND ("Bryan"), a minor (collectively "Plaintiffs"), have brought this lawsuit against the DOE seeking money damages under § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"). Plaintiffs allege that the DOE violated Section 504 by intentionally discriminating against Bryan solely by reason of his disability and/or retaliating against Plaintiffs in direct response to Plaintiffs' advocacy for Bryan's special education needs.

By the present motion, Plaintiffs seek to exclude the testimony of Richard Goka, M.D. ("Dr. Goka"). As more fully set forth below, Plaintiffs' arguments are meritless, unfounded,

baseless, or simply miss the point. Clearly, Dr. Goka is qualified to render an expert opinion under the Federal Rules of Evidence. He qualifies as an expert; his expert testimony is reliable; and his expert testimony will assist the jury in this case. As a result, Plaintiffs MIL No. 1 must be denied.

As part of the present motion, Plaintiffs also assert a claim for spoliation of evidence. Plaintiffs complain that Dr. Goka "destroyed" handwritten notes that amounted to Plaintiffs being deprived of potentially key evidence. On the contrary, Plaintiffs have not been prejudiced in any way. As more full explained below, Plaintiffs have had ample opportunity to learn of the information contained in Dr. Goka's handwritten notes. Any potentially key evidence that Plaintiffs believe they have been deprived of can only be attributed to their own actions. As a result, Plaintiffs' claim of spoliation must fail.

## II. ARGUMENT

Generally, according to Rule 702 of the Federal Rules of Evidence, expert testimony is admissible if it satisfies three broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that qualifies the witness as an expert; (2) the witness' opinions must be reliable; and (3) the witness' opinions must assist the trier of fact. The expert testimony of Dr. Goka satisfies all three broad requirements.

A. Dr. Goka is Qualified as an Expert in this Case.

Plaintiffs argue that Dr. Goka is not an economist and therefore is not qualified to assess the cost of Bryan's services in the present case.[1] Clearly, one does not need to be an economist in order to assess the cost of the services that were provided for in Dr. Siegel's expert report. Indeed, Plaintiffs cite no authority stating the contrary.

Under FRE Rule 702, a witness qualifies as an expert witness if he has sufficient "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. This rule "contemplates a broad conception of expert qualifications" and was "intended to embrace more than a narrow definition of a qualified expert." Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004). A witness need not have specialized knowledge in a specific area to qualify as an expert; **general qualifications are sufficient.** In re Silicone Gel Breast Implants Prods. Liab. Litig., 318 F. Supp. 2d 879, 889 (C.D. Cal 2004)(emphasis added)(citing Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994)); see also Waldorf v. Shuta, 142 F.3d 601, 625

[1] Plaintiffs also argue that Dr. Goka is not qualified as an expert because he is not an expert in autism. Clearly, one does not need to be an expert in autism to measure the cost of the services to be provided. Moreover, as more fully set forth infra, Dr. Goka is not expressing an opinion as to whether or not any of the particular services set forth in Dr. Exhibit "A" at p. 84, lns. 11-14. As a result, whether or not Dr. Goka is an expert in autism is irrelevant.

(3d Cir. 1998)("At a minimum, a proffered expert must possess skill or knowledge **greater than the average layman**")(emphasis added).

Dr. Goka has an extensive background in physical medicine and rehabilitation. He practiced physical medicine and rehabilitation for over twenty-nine (29) years. See Deposition of Richard S. Goka, M.D. taken on September 21, 2007 ("Goka Deposition") at p. 175, lns. 15-21, attached as Exhibit "A". He did his residency in physical medicine and rehabilitation at the University of Utah, College of Medicine from 1978-1981. He is board certified by the American Board of Physical Medicine and Rehabilitation. From 1981 until 1989, he was a consultant for the State of Utah, Department of Education's Rehabilitation Services. He was also a clinical instructor of physical medicine and rehabilitation at the University of Utah, College of Medicine for seven (7) years. He is currently a member of the Community Advisory Committee for Fresno City College, Disabled Students Programs and Services. See Curriculum Vitae of Richard S. Goka M.D., attached as Exhibit "B". He has also been identified as an expert (for plaintiffs, defendants, and as the treating physician) in over one hundred (100) cases in which his involvement included testifying in depositions and trials. See Exhibit "A" at p. 10, lns. 8-12; Case Log of Richard S. Goka M.D., Updated as of June 2007, attached as Exhibit "C". Dr. Goka

