395249.1

**MARK J. BENNETT       #2672-0**
Attorney General, State of Hawaii
**GARY K.H. KAM         #4391-0**
**GEORGE S. S. HOM      #2487-0**
**HOLLY T. M. SHIKADA #4017-0**
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
235 S. Beretania Street, Suite 304
Honolulu, Hawaii 96813
Telephone No. (808)586-1255
Facsimile No. (808)586-1488
E-Mail: Gary.K.Kam@hawaii.gov

WATANABE ING & KOMEIJI LLP
A Limited Liability Law Partnership
**JOHN T. KOMEIJI       #2498-0**
**GREGG M. USHIRODA     #5868-0**
**LEIGHTON M. HARA      #7826-0**
**ROSS T. SHINYAMA      #8830-0**
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii  96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-Mail: gushiroda@wik.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>          Plaintiffs,<br><br>     vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent,<br><br>          Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL NO. CV 04-00442 ACK/BMK
CIVIL NO. CV 05-00247 ACK/BMK
CONSOLIDATED
(Other Civil Action)

**DEFENDANT DEPARTMENT OF EDUCATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY OF BRYNA SIEGEL; DECLARATION OF GREGG M. USHIRODA; EXHIBITS "A"-"C"; CERTIFICATE OF SERVICE**

```
                                    )
                                    )   HEARING:
                                    )   DATE:  January 24, 2008
                                    )   TIME:  10 a.m.
                                    )   JUDGE: Honorable Alan C. Kay
                                    )   TRIAL: February 26, 2008
_____    )
```

### DEFENDANT DEPARTMENT OF EDUCATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY OF BRYNA SIEGEL

Comes now Defendants DEPARTMENT OF EDUCATION("DOE"), by and through its attorneys, WATANABE ING & KOMEIJI LLP, and hereby submits the following memorandum in opposition to Plaintiffs' Motion in Limine No. 2 which seeks to exclude the testimony of Defendant's expert Bryna Siegel, Ph.D.  As Dr. Siegel remains imminently qualified to offer opinions concerning Bryan Wiles-Bond's future development and outlook and has already been qualified as an expert by this Honorable Court in <u>L.M. v. Department of Education</u>, 2006 WL 2331031 at *9 (D. Hawaii 2006) (Honorable Alan C. Kay), Plaintiffs' motion must be denied.

I.    <u>BACKGROUND</u>

This case arises from an allegation by Plaintiffs ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, Bryan Wiles-Bond, a minor (collectively "Plaintiffs"), that Bryan, who is autistic, was intentionally discriminated against on the basis of his disability when the Defendant DEPARTMENT OF EDUCATION ("DOE") allegedly failed to

- 2 -

provide Bryan with the education and related services that Bryan
was purportedly entitled to as a disabled individual.

In the DOE's Final Pretrial Statement, filed on October
16, 2007, the DOE identified Bryna Siegel, Ph.D. ("Siegel") as an
expert who is expected to testify as to, among other things, "her
observations and examinations of Bryan, her review of reports
submitted by Plaintiffs' expert witnesses, and her assessment of
Bryan's developmental disability."  Notwithstanding her numerous
credentials and extensive experience in the field of behavioral
development and autism, Plaintiffs have argued that Dr. Siegel is
not qualified to render an expert opinion because she is not a
licensed clinical psychologist in the states of Hawaii nor
California and any psychological assessment of Bryan is therefore
in violation of the Hawaii clinical licensure statute and Hawaii
Revised Statutes ("HRS") § 465-2 and California Business and
Professional Code § 2910.  Plaintiffs also argue that Dr.
Siegel's opinions should be excluded because they were rendered
for purposes of litigation and because she relies on a report
that is twenty-years old.  Plaintiffs' arguments are misguided
and totally irrelevant as to whether Dr. Siegel is qualified to
render an expert opinion at trial.

This Court has previously determined this exact same
issue with respect to Dr. Siegel in the case L.M. v. Department
of Education, 2006 WL 2331031, (D. Haw. 2006).  As in L.M., this

- 3 -

Court should now preclude Plaintiffs' antiquated argument that Dr. Siegel and/or her report should be ignored and/or excluded during this litigation.

