395367.1
**MARK J. BENNETT**       #2672-0
Attorney General, State of Hawaii
**GARY K.H. KAM**         #4391-0
**GEORGE S. S. HOM**      #2487-0
**HOLLY T. M. SHIKADA** #4017-0
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
235 S. Beretania Street, Suite 304
Honolulu, Hawaii 96813
Telephone No. (808)586-1255
Facsimile No. (808)586-1488
E-Mail:  Gary.K.Kam@hawaii.gov

WATANABE ING & KOMEIJI LLP
A Limited Liability Law Partnership
**JOHN T. KOMEIJI**       #2498-0
**GREGG M. USHIRODA**     #5868-0
**LEIGHTON M. HARA**      #7826-0
**ROSS T. SHINYAMA**      #8830-0
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii  96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-Mail: gushiroda@wik.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor, <br><br>        Plaintiffs, <br><br>   vs. <br><br> DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent, <br><br>        Defendants. | CIVIL NO. CV 04-00442 HG/BMK <br> CIVIL NO. CV 05-00247 HG/BMK <br> CONSOLIDATED <br> (Other Civil Action) <br><br> DEFENDANT DEPARTMENT OF EDUCATION'S TRIAL BRIEF; CERTIFICATE OF SERVICE <br><br> **HEARING:** <br> DATE:  January 24, 2008 <br> TIME:  10:00 a.m. <br> JUDGE: Honorable Alan C. Kay <br><br> **TRIAL: February 26, 2008** |

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . .  1

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . .  3

      A.   The DOE acted in good faith and went to great lengths
           to provide Bryan a FAPE  . . . . . . . . . . . . . .  4

      B.   Any educational and related services that Bryan may
           have been entitled to, but may not have been provided
           was not a result of intentional discrimination or
           retaliation . . . . . . . . . . . . . . . . . . . . .  9

           1.   Limited amount of available skills
                trainers located in or willing to
                relocate to Kona, Hawaii . . . . . . . . . . .  10

           2.   Numerous skills trainers asked to be
                removed from Bryan's case  . . . . . . . . . .  11

           3.   Parent Plaintiffs' uncooperative attitude
                and unreasonable behavior  . . . . . . . . . .  13

      C.   Despite the significant challenges it faced,
           the DOE still provided Bryan with a significant
           amount of the skills trainer services he was
           entitled to . . . . . . . . . . . . . . . . . . . .  14

III.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . .  16

      A.   December 19, 2006 Court Order . . . . . . . . . . .  16

      B.   November 13, 2007 Court Order  . . . . . . . . . . .  18

IV.   PLAINTIFFS' REMAINING CLAIMS AGAINST DEFENDANTS  . . . .  18

      A.   Plaintiffs' Section 504 Claim of Disability
           Discrimination . . . . . . . . . . . . . . . . . . .  19

           1.   Section 504 prohibits grosser kinds of
                misconduct than that of the IDEA . . . . . . .  19

           2.   Section 504 prohibits only intentional
                discrimination . . . . . . . . . . . . . . . .  20

3.    Section 504 claims in the education context
      also require a showing of "bad faith" or
      "gross misjudgment." . . . . . . . . . . . . . .  24

4.    The mere denial of a FAPE is insufficient
      to establish intentional discrimination
      under Section 504   . . . . . . . . . . . . . . .  27

B.    Parent Plaintiffs' Section 504 Claim of
      Retaliation . . . . . . . . . . . . . . . . . . . .  30

1.    Parent Plaintiffs must prove that adverse
      action taken "because of" their participation
      in a protected activity  . . . . . . . . . . .  31

2.    Parent Plaintiffs must prove intentional
      discrimination to recover damages for their
      Section 504 retaliation claim  . . . . . . . .  35

C.    Section 504 Damages . . . . . . . . . . . . . . .  37

1.    Punitive damages are not recoverable for
      violation of Section 504 . . . . . . . . . . .  37

2.    Parent Plaintiffs are not entitled to
      damages for their own personal injuries
      allegedly arising from the DOE's alleged
      intentional discrimination against Bryan . . .  37

## TABLE OF AUTHORITIES

**CASE**                                                                       **PAGE**

Alex G. Ex rel. Dr. Steven G. v. Bd. of Trs. of
Davis Joint Unified Sch. Dist.,
987 F. Supp. 2d 1119, 1124 (E.D. Cal. 2005 . . . . . . . . . 24

Alexopulos by Alexopulos v. Riles,
784 F.2d 1408 (9th Cir. 1986) . . . . . . . . . . . . . . 27

Barnes v. Gorman, 536 U.S. 181, 185-189 (2002) . . . . . . . 37

Brantley v. Indep. Sch. Dist. No. 625,
936 F. Supp. 649 (D. Minn. 1996) . . . . . . . . . . . 24, 25

Breen v. St. Charles R-IV Sch. Dist.,
2 F. Supp. 2d 1214, 1221 (E.D. Mo. 1997) . . . . . . . . . 24

Burlington Northern and Santa Fe Railway Co. v. White,
126 S.Ct. 2405 (2006) . . . . . . . . . . . . . . 32, 33, 34, 35

Costa v. Desert Palace, Inc.,
299 F.3d 838, 856-57 (9th Cir. 2002)(en banc),
aff'd 539 U.S. 90 (2003) . . . . . . . . . . . . . 31, 32, 34

DOE v. Arlington County Sch. Bd.,
41 F. Supp. 2d 599, 608 (E.D. Va. 1999) . . . . . . . 20, 21, 28

Doe by Gonzales v. Maher,
793 F.2d 1470, 1494 (9th Cir. 1986) . . . . . . . . . . 27, 30

Duvall v. County of Kitsap,
260 F.3d 1124, 1138 (9th Cir. 2001) . . . . . 21, 22, 28, 29, 35

E.W. and E.W. v. The Sch. Bd. of Miami-Dade County Fla.,
307 F. Supp.2d 1363 (S.D. Fla. 2004) . . . . . . . . . . . 28

Ferguson v. City of Phoenix,
157 F.3d 668 (9th Cir. 1998) . . . . . . . . . . . . . . 22

Galloway v. Superior Court of the Dist. Of Columbia,
816 F. Supp. 12, 20 (D. D.C. 1993) . . . . . . . . . . . . 19

Greater Los Angeles Council on Deafness, Inc. v. Zolin,
812 F.2d 1103, 1115 (9th Cir. 1987) . . . . . . . . . . . 38

Gribcheck v. Runyon,
245 F.3d 547, 550 (4th Cir. 2001) . . . . . . . . . . . . 31

Hoekstra v. Indep. Sch. Dist. No. 283
(8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 28

Jeseritz v. Potter,
282 F.3d 542, 548 (8th Cir. 2002) . . . . . . . . . . . . . 32

Johnson by Johnson v. Thompson,
971 F.2d 1487, 1493 (10th Cir. 1992) . . . . . . . . . 21

Kendrick v. Penske Transp. Svcs., Inc.,
220 F.3d 1220, 1226 (10th Cir. 2000) . . . . . . . . . . 31

Lovell v. Chandler,
303 F. 3d 1039, 1057 (9th Cir. 2002) . . . . . . . . 20, 21, 22

MS. S. ex rel. G. v. Vashon Island Sch. Dist.,
337 F.3d 1115, 1125 n. 14 (9th Cir. 2003) . . . . . . . 28, 30

Memmer v. Marin County Courts,
169 F.3d 630, 633 (9th Cir. 1999) . . . . . . . . . . . . 29

