FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 1 8 2001

at __ o'clock and __ min. __M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STEPHEN L. and LaVERNE L.,     )
Individually and as Guardians  )
of the Person, AARON L., an    )     CV. NO. 00-00338 DAE/KSCC
incompetent adult,             )
                               )
            Plaintiffs,        )
                               )
     vs.                       )
                               )
PAUL LEMAHIEU, in his official )
capacity as Superintendent     )
of the Hawaii Public Schools;  )
WILLIAM C. RHYNE, in his       )
capacity as former Principal   )
of Molokai High and            )
Intermediate School; SARAH     )
KALANI, in her capacity as     )
former Principal of Molokai    )
High and Intermediate School;  )
LINDA PULELOA, in her official )
capacity as Principal of       )
Molokai High and Intermediate  )
School; and DEPARTMENT OF      )
EDUCATION, STATE OF HAWAII,    )
                               )
            Defendants.        )
_____)

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING
<u>PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

The court heard Plaintiffs' and Defendants' Motion on

June 18, 2001.  Stanley E. Levin, Esq., and Anne Williams, Esq.,

appeared at the hearing on behalf of Plaintiffs; Deputy Attorney

General George S. S. Hom appeared at the hearing on behalf of

Defendants.  After reviewing the Motions and the Supporting and

Opposing Memoranda, the court GRANTS in part and DENIES in part



EXHIBIT A

Defendants' Motion for Partial Summary Judgment and GRANTS Plaintiffs' Motion for Partial Summary Judgment.

<u>BACKGROUND</u>

Plaintiffs in this suit, Stephen L. and LaVerne L., individually and in their capacities as Guardians Ad Litem for their son, Aaron L. (collectively "Plaintiffs"), have brought suit against Defendants the Department of Education of the State of Hawaii, Paul LeMahieu, in his official capacity as the Superintendent of Hawaii Public Schools, and William C. Rhyne, Sarah Kalani, and Linda Puleloa, each in their official capacities as either former or current Principals of Molokai High and Intermediate Schools (collectively "Defendants"). The suit is premised on alleged violations of Section 504 of the Rehabilitation Act ("Section 504"), codified at 29 U.S.C. § 794, and the Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. § 1401, et seq. Plaintiffs seek monetary damages and injunctive relief.

Aaron L. is eighteen years old. He was born with Down Syndrome. He currently resides on the island of Molokai.

Apparently, Aaron's Down Syndrome creates serious speech and language deficits, as well as behavioral issues. He began public school at the age of three, and has been enrolled in

the Molokai public schools since that time.  The parties dispute many of the remaining facts.

Defendants contend that Aaron was unable to master communication skills, but that his parents were very much involved in the development of his Individualized Educational Program ("IEP").  Defendants also advance that there was no Down Syndrome expert available for the IEP meetings.

Plaintiffs, on the other hand, argue that Aaron's alleged developmental delays resulted from the failure of Defendants to provide to him the free appropriate public education ("FAPE") to which he was entitled.  To that end, Plaintiffs contend that Aaron attended elementary school, and performed satisfactorily.  It was not until the time when Aaron entered Molokai High and Intermediate School ("Molokai High"), according to Plaintiffs, that he stopped progressing and learning.

Once at Molokai High, Aaron had little contact with teachers who were specifically trained to deal with his disability.  Additionally, many of the aides with whom he worked had not received training and were allegedly unqualified.  The lack of qualified aides led to the denial of classes, because if there was no aide to assist Aaron, he was foreclosed from taking a class.

Also during his time at Molokai High, Aaron sometimes received no speech therapy for periods of time, and never received mental health services. As a result, Mr. and Mrs. L. filed for an administrative hearing. The hearing was held in February of 2000, and resulted in the resolution of all issues in favor of Plaintiffs.

At the hearing, the hearing officer determined, inter alia, that Aaron had been denied FAPE and that he had failed to make significant progress under the tutelage of Molokai High. The hearing officer ordered equitable relief, including:

1.    The school shall conduct a full reevaluation of The Child, to include a proper functional behavior assessment with input by up to two (2) professionals chosen by the parents of The Child.

2.    Following the full reevaluation, a new IEP shall be devised, to include speech therapy, a behavior modification plan, an appropriate transition plan and support employment/vocational rehabilitation. Members of the IEP Team should include the current special education teacher of The Child, a representative of the Hawaii State Department of Health and up to two (2) professionals selected by the parents.

3.    The current special education teacher is determined to be compliant with IDEA. In the event the current teacher is, for whatever reason, unable to continue as the special education teacher for The Child, the DOE is responsible to provide a certified IDEA compliant teacher to continue the directives of this order.

4.    The Child shall be provided three (3) years of compensatory education, beginning with the 2000-2001 school year. Supplementary aids and services (related services) are to be whatever is decided by the IEP Team, to include but not limited to, mental health services.

See Decision and Order in the Matter of Aaron L. v. Department of Education, Before the Department of Education Chapter 36 Hearings Officer, at 13.  A Deputy Attorney General represented the State at that hearing.

Following the hearing, Plaintiffs filed suit in this court on May 10, 2000.  Through their Complaint, Plaintiffs allege, inter alia, that Defendants discriminated against Aaron because of his disability, thereby violating Section 504.  To that end, Plaintiffs allege that Aaron did not receive appropriate special education services, and hence did not receive a FAPE.

