ORIGINAL

Of Counsel:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN            1152-0
MICHAEL K. LIVINGSTON       4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii 96813
Telephone: (808) 524-7500/Fax: (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY              4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447/Fax: (808) 523-8448
Email: carl@varadylaw.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 14 2008

at 4 o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>          Plaintiffs,<br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>          Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>#344: PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DEFENDANT'S MOTION IN LIMINE TO EXCLUDE REFERENCE TO THE FELIX CONSENT DECREE AND CONTEMPT ORDER DATED JUNE 1, 2000; DECLARATION OF STANLEY E. LEVIN; EXHIBITS "A", "B" AND "C" AND CERTIFICATE OF SERVICE |

DATE:    February 26, 2008
TIME:    9:00 a.m.
JUDGE:  Alan C. Kay
TRIAL DATE:  February 26, 2008

### #344: PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DEFENDANT'S MOTION IN LIMINE TO EXCLUDE REFERENCE TO THE FELIX CONSENT DECREE AND CONTEMPT ORDER DATED JUNE 1, 2000

## I.    INTRODUCTION

DEPARTMENT OF EDUCATION, State of Hawai'i, (Defendant) by and through it counsel, has filed a motion in limine seeking to exclude reference to the Felix Consent Decree and Contempt Order dated June 1, 2000. Defendant maintains that Plaintiffs must prove that Defendant acted with deliberate indifference and/or intentionally discriminated against Bryan Wiles-Bond. Defendant further maintains that there is no evidence to support a finding of such deliberate and/or intentional actions and state that the Felix Consent Decree and the Contempt Order of June 1, 2000 are irrelevant.

Generally, the trial court has broad discretion in making evidentiary rulings. *Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004). Decisions regarding the relevancy of evidence and whether the probative value of evidence outweighs unfair prejudice to the defendant are within the District Court's discretion. *United States v. Rubio*, 727 F.2d 786, 798 (9th Cir. 1983).

## II.    ARGUMENT

For background purposes, this court should know that a class action was filed by a Maui student (Jennifer Felix) who had not been provided with essential services by the Defendant Department of Education (hereinafter "Defendant"). These services dealt with the mental health services under her Individualized Education Program (hereinafter "IEP").  During the course of the case, it became clear to the court and the Plaintiffs that a real solution to the Defendant's clear systemic failure was for there to be an entirely new system for the identification and implementation of any disabled student that required mental health services.

The violations were so clear that this court (by Judge Ezra) early on, granted the Plaintiffs' Motion for Summary Judgment and certified the case as a class action.

In 1994, the Defendant, together with the Department of Health, (hereinafter "DOH") began the process of changing its procedures to meet the requirements of the federal IDEA and its regulations.  The process to get compliance took about 10 years and it still had glitches.  The "Order Granting in Part and Denying in Part Plaintiffs' Motion for Order to Show Cause Why Defendants Should Not be Found in Civil Contempt of Consent Decree and for Injunctive and Other Relief" (hereinafter referred to as "Ezra's Contempt Order"), attached hereto as Exhibit "A", reflects Judge Ezra's final loss of any regard for the State's repeated promises

3

of compliance. This was several years after the court had a special master and a monitor appointed to get the implementation and the changes to the system done. The court-hired personnel had been very concerned about the acceleration of non-compliance and they would have instituted contempt proceedings in 1998 or 1999.

Defendant claims that in the *Felix* case, the Order Granting Joint Motion for Approval of Settlement and Consent Decree, and Appointing Special Master as Exhibit "B" filed on October 25, 1994 (hereinafter referred to as "Consent Decree"), and the contempt finding are irrelevant to the instant case. If relevant, the defendant claims that the prejudice to the Defendant outweighs its probative value. Plaintiffs show that because of the Defendant's position taken in the case at bar the *Felix* proceedings are made relevant and non-prejudicial. This motion must be rejected in its entirety.

## III.   THE FELIX PROCEEDINGS ARE RELEVANT

There is no question (and none raised by the Defendant) that BWB is a member of the *Felix* class. That class included all students of the Defendant who needed mental health services and were not getting them. During the time of the contempt hearing, BWB was enrolled in Waikaloa Elementary School. He was categorized as "autistic" and because of this category, he was eligible for, and should have been receiving, mental health services from the Defendant. However, instead of receiving these services, his parents were in a pitched battle with the

4

Defendant about getting him the basic autistic services at any elementary school that could provide skills trainers. This was why he was not attending his home school because that school, contrary to the *Felix* Consent Decree, did not have any personnel or services to handle the most basic requirements of an autistic child's IEP. BWB was the classic *Felix* class member, an IDEA student whose IEP cried out for autistic-specified services, but one who was being shuffled between elementary schools that were still being managed by the Defendant on pre-*Felix* standards.

Rather than being irrelevant, the *Felix* proceedings provide an important insight into the gap between what the Defendant was telling the federal court was happening in Neighbor Island schools and what was really happening at Neighbor Island schools.

