Of Counsel:
DAVIS LEVIN LIVINGSTON GRANDE
STANLEY E. LEVIN            1152-0
MICHAEL K. LIVINGSTON   4161-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

LAW OFFICES OF CARL M. VARADY
CARL M. VARADY            4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447
FAX:  523-8448
E-mail:  carl@varadylaw.com
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor, | CIVIL No. CV 05-00247 HG/BMK<br>CIVIL No. CV 04-00442 HG/BMK<br>Consolidated (Other Civil Action) |
| Plaintiffs,<br>vs. | PLAINTIFFS' DISCLOSURE OF EXPERT WITNESSES PURSUANT TO RULE 26(a)(2), FRCP; DECLARATION OF STANLEY E. LEVIN; EXHIBITS "A" TO "J" AND CERTIFICATE OF SERVICE |
| DEPARTMENT OF EDUCATION, State of Hawai'i, and ALVIN RHO, in his official capacity as West Hawai'i District Superintendent, | |
| Defendants. | TRIAL DATE:  October 11, 2006<br>JUDGE:  HELEN GILLMOR |

EXHIBIT "K"

MAY 3 1 2006

## PLAINTIFFS' DISCLOSURE OF EXPERT
## WITNESSES PURSUANT TO RULE 26(a)(2), FRCP

Pursuant to Rule 26(a)(2), Fed. R. Civ. Pro., and paragraph 11.a. of the Court's Rule 16 Scheduling Conference Order [filed May 22, 2006], Plaintiffs hereby make the following disclosure of expert opinions to be presented in this case:

**1. Daniel B. LeGoff, Ph.D.**

Dr. LeGoff's Neurodevelopmental Evaluation dated June 17, 2005 is attached as Exhibit "A" which sets forth his written opinions and basis and reasons therefor, including the data or other information considered by him. Attached hereto as Exhibit "B" is Dr. LeGoff's report dated December 13, 2005, which sets forth his written opinions as to the costs of residential, remedial and education services for Plaintiff. Attached hereto as Exhibit "C" is Dr. LeGoff's curriculum vitae which list his qualifications and his publications. He has not testified as an expert at trial or in deposition within the preceding four years. Dr. LeGoff's hourly rate for non-testimonial work is $175.00 and his hourly rate for testimony at trial or deposition is $225.00.

**2. Loretta M. Lukens, M.D., R.N., C.R.R.N.**

Loretta Lukens' report dated May 6, 2006 is attached as Exhibit "D" which sets forth her conclusions and recommendations and observations. Attached hereto as Exhibit "E" is Loretta Lukens' curriculum vitae which list her qualifications and her publications. She has testified as an expert at trial and in deposition within the preceding four years. See Exhibit "F" for a list of depositions and trials that Loretta Lukens has participated in, some of which have been for the past four years. Loretta Lukens' hourly rate for non-testimonial work is $150.00 and her hourly rate for testimony at trial or deposition is $300.00.

**3. Keynes D. Von Elsner, CPA**

Keynes Von Elsner's report dated May 6, 2006 is attached as Exhibit "G". His report shows damages due to educational neglect for the years 2005 to 2070. Attached hereto as Exhibit "H" is Keynes D. Von Elsner's curriculum vitae which list his qualifications. He has testified as an expert at trial and in deposition within the preceding four years. Exhibit "H" has a list of the types of cases that he has participated in for depositions and trials during the past four years. Von Elsner's hourly rate for non-testimonial work is $110.00 and his hourly rate for testimony at trial or deposition is $220.00.

**4. Kimberly Smalley, Ph.D.**

Kimberly Smalley's Behavioral Assessment dated August 18, 2004, is attached as Exhibit "I". Attached hereto as Exhibit "J" is Kimberly Smalley's curriculum vitae which list her qualifications and her publications. She has not testified as an expert at trial and in deposition within the preceding four years. Kimberly Smalley's hourly rate for non-testimonial work is $175.00 and her hourly rate for testimony at trial or deposition is $225.00.

DATED: Honolulu, Hawai'i, May 30, 2006.

/S/ STANLEY E. LEVIN

_____

STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
CARL M. VARADY
Attorneys for Plaitiffs

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>       Plaintiffs,<br><br>   vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i, and ALVIN RHO, in his official capacity as West Hawai'i District Superintendent,<br><br>       Defendants. | CIVIL NO. CV 05-00247 HG/BMK<br>CIVIL NO. CV 04-00442 HG/BMK<br>CONSOLIDATED (Other Civil Action)<br><br>DECLARATION OF STANLEY E. LEVIN |

## DECLARATION OF STANLEY E. LEVIN

I, STANLEY E. LEVIN, declare as follows:

1. I am one of the named attorneys in the above captioned case. Attached hereto as Exhibit "A" is a true and correct copy of Daniel B. LeGoff, Ph.D.'s Neurodevelopmental Evaluation dated June 17, 2005.

2. Attached hereto as Exhibit "B" is a true and correct copy of Daniel B. LeGoff, Ph.D.'s report dated December 15, 2005.

3. Attached hereto as Exhibit "C" is a true and correct copy of the curriculum vitae of Daniel B. LeGoff, Ph.D.

4.  Attached hereto as Exhibit "D" is a true and correct copy of Loretta Luken's report dated May 6, 2006.

5.  Attached hereto as Exhibit "E" is a true and correct copy of Loretta Luken's curriculum vitae.

6.  Attached hereto as Exhibit "F" is a true and correct copy of the list of clients and attorneys that Loretta Lukens testified for at trial and/or for deposition.

7.  Attached hereto as Exhibit "G" is a true and correct copy of Keynes Von Elsner's report dated May 6, 2006.

8.  Attached hereto as Exhibit "H" is a true and correct copy of Keynes on Elsner's curriculum vitae.

9.  Attached hereto as Exhibit "I" is a true and correct copy of Kimberly Smalley's Behavioral Assessment dated August 18, 2004.

10.  Attached hereto as Exhibit "J" is a true and correct copy of Kimberly Smalley's curriculum vitae.

I declare under penalty of perjury that the above is true and correct.

Executed on the 30th day of May, 2006.

