OF COUNSEL:

DAVIS LEVIN LIVINGSTON
STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON   4161-0
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500/Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

LAW OFFICES OF CARL M. VARADY
CARL M. VARADY          4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447/FAX:  523-8448
E-mail: carl@varadylaw.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 17 2008

at 2 o'clock and 10 min. P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor, | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action) |
|              Plaintiffs,<br><br>   vs. | **PLAINTIFFS' COUNTER DESIGNATION OF THE DEPOSITION OF REBECCA GAVIN TAKEN ON JULY 20, 2007 AND CERTIFICATE OF SERVICE** |
| DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>             Defendant. | TRIAL: February 26, 2008<br>JUDGE ALAN C. KAY |

## PLAINTIFFS' COUNTER DESIGNATION OF THE
## DEPOSITION OF REBECCA GAVIN TAKEN ON JULY 20, 2007

COME NOW Plaintiffs, above-named, by and through their counsel, DAVIS

LEVIN LIVINGSTON and hereby submit the following counter designation of the

oral deposition of Rebecca Gavin taken on July 20, 2007.

| PAGE | LINE(S) | THRU | PAGE | LINE(S) |
|------|---------|------|------|---------|
| 9 | 8 | | 9 | 12 |
| 10 | 23 | | 11 | 11 |
| 12 | 15 | | 14 | 7 |
| 15 | 4 | | 15 | 6 |
| 15 | 17 | | 15 | 24 |
| 18 | 12 | | 20 | 12 |
| 21 | 9 | | 21 | 12 |
| 23 | 10 | | 23 | 17 |
| 25 | 4 | | 25 | 20 |
| 29 | 7 | | 29 | 9 |
| 30 | 1 | | 30 | 9 |
| 32 | 21 | | 34 | 22 |
| 35 | 19 | | 35 | 22 |
| 36 | 2 | | 36 | 9 |
| 38 | 13 | | 38 | 16 |
| 39 | 14 | | 39 | 20 |

| PAGE | LINE(S) | THRU | PAGE | LINE(S) |
|------|---------|------|------|---------|
| 40 | 18 | | 40 | 21 |
| 40 | 24 | | 41 | 9 |
| 41 | 12 | | 41 | 19 |
| 42 | 3 | | 42 | 19 |

DATED:  Honolulu, Hawai'i  January 17, 2008.

_____

STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
CARL M. VARADY

Attorneys for Plaintiffs

1

1           IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF HAWAII

3    ------------------------------------------

4    ANN KIMBALL WILES and STANLEY BOND,

5    individually and as next friend of their

6    son, BRYAN WILES-BOND, a minor,

7             Plaintiffs,

8             vs.           Civil No. CV 04-00442 HG/BMK

9                               05-00247 JMS/BMK

10   DEPARTMENT OF EDUCATION, State of Hawaii,

11   and ALVIN RHO, in his official capacity

12   as West Hawaii District Superintendent,

13             Defendants.

14   ------------------------------------------

15

16

17         VIDEOTAPED DEPOSITION OF REBECCA GAVIN

18

19   Taken on behalf of the Plaintiffs at Ralph Rosenberg

20   Court Reporters, 75-170 Hualalai  Rd., Suite D-212,

21   Kailua-Kona, Hawaii 96740, commencing at 1:06 p.m.,

22   Friday, July 20, 2007, pursuant to Notice.

23

24   BEFORE:   BARBARA ACOBA, CSR No. 412, RPR

25             Notary Public, State of Hawaii

```
 1    APPEARANCES:

 2    For Plaintiff:        STAN LEVIN, Esq.

 3                          BRUCE ELLIS

 4                          DAVIS LEVIN LIVINGSTON GRANDE

 5                          851 Fort St., Suite 400

 6                          Honolulu, Hawaii 96813

 7

 8    For Defendant DEPT. OF EDUCATION:

 9                          GREGG USHIRODA, Esq.

10                          WATANABE ING & KOMEIJI

11                          First Hawaiian Center

12                          999 Bishop St., 23rd Floor

13                          Honolulu, Hawaii 96813

14

15

16    Also Present:         DEREK BRYANT, Videographer

17

18

19

20

21

22

23

24

25
```

1          Q.    (Mr. Ellis) -- in a different capacity?

2          A.    As a skills trainer and IISC, but with a

3     different youth.

