395625.2

**MARK J. BENNETT      #2672-0**
Attorney General, State of Hawaii
**GARY K.H. KAM        #4391-0**
**GEORGE S. S. HOM     #2487-0**
**HOLLY T. M. SHIKADA #4017-0**
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
235 S. Beretania Street, Suite 304
Honolulu, Hawaii 96813
Telephone No. (808)586-1255
Facsimile No. (808)586-1488
E-Mail: Gary.K.Kam@hawaii.gov

WATANABE ING & KOMEIJI LLP
A Limited Liability Law Partnership
**JOHN T. KOMEIJI      #2498-0**
**GREGG M. USHIRODA    #5868-0**
**LEIGHTON M. HARA     #7826-0**
**ROSS T. SHINYAMA     #8830-0**
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii  96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-Mail: gushiroda@wik.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>          Plaintiffs,<br><br>    vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii, and ALVIN RHO, in his official capacity as West Hawaii District Superintendent,<br><br>        Defendants. | CIVIL NO. CV 04-00442 HG/BMK<br>CIVIL NO. CV 05-00247 HG/BMK<br>CONSOLIDATED<br>(Other Civil Action)<br><br>DEFENDANT DEPARTMENT OF EDUCATION'S BRIEF DETAILING THE STATUS OF THE PRESENT CASE AFTER MARK H. DECISION; DECLARATION OF GREGG M. USHIRODA; EXHIBITS "A"-"L" CERTIFICATE OF SERVICE<br><br>**TRIAL: February 26, 2008** |

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . 1

II.   DISCUSSION . . . . . . . . . . . . . . . . . . . . 2

      A.    The Mark H. Decision  . . . . . . . . . . . . . 2

            1.    A regulation promulgated under § 504 is
                  privately enforceable if it "authoritatively
                  construes" § 504 itself . . . . . . . . . . . 3

            2.    IDEA FAPE and § 504 FAPE contain significant
                  difference  . . . . . . . . . . . . . . . . 5

            3.    The standard of "deliberate indifference" is
                  irrelevant to the determination of whether a
                  private cause of action exists .  . . . . . . . 8

            4.    Impact of the Mark H. decision  . . . . . . . 8

      B.    The DOE's Position on How to Proceed  . . . . . . . 10

      C.    Effect of Exhaustion Provision of
            20 U.S.C. § 1415(1)  . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

CASE                                                                    PAGE

Alexander v. Choate,
469 U.S. 287 (1985) . . . . . . . . . . . . . . . . . . 7, 8

Alexander v. Sandoval,
532 U.S. 275, 284 (2001) . . . . . . . . . . . . . . . 3, 4

Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.,
98 F.3d 989, 991 (7th Cir. 1996) . . . . . . 16, 18, 19, 20, 21

Mark H. v. Lemaheiu,
No. 05-16236 (9th Cir. January 17, 2008) . . . 1, 2, 3, 4, 5, 6,
. . . . . . . . . . . . . . . . . . 7, 8, 9, 10, 11, 14, 16

Mark H. v. Lemahieu,
372 F. Supp. 2d 591 (D. Haw. 2005) . . . . . . . . . . . . 2

Robb v. Bethel Sch. Dist. #403,
308 F.3d 1047, 1049 (9th Cir. 2002) . . . . . . . . . . . 18

Witte v. Clark County School District,
197 F.3d 1271 (9th Cir. 1999) . . . . . . . 16, 17, 18, 20, 21


MISCELLANEOUS

§ 504 . . . . . . . . . . . . . .    2, 3, 4, 5, 7, 8, 9, 10, 11,
. . . . . . . . . . . . . . . . . 13, 14, 15, 16, 17, 18, 20, 21

20 U.S.C. § 1415(l)  . . . . . . . . . . . . . 2, 14, 15, 16, 18

29 U.S.C. § 794(a) . . . . . . . . . . . . . . . . . . . . 9

34 C.F.R. § 104.33(b)(1) . . . . . . . . . . . . . . . . 5, 6

**DEFENDANT DEPARTMENT OF EDUCATION'S BRIEF DETAILING**
**THE STATUS OF THE PRESENT CASE AFTER MARK H. DECISION**

Comes now Defendant DEPARTMENT OF EDUCATION ("DOE") by and through its attorneys, WATANABE ING & KOMEIJI LLP, and hereby submits its Brief Detailing the Status of the Present Case After Mark H. decision.

