Of Counsel:
DAVIS LEVIN LIVINGSTON ~~GRANDE~~

STANLEY E. LEVIN           1152-0
MICHAEL K. LIVINGSTON   4161-0
ANNE L. WILLIAMS          1662-0
400 Davis Levin Livingston ~~Grande~~ Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

CARL M. VARADY            4873
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447
Fax: (808) 523-8448

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>             Plaintiffs,<br>   vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i<br>          Defendant. | CIVIL NO. 04-00442 HG/BMK<br>CIVIL NO. 05-00247 HG/BMK<br>(Other Civil Action)<br><br>~~FIRST~~ SECOND AMENDED COMPLAINT; EXHIBITS "A"–"D"; CONTINUED DEMAND FOR JURY TRIAL |

**~~FIRST~~ SECOND AMENDED COMPLAINT**

## I.    INTRODUCTION

1.    This action is brought by Plaintiffs ANN KIMBALL WILES and STANLEY BOND ("Plaintiffs"), who are the parents of Bryan Wiles-Bond, an autistic ~~12~~16-year-old boy, on behalf of themselves and as next friend for their son Bryan.

2.    ~~The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Section 1400 *et. seq.*, requires that educational agencies provide children with disabilities a free appropriate public education ("FAPE") with special education and related services designed to meet their unique needs.~~

~~3~~2.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §~~Section~~ 729 ("Section 504"), prohibits ~~~~exclusion from participation in, denial of the benefits of, or discrimination against people with disabilities, in any program or activity receiving Federal financial assistance~~discrimination against the disabled in any program receiving federal funds~~.

3.    Section 504 provides a cause of action for money damages and other relief, where an entity operating a program or activity receiving Federal financial assistance, acting with deliberate indifference, fails to provide or otherwise prohibits meaningful access to such program of activity. Section 504 applies to all public schools that receive federal financial assistance, as 29 U.S.C. § 794(b)(2)(B)

2

defines "program or activity" to include the operations of "local educational agenc[ies]".

4. Defendant, the DEPARTMENT OF EDUCATION, STATE OF HAWAI'I ("DOE"), acting with deliberate indifference, ~~has~~failed to provide or otherwise prohibited Bryan from having meaningful access to public education in Hawaii.  In doing so, DOE ~~~~excluded Bryan from participation in, denied him the benefits of, and discriminated against him, in his public education, which is a program or activity receiving Federal financial assistance~~routinely failed to provide Bryan with the specialized services set forth in his Individualized Education Program ("IEP"), and in a Release and Settlement Agreement dated July 1, 2002, thereby depriving him of a FAPE.  Despite these agreements and the three orders from administrative hearings officers, the DOE has failed to and refused to deliver services needed in order for Bryan to successfully learn the skills he needs to live with his family~~.  The DOE acted with deliberate indifference Bryan's need for accommodation and denied him meaningful access to public education as set out more fully below.

## II.    JURISDICTION

~~5~~5. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§~~Sections~~ 1331 and 1343 which afford original jurisdiction of actions arising from federal questions under the Constitution or laws of the United States,

including ~~the Individuals with Disabilities Education Act, 20 U.S.C. Section 1415(e) ("IDEA"), and~~ the Rehabilitation Act of 1973, 29 U.S.C. ~~§Section~~ 729 ("Section 504").

6~~6~~. Declaratory relief is authorized pursuant to 28 U.S.C. §§~~Sections~~ 2201-02.

7~~7~~. ~~As set forth below,~~ Plaintiffs have <u>fulfilled their obligation to</u> exhaust~~ed~~ ~~their~~ administrative remedies<u>, if any</u> ~~to the extent necessary under the IDEA and the Rehabilitation Act~~. ~~Plaintiffs have no fewer than three unappealed administrative decisions which in part form the basis of the monetary compensation claim herein.~~

### III.   PARTIES

8~~8~~. Bryan Wiles-Bond is a minor who currently attends a public school in the State of California.

9~~9~~. Ann Kimball Wiles and Stanley Bond are Bryan's natural parents, and, as next friends of Bryan, have standing to assert claims on his behalf as well as on behalf of themselves.

