I HEREBY CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN THE DEPARTMENT
OF COMMERCE & CONSUMER AFFAIRS.



DEPT. OF COMMERCE
AND CONSUMER AFFAIRS

2004 MAY 11 P 3: 35

HEARINGS OFFICE

## OFFICE OF ADMINISTRATIVE HEARINGS
### DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS
### STATE OF HAWAI'I

| | |
|---|---|
| In the Matter of )<br><br>BRYAN WILES-BOND, by and through his )<br>Parents, DR. and MRS. STAN BOND, )<br><br> )<br>Petitioners, )<br>vs. )<br> )<br>DEPARTMENT OF EDUCATION, )<br>STATE OF HAWAI'I, )<br> )<br>Respondent. )<br>_____ ) | DOE-2004-026<br><br>FINDINGS OF FACT,<br>CONCLUSIONS OF LAW<br>AND DECISION |

### FINDINGS OF FACT,
### CONCLUSIONS OF LAW AND DECISION

I.  **INTRODUCTION**

On February 26, 2004, the Department of Education, State of Hawai'i ("Respondent") received a request for a due process hearing under Hawaii Administrative Rules ("HAR") Title 8, Chapter 56 from Bryan Wiles-Bond, by and through his parents, Dr. and Mrs. Stan Bond (hereafter collectively referred to as "Petitioners"). A pre-hearing conference was held on March 9, 2004 and attended by Shelby Anne Floyd, Esq., attorney for Petitioners, via telephone and Lono P.V. Beamer, Esq., attorney for Respondent.

On April 5, 2004, the hearing was convened by the undersigned Hearings Officer. Dr. Stan Bond and Mrs. Bond, also known as Ann Kimball Wiles and Kim Wiles, were present and were represented by Ms. Floyd. Respondent was represented by Stella M.L. Kam, Esq.



EXHIBIT B

DOE1323

At the close of the hearing, the Hearings Officer requested that the parties file written closing arguments by April 23, 2004. By agreement of the parties, the decision deadline was extended from April 11, 2004 to May 3, 2004. On April 23, 2004, the parties requested an extension to file written closing arguments. On April 24, 2004, the Hearings Officer granted an extension of the briefing deadline from April 23, 2004 to April 28, 2004. On April 29, 2004, the Hearings Officer granted an extension of the decision deadline from May 3, 2004 to May 11, 2004.

Having reviewed and considered the evidence and arguments presented, together with the entire record of this proceeding, the Hearings Officer renders the following findings of fact, conclusions of law and decision.

## II.    FINDINGS OF FACT

1.    Bryan Wiles-Bond is 12 years old (dob 10/28/91) and severely autistic.

2.    Bryan's disability requires that he be placed in a fully self-contained special education classroom for children with autism. Bryan is moderately toilet regulated in school with accidents still occurring. Appropriate toileting skills continue to be a strong need for Bryan at home and in the community.

3.    Bryan does not speak. He communicates his needs through signs, gestures, and verbal word approximations. Bryan communicates mainly through American Sign Language ("ASL"). He uses approximately 20 signs spontaneously and has approximately 100 words in his receptive/expressive vocabulary. A person needs to know ASL and Bryan's current bank of ASL vocabulary words to communicate with him.

4.    Bryan seeks interaction with the key adults in his program. Direct adult supervision is needed for Bryan while on campus due to the severity of his disability. 1:1 adult instructional support ("skills trainer") is necessary for Bryan to progress through the objectives on his Individualized Education Program ("IEP"). Bryan's most recent IEP[1] requires that he have the services of a skills trainer at the following times:

---

[1] Bryan's most recent IEP was developed on January 9, 2004. The previous IEP is dated November 25, 2003. The only IEP Team ("Team") members who could attend that meeting were David Stanley (principal), Dayle Yokoyama (special education teacher), and Dr. and Mrs. Bond. This meeting was to be

2

DOE1324

a)     During the school day, Monday through Friday, for 6.5 hours (from approximately 7:30 a.m. to 2:00 p.m.);

b)     During after school hours, Monday, Tuesday, Thursday, Friday, for 4.5 hours (from approximately 2:00 p.m. to 6:30 p.m.) and Wednesday for 5.5 hours (from approximately 2:00 p.m. to 7:30 p.m.); and

c)     On Saturday and Sunday for 6 hours per day (from approximately 12:30 p.m. to 6:30 p.m.).

A total of 68 hours of skills trainer services per week.

5.     According to the January 9, 2004 IEP, among his other needs, Bryan should (1) increase his signing vocabulary and continue spontaneous use of sign language; (2) learn appropriate toileting skills in the school, home, and community settings; and (3) learn to respect the personal space and the personal property of others (boundaries).