has also created and analyzed numerous life care plans over his twenty-nine (29) years of practice, and as an expert witness.

Clearly, Dr. Goka's extensive "knowledge, skill, experience, training, [and] education" in the field of physical medicine and rehabilitation qualifies him to render an expert opinion as to the cost of services that Bryan will require as set forth in Dr. Siegel's expert report. As a practicing physician in physical medicine and rehabilitation, he gained a vast amount of knowledge, above and beyond that of a lay person, as to what the costs were for, for example, a psychiatrist, physical therapy, occupational therapy, etc. As a result, Dr. Goka is obviously qualified to render an expert opinion in this case.

**B. The Expert Opinions of Dr. Goka are Reliable.**

Plaintiffs argue that the expert opinions of Dr. Goka are unreliable. Clearly, this is not the case. As the Ninth Circuit Court of Appeals stated in Daubert v. Merrel Dow Pharmaceuticals, 43 F.3d 1311, 1316 (9th Cir. 1995), in determining whether an expert's opinions are reliable, the court must analyze "not what the experts say, but what basis they have for saying it." In the present case, as set forth below, Plaintiffs assert several, equally meritless, attacks on the bases of Dr. Goka's expert opinions.

Plaintiffs first argue that the expert testimony of Dr. Goka is unreliable because he relies on inadmissible

evidence, specifically the expert opinions of Bryna Siegel, Ph.D. ("Dr. Siegel"), to render his own expert opinions.[2] Plaintiffs make this specious allegation despite the fact that this Court has made no finding that the expert opinions of Dr. Siegel are inadmissible. Brashly, Plaintiffs seem to rest their hopes on this Court granting Plaintiffs' Motion in Limine # 2 to Exclude the Testimony of Bryna Siegel ("Plaintiffs' MIL No. 2"), which is scheduled to be heard at the same time as the present motion. Considering, inter alia, the extensive background and significant amount of training that Dr. Siegel possesses in clinical psychology, the fact that this Court has previously qualified Dr. Siegel as an expert, the clear legal authority in Hawaii permitting expert testimony by psychologists who are not licensed,[3] the absence of any evidentiary authority supporting

---

[2] Plaintiffs provide an artful excerpt of the Goka Deposition for the proposition that Dr. Goka, in his clinical practice, would not rely on a clinical diagnosis done by someone who is not properly credentialed. See Plaintiffs MIL No. 1 at 7-8. While Plaintiffs' interpretation of Dr. Goka's testimony is flawed, Plaintiffs' argument is clearly misplaced. An expert may rely on a broad range of facts and data to render his expert opinion. This even includes facts and data that are inadmissible. See infra. Notably, Plaintiffs point to no evidentiary or legal authority precluding an expert, in rendering his expert opinions, from relying on information that he would not use in his **clinical** practice. Clearly, the standards concerning the facts and data a physician may use in his clinical practice is far higher than the standards concerning the facts and data an expert may use.

[3] See L.M. v. Dep't of Education, 2006 WL 2331031 at * 9 n 5 (citing Haw. Rev. Stat. § 465-3(d)).

Plaintiffs' position, and the fact that the expert opinions of Dr. Siegel are based on scientifically valid principles, the DOE respectfully contends that it is unlikely that this Court will grant Plaintiffs' MIL No. 2.  See generally Defendant Department of Education's Memorandum in Opposition to Plaintiffs' Motion in Limine # 2 to Exclude the Testimony of Bryna Siegel.  If this Court reaches such a result, Plaintiffs' argument is futile.