## II.   ARGUMENT

### A.   Dr. Siegel is Suitably Qualified to Render An Expert Opinion in this Case.

Dr. Siegel has an extensive background and a significant amount of training in clinical psychology.  She is an expert in the fields of autism and child development and is suitably qualified to render an expert opinion in this Court. Dr. Siegel has had over thirty (30) years of training and research in the areas of clinical psychology, child development, developmental psychopathology, and autism.  She is currently the Director of the Pervasive Developmental Disorders Clinic at the Children's Center at the Langley Porter Psychiatric Institute at the University of California San Francisco, and serves as an adjunct professor of child and adolescent psychiatry at the Institute.  See Curriculum Vitae of Bryna Siegel, Ph.D, attached hereto as Exhibit "A".

Under FRE Rule 702, a witness qualifies as an expert witness if he has sufficient "knowledge, skill, experience, training, or education."  This rule "contemplates a broad conception of expert qualifications" and was "intended to embrace more than a narrow definition of qualified expert."  Hangarter v. Provident Life and Accident Insurance Company, 373 F.3d 998, 1015

- 4 -

(9th Cir. 2004).  A witness need not have specialized knowledge in a specific area to qualify as an expert; general qualifications are sufficient.  <u>In re: Silicone Gel Breast Implants Products Liability Litigation</u>, 318 F.Supp.2d 879, 889 (C.D. Cal. 2004)(emphasis added)(citing <u>Paoli Railroad Yard PCB Litigation</u>, 35 F.3d 717 (3rd Cir. 1994)); <u>see also</u> <u>Waldorf v. Shuta</u>, 142 F.3d 601, 625 (3rd Cir. 1998)("At a minimum, a proffered expert must possess skill or knowledge greater than the average layman").

Dr. Siegel is clearly qualified to render expert opinions in this matter and her testimony will ultimately aid the jury in understanding the developmental intricacies of a severely autistic child like Bryan Wiles-Bond.  Dr. Siegel holds a Bachelor of Arts degree in Clinical Psychology, a Masters Degree in Education from Stanford University, and a Ph.D. in Child Development from Stanford University.  Dr. Siegel has also completed extensive post-doctoral fellowships in Adolescent Development at the Boys Town Center in Stanford, California, as well as in Psychiatric Research Methods and Developmental Psychopathology at Stanford University School of Medicine.  Before working at the Langley Porter Psychiatric Institute, Dr. Siegel served as a senior research associate in the Department of psychiatry and Behavioral Sciences at the Stanford University School of Medicine.

- 5 -

As reflected in her attached curriculum vitae, Dr. Siegel was the recipient of numerous honors and awards for her work in the area of autism and child development.  She is a member of the American Psychological Association, the Autism Society of America, Society for Research in Child Development, the International Society for Research in Child and Adolescent Psychiatry and Psychology, and a member of the Autism Society of America Foundation Scientific Advisory Board.  She has been an invited academic lecturer at numerous national conferences on the subject of autism and child development, served as a visiting professor in the Department of Psychiatry at the University of Hawaii and elsewhere, and has authored and published countless books and academic articles on autism, child development, child psychiatry, developmental disorders, and adolescent behavioral studies.

Dr. Siegel has been qualified to testify in over sixty (60) state Fair Hearings, Superior Court, and Court of Appeals cases on services for the developmentally disabled in several states and Canada.  Notably, Dr. Siegel has **never** been disqualified as an expert although she clearly was not licensed as a clinical psychologist in certain jurisdictions where she testified.  Dr. Siegel's experience, training and academic background readily establishes her skill and knowledge in the

area of autism and child development and qualifies her to render expert testimony in this case.

**B.    This Court has Previously Qualified Dr. Siegel As An Expert**

Plaintiffs have already attempted to exclude Dr. Siegel and/or her opinions earlier in this litigation.  In May, 2006, counsel for Plaintiffs refused to allow Dr. Siegel to even observe Bryan solely because she was not licensed as a clinical psychologist in the states of Hawaii or California.  Basically, Plaintiffs argued that Dr. Siegel would be unlawfully practicing clinical psychology without a license if she were allowed to observe and evaluate Bryan.  Whether or not Dr. Siegel is licensed in the state of Hawaii or California, however, has absolutely no bearing on whether she qualifies to testify as an expert witness at trial.