Midgett v. Tri-County Metro. Trans. Dist. of Oregon,
254 F.3d 846, 851 (9th Cir. 2001) . . . . . . . . . . . . 23

Monahan v. State of Nebraska,
687 F.2d 1164, 1171 (8th Cir. 1982) . . . . . . . . . 24, 25, 28

Moreno v. Consol. Rail Corp.,
99 F.3d 782 . . . . . . . . . . . . . . . . . . . . . 37

Moubry v. Indep. Sch. Dist.,
9 F. Supp. 2d 1086, 1111 (D. Minn. 1998) . . . . . . . . . 29

N.L. v. Knox County Schs.,
315 F.3d 688, 695 (6th Cir 2003) . . . . . . . . . . . 27, 28

Petaluma Joint Union High Sch. Dist.,
2000 WL 1229059 at *1 (N.D. Cal. 2000) . . . . . . . . 26

Ramon v. Soto,
916 F.2d 1377, 1380 n. 1 (9th Cir. 1989) . . . . . . . 27, 30

Regents of the Univ. of Michigan v. Ewing,
474 U.S. 214, 225 (1985) . . . . . . . . . . . . . . . . 25

Reid v. Petaluma Joint Union High Sch. Dist.,
2000 WL 1229059 (N.D. Cal. 2000) . . . . . . . . . . . . 28

Sanders by Sanders v. Marquette Pub. Schs.,
561 F. Supp. 1361, 1368-1370 (W.D. Mich. 1983) . . . . . . . 38

Sch. Dist. Of Wisconsin Dells v. Z.S.,
184 F. Supp. 2d 860, 884 (W.D. Wis. 2001) . . . . . . . . . 20

Sellers v. Sch. Bd. Of the City of Manassas, Virginia.,
960 F. Supp. 1006, 1010 (E.D. Va. 1997) . . . . . . . . 19, 20

Sellers v. Sch. Bd. of the City of Manassas, Virginia,
141 F.3d 524, 529 (4th Cir. 1998) . . . . . . . . . 24, 26, 28

Sheely v. MRI Radiology Network, P.A.,
__ F.3d __, 2007 WL 3087215, at * 18
(11th Cir. Oct. 24, 2007) . . . . . . . . . . . . . . . . 35

Smith v. Isle of Wight County Sch. Bd.,
284 F. Supp.2d 370 (E.D. Va. 2003) . . . . . . . . . . . 28

Stegell v. Citadel Broad. Co.,
350 F.3d 1061, 1068 (9th Cir. 2003) . . . . . . . . . . . 32

W.B. v. Matula,
67 F.3d 484, 492 (3d Cir. 1995) . . . . . . . . . . . . . 19

Weixel v. Bd. of Educ. of City of New York,
287 F.3d 138, 148 (2d Cir. 2002) . . . . . . . . . . . . 31

Zayas v. Commonwealth of Puerto Rico,
378 F. Supp. 2d 13, 21 (D. P.R. 2005) . . . . . . . . . . 24

Zukle v. Regents of the Univ. of California,
166 F.3d 1041, 1047-48 (9th Cir. 1999) . . . . . . . . . 25


**MISCELLANEOUS**

§ 504 of the Rehabilitation Act,
29 U.S.C. § 794 . . . . . . . 2, 15, 18, 19, 20, 21, 22, 23, 24,
. . . . . . . . . . . . . . 25, 26, 27, 28, 30, 31, 35, 36, 37

28 C.F.R. § 42.503(b)(1)(vii) . . . . . . . . . . . . . 31, 33

29 C.F.R. § 1614.101(b) . . . . . . . . . . . . . . . . . 31

<u>**DEFENDANT DEPARTMENT OF EDUCATION'S TRIAL BRIEF**</u>

COMES NOW Defendant DEPARTMENT OF EDUCATION ("DOE" or "Defendant"), by and through their counsel, Watanabe Ing & Komeiji LLP, and hereby respectfully submits their trial brief in the above-captioned matter.

I.   <u>INTRODUCTION</u>

Plaintiffs ANN KIMBALL-WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor (collectively "Plaintiffs") bring this lawsuit against the DOE.   In this consolidated action,[1] Plaintiffs allege that the DOE violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") by intentionally discriminating against Bryan Wiles-Bond ("Bryan")[2] solely on the basis of his disability by

_____

[1]   On July 21, 2004, Plaintiffs filed their Verified Complaint in Civil Case No. 04-00442 HG-BMK.   On April 8, 2005, Plaintiffs filed a second Complaint in Civil Case No. 05-00247 ("Complaint").   On July 1, 2005, Plaintiffs filed Verified Amended and Supplemental Complaint in Civil Case No. 04-00442 HG-BMK ("Verified Amended Complaint").   On July 26, 2005, the Court entered an Order granting the parties' Stipulation to Consolidate, thereby consolidating Civil Case No. 05-00247 SOM-BMK and Civil Case No. 04-00442 HG-BMK.   On August 8, 2005, the consolidated cases were assigned to the Honorable Helen Gillmor.

Subsequently, on November 13, 2007, the consolidated cases were assigned to the Honorable Alan C. Kay.   <u>See</u> Order Reassigning Case filed November 13, 2007.

[2]   Bryan is a severely autistic child who was diagnosed with autism spectrum disorder at age 2.   In 1999, Bryan and his family moved from Maryland to the Big Island of Hawaii.   From 1999 until January 2005, when Plaintiffs moved to California, Bryan was enrolled in the Hawaii public school system.

-2-

failing to provide Bryan with all the educational and related services that he was entitled to as a disabled individual. Plaintiffs further allege that the DOE violated Section 504 by retaliating against Plaintiffs Ann Kimball-Wiles and Stanley Bond (collectively "Parent Plaintiffs") by, <u>inter alia</u>, intentionally denying Bryan a free appropriate public education ("FAPE"). Parent Plaintiffs claim that they were retaliated against because they advocated for the special education needs of Bryan.

The DOE denies Plaintiffs' allegations of wrongdoing. Plaintiffs assert no evidence, short of their own hyperbole and supposition, to support their allegations of intentional discrimination and/or retaliation. Clearly, the facts of the case, as set forth <u>infra</u>, invariably show the DOE acting in good faith and going to great lengths to provide Bryan a FAPE.

## II.  <u>FACTUAL BACKGROUND</u>

The facts of the case clearly show the DOE acting in good faith and going to great lengths to provide Bryan a FAPE. Any educational and related services that Bryan may have been entitled to, but may not have been provided, was not due to any alleged intentional discrimination and/or retaliation. Instead, it was a result of significant challenges facing the DOE, <u>e.g.</u> lack of available skills trainers in or willing to relocate to Kona, Hawaii, skills trainers asking to be removed from Bryan's case, Plaintiffs' unreasonable refusal of certain skills

-3-

trainers.  Indeed, even despite these challenges, the DOE was still able to provide a significant amount of the educational and related services Bryan was entitled to as a disabled individual.

**A.    The DOE acted in good faith and went to great lengths to provide Bryan a FAPE.**

Evidence of the DOE acting in good faith and going to great lengths to provide Bryan a FAPE include, but are not limited to, the following:

- While Bryan was enrolled in Hawaii's public school system, the DOE expended $333,087.09 in providing Bryan a FAPE.  Moreover, in addition to the amount expended by the DOE, the State of Hawaii, through the Department of Health, also spent $167,562.36 in providing Bryan a FAPE.

- In an effort to recruit qualified skills trainers for Bryan, the DOE advertised in newspapers with local and statewide distribution; posted signs on numerous bulletin boards throughout the Kona and Waimea communities; posted job listings at various conventions; left business cards at various conventions; passed out business cards at various workshops; placed advertisements on provider agency websites; and provided funding to Plaintiffs to do their own, independent advertising.  See December 2006 Order at 52.