On March 8, 2001, Plaintiffs filed their Motion for Partial Summary Judgment.  They seek summary judgment on the issue of whether Defendants acted with deliberate indifference or conscious disregard of Plaintiffs' rights.  Defendants filed their Memorandum in Opposition on May 16, 2001, to which Plaintiffs filed their Reply on May 24, 2001.  The United States filed an Ex Parte Motion for Leave to Participate as Amicus Curiae on May 30, 2001.  The court granted that Motion on May 31, 2001, and the United States filed their Amicus Brief the same day.

On April 3, 2001, Defendants filed their own Motion for Partial Summary Judgment.  They argue, inter alia, that pursuant to the Eleventh Amendment to the United States Constitution, the

State is immune from suit under Section 504.  On April 19, 2001, the United States filed Motion requesting that this court certify the constitutional issues in this case to the Attorney General of the United States, pursuant to 28 U.S.C. § 2403(a).  This court granted the Motion and issued the certification on April 24, 2001.

On May 17, 2001, Plaintiffs filed their Memorandum in Opposition to Defendants' Motion for Summary Judgment.  Also on May 17, 2001, the United States filed its Motion to Intervene, which this court granted.  Defendants filed their Reply to Plaintiffs' Opposition on May 22, 2001.  On May 25, 2001, the United States filed its Memorandum in Opposition to Defendants' Motion for Summary Judgment.

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970)).

The moving party, however, need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. Id. at 322.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed. R. Civ. P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Fed. R. Civ. P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. Id. The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255. In ruling on a motion for summary judgment, the court must bear in mind the actual

quantum and quality of proof necessary to support liability under the applicable law. Id. at 254. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. See Celotex, 477 U.S. at 322.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. Id. (citation omitted).


## DISCUSSION

I.  **Defendants' Motion for Partial Summary Judgment.[1]**

Defendants argue several bases for why this court should grant them partial summary judgment: (1) that Plaintiffs, the parents of Aaron L., have no standing to bring this suit; (2) that money damages are not available under IDEA; (3) that Plaintiffs have no individual cause of action under Section 504;

---

[1]Because it makes more sense to do so, the court addresses the two Motions in the reverse chronological order of which they were filed.

(4) that the State is immune from suit pursuant to the Eleventh Amendment; (5) that punitive and hedonic damages should not be allowed; (6) that the statute of limitations bars the action; (7) that injunctive relief is not appropriate in this case; and (8) that mental health services are unwarranted here.  The court will address each contention, in turn, below.

### A.    Parental Standing.

Defendants first argue that Plaintiffs Stephen L. and LaVerne L. have no standing to bring this suit.  They argue that pursuant to Title 20 of the United States Code, Section 1415(m), parental rights transfer to the child upon his reaching the age of majority, which in Hawaii is eighteen.  See H.R.S. § 577-1. Defendants further argue that because Aaron has not been adjudicated "incompetent" by a court, he cannot fit into the exception which would allow him to be represented by another person.  The court finds no merit in this argument.

As Plaintiffs point out, they filed an Ex Parte Motion for Appointment as Guardians Ad Litem on March 15, 2000.  That Motion was granted by then Magistrate Judge Francis Yamashita. At no time did Defendants challenge that Motion or the subsequent grant of the Motion.

Federal Rule of Civil Procedure 17(c) mandates that a court "shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or

9

shall make such other order as it deems proper for the protection of the infant or incompetent person." Fed. R. Civ. P. 17(c). Thus, the rule directs the court "to take whatever measures it deems proper to protect an incompetent person during litigation." United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat County, State of Washington, 795 F.2d 796, 805 (9th Cir. 1986). A court has broad discretion to not appoint a guardian ad litem if it determines the person is or can be otherwise adequately protected. Id.

Here, had Magistrate Judge Yamashita determined Aaron to be competent, he could have and would have denied the ex parte Motion. Because he granted the Motion, Aaron has, in effect, been adjudicated incompetent. If Defendants had found it appropriate to do so, they should have filed an appeal from the Order signed by the Magistrate Judge. They did not do so. Thus the court finds that his parents have standing to bring these claims. The Motion is DENIED on this basis.[2]

**B.    Money Damages under IDEA.**

Defendants next argue that they are entitled to summary judgment because money damages are not available for violations of IDEA. The court agrees.

_____

[2]The court notes that Aaron has Down Syndrome. For the Defendants to suggest that he may be competent to proceed in this case without the assistance of his parents as guardians lacks credibility.

The wording of IDEA allows a court to grant "such relief as the court determines is appropriate." See 20 U.S.C. § 1415(i)(2)(B)(iii).  Notwithstanding this language, however, the Ninth Circuit has determined that "ordinarily[,] monetary damages are not available" under IDEA.  Witte v. Clark County School District, 197 F.3d 1271, 1275 (9th Cir. 1999).  See also Mountain View-Los Altos Union High School Dist. v. Sharron B. H., 709 F.2d 28, 30 (9th Cir. 1983) (stating that IDEA does not evidence congressional intent to provide damage remedy and phrase all "'appropriate relief' is usually construed as a mere grant of jurisdiction to enforce and supplement the administrative procedures for identification, evaluation, and placement of the child, and not of authority to award retrospective damages").