## IV.  FELIX IS RELEVANT BECAUSE IT GOES TO THE DELIBERATE INDIFFERENCE STANDARD

Although ignored by the Defendant, at almost every important level, *Felix* is very relevant to the main issue going to the jury, i.e. was the Defendant deliberately indifferent to the federal IDEA rights of BWB?

The Defendant's main defense has been to allege some sort of non-statutory, non-legislated "good faith" effort to provide BWB the crucial skills trainer services. It is crystal clear that this position is factually and legally wrong.

However, within this defense is a presumption that the deliberate indifference cannot be shown by the Plaintiffs.

Central to the whole concept of deliberate indifference is the fundamental notion that government agency must be on notice of the federally secured rights. See generally *Gorman v. Barnes*, 536 U.S. 181, 122 S.Ct. 2097, (2002).

The entire *Felix* proceeding, but more specifically the contempt finding, is very probative of what the Defendant knew in June, 2000. The acknowledged standards for issuing civil contempt wholly support Plaintiffs' position. In order to show that there has been contempt, the party alleging contempt must show that the: "alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *Go-Video, Inc. v. Motion Picture Association of America,* 10 F.3d 693, 695 (9th Cir. 1993). In the Contempt Order of June 1, 2000, Judge Ezra ruled that:

> As stated above, the determining whether civil contempt sanctions are necessary, the court must first examine whether Plaintiffs have shown that the Defendants have "violated the court's order by 'clear and convincing evidence.'" *Go-Video*, 10 F.3d at 695 (quoting *Vertex*, 689 F.2d at 889). Then, if the court finds that Plaintiffs have made this prima facie showing, then Defendants bear the burden of showing, with categorical and detailed evidence, why they were unable to comply after taking every reasonable step. *Donovan*, 716 F.2d at 1240. Also, financial constraints do not excuse non-compliance. *State of Hawaii*, 885 F.Supp. at 215. Thus, the court will first consider whether Plaintiffs have satisfied their burden of making a prima facie showing of non-compliance with the Consent Decree.

Ezra's Contempt Order filed 6/1/00 at p. 9.  See Exhibit "B."

Judge Ezra reviewed in detail the independent Monitor reports which showed an "overall pattern of performance . . . insufficient to make the necessary progress" and the "number of trained and qualified personnel available in the special education system was inadequate to provide effective services."  Contempt Order at pp. 13-14.  Interestingly, Judge Ezra also specifically found that the State's efforts to recruit qualified teachers and speech pathologists were "inadequate." *Id.* at 20.

In defense of all of this non-compliance, the Defendant argued that it had "substantially complied," with the Consent Decree, including that the Defendant had taken "every reasonable step to recruit and retain special education teachers and service personnel, but external problems out of its control have caused the shortage of qualified teachers." *Id.* at 24.  Lastly, the Defendant argued that it was in "good faith," but the court rejected that rationale and every other excuse the Defendant proffered in its defense. *Id.* at 28-29.

This finding of contempt was very relevant to this case because it provides a summary, year-by-year of the various inadequate efforts by the Defendant to partially comply with the consent decree and to then claim "we tried."  The Defendant did not argue ambiguity or lack of clarity with the law or the requirements.  This ruling is a stunning rebuff of the alleged reasons for non-

compliance.[1] By *Felix*, there is a certainty that the officials of the Defendant knew that BWB was disabled by autism and that he needed autism specific services. Of course, the contempt order also leaves no doubt that the Defendant knew that a substantial number of disabled children in 2000 did not have sufficient, current services to satisfy the court that their IDEA rights were implemented.

As in *Felix*, Defendants knew that there was a lack of skills trainers on the Big Island as early as 1999. (*See* Deposition of Alvin Rho, Judy Radwick, JoAn Hill, Kate Tolentino and Linda Price attached hereto as Exhibit "C"). That knowledge is relevant to the case at hand as is the Felix Consent Decree and the Contempt Order. Defendant new what it had to do in Felix. Defendant entered into a consent decree – a decree that both parties signed freely and with informed consent from counsel – yet in 6 years failed to live up to its agreements and was found in contempt. In this case Defendant agreed or entered into 2 settlements and failed to live up to its agreements and we ordered to provide certain services and again failed to live up to it. As in the motion in limine to exclude that certain "Decision and Order" dated May 21, 2001, allowing the Jury to examine and her

---

[1] This document also shows how deliberate and how very indifferent Alvin Rho, the Deputy Superintendent in 1999 for the Big Island, was when he did noting in 1999 through 2004 to deal with the critical shortage of skills trainer for that period. Then with no disclosures or any disclaimer, Mr. Rho proceeded to sign the 2002 Settlement Agreement knowing that he was still facing a skills trainer shortage and that there was no conceivable way for the Defendant to comply, in other words, he knew that the Defendant was in breach of the Settlement Agreement on the day he signed it. In any other context this approaches fraud.

evidence of the Felix Consent Decree and the Contempt Order of June 1, 2000 will show them a pattern of conduct by the DOE that has led up to this trial.

    DATED:  Honolulu, Hawai'i, January 14, 2008.

                                      STANLEY E. LEVIN
                                      CARL M. VARADY
                                      MICHAEL K. LIVINGSTON

                                      Attorneys for Plaintiffs