/S/ STANLEY E. LEVIN

_____

STANLEY E. LEVIN

81-6587 Mamalahoa Hwy.
P.O. Box 1808
Kealakekua, Hawaii 96750
Phone 808.323.2664
Fax 808.323.2999
Email cfs@cfs-hawaii.org
www.cfs-hawaii.org

BOARD OF DIRECTORS

Roger Ponder
CHAIR

Lori Lum
FIRST VICE CHAIR

Kathy Inouye
SECOND VICE CHAIR

Carol Ai May
SECRETARY

Joanie Shibuya
TREASURER

Geri Marullo
PRESIDENT and CEO

Stephanie Ackerman
John L. Arizumi
Christine Camp Friedman
Patrick Ford
Judy Fraser
Robert Fujioka
Michael Goshi
Stanley Hong
Tim Johns
General (Ret.) Dwight Kealoha
Alma Kuioka
Lorrie Lee Stone
Stephen MacMillan
Lynn McCrory
Steve Metter
Paul J. Meyer
Arlene Nakamoto
Pat Teho
Neal Yokota
Hoyt Zia

ACCREDITATION

Council on Accreditation

AFFILIATIONS

Child Welfare
League of America

Alliance for Children
and Families

International Forum for
Child Welfare

Aloha United Way

Maui United Way

Kauai United Way

Hawaii Island
United Way

J. Hari
D. Coffman

Child & Family
S E R V I C E
Private, nonprofit since 1899

## Behavioral Assessment

Name: Bryan Wiles-Bond
D.O.B. 10/28/91
Assessor: Kimberly A. Smalley, Ph.D., BCBA.
Date of report: 8/18/04
Data Collection Via: x Interview x Direct Observation x Record Review

### Background

Bryan is a young man who is significantly impacted by his autism. He is active affectionate and motivated. Bryan loves all things water; swimming drinking playing, stimming. He also equally loves soap shampoo and other slippery similar products. As a younger child he would bite open squishy toys to get to the gel product inside and play with the gel in his diapers. He enjoys drinking from and playing with the hose, faucets and bathtub, Bryan is capable of opening his throat and swallowing all the water from an open hose or faucet. He has a long history of clogging the tub and toilet flooding the house.

Bryan knows what he wants and in the last few years has acquired some expressive communication skills with which to communicate his needs. He actively uses between 20 and 50 signs and reportedly knows over 100+. Last winter Bryan "read "me a picture book in sign language, demonstrating significantly more labels and nouns that I might have realized he knew based on his daily language use alone. Bryan's receptive communication appears good he can follow some multiple step directions, can answer verbal questions with sign languages ("do you want to go for a walk? Sign walk), though he is clearly not consistently an auditory processor and both chooses to disregard the message, and also may not have received the message on regular basis.

Bryan had made significant gains in toileting particularly around defecation and the mechanics of toileting. He still drinks and urinates almost constantly, as often as every 10 minutes. Bryan urinates on himself several times day he urinates on the chair / rug where ever he sitting. He used to wake up and pee off the edge of his bed but is currently sleeping through the urge to urinate and waking with a wet comforter. A toileting

*Child and Family Service is Hawaii's leader in non-government social and human services and advocacy for children and families in need, with the primary purpose of strengthening families and fostering the healthy development of children.*

augmented last winter, and again updated recently to include the provision of wake night staff (see toileting plan). Bryan is very active. He self stimulates (flapping hands making noise jumping moving) almost constantly. He picks at himself, flicks things, spits, puts his fingers in his mouth, and puts spit in his eyes and ears.

Bryan's family is very involved in his life and care. They have made major accommodations to their home and way of living to set Bryan up for success and prevent behavior excesses. Water and refrigerator products are kept in their bedroom, the fridge is locked, the downstairs bathroom water is shut off in the tub, etc. His bedroom is bare. The room itself was redone with regards to Bryan's toileting needs a few years ago. He has a second room to use, which contains another bed, toys, and working materials. The hope is to move Bryan from his bare room into his 'work' room incrementally when he has learned to toilet consistently and interact with materials appropriately. Bryan goes swimming with his family; shopping, eating out, etc. participates in all aspects of family life. Bryan and his brother don't currently share any interests. Bryan doesn't have friends per se` or a social circle, though he has been in class with the same students for a while, knows them, greets them, and is accustomed to their company.

Bryan takes no medications with the exception of Benadryl or Clairton for allergies; frequent Advil for bumps bruises inflammation and general discomfort, and Melatonin as a sleep aide. Bryan recently had EEG to rule out any medical cause for the recent and dramatic change in behavior. He also had a psychiatry appt. Bryan has used medications to control his behavior in the past, unfortunately he had atypical and life threatening reactions to the medications typically used in autism. Thus it is unlikely that a bio-chemical intervention will be found or used at this time. Bryan is prepubescent His body is changing and he is growing. Behavior associated with puberty in all children is or soon will be emerging.

Bryan was referred for an FBA do to his pervasive challenging behaviors and with specific regard to his recent increase in intensity and frequency of behaviors that may be dangerous to himself and others. This assessment will discuss his behavior excesses: tantrum, aggression and self-stimulatory behavior as well as his behavioral deficits: communication, toileting, daily livings kills, access to his curriculum.

## Behavior Description

**Aggression:** This behavior is defined as any physical contact directed by Bryan toward another individual. This typically includes: hitting, scratching, pushing, kicking, spitting, punching, or head butting.

Baseline frequencies of aggression have been measured at: 0-5 per domain (School or home). Episodes typically were discrete (single blow) and self-limiting. At home originally seen as unintentional bi-product of stimming Bryan has recently begun to aggress during tantrums in a purposeful way. At school Bryan has used minor aggression to protest or escape work but it has reportedly increased in frequency and intensity steadily since April.

**Tantrums:** Tantrum behavior is defined as yelling crying kicking pinching pushing, head butting, pinching, kicking or hair pulling, screeching and biting self. Tantrums can be as brief as five minutes and extend over 30. Tantrums of increased intensity and duration are new to Bryan, who has a history of protesting inappropriately but who had not previously hit hurt or injured others intentionally regularly. Bryan exhibits tantrum behavior 0-5 times a week. He recently experienced a severe burst where he aggressed and tantrummed repeatedly daily for approx 2 weeks. School and home staff both described Bryan as out of control, having never been seen "like this" before, and as "in crisis." Bryan has begun purposely aggressing against other jumping up from his "spot" to hit or grab, punch, head butting forward and backwards with enough force to draw blood.

Frequency of tantrums has been measured at: 0-5 occurrences per week with multiple occurrences in one day over many days. The intensity of the tantrums had been typically mild and usually redirectable, but may now escalate to serious levels in which property destruction self-injury and aggressions are present beyond 10 minutes

Antecedents

The following antecedents have been observed to occur before or in the presence of the target behavior.

• Changes in schedule or routines (lack of engagement)
• When given any initiating instruction
• When given a terminating instruction
• During transition times
• When asked to wait
• When presented with novel tasks
• When presented with difficult tasks
• When given a boring or repetitive task

- While being physically prompted
- In the presence of new or substitute staff
- After interrupting a preferred activity
- Lower levels of agitated motor behavior exhibited (e.g., excessive down time or Self-stimulatory behavior)
- When a need cannot be communicated
- While engaged in self-stimulatory behaviors
- In response to a denial of a request
- When something preferred is taken from student

Bryan is most likely to tantrum following a denial or delay of a request or following an instruction.