4          Q.    (Mr. Ellis) And from July on, you had no more

5     contact with Bryan Wiles-Bond?

6          A.    If that end date that I recall was July '04,

7     yes, that is correct.

8          Q.    (Mr. Ellis) okay.  After that period of time,

9     did you have any opportunity to speak with the parent or

10    speak with anybody else, say, at TIFFE, regarding Bryan

11    Wiles-Bond?

12         A.    Not that I recall.

13         Q.    (Mr. Ellis) Why did you stop working as Bryan's

14    skills trainer in July of 2004?

15         A.    I was burnt out and ready to increase my IISC

16    hours and have another student for skills training.

17         Q.    (Mr. Ellis) When you say burned out, was there

18    any particular reason for your burning out or was Bryan,

19    say, like, a difficult case?

20         A.    He was a difficult case, and I had been with

21    him for an extended period of time.

22         Q.    (Mr. Ellis) Could you explain what you mean by

23    "difficult?"

24         A.    I think his needs were very high.

25         Q.    (Mr. Ellis) Could you explain what those needs

1    were?

2         A.    The structure and monitoring that he needed and

3    his behaviors.

4         Q.    (Mr. Ellis) Could you explain the behaviors?

5         A.    He did show some aggressive behaviors.  Keeping

6    him on task was challenging.  And his issues with

7    urinating.

8         Q.    (Mr. Ellis) Could you explain the issues with

9    urinating?

10        A.    He did not always use the toilet.  It was in

11   his -- done in his pants.  It was done while working on

12   tasks.  It was an issue with him and it -- it was an

13   issue with him.

14        Q.    (Mr. Ellis) Okay.  Is there a reason why Bryan

15   would urinate excessively?

16        A.    He did like water and drink a lot of water.

17        Q.    (Mr. Ellis) Did this occur -- or where did you

18   work at Bryan?

19        A.    At home and in the school.

20        Q.    (Mr. Ellis) Did the excessive urinating occur

21   both at school and at home?

22        A.    Yes.

23        Q.    (Mr. Ellis) At any point during your working

24   with Bryan, did you have an opportunity to speak with a

25   Dr. Kim Smalley?

1       A.    I don't recall.

2       Q.    (Mr. Ellis) Did you recall ever meeting

3   Dr. Smalley?

4       A.    I don't recall.

5       Q.    (Mr. Ellis) Do you know who Dr. Smalley is?

6       A.    The name is familiar.

7       Q.    (Mr. Ellis) Okay.  What -- what do you know

8   about Dr. Smalley?

9       A.    I've heard her name, but that's all I know.

10      Q.    (Mr. Ellis) That's all?

11      A.    Mm-hmm.

12      Q.    (Mr. Ellis) Okay.  Did you work -- do you know

13  who Dru Copeland is?

14      A.    Yes.

15      Q.    (Mr. Ellis) Okay.  Did you work with

16  Dr. Copeland?

17      A.    Yes.

18      Q.    (Mr. Ellis) In what capacity?

19      A.    She was the IISC.

20      Q.    (Mr. Ellis) And in that capacity, what did that

21  mean to you?

22      A.    That she was in charge -- basically in charge

23  of the case in terms of looking at and monitoring his

24  progress and what would be helpful and teaching us what

25  to implement and skills to work with him.

1      Q.    (Mr. Ellis) Was she in charge of -- she was,

2    like, your supervisor?

3      A.    I think more a supervisor of the case and Kelly

4    Stern was my supervisor.

5      Q.    (Mr. Ellis) Okay.  Did Dr. Copeland, was she in

6    charge of implementing how the skills trainers, such as

7    yourself, implemented the program at home and at school?

8      A.    Yes.

9      Q.    (Mr. Ellis) So you understood she was in charge

10   of implementing the program at home?

11     A.    Yes.

12     Q.    (Mr. Ellis) So Bryan's program had both

13   components?

14     A.    Yes.

15     Q.    (Mr. Ellis) Okay.  There have been allegations

16   placed in declarations filed by Defendant that Bryan was

17   sent to school with diarrhea and vomiting; are you aware

18   of that?

19     A.    When you say Defendant, who are you referring

20   to?