**I.   INTRODUCTION**

On January 17, 2008, the Ninth Circuit Court of Appeals rendered its decision in Mark H. v. Lemaheiu, No. 05-16236 (9th Cir. January 17, 2008).  This decision drastically changed the legal framework applicable to the present case, and as a result clearly impacts the ability of both parties to properly try this case in front of this Honorable Court.

The DOE is of the belief that the February 26, 2008 trial date should be continued to a later date.  If this Court, however, finds that a continuance is not necessary or warranted, then the DOE requests that this Court grant the DOE leave to move this Court to exclude any and all evidence and/or argument that are irrelevant to the issue of whether or not the DOE met its "comparative" obligation to "design" an educational program that met the needs of Bryan Wiles-Bond as adequately as the needs of nonhandicapped individuals are met.  In effect, the DOE's motion would exclude any and all evidence concerning the "implementation" of Bryan's Individualized Education Plan ("IEP")

- 1 -

and the "effects" that any alleged failure to implement may have caused Bryan on the basis that such evidence is utterly irrelevant, and therefore should be excluded at trial.

Moreover, as more fully set forth below, the DOE submits that the present case should be dismissed for failure to exhaust administrative remedies pursuant to 20 U.S.C. § 1415(l).

II.  **DISCUSSION**

A.  **The Mark H. Decision**

As more fully set forth below, the Ninth Circuit's decision in Mark H. makes the following clear:[1]

- A § 504 regulation is privately enforceable through the implied right of action contained in § 504 itself if the regulation "authoritatively construe[s]" § 504.  § 504 regulations that go beyond the prohibitions of § 504 do not provide a private right of action, even if the regulation is valid.

- The FAPE requirements in the IDEA and in the Section 504 regulations contain significant differences.  Notably, unlike an IDEA FAPE, a

––––––––––––––––––––––

[1]  The Ninth Circuit also held that the availability of relief under the IDEA does not limit the availability of a damages remedy under § 504 for failure to provide a FAPE independently required by § 504 and its implementing regulation. This holding, however, does not affect the present case.  As Judge Gillmor stated in her Order Denying Defendants' Motion for Summary Judgment, construed as a Judgment on the Pleadings, et al. filed December 19, 2006 ("December 2006 Order"), "[w]hile Judge Real's private cause of action analysis in [Mark H. v. Lemahieu, 372 F. Supp. 2d 591 (D. Haw. 2005)] is persuasive, the Court declines to hold that the allegations made by Plaintiffs in this case fail to state a Section 504 claim."  December 2006 Order at 33.  As a result, this Court, and both parties have never assumed that the availability of relief under the IDEA precludes Plaintiffs from seeking a damages remedy under § 504.

- 2 -

§ 504 FAPE requires a comparison between the manner in which the needs of disabled and non-disabled children are met.  In doing so, courts must focus on the "design" of a child's educational program, not the effects or implementation of a child's educational program.

- The element of *mens rea*, i.e., the burden to show "deliberate indifference", necessary to support a damages remedy is not pertinent in determining whether a private cause of action exists.

It must also be noted that the Ninth Circuit did not hold that the H. Family in fact had a private cause of action to enforce § 504 FAPE regulations.  Rather, the Ninth Circuit held that the H. Family should be given the opportunity to "amend [their] complaint to specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action." Mark H. at 622.

    **1.   A regulation promulgated under § 504 is privately enforceable if it "authoritatively construes" § 504 itself.**

In Mark H., the Ninth Circuit held that a § 504 regulation is privately enforceable if it "authoritatively construes" § 504 itself.  See id. at 614-615; see also Alexander v. Sandoval, 532 U.S. 275, 284 (2001).  "Regulations that go beyond a construction of the statute's prohibitions do not fall within the implied private right of action, even if valid." Sandoval, 532 U.S. at 284.