1~~10~~0. From 1999 to 2005, Plaintiffs were citizens of and resided in the State of Hawai'i when the events giving rise to this action took place. Plaintiffs lived in Hawaii until they were forced to relocate to California ~~in order for them~~ to ~~get FAPE~~<u>obtain meaningful access to public education</u> for their son Bryan.

4

~~11~~11. The DOE is the state educational agency ~~under 20 U.S.C. Section 1400 *et. seq.,* and is~~ responsible for the ~~identification of special education needs and the provision of services to children in the public school system who are disabled and in need of special~~providing public education in Hawaii. The DOE receives federal funds for its ~~special~~ education programs.

## IV.    FACTUAL ALLEGATIONS

~~12~~12. Bryan, who was born on October 28, 1991, is the youngest child of Ann Kimball Wiles and Stanley Bond.  At age 2, Bryan was diagnosed with pervasive developmental delay and hyperactivity and, ~~at age five or six~~later, he was ~~labeled autistic~~diagnosed as having autism.

~~13~~13. Autism is a developmental disability that significantly affects verbal and non-verbal communication and social interaction as well as a child's educational performance.  Although no cure for autism exists, the condition is best treated with early diagnosis, and appropriate intervention, and education.

~~14~~14. Bryan was enrolled in the Hawai'i public school system from the time his family moved to Hawai'i in 1999.  Bryan ~~is~~was partially toilet-trained, and ~~has~~ had severe developmental delays in cognition, speech and social abilities.  ~~When he arrived~~Prior to his arrival in Hawaii, he had gained certain skills and progressed to ~~the~~ a point that his parents were pleased with his progress.  Bryan's preferred means of communication is American Sign Language ("ASL").

15~~15~~. Bryan was making progress in some academic areas when ~~we~~ he left Maryland in 1999.  However, he was not fully toilet trained ~~or~~ and had ~~his behavior under control~~delays in social behavior.  Both were major issues ~~which~~ that affected his ability to access public education in a meaningful way.  ~~is why the IEP team~~Defendant was required  ~~decided~~ to provide him with one-on-one instructional services in the class and after school, and other accommodations, so that Bryan could enjoy meaningful access to public education.  ~~Although his use of the toilet regressed in Hawaii, there is no objective measure of the baseline.~~

16~~16~~. ~~For the last several years,~~ Bryan~~'s Individualized Education Program ("IEP") has required~~ needed, among other accommodations, one-on-one assistance from a trained aide ("skills trainer") during the entire school day, after school, and on weekends, so that he could enjoy meaningful access to public education.

17~~17~~. At all relevant times, Defendant knew Bryan needed skills trainers every day for at least ten hours per day trained in specific behavior modification methods, ASL and experienced working with children with autism to have meaningful access to public education.

18~~18~~. On February 27, 2001, Bryan's parents submitted a request to the DOE for a due process hearing pursuant to 20 U.S.C. §~~Section~~ 1415(e), identifying several issues to be decided concerning special education provided to Bryan and his need for accommodation.  They included, among other matters:

a. Failure to provide a trained aide for ~~1:1~~one-to-one services specified in the IEP, and as a result;

b. Failure to provide speech services as identified in the IEP; and

c. Failure to implement the autism programs specified in the IEP. All of the aforementioned services were necessary to provide Bryan meaningful access to public education.

~~19~~19. At a scheduled May 7, 2001 due process hearing before hearing officer Richard Chun, no hearing was held.  Instead, Plaintiffs and the DOE placed their stipulated hearing decision on the record.  The terms of the stipulation were to be in effect from May 7 through October 1, 2001.

~~20~~20. Hearing Officer Richard Chun set forth the terms of the parties' stipulation in a Decision and Order dated May 21, 2001 ("Order").  Among other things, the Order ~~provided~~mandated:

a. The IEP dated January 29, 2001 was to be followed;

b. The DOE was to hire and train an adult aide for Bryan. Training for the aide was to include behavioral modification including TEACCH, DTT and PECS, and be provided by Dr. Jana Ortiz or Kim Smalley;

c. The aide was to provide services to Bryan during normal school hours and after school; ~~and~~

d.    If these services were not provided as required at levels specified by Bryan's IEP during the period May 7 through October 21, 2001, the DOE was required to make up those services after October 21, 2001.

e.    If the aide did not completer his/her services during this time period, Defendant was required to find a replacement within two weeks of termination; and

f.    In addition to the TEACCH, DTT and PECS methods, the Defendant was allowed to implement other methodologies or services they deemed appropriate.