6.     Dr. Dru Copeland, Bryan's Intensive Instructional Services Consultant ("IISC"), testified that her goal for Bryan is that he be as functional in the world as he can possibly be. This includes having some means of communication, including signing, written words and more verbal approximations, and necessary functional skills. Necessary functional skills include social skills, appropriate behaviors in public, and toileting skills. Without necessary functional skills, Bryan's life will be very narrow and confined.

7.     From October 2003 to February 2004, the Department of Education ("DOE") failed to provide Bryan with the required number of skills trainer service hours per week as required in his relevant IEPs.[2]

---

Bryan's annual IEP review. The Team decided that the November 25, 2003 IEP was complete and a new meeting would be held in the near future. The next IEP meeting was held on January 9, 2004.

[2] Bryan's November 18, 2002 IEP is also relevant because it covers the period from November 18, 2002 to November 18, 2003. The November 18, 2002 IEP required Bryan to have 30 hours of skills trainer services during the school day, 23.5 hours of skills trainer services after school, and 12 hours of skills trainer services on the weekend days for a total of 65.5 skills trainer hours per week. From October 2003 through November 2003, the DOE failed to provide Bryan with 65.5 hours of skills trainer services per week as required by his IEP.

DOE1325

8.    The six skills trainers Respondent provided to Bryan in the Fall of 2003 through February 2004 did not have prior experience working with autistic children. Five of the six skills trainers had no prior experience with ASL.

9.    Neither of the two agencies, Child and Family Services ("CFS") and The Institute for Family Enrichment ("TIFFE"), who provided skills trainers to Bryan during that period were able to locate individuals who had experience working with autistic children or who were proficient in ASL.

10.    Since Bryan's skills trainers had no experience in working with autistic children, Dr. Copeland had to train them. During the 18 months she worked with Bryan Dr. Copeland trained 12 skills trainers. Training included instruction in two basic programs[3] used to teach autistic children, managing Bryan's behavior, developing Bryan's social skills, and data collection. Dr. Copeland works with Bryan for 6 hours each week. Training his skills trainers leaves little time for her other related duties such as coordinating matters with Petitioners and working on and expanding Bryan's program.

11.    Petitioners, on their own, placed advertisements in newspapers to locate skills trainers for Bryan. Over time, Petitioners located 8 skills trainers for Bryan who were hired by Respondent.

12.    Naomi Shiraishi, Bryan's speech pathologist, communicates with Bryan through ASL. Ms. Shiraishi testified that Bryan uses ASL in single words or short phrases and needs prompting to use short phrases. The person prompting Bryan must use ASL. Bryan understands language and processes language better if a combination of verbal and visual cues (ASL) are used. Bryan's skills trainers must be proficient in ASL and use Bryan's vocabulary bank of ASL signs.

13.    Mrs. Bond testified that Bryan's teacher does not know ASL and does not use ASL to communicate with Bryan and two other children in his class who use signs as their primary mode of communication. It is frustrating for Bryan to communicate with someone who does not know ASL and he does not progress.

14.    When Bryan did not receive the number of skills trainer hours specified in his IEPs from October 2003 through February 2004, he regressed in a number of areas.

_____

[3]This included the Treatment and Education of Autistic and Related Communications Handicapped Children ("TEACCH") program and Discreet Trial Training ("DTT").

4

DOE1326

15.    One significant area of regression involved toileting skills. Petitioners testified that Bryan does better with toileting when his skills trainer services are in place. With more people around, Bryan can be monitored frequently and will use ASL to express his need to use the toilet. When services were not in place, Petitioners noticed an increase in toileting problems. Bryan started doing things he hadn't done for several months to a year and a half. This included urinating on the sofa, developing a self-stimulating pattern of drinking and urinating, and a preference for urinating outdoors, instead of in the toilet.

16.    A second significant area of regression involved learning to behave independently and respecting the personal space and personal property of others (boundaries). Bryan has no concept of respecting the personal space or the personal property of others. Skills trainers are required to monitor Bryan's behavior and provide consistent feedback to him regarding his actions and behaviors in these areas. For example, each door in Petitioners' house has a lock on it. Without locks Bryan might engage in activities that would jeopardize his safety or cause damage to property. Bryan must be taught what is and is not acceptable behavior. The goal is to have Bryan learn appropriate behavior and eventually remove the locks from all of Petitioners' doors. Petitioners testified that before the gap in service, Bryan could remain in the downstairs room alone for an hour without any boundary problems. At that point, Petitioners were almost ready to remove the lock from the downstairs room. As a result of the gap in service, Bryan must now relearn appropriate boundary behaviors.

17.    Bryan must learn appropriate boundary behaviors in order to function at school and in the community. Petitioners testified to two incidents where Bryan acted inappropriately in the community. In the first incident, he took a man's sunglasses while he was at the beach. In the second incident, Bryan went back to his old habits of randomly pulling items off of shelves, touching people in the grocery store and taking items out of their carts. Bryan had not acted this way for quite a while. Before the gap in service, Bryan could go to the grocery store and act appropriately.