Regardless, Plaintiffs cite to no legal or evidentiary authority stating that an expert witness is precluded from relying on inadmissible evidence in rendering his expert opinion. Indeed, Rule 703 of the Federal Rules of Evidence provides the following:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, **the facts of data need not be admissible in evidence in order for the opinion or inference to be admitted.**  Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703 (emphasis added).  Clearly, the Federal Rules of Evidence does not provide for a blanket exclusion of all inadmissible evidence.  As a result, Plaintiffs' conclusory

allegation that the expert testimony of Dr. Goka should be excluded because Dr. Goka relied on inadmissible evidence fails.[4]

In further support of their position that the expert testimony of Dr. Goka is unreliable, Plaintiffs contradict themselves.  First, Plaintiffs argue that the expert testimony of Dr. Goka should be excluded because "[h]e relied directly and exclusively on the opinions reached by [Dr. Siegel]."  See Plaintiffs' MIL No. 1 at 3.  Then, Plaintiffs reverse their position and argue that the testimony of Dr. Goka should be excluded because he "does not attempt to provide any bases for his recommendations that Bryan's services, treatments, therapies be dramatically reduced."  See Plaintiffs' MIL No. 1 at 9.  Aside from, and regardless of, Plaintiffs' clear contradiction, both arguments are simply misplaced.

As stated supra, Plaintiffs fail to sufficiently argue that Dr. Goka's expert testimony should be excluded because he relies on

---

[4] Plaintiffs do argue that Dr. Goka "relied on no approach that is generally accepted."  See Plaintiffs MIL No. 1 at 16.  Plaintiffs make this argument despite the fact that they failed to inquire in the Goka Deposition as to how Dr. Goka came to his cost conclusions.  Dr. Goka was completely candid in his deposition.  He would have gladly explained to Mr. Varady why, for example, he came to the conclusion that "X service would cost Y amount."  Obviously, such explanation would be based on Dr. Goka's vast experience, training, and education, all of which are proper for an expert to base his expert opinion on.  However, Mr. Varady failed to engage in any such line of questioning.  To now preclude Dr. Goka from testifying as to his expert opinions because of Plaintiffs' failures would be unfairly prejudicial to the DOE.

the expert opinions of Dr. Siegel. Furthermore, the mere fact that Dr. Goka relied on Dr. Siegel's expert opinions, exclusive of Plaintiffs' specious allegation of inadmissibility, is obviously not a proper basis to exclude expert testimony. As a result, the Plaintiffs' first argument clearly fails.

Plaintiffs' second argument also fails. A quick look at the Goka Deposition will help clear up Plaintiffs' confusion:

(By Mr. Varady)

Q. Okay. So you can say you relied on [Dr. Siegel's opinions]; is that correct?

A. True.

Q. But your reliance on them was for one purpose only and that was to calculate the cost of specific services; is that correct?

A. True.

Q. You were not making an independent assessment as to whether or not those particular services were necessary; is that correct?

A. That is true.

See Goka Deposition at p. 84, lns. 4-14, attached as Exhibit "A". Therefore, it is quite clear that any recommendation on the appropriate services, treatments, and therapies for Bryan were made by Dr. Siegel. Thus, Plaintiffs' argument that Dr. Goka "does not attempt to provide any bases for his recommendations that Bryan's services, treatments, therapies be dramatically

reduced" is futile because it was not his recommendations.[5]

**C. The Expert Testimony of Dr. Goka will Assist the Jury.**

The ultimate inquiry as to the admissibility of expert testimony is whether it will assist the trier of fact. Here, the expert opinions of Dr. Goka clearly will assist the jury. Dr. Goka's expert testimony assists the jury in quantifying Dr. Siegel's expert opinions set forth in her expert opinion. Without Dr. Goka's expert testimony, if the jury finds Dr. Siegel's expert opinions to be the most credible, the jury will have no means to properly quantify damages in this case (of course, this is assuming, arguendo, that Plaintiffs prevail on their liability claims). As a result, it is obvious that the expert testimony of Dr. Goka will assist the jury in this case.