Indeed, Hawaii law specifically permits expert testimony by psychologists who are not licensed.  See L.M. v. Dep't of Education, 2006 WL 2331031 *9 fn5 (citing H.R.S. §465-3(d)).  Furthermore, Dr. Siegel is qualified to render clinical opinions as she has been performing clinical work in California for the last 18 years along side a licensed clinician.  See Deposition of Bryna Siegel, Ph.D. at 57:1-18, attached hereto as Exhibit "B".

Nothing in the Federal Rules of Evidence requires a testifying expert witness to be licensed in the jurisdiction in

- 7 -

which he or she is offering testimony.  See generally, Fed. R.
Evid. 702, 703, 704 and 705.

There is also no legal basis to support the exclusion
of Dr. Siegel and/or her report.  In fact, this Court, in the
L.M. case, addressed the exact same issue with respect to
Dr. Siegel and noted the following:

> Plaintiffs offer no evidentiary rule or legal
> basis to strike expert testimony based on a
> psychological assessment of a student
> performed by a person who is not licensed in
> Hawaii.  The actual performance of the
> assessment may not have been conducted
> pursuant to Hawaii licensing laws, but that
> does not alter the witness's qualifications
> or ability to provide testimony in the field
> of her expertise.

See L.M. v. Department of Education, 2006 WL 2331031 at *9, n.6.
This Court ultimately concluded in the L.M. case that it had no
basis to reverse the Hearing Officer's finding that Dr. Siegel
"is qualified to testify as an expert in the field of educational
psychology based on her educational background, publications,
former and current positions, and experience in the field."  See
L.M., 2006 WL 2331031 at *9.

This Court should now hold similarly, and preclude
Plaintiffs from arguing that Dr. Siegel and/or her report should
be ignored or otherwise excluded simply because she is not a
licensed clinical psychologist in the state of Hawaii or
California.  A license to practice is simply not required by any
legal authority or evidentiary rule, and therefore has absolutely

no bearing on whether Dr. Siegel qualifies to render an expert opinion in this case.  As her impressive curriculum vitae readily evidences, Dr. Siegel is qualified to offer expert testimony, and Plaintiffs should not be allowed to unfairly hinder that process.

      C.    **Dr. Siegel's Opinions Are Based On Scientifically Valid Principles**

Plaintiffs' also seek to misguide this court by disingenuously arguing that Dr. Siegel's opinions are unsupported by "objective, verifiable evidence."  <u>See</u> Motion at 10. Plaintiffs proffer conclusory and unsupported dicta, characterizing Dr. Siegel as the "quintessential expert for hire" notwithstanding the fact that Plaintiffs' so-called autism experts, Drs. LeGoff and Freeman, can also be characterized as experts retained to testify specifically for this litigation.

Despite Plaintiffs' attempts to besmirch Dr. Siegel's professional reputation through the filing of this public motion in limine –which is even more egregious since the <u>L.M.</u> case where Mr. Varady was also counsel of record, conclusively established that Dr. Siegel was qualified to render expert opinions– Dr. Siegel should be allowed to testify as an expert in autism as her opinions were based upon "scientifically valid principles."  <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 43 F.3d 1311, 1317-18 (9th Cir. 1995).

Although Plaintiffs provide an artful excerpt of Dr. Siegel's testimony in an attempt to demonstrate that Dr. Siegel

- 9 -

is an "expert for hire" and that her opinions are "extremely unreliable" because she failed to "support her opinions with other objective, verifiable evidence", a brief review of the full passage Plaintiffs' cite conclusively demonstrates that Dr. Siegel relied upon scientifically valid principles and methodology in forming her opinions.  See Motion at 10.

In detailing the data and observations she relied on in forming her opinions Dr. Siegel testified as follows[1]:

(By Mr. Varady)

Q.   Now, these opinions are formed exclusively for this litigation; is that correct?

A.   I am sorry, could you restate that?

Q.   Yeah.  They were formed for your work as an expert witness in this litigation, and not for any kind of independent research?

A.   My opinions?

Q.   Yes.

A.   Yes.

Q.   **Other than the data identified in this report, were there any other data that you referred to in forming your report?**

A.   **I think that this is probably all the documents I had in my possession at that time.**

Q.   **Was there any literature concerning autism that you reviewed?**

---

[1]The bolded portion of the transcript is that portion which Plaintiffs' purposefully failed to direct to court in making their fallacious assertion that Dr. Siegel failed to support her opinions with objective evidence.

A.    To prepare the report?

Q.    Yes.

A.    I think just – just in general, what my basis of
      knowledge is for keeping up on the literature in
      general.

Q.    Nothing specific, though; is that correct?

A.    I don't believe so.

Q.    Can you describe the methodology you used in
      forming your opinions?

A.    Well, as it says here, what I did was, I reviewed
      the records.  I observed Bryan at the Keystone
      School, and I interviewed staff at Keystone
      School.

See Deposition of Dr. Siegel, attached as Exhibit "B" at 75:23-
25, 76:1-25, and 77:1-2.  Clearly, Dr. Siegel relied on
independent evaluations of Bryan Wiles-Bond, interviews, and
records.  If Plaintiffs wanted more detail as to Dr. Siegel's
methodologies, counsel for Plaintiffs should have asked these
questions at her deposition.

    D.    Dr. Siegel Is Qualified to Give An Opinion As To
          Bryan's Current Levels of Function

    Plaintiffs appear to argue that Dr. Siegel should be
precluded from testifying as to Bryan Wiles-Bond's projected
level of function or prognosis because she relied on outdated
studies.  Plaintiffs, however, fail to provide any evidence or
support for their conclusory allegations.  Plaintiffs appear to
argue that an article which Dr. Siegel relied upon in forming her

- 11 -

opinions, "Autism children grow up: An eight to twenty-four-year follow-up study" is "irrelevant" and "misleading". Opposition at 12; see also Wolf L., Goldberg B. "Autistic children grow up: an eight to twenty-four year follow-up study" Can J Psychiatry 1986 Aug; 31 (6):550-6, attached hereto as Exhibit "C".

Notwithstanding Plaintiffs' conclusory and speculative allegations, Plaintiffs' proffer no evidence that any of the articles or studies which Dr. Siegel relied upon in forming her expert opinions are irrelevant. Indeed, the article attached as Exhibit "C" is a longitudinal study. Dr. Siegel admitted that the article was dated and that practice standards have changed since the article was authored. However, she notes that it is a "classic article in the literature" and it is the progeny of a line of longitudinal studies of autism outcomes. See Deposition of Dr. Siegel at 175:13-25; 176:1-23.

Again, Plaintiffs have failed to ascertain, in Dr. Siegel's deposition, how she relied upon the longitudinal study set forth in Exhibit "C" and have also failed to demonstrate that such a report will be inherently misleading to a jury. Obviously, the article is relevant to Dr. Siegel's opinions concerning Bryan Wiles-Bond's prognosis and will not be misleading to the jury as Dr. Siegel will have an opportunity to explain how and why the study is relevant to Bryan Wiles-Bond's future development from childhood to adulthood with autism.

- 12 -

Therefore, Dr. Siegel should be allowed to testify as an expert in autism.

Assuming _arguendo_ that the report is deemed to be "outdated" and thus "too old" to serve as a proper basis for Dr. Siegel's opinions, this should not be the basis for excluding her testimony in its entirety.  Such a heavy handed approach which Plaintiffs' seek is akin to throwing the baby out with the bath water.  If anything, Plaintiffs should only be allowed to cross-examine Dr. Siegel as to the report to impeach her credibility and should not be allowed to preclude her from testifying at trial.

## III. <u>CONCLUSION</u>

Under these circumstances and based upon the foregoing authorities, it is respectfully requested that this Honorable Court deny Plaintiffs' Motion in Limine No. 2, and that Dr. Bryna Siegel be qualified as an expert in autism and that she be allowed to testify as to these opinions at trial.

DATED:  Honolulu, Hawaii, January 14, 2008.

<u>/s/ Gregg M. Ushiroda</u>
JOHN T. KOMEIJI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendant

- 13 -