- The DOE ran advertisements and flyers specifically offering part-time, on-call shift positions in hopes of forming a substitute pool of skills trainers to work with several special needs students, including Bryan.

-4-

- The DOE expended approximately $3,668.79 in advertising to recruit personnel to provide Bryan a FAPE.

- In 2004, the DOE ran an advertisement in the Honolulu Advertiser seeking applications for skills trainer positions. The advertisement resulted in seven prospects for the position. The names and resumes of these prospects were given to Plaintiffs. Plaintiffs instead hired Christy Edwards ("Ms. Edwards"), who lived with Plaintiffs, despite the fact that all seven prospects had far more experience than Ms. Edwards.[3]  See Declaration of Judith Anne Radwick dated March 10, 2006 at p. 2, ¶ 3-6.

- The DOE hired Ms. Edwards at the pay level of $40/hour despite the fact that she was not qualified under the DOE's pay scale to receive such a high hourly wage.

- In a concerted effort to recruit qualified skills trainers, the DOE worked extensively with the following outside provider agencies: (1) Child and Family Services ("CFS"); Hawaii Behavioral Health ("HBH"); and The Institute For Family Enrichment ("TIFFE").

- CFS placed ads on its website, as well as in newspapers. On one occasion, CFS sent four (4) skills trainers to interview with Plaintiffs: Bill Beljean, Jamie Straley, Duncan Galland, and

---

[3]    Ms. Edwards had a bachelor's degree in an unrelated field (anthropology) and had no autism or ASL training.  See Declaration of Judith Anne Radwick dated March 10, 2006 at 2, ¶ 6.

Heather Schwob. Beljean was approved. Straley was also approved, however, she was expected to work in Plaintiffs' home without a parent present. Galland and Schwob were not approved.

- Between April 2003 and January 2004, TIFFE sent three (3) potential skills trainers to interview with the parents. Mark Weaver was deemed too religious. Skills trainer named John was deemed unsuitable by Plaintiffs despite the fact that he was a substitute teacher with a masters in business and health. SPED teacher that was sent to interview was approved by the parents, however she had an impending marriage and thus was planning to be away during the summer of 2004.

- The DOE continuously trained skills trainers in DTT, TEACCH and ASL to help build capacity.

- ASL sessions began in August 2004 and were conducted by trained ASL instructors (Jennifer Olsen, Jeannie Kutsunai, and Winona Elarionoff). Indeed, in 2004, the DOE spent approximately $4,437.36 for one hundred fifty-five (155) hours of ASL training.

- The DOE hired Jennifer Harris ("Ms. Harris"), a certified Columbus SPED teacher that was very familiar with DTT and TEACCH, as Bryan's SPED teacher at Kealekehe Intermediate School for the 2004-2005 school year. Ms. Harris was extremely qualified. Her qualifications included: nine (9) years of teaching SPED (as of 9/14/04), in which she had worked with many autistic children; a teacher at Pahoa Elementary for three years in which she worked with autistic children in

-6-

preschool, 5th, and 6th grades; and she attended autism workshops given by Bert Bibilone.[4]  Ms. Harris also took weekly sign language classes to increase her ASL vocabulary.

- Ms. Harris also worked with Dru Copeland, Ph.D. ("Ms. Copeland"), the Intensive Instructional Services Consultant ("IISC") from September 2002 to January 2005, to create and implement written curriculums for Bryan concerning social skills, sign, math, and reading.  In fact, Ms. Harris continued to create materials for Bryan even after Bryan was pulled from school by Plaintiffs.

- The DOE contracted with Mahea Edwards of TIFFE to design a program to meet Bryan's IEP needs.  Edwards also was contracted to prepare classroom materials for Bryan's substitute teacher, Bill Brown ("Mr. Brown"), to use.  Edwards also provided consultation and worked with Mr. Brown concerning Bryan's case.

- When Plaintiffs complained to Ms. Hill that Mr. Brown was not a certified teacher,[5] the DOE offered to bus Bryan to Waimea Middle School where a certified SPED teacher with autism and ASL background was located.  Plaintiffs, however, rejected the offer.

- The DOE, through CFS, contracted with Kimberly Smalley ("Ms. Smalley"), a behavioral analyst, to design a toileting program for Bryan.  Her

---

[4]    Mr. Bibilone is a Autism Consulting Teacher for the DOE.

[5]    Bill Brown is a certified substitute teacher.  No special certification is required to substitute teach SPED.  As a result, Plaintiffs' allegations are baseless.

-7-

contract was for ten (10) hours, which included two (2) trips of four (4) hours each to train skills trainers working with Bryan. Ms. Smalley completed her toileting plan for Bryan, which included provisions for school and home settings, on August 4, 2004. On August 25, 2004, Ms. Smalley reviewed her toileting plan with Bryan's IEP team. By August of 2004, this toileting plan was being implemented by Bryan's skills trainers and being monitored by Ms. Harris and Ms. Copeland. Per JoAnn Hill ("Ms. Hill"), who was the temporary District Education Specialist ("DES") for the West Hawaii school district from May 2004 to October 2004, the toileting plan developed by Ms. Smalley was being implemented in school.

Subsequently, Bryan's skills trainers again reviewed this toileting plan with Kate Tolentino ("Ms. Tolentino"), the DES from late September 2004 to January 2005. According to Ms. Tolentino, the toileting plan was being implemented to the best of the skills trainers' ability. While their implementation was not perfect, they were doing their best.

- The DOE also went far beyond its legal obligations by entering into contract negotiations with Pacific Child and Family Associates ("PCFA"), a mainland company with expertise in servicing autistic children. As part of the contract negotiations, the DOE paid $6,112.50 for two PCFA employees to fly to Hawaii to assess Bryan and the Plaintiffs. On November 5, 2004, PCFA sent the

-8-

DOE its revised proposal to service Bryan.  The
DOE was ready, willing, and able to pay PCFA
$191,670.00 per year to provide Bryan with a
structured autism program.  However, upon being
informed of this contract, Plaintiffs curiously
balked at the idea and in January of 2005 moved to
California.

Clearly, the DOE acted in good faith and went to great lengths to
provide Bryan a FAPE.

**B.   Any educational and related services that Bryan may
have been entitled to, but may not have been provided
was not a result of intentional discrimination or
retaliation.**

Any educational and related services that Bryan may
have been entitled to, but may not have been provided, was not a
result of intentional discrimination and/or retaliation.  Rather,
it was a result of: (1) the inescapable reality facing the DOE of
a limited amount of available skills trainers located in, or
willing to re-locate to, Kona, Hawaii, a rural area with a high
cost of living; (2) the fact that skills trainers asked to be
removed from Bryan's case because of the unsanitary conditions of
the Plaintiffs' home; and (3) Parent Plaintiffs' uncooperative
attitude and unreasonable behavior.  Undoubtedly aware of the
difficult circumstances the DOE faced, this Court has already
recognized that "some of Defendants' failures may have been
attributable to the lack of available skills trainers and
Plaintiffs' own actions."  See December 2006 Order at 52.

### 1.  Limited amount of available skills trainers located in or willing to relocate to Kona, Hawaii.

Witnesses for the DOE will testify that the reality facing the DOE is that there was, and still remains, a shortage of available, qualified skills trainers located in or willing to relocate to Kona, Hawaii, a rural area with a high cost of living.  In the present case, this reality was further complicated by the fact that Bryan's Individualized Education Plan ("IEP") required skills trainers to be trained in a host of methodologies that included the following: (1) Discrete Trial Training ("DTT"); (2) Treatment and Education of Autistic and related Communication Handicapped Children ("TEACCH"); (3) Picture Exchange Communication System ("PECS"); and (4) American Sign Language ("ASL").  See May 11, 2004 Decision at 10, ¶ 3; see also Settlement Agreement at 4, ¶¶ 1(e)-1(f).  The ASL requirement proved extremely troublesome because most skills trainers trained in DTT, TEACCH, and other methodologies used in servicing autistic children lack any training in ASL.  This is because best practice literature indicates that ASL is not the best communication system for children with autism.  As a result, it was highly unusual to find those trained in autism to be proficient in ASL.[6]

---

[6]     As stated supra, the DOE was continually training skills trainers that it hired in DTT, TEACCH, and ASL.

The Settlement Agreement also required the DOE to create a pool of qualified and trained substitute skills trainers. <u>See</u> Settlement Agreement at 4 ¶¶ 1(e)-1(f). Substitute skills trainers had to meet the standards for a Level III TA, and had to be trained in DTT, TEACCH, and PECS. <u>See</u> <u>id.</u> While the DOE made great efforts to establish such a pool, it was extremely difficult to find individuals who were willing to be on "stand-by" in the event their services were needed. Being on "stand-by," severely impacted the ability of any potential substitute skills trainers to accept other assignments and/or job opportunities because they would have needed to be available to the DOE, and Plaintiffs, "just in case." As a result, the DOE was unable to form a formal pool of skills trainers.

Nonetheless, the DOE did satisfy the purpose of the pool, which was to ensure that any break in services would be minimal or non-existent. For example, when Richi Stallard, a skills trainer, became ill in October 2003, the coverage of her shift was addressed expeditiously and referrals of three skills trainers (<u>i.e.</u>, Duncan Galland, Jamie Straley, and Heather Schwob) were timely made. <u>See</u> November 28, 2003 Letter from Holly Shikada to Shelby Floyd.

## 2. **Numerous skills trainers asked to be removed from Bryan's case.**

Further complicating the DOE's good faith efforts to provide Bryan with a FAPE was the fact that numerous skills

trainers asked to be removed from Bryan's case. Skills trainers pointed to the unsanitary conditions of the Plaintiffs' home, e.g., smelled or urine and fecal matter, and the unreasonable demands placed on them by Parent Plaintiffs as reasons for their requests to be removed. Indeed, at least two skills trainers were concerned enough about the unsanitary condition of Plaintiffs' home that they felt compelled to file a report with Child Protective Services ("CPS"). While the DOE does not express an opinion as to whether Plaintiffs' home was in fact unsanitary, the fact remains that skills trainers did ask to be removed from Bryan's case because of the unsanitary conditions.

Skills trainers also cited the unreasonable demands of Parent Plaintiffs as a reason for their request to be removed from Bryan's case. According to skills trainers, Parent Plaintiffs would leave them alone with Bryan for significant periods of time as Parent Plaintiffs went to, among other things, view the sunset. Moreover, on at least one occasion, a skills trainer was locked in the same room with Bryan for over four (4) hours. Skills trainers would also be expected to do household chores, e.g. do the family's laundry, when working with Bryan on life skills.

As a result, the already limited pool of available skills trainers in which the DOE could provide Bryan services from was further reduced. This reduction was not a result of any

-12-

action or inaction by the DOE.  It did, however, invariably interfere with the DOE's ability to provide Bryan with **all** the educational and related services he was entitled to as a disabled individual.

### 3.    Parent Plaintiffs' uncooperative attitude and unreasonable behavior.

Parent Plaintiffs' insistence on approving every skills trainer hired by the DOE further reduced the amount of available skills trainers.  The Settlement Agreement entered into by the DOE and Plaintiffs did provide that hired individuals were "subject to Bonds **reasonable** approval as to these individual's **presence in the home**." <u>See</u> Settlement Agreement at 4, § IIA, ¶ 1(e)(emphasis added).  The Settlement Agreement, however, did not provide Plaintiffs with "reasonable approval" as to the **qualifications** of hired individuals.  See generally Settlement Agreement.

Despite the absence of any explicit authority providing Plaintiffs with "reasonable approval" of the qualifications of hired individuals, the DOE did allow Plaintiffs to approve the skills trainers assigned to Bryan's case.  As a result, any skills trainer that worked with Bryan was approved by the Plaintiffs.

In any event, Plaintiffs refusal of skills trainers was utterly unreasonable.  For example, one skills trainer referred

to the Plaintiffs by TIFFE was deemed too religious.  Another
skills trainer referred to Plaintiffs by the DOE was refused
because she was pregnant despite the fact that the skills trainer
was currently working with another child similarly situated as
Bryan.  Clearly, these are not reasonable bases to refuse a
skills trainer.

> **C.  Despite the significant challenges it faced, the DOE
> still provided Bryan with a significant amount of the
> skills trainer services he was entitled to.**

Despite these significant challenges, the DOE still
made good faith efforts to provide Bryan with the educational and
related services he was entitled to.  In fact, Plaintiffs even
acknowledge, and this Court has taken notice, that the DOE
"provided approximately 75 percent of the services mandated."
See Complaint at ¶ 25; Verified Amended Complaint at ¶ 27;
December 2006 Order at 52.  Moreover, in the Complaint,
Plaintiffs allege that, "[b]eginning in June 2004, despite the
Settlement Agreement and the May 2004 decision . . . Bryan was
not receiving and did not receive 95 percent of the hours of
services from skills trainers identified in the May 11, 2004
Decision." See Complaint at ¶ 36.  Plaintiffs allegation,
however, is not entirely true.  During the time period from May
through August 2004, records indicate that Bryan in fact received
one thousand, one hundred and eight (1108) hours of skills
trainer services out of the one thousand, one hundred and sixty-

two (1162) hours of services that the DOE was required to
provide.[7] This equates to the DOE providing **95.35%** of the skills
trainers hours that Bryan was entitled to, and is in full
compliance with the May 11, 2004 Decision and the July 1, 2002
Release and Settlement Agreement.  See May-September 2004
Calendar of Skills Trainer Hours prepared by Desiree Kaiawe [DOE
0316-0321].

     In sum, the facts clearly show that the DOE acted in
good faith and with great effort to provide Bryan with the
educational and related services he was entitled to as a disabled
individual.  Plaintiffs' claims of intentional discrimination and
retaliation under Section 504 are simply unfounded.  Any services
that the DOE may have failed to provide Bryan with was a result
of significant challenges, exclusive of any intentional
discrimination and/or retaliation.  Yet, even despite these
significant challenges, the DOE was still able to provide Bryan
with a substantial amount of the skills trainers hours that he
was entitled to.  As a result, Plaintiffs' claims of intentional
discrimination and retaliation must fail.

---

     [7]    These figures include hours that would have been
provided to Bryan (i.e., a skills trainer was offered by the DOE
and was available to work with Bryan) but for the refusal of the
Plaintiffs to accept such services.

III. **PROCEDURAL HISTORY**

    A.   **December 19, 2006 Court Order.**

        On December 19, 2006, the Honorable Helen Gillmor entered Order Denying Defendants' Motion for Summary Judgment, construed as a Motion for Judgment on the Pleadings; Denying Plaintiffs' Motion for Partial Summary Judgment; Granting in Part and Denying in Part Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement; Denying Plaintiffs' Motion to Strike Declarations for Non-Compliance with Rule 56(e); and Denying Plaintiffs' Motion to Amend and/or Supplement the Record ("December 2006 Order").

        In the December 2006 Order, Judge Gillmor held that "[t]here is a material factual dispute as to whether Defendants acted in bad faith and with deliberate indifference in failing to provide the services to Bryan." See December 2006 Order at 51. Indeed, while this Court found that it is undisputed that the DOE failed to provide Bryan a FAPE, "it is also undisputed that the DOE made some effort to comply with its obligation to provide skills trainers and other services to Bryan." See December 2006 Order at 49-50. As a result, the ultimate issue in this case was whether the DOE's alleged failures "rise to the level of

intentional discrimination."[8]  See December 2006 Order at 54.  As
this Court noted, this alleged discrimination must be based
"*solely* of [Bryan's] disability."  See December 2006 Order at 36
(emphasis in original).

        This Court further held that Parent Plaintiffs lacked
standing to bring an action for their own personal injuries
allegedly arising from the DOE's alleged intentional
discrimination against Bryan.  This Court reasoned that Parent
Plaintiffs were not entitled to recover such damages because they
were not disabled, and they were not a participant in, or a
beneficiary of, a program receiving federal funds.

        In the December 2006 Order, Judge Gillmor also held
certain issues previously determined by Hearings Officers were
entitled to preclusive effect.  See December 2006 Order at 25-26.
The numerous factual findings, e.g. that Bryan communicates using
ASL, appropriate toileting skills continued to be a strong need
for Bryan at home and in the community, underlying these issues,
however, were not given preclusive effect.  See December 2006
Order at 26-27.

---

        [8]    This Court found that "intentional discrimination" in a Section
504 case required a showing of "deliberate indifference."  See December 2006
Order at 29.  This Court further found that Plaintiffs must prove the DOE
acted in "bad faith" or with "gross misjudgment."  See id. at 32.  As this
Court noted, this requires the Plaintiffs to show more than the "mere denial
of a FAPE."  See id. at 28-31.  The legal framework applicable to this case is
set forth infra.

**B.   November 13, 2007 Court Order.**

On November 13, 2007, Judge Gillmor entered Order Granting Plaintiffs Ann Kimball Wiles' and Stanley Bond's Motion to Amend their Complaint to Include an Express Claim for Non-Economic Damages for Retaliation ("November 2007 Order").  In the November 2007 Order, Judge Gillmor allowed Parent Plaintiffs to amend their Complaint to include an express claim for retaliation under Section 504.   Judge Gillmor stated:

> Parent Plaintiffs may recover non-economic damages suffered by them as a result of Defendants' alleged retaliatory conduct to the extent proven at trial.  As discussed in the Court's December 2006 Order, the Plaintiffs must prove that school officials acted with *deliberate indifference* in order to recover such damages.

Pursuant to the November 2007 Order, on November 20, 2007, Plaintiffs filed their First Amended Complaint (the "Amended Complaint").  On November 21, 2007, Defendants filed their Answer to First Amended Complaint filed November 20, 2007.

**IV.   PLAINTIFFS' REMAINING CLAIMS AGAINST DEFENDANTS**

As of the filing of this trial brief, the remaining claims against the DOE in this matter are for money damages for disability discrimination under Section 504 of the Rehabilitation Act and for non-economic damages for retaliation under Section 504 of the Rehabilitation Act.

A.    **Plaintiffs' Section 504 Claim of Disability Discrimination.**

　　　1.    **Section 504 prohibits grosser kinds of misconduct than that of the IDEA.**

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified person with a
> disability in the United States . . . shall,
> **solely by reason** of her or his disability, be
> excluded from the participation in, be denied
> the benefits of, or be subjected to
> discrimination under any program receiving
> Federal financial assistance.

29 U.S.C. § 794(a) (emphasis added).  The purpose of the

Rehabilitation Act "is to prevent old-fashioned and unfounded

prejudices against disabled persons from interfering with those

individuals' rights to enjoy the same privileges and duties

afforded to all United States citizens."  Galloway v. Superior

Court of the Dist. Of Columbia, 816 F. Supp. 12, 20 (D. D.C.

1993).  Generally, "[u]nlike the IDEA, § 504 focuses not on

creating rights and entitlements but on proscribing certain

discriminatory acts.  As the Third Circuit put it, '[w]hile the

IDEA is phrased in terms of a state's affirmative duty to provide

a free appropriate public education, § 504 is worded as a

negative prohibition against disability discrimination in

federally funded programs.'"  Sellers v. Sch. Bd. Of the City of

Manassas, Virginia., 960 F. Supp. 1006, 1010 (E.D. Va.

1997)(quoting W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995)).

As a result, because Section 504 "forbids exclusion from programs

-19-

rather than prescribing the programs' content **it reaches grosser kinds of misconduct than the IDEA."** Sch. Dist. Of Wisconsin Dells v. Z.S., 184 F. Supp. 2d 860, 884 (W.D. Wis. 2001) (citation omitted)(emphasis added).

In the present case, Plaintiffs simply assert repackaged IDEA claims in an attempt to circumvent and enlarge the remedies available under the IDEA. Clearly, this is insufficient to state a claim under Section 504. See Sellers v. The Sch. Bd. Of the City of Manassas, Virginia, 141 F.3d 524, 528 (4th Cir. 1998)(rejecting Plaintiffs' Section 504 claim because they merely realleged a violation of the IDEA). As a result, Plaintiffs' claim of disability discrimination under Section 504 must fail.

## 2. Section 504 prohibits only intentional discrimination.

In the special education context, the standard of proving a Section 504 claim is "extraordinarily high."[9] DOE v. Arlington County Sch. Bd., 41 F. Supp. 2d 599, 608 (E.D. Va. 1999). Indeed, to recover compensatory damages under Section

---

[9] This is evidenced by the fact that the only reported Ninth Circuit decision in which the appellate court determined that the "deliberate indifference" standard was met was a case involving a facially discriminatory policy, i.e., a policy that categorically excluded disabled persons from a program **solely on the basis of their disability.** See Lovell v. Chandler, 303 F. 3d 1039, 1057 (9th Cir. 2002)("In [a case of facial discrimination], the public entity is, at the very least, 'deliberately indifferent'; **by its very terms, facial discrimination is intentional**") (emphasis added).

504, "a plaintiff must prove intentional discrimination on the part of the defendant." <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1138 (9th Cir. 2001). Furthermore, this discrimination "must result from the handicap and the handicap alone." <u>Johnson by Johnson v. Thompson</u>, 971 F.2d 1487, 1493 (10th Cir. 1992); <u>see also</u> December 2006 Order at 36 ("In order to state a Section 504 claim, Plaintiffs' Complaint must allege Defendants discriminated against Bryan based *solely* on his disability")(emphasis in original). In other words, "if the alleged discrimination was motivated by factors other than the disability, even if the disability was, in part, a motivating factor, no claim under § 504 lies." <u>Doe v. Arlington County Sch. Bd.</u>, 41 F. Supp. 2d 599, 608 (E.D. Va. 1999).

In order for Plaintiffs to prove intentional discrimination, they must show by a preponderance of the evidence that the DOE acted with "deliberate indifference." <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1056 (9th Cir. 2002) (citation omitted). "Deliberate indifference," as articulated by the Ninth Circuit Court of Appeals, requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." <u>Id.</u> at 1056 (citation omitted). This first element is satisfied only upon a showing that the public entity had notice that an accommodation was required, while the second element is satisfied if Plaintiffs prove that

the entity's failure to act was more than negligent, and **involved an element of deliberateness**. Id. (emphasis added).

As a result, it is insufficient for Plaintiffs to simply show mere reckless or negligent behavior. For example, in Ferguson v. City of Phoenix, 157 F.3d 668 (9th Cir. 1998), the Ninth Circuit Court of Appeals determined that the City of Phoenix was not liable under Section 504 for failing to maintain an emergency 9-1-1 system to respond to deaf or hearing-impaired users because there was no evidence that the City acted with deliberate indifference. Rather, the Ninth Circuit stated:

> In light of the evidence in the record, **the situation clearly appears to be no more than at times some not uncommon bureaucratic inertia as well as some lack of knowledge and understanding about the DOJ Manual requirements. There is nothing to show, or even suggest, any deliberate indifference or discriminatory animus on the part of the City towards plaintiffs.**

Id. at 675 (emphasis added). Similarly, in Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001), the Ninth Circuit Court of Appeals stated that "deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." As the Ninth Circuit noted, such events "constitute[] negligence rather than deliberate action or inaction. Id.

Furthermore, in Midgett v. Tri-County Metro. Trans.
Dist. of Oregon, 254 F.3d 846, 851 (9th Cir. 2001), another case
where the plaintiff failed to prove "deliberate indifference,"
the Ninth Circuit Court of Appeals held that a defendant's good
faith intent to comply with a disability discrimination law
precluded the finding of "deliberate indifference" as a matter of
law.

In the present case, Plaintiffs present no evidence
that the DOE intentionally discriminated and/or acted with
"deliberate indifference" toward Bryan.  Clearly, any educational
or related services that Bryan may have been entitled to, but may
not have been provided, was not a result of deliberate action or
inaction on the part of the DOE, but rather was a result of,
inter alia, the shortage of available skills trainers in Kona and
the actions of Plaintiffs themselves.  The alleged actions of the
DOE that Plaintiff complains of fails to even rise to the level
of reckless or negligent behavior, let alone "deliberate
indifference."  Rather, the DOE, at all times, acted in good
faith and made great efforts to provide Bryan with a FAPE.  As a
result, following the decision of the Ninth Circuit Court of
Appeals in Midgett, supra, any finding of "deliberate
indifference" is precluded as a matter of law.

3.    **Section 504 claims in the education context also require a showing of "bad faith" or "gross misjudgment."**

In the education context, intentional discrimination under Section 504 also requires a showing of "bad faith" or "gross misjudgment"  See December 2006 Order at 32; see also Sellers v. Sch. Bd. of the City of Manassas, Virginia, 141 F.3d 524, 529 (4th Cir. 1998)(plaintiffs "allege no facts which would suggest the defendants discriminated, i.e., that they acted with bad faith or gross misjudgment"); Monahan v. State of Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982)("either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children"); Alex G. Ex rel. Dr. Steven G. v. Bd. of Trs. of Davis Joint Unified Sch. Dist., 987 F. Supp. 2d 1119, 1124 (E.D. Cal. 2005 (same); Zayas v. Commonwealth of Puerto Rico, 378 F. Supp. 2d 13, 21 (D. P.R. 2005 (dismissing plaintiffs' Section 504 claim with prejudice where "[p]laintiffs presented no evidence of deliberate indifference or bad faith" and "[i]nstead, a genuine disagreement existed between the parties as to what constituted an 'appropriate' education"); Brantley v. Indep. Sch. Dist. No. 625, 936 F. Supp. 649 (D. Minn. 1996)(showing of bad faith or gross misjudgment required for Section 504 claim); Breen v. St. Charles R-IV Sch. Dist., 2 F. Supp. 2d 1214, 1221 (E.D. Mo. 1997)("To show discrimination under the [Rehabilitation Act]

-24-

plaintiffs must show more than the failure to provide a FAPE, an incorrect evaluation, or a faulty [IEP]").

As the Eight Circuit Court of Appeals in <u>Monahan</u> aptly observed:

> The standard of [bad faith or gross misjudgment] we suggest here . . . reflects what we believe to be a proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields. **So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals,** we cannot believe that Congress intended to create liability under § 504.

<u>Monahan</u>, 687 F.2d at 1171 (emphasis added). Indeed, the Eight Circuit's observations in <u>Monahan</u> are undeniably in line with the numerous jurisdictions that have shown great deference to the professional judgment of educators. <u>See Regents of the Univ. of Michigan v. Ewing</u>, 474 U.S. 214, 225 (1985)(stating that courts "should show great respect for the faculty's professional judgment"); <u>Zukle v. Regents of the Univ. of California</u>, 166 F.3d 1041, 1047-48 (9th Cir. 1999)(agreeing with the First, Second, and Fifth Circuits that an "educational institution's academic decisions are entitled to deference"); <u>Brantley v. Indep. Sch. Dist. No. 625</u>, 936 F. Supp. 649, 657 (D. Minn. 1996)(rejecting plaintiffs' claim of disability discrimination stemming from IDEA type educational decisions because any inappropriate decisions

made by the defendant school district were, at most, errors in professional judgment).

Plaintiffs must also specifically prove "bad faith" or "gross misjudgment"; it is insufficient for Plaintiffs to simply couch their allegations in these legal catchphrases. For example, in Sellers, supra, the plaintiffs claimed that the complete failure by the school board to provide **any** special education services to their child for over ten years, despite persistent and repeated requests by the mother to do so, was a total failure of its responsibilities and exhibited "gross misjudgment" sufficient to at least raise an issue of material fact on their Section 504 claim. See Appellants' Opening Brief, 1997 WL 33492433 at *7-10 and *18-21. Similarly, in Petaluma Joint Union High Sch. Dist., 2000 WL 1229059 at *1 (N.D. Cal. 2000), the plaintiffs argued that the school district's failure to provide special education services, despite its knowledge that the child needed such services, amounted to "bad faith, gross misjudgment or deliberate indifference." In both of these cases, the courts dismissed the plaintiffs' claims as a matter of law. These courts found that these types of allegations, despite the legal catchphrases used, basically consisted of "mere denials of a FAPE" that were insufficient to create liability under Section 504.

**4.    The mere denial of a FAPE is insufficient to establish intentional discrimination under Section 504.**

Courts have uniformly held that Section 504 claims premised on the mere denial of a FAPE are simply insufficient to impose Section 504 liability for compensatory damages, under any standard.  In Doe by Gonzales v. Maher, 793 F.2d 1470, 1494 (9th Cir. 1986), the Ninth Circuit Court of Appeals held that the Education of All Handicapped Children Act (predecessor to the IDEA), **provides the sole remedy for disabled children who have been denied their right to a FAPE**.[10] (emphasis added); see also Alexopulos by Alexopulos v. Riles, 784 F.2d 1408 (9th Cir. 1986)(same).  This holding was reaffirmed by the Ninth Circuit in Ramon v. Soto, 916 F.2d 1377, 1380 n. 1 (9th Cir. 1989):

> We have held, however, that the rights of handicapped children regarding suspension and expulsion are enumerated in the Education of the Handicapped Act rather than the Rehabilitation Act.

---

[10]    Although Gonzales was decided prior to the amendment to the IDEA, 20 U.S.C. 1414(1), which provides, "[n]othing in this chapter shall be construed to restrict the rights, procedures, and remedies available under . . . . Title V of the Rehabilitation Act of 1973," this amendment "has not been held to have altered the prior holdings that more harm is required than a denial of free appropriate public education to make out a section 504 claim."  See N.L. v. Knox County Schs., 315 F.3d 688, 695 (6th Cir 2003)(citations omitted)(emphasis added).  Thus, the holding of Gonzales that the IDEA provides the sole remedy for a denial of a FAPE remains good law.

Thus, the Ninth Circuit Court of Appeals has made it undeniably clear that the mere denial of a FAPE is insufficient **as a matter of law** to constitute a Section 504 claim.  See also MS. S. ex rel. G. v. Vashon Island Sch. Dist., 337 F.3d 1115, 1125 n. 14 (9th Cir. 2003)(Section 504 claims which were merely "derivative" of IDEA claims presented no plausible independent basis for recovery).

The Ninth Circuit's position is also consistent with the substantial majority of courts in other jurisdictions that also have held that the mere denial of a FAPE (or IDEA violations) is insufficient to sustain claims under Section 504. See, e.g., Sellers v. The Sch. Bd. of the City Of Manassas, 141 F.3d 524 (4th Cir. 1998); Monahan v. State of Nebraska, 687 F.2d 1164 (8th Cir. 1982); Hoekstra v. Indep. Sch. Dist. No. 283 (8th Cir. 1996); N.L. by MS. C. v. Knox County Schs., 315 F.3d 688 (6th Cir. 2003); Smith v. Isle of Wight County Sch. Bd., 284 F. Supp.2d 370 (E.D. Va. 2003); E.W. and E.W. v. The Sch. Bd. of Miami-Dade County Fla., 307 F. Supp.2d 1363 (S.D. Fla. 2004); Reid v. Petaluma Joint Union High Sch. Dist., 2000 WL 1229059 (N.D. Cal. 2000); Doe v. Arlington County Sch. Bd., 41 F. Supp.2d 599 (E.D. Va. 1999).

In the present case, it is important to note that Plaintiffs have the ultimate burden of proving intentional discrimination.  See Duvall v. County of Kitsap, 260 F.3d 1124,

1138 (9th Cir. 2001); <u>Memmer v. Marin County Courts</u>, 169 F.3d 630, 633 (9th Cir. 1999); <u>Moubry v. Indep. Sch. Dist.</u>, 9 F. Supp. 2d 1086, 1111 (D. Minn. 1998).  Clearly, Plaintiffs will not be able to carry their burden as they simply allege the mere denial of a FAPE.

In the December 2006 Order, Judge Gillmor stated "[t]he primary basis for Plaintiffs' Section 504 claim is that Defendants intentionally discriminated against Bryan by, after having repeatedly gone through the IDEA procedures, continually failing to provide Bryan a FAPE despite knowing of their express obligations to do so."  <u>See</u> December 2006 Order at 35-36. Essentially, Judge Gillmor's characterization of Plaintiffs' complaint merely alleges a denial of a FAPE.  There is no indication that this failure to provide Bryan with a FAPE was a result of "deliberate indifference," "bad faith," and/or "gross misjudgment," which Plaintiffs have the burden of proving. Moreover, despite the DOE's deep respect for Judge Gillmor, the DOE contends that the mere denial of a FAPE is not the "primary basis" for Plaintiffs' Section 504 claim, but rather is the only basis for Plaintiffs' Section 504 claim.  As a result, Plaintiffs' disability discrimination claim under Section 504 must fail.

A deeper investigation into the specific complaints made by the Plaintiffs also concludes that Plaintiffs merely

-29-

allege a denial of a FAPE.  Plaintiffs complain that the DOE
continually failed to hire and provide Bryan with skills trainers
who had specific qualifications in violation of the
administrative orders and the Settlement Agreement.  Plaintiffs
further complain that the DOE failed to create a substitute pool
of skills trainers, failed to have a certified special education
teacher for the 2004 summer session, and failed to have a
qualified special education teacher for the 2004-2005 school
year.  Each requirement that Plaintiffs complain the DOE failed
to provide was a part of his FAPE, as set forth in his IEPs.
Again, these complaints merely allege a denial of a FAPE; and as
already stated the mere denial of a FAPE is insufficient to
sustain a Section 504 claim as a matter of law in this Circuit.
See MS. S. ex rel. G. v. Vashon Island Sch. Dist., 337 F.3d 1115
(9th Cir. 2003); Ramon v. Soto, 916 F.2d 1377 (9th Cir. 1989);
Doe by Gonzales v. Maher, 793 F.2d 1470 (9th Cir. 1986).

      **B.**   **Parent Plaintiffs' Section 504 Claim of Retaliation.**

      Parent Plaintiffs' retaliation claim is based on
Section 504's implementing regulations, which provide:

      (b) Discriminatory actions prohibited.

> (1) A recipient may not discriminate on
> the basis of handicap in the following
> ways directly or through contractual,
> licensing, or other arrangements under
> any program or activity receiving
> Federal financial assistance.
>
>    *     *     *

(vii) Intimidate or retaliate against
any individual, whether handicapped or
not, for the purpose of interfering with
any right secured by section 504 or this
subpart.

28 C.F.R. § 42.503(b)(1)(vii); see also 29 C.F.R. § 1614.101(b)

("No person shall be subject to retaliation for opposing any

practice made unlawful by . . . the Rehabilitation Act . . . or

for participating in any stage of administrative or judicial

proceedings under those statutes").

> 1.  **Parent Plaintiffs must prove that adverse action
>     taken "because of" their participation in a
>     protected activity.**

Generally, Section 504 retaliation claims are analyzed

under the same burden-shifting test used to evaluate Title VII

retaliation claims. See Weixel v. Bd. of Educ. of City of New

York, 287 F.3d 138, 148 (2d Cir. 2002); Gribcheck v. Runyon, 245

F.3d 547, 550 (4th Cir. 2001). However, this burden-shifting

test is generally limited to the summary judgment stage. See

Kendrick v. Penske Transp. Svcs., Inc., 220 F.3d 1220, 1226 (10th

Cir. 2000)(stating "the three-part McDonnell Douglas burden

shifting analysis is limited to the summary judgment context");

see also Costa v. Desert Palace, Inc., 299 F.3d 838, 856-57 (9th

Cir. 2002)(en banc), aff'd 539 U.S. 90 (2003)("[r]egardless of

the method chosen to arrive at trial, it is not normally

appropriate to introduce the McDonnell Douglas burden-shifting

framework to the jury").

Instead, at trial, Parent Plaintiffs must meet their ultimate burden of proof, that is "to show by a preponderance of the evidence that the challenged [action] was 'because of' [retaliation]." See Costa, 299 F.3d at 856-57 (Title VII disparate treatment case); Stegell v. Citadel Broad. Co., 350 F.3d 1061, 1068 (9th Cir. 2003)(citing Costa for preceding statement of law in a retaliation case).  In other words, Parent Plaintiffs must prove by a preponderance of the evidence the following:

> (1)  Plaintiffs engaged in a protected
>      activity under the Rehabilitation Act;
>
> (2)  Plaintiffs were subjected to an adverse
>      action at the time, or after, the
>      protected activity occurred; and
>
> (3)  Plaintiffs were subjected to the adverse
>      action because of their participation in
>      a protected activity.

Under the first element, Plaintiffs must prove that they were engaged in a "protected activity."  A "protected activity" is "an informal or formal complaint about, or other opposition to, [a federal funding recipient's] practice or act . . . if the [complainant] reasonably believes such an act to be in violation of the [Rehabilitation Act]."  Jeseritz v. Potter, 282 F.3d 542, 548 (8th Cir. 2002).

Under the second element, the Plaintiffs must prove that they were subjected to an adverse action.  Recently, in Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct.

-32-

2405 (2006), a Title VII retaliation case, the United States
Supreme Court, recognizing a split among circuits, set forth a
uniform standard in determining an "adverse employment action."
While the present case is not an employment or Title VII case,
the DOE contends that the Court's decision in <u>Burlington</u> is
instructive.

In <u>Burlington</u>, the Court held that to establish an
"adverse employment action," "a plaintiff must show that a
reasonable employee would have found the [ ] action materially
adverse." <u>Id.</u> at 2415. The Court defined "materially adverse"
to mean that the action would have likely "dissuaded a reasonable
worker from making or supporting a charge of discrimination."
<u>Id.</u> (citation omitted). In requiring the adverse action to be
"materially adverse," the Court stated that "it is important to
separate significant from trivial harms." <u>Id.</u> The purpose of
Title VII's anti-retaliation provision is to prohibit employer
actions that are likely "to deter victims of discrimination from
complaining . . . ." <u>Id.</u> (citation omitted). As the Court
noted, trivial harms such as petty slights or minor annoyances do
not create such a deterrence. <u>See id.</u>

The purpose of the Rehabilitation Act's anti-
retaliation provisions are similar to that of Title VII's anti-
retaliation. <u>See</u> 28 C.F.R. § 42.503(b)(1)(vii); 29 C.F.R. §
1614.101(b). As a result, it would seem to follow that

-33-

Plaintiffs, in order to prove that an adverse action was taken against them, must prove more than a trivial harm, petty slight, or minor annoyance. Rather, Parent Plaintiffs must prove that the alleged acts of the DOE would have likely "dissuaded a reasonable [person] from making or supporting a charge of discrimination." See Burlington, supra.

Finally, the third element requires Parent Plaintiffs to establish a causal connection between the protected activity and the adverse action. This means that Plaintiffs must prove by a preponderance of the evidence that Parent Plaintiffs were subjected to the adverse action "because of" their participation in the protected activity.[11]

---

[11]     In terms of instructing the jury as to this element of Plaintiffs' Section 504 retaliation claim, this Court has the discretion to either instruct the jury as to a "single motive" test, or a "mixed motive" test. See Costa v. Desert Palace, Inc., 299 F.3d 838, 856 (9th Cir. 2002)(en banc), aff'd 539 U.S. 90 (2003). If the trial court determines that the only reasonable conclusion a jury should reach is that discriminatory animus is the sole cause for the adverse action or that discrimination played no role at all in the adverse decision, then the jury should be instructed as to the "single motive" test." Id. at 856. If the trial court determines that the evidence could support a finding that discrimination is one of two or more reasons for the challenged decision, at least one of which may be legitimate, then the jury should be instructed as to the "mixed motive" test. Id. These two instructions, however, should not be construed as two "fundamentally different" theories of liability. Id. at 857. Rather, they are merely two avenues of instruction by which the plaintiff has the burden of "show[ing] by a preponderance of the evidence that the challenged [action] was 'because of' [retaliation]." Id.

In the present case, none of the acts Plaintiffs complain of amount to "adverse actions" as set forth in Burlington.  Furthermore, assuming, arguendo, that Plaintiffs prove that they were subject to an adverse action(s), Plaintiffs present no evidence to suggest that they were subjected to these actions "because of" the their participation in a protected activity.  In reality, retaliatory animus played absolutely no role in any actions taken by the DOE.  Rather, at all times, the DOE acted in good faith, and made great efforts to provide Bryan with the educational and related services he was entitled to as a disabled individual.  As a result, Parent Plaintiffs will be unable to carry their burden of proving unlawful retaliation under Section 504.

> **2.    Parent Plaintiffs must prove intentional discrimination to recover damages for their Section 504 retaliation claim.**

The Ninth Circuit Court of Appeals has stated that "[t]o recover monetary damages under . . . the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).  Similarly, in Sheely v. MRI Radiology Network, P.A., __ F.3d __, 2007 WL 3087215, at * 18 (11th Cir. Oct. 24, 2007), the court held that non-economic compensatory damages are available under Section 504 of the Rehabilitation Act for intentional discrimination.  See also id.

-35-

at * 20 ("emotional damages are recoverable for intentional violations of § 504 of the [Rehabilitation Act]").

This Court also recognized this in its November 2007 Order, stating:

> Plaintiff parents may recover non-economic damages suffered by them as a result of [the DOE's] allegedly retaliatory conduct to the extent proven at trial. . . . [T]he Plaintiffs must prove that [the DOE] acted with *deliberate indifference* in order to recover such damages.

November 2007 Order at 17 (citation omitted)(emphasis in original).

In the present case, Parent Plaintiffs present no evidence that the DOE's actions were retaliatory, let alone made with "deliberate indifference."  In fact, the allegations set forth by Parent Plaintiffs in support of their claim of retaliation are mere regurgitations of the allegations they asserted in support of their claim of intentional discrimination. As set forth more fully supra, Plaintiffs merely allege a denial of a FAPE.  Any other allegations that may be construed to be beyond the mere denial of a FAPE, e.g., illicitly and unlawfully obtaining confidential e-mail written by Bryan's parents and Christy Edwards, see First Amended Complaint at 15, ¶ 46(c), are simply baseless and unfounded.  Therefore, Plaintiffs will not be able to carry their burden of proving "deliberate indifference,"

and as a result, Parent Plaintiffs are not entitled to recover damages for retaliation under Section 504.

C.   **Section 504 Damages.**

In addition to the above analyses on Section 504 damages, and assuming, <u>arguendo</u>, that Plaintiffs prevail on their Section 504 claims, the damages Plaintiffs may recover are limited.

1.   **Punitive damages are not recoverable for violation of Section 504.**

In a properly pled Section 504 case, compensatory damages are available under Section 504 upon a showing of intentional discrimination (<u>i.e.</u>, deliberate indifference).  <u>See</u> <u>Lovell</u>, 303 F.3d at 1056; <u>see</u> <u>also</u> December 2006 Order at 38. Punitive damages, however, are not recoverable for a violation of Section 504.  <u>See</u> <u>Barnes v. Gorman</u>, 536 U.S. 181, 185-189 (2002); <u>Moreno v. Consol. Rail Corp.</u>, 99 F.3d 782; <u>see</u> <u>also</u> December 2006 Order at 38.

2.   **Parent Plaintiffs are not entitled to damages for their own personal injuries allegedly arising from the DOE's alleged intentional discrimination against Bryan.**

In the December 2006 Order, Judge Gillmor held that Parent Plaintiffs lack standing to bring an action for their own personal injuries allegedly arising from the DOE's alleged intentional discrimination against Bryan.  <u>See</u> December 2006 Order at 39.  This is because Parent Plaintiffs are not disabled,

-37-

and are not a participant in, or a beneficiary of, a program receiving federal funds. See id.; see also Sanders by Sanders v. Marquette Pub. Schs., 561 F. Supp. 1361, 1368-1370 (W.D. Mich. 1983).

To the extent that Plaintiffs are able to show intentional discrimination, however, Parent Plaintiffs may be able to recover economic damages reasonably and foreseeably incurred. See December 2006 Order at 39. To recover such damages, Plaintiffs must establish: (1) expenses were incurred for Bryan's benefit; (2) the relationship between Plaintiff Parents and Bryan made the expenditures foreseeable and appropriate; and (3) Plaintiff Parents are suitable persons to enforce the rights of Bryan. See Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1115 (9th Cir. 1987).

DATED: Honolulu, Hawaii, January 14, 2008.

/s/ Gregg M. Ushiroda
JOHN T. KOMEIJI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendants

Ann Kimball Wiles, et al., Plaintiffs vs. Department of Education, et al., Defendants; Civil Nos.: CV04-00442 HG/BMK and CV 05-00247 HG BMK Consolidated; Defendant Department of Education's Trial Brief