Plaintiffs do not argue to the contrary.  Therefore, to the extent that Plaintiffs' Complaint seeks compensatory monetary damages under IDEA, rather than equitable monetary damages,[3] Defendants' Motion is GRANTED.[4]

---

[3]The Supreme Court has noted that some equitable monetary damages, such as reimbursement for expenditures and private special education for a child where the court ultimately determines such placement was proper, is allowable under IDEA. See Town of Burlington v. Department of Educ., 471 U.S. 359, 369 (1985).  See also Union School Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).

[4]Plaintiffs are still able, however, to seek monetary damages on their claims under Section 504.  They also may still seek equitable monetary damages, if appropriate.  See supra n.2.

C.    Parental Individual Cause of Action Under Section 504.

Defendants next argue, in one short paragraph without citation to authority that Plaintiffs are unable to bring this suit in their individual capacities.  Defendants base their argument on the fact that Plaintiffs themselves are not disabled. The court does not agree with Defendants.

Section 504 provides remedies to "any person aggrieved by any act or failure to act by any recipient of Federal assistance . . . under section 794 of this title."  29 U.S.C. § 794a(a)(2).  Few courts, and only this court in this circuit, have specifically addressed whether parents can bring individual claims in addition to claims brought on behalf of their child under the IDEA and Section 504.  See Patricia N. v. LeMahieu, —F. Supp.---, 2001 WL 589457 (D. Haw. May 29, 2001) (discussing standing and finding parents have it).  In this district, in addition, many such claims have proceeded without a discussion of standing.  See, e.g., Mark H. v. LeMahieu, Civ. No. 00-282 DAE/LEK (Order filed Oct. 18, 2000); Patrick W. v. LeMahieu, Civ. No. 98-843 ACK/KSC (Order filed Dec. 15, 2000).

Further, in similar contexts, courts have held that non-disabled individuals may have standing to sue under Title II of the ADA and Section 504 of the Rehabilitation Act.  In Innovative Health Systems v. White Plains, 117 F.3d 37 (2d Cir. 1997), for example, the Second Circuit held that a drug and

12

alcohol rehabilitation center could assert ADA and Section 504 claims on its own behalf, even though the center itself was not "disabled." Id. at 46-47. The court found that because the enforcement provision of Section 504 "extends its remedies to 'any person aggrieved' by the discrimination of a person on the basis of his or her disability," Congress apparently intended "to define standing to bring a private action under 504 as broadly as is permitted by Article III of the Constitution." Id. Accord Smith-Berch, Inc. v. Baltimore County, 68 F. Supp. 2d 602 (D. Md. 1999). Cf. Greater Los Angeles Council on Deafness v. Zolin, 812 F.2d 1103, 1115 (9th Cir. 1987) (holding that council on deafness had standing to sue to recover expenses incurred on behalf of disabled individuals).

In Weber v. Cranston School Committee, 212 F.3d 41 (1st Cir. 2000), the First Circuit found that parents have standing to assert Section 504 claims on their own behalf, also noting that courts have given "broad construction to the statutory enforcement language of Title VI and the Rehabilitation Act." See id. at 47-49. The court stated:

> Although Congress could have limited the remedial provisions of the Rehabilitation Act to claims brought by or on behalf of disabled individuals, it did not do so in apparent recognition of the fact that disabled individuals may need assistance in vindicating their rights from individuals who may have their own claim to relief under the Act.

13

Id. at 49.  See also Whitehead v. School Bd. for Hillsborough County, 918 F. Supp. 1515, 1522 (M.D. Fla. 1996) (holding that parents of disabled child could recover under section 504 for retaliation claims).

Considering the language of Section 504 and the authorities cited above, the court concludes that Plaintiffs here have standing to sue in their individual capacities.  They are clearly "persons aggrieved" within the meaning of the Act – their Complaint alleges that both parents suffered serious hardships as a result of Defendants' alleged denial of a FAPE to Aaron.  The court, therefore, will not dismiss Plaintiffs in their individual capacities from the Complaint.  Defendants' Motion is DENIED on this ground.

D.    State Immunity Under the Eleventh Amendment.

Defendants next argue that the Supreme Court's ruling in Board of Trustees of Alabama v. Garrett, 121 S. Ct. 955 (2001), indicates that the State is immune from suit in federal court under the Eleventh Amendment.  The court does not agree.

In Garrett, the Court held that Congress had exceeded its power under the Fourteenth Amendment when it attempted to abrogate states' immunity under the Eleventh Amendment for suits brought pursuant to Title I of the American with Disabilities Act ("ADA").  Garrett, 121 S. Ct. at 967-68.  Thus, a state may now assert sovereign immunity against a plaintiff in a Title I case,

14

whereas prior to Garrett, it could not.  It is from this holding

that Defendants here now try to extrapolate the rule that the

State of Hawaii is immune from suit under Section 504.

Two relatively recent Ninth Circuit cases, however,

have held that Congress effectively abrogated the states'

sovereign immunity under Section 504 and Title II of the

Americans with Disabilities Act ("ADA").[5]  See Dare v.

California, 191 F.3d 1167 (9th Cir. 1999); Clark v. California,

123 F.3d 1267 (9th Cir. 1997).  This court is bound by those

decisions.

Congress may abrogate state sovereign immunity only if:

(1) it states unequivocally that it intends to do so, and (2) the

waiver constitutes a valid exercise of its authority under § 5 of

the Fourteenth Amendment.  See Seminole Tribe v. Florida, 517

U.S. 609 (1996).  Congress has such authority under § 5 of the

Fourteenth Amendment, the due process clause, where it is

necessary to do so in order to protect the rights guaranteed

under § 1 of the Fourteenth Amendment, the equal protection

clause.  See Garrett, 121 S. Ct. at 962.

As to the first prong of the two-part test, Congress

clearly stated its intention to abrogate sovereign immunity under

---

[5]Title II of the ADA was modeled after Section 504 of the
Rehabilitation Act, and therefore case law discussing Title II of
the ADA is generally applicable to Rehabilitation Act cases.  See
Zukle v. Regents of the University of California, 166 F.3d 1041,
1045 n.11 (9th Cir. 1999).

Title II of the ADA and Section 504 of the Rehabilitation Act. See 42 U.S.C. § 2000d-7(a)(1) (stating that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973").

As to prong two, in <u>Clark</u> and <u>Dare</u>, the Ninth Circuit held that abrogation under Title II and Section 504 was a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. See <u>Clark</u>, 123 F.3d at 1270; <u>Dare</u>, 191 F.3d at 1175. In <u>Clark</u>, the Ninth Circuit further held that even in the absence of abrogation of state sovereign immunity under § 5 by Congress, states that have accepted federal funds under Section 504 have waived sovereign immunity and therefore may be subject to suit on that basis. See <u>id.</u> at 1271; <u>see also</u> <u>Jim C. v. United States</u>, 235 F.3d 1079, 1080 (8th Cir. 2000) (holding that "Section 504 is a valid exercise of Congress' spending power, and that [the state] waived its immunity with respect to Section 504 suits by accepting federal funds").

Despite the Ninth Circuit rulings, which continue to stand as good law, Defendants here urge the court to follow the <u>Garrett</u> precedent with respect to Section 504. The <u>Garrett</u> Court, however, specifically declined to address whether the Eleventh Amendment bars suit under Title II of the ADA, which has

16

separate and distinct remedial provisions.  See id. at 960, n.1.[6]
The Courts of Appeal are split as to whether there has been an
effective waiver of state sovereign immunity under Title II or
Section 504.  Compare, e.g., Dare, 191 F.3d 1167 (9th Cir. 1999)
(finding that abrogation was properly effectuated) to Alsbrook v.
City of Maumelle, 184 F.3d 999 (8th Cir. 1999) (finding that
sovereign immunity not validly abrogated under Title II of the
ADA).

     The Court in Garrett did not discuss Section 504 at
all, nor did it discuss the possibility of waiver of state
sovereign immunity based on receipt of federal funds.  Therefore,
while Garrett and its predecessors may cast doubt on the long-
term viability of the holdings in Clark and Dare, it has not
specifically overruled those cases.  See Project Life v.
Glendening, —F. Supp. 2d---, 2001 WL 487642, n.1 (D. Md. 2001)
(finding that Garrett does not apply to Title II of the ADA; only
published case so far to address the question).[7]  Accordingly,

---

[6]Title I of the ADA makes it unlawful to engage in
employment discrimination against individuals with disabilities.
See Zimmerman v. Oregon Dept. of Justice, 170 F.3d 1169, 1172
(9th Cir. 1999).  Title II and the Rehabilitation Act, on the
other hand, relate to the services, programs or activities of
public entities.  See id. at 1172-73; 42 U.S.C. § 12132.

[7]The court notes that in Wroncy v. Oregon Dept. of Transp.,
2001 WL 474550 (table), the Ninth Circuit declined to apply
Garrett to a claim under Title II of the ADA.  The court notes
this opinion, but does not rely on it or cite to it, as it is
unpublished and thus has no precedential value.

the court remains bound by the <u>Clark</u> and <u>Dare</u> precedent unless and until the Ninth Circuit or Supreme Court rules otherwise, and DENIES Defendants' Motion to Dismiss based on Eleventh Amendment immunity.[8]

E.    Punitive and Hedonic Damages

Defendants next argue that Plaintiffs' claims for punitive or hedonic damages should not be allowed.  To this end, Defendants urge that where a statute does not expressly provide a remedy for punitive damages, a court may not allow them. Further, Defendants assert, Congress explicitly provided the "remedies, procedures and rights" of Title VI to enforce Title II of the ADA and Section 504.

Some courts have held that punitive damages are not available under Section 504.  For example, in <u>Moreno v. Consolidated Rail Corp.</u>, 99 F.3d 782 (6th Cir. 1996), the court held that punitive damages were not recoverable under the Section 504.  The court engaged in a long discussion about the history of the Rehabilitation Act and the traditional remedies available under it.  <u>See</u> <u>id.</u> at 788-792.  It ultimately concluded that

---

[8]The court further notes that this holding is in keeping with the decisions of the other district judges in this district. Both Judge Kay and Judge Gillmor have held that they are bound to follow Ninth Circuit precedent in <u>Clark</u> and <u>Dare</u>.  <u>See</u> <u>Patrick W. v. LeMahieu</u>, CV. NO. 98-843 ACK (filed April 16, 2001); <u>Doe v. Hawaii</u>, CV. NO. 99-079 HG (filed April 9, 2001).  <u>See also</u> <u>Patricia N. v. LeMahieu</u>, ---F. Supp. 2d---, 2001 WL 589457 (D. Haw. May 29, 2001).

punitive damages under Section 504 were not appropriate because, among other reasons, Congress never indicated an intent to allow anything other than compensatory damages in Section 504 cases,[9] and because Congress chose other ways to "punish" violators of Section 504. Id. at 791.

This district, however, has come to precisely the opposite conclusion. See Burns-Vidlack v. Chandler, 980 F. Supp. 1144 (D. Haw. 1997) (Kay, J.). In Burns-Vidlack, the court also undertook an extensive examination of the Rehabilitation Act and its development throughout the court system. See id. Like the Moreno court, the Burns-Vidlack court then looked to the following test to determine when punitive damages may be awarded: (1) if there is no clear direction to the contrary by Congress; and (2) such relief would be appropriate. See id. at 1149 (citing Franklin v. Gwinnett, 503 U.S. 60, 71 (1992)).[10]  While Moreno held that "such relief" would not be appropriate,

---

[9]In contrast, Congress specifically provides for punitive damages in cases arising under § 501 of the Rehabilitation Act, capping them at $300,000.

[10]Specifically, the Supreme Court in Franklin stated that:

> the general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.

Franklin, 503 U.S. at 62.

19

Burns-Vidlack held the opposite. See id. at 1150 (stating that "the Court finds Moreno unpersuasive").

First, the court found that Congress had not indicated an aversion to punitive damages in Section 504 cases. In fact, the court found that "[t]o the contrary, Congress has confirmed the importance of awarding damages against states when they violate § 504." Id. at 1149-50. Second, the court found that an award of punitive damages may be appropriate in some circumstances, again rejecting the Moreno court's rationale. See id. at 1151 (stating that the court did not find "any of the rationales proffered in Moreno convincing"; and thus finding that punitive damages were appropriate). Whether the circumstances warrant an award of punitive damages is something that should be decided on a case-by-case basis (as is done in regular tort suits), rather than by "creating a blanket rule." Id. Accordingly, the court refused to dismiss the punitive damages claims against the state defendants.

In addition to its findings under the Franklin test, the court in Burns-Vidlack also considered the Ninth Circuit's holding in Kling v. Los Angeles, 769 F.2d 532, 534 (9th Cir. 1985) rev'd on other grounds, 474 U.S. 936 (1985), in which the court stated that the "full panoply" of damages are available under Section 504. See Burns-Vidlack, 980 F. Supp. at 1147 (also citing cases from the Fourth, Eighth and Eleventh Circuits in

which the courts stated that the "full panoply" of remedies were available under Section 504). Further, it relied on several other cases from around the country in which punitive damages actions were permitted under Section 504. See id. (collecting cases from around the country including Maine, Connecticut and New York). See also Proctor v. Prince George's Hospital Center, 32 F. Supp. 2d 820, 829-30 (D. Md. 1998) (holding that punitive damages available under § 504).

After reviewing the relevant case law, this court finds itself persuaded by Burns-Vidlack rather than Moreno, and therefore declines to dismiss Plaintiffs' punitive damages claims. Applying the Franklin test, the court finds that Congress did not provide any "clear direction" as to punitive damages in Section 504 cases. Under Franklin, then, a federal court may award any "appropriate" remedy. Like the Burns-Vidlack court, this court holds that what is "appropriate" should be based on a case-by-case determination, rather than by fashioning a blanket rule. Thus, the Motion is DENIED on this basis.

F.    Statute of Limitations.

Defendants next argue that Plaintiffs have, in essence, waited "for eighteen years to file a hearing petition," when they have been complaining for that long as to the services provided to their child. See Defendants' Motion for Partial Summary Judgment, at 12. Thus, they argue, the court should now grant

21

summary judgment in favor of Defendants based on the fact that it is time-barred, or based on the equitable doctrine of laches.

The statutes under which Plaintiffs bring suit do not specify limitations periods.  Therefore, the court must determine and apply the most closely analogous state statute of limitations.  See Livingston v. Keen, 82 F.3d 912, 915 (9th Cir. 1996).  The court finds that, as it did earlier in this case, Hawaii's statute of limitations for federal statutory claims applies to Plaintiffs' instant claims.  Hawaii Revised Statutes § 657-11 provides that such claims are subject to a two-year statute of limitations.[11]

The Ninth Circuit has not specifically addressed the question of when the limitations period in IDEA/Section 504 cases begins to accrue, though other circuits have.  In Jeremy H. v. Mt. Lebanon Sch. Dist., for example, the Third Circuit held that the limitations period for IDEA-related claims begins to accrue once the administrative process is complete.  See 95 F.3d 272, 280-81 (3rd Cir. 1996).  It considered determining accrual based on when the acts complained of occurred (with tolling during the pendency of administrative proceedings),[12] but found that this

_____

[11]The parties, in the previous Motion in this case, agreed that a two-year limitations period applies.

[12]As exhaustion of administrative remedies under the IDEA is a prerequisite to filing related claims under Section 504, it necessarily follows that the statute of limitations would be (at the very least) tolled during the pendency of the administrative

method was impractical because it would require "a complex tolling analysis, and allow[] different plaintiffs widely varying (and perhaps difficult-to-ascertain) periods in which they may bring suit." Id. at 280.

The court agrees with the Third Circuit that the appropriate time to begin the limitations period is at the conclusion of the administrative proceedings. In addition to the reasons identified by the Third Circuit, the court finds that this method of calculation is most workable because of the difficulty in determining when the injury arises in these kinds of cases. For example, in the instant case, when did Aaron's injury arise? At some point after the development of the IEP when the DOE allegedly failed to follow through with the appropriate services? At the point where failure to provide services led to the degeneration of Aaron's development? After Aaron's parents contacted the DOE and they allegedly failed to respond?

As such, it makes sense to begin the limitations period at the conclusion of the administrative proceedings.[13]  In this

———————————————

proceedings. Otherwise, if the administrative proceeding took a particularly long time, plaintiffs might be entirely barred from bringing a civil action. See id. at 280.

[13]In a prior Order in this case, this court determined that Plaintiffs must have learned of Aaron's injury on or after May 10, 1998 in order to be able to proceed on the claim. After that decision, however, this court, in Patricia N. v. LeMahieu, ---F. Supp. 2d---, 2001 WL 589457 (D. Haw. May 29, 2001), determined

case, the hearing decision was issued on March 15, 2000, and the time for appeal expired 30 days later. As this action was instituted in May 2000, Plaintiffs are clearly within the limitations period. Defendants' statute of limitations argument, therefore, fails.

Defendants also fail on its laches argument. The equitable doctrine of laches is an affirmative defense based on the theory that a party has an equitable time limitation on its right to bring suit. See Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1036 (9th Cir. 2000). In order to successfully assert this affirmative defense, a party must prove (1) unreasonable delay and (2) prejudice to itself. Id.; Couveau v. American Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000). The Ninth Circuit has stated, with respect to the doctrine of laches, that "[b]ecause the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment." Couveau, 218 F.3d at 1083 (quoting Bratton v. Bethlehem Steel Corp., 649 F.2d 658, 666-67 (9th Cir. 1980)). Moreover, the application of the doctrine is "consigned as an initial matter to the sound discretion of the

_____

that the period in cases such as this one actually begins to run when the administrative hearing is complete. Based on the reasoning stated above, which is identical to the reasoning in Patricia N., the court adheres to this principle because it finds it to be more sound than the reasoning stated in the court's previous Order.

24

district court judge." <u>Apache Survival Coalition v. United States</u>, 21 F.3d 904, 905 (9th Cir. 1994)

In determining whether any delay was "unreasonable," the court should measure the delay from the time that Plaintiff "knew or should have known about the potential claim at issue." <u>Kling</u>, 225 F.3d at 1036. Here, the court has determined that the impracticality of determining when Aaron's injury occurred led to the use of the administrative hearing as the beginning of the running of the statue of limitations. Thus, it logically follows that it is not unreasonable to have filed the suit after the hearing. Therefore, the court finds that Plaintiffs have shown that a genuine issue of material fact exists as to whether the delay, if any, was "unreasonable." Moreover, even assuming, arguendo, that a delay was unreasonable, Defendants have not cited to any particular prejudice they now face as a result of that delay. Therefore, the Motion is DENIED on this ground.[14]

G.   **Injunctive Relief.**

Defendants argue that injunctive relief is not available to Plaintiffs. In making this argument, however, Defendants do not cite to any legal reasons as to why summary judgment should be granted in their favor. Instead, Defendants

---

[14]In addition, the court notes that under IDEA, a parent must exhaust administrative remedies before he or she files suit. 20 U.S.C. 1415(l). The administrative proceedings ended March 15, 2000; Plaintiffs filed the Complaint May 10, 2000. This period of time is not an unreasonable delay.

argue that injunctive relief is impractical and that "Plaintiffs did [sic] not want injunctive relief anyway." See Defendants' Motion for Partial Summary Judgment at 13. The court finds that these are improper grounds upon which to grant a motion for summary judgment. The Motion is DENIED on this basis.[15]

II. **Plaintiffs' Motion for Partial Summary Judgment.**

Plaintiffs claim they are entitled to partial summary judgment on three issues: first, that the administrative hearing decision is res judicata; second, that the proper legal standard in a section 504 case is "deliberate indifference" or "conscious disregard"; and third, that Defendants' actions have risen to the level of "deliberate indifference," and Defendants are therefore liable to Plaintiffs. The court will address each claim, in turn, below.

A. **Res Judicata.**

Plaintiffs argue that in the same manner in which federal courts much give a state court judgment preclusive effect, so must a federal court give preclusive effect to a state administrative agency decision. The court agrees.

The court first notes that it does not understand the Plaintiffs through this argument to be asking the court to

---

[15]Defendants' final argument, that mental health services may be unwarranted, has absolutely no backing or merit whatsoever. The court will not address this argument at this time, unless it receives further legal or factual support for this argument.

automatically translate their administrative victory into a
Section 504 victory, but rather only that Defendants be precluded
from re-litigating whether Defendants failed to provide FAPE and
whether the parents' own program was appropriate. Indeed, as
discussed <u>supra</u> and <u>infra</u>, the question of whether Defendants
acted with "deliberate indifference," for example, would still
need to be litigated. <u>See</u> <u>Breen v. St. Charles R-IV Sch. Dist.</u>,
2 F. Supp. 2d 1214 (E.D. Mo. 1997) (finding that failure to
provide FAPE, by itself, would not rise to the level of a Section
504 violation where district provided IEP).

In <u>Bator v. State of Hawaii</u>, the Ninth Circuit
determined that, under Hawaii law, preclusive effect should be
given to the findings of administrative agencies if: (1) the
issue decided in the prior action is identical to the issue in
the current action, (2) a final judgment on the merits was
rendered, and (3) the parties are the same. <u>See</u> <u>Bator</u>, 39 F.3d
1021, 1027 (9th Cir. 1994). In addition, to obtain preclusive
effect in federal court, the administrative determination must
also meet three more requirements: (1) that the administrative
agency act in a judicial capacity, (2) that the agency resolve
disputed issues of fact properly before it, and (3) that the
parties have an adequate opportunity to litigate. <u>See</u> <u>Misischia</u>
<u>v. Pirie</u>, 60 F.3d 626, 629 (9th Cir. 1995); <u>see also</u> <u>Carroll v.</u>
<u>Maui County</u>, 866 F. Supp. 459, 464 (D. Haw. 1994) (finding that

27

"in administrative situations 'res judicata should be applied with flexibility'") (citation omitted).  The court now examines each of these factors.

First, as to whether the issues are identical, the court finds they are.  The issues are the same as to the narrow questions of whether Aaron was denied FAPE and whether the services rendered to him were appropriate, the issues are the same.  Second, final judgment on the merits was rendered at the administrative hearing; Defendants did not appeal.  They instead complied with the administrative ruling.  Third, the parties are the same.  Thus, this first set of requirements have been met, and the court will now address the other "fairness" concerns.

The "fairness" concern implicated here is that Defendants did not have a full and fair opportunity to litigate the issues which Plaintiffs now seek to preclude.  Specifically, they argue that an IDEA hearing does not provide the same opportunity for discovery as more formal administrative hearings or court proceedings do.  In addition, the incentives to litigate are somewhat different in that the IDEA hearing officer can only award equitable remedies as opposed to the courts, which can award money damages.

After considering Defendants' argument, the court concludes that they did, in fact, have a full and fair opportunity to litigate.  The res judicata test does not require

28

that the parties have the exact same opportunity to litigate, only that they have a full and fair opportunity to do so. In this case, Defendants had plenty of incentive to fully address whether Aaron received a FAPE. Although the hearing officer would not have the power to grant money damages, he or she can order the state to provide costly educational benefits to the students, as well as reimbursement for money spent by the parents. Further, the prevailing party at an IDEA hearing is entitled to attorneys fees and costs. Defendants do not cite to any evidence that they did not put on as a result of the limited discovery available in the IDEA hearing, nor that they would have more vigorously defended their position had more time been available. Moreover, a Deputy Attorney General was present representing Defendants at the hearing. Therefore, the court finds that Plaintiffs have met all the requirements for res judicata.

In addition to meeting the requirements under the rule, the court notes a few additional reasons why Defendants should be estopped from litigating the narrow issues presented here. First, they did not appeal the administrative decision, thereby essentially waiving their right to challenge the validity of the FAPE determination. Second, the court finds that res judicata should apply as a matter of judicial economy. As stated above, Defendants have not pointed this court to what they would have

done differently had the administrative proceeding been more "formal." Therefore, the court must conclude that re-examining the issue of whether FAPE was provided to Aaron would be merely a re-hash of the administrative proceeding, a proceeding which, at least under circumstances of an administrative appeal, is entitled to some deference by this court. See Ojai Unified Sch. Dist. V. Jackson, 4 F.3d 1467, 1472 (1993). Therefore, Defendant is precluded from re-litigating these issues: (1) that Aaron did not receive FAPE, (2) that the DOE did not provide Aaron with the adequate level of supplementary aids and services to which he was entitled, and (3) that Aaron did not make significant progress during his last four years of school. The court points out, however, that this ruling is very limited. Many issues are still before the court or must be presented to the fact finder, including whether there was discrimination, intentional or otherwise, under Section 504, and to what damages, if any, Plaintiffs are entitled.[16] See, e.g., Bator, 39 F.3d at 1027

---

[16]The court would like to briefly address Defendants' argument that because this court earlier denied Defendants' res judicata arguments it must now reject Plaintiffs'. Defendants, in their earlier Motion to Dismiss, argued that because the issue of denial of FAPE had already been litigated, Plaintiffs could not bring Section 504 claims based on it. The court held that principles of res judicata would not apply to entirely bar plaintiffs from bringing claims under Section 504. See Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, or in the Alternative for Judgment on the Pleadings, at 15. This was in part because issues over intent and damages had not been adjudicated at the administrative level. Here, however, the situation is different. Plaintiffs here merely seek issue

30

(finding that administrative determination that individual had suffered injury was entitled to preclusive effect).  Thus, Plaintiffs' Motion as to this issue is GRANTED.

**B.    Legal Standard of "Deliberate Indifference."**

Plaintiffs next ask this court to grant summary judgment on the issue of what legal standard applies to the determination of a section 504 violation.  Plaintiffs argue that the standard should be one of "deliberate indifference."  The court agrees.

In Ferguson v. City of Phoenix, the Ninth Circuit held that to make out a claim for damages under Section 504, Plaintiffs must show intentional discrimination. 157 F.3d 668 (9th Cir. 1998); cf. Sellers v. School Board of City of Manassas, VA, 141 F.3d 524, 529 (4th Cir. 1998) (holding that "either bad faith or gross misjudgment should be shown before a Section 504 violation can be made out, at least in the context of handicapped children").  The court did not elaborate as to with what intent a defendant must act in order to have intentionally discriminated: discriminatory animus or deliberate indifference.[17]  Although it

_____

preclusion on the narrow issues identified above.  Defendants previously had tried to use it to obtain dismissal of the entire case.

[17]The Ninth Circuit noted that the district court had used the "deliberate indifference" definition, while the state had urged application of a "discriminatory animus" definition.  See Ferguson, 157 F.3d at 675.  The Ninth Circuit did not decide which definition to use, but this court, persuaded by the

is clear that a showing of discriminatory animus will suffice to establish intentional discrimination, <u>see, e.g.</u>, <u>Guardians Association v. Civil service Commission of the City of New York</u>, 463 U.S. 582, 584 (1983), several federal courts have also found that a showing of deliberate indifference will also suffice to establish intentional discrimination.

For example, in <u>Gebser v. Lago Vista Independent School District</u>, 524 U.S. 274 (1998), the Supreme Court noted that under Title IX of the Education Amendments of 1972, codified at 20 U.S.C. § 1681, et seq, a plaintiff may establish intentional discrimination by showing deliberate indifference.  <u>Id.</u> at 290-291.  Since <u>Gebser</u>, other courts have followed the cue from the Supreme Court, and have applied this rule in Section 504 cases.  <u>See, e.g.</u>, <u>Powers v. MJB Acquisition Corp.</u>, 184 F.3d 1147, 1153 (10th Cir. 1999) (stating that "intentional discrimination can be inferred from a defendant's deliberate indifference").  This court has also applied the standard of "deliberate indifference" to a case almost identical in nature to this one.  <u>See</u> <u>Patricia N. v. LeMahieu</u>, ---F. Supp. 2d---, 2001 WL 589457 (D. Haw. May 29, 2001).  Because the court finds that the legal standard of "deliberate indifference" is the appropriate one to apply in

---

district court's ruling, adopts the "deliberate indifference" definition.  <u>See</u> <u>Ferguson v. City of Phoenix</u>, 931 F. Supp. 688, 697 (D. Ariz. 1996).

analyzing an allegation of a Section 504 violation, the court GRANTS Plaintiffs' Motion on this ground.

C.    **Whether Defendants' Actions Have Risen to the Level of Deliberate Indifference.**

Plaintiffs, in their final argument, assert that they have offered unrebutted evidence of deliberate indifference on the part of Defendants.  As such, Plaintiffs add, they are entitled to summary judgment on the issues of whether Section 504 and the IDEA were violated.  The court agrees.

First, the administrative hearing established that Aaron was denied the FAPE to which he was entitled.  Moreover, it was also established at that hearing that Aaron was not provided with the appropriate aids and services necessary to sustain a level of progress.

Second, Plaintiffs have provided evidence which shows that the Molokai High principals, officials in the Maui District Office, and state officials in the Honolulu offices were aware of the personnel shortages on Molokai.  These personnel shortages were primarily responsible for the denial of Aaron's FAPE.  All failed to take action to remedy the situation.  This knowledge, coupled with the lack of action, resulted in the receipt of inadequate services for Aaron.  This lack of services led to Aaron's inability to be mainstreamed, and led to his lack of progress during the last four years of his education.

33

Defendants have not offered any evidence to rebut these facts. They did not file a Separate and Concise Statement of Facts in support of their Opposition.[18]  A review of Defendants' Separate and Concise Statement of Facts ("SCS") submitted in support of their own Motion for Partial Summary Judgment finds nothing in that Statement of Facts to support their position. Defendants do, in their SCS and through Declarations attached to their Motion for Partial Summary Judgment, state that Defendants "have no discriminatory animus toward Aaron L. or his family and have not been intentionally indifferent or intentionally discriminatory toward them." See SCS 16.  The court finds these conclusory statements of law, however, insufficient to overcome the evidence produced by Plaintiffs.  It is, after all, the responsibility of the opposing party to come forward with specific facts evidencing a need for trial.  Fed. R. Civ. P. 56(e).

Defendants argue in their Opposition, of course, that they acted in good faith.  The court, however, sees only specific evidence before it that they DOE knew that special education children on Molokai, including Aaron L., were not receiving the services necessary to provide them with the FAPE to which they

---

[18]According to Local Rule 56.1, the failure to file a "separate document containing a concise statement that sets forth all material facts as to which it is contented there exists a genuine issue necessary to be litigated," is tantamount do an admittance of material facts.  See L.R. 56.1(b)(2) and (g).

were entitled.  In spite of this awareness, the DOE did nothing.
This amounts to deliberate indifference.  Therefore, Plaintiffs'
Motion is GRANTED.[19]


CONCLUSION

For the reasons stated above, the court GRANTS
Plaintiffs' Motion for Partial Summary Judgment and GRANTS in
part and DENIES in part Defendants' Motion for Partial Summary
Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 18, 2001

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE


Stephen L., et al. vs. Paul LeMahieu, et al., Civil No. 00-00338
DAE/KSCC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

_____

[19]The court is not unsympathetic to the plight in which DOE
administrators find themselves when over many years the Hawaii
State Legislature has failed to provide adequate funding to
ensure legally mandated services to special needs children.  The
DOE, however, is part of the State of Hawaii and the State
Defendants cannot excuse its knowing failure to provide these
services because of a lack of funding commitment from the State
Legislature.  In sum, deliberate indifference by the State
Legislature cannot provide an excuse for another arm of state
government, the DOE, from meeting its knowing legal obligation to
special needs children.

35