Environmental events, which have rarely or have never been associated with the tantrum behavior include: when occupied with an interesting task or preferred activity, when demands are not being made, and if left alone.

Medical/physiological factors, which may affect the occurrence of tantrum behavior, may include:

- General pain-related complaints may be present (bumps, bruises, ears eyes inflammation, rule out any medical such as, new teeth)
- Allergies
- Physical and hormonal changes associated with growing

An analysis of the teaching situation indicates that the following educational or instructional factors play a role in the performance of the behavior.
- Lack of or low student interest in the task
- Work too easy or repetitive
- Lack of interspersed tasks
- Absence of predictable schedule
- Low rates of reinforcement for performance
- Ratio of positive to negative feedback may be too low
- Absence of or limited student choices
- Absence of potent reinforcers for performance
- Absence of appropriate student escape response
- Absence of appropriate student assistance-asking response
- Staff correction procedures are delivered poorly

An analysis of Bryan's communication skills reveals that the tantrum behavior is influenced by the following communicative deficits
- Inability to consistently make needs known
- Inability to ask for assistance

- Inability to appropriately ask for attention/acknowledgement
- Lack of consistent indicator response to obtain others' attention
- Difficulty communicating pain
- Difficulty appropriately expressing anger
- Difficulty initiating appropriate social responses

Potential Functions/Maintaining Consequences

Based on the data collected, it appears that the tantrum behavior functions to:
- Escape from a non-preferred activity
- Escape from a non-preferred instruction
- Escape from other students and/or staff (e.g., wanting to be left alone)
- Obtain a desired item typically water soap or carbs
- Obtain attention or a reaction from staff
- Provide the individual with sensory feedback which is pleasurable

Currently, the consequences for the performance of the tantrum behavior include:
- Escape from non-preferred situations or demands is intermittently available
- Attention received from others
- Sensory feedback is provided which may be pleasurable
- Desired items that may have been denied are obtained

Review of the data consistent with observation and interview reflects a clear cause and effect, if Bryan is "edgy", aggressive "head butt" or protests otherwise inappropriately; staffs withdraw the demand or attention.

Property Destruction: This behavior is defined as any purposeful destruction of Bryan's own property or the property of others.

Frequency of property destruction has been measured at: 0-5 occurrences per episode. The intensity of property destruction typically is usually mild and self-limiting but may consist of multiple broken or damaged items. Bryan will break throw or knock down items on his way to his room or spot during a tantrum. Bryan may also tear paper, books, bite open toys or balls etc. as a self-stimulatory behavior with much greater frequency (staff vigilance). As property destruction reliably occurs under these conditions addressing Tantrum behavior and self-stimulation will in turn remediate property destruction.

Self-stimulatory Behavior: Bryan engages in self-stimulatory behavior, which may also be mildly self-injurious. Bryan self stimulates pervasively. He is almost always in motion. Hands flapping, tapping, pulling his fingers back far enough

to cause another pain, picking at himself, spitting, urinating, putting his fingers in his mouth removing saliva and then putting it in his ears or eyes. Bryan has regular staph infections, bruises and scratches. Bryan often takes Advil to remediate.

Bryan, twirls everything, bites open, eats /tastes and grabs at and tears things (especially leaves). Most concerning Bryan drinks everything. He will grab all water receptacles, put his mouth over the end of the hose or faucet and leave it there, drinking the stream. He has a history of biting open all squishy stim toys and drinking the fluid inside. Bryan will drink non-stop to a point of urinating while drinking. Bryan eats non-edibles. He grabs paper, leaves and almost anything small enough to put in his mouth with speed and swallows. He will also shove items into his mouth that are too large to swallow, such as a paper towel from the bathroom. He recently passed undistinguishable plastic pieces, string, leaves and seawater in his bowel movement. Bryan enjoys deep pressure touch and any activity providing similar sensory feedback. Bryan may run or "Bolt" but it is the joy of movement the compulsion to run in a self-stimulatory way rather then bolting away as escape. Self-stimulation in multiple forms is pervasive. Self-injury is intense enough to cause swelling bruises small scratches, open wounds, and Staph.

An analysis of the teaching situation indicates that the following educational or instructional factors play a role in the performance of self-stimulatory behavior.
• Lack of or low student interest in the task
• Work too easy or repetitive
• Lack of interspersed tasks
• Absence of predictable schedule
• Low rates of sensory reinforcement or feedback for performance
• Ratio of positive to negative feedback may be too low (incorrect form or R+)
• Absence of or limited student choices
• Absence of potent reinforcers for performance
• Staff correction procedures may be delivered poorly


An analysis of communication skills reveals that the behavior is influenced by the following communicative deficits
• Inability to gage or indicate need to self regulate
• Difficulty appropriately communicating pain, boredom or level of excitement
• Difficulty appropriately expressing emotional states
• Difficulty initiating appropriate social responses

Potential Functions/Maintaining Consequences

Based on the data collected, it appears that the self-stimulatory and self-injurious behaviors function to provide the individual with sensory feedback, which may be pleasurable

Currently, the consequences for the performance of the self-stimulation include:
• Sensory feedback is provided (Pleasurable or cathartic)
• Escape from or delay of non-preferred situations or demands is intermittently Available
• Attention received from others
• Desired items that may have been denied are obtained.

Self-stimulation is by definition self-reinforcing, without competing incompatible or replacement behaviors will remain static at these high rates

**Non-compliance or refusal behavior.** This behavior is defined as failure to cooperative with a staff instruction or directive within a reasonable period of time. Refusal behavior may consist of any of the following responses: ignoring request; physically refusing to cooperate; running away from requester; engaging in other types of protest behavior. Bryan isn't oppositional in the traditional sense, he has however begun to test his limits and boundaries in a way that is new more intense and at much higher frequencies. Not atypical of puberty, this behavior may be related to typical milestones as well as a symptom of behavioral drift. Bryan's program has lost integrity and consistency; as a result his behaviors as described above have been intermittently reinforced. Bryan is testing his boundaries in all environments across all persons.

An analysis of the teaching situation indicates that the following educational or instructional factors play a role in the performance of refusal behavior.

• Student has limited experience in group instructional settings
• Lack of or low student interest in the task
• Work too easy or repetitive
• Lack of interspersed tasks
• Lack of mute-modality instruction
• Absence of predictable schedule
• Low rates of reinforcement for performance
• Ratio of positive to negative feedback may be too low
• Absence of or limited student choices
• Absence of potent reinforcers for performance
• Absence of appropriate student escape response
• Absence of appropriate student assistance-asking response

8

• Staff correction procedures are delivered poorly

An analysis of communication skills reveals that the behavior is influenced by inability to consistently make needs known

Potential Functions/Maintaining Consequences

Based on the data collected, it appears that the refusal behaviors function to:
• Escape from a non-preferred activity
• Escape from a non-preferred instruction
• Escape from family or staff (e.g., wanting to be left alone to self -stim)
• Obtain a desired item typically water or soap
• Provide the individual with sensory feedback which is pleasurable

Currently, the consequences for the performance of refusal include:
• Attention received from others
• Escape from non-preferred situations or demands is intermittently available
• Pleasurable sensory feedback is provided
• Desired items that may have been denied are obtained

Alternative Behaviors

Appropriate behaviors that may be taught and/or reinforced that can replace the target behaviors include:
• Waiting for preferred activities
• Turn taking
• Making choices
• Completing assigned tasks
• Playing with toys and related items appropriately
• Playing or working appropriately with peers
• Participating in structured table tasks (indiv. dyads and small group)
• Asking for assistance
• Offering and providing assistance
• Asking to escape or avoid a task
• Asking for a break
• Accepting request denials
• Accepting corrective feedback
• Following instructions
• Following a schedule (written or pictorial)
• Cooperating with transitions
• Playing appropriately with others
• Asking for a desired change (in activities, schedule, etc.)
• Asking for permission

- Asking for tangible items (e.g., toys, food, activities)
- Developing alternative leisure activities
- Developing alternative sensory-related activities
- Developing independent work/leisure skills
- Permitting redirection in the presence of lower levels of agitation
- Managing anger or protest through pro-social means
- Expressing feelings
- Accepting termination of a preferred activity
- Maintaining appropriate interpersonal space

**Skill Deficits**

**Communication**

Bryan has limited formal communication. He has experience with working with a PECS system and an Icon schedule. Bryan knows upwards or 100-150+ signs in ASL. When bombarded with ASL and low tech AAC by ASL speaking staff Bryan uses considerably more expressive communication. Bryan can name and label (chicken, bird, red, ball) many things with icons and sign but does not regularly communicate functionally, does not participate in conversation, express his feelings, indicate discomfort or a desire for change. Bryan demonstrates no pragmatic or social language skill at this time, beyond a wave and an occasional prompted greeting. Data collection revealed almost all language directed at Bryan is just that, directed at him vs. with him. He receives redirection and instruction at excessive rates to reinforcement or simple communication. Often instruction or companionship is conducted in silence. The staff member fluent ASL staff just left, leaving remaining staff with limited knowledge of Bryan's best formal communication system. As he knows 100's of signs the typical 10-30 that most special education staff can pick up (toilet /eat /out) are insufficient to model communication, engage in social language, or expand upon Bryan's repertoire of receptive and expressive communication. Bryan's SLP indicates moderate success limited behavior excesses and good participation in her sessions.

Currently (extended summer session) Bryan is receiving no direct instruction in reading, word recognition, Icon or AAC or AT use. He has an Edmark pre-reading system. The current targeted nouns and descriptors in use during observation and reflected on data sheets (show me blue, show me pizza etc) were the same words he was demonstrating mastery in last Dec. His schedule (visual organizational system) is on the wall but not in use. Many of the representative icons are missing or lost. Written word should be paired with all icons and photos. This organizational system lacks a portable component. Bryan should be able to make choices or change his schedule when he is outside or away from the

classroom/ home work area. Bryan needs to learn to consistently use an appropriate indicator response. Bryan will sometimes wave his hand pointing in your general direction or the general direction of his desired item. This can be shaped into more formal sign by ASL knowledgeable staff and family. Family and staff will need to learn use and model ASL with Bryan and with each other, reinforce Bryan and each other in its use. Of the ten individuals I observed interact with Bryan, three initiated conversation through sign language and Bryan only reciprocated with one. He appears to be out of the "habit" or conditioned to converse only with specific persons.

**Activities of Daily Living skills**

Bryan is not currently displaying independence in many of his activities of daily living (ADL). He requires direct instruction paired with reinforcement to learn the steps of many of the things we do unconsciously.

Bryan's team and parents should highlight a few activities they would like to start with. Once the initial tasks are identified, a task analysis of the activity needs to be completed (i.e. 112 steps to a shower). Bryan will need to be taught in chunks portions of the task at a time and reinforced for his participation and partial participation. I observed no direct instruction in any activities of daily living though clearly he had made progress in toileting and laundry

First and foremost Bryan's toileting skills need to be continuously addressed in a systematic manner. Bryan is not toilet trained. He has urinates and defecates inappropriately through out the day and night. He had been much more successful as recent as the new year but in the last few months has deteriated significantly. Bryan is still habituated to urinating on himself, which is naturally reinforcing. He prefers to move his bowels and urinate outside. You have no external tangible reinforcer better then the act of urination itself. He has made good progress in moving his bowels since the initial toileting plan of 01" and it is clear that this was emphasized and worked on successfully. Continued progress is possible. The current backsliding appears to be associated with inconsistent programming, communication gaps, staff change, and of course behavior. Bryan is reportedly having more accidents on specific shifts with specific staff.

Very simply put, if family or staff take Bryan every ten minutes he will urinate every ten minutes (a full stream) if they don't he will try to urinate on himself and see if he can get away with it, if he can will he up the frequency. His school team is taking him to the toilet in 15-minute blocks and or when ever they see him behaving as if he needs to use the bathroom. When observed in the classroom and at home watching movies Bryan urinated on average every 7–10 minutes, when engaged in ball play on the court and when eating with his schoolmates outside Bryan went 25-32 minutes between trips to the bathroom.

SLP indicates no accidents or request to use the bathroom across 20-45 minutes of her sessions. Data reflects Bryan signing toilet to escape staff interaction repeatedly and he does releases urine each time it is difficult to assess his actual ability to hold it. Clearly Bryan is using toileting both as an escape and as a self-stimulatory behavior.

And of course access to water predicts frequency of urination. Observation reflected less trips in the morning as evidence that family was able to successfully limit water in take at home before school (or not as indicated) and more frequent trips as the school day wears on indicating even with 2:1 hyper vigilance Bryan is getting drinks somewhere (boys room faucet). Data reflects no current consistent time pattern. Though may reflect increases associated with specific staff and demands.


**Recreation and leisure**

In order to affect Bryan's self-stimulatory behavior it is necessary to provide him with alternative activities that provide similar sensory feedback, teach him alternative incompatible and replacement activities. Bryan does not have many age-appropriate leisure skills. He likes his videos (children's cartoons and music), but doesn't play with "toys", or engage with materials enough. He does not participate in team sports and does not demonstrate interactive collaborate play skills. Bryan demonstrates little skill in indiv, dyad, small group or large group play. It will be necessary to expose Bryan to age appropriate leisure activities and find out what his skills strengths and likes may be. Bryan will need direct instruction (turn taking, shared attention) in the mechanics of a game in which he can partially participate (official bat boy, running bases, etc.), and facilitation of participation by a non-disabled adult; and of course an activity that is interesting to him. Bryan would benefit from a formal "circle of friends' to provide normative data (what do kids do at his age for fun, what's cool to wear, what do they think Bryan needs to learn), to develop meaningful relationships (they may start out as a volunteer position: helper, peer tutor, etc. but with facilitation may develop into a more typical reciprocal relationship). Bryan did participate in friendship club during the school year, maintaining those relationships over breaks and summer would be ideal; whether formally (club outings) or informally (invite a friend to the beach) Joining after school programs such as a latch key program (A+), gymnastics, boy scouts, etc., accompanied by his ST will provide him with more exposure to typically developing kids (and visa versa) while sampling his likes, and exposing him to other leisure options.


**Prior Interventions**

A review of records indicates that prior interventions for the target behaviors include:

- Differential Reinforcement of Other Behaviors (DRO)
- Time-out
- Time away
- Redirection
- Communication skills training
- Contingency management procedures
- Token economy contingencies
- Brief physical interruption
- Geographical containment

The majority of the documentation emphasizes consequence-based strategies and emergency procedures. Bryan's plan should be proactive, preventive in nature and emphasize teaching alternative and competing behaviors. I can see no reason why 911 would ever need to be called short of a medical emergency. Nor do I think he is in jeopardy of requiring a more restrictive placement. His program should be customized to meet his needs in his current home and school placements. While Bryan can be destructive and injurious he is not an imminent danger to himself or others, given his high rates of sensory stim restraint is likely to increase not decrease the intensity and frequency of his behavior. Aggression and tantrum behavior should be dealt with by minimizing instances which have previously led to head butting self-biting, manipulating his environment, increasing rates of reinforcement for incompatible and replacement behavior. If the frequency of his aggressive behaviors are more serious then observed and reported then staff will require training in passive assault restraint training (PART-R) or strategies of limiting violent episodes (SOLVE) to learn how to avoid being bit or scratched. Intermittent physical reinforcement should be provided to Bryan through out his day so that he receives appropriate propreoceptic feedback when he is being good not when he is exhibiting behavioral excesses.

## Summary

Bryan has very little formal communication and uses his behavior excesses to express himself. If he is bored wants attention, change of setting, or activity. He will often pinch screech, push or pull you, escape to the mat, sign toilet or urinate on self in the presence of a non-preferred setting, non-proffered task (working with pre-educational materials) Bryan will exhibit escape based behavior such as those listed above. Bryan's behaviors are intermittently reinforced, in fact he regularly gets what he wants by urinating, being physical or threatening vs. communication. Often with the best of intentions people will read his mind and then get him what he wants or allow him to access it, without first inserting the communicative response.

13

Bryan's school materials have lost their appeal and need to be updated to more functional more engaging activities. Bryan is a very skilled young man with a strong will. He is able to effectively manipulate his environment to avoid less desired tasks. He is certainly capable with consistent instruction and salient reinforcers of learning to follow a schedule and use a formal communication system. And perhaps most importantly he needs intervention in the quality of his life to pair him with a peer group of age mates with more sophisticated social and communication skills.

Bryan's performance of skills level is noticeably less then it was as recent as last fall/ winter, as his program has clearly lost integrity and consistency my hope is his previous skill levels will be easily re-attainable, however we are now dealing with learned aggressive behavior. Bryan is likely to increase the frequency and intensity of his aggressive behavior intermittently to test staff and family boundaries and consistency of expectations. Now that he knows it works it is harder to un-teach or re-teach. It is important that the components of the previous plan that were successful be reapplied and that the program materials R+ etc be constantly reevaluated for fidelity efficiency and effectiveness.


Kimberly Smalley, Ph.D.
Board Certified Behavior Analyst

Positive behavioral support plan

Aggression Tantrum behavior:

Antecedent management: It is always prudent to rule out any medical issues, ear aches toothaches, bowel issues, flu colds etc. So far Bryan appears to be presenting no new medical issues that would explain his increase in aggression (EEG report pending). The slow steady escalation of Bryan's protest behavior accompanied with his recent flurry or high intensity high frequency aggression typically indicates a loss in programming, which was validated during each observation. Bryan has a history of active education including ABA, TEACCH methodologies, and other models of systematic instruction. Maintaining a tight schedule, rich with visual supports and communication is essential to his progress. Maintaining consistent effective programming is half your battle.

Bryan needs his day organized. His activities should be at or slightly above his level in all subject areas. Review and repetition is good but remember to update your materials and curriculum based on his pace. *Curriculum drives behavior.* Bryan is very physical his curriculum should be interspersed with activities that take advantage of multi-modal instruction or provide sensory feedback. In example, computer work followed by a movie followed by table work is two forms of passive work, not physically stimulating. All three tasks require sitting and watching something as opposed to gross motor movement. Conversely singing and dancing followed by ball play and then recess is all physical, provides no direct academic instruction and is likely to make the table work less desirable. A steady diet of active activities interspersed with academic curriculum will serve Bryan better. Increase his natural opportunities for physical rough play, play sports, roll around on the ball, join gymnastics. Bryan was made for a trampoline. The full body pressure of bouncing on a large trampoline will meet many of Bryan's physical needs.

Bryan's TEACCH and ABA materials were in the room, though not in use during my observations. Some of the materials were incomplete and will need to be updated or replaced. He followed no route around the room or to address his work, no start or finish, to his expected products. He was not asked to check his schedule, follow any set daily objectives or participate in any direct instruction. He engaged in self -stimulation almost pervasively. Likewise at home there were several visual supports handy, but due to intermittent staffing, no set schedule was being followed. When Bryan was engaged (walk around the neighborhood, folding laundry, eating) his behavior was significantly better then when enjoying down time. Reduce down time. Plan your day. Map your daily activities out

ahead of time represent them visually. Bryan needs a portable written calendar no different then your PDA or weekly calendar, though his will have icons to augment and supplement written word. It may have been tempting to abandon the Icon's (PECS) when he showed such excellent progress with ASL, but remember in addition to receptive and expressive communication we all still need organizational and representational systems get through our work week.

Bryan's ABC data reflects aggression and tantrum behavior is often communicative in nature, protesting a demand (often toileting related) or the interruption of self-stimulatory behavior. Bryan has the ability through sign language and gesture to protest appropriately. He has clearly learned over the last 4 months or so that he can intimidate some staff. Bryan's escalating behavior has intermittently resulted in the reduction of demands and subsequent increased time to self stimulate.  It is important that everyone be proficient in ASL preferably more advanced then Bryan so as to have the ability to model more sophisticated communication. Bryan's current language use consists disproportionately of nouns or labels. While he is reportedly habituated to communicate with his SLP his generalization across staff and domains is minimal.

Bryan must have staff proficient in ASL. He has chosen and demonstrated ASL as his first language of choice. We can and will use ASL to teach him written word to use high-tech computer systems (I.e. dynavox) or low-tech icons based systems (PECS book), but we must first continue to expand his breadth of language skills (almost all labels or nouns at this time) and model and initiate pragmatic language. To do this staff must have better ASL skills then Bryan and use them pervasively. Consultant staff should take data on direct staff proficiency frequency of use and breadth of ability when working with Bryan to assure a consistent language rich teaching environment. Bryan must learn sign is language, and language can be used and understood with any one any time if we expect him to use communication in place of aggression to protest.

Bryan is used to having "his spot". He is directed to his room at home and his mat at school. It is important to maintain a place for Bryan to deescalate and decompress. As Bryan gets older it would be nice to shape this "spot" from a large mat on the floor to something more normalized, in part because the community lacks a mat. A slow fading will be necessary perhaps from the mat to a beanbag chair to a hammock chair to a chair for example. This will probably require an accompanying pressure device for example from the heavy weighted blanket to smaller items maybe a backpack, dive vest, sweat bands etc.

### Replacement Behaviors

Bryan needs several behaviors to replace his tantrum and aggressive behavior. First and foremost effective communication skills. Increase his ASL skills. SLP indicates Bryan learn 1-2 new words each week. Make the comprehensive list available to all staff and family to learn and use. Repetition and generalization are essential as is modeling. If we want Bryan to use formal communication to express himself we have to model it as language and not as a demand. Staff should sign when they speak sign to each other and sign conversationally. Bryan needs to learn pragmatic language skills social as well as descriptive signs and phrases. He is proficient in the use of "no" but mad angry fed up stop, leave me alone, want break etc are not phrases he uses. Bryan's family and previous staff have observed use of single signs "angry" and "hurt" in the home and in the past, but yet a phrase. He will increase his volume wave you away, while waving is a gesture an one that is understandable we want to insert a piece of formal communication here we want Bryan to learn if he protests with language he gets his own way, not when he protests with behavior. As a team choose several phrases he can use to protest or refuse. Teach them to Bryan under multiple circumstances, in Speech, in context (identify a person protesting in a movie on TV "he's mad mad sad no no", model to one another ("Danielle can I have some of your snack?" No no mad, stand up sven you are in my seat "No no mad") Do a set up, spill something on purpose, miss your chair, model some situation Bryan himself might find upsetting and use his sign phrase emphatically.

Bryan needs a skill to perform; something rash he can do when upset, that is OK. What is Ok to do when you are angry? In your home? In your school? In your community? We had discussed a spot with a "rippable" items (phone books rags) he could go to his basket and just rip away, but there was some concern he might over generalize. Expecting Bryan to transition from tantrum behavior to nicely saying, "I mad" unprompted, is too big a leap and doesn't provide the sensory feedback tantrum behavior does. As a team pick an activity Bryan already does or can learn easily and perform under duress (like ripping) and shape it into an acceptable response. An adult might go for a jog, work out on equipment, garden or even hitting a punch balloon, punching bag, or a pillow. Only jogging is portable, but as he still lacks safety skills, not yet practical. The acceptable response has to be similar so as to be automatic after minimal training and less work then a tantrum (or the tantrum is more efficient). What ever you pick some emphasis on stimulus control is necessary we don't want Bryan to learn to rip every book in the house when upset but ripping is better then biting self so be prepared to be reward some successful approximations.

This is teaching him what to do and say after the fact, better yet teach him how to avoid problems to begin with. Teach him to make choices, to use ASL phrases to

ask for a change or new choice, teach him to give directions. Bryan needs to learn to compromise and to wait. Play the "waiting game" (board and timer versions" to learn turn taking, communication, instruction giving and following, and of course waiting his turn.

Bryan tantrum behavior is also physical and cathartic in nature and given how physical and how much stimulation he does pervasively it surely provides sensory feedback which is if not pleasurable at least reinforcing. Reduce physical intervention when upset protesting or tantrumming, increase physical interaction when speaking (ASL or Icons). Teach Bryan to access play with words, to sign wrestle, or big blue ball or swimming. Reward him with desired activities for spontaneous language.

Consequences

When Bryan aggresses and or tantrums continue down playing down the event. Do not OOH or AHH or yell "Bryan stop" "No, don't" etc. Ignore the act as if it had not happened. Insert the appropriate communicative phrase you think he intended. Model or hand over hand sign the intended communication "break Please" Change new activity etc. Allow him escape for the communicative phrase not the act of aggression. Insert communication at every opportunity. Sending Bryan to his mat or allowing him to escape to his mat for time away is a fine intervention however if the intent was to escape a task or demand he may perceive aggression as his way of saying "leave me alone". Once he has calmed make sure he always returns to the task he escaped for completion. If Bryan is tantruming and wont stay is his spot or room, avoid him block blows, run around the table, short of imminent danger do not retrain. Using clothing holds staff may move Bryan to his room or mat if verbal redirection is unsuccessful but avoid giving physical deep pressure. Use clothing holds with extended arms or you will be head butted. When its over its over, hold no grudges no cost response. If Bryan bites himself downplay ignore. Later clean and apply Neosporin or similar product we don't want Bryan to learn biting himself gets him soapy water or slippery lotion. Thus far Bryan's incidence of self-injurious behavior is infrequent and irregular, increased attention is likely to increase not decrease this behavior. Monitor closely, if Bryan's frequencies become regular reassess and reevaluate plan with regards to self-biting.

Bryan is not currently using and contingency management systems, token economies or self-monitoring system. Rewarding him for using communication and participating in other alternative and incompatible behaviors should be your focus. Eventually when Bryan's program is consistently in place and he is demonstrating more buy-in you may be able to add more cognitive strategies.

Self stimulation
Antecedent management

Bryan self-stimulates pervasively. He must be engaged in competing and incompatible and alternative activities. Laying on the mat playing with sensory beads only increases self-stim it neither replaces it nor decreases it. Build a tight schedule, minimize down time. Ensure speed in transitions. Keep his hands busy communicating or working or both. Schedule intermittent functional physical activities (sports, working out, gymnastics, ball play, Pilates). Schedule intermittent functional wet exercises (wash dishes, water plants). Staff vigilance is essential to the preventing ingestion of non-edibles and the excess consumption of water.

Replacement skills

Teach him actual skills that provide sensory feedback… drumming, tumbling; enroll Bryan in Gymnastics. Teach Bryan things to do at the beach and in the water…boogie board, snorkel, even surf, over time making his water play more functional and less stimmy. Have Bryan carry things when traveling to keep his hands full and busy. Teach Bryan To self-administer compression (Pilates ball therabands, etc). Teach Bryan to put on deodorant, lip-gloss, and lotions to replace in a functional way his desire to be wet and play with spit. Eventually when you have stimulus control and Bryan only applies appropriate liquids to appropriate places you might use more complicated replacements for more complicated stims like visine. Many individuals who experience compulsion to put things in their mouth (for example PICA) can be trained to put things first in their pockets. Staff must be vigilant to prevent redirect and otherwise engage Bryan so that he isn't picking leaves or grabbing at small particles. When Bryan has so quickly managed to get his hands on leaves rather then correct him or redirect him to give it to you or to put in a trash can, which makes sense but isn't always available condition Bryan to putting everything in his pockets. On scheduled intervals throughout the day have Bryan empty his pockets. Reinforce him heavily for putting things in his pockets and again for emptying them. This is a long shaping process that won't seem immediately successful. Start now.

Consequences

Self-stimulation is self-reinforcing. Punishing or any kind of negative commentary is irrelevant. Over correction or any kind punishment will be ineffective. Focus on prevention. Redirect in the moment to the task at hand or to a replacement skill or activity. Be sure to insert the communicative responses, i.e. "I want lotion" or "I want trampoline." HOH assist Bryan when he has leaves or what not in his hands to put them in a pocket. Provide copious Reinforcement.

## Toileting

There is no need to repeat the last 3 toileting plans here please see and apply as appropriate. In brief, continue collecting scatter plot and ABC data. Adjust data to supply slight more information (i.e. what specific demand or work task preceded toileting accident vs. "demand" or "@ work table" have staff sign with their initials don't forget the time of day). Reports at this time suggest that he urinates every time you take him. Slowly incrementally expanding the time between bathroom trips was a successful intervention before and should be revisited, however nothing will be successful without engaging instructional activities in between. All staff anecdotally report higher rates around specific tasks and specific staff but data doesn't collected enough information to validate. Clearly Bryan is urinating as self-stimulatory protest and due to a lack of solid reinforced schedule training.

## Communication

Interventions designed to affect Bryan's communication skills have been embedded though out this report. Focus heavily on ASL and ensure a back up visual system at all times. Even with fluent ASL, which is essential, Bryan should use an icon and written word organizational system to map plan and complete his day. Communication by definition requires communicative partners. While it is essential staff are proficient in sign language (ASL or SEE) it is equally important or more important that Bryan have peers who speak his language. Teach ASL to Bryan's friendship club, his classmates, and same age peers at school. Provide ASL instruction to Bryan's brother, family, and any interested parties.

Collect data on how many communicative interchanges Bryan has daily (frequency, duration, Turns, range of topic) with how many persons (age, relationship, social or hierarchical), and what kind of exchanges (instructions and toileting were the only exchanges witnessed during observation). Continually enhance the range and frequency of Bryan's communication.

When Bryan spontaneously signs anything reinforce immediately. While your biggest and best reinforcer is saved for toileting, communication is the core of Bryan's program. I cannot understate the importance of signing perpetually and reinforcing all successful approximations.

## Summary

Bryan is a young man who is very impacted by his autism; his needs and behaviors are complex. His most challenging behavior is not his aggression, but his self-stimulation that cannot be squelched but only shaped and replaced. Bryan has learned he can intimidate staff, avoid work and delay demands by urinating and protesting inappropriately. It is important that sufficient consistent part trained (or similar) ASL or SEE proficient staff feel comfortable and confidant educating Bryan. Care giving is not enough. He needs direct systematic instruction in communication, self help, social and leisure skills, literacy, money management, time management, academics, pragmatics, etc. Bryan's needs are many, but with consistent, educated, dedicated staff they can be met in his current environments. Bryan's needs can be met, with appropriate support, in the least restrictive environment, his school and his family's home. Bryan is approaching puberty; some of his boundary issues are now compounded with typical behavior of adolescence. His self-stimulatory behavior will be likewise compounded by puberty. It is very important that previously established stimulus control be reestablished, that these interventions be worked on and control and structure reestablished as soon as possible. The middle school years are tough on every one and folks with autism are no exception.

Bryan needs a lengthy and comprehensive crisis plan. Remember crisis is something above and beyond the behaviors expected and planned for. This crisis plan should define an emergency in specific detail and provide a phone tree of who to call under what conditions. A behavioral emergency such as a tantrum that requires back up means calling the consultant (IISC or crisis outreach worker) or the family (depending on the environment) not the police or the hospital. Bryan's current emergency plan is insufficient and in all likelihood ineffective. Telling Bryan to stop biting himself isn't likely to be the thing that makes him start signing or stop biting. No behaviors diminish without addressing the function. Lastly with regards to crisis, CPI /PART-R/ or any non-aggressive control the emphasis is on hands off. For folks who are not auditory processors the verbal de-escalation techniques tend to be less effective. CPI etc emphasizes to avoid conflict avoid physical management unless no other options are available for safety. If you find yourself putting your hands on Bryan be sure to use clothing holds minimize all physical contact. Do not hold Bryan longer then absolutely necessary. Release as soon as safe. The natural human reaction when under duress is to hold and restrain. As soon as you are out of traffic, away from the imminent danger, release run around the tree, let him chase you, let him collapse on the ground and embarrass himself. Do not hold manhandle restrain use force unless in imminent danger.

Bryan recently underwent a flurry of behavior. He is currently back to his old self behaviorally speaking. Bryan will exhibit more flurries. The behavior associated with growing pains puberty and somatic issues will remain. The learned

behaviors that have worked with subs or passing staff, he will continue to try those on new staff. If the behaviors continue to be successful the behaviors will be further reinforced.

Bryan had a seemingly effective program that while never fully implemented contained all the requisite component parts. What to do is known. The issue is implementation, quality assurance, monitoring, and constant updating and augmenting for slow but gradual success.

*Kimberly Smalley*
Kimberly Smalley, Ph.D.
Board Certified Behavior Analyst

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>            Plaintiffs,<br><br>    vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i, and ALVIN RHO, in his official capacity as West Hawai'i District Superintendent,<br><br>            Defendants. | CIVIL NO. CV 05-00247 HG/BMK<br>CIVIL NO. CV 04-00442 HG/BMK<br>Consolidated (Other Civil Action)<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that on May 30, 2006, a true and correct copy of the

PLAINTIFFS' DISCLOSURE OF EXPERT WITNESSES PURSUANT TO

RULE 26(a)(2), FRCP was duly served upon the following parties by the

methods of service noted below to their last known address:

Served by mail, U.S. Postage to:

Gary K. H. Kam, Esq.
George S.S. Hom, Esq.
Holly T. Shikada, Esq.
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813

Served by e-mail/electronic filing to:

John T. Komeiji, Esq.
Gregg M. Ushiroda, Esq.
Daniel K. Obuhanych, Esq.·
Watanabe Ing & Komeiji
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii 96813

Attorneys for Defendants

DATED:      Honolulu, Hawaii, May 30, 2006.

/S/ STANLEY E. LEVIN
_____

STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
SHELBY ANNE FLOYD
MEI-FEI KUO
CARL M. VARADY

Attorneys for Plaintiffs

## Trial Documents
1:04-cv-00442-HG-BMK Wiles, et al v. Dept of Education, S, et al

### U.S. District Court

### District of Hawaii - CM/ECF V2.5 (11/05)

Notice of Electronic Filing

The following transaction was received from Levin, Stanley entered on 5/30/2006 at 5:36 PM HST and filed on 5/30/2006

**Case Name:**          Wiles, et al v. Dept of Education, S, et al
**Case Number:**      1:04-cv-442
**Filer:**                    Ann Kimball Wiles
                                 Stanley Bond
                                 Bryan Wiles-Bond
**Document Number:** 180

**Docket Text:**
Expert Witness Disclosure by Ann Kimball Wiles, Stanley Bond, Bryan Wiles-Bond. (Attachments: # (1) Affidavit Stanley E. Levin# (2) Exhibit A# (3) Exhibit B# (4) Exhibit C# (5) Exhibit D# (6) Exhibit E# (7) Exhibit F# (8) Exhibit G# (9) Exhibit H# (10) Exhibit I# (11) Exhibit J# (12) COS)(Levin, Stanley)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-0]
[7e1b0480355886f2e83f3089a9c6739424240287973da2785384595c34918f55daf8f
a7721e17e9a1ce54710b3b1d6d65fefed2057574d2eef19d708aa5c70d6]]
**Document description:** Affidavit Stanley E. Levin
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-1]
[bbe870fb5f6d6555110ec49efa2cf82c25a82ed64036f7344a7e89fb5e80bbd5b9f20
b908b31f7bf81d3b5322d41db643ea7f449324a02da388d8a96b3b6fed6]]
**Document description:** Exhibit A
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-2]
[98e6feeac0de7799956ffcfe4d04b51d2d81945dfe03ddf900d27c24f13c1300959f5
79cc7e75516f200838eca67925eaf77550ffdc88af53440df8d719e183b]]
**Document description:** Exhibit B
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-3]

[934df7449cb70791fb5256f275f68263560b515d3df3f537cecfea3dc7d2001f64503
21f169b36447d9ef70d7dd562f43eefcc63adb58996f71eacd91adf7f0e]]
**Document description:**Exhibit C
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-4]
[a8903072b6aaf2e1ea7620ec856201816783b73c4b53314fcfc5bcbd54ad7a6e854ac
2e9aa371ea22901a6c09b2a387b03568566804e3d9abe60754c1a4b98a9]]
**Document description:**Exhibit D
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-5]
[2a3b059c00eb77d07366bbcdced7814ee8bbcbcda30449b81651baaaae9db223a7840
39a86ca93042830fd6b1f0d959d899fbaa7f7493bb0624a591e04753156]]
**Document description:**Exhibit E
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-6]
[040ac76f302cf0ccf28e91498580168df5499a17a233fdf850d4f7ca6b7f5bc1a3875
8caa712ed2bc813dfb8cf57bfcacc5f145d8acdcc53aa6bc3f76de32dc0]]
**Document description:**Exhibit F
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-7]
[08e105d69de59a1a1126ee241edc9dd9d316343ede05dc2b501c1a6c3a984f64a5fd1
2ebbaeb0e0a9cd559f4c3ebb900878a408693ced2aee9cf7359834dc3c6]]
**Document description:**Exhibit G
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-8]
[2d4ce8b3580106ce5345ca83472941a3f749a21ce31b7b5afe61aa50cd8d1aaf6f207
9c46b2c146949a22f544e0d488de84dfc483a9a7912d27621df850f39f5]]
**Document description:**Exhibit H
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-9]
[2ee245941ebe4aa9b518b17684c809ac0a0f312cb486dafac3ae33a144840aab41356
d26ce9a6bca4a1425b94816c0af5d12b612dd64bb3d05994890ca66c9b1]]
**Document description:**Exhibit I
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-10]
[613b45842db7c61b502229a2e6e9e57f47c3b662a5193fe1b686a14b7743ebc81f95
84349b5ef3c80b7729588bdd4a319e2ae7f455ccdf545ec1acd35894d655]]
**Document description:**Exhibit J
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-11]
[ae9d02cb416972b2ca0e060fc6298127864d00b3818cf9a12295e75a47400ee26bb8
8d7c30aeeb98a80472448d604bcc66e250170030416b1b8ab935a17cec72]]
**Document description:** COS

**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1095854936 [Date=5/30/2006] [FileNumber=92858-12]
[55975f585f0bd1b40163c31ef1aa5e97fe9dc1db521d625b5f940875d59d06a1ee5d
4e753455602542064f11ffb59b47847f49d631f2c90f1704bf74a360351d]]

**1:04-cv-442 Notice will be electronically mailed to:**

Stanley E. Levin      slevin@davislevin.com, debbie@davislevin.com

Michael K. Livingston      mlivingston@davislevin.com, bette@davislevin.com

Daniel K. Obuhanych      dobuhanych@wik.com

**1:04-cv-442 Notice will be delivered by other means to:**

Lonomaikalani P.V. Beamer
Department of the Attorney General
Education Division
235 S Beretania St Rm 304
Honolulu, HI 96813

John T. Komeiji
Watanabe Ing Kawashima & Komeiji
First Hawaiian Center
999 Bishop St 23rd Flr
Honolulu, HI 96813

Holly T. Shikada
Department of the Attorney General
Education Division
235 S Beretania St Rm 304
Honolulu, HI 96813

Gregg M. Ushiroda
Watanabe Ing & Komeiji LLP
First Hawaiian Center
999 Bishop St 23rd Flr
Honolulu, HI 96813