21     Q.    (Mr. Ellis) The Department of Education.

22     A.    Okay.  I don't recall.

23     Q.    (Mr. Ellis) You don't recall during the time

24   that you worked with him that he made diarrhea at

25   school?

```
1        A.    I don't remember.

2        Q.    (Mr. Ellis) Okay.  Do you recall him vomiting

3   in school?

4        A.    I don't remember.

5        Q.    (Mr. Ellis) Do you recall him coming to school

6   with a communicable staph infection?

7        A.    What is communicable?  What does that mean?

8        Q.    (Mr. Ellis) A staph infection that could be

9   passed on from one person to another.

10       A.    Oh, I don't recall.

11       Q.    (Mr. Ellis) Okay.  Various -- varying eye

12   infections?

13       A.    I faintly remember something with his eye.

14       Q.    (Mr. Ellis) Do you know what the circumstances

15   were?

16       A.    I remember it being red and appearing to bother

17   him.

18       Q.    (Mr. Ellis) Do you know if he came to school

19   with the condition or the condition occurred at school?

20       A.    I don't recall.

21       Q.    (Mr. Ellis) Do you recall if the parents

22   refused to keep Bryan home on such occasion that he had

23   this eye infection?

24       A.    I recall -- can you repeat the question.

25            MR. ELLIS:  Could you read it back, please.
```

14

1           (Reporter read back)

2           THE WITNESS:  I faintly remember something

3    about it, him coming to school, but I don't recall.

4    BY MR. LEVIN:

5       Q.   (Mr. Ellis) So you have no recollection of

6    these occurrences, other than maybe an eye infection?

7       A.   Yes.

8       Q.   (Mr. Ellis) There have been allegations that at

9    the family home, the home was unsanitary and unclean; do

10   you know anything about that?

11          MR. USHIRODA:  Objection.  Vague and ambiguous.

12   Are you referring to the allegation made or the

13   condition?

14          MR. ELLIS:  The allegation made.

15          MR. USHIRODA:  Objection.  So he's asking you

16   if you're aware of any allegations that have been made

17   about the condition of the home.

18          THE WITNESS:  I believe skills trainers

19   complained about the conditions in the home.

20   BY MR. LEVIN:

21      Q.   (Mr. Ellis) Okay.  Do you know if -- do you --

22   did you work at the home?

23      A.   Yes.

24      Q.   (Mr. Ellis) Okay.  Did you make any allegations

25   yourself that the home was unsanitary or unclean?

1    A.    I did say that it was unclean.

2    Q.    (Mr. Ellis) Okay.  And who did you say this to?

3    A.    Kelly Stern.

4    Q.    (Mr. Ellis) Okay.  Did you put -- in what -- or

5    when did you make that allegation?

6    A.    I don't recall.

7    Q.    (Mr. Ellis) What was the unclean condition at

8    the home?

9    A.    It had to do with urine around the home.

10    Q.    (Mr. Ellis) Okay.  Is this the same condition

11    that you talked about earlier with excessive urination?

12    A.    Yes.

13    Q.    (Mr. Ellis) Okay.  Do you recall, was it in the

14    entire home or just that area where Bryan lived?

15    A.    I recall it most -- I recall it specifically in

16    the downstairs where he lived.

17    Q.    (Mr. Ellis) So the unclean was that he urinated

18    and -- that he urinated?

19         MR. USHIRODA:  Objection.  Mischaracterizes

20    testimony.

21    BY MR. LEVIN:

22    Q.    (Mr. Ellis) The unclean condition was that he

23    was urinating?

24    A.    Yes.

25    Q.    (Mr. Ellis) Okay.  Do you know if the parents

1     A.   Various people.

2     Q.  (Mr. Ellis) Could you be a little more

3 specific?

4     A.   Myself, the teacher, the janitor.

5     Q.  (Mr. Ellis) Okay.  Do you recall the teacher,

6 who that was?

7     A.   No.

8     Q.  (Mr. Ellis) Could it have been -- was this at

9 Kealakehe Elementary or Kealakehe Middle School?

10    A.   I -- I know it was at Kealakehe Middle School.

11 I don't recall Kealakehe Elementary.

12    Q.  (Mr. Ellis) Did you have an opportunity to talk

13 to the parents about the issue of urinating and the

14 unclean condition at the house?

15    A.  No, I didn't talk with them about that.

16    Q.  (Mr. Ellis) Did you make a report to the

17 Department of Health about the unclean condition of the

18 house?

19    A.  No, I don't recall doing that.

20    Q.  (Mr. Ellis) Okay.  Did you ever put this -- did

21 you ever put this in a written report or a written

22 complaint about the unclean condition at the house?

23    A.   I don't recall doing that.

24    Q.  (Mr. Ellis) Okay.  Oh, did you ask Kelly Stern

25 to put it in a written complaint?

1    A.    I don't recall asking her to do that.

2    Q.    (Mr. Ellis) Okay.  Do you know if she did?

3    A.    No, I don't know.

4    Q.    (Mr. Ellis) Okay.  Oh, why did you tell Kelly

5    Stern?

6         MR. USHIRODA:  Objection.  Lack of foundation.

7    Assumes facts not in evidence.

8    BY MR. LEVIN:

9    Q.    (Mr. Ellis) Okay.  You can answer the question.

10   A.    From my understanding, it was an issue being

11   discussed among skills trainers and so I was asked about

12   it, is what I recall.

13   Q.    (Mr. Ellis) Who asked -- you were asked about

14   this unclean condition?

15   A.    (No audible response).

16   Q.    (Mr. Ellis) And who asked you about it?

17   A.    Kelly.

18   Q.    (Mr. Ellis) Okay.  So did you volunteer the

19   information to Kelly or Kelly had to ask you about it?

20   A.    I recall it being a discussion, and I believe I

21   was asked.

22   Q.    (Mr. Ellis) So you didn't bring it to her

23   attention voluntarily, you had to be asked about it?

24        MR. USHIRODA:  Objection to the term.  Vague

25   and ambiguous.  Assumes facts not in evidence.  Lack of

1    foundation.

2         THE WITNESS:  That's my recollection of it.

3    BY MR. LEVIN:

4        Q.   (Mr. Ellis) I'm sorry, just to -- so we

5    understand, your recollection is what I state -- what

6    was stated in the question?

7        A.   Which was that Kelly asked me?

8        Q.   (Mr. Ellis) Yes.  And it wasn't -- it wasn't

9    you went to her and voluntarily told her about the

10   unclean condition?

11       A.   I believe so.

12       Q.   (Mr. Ellis) Okay.  Thank you.

13            You left in July of 2004?

14       A.   I believe so.

15       Q.   (Mr. Ellis) Okay.  That was in the summer.

16   Were you part of Bryan's summer program at Kealakehe

17   Intermediate School?

18       A.   I don't recall.

19       Q.   (Mr. Ellis) Okay.  There has been an allegation

20   by the parents and by Dr. Smalley that Bryan was self

21   stimulating by slipping and sliding in his own urine in

22   the classroom; are you aware of the allegation and are

23   you aware if that did or did not happen?

24            MR. USHIRODA:  Objection.  Assumes facts not in

25   evidence.  Lack of foundation.

```
 1    BY MR. LEVIN:

 2         Q.    (Mr. Ellis) You can answer the question.

 3         A.    No.

 4         Q.    (Mr. Ellis) Not aware of either?

 5         A.    No.

 6         Q.    (Mr. Ellis) Okay.

 7         A.    Well, I should say I don't recall that, being

 8    aware of any of that.

 9         Q.    (Mr. Ellis) You don't recall it or you just

10    don't know anything about it?

11         A.    I don't know.  I -- I don't know anything about

12    it.

13         Q.    (Mr. Ellis) Okay.  Do you know a skills trainer

14    named Sven?

15         A.    Yes.

16         Q.    (Mr. Ellis) Okay.  And how do you know Sven?

17         A.    Through TIFFE, I believe he was a skills

18    trainer there.

19         Q.    (Mr. Ellis) Okay.  Did he work on Bryan's case?

20         A.    I believe so.

21         Q.    (Mr. Ellis) Okay.  Was he working on Bryan's

22    case at the same time you were working on Bryan's case?

23         A.    I don't recall.

24         Q.    (Mr. Ellis) You don't recall or you don't

25    remember?
```

1          MR. ELLIS:  For her.

2          MR. USHIRODA:  Objection.

3          THE WITNESS:  I don't recall if I worked 40

4    hours specifically.

5    BY MR. LEVIN:

6          Q.    (Mr. Ellis) Was it more than 30?

7          A.    I believe so.

8          Q.    (Mr. Ellis) So it could be in that range?

9          A.    Yes.

10         Q.    (Mr. Ellis) Did you develop a relationship with

11    the parents?

12         A.    Yes.

13              MR. USHIRODA:  Objection.  Vague and ambiguous.

14    BY MR. LEVIN:

15         Q.    (Mr. Ellis) Would you consider it a

16    professional relationship?

17         A.    Yes.

18         Q.    (Mr. Ellis) So it didn't become, like, a

19    friendship?

20         A.    No.

21         Q.    (Mr. Ellis) Were you at any time questioned

22    about things that occurred at the home that were not

23    related to Bryan's program, by either Kelly Stern or an

24    employee of the Department of Education?

25         A.    I'm sorry, can you repeat the question.

1          MR. USHIRODA:  Objection.  Vague and ambiguous.

2          THE WITNESS:  I don't know.

3     BY MR. LEVIN:

4          Q.   (Mr. Ellis) Were they rude?

5          A.   No.

6          Q.   (Mr. Ellis) Were they polite?

7          A.   Yes.

8          Q.   (Mr. Ellis) Okay.  Were they knowledgeable

9     about their son?

10         A.   I don't know.

11         Q.   (Mr. Ellis) Were they cooperative with you?

12         A.   Yes.  But -- I found mom nice.  Not that I

13    didn't find dad nice, but I found mom nice.

14         Q.   (Mr. Ellis) Did you interact more with mom than

15    with dad?

16         A.   Yes.

17         Q.   (Mr. Ellis) So your impression of dad could

18    be -- the fact that you didn't interact with him often

19    could lead you to not form an impression?

20         A.   Yes.

21         MR. USHIRODA:  Late objection.  Leading.

22         MR. ELLIS:  Exhibit 1 is a letter dated

23    January 28, 2003, signed by Rebecca Gavin along with a

24    copy of what appears to be her one-page CV.  That's for

25    you.  This is the exhibit.

1      Elementary or Kealakehe Intermediate?

2           A.    She was at the elementary school.

3           Q.    (Mr. Ellis) So she kept -- so there were

4      Discrete Trial Training logs kept while Bryan was at

5      Kealakehe Elementary?

6           A.    I believe so.

7           Q.    (Mr. Ellis) You don't know what happened to

8      those records?

9           A.    No.

10          Q.    (Mr. Ellis) And then when -- in the summer of

11     2003, he went to Kealakehe Middle School?

12          A.    Yes.

13          Q.    (Mr. Ellis) Okay.  And you --

14          A.    Intermediate.

15          Q.    (Mr. Ellis) -- went with him?

16          A.    Yes.

17          Q.    (Mr. Ellis) And they kept data sheets on the

18     Discrete Trial Training?

19          A.    Yes.

20          Q.    (Mr. Ellis) Were they the same type of data

21     sheet?

22          A.    I don't remember.

23          Q.    (Mr. Ellis) Okay.  And they were -- again, they

24     were kept in a binder or folder at school?

25          A.    Yes.

1      Q.    (Mr. Ellis) Okay.  Do you know what happened to

2  those logs?

3      A.    No.

4      Q.    (Mr. Ellis) Do you know if they were kept by,

5  say, Dru Copeland?

6      A.    I don't know.

7      Q.    (Mr. Ellis) Do you know if they were, the ones

8  from Kealakehe Intermediate, were kept by TIFFE?

9      A.    No, I don't know.

10          MR. ELLIS:  Okay.  Like to enter as Exhibit 2,

11  it's titled The Institute for Family Enrichment Employee

12  Training Log, FY2003 to 2004 and 2002 to 2003.  They're

13  Bates stamped DOE1647, 1648, 1649, 1650, 1651, and 1652

14  and for Rebecca Gavin.  That's yours.

15          (Exhibit 2 marked for identification.)

16  BY MR. LEVIN:

17      Q.    (Mr. Ellis) Have you ever seen these document

18  before?

19      A.    Yes.

20      Q.    (Mr. Ellis) What are -- what is this -- are

21  these documents?

22      A.    They document the hours I received training in

23  these areas.

24      Q.    (Mr. Ellis) Okay.  Are the hours and the

25  categories that are listed and the dates and the people

1     A.   No.

2     Q.   (Mr. Ellis) So at least -- or is Future

3  Horizons, do you know what that is?

4     A.  I don't recall.

5     Q.   (Mr. Ellis) Okay.  But at least CAMHD is not an

6  employee of TIFFE?

7     A.   CAMHD is Department of Health, where I work

8  now.

9     Q.   (Mr. Ellis) Okay.  So outside agencies, at

10  least in this case, provided training to you?

11     A.   Yes.

12     Q.   (Mr. Ellis) Okay.  To the right it's listed,

13  again at 1649, it's listed the type of training

14  received; is that accurate for those four entries?

15  1649 -- I'm sorry, to the left.

16     A.   Oh, the training topic.

17     Q.   (Mr. Ellis) Yeah.

18     A.   And I'm sorry, what was the question?

19     Q.   (Mr. Ellis) Is that accurate?

20     A.   Yes.  I believe so.

21     Q.   (Mr. Ellis) 1650, page six, DOE1650?

22     A.   Okay.

23     Q.   (Mr. Ellis) Up at the top, do you know who

24  Bobby --

25     A.   Puente.

1       Q.    (Mr. Ellis) -- Puente is?

2       A.    She was the, I guess, receptionist you would

3   call her or secretary of TIFFE.

4       Q.    (Mr. Ellis) And she provided training?

5       A.    Yeah.

6       Q.    (Mr. Ellis) Okay.

7       A.    Looks like the administrative part.

8       Q.    (Mr. Ellis) This is training you received after

9   you were hired?

10      A.    Yes, I believe so.

11      Q.    (Mr. Ellis) Okay.  And then on -- we've already

12  covered 16.  1651.  At the top there, who's Jeff

13  Bergbauer?

14      A.    He is a TIFFE employee.  I don't know his

15  role --

16      Q.    (Mr. Ellis) Okay.  And then --

17      A.    -- or title.

18      Q.    (Mr. Ellis) And then health and safety, is that

19  the topic that was covered?

20      A.    I believe so.

21      Q.    (Mr. Ellis) Okay.  Marvin St. Clair, who is

22  that?

23      A.    He's also an employee of TIFFE. I believe he

24  was the director or higher up there.  I'm not sure.

25      Q.    (Mr. Ellis) On page 1652, says -- under certain

1    columns there are hours, like at the top.  Says
2    preventative early intervention supervisor, and it says
3    six hours.  There's no one listed; do you see that?
4         A.   Mm-hmm.
5         Q.   (Mr. Ellis) Okay.  Was this like -- do you know
6    who might've provided this training?
7         A.   I don't recall.
8         Q.   (Mr. Ellis) Okay.  But the -- you're sure the
9    training was provided?
10        A.   I believe so.
11        Q.   (Mr. Ellis) Okay.  And then later on, I'm
12   sorry, Holley Weeks, you don't know who that is?
13        A.   I don't know where he worked.
14        Q.   (Mr. Ellis) Okay.  Then at the bottom S.
15   Paleka?
16        A.   I don't remember that person.
17        Q.   (Mr. Ellis) And Pat Wright?
18        A.   I -- I'm not sure.  I think she might have been
19   a specialist from Oahu.
20        Q.   (Mr. Ellis) Okay.  And then on 1647 and 1648
21   there's no person listed.
22        A.   Mm-hmm.
23        Q.   (Mr. Ellis) Okay.  Did the Department -- I'm
24   sorry, did TIFFE provide you with training in American
25   sign language, if you recall?

1      A.    I don't believe so.   I believe there was a

2    class offered.

3      Q.    (Mr. Ellis) Offered by?

4      A.    I don't know.

5      Q.    (Mr. Ellis) Okay.   Did you attend that class?

6      A.    No, I did not.

7      Q.    (Mr. Ellis) At TIFFE, did they have monthly

8    meetings with the staff?

9      A.    Yes.

10     Q.    (Mr. Ellis) Okay.   At those meetings, did all

11   the cases involving TIFFE employees discussed at the

12   meetings?

13     A.    Not that I recall.

14     Q.    (Mr. Ellis) Okay.   What were the subject of the

15   monthly meetings?

16     A.    What I recall are, like, upcoming trainings.

17   Issues that may arise as a skills trainer, and I don't

18   really remember other things that were talked about.

19     Q.    (Mr. Ellis) When you -- when you say issues

20   that arise as a skills trainer, what do you mean?

21     A.    Like...  I don't recall specifically what was

22   discussed.

23     Q.    (Mr. Ellis) At these monthly meetings did you

24   talk about anything related to individual cases?

25          MR. USHIRODA:  Objection.  Asked and answered.

1    THE WITNESS:  I don't recall.

2  BY MR. LEVIN:

3    Q.   (Mr. Ellis) When you state that you don't

4  recall, is it something that at a later time you may be

5  able to review documents to refresh your memory or that

6  you just don't know if it occurred?

7        MR. USHIRODA:  Objection.  Asked and answered.

8        THE WITNESS:  I don't recall and so if you

9  showed me documents, yes, I could.

10        MR. ELLIS:  Take a break, five minutes.

11        THE VIDEOGRAPHER:  Off the record at 1:56 p.m.

12        (Off the record at 1:56 p.m.)

13        (Back on the record at 2:03 p.m.)

14        THE VIDEOGRAPHER:  Back on the record.  It is

15  2:03 p.m.

16  BY MR. LEVIN:

17    Q.   (Mr. Ellis) Okay.  Could you please describe a

18  typical day at school with you and Bryan.

19        MR. USHIRODA:  Objection.  Vague and ambiguous.

20        THE WITNESS:  I don't understand the question.

21  BY MR. LEVIN:

22    Q.   (Mr. Ellis) You start at usually, you said,

23  12:00 to 7:00.

24    A.   Mm-hmm.

25    Q.   (Mr. Ellis) Okay.  What did you do at noon?

1    cleaning up his area downstairs.

2        Q.    (Mr. Ellis) Was there -- was that the typical

3    day that you would work with Bryan, what you just

4    explained?

5        A.    Yes.

6        Q.    (Mr. Ellis) So doing laundry at home was part

7    of his program?

8        A.    It was implemented towards the end of me

9    working there.

10       Q.    (Mr. Ellis) So June-July of 2004?

11       A.    I would say longer than that, but I don't

12   recall the exact date.

13       Q.    (Mr. Ellis) From January 2004 to July 2004?

14           MR. USHIRODA:    Objection.    Calls for

15   speculation.    She already testified she can't recall.

16           THE WITNESS:    I don't recall.

17   BY MR. LEVIN:

18       Q.    (Mr. Ellis) Do you know why -- was there other

19   life skills that were included in his program, such as

20   laundry?

21       A.    The one I recall is him cleaning up his area,

22   such as putting his books away, sweeping, and taking out

23   the garbage.

24       Q.    (Mr. Ellis) Any other chores or any other

25   program such as that?

1    A.    Not that I -- I don't recall other ones.

2    Q.    (Mr. Ellis) So laundry, sweeping, cleaning his

3    room, putting his books away.

4    A.    I would say cleaning his area, not his room,

5    yeah.

6    Q.    (Mr. Ellis) So the area consisted of his room,

7    the bathroom?

8    A.    Not his room.  His room was not really occupied

9    except for sleeping.

10    Q.    (Mr. Ellis) Okay.  What room did he clean?

11    A.    The living area downstairs.

12    Q.    (Mr. Ellis) His living area?

13    A.    Yes.

14    Q.    (Mr. Ellis) And then he took -- once he cleaned

15    up that living area, he took out just the trash from

16    that area --

17    A.    Yes.

18    Q.    (Mr. Ellis) -- or the trash from all of his

19    living area?

20    A.    It was one trash for that living area.

21    Q.    (Mr. Ellis) Do you know why the cleaning

22    component was included in his program?

23    A.    My understanding was it was functional living

24    skills.

25    Q.    (Mr. Ellis) And you as a skills trainer were

1    responsible for implementing that program?

2         A.    Yes.

3         Q.    (Mr. Ellis) Okay.  Were there other skills

4    trainers who would do the same program when you were not

5    there?

6         A.    From my understanding, that's what -- that was

7    the program.

8         Q.    (Mr. Ellis) Okay.  So, like, the days you

9    weren't there, if you were there Monday, Wednesday,

10    Friday, there was somebody else doing the same thing on

11    Tuesday and Thursday?

12        A.    Yes.  Yes.  Working those hours.

13        Q.    (Mr. Ellis) These services that you just

14    described or the program that you just described, you

15    understood that those were part of Bryan's IEP?

16             MR. USHIRODA:  Objection.  Lack of foundation.

17    BY MR. LEVIN:

18        Q.    (Mr. Ellis) Can you answer the question?

19        A.    Can you repeat the question.

20             MR. ELLIS:  Could you repeat it.

21              (Reporter read back)

22             THE WITNESS:  Yes.

23    BY MR. LEVIN:

24        Q.    (Mr. Ellis) Did you ever see a copy of Bryan's

25    IEP?

1    A.    I don't recall.

2    Q.    (Mr. Ellis) Do you recall ever seeing -- have

3    you seen IEPs for other students that you've worked

4    with?

5    A.    Yes.

6    Q.    (Mr. Ellis) So you know what an IEP looks like?

7    A.    Yes.

8    Q.    (Mr. Ellis) Okay.  So you just don't know if

9    you received -- if you saw Bryan's IEP?

10    A.    I believe I saw his IEP because I had his goals

11    written on my progress notes for TIFFE.

12    Q.    (Mr. Ellis) Okay.  Thank you.

13    Did you use those, what you just testified to,

14    is that what you used to implement the program --

15    MR. USHIRODA:  Objection.

16    BY MR. LEVIN:

17    Q.    (Mr. Ellis) -- as a skills trainer?

18    MR. USHIRODA:  Objection.  Lack of foundation.

19    THE WITNESS:  The program was designed by Dru.

20    BY MR. LEVIN:

21    Q.    (Mr. Ellis) Was the program that was designed

22    by Dru different from the goals and objectives that you

23    saw in Bryan's IEP?

24    A.    No.

25    Q.    (Mr. Ellis) Okay.  The -- what Dru gave you,

1    did she put it in a written form?

2        A.    I don't recall.

3        Q.    (Mr. Ellis) Ms. Gavin, prior to this

4    deposition, did anybody from the Department of Education

5    contact you to ask you to testify at trial for Bryan

6    Wiles-Bond?

7        A.    I received an e-mail approximately a year ago,

8    I believe it was from Linda Price.

9        Q.    (Mr. Ellis) What did Linda Price tell you?

10       A.    I don't recall what the e-mail said.

11       Q.    (Mr. Ellis) Do you recall the, you know, the

12   gist of the e-mail?

13       A.    Something along the lines of my involvement in

14   this process, which I declined.

15       Q.    (Mr. Ellis) You declined to testify?

16       A.    I --

17       Q.    (Mr. Ellis) Or declined to give her information

18   about the process?

19       A.    Mm-hmm.

20       Q.    (Mr. Ellis) Is that the limit of the contact

21   you had?

22       A.    Yes.

23       Q.    (Mr. Ellis) Okay.  Other than the deposition

24   today that you were contacted to attend?

25       A.    Yes.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>            Plaintiffs,<br><br>    vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>            Defendant. | CIVIL NO. CV 05-00247 HG/BMK<br>CIVIL NO. CV 04-00442 HG/BMK<br>Consolidated (Other Civil Action)<br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that on January 17, 2008, a true and correct copy of Plaintiffs' Counter Designation of the Deposition of Rebecca Gavin Taken on July 20, 2007 was duly served upon the following parties by hand delivery to the following:

> Holly T. Shikada, Esq.
> Deputy Attorneys General
> 235 S. Beretania Street, Room 304
> Honolulu, Hawaii 96813

Gregg M. Ushiroda, Esq.
Daniel K. Obuhanych
Leighton M. Hara, Esq.
First Hawaiian Center, 23rd Fl.
999 Bishop Street
Honolulu, Hawaii 96813

Attorneys for Defendants

DATED:     Honolulu, Hawaii, January 17, 2008.


_____

STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
CARL M. VARADY

Attorneys for Plaintiffs

2