The Ninth Circuit, however, declined to decide whether or not any of § 504's regulations actually provide for a

- 3 -

privately enforceable cause of action.  See Mark H., at 622 ("We do not decide whether the H. family had alleged a privately enforceable cause of action").  Instead, the Ninth Circuit held that the plaintiffs in Mark H. should be given an opportunity to "amend its complaint to specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action."  Id.

In their First Amended Complaint filed on November 20, 2007 ("Complaint"), Plaintiffs fail to allege any violations of specific § 504 regulations.[2]  See generally Complaint, attached as Exhibit "A".  As a result, it is clear that before any trial may commence, Plaintiffs must amend their Complaint specifying which § 504 regulations they believe were violated and which support a privately enforceable cause of action.[3]

---

[2]    The DOE notes that Plaintiffs did specify which § 504 regulations were violated in terms of their claim for retaliation under § 504.  See Complaint at 14-15, ¶¶ 49 and 50, attached as Exhibit "A".

[3]    The DOE does not reach the issue of whether any of the § 504 regulations in fact "authoritatively construes" § 504 itself as any analysis would be premature at the present moment. The DOE submits that a Sandoval analysis would be appropriate once Plaintiffs specifically and clearly allege which § 504 regulations they believe have been violated.

- 4 -

###   2.    **IDEA FAPE and § 504 FAPE contain significant differences.**

The <u>Mark H.</u> decision now makes it explicitly clear that an IDEA FAPE contains significant differences from a § 504 FAPE. As the Ninth Circuit articulated:

> FAPE under the IDEA and FAPE as defined in the § 504 regulations are similar but not identical.  When it promulgated its § 504 regulations, the U.S. DOE described them as "*generally* conform[ing] to the standards established for the education of handicapped persons in . . . the [IDEA].  **Although overlapping in some respects, the two requirements contain significant differences.**

<u>Id.</u> at 610[1] (citation omitted)(first emphasis in original, second emphasis added).  Notably,

> unlike FAPE under the IDEA, FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the **"design"** of a child's educational program.

<u>Id.</u> at 610 [2](emphasis added).  As a result, the Ninth Circuit held that the administrative hearing officer's IDEA decision finding that Michelle H. and Natalie H. were denied an IDEA FAPE "is not dispositive of whether Michelle and Natalie were provided a FAPE under § 504." <u>Id.</u> at 611 n. 9.

34 C.F.R. § 104.33(b)(1), which defines FAPE under § 504, states:

> [T]he provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are **designed to meet individual**

- 5 -

> **educational needs of handicapped persons as
> adequately as the needs of nonhandicapped
> persons are met** and (ii) are based upon
> adherence to procedures that satisfy the
> requirements of §§ 104.34[4], 104.35, and
> 104.36[5].

34 C.F.R. § 104.33(b)(1)(emphasis added).

Interpreting § 104.33, the Ninth Circuit in the <u>Mark H.</u>

decision aptly observed:

> The plain language of [§ 104.33] is not
> violated **by a mere difference in education
> outcomes or "effects."**  Rather, it is
> **violated only if a state fails to "design"
> educational plans so as to meet the needs of
> both disabled and nondisabled children
> comparably.**  To "design" something to produce
> a certain, equal outcome involves some
> measure of intentionality.  **And an obligation
> to "design" something in a certain way is not
> violated simply because the actual impact of
> the design turns out otherwise than intended.**

<u>Mark H.</u> at 616 (emphases added).

---

[4]      34 C.F.R. § 104.34 requires, <u>inter alia</u>, recipients of
federal funds to place disabled individuals in a "regular
educational environment" unless it can be shown that "the
education of the person in the regular environment with use of
supplementary aids and services cannot be achieved
satisfactorily."  <u>See</u> <u>Mark H.</u>, at 604.  When a handicapped
individual is removed from a regular environment, the facility in
which she is placed must be "comparable" to that used by non-
disabled students.  34 C.F.R. § 104.34(c); <u>see also</u> <u>Mark H.</u>, at
604.

[5]      "34 C.F.R. §§ 104.35 and 104.36 require evaluation and
testing of all those who need or are believed to need special
education, as well as the development of procedural safeguards to
ensure that guardians of disabled children receive notice, access
to relevant records, and an opportunity for an 'impartial
hearing.'" <u>Mark H.</u>, at 605.

- 6 -

Therefore, "the obligation created [under § 504 FAPE] is a **comparative one**." Mark H. at 617(emphasis added). "School districts need only design education programs for disabled persons that are intended to meet their educational needs to the same degree that the needs of nondisabled students are met, not more." Id.

Further, in determining whether a school district has met its comparative obligation under § 504 FAPE, courts must only look at the "design" of the child's educational program. The "effects" of a child's educational program, or the implementation of a child's educational program are irrelevant to the issue of whether a school district has met its obligation under § 504 FAPE. As the Ninth Circuit stated, "[b]y requiring **only** appropriate 'design' of programs, § 104.33 does not fall into that category of 'disparate impacts' about which the Court was most concerned in [Alexander v. Choate, 469 U.S. 287 (1985)]." Mark H., at 616 (emphasis added). Indeed, in Choate, "the Court repeatedly distinguished disparate impact discrimination from other forms of discrimination by noting that disparate impact discrimination arises from actions that discriminate only in 'effect' rather than 'design.'" Id. (citing Choate, 469 U.S. at 292, 297). As the Ninth Circuit noted, "the Court was concerned that a prohibition on any and all disparate impacts would lead to liability for effects brought about wholly inadvertently, indeed,

- 7 -

even for effects that agencies had acted to avoid." Mark H., at 616 (citing Choate, 469 U.S. at 298).

As a result, any evidence and/or argument concerning effects or implementation are irrelevant to the determination of whether a § 504 FAPE was provided.

### 3. The standard of "deliberate indifference" is irrelevant to the determination of whether a private cause of action exists.

In Mark H., the Ninth Circuit made it clear that the standard of "deliberate indifference" is only relevant in determining whether damages can actually be imposed in an individual case. See id. at 620. In order to even reach the issue of "deliberate indifference," a plaintiff must first show that a particular regulation is privately enforceable. See supra. Next, as pertinent to the present case, a plaintiff must prove that there was a denial of a § 504 FAPE. See supra. In each instance, the standard of "deliberate indifference" is irrelevant.

### 4. Impact of the Mark H. decision.

The Mark H. decision obviously impacts the present case.[6] Most notably, the Mark H. decision re-directs this Court

---

[6]    At the January 18, 2008 Status Conference held in front of this Honorable Court, Plaintiffs argued that there has been no substantive change in the standard in which Plaintiffs must prove. Clearly, Plaintiffs' position (and/or reading of the Mark H. decision) is wrong. Nonetheless, it is anticipated that Plaintiffs will attempt to argue that the distinction made by the Ninth Circuit between § 504 itself, and the implementing

and both parties to an issue that up until now was conceded as a non-issue. See December 2006 Order at 49 ("[I]t is undisputed that the DOE failed to provide Bryan a FAPE."). Furthermore, this issue is dispositive of whether or not this Court needs to even reach the issue of "deliberate indifference," the issue that both parties have been solely focusing on prior to the Mark H. decision.

Indeed, prior to Mark H., both parties were unaware that a § 504 FAPE and a IDEA FAPE contained significant differences. Notably, both parties were unaware that § 504 FAPE creates a "comparative obligation" where "school districts need only design education programs for disabled persons that are intended to meet their educational needs to the same degree that

---

regulations promulgated under it, somehow allows Plaintiffs to disregard § 504's FAPE regulation and simply bring a private cause of action pursuant to § 504's implied right of action. Plaintiffs' argument clearly fails. § 504 provides that Bryan shall not, "solely by reason of [] his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any **program** or activity receiving Federal financial assistance." 29 U.S.C. § 794(a)(emphasis added). Clearly, the "program" in question is Bryan's FAPE (and now in light of the Mark H. decision, Bryan's § 504 FAPE). As a result, Plaintiffs must prove that Bryan was excluded from participation in [FAPE], denied the benefits of [FAPE], or subjected to discrimination by the DOE under [FAPE]. Clearly, FAPE invariably plays a role in Plaintiffs' claim under § 504. As a result, regardless of whether Plaintiffs characterize their complaint as a violation of § 504 itself, or as a violation of § 504's regulation requiring FAPE, Plaintiffs must still prove that Bryan was denied a § 504 FAPE in order to establish a cause of action. Therefore, any argument that the § 504's FAPE regulation does not apply is utterly meritless.

- 9 -

the needs of nondisabled students are met, not more." <u>Mark H.</u>, at 617. Further, both parties were unaware that § 504 FAPE concentrates solely on the "design" of the educational program, not the effects of or implementation of the educational program.

As a result, it is clear that the <u>Mark H.</u> decision impacts the present case. Now, the question in the forefront of the present case is not whether the DOE acted with "deliberate indifference," rather the question is whether or not Bryan was denied a § 504 FAPE.[7]

**B.    <u>The DOE's Position on How to Proceed.</u>**

The recency of the <u>Mark H.</u> decision combined with the drastic change in the legal framework applicable to the present case clearly warrants a continuance of the February 26, 2008 trial date. Strikingly, however, Plaintiffs seem to be of the opinion that a continuance is not necessary. If such is the case, the DOE is agreeable to proceeding to trial on February 26, 2008 with one caveat: this Court grant the DOE leave to move this Court to exclude any and all evidence and/or argument that are irrelevant to the issue of whether or not the DOE met its "comparative" obligation to "design" an educational program that

---

[7]    The <u>Mark H.</u> decision also requires the Plaintiffs to now amend their Complaint to specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action. <u>See Mark H.</u>, at 622. As a result, at the present moment, Plaintiffs fail to even present a valid cause of action before this Honorable Court.

- 10 -

meets the needs of Bryan as adequately as the needs of nonhandicapped individuals are met.  In effect, the DOE's motion would exclude any and all evidence concerning the "implementation" of Bryan's IEP and the "effects" that any alleged failure to implement may have caused Bryan.

The Plaintiffs have never alleged that the "design" of Bryan's IEP was inadequate.  <u>See</u> <u>generally</u> Complaint, attached as Exhibit "A"; Complaint in CV. No. 05-00247 SOM-BMK filed April 8, 2005, attached as Exhibit "B"; Verified Amended Complaint and Supplemental Complaint in CV. No. 04-0042 HG-BMK filed July 1, 2005, attached as Exhibit "C".  Moreover, the Plaintiffs have never alleged that the DOE failed to meet its "comparative" obligation as required under § 504 FAPE.  <u>See</u> <u>generally</u> Exhibits "A", "B", and "C".  As a result, it is not surprising that Plaintiffs evidence concentrates on "implementation" and "effects", issues that are wholly irrelevant to whether Bryan received a § 504 FAPE.  Regardless, in light of the <u>Mark H.</u> decision, any evidence concerning "implementation" and "effects" of Bryan's IEP are completely and utterly irrelevant.

Examples of Plaintiffs' irrelevant evidence are bountiful.  For example, during the deposition of Betty Jo Freeman, Ph.D. ("Dr. Freeman") taken on September 24, 2007, Dr. Freeman, one of Plaintiffs' expert witnesses, stated:

(By Mr. Ushiroda)

Q.    Are you offering an opinion today on the adequacy of the IEPs developed in Hawaii, or is it just your criticism is the lack of consistency of implementation?

A.    My criticism is the lack of implementing the IEP, and there were things that could have been done to have the IEPs implemented that weren't.

Q.    Are you offering an opinion on whether the IEP itself was appropriate?

A.    No. . . .

See Deposition of Betty Jo Freeman, Ph.D. taken on September 24, 2007 at p. 129, lns. 11-20, attached hereto as Exhibit "D".

Further, during the deposition of Daniel LeGoff, Ph.D. ("Dr. LeGoff") taken on August 23, 2007, Dr. LeGoff stated:

(By Mr. Ushiroda)

Q.    Do you have an opinion -- are you going to render an opinion on Bryan's IEP whether it was adequate or not?

A.    That hasn't come up.  I haven't been asked to evaluate the adequacy of his IEP.

See Deposition of Daniel LeGoff, Ph.D., taken on August 23, 2007 at pp. 117-118, lns. 22:3, attached as Exhibit "E".  Indeed, the expert reports of both Dr. Freeman and Dr. LeGoff are void of any mention concerning the design or adequacy of Bryan's IEPs. See generally Expert Reports of Betty Jo Freeman, Ph.D., attached

as Exhibits "F" and "G"; Expert Reports of Daniel LeGoff, Ph.D.,
attached as Exhibits "H", "I" and "J".

        A plain review of the deposition transcripts of Stanley
Bond and Ann Kimball-Wiles also support the fact that Plaintiffs'
evidence concerns merely "implementation" of Bryan's IEP, not the
"design" of Bryan's IEP.  For example, Stanley Bond stated,
"[Bryan] did not receive the 95 percent that was required by
these orders, and really, what was necessary to **implement** his
educational program as it was designed by the IEP team."  See
Deposition of Stanley Bond, taken on May 11, 2007 at p. 225, lns.
2-5 (emphasis added), attached as Exhibit "K".  Further, Ann
Kimball-Wiles stated, "And, because [skills trainers']
**implementation** was incorrect, it actually -- we had to back off
the program and try and revamp it."  See Deposition of Ann
Kimball-Wiles, taken on June 30, 2007 at p. 300, lns. 1-3
(emphasis added), attached as Exhibit "L".

        In sum, Plaintiffs' evidence to date is wholly
irrelevant to the pertinent issue of whether the DOE met its
"comparative" obligation under § 504 FAPE to "design" an
educational program that met the needs of Bryan as adequately as
the needs of non-handicapped individuals are met.  To the extent
that Plaintiffs' evidence and/or arguments concern the alleged
failures of the DOE to properly "implement" Bryan's IEP, and/or
the "effects" that the DOE's alleged failure to implement may

have had on Bryan, such evidence and/or arguments should be excluded on the basis that it is irrelevant to the issue of whether a § 504 FAPE was provided.[8]

C.    **Effect of Exhaustion Provision of 20 U.S.C. § 1415(l).**

The DOE also examined the issue of exhaustion of administrative remedies pursuant to 20 U.S.C. § 1415(l).[9] After a careful review of the transcripts and documents concerning the Plaintiffs' exhaustion of administrative remedies for the denial of Bryan's IDEA FAPE and applicable law, the DOE submits that this Court should dismiss Plaintiffs' claim for failure to exhaust administrative remedies. Clearly, the issue of whether Bryan was denied a § 504 FAPE can be properly addressed under the administrative procedures set forth in the IDEA. Since it was

---

[8]    The DOE concedes that a majority of its evidence can also be characterized as irrelevant in light of the Mark H. decision. This concession, however, is again not surprising considering the fact that both parties in this case were playing in a completely different ballpark than the standard set forth in Mark H..

[9]    The Ninth Circuit failed to provide any guidance concerning this issue. As the Ninth Circuit stated:

> Because the § 504 FAPE requirement differs from the IDEA FAPE requirement, it is not clear how the exhaustion provision of § 1415(l) applies to suits for damages for failure to provide a § 504 FAPE. We need not reach this issue, because the H. Family did exhaust the IDEA administrative remedies.

Mark H., at 613 n. 11.

- 14 -

not presented at the administrative level, Plaintiffs are
precluded from filing the present civil action.

At the January 18, 2008 Status Conference held in front
of this Honorable Court, Mr. Varady, counsel for Plaintiffs,
represented that the Administrative Hearing's Officers refused to
hear Plaintiffs' § 504 claims. After a careful review of all
relevant Hearings' transcripts, orders, and other documents, the
DOE submits that it has not found any evidence to support
Mr. Varady's representation. Indeed, considering the fact that
Plaintiffs have never alleged that the DOE failed to comply with
its "comparative" obligation under a § 504 FAPE, and the fact
that Plaintiffs have never alleged that the "design" of Bryan's
IEP was inadequate, it is highly unlikely that the issue of
whether Bryan was denied a § 504 FAPE was ever presented at the
administrative level. As a result, the DOE proceeds with its
analysis on the assumption that no such refusal occurred.

20 U.S.C. § 1415 (l) requires Plaintiffs to exhaust all
administrative remedies available to them prior to filing a civil
action. 20 U.S.C. § 1415(l) provides:

> Nothing in this chapter shall be construed to
> restrict or limit the rights, procedures, and
> remedies available under . . . the
> Rehabilitation Act of 1973, . . . except that
> before the filing of a civil action under
> [the Rehabilitation Act], the procedures
> under subsections (f) and (g) of this section
> shall be exhausted to the same extent as
> would be required had the action been brought
> under [the IDEA].

Therefore, 20 U.S.C. § 1415(l) requires any plaintiff seeking "relief that is available under" the IDEA to first use the IDEA's administrative system, even if the plaintiff's claim invokes a different statute.  <u>See</u> <u>Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.</u>, 98 F.3d 989, 991 (7th Cir. 1996).

Plaintiffs clearly have not exhausted their administrative remedies as to the issue of whether Bryan was provided a § 504 FAPE.  Indeed, Plaintiffs have never alleged that the DOE failed to comply with § 504's "comparative" obligation; Plaintiffs have never alleged that the "design" of Bryan's IEP was inadequate or not properly designed to meet the educational needs of Bryan as adequately as the needs of nonhandicapped individuals are met.  Moreover, to the extent that Plaintiffs argue that their exhaustion of IDEA administrative remedies as to an IDEA FAPE is sufficient to allow this Court to hear Plaintiffs' § 504 FAPE claim, such argument must fail.  As the Ninth Circuit stated in <u>Mark H.</u>, a § 504 FAPE contains significant differences from an IDEA FAPE.  As a result, since these significant differences, <u>e.g.</u> the DOE's "comparative" obligation, "design" of Bryan's educational program, were not heard at the administrative level, this Court should dismiss Plaintiffs' claim for failure to exhaust administrative remedies.

Plaintiffs rely on <u>Witte v. Clark County School District</u>, 197 F.3d 1271 (9th Cir. 1999) to support their

contention that Plaintiffs have exhausted their administrative
remedies and/or that exhaustion of administrative remedies are
not required in the present case.  Witte, however, is inapposite.
In Witte, the Ninth Circuit held that the plaintiff was not
required to exhaust all of the administrative remedies available
to him because he was "seeking only monetary damages, which is
not 'relief that is available under' the IDEA, and **because all
educational issues already have been resolved to the parties'
mutual satisfaction through the IEP process**."  Id. at 1275
(emphasis added).  The DOE first attacks the latter part of the
Ninth Circuit's holding.

        In the present case, the parties, through the IEP
process, have not mutually agreed on the issue of whether or not
Bryan was denied a § 504 FAPE.  Clearly, the DOE's contention is
that it did in fact meet its "comparative" obligation by creating
an educational plan for Bryan "designed" to meet his individual
educational needs as adequately as the needs of nonhandicapped
individuals.  In fact, if anything, the IEP process evidences
that both parties agreed that Bryan's IEP was adequately
"designed."  As a result, unlike Witte, the parties in the
present case have not come to a mutual satisfaction on whether or
not Bryan was denied a § 504 FAPE.  Indeed, the IDEA covers "any
matter relating to the identification, evaluation, or educational
placement of the child, or the provision of a free appropriate

- 17 -

public education." 20 U.S.C. § 1414(b)(1)(E). Clearly, the issue of whether Bryan was denied a § 504 FAPE comes into the purview of the IDEA's coverage. As a result, Plaintiffs are required to first exhaust their administrative remedies prior to filing a civil action.

Plaintiffs will undoubtedly argue that they only seek monetary damages in the present case, and therefore, under Witte, the exhaustion of administrative remedies is not required. This argument, however, fails. First off, it is undisputed that Plaintiffs only seek monetary damages under § 504. See December 2006 Order at 14. Nonetheless, in Robb v. Bethel Sch. Dist. #403, 308 F.3d 1047, 1049 (9th Cir. 2002), a case decided after Witte, the Ninth Circuit held that "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages." As the Ninth Circuit noted, this holding was in line with previous holdings of the First, Sixth, Seventh, Tenth, and Eleventh Circuits. Id. Further expounding on its holding, the Ninth Circuit stated:

> The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to **any degree** by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required.

Id. at 1050 (emphasis added).

In Robb, the Ninth Circuit relied on the Seventh Circuit Court of Appeals decision in Charlie F. v. Board of

- 18 -

Education of Skokie School District, 98 F.3d 989 (7th Cir. 1996).

In Charlie F., the Seventh Circuit stated that "what 'relief' is available does not necessarily depend on what the aggrieved party wants." Expounding on this statement, the Seventh Circuit aptly observed:

> "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." The nature of the claim and the governing law determine the relief no matter what the plaintiff demands.

Id. at 991-992 (quoting Fed. R. Civ. P. 54(c)). In Charlie F., the Seventh Circuit ultimately held that despite the fact that plaintiff's sole claim was for monetary damages, the plaintiff was still required to exhaust his administrative remedies prior to filing a civil action. In holding such, the Seventh Circuit clearly found the defendant school district's argument persuasive:

> Why do Charlie's parents want money? Presumably at least in part to pay for services (such as counseling) that will assist his recovery of self-esteem and promote his progress in school. Damages could be measured by the cost of these services in kind under the IDEA. If it turns out that the school is *not* obliged to provide such services, that may be because Charlie's parents have exaggerated what happened [ ], the consequences of those events, or both. **In other words, the educational professionals and hearing officers who evaluate claims under the IDEA may conclude (a) that adequate remedial services can be provided, or (b)**

- 19 -

> that Charlie does not today require services.
> **The first outcome would show that relief is**
> **available under the IDEA; the second would**
> **provide information relevant to Charlie's**
> **claims under statutes other than the IDEA.**
> **In either event, pursuit of the**
> **administrative process is justified.**  Charlie
> would not get the kind of relief the
> complaint demands, but this is not what §
> 1415(f) says.  We read "relief available" to
> mean relief for events, condition, or
> consequences of which the person complains,
> not necessarily relief of the kind the person
> prefers.

Id. at 992 (emphasis added).  Clearly, the mere fact that

Plaintiffs only seek money damages is not conclusive in

determining whether or not Plaintiffs must exhaust all

administrative remedies available to them prior to filing a civil

action.  Like Charlie F., Plaintiffs should first present this

issue of a § 504 FAPE to educational professionals and hearing

officers under the procedures set forth in the IDEA.  At the very

least, these administrative procedures will provide this Court

with information relevant to Plaintiffs' claim under § 504 and

its implementing regulations.[10]

_____

[10]    In Witte, the Ninth Circuit declined to follow Charlie
F..  In declining to follow Charlie F., the Ninth Circuit held
that Charlie F. was readily distinguishable from Witte because
(1) in Charlie F., there was no indication that the parties had
mutually agreed on all educational issues; (2) in Witte, the
plaintiff only sought retrospective damages (plaintiff expressly
eschewed any claim for monetary damages to provide, or to be
measured by any cost of, remedial services); and (3) in Witte,
the plaintiff's allegations centered around physical abuse and
injury, and thus the remedies available under the IDEA would not
appear to be well suited to address these types of injuries.  See
Witte, 197 F.3d at 1275-1276.  In the present case, the parties

As a result, the Court should dismiss the present case for failure to exhaust the IDEA's administrative remedies[11]; and, if necessary, order an administrative hearing be conducted to determine whether or not Bryan was denied a § 504 FAPE.

DATED:  Honolulu, Hawaii, January 22, 2008.


        /s/ Gregg M. Ushiroda
JOHN T. KOMEIJI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA
Attorneys for Defendants

---

have not come to a mutual agreement as to the issue of Bryan's § 504 FAPE.  See supra.  Further, Plaintiffs' claim for money damages is not limited to damages that are retrospective. Lastly, the design of an educational program, and whether or not it compares to that provided to non-disabled individuals, are clearly issues that could be, if found inadequate, addressed under the "remedies available under the IDEA."  As a result, Witte's dismissal of the Charlie F. decision is inapposite as applicable to the present case.

[11]    "Failure to exhaust administrative remedies does not deprive a court of jurisdiction; lack of exhaustion usually is waivable, as lack of jurisdiction is not."  Charlie F., 98 F.3d at 991.  As a result, the proper response by the Court is to dismiss the present case for failure to use the IDEA's administrative remedies; not to dismiss for lack of subject matter jurisdiction.