All of the aforementioned services were necessary to provide Bryan meaningful access to public education.

2121. The DOE knowingly failed to comply with the Order's terms, as, inter alia, . Among other matters, it did not provide the mandated services during the specified period, and did not make up the missing services thereafter.  As a result, Bryan was denied meaningful access to public education.  Plaintiffs filed a Complaint in the United States District Court on February 15, 2002 against the DOE, to enforce the Order, and to have the DOE comply with Bryan's then-current IEP.

2222. The Complaint alleged that the State had breached federal law and regulations by, among other things, failing to implement the terms of the Order,

failing to provide a free and appropriate public education to Bryan under the IDEA, and violating Section 504 of the Rehabilitation Act.  ~~The complaint was filed on July 21, 2004.~~

~~23~~23. On July 1, 2002, in resolution of the federal action, Plaintiffs and the DOE entered into a Release and Settlement Agreement ("Settlement Agreement"), a true and correct copy of which is attached as Exhibit "A".

~~24~~24. To provide Bryan meaningful access to public education, the Settlement Agreement required the ~~DOE~~ Defendant to, *inter alia,*:

      a.    Hire, train and have in place the skills trainers (~~formerly~~ aka "therapeutic aides" or "T~~a~~As") needed to consistently provide Bryan with not less than ~~95~~ ninety-five percent (95%) per calendar month of the skills trainer hours to which he ~~is~~ was entitled under his IEP;

      b.    ~~Procure~~ By August 1, 2002, procure skills trainer services for Bryan through an "expedited contract process," in which the DOE committed to pay a minimum salary and pay the skills trainers promptly;

      c.    Reimburse Plaintiffs for newspaper advertising to attract skills trainers; ~~and~~

d. ——By August 1, 2002, create a pool of substitute skills trainers, trained in the behavioral methods and knowledgeable about Bryan's IEP, who would be available when his regular skills trainers were not;

e. Procure skills trainers trained in specific DTT, TEACCH and PECS behavior modification methods for autistic children;

f. Have the skills trainers complete Bryan's daily behavioral logs and daily log sheets to document the amount of DTT and TEACCH trials utilized;

g. Continue to exercise oversight monitoring of the skills trainers by the then current autism consultants or similarly qualified personnel;

h. Provide skills trainer services to Bryan when school is not in session in Bryan's home;

i. Provide additional occupational therapy and speech therapy;

j. Provide respite care to Bryan's parents for 32 hours per month; and

k. Provide the specified services for a period of two years, until and including July 1, 2004.

All of the aforementioned services were necessary to provide Bryan meaningful access to public education. Create a pool of substitute skills trainers who are qualified and trained to provide services to Bryan when his normal skills trainers are not available.

2525. Between October 2003 and February 2004, despite the requirements of Bryan's IEP and the Settlement Agreement, the DOE knowingly failed to provide skills trainers to deliver 95 percent of the services in Bryan's IEP.  The skills trainers that were provided lacked the qualifications set out in the Settlement Agreement.  The DOE provided only approximately 75 percent of the services mandated.  In addition, the DOEDefendant never created a pool of qualified substitutes to provide interim services while recruitment ofduring periods when fully trained and committed permanent skills trainers were hired not available, even though the DOE knew, from as early as 1999, that there was a chronic shortage of such skills trainers on the Big Island.

2626. Bryan's IEP, developed in January 2004, required 1:1 instructional support during the school day for 6.5 hours (5.5 hours on Wednesday), after school for 4.5 hours (5.5 hours on Wednesday), and 6.0 hours per day on the weekend.  It also required that Bryan receive special education and related services for 360 days per year.

27.    DOE knowingly failed to fulfill the terms of the Settlement Agreement or implement Bryan's educational program.  On February 26, 2004, Plaintiffs submitted a request for a due process hearing under Hawaii

Administrative Rules ("H.A.R.") Title 8, Chapter 56. The issues raised by the request for hearing were:

a. the DOE's repeated failure to provide the services required by Bryan's IEP and necessary to provide him meaningful access to public education;

b. the DOE's failure to ensure that trained skills trainers are hired and available to provide services for children like Bryan;

c. the DOE's failure to provide skills trainers who were trained in DTT, TEACCH, PECS, had experience working with autistic children and who couldcan communicate

communicate with Bryan, who communicates through American Sign LanguageASL; and

d. the failure of the DOE to comply with the Settlement Agreement. All of the aforementioned services were necessary to provide Bryan meaningful access to public education.

2827. After a hearing held on April 5, 2004, the administrative hearings officer issued Findings of Fact, Conclusions of Law and Decision on May 11, 2004 ("May 2004 Decision"). The May 2004 Decision held that the DOE's failures tofrom October 2003 to February 2004 provide Bryan with: "1) tThe DOE repeatedly failed to provide the skills trainer services required by Bryan's

November 18, 2002, November 25, 2003 and January 9, 2004 ~~required number of skills trainer service hours as specified in his~~ IEPs, 2) The DOE failed to ensure that ~~-~~trained skills trainers were hired and available to provide ~~capable of providing~~ services to Bryan, and 3) The DOE failed to provide skills trainers who ~~can~~ could communicate with Bryan using ASL, resulted in a loss of educational benefit to Bryan".   All of the aforementioned services were necessary to provide Bryan meaningful access to public education.

~~29~~28. In the May 2004 Decision, the ~~DOE~~ Defendant was ordered to:

a.    ~~1) h~~Hire, train and have in place the skills trainers needed to consistently provide Bryan with not less than 95 percent per calendar months of the skills trainer hours to which he is entitled to in his IEP.  If Defendant failed to do so, Bryan's parents could hire skills trainers;

~~; 2)~~b.  Any skills trainers hired by Bryan's parents or Defendant were required to be trained in DTT and TEACCH methods and ASL, to sufficiently implement Bryan's program as determined by Bryan's IISC~~hire skills trainers who are trained in Discrete Trial Training and TEACCH and American Sign Language to sufficiently implement Bryan's IEP program~~; ~~3)~~

c.  ~~-p~~Provide additional authorization of hours to Bryan's autism consultant to train new skills trainers; and

13

4)d.  pProvide additional hours of service from a knowledgeable consultant to design, implement and monitor a toileting program for Bryan.

All of the aforementioned services were necessary to provide Bryan meaningful access to public education.

3029. The May 11, 2004 Decision was not appealed by the DOE and is now res judicata.  A true and correct copy of the May 11, 2004 Decision is attached as Exhibit "B".

3130. Pursuant to the May 2004 OrderDecision, on June 2, 2004, a meeting was held at which the DOEDefendant agreed to the number of additional hours for training pursuant to the May 2004 Decision, to American Sign Language ("ASL")informed Plaintiffs it would implement ASL training, and to the hiring of anhire an experienced behaviorialst to devise and oversee implementation of the Bryan's toileting program.

3231. On June 11, 2004, Plaintiffs submitted a request for a due process hearing under Hawaii Administrative Rules ("H.A.R.") Title 8, Chapter 56.  The issues raised by the request for hearing were: 1) the failure of the DOE to hire and have in place a trained, certified and qualified special education teacher to deliver Bryan's special education program during his "extended school year", e.g., the period he received services outside of the regular academic year; and 2) the DOE's hiring of an unqualified special education teacher for Bryan for the 2004-2005

school year.  All of the aforementioned services were necessary to provide Bryan meaningful access to public education.

33~~32~~. On July 2~~3~~6, 2004, the ~~DOE~~ Defendant stipulated to the facts alleged in the hearing request and to liability.  A Stipulated Partial Decision and Order ("July 2004 Order") was approved by the ~~DOE's counsel~~ Defendant and the administrative hearings officer.  A true and correct copy of the July 2004 Order approved by DOE's counsel is attached as Exhibit "C".

34~~33~~. The July 2004 Order ~~required the DOE~~ mandated that Defendant ~~to~~:

~~1)~~          a.      ~~p~~Prepare for Bryan "a written structured social skills curriculum for implementation beginning no later than the end of the first week of the 2004-2005 school year;" ~~2)~~

          b.      "~~h~~Hire and have in place by the beginning of the 2004-2005 school year a licensed, certified special education teacher with experience teaching autistic children and proficiency with ~~American Sign Language~~ASL;" and

          ~~3)~~c.   "~~caus~~Cause a functional behavioral assessment to be completed for Bryan and delivered to his parents no later than August 7, 2004.

All of the aforementioned services were necessary to provide Bryan meaningful access to public education.        "

3534. On July 6, 2004, a hearing was held on the remaining issue—the need for a qualified special education teacher during all portions of Bryan's extended school year—in the June due process hearing request. These services were necessary to provide Bryan meaningful access to public education.

35.    On July 23, 2004, the administrative hearings officer ruled in favor of Bryan. See Exhibit "D". The hearings officer ruled that Defendant was required to deliver Bryan's educational program under the supervision of a qualified special education teacher during the extended school year who was experienced in teaching autistic children and proficient in ASL. These services were necessary to provide Bryan meaningful access to public education.

3636. Beginning in June In 2004, despite the Settlement Agreement and May 2004 Decision, there was no pool of trained substitute skills trainers in place, and Bryan was not receiving and did not receive 95 percent of the hours of services from skills trainers identified in the May 11, 2004 Decision. The toileting program ordered has was created but had not been implemented. No ASL training has been conducted and none of the skills trainers have been hired who arewere trained in ASL or behavioral modification methods qualified as required by the Decision. These services were necessary to provide Bryan meaningful access to public education.

16

3737. Bryan's teacher in the 2004-2005 school year was a Columbus teacher. This teacher may or may not have beennot licensed or certified under state law to deliver special education services. Bryan's teacher did not know ASL and was not familiar with the methodologies behavior modification methods used with Bryan. Bryan's ESY teacher also was not certified as a teacher or special education teacher.

3838. The failure to provide proper toileting was particularly troublesome because Bryan's rate of "accidents" at school had greatly increased to as many as 18 documented incidents per day. This was a result of a lack of program, lots of down time, not being able to communicate with anyone. Defendant's knowing failures in this regardto provide appropriate accommodation forced Bryan to regress in his toileting to a level at which was at or below the level that he was at when he arrived in Hawaii.

3939. The DOE acted with deliberate indifference Bryan's need for accommodation and denied him meaningful access to public education.All of the actions and inactions by the State of Hawaii, by and through its employees were done with an intention that was deliberately indifferent to the federal (IDEA) rights of Bryan.

4040. Bryan and his parents have been and are being permanently damagedsuffered economic, psychological and physical damages by

Defendant's actions and inactions~~as a result of Defendant's deliberate indifference in an amount to be ~~proven~~ proved at trial.

41.    Defendant has caused Plaintiffs economic and non economic harm.

4~~2~~1.    The DOE has a pattern and practice of failing to provide Bryan with trained skills trainers to carry out their educational program, irrespective of the provisions in his IEPs, agreements made by the DOE, and various orders of the administrative hearings officer.

43.    The DOE has a pattern and practice of failing to provide Bryan with a trained special education teacher, irrespective of the provisions of his IEPs, agreements made by the DOE, and order of the administrative hearings officer.

44.    Bryan's IEP provides that his program will be provided through the services of a skills trainer for almost 70 hours a week for virtually every day of the year. If those services are not provided on a daily basis, there is no additional time in Bryan's life in which compensatory services can be provided to make up for his loss, without interfering with Bryan's time with his family or his sleep. In addition, when skills trainers are not trained in ASL, they cannot communicate with Bryan and he cannot communicate his needs to them.

45.    Section 504 of the Rehabilitation Act, prohibits Defendant from excluding Bryan from the participation in, denying Bryan the benefits of, or

subjecting Bryan to discrimination in public education. Defendant has violated these provisions and acted with deliberate indifference by failing to provide or otherwise prohibiting meaningful access for Bryan to public education~~Defendant's actions and inactions have directly caused such regression in Bryan that he no longer can have FAPE provided at home or in a school setting, but must at some point in time in the near future be institutionalized or in an assisted living setting, without limitation~~.

a.    Not hiring and training sufficient numbers of skills trainers, even though District Superintendent Alvin Rho testified that he was aware of a chronic shortage of skills trainers on West Hawaii in 1999, which continues to the present.  Dr. Dru Copeland, Bryan's autism consultant testified that many skills trainers work only because they want to obtain health insurance, rather than because of interest in the work, thereby contributing to an ongoing and chronic shortage in properly trained skills trainers. Defendant's own expert Dr. Bryna Siegel testified that she would have advised Bryan's parents to move rather than seek services there because of the shortage and her impression that many skills trainers were just "surfer dudes" who were looking for work between morning and afternoon surfing;

b.    Not hiring and training skills trainers and teachers who had experience working with children who have autism;

c.    Not hiring and training skills trainers and teachers who had training in or could use ASL;

d.    Not hiring and training certified special education teachers;

e.    Not providing Bryan with a functional behavioral analysis or behavior support plan, when Defendant knew that Bryan's behaviors were escalating, he was becoming aggressive, self-injurious and damaging property;

f.    Not providing Bryan with an effective toileting plan at a time when Defendant knew that Bryan was urinating on himself multiple times a day, as a means of self-stimulation and disruption of his educational program;

g.    Permitting Bryan play in his own urine and feces, while his teacher and skills trainers sat by watching;

h.    Not providing information to the agencies from which it hired skills trainers that would permit them to locate or train personnel qualified to work with Bryan.  This included not informing the agencies that Bryan's skills trainers needed to be experienced working with autism, trained in DTT, TEACCH and PECS behavioral modification methods, record data necessary to successfully implement those behavior modification programs, be proficient in ASL, and be knowledgeable regarding the terms of Bryan's educational program;

i.    Not hiring certified teachers proficient in ASL and working with children who have autism;

j.     Not providing the number of skills trainer hours Defendant was required to provide Bryan meaningful access to public education and required by the hearing officers' decisions, settlement agreement and stipulations;

k.     Forcing Bryan's parents to advertise and conduct their own searches for personnel who met the qualifications necessary to provide Bryan meaningful access to public education and required by the hearing officers' decisions, settlement agreement and stipulations;

l.     Refusing to obey the hearing officers' decisions, settlement agreement and stipulations, thereby forcing Bryan's parents repeatedly to hearing and litigation to attempt to obtain the services that would provide Bryan meaningful access to public education;

i.     Isolating Bryan in a room with no other students as he regressed from the lack of services and program as a way of dealing with his negative behaviors;

j.     Refusing to implement the home component of Bryan's program, that was to teach him functional skills and provide a way of generalizing the behavioral program that Bryan was supposed to be receiving in school;

k.     Permitting Bryan to be abducted by a mentally unstable woman during a community outing;

l.    Permitting Bryan to drink water incessantly while at school, leading to frequent urination and soiling of his clothes to the point where he often was at school in urine-soaked clothing;

m.    Exhibiting hostility and retaliatory behavior to Bryan and his parents, directly and through its agents;

n.    Not providing crisis prevention training to Bryan's teachers or skills trainers at a time when Defendant knew that Bryan's behaviors were posing a greater risk of harm to himself, others and property;

o.    Suspending Bryan from school without a determination as to whether his behavior was a manifestation of his disability;

p.    On one occasion, with four adults present, watching Bryan slip and slide on a mat on the floor in a pool of his own urine;

r.    Employing skills trainers to eavesdrop on telephone conversations and spy on Bryan's parents while in Bryan's home;

s.    Requesting the autism consultant Dr. Dru Copeland falsify her quarterly report;

t.    Disseminating confidential information regarding Bryan's program and his family in the community;

u.    Falsely accusing Bryan's home program was being used to have the skills trainers perform housework, when it was Bryan, not them, who was supposed to be learning these self-care tasks;

v.    Not accepting offers from Dr. Copeland or Dr. Kim Smalley to start a training program or train additional skills trainers even though Defendant was aware from 1999 to the present of a chronic shortage of skills trainers;

w.    Not creating a functional behavioral analysis, behavior support plan or toileting plan until after Bryan's program became "chaotic," according to the testimony of his autism consultant, Dr. Dru Copeland;

x.    Permitting Bryan to be assaulted by a larger classmate, thereby contributing to Bryan's own aggressive behaviors;

y.    Employing teachers and skills trainers that Dr. Copeland testified were not able to and did not implement Bryan's toileting program;

z.    Employing skills trainers who did not properly record data necessary to implement Bryan's behavior modification programs effectively;

aa.    Knowingly retaining a skills trainer who had pled guilty to public lewdness without informing Bryan's parents of this fact;

bb.    Knowing that the constant turnover and failure to implement consistent programming directly prevented Bryan from developing his social communication skills at a time when those skills were emerging;

cc.    Did not ask Dr. Bryna Siegel for assistance with Bryan's program, or training skills trainers, even though Defendant had retained her on a $150,000.00 contract during the 2004-05 school year;

dd.    According to Dr. Siegel, Bryan's program was made worse by the turnover in skills trainers during the 2003-04 school year;

ee.    Defendant was made aware by Dr. Kimberly Smalley, another of its consultants, of the danger to Bryan's progress posed by inadequate staffing;

ff.    Defendant was informed by Dr. Smalley that Bryan's behaviors were escalating because he had mastered the material he was being presented with, but told Dr. Smalley that Defendant did not have a teacher or materials to implement a proper program;

gg.    As confirmed by Dr. Smalley, Bryan's behavior deteriorated and his ability to communicate through ASL was damaged as a result of Defendant's failure to implement appropriate programming;

hh.    As confirmed by Kelly Stern from TIFFE, skills trainers assigned to Bryan did not have skills commensurate with this need or the requirements of the hearing officers' decisions and settlement agreement;

ii.    Although after being threatened with a TRO in August 2004, Defendant asked Pacific Child and Family, to send a representative to Hawaii from

California to prepare a proposal for Bryan's program, and Pacific Child and Family did so, Defendant never responded to that proposal;

jj.   Defendants repeatedly represented to Bryan's parents that teachers and skills trainers met all the criteria for his program, such representations were false, as they did not have ASL and DTT training;

kk.   Defendant ignored the resumes of individuals who Bryan's parents located and who met the criteria for his program;

ll.   Defendant repeatedly instructed Bryan's parents to remove him from school based on asserted illnesses or conditions that were either exaggerated, the result of behaviors that were not being addressed correctly by Defendant or caused by Defendant's refusal to give Bryan needed medication; and

mm.   Defendant repeatedly rejected Bryan's parents' request that Defendant search beyond the island of Hawaii for personnel adequately trained to implement their son's program.

The aforementioned actions deprived Bryan meaningful access to public education.

462.   The Rehabilitation Act, 29 U.S.C. Section 729, prohibits the Defendant, Section 504 additionallywhich receives federal financial assistance, from discriminating against handicapped individuals in the provision of equal

educational opportunities, prohibits DOE from retaliating against Bryan's parents for advocating for services on his Bryan's behalf and requires the DOE to provide qualified students with disabilities with a FAPE.

4743. The Defendant has repeatedly been informed of the need to hire and train an adequate number of skills trainers to provide services to autistic children like Bryan. The Defendant has intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan resulting from the lack of trained and consistent skills trainers.

48. As a direct result of their advocacy for their son's special education and related services over the period from 1999 until 2005, Bryan's parents Ann Kimball Wiles and Stanley Bond have been subjected to retaliatory conduct by Defendants that has caused them emotional economic, psychological and physical harm for which they are eligible for compensation under Section 504 of the Rehabilitation Act and its implementing regulations.

4944. Section 504's implementing regulations, 28 C.F.R. § 42.503(b)(1)(vii), authoritatively construes Section 504 of the Rehabilitation Act's prohibition of retaliation against any individual, whether handicapped or not, for the purpose of interfering with the exercise of any right secured by Section 504.

5045. Defendants retaliated against Ann Kimball Wiles and Stanley Bond in violation of Section 504 and its implementing regulations, 28 C.F.R. §

42.503(b)(1)(vii), which authoritatively construes the retaliation prohibition found in the Rehabilitation Act, causing them extreme economic, emotionalpsychological and physical distress and economic harm, in response to the parents' advocacy for their son's special education and related services, with the intent of forcing the family to move to the Mainland, over the period from 1999 until 2005 including, without limitations:

_____a.    Refusing for a period of five years to comply with due process orders/decisions, settlement agreements and IEPs, which refusal culminated in DOE refusing to provide any of the services mandated during the Summer of 2004;

b.    Instructing persons sent to the family's home to work in Bryan's home program to obtain confidential information surreptitiously about the family—"getting the dirt"—that  could be used against the family by Defendants to withdraw services from Bryan;

c.    Illicitly and unlawfully obtaining confidential e-mail written by Bryan's parents and Christy Edwards, one of Bryan's preferred and most effective skills trainers, without either party's consents;

d.    Illicitly and unlawfully obtaining confidential financial information regarding Christy Edwards in the form of her *Paypal* account and password, without her consent;

e.    Engaging in e-mail correspondence with an as-of-yet undisclosed source who was making false accusations of illegal and/or improper activity involving purchase and use of prescription medications by Christy Edwards and asserted she was being investigated by the Provost Marshall on Kwajalein;

f.    Using the confidential, illicit and false information described in subparagraphs c., d. and e. above as grounds for resisting rehiring Christy Edwards, even though Defendants knew she was especially  skilled in working with Bryan;

g.    Using the confidential, illicit and false information described in subparagraphs c., d. and e. above in the United States District Court to oppose a temporary restraining order and being forced to retain Christy Edwards, without disclosing the source of the e-mail;

h.    Isolating Bryan at Kealekehe Intermediate and refusing to provide properly trained staff to work with him in the Fall of 2004, following the August 2004 TRO hearing;

i.    Forcing Bryan's parents to withdraw him from isolation at Kealakehe Intermediate by allowing him to slide around the floor and play in his own urine while in the care of two adults—a teacher and a skills trainer;

28

j.    Changing Bryan's education placement into an "isolation" environment at Kealakehe Intermediate without the parents' permission or procedures required by law for such isolation;

k.    Refusing to procure available and appropriate services from Mainland services providers timely and only doing so on the order of the United States District Court even though those services were known to Defendants;

l.    Refusing repeatedly to provide services to Bryan, asserting that he was "ill" when he was not, and forcing his parents to take time off work and pick him up from school on the basis of these assertions;

m.    Repeatedly employing unqualified and inexperienced skills trainers in Bryan's program, leading to high turnover, repeated gaps that his parents were forced to cover and regression in Bryan's communication and functional abilities;

n.    Falsely blaming Bryan's parents for problems maintaining the cleanliness of his living area, at a time when Bryan frequently urinated in that area, which Defendants knew was due to the regression in toileting he experienced in 2003-04 as a result of being denied appropriate services by Defendants;

o.    Accusing Bryan's parents of housing Bryan improperly in a locked room during the night, even though Defendants knew Bryan frequently would leave his room and urinate in the house or pose a risk of harm to himself or

property, which was due to the regression he experienced in 2003-04 as a result of being denied appropriate services by Defendants;

p.    Falsely accusing Bryan's parents of asking skills trainers to do laundry, cooking or cleaning tasks, when Defendants knew that they were required by Bryan's program to teach Bryan how to perform these and other functional life-care skills;

q.    Forcing Bryan's parents to quit their jobs, sell their home and move their family back to the Mainland, thereby suffering economic losses; and

qr.    Engaging in numerous other retaliatory, combative, accusatory and humiliating attacks on Bryan's parents and his program in a direct response to Bryan's parents' advocacy for him and his rights under Section 504 of the Rehabilitation Act and its implementing regulations.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Declare that Defendant DOE are liable to the Plaintiffs;

B.    Enter judgment against Defendant and in favor of Plaintiffs for an amount of money that will properly and justly recompense Plaintiffs for the losses experienced and the economic and non-economic damages caused by the Defendant's conduct herein;

C.    Enter a declaratory judgment in favor of Plaintiffs and against Defendant that Defendant has exacerbated Bryan's condition to such an extent as to make institutionalization or an assisted living setting which are the only real alternatives for Plaintiffs;

D.    Award the costs of prosecuting this case to the Plaintiffs, including but not limited to an award of attorneys' fees; and

E.    Grant Plaintiffs such other relief as may be just and proper.

DATED:  Honolulu, Hawaii, February 13, 2008October 2, 2007.

/s/ Carl M. Varady
STANLEY E. LEVIN
CARL M. VARADY
MICHAEL K. LIVINGSTON

Attorneys for Plaintiffs

**CONTINUED JURY DEMAND**

Plaintiffs hereby continue their demand for trial by jury on all issues so triable in this matter.

DATED:  Honolulu, Hawaii, February 13, 2008October 2, 2007.

/s/ Carl M. Varady
CARL M. VARADY
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON

Attorneys for Plaintiffs