18.    In the Fall of 2003 through February 2004, Respondent attempted to locate skills trainers for Bryan through CFS and TIFFE. Respondent, however, was unable to

5

DOE1327

provide Bryan with the number of skills trainer hours required by his January 9, 2004 IEP until March 2004.

III.    CONCLUSIONS OF LAW

It is not disputed that Bryan is a student with a disability and entitled to special education services pursuant to HAR Title 8, Chapter 56. There is also no dispute that he is entitled to 65.5 hours of skills trainer services per week according to his November 18, 2002 IEP and 68 hours of skills trainer services per week according to his November 25, 2003 and January 9, 2004 IEPs. Petitioners' February 26, 2004 request for impartial hearing raises the following issues with regard to Bryan's services from October 2003 through February 2004:

1)    The DOE's repeated failure to provide the services required by Bryan's IEP;

2)    The DOE's failure to ensure that trained skills trainers are hired and available to provide services for children like Bryan;

3)    The DOE's failure to provide skills trainers who can communicate with Bryan, who communicates with American Sign Language;

4)    The DOE's failure to comply with the Settlement Agreement;[4]

5)    The DOE's failure to provide Bryan's parents with prompt and complete information about complaints which the DOE now states prevented it from providing skills trainers;[5] and

6)    The DOE's failure to promptly address Bryan's needs for additional expertise to provide effective toilet training, after acknowledging the need in October 2003. Hawaii Administrative Regulations [sic] provide that if "the IEP team determines that a student needs a particular device or

---

[4] The settlement agreement contained in Petitioners' Exhibit "P4" does not specifically relate to the issues raised in Petitioners' February 26, 2004 request for hearing. Therefore, the Hearings Officer does not have jurisdiction and will not rule on this matter.

[5] There was insufficient evidence for the Hearings Officer to determine whether the DOE failed to provide Bryan's parents with prompt complete information about complaints which the DOE now states prevented it from providing skills trainers.

DOE1328

service (including an intervention, accommodation, or other program modification) in order for this student to receive a free appropriate public education, the IEP team shall include a statement to that effect in the student's IEP."[6]

Based on the evidence presented at the hearing, the Hearings Officer concludes that Petitioners proved by a preponderance of the evidence that from October 2003 through February 2004 1) The DOE repeatedly failed to provide the skills trainer services required by Bryan's November 18, 2002, November 25, 2003, and January 9, 2004 IEPs; 2) The DOE failed to ensure that trained skills trainers were hired and available to provide services to Bryan; and 3) The DOE failed to provide skills trainers who could communicate with Bryan using ASL.

From October 2003 to November 18, 2003 Bryan's IEP required that he receive 65.5 hours of skills trainer services per week. From November 25, 2003 to January 9, 2005, Bryan's IEPs require that he receive 68 hours of skills trainer services per week. Neither party disputes the number of skills trainer service hours Bryan should have received during October 2003 through February 2004. Nor is it disputed that Bryan failed to receive the number of skills trainer service hours specified by his IEPS. Respondent's failure to provide Bryan with the number of skills trainer service hours specified in his November 18, 2002, November 25, 2003, and January 4, 2004 IEPs is a denial of FAPE.

Respondent agreed to provide skills trainers for Bryan who had experience working with autistic children. Respondent worked with CFS and TIFFE to provide skills trainers to Bryan. CFS provided one skills trainer to Bryan from Fall 2003 to January 2004. TIFFE provided one skills trainer for Bryan during this time and was not able to provide any others. Neither the CFS nor TIFFE skills trainers had experience in working with autistic children. Respondent's failure to hire trained skills trainers to work with Bryan during October 2003 through February 2004 for Bryan is a denial of FAPE.

Respondent failed to provide Bryan with skills trainers who could communicate with him using ASL. Bryan's January 9, 2004 IEP specifically states that skills trainers

---

[6] During the hearing Ms. Floyd stated that Petitioners did not intend to introduce evidence relating to the toilet training issue and requested a decision on the other stated issues. Ms. Floyd did, however, present evidence on the need for a night time toilet monitor for Bryan as part of Petitioners' request for compensatory relief.

DOE1329

are necessary for Bryan to progress through the objectives of his IEP and his 1:1 instructional support need to know and respond to Bryan's ASL vocabulary. During October 2003 through February 2004, Bryan had six skills trainers. Of those six skills trainers, five did not know ASL.[7] Dr. Copeland testified that when she first worked with Bryan he knew 6 signs. Now Bryan knows 140 signs and any person working with him must already know ASL or be able to jump in, learn Bryan's 140 signs and become proficient in ASL. According to Dr. Copeland, the skills trainers know the 140 signs, but don't always use them with Bryan. If Bryan's skills trainers are not proficient in ASL, they cannot work with him on the goals and objectives of his IEP and his learning opportunities will be severely curtailed. Respondent submitted no evidence to the contrary. Respondent's failure to provide Bryan with skills trainers who can communicate with Bryan using ASL during October 2003 through February 2004 is a denial of FAPE.

Having determined that Petitioners have been denied FAPE, the Hearings Officer must now consider whether Bryan is entitled to compensatory education. A court may "grant such relief as [it] determines is appropriate" and "Equitable considerations are relevant in fashioning relief". *School Comm. of Burlington v. Department of Education, 471 U.S. 359 (1985).* The testimony of Dr. Copeland and Petitioners was very compelling. During the five month gap in services Bryan seriously regressed in the areas of toileting skills and respecting the personal space and personal property of others (boundaries). In addition to being part of his IEP, these are basic skills Bryan needs to function in school, at home, and in the community. Except for "Rae", Bryan's skills trainers are not proficient in ASL and do not consistently use his 140 signs to communicate with him. Although trained by Dr. Copeland, Bryan's skills trainers had no prior experience working with autistic children. Respondent provided no evidence to the contrary.

The Hearings Officer finds that Bryan's November 18, 2002, November 25, 2003, and January 9, 2004 IEPs were reasonably calculated to enable Bryan to receive educational benefit. Respondent's failures to provide Bryan with 1) the required number of skills trainer service hours as specified in his IEPs, 2) trained skills trainers capable of

---

[7] "Rae", the only skills trainer proficient in ASL, was hired in January 2004.

DOE1330

providing services to Bryan, and 3) skills trainers who can communicate with Bryan using ASL, resulted in a loss of educational benefit to Bryan. As such, Bryan is entitled to the following relief:

1) Respondent shall hire, train, and have in place the skills trainers needed to consistently provide Bryan with not less than 95% per calendar months of the skills trainer hours to which he is entitled to in his IEP. If Respondent fails to provide Bryan with qualified skills trainers, Petitioners shall be authorized to hire directly at Respondent's expense. Any skills trainer hired by Petitioners shall meet DOE standards and shall be trained in a) DTT and TEACCH methods and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

2) Skills trainers hired by Respondent for Bryan shall meet DOE standards and shall be trained in a) DTT and TEACCH methods and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

3) Bryan's IISC shall be given an extra allotment of hours to train new skills trainers who do not meet the requirements set forth in numbers 1) and 2) above. The number of additional hours shall be determined by Bryan's IEP team; and

4) Respondent will provide additional hours of service from a knowledgeable consultant to design, implement, and monitor a toileting program for Bryan. The number of additional hours shall be determined by Bryan's IEP team.

## IV.    DECISION

For the reasons stated above, the Hearings Officer finds that Petitioners proved by a preponderance of the evidence that from October 2003 through February 2004 1) The DOE repeatedly failed to provide the skills trainer services required by Bryan's

November 18, 2002, November 25, 2003, and January 9, 2004 IEPs; 2) The DOE failed to ensure that trained skills trainers were hired and available to provide services to Bryan; and 3) The DOE failed to provide skills trainers who could communicate with Bryan using ASL. As a result, Bryan was denied FAPE.

Based upon the foregoing, IT IS HEREBY ORDERED:

1.     Respondent shall hire, train, and have in place the skills trainers needed to consistently provide Bryan with not less than 95% per calendar months of the skills trainer hours to which he is entitled to in his IEP. If Respondent fails to provide Bryan with qualified skills trainers, Petitioners shall be authorized to hire directly at Respondent's Expense. Any skills trainer hired by Petitioners shall meet DOE standards and shall be trained in a) DTT and TEACCH methods and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

2.     Skills trainers hired by Respondent for Bryan shall meet DOE standards and shall be trained in a) DTT and TEACCH and b) ASL, to sufficiently implement Bryan's IEP program as determined by Bryan's IISC;

3.     Bryan's IISC shall be given an extra allotment of hours to train new skills trainers who do not meet the requirements set forth in numbers 1) and 2) above. The number of additional hours shall be determined by Bryan's IEP team; and

4.     Respondent will provide additional hours of service from a knowledgeable consultant to design, implement, and monitor a toileting program for Bryan. The number of additional hours shall be determined by Bryan's IEP team.

## RIGHT TO APPEAL

The parties to this case have the right to appeal this decision to a court of competent jurisdiction. The appeal must be made within thirty (30) days after receipt of this decision.

DATED: Honolulu, Hawaii, _____ **May 11, 2004**

HAUNANI H. ALM
Administrative Hearings Officer
Department of Commerce
and Consumer Affairs

DOE1332