**D. There is No Spoliation of Evidence.**

Plaintiffs claim for spoliation of evidence is clearly grasping at straws. As Dr. Goka stated in his deposition, the "handwritten notes" in question were just a few questions concerning issues that he wanted verified during Loretta Leuken's

---

[5] Plaintiffs also argue that the testimony of Dr. Goka should be excluded because Dr. Goka did not perform his own independent evaluation of Bryan. Again, Dr. Goka is not rendering an expert opinion as to whether or not the particular services in Dr. Siegel's expert report are indeed necessary. See Exhibit "A" at p. 84, lns. 11-14. Dr. Goka is simply rendering an expert opinion as to costs "reasonable" and "obtainable" within "what Dr. Siegel felt was a reasonable treatment plan." See Exhibit "A" at p. 83, lns. 21-23. Clearly, this does not require an independent evaluation, or any evaluation of Bryan.

deposition. See Exhibit "A" at p. 158, lns. 16-19; p. 160, lns. 5-6. Dr. Goka verbally discussed these questions with Mr. Ushiroda. See Exhibit "A" at p. 160, lns 16-17. Subsequently, as a result of "cleaning house," not as a result of deliberately attempting to deprive Plaintiffs of his "handwritten notes," Dr. Goka threw the notes away. See Exhibit "A" at p. 161, lns 9-14.

Indeed, Plaintiffs have not been prejudiced in any way. Dr. Goka testified that the questions on his handwritten notes were answered in Loretta Leuken's deposition. See Exhibit "A" at p. 158, lns. 16-22. Therefore, a reasonable inference is that any questions that were on Dr. Goka's handwritten notes have been known by Plaintiffs since Loretta Leuken's deposition. Furthermore, as the following deposition excerpt illustrates, Dr. Goka was very candid in attempting to provide Plaintiffs with the information contained on his handwritten notes:

   (By Mr. Varady)

      Q.   What were the questions?

      A.   As I recall, one of them was why -- and I tried to explain this earlier, when you cut me off -- why had Ms. Leukens not changed any of her figures, was there any reason that she was continuing, you know, to go on with what she had in her existing plan, because they were identical, and I wanted to know that. I mean, you know, I assume she discussed it with Dr. LeGoff, and I wanted to know had Dr. LeGoff changed his opinions, because Dr. LeGoff, in his supplemental report, did not specifically mention the May Institute,

as I recall. So I didn't know if he was changing -- he was changing gears or not. That was the question -- main question I had.

The other thing is --

Q. Let me stop you there.

MR. USHIRODA: No. Let him finish. Let him finish.

MR. VARADY: I'm going to do a follow-up question.

MR. USHIRODA: No. Let him finish. You cut him off again.

MR. VARADY: He's not here to give a narrative.

MR. USHIRODA: He is here to answer your questions. That's what he's doing, so please let him finish his answer.

See Exhibit "A" at p. 164-65, lns 18:10. Needless to say, Mr. Varady did not allow Dr. Goka to finish his answer. As a result, Plaintiffs had their chance to question a very candid Dr. Goka. Any "key evidence" that Plaintiffs allege they have been deprived of is a result of their own counsel's actions. Therefore, Plaintiffs' claim of spoliation of evidence must fail.

**III. CONCLUSION**

Based on the foregoing, the DOE respectfully requests that this honorable Court deny Plaintiffs' Motion In Limine # 1 to Exclude the Testimony of Richard Goka, M.D.

DATED: Honolulu, Hawaii, January 14, 2008.

/s/ Gregg M. Ushiroda
JOHN T. KOMEIJI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendants