**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAII**

| | | |
|---|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor, | ) ) ) ) | CIVIL NO. CV 04-00442 HG/BMK CIVIL NO. CV 05-00247 HG/BMK CONSOLIDATED (Other Civil Action) |
| Plaintiffs, | ) ) ) | MEMORANDUM IN SUPPORT OF MOTION |
| vs. | ) ) | |
| DEPARTMENT OF EDUCATION, State of Hawai`i, | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**TABLE OF CONTENTS**

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Plaintiffs' Section 504 Rehabilitation Act Claim  . . 2

            1.    The Second Amended Complaint Fails to
                  Specify Which Section 504 Regulation(s)
                  Were Violated and Therefore Must Be Dismissed . 4

                  a.    The Mark H. Decision . . . . . . . . . . 5

                  b.    The Ninth Circuit Instructs Mark H.
                        Plaintiffs to Amend Their Complaint to
                        Specify Which § 504 Regulation(s) Were
                        Violated . . . . . . . . . . . . . . . . 6

                  c.    The Second Amended Complaint Fails to
                        Specify Which § 504 Regulation(s) Were
                        Violated and Which Support a Privately
                        Enforceable Cause of Action . . . . . . 7

            2.    The Second Amended Complaint Fails to Plead on
                  Essential Requirement of Any § 504 Claim  . . 13

      B.    Plaintiffs' § 504 Retaliation Claim  . . . . . . . 17

            1.    A Plaintiff Must Exhaust His/Her Administrative
                  Remedies Under the Individuals with
                  Disabilities Act  . . . . . . . . . . . . . . 18

            2.    Plaintiffs' Retaliation Claim in the Second
                  Amended Complaint Must Be Dismissed for
                  Failure to Exhaust Administrative Remedies  . 22

            3.    Exhaustion of Administrative Remedies Would
                  Neither Be Futile Nor Inadequate  . . . . . . 24

IV.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

**CASE**                                                                    **PAGE**

Alexander v. Choate,
469 U.S. 287 (1985)] . . . . . . . . . . . . . . . . 7, 8, 13

Bowen v. American Hosp. Assoc.,
476 U.S. 610, 637 n. 23 (1986) . . . . . . . . . . . . . . 13

Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986) . . . . . . . . . . . . . . . . . 3

Charlie F. v. Board of Education of Skokie School District,
98 F.3d 989 (7th Cir. 1996) . . . . . . . . . . . . 25, 26, 27

Conley v. Gibson,
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . 3

Doe v. Ariz. Dept of Educ.,
111 F.3d 678, 681 (9th Cir. 1997) . . . . . . . . . . . . 24

Epstein v. Washington Energy Co.,
83 F.3d 1136, 1139 (9th Cir. 1996) . . . . . . . . . . . . 3

Glass v. Hillsboro Sch. Dist. 1J,
2000 WL 1877647 (D. OR. 2000) . . . . . . . . . . . . . 19

Hoeft v. Tucson Unified School District,
967 F.2d 1298, 1303 (9th Cir. 1992) . . . . . . . . . 18, 19

In re Stac Electronics Securities Litigation,
89 F.3d 1399, 1403 (9th Cir. 1996) . . . . . . . . . . . . 3

Loral Terracom v. Valley National Bank,
49 F.3d 555, 558 (9th Cir. 1995) . . . . . . . . . . . . . 3

Lovell v. Chandler,
303 F.3d 1039, 1053 (9th Cir. 2002) . . . . . . . . . . . 14

M.P. v. Indep. Sch. Dist. No. 721,
439 F.3d 865, 867 (8th Cir. 2006) . . . . . . . . . . . 14

M.T.V. v. Dekalb County School Dist.,
446 F.3d 1153, 1158 (11th Cir. 2006) . . . . 20, 21, 22, 23, 24

McCarthy v. Madigan,
503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.3d 291 (1992) . . . . 18

McKart v. United States,
395 U.S. 185, 89 S.Ct. 1657, 1662 (1969) . . . . . . . . . 19

N.L. v. Knox County Sch.,
315 F.3d 688, 696 n. 5 (6th Cir. 2003) . . . . . . . . . . 14

O.S.C. Corp. v. Apple Computer, Inc.,
792 F.2d 1464, 1467 (9th Cir. 1986) . . . . . . . . . . . 4

P.C. v. McLaughlin,
913 F.2d 1033, 1041 (2d Cir. 1990) . . . . . . . . 14, 15, 16

Robb v. Bethel Sch. Dist. #403,
308 F.3d 1047, 1051 (9th Cir. 2002) . . . . . . . 19, 20, 25

Rose v. Yeaw,
214 F.3d 206, 210 (1st Cir. 2000) . . . . . . . . . . . 21

Sarah Z. v. Menlo Park City School Dist.,
2007 WL 1574569 (N.D. Cal. 2007) . . . . . . . . . 20, 22, 23

T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
809 F.2d 626, 630 (9th Cir. 1987) . . . . . . . . . . . . 4

Weber v. Cranston School Committee,
212 F.3d 41, 49 (1st Cir. 2000) . . . . . 19, 20, 21, 22, 23

Witte v. Clark County School District,
197 F.3d 1271, 1274 (9th Cir. 1999) . . . . . 18, 24, 25, 27

Traynor v. Turnage,
485 U.S. 535, 548 (1988) . . . . . . . . . . . . . . . 13

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . 2, 3

Rule 54(c) . . . . . . . . . . . . . . . . . . . . . . 26

Rule 56 . . . . . . . . . . . . . . . . . . . . . . . 3, 4

**HAWAII ADMINISTRATIVE RULES**

§ 8-36-16 (1994)  . . . . . . . . . . . . . . . . . . . . .  18

§ 8-56-72 (2000)  . . . . . . . . . . . . . . . . . . . . .  18


**UNITED STATES CODE**

20 U.S.C. §1415  . . . . . . . . . . . . .  18, 19, 20, 21, 22

29 U.S.C. § 794(a)  . . . . . . . . . . . . . . . . .  10, 16


**MISCELLANEOUS**

§ 504 . . . . . . . . . . . .  1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11,
. . . . . . . . . . . . . .  12, 13, 14, 15, 16, 17, 20, 21, 27

34 C.F.R. § 104.33  . . . . . . . . . . . . . . . . .  4, 6, 11

2 Moore's Federal Practice,
§ 12.34 (Matthew Bender 3d ed.)  . . . . . . . . . . . . . . 2

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I.    <u>BACKGROUND</u>

       The current state of the present case is a result of the Ninth Circuit Court of Appeals' January 17, 2008 decision in <u>Mark H. v. Lemahieu</u>, No. 05-16236 (9th Cir. January 17, 2008). In recognizing the drastic changes to the legal framework applicable to this case as a result of <u>Mark H.</u>, this Court directed Plaintiffs to amend their complaint to conform with the <u>Mark H.</u> decision.  <u>See</u> Order Denying Defendant's Request to Dismiss for Failure to Pursue Administrative Remedies, Granting Defendant's Request to Continue the Trial, and Granting Leave to Plaintiffs to Amend their Complaint, filed January 24, 2008 ("January 2008 Order").  In offering guidance to Plaintiffs in amending their complaint, this Court stated:

> In particular, <u>Mark H.</u> dictates that Plaintiffs **must "specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action."**  <u>Mark H.</u>, No. 05-16236, slip op. at 622.  If Plaintiffs wish to allege a violation of § 504 itself, rather than the regulations, Plaintiffs are free to do so in their amended Complaint.  **However, the Court notes that it appears the § 504 implementing regulations would be implicated in such a cause of action.**

<u>See</u> January 2008 Order at 3 (emphases added).  This Court's cautionary language at the end of the above passage was undoubtedly made in awareness of the fact that the Ninth Circuit

in <u>Mark H.</u> did not articulate and/or suggest that a claim based on Section 504 itself was a viable alternative.

On February 13, 2008, Plaintiffs filed the Second Amended Complaint. In the Second Amended Complaint, Plaintiffs fail to "specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action." Instead, Plaintiffs rely exclusively on Section 504 itself.

## II. <u>ARGUMENT</u>

Defendant Department of Education's Amended Motion To Dismiss Or, In The Alternative For Summary Judgment On, Second Amended Complaint Filed On February 13, 2008 ("Subject Motion") should be granted for reasons including, but not limited to, the following.

### A. <u>Plaintiffs' Section 504 Rehabilitation Act Claim</u>

The DOE submits that Plaintiffs' Section 504 Rehabilitation Act claim should be dismissed for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), a complaint may be dismissed for failure to state a claim upon which relief can be granted. <u>See</u> 2 <u>Moore's Federal Practice</u>, § 12.34 (Matthew Bender 3d ed.). A complaint should be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff is unable to prove a set of facts in support of his claim which would entitle

- 2 -

him to relief.  See Loral Terracom v. Valley National Bank, 49

F.3d 555, 558 (9th Cir. 1995) (citing Conley v. Gibson, 355 U.S.

41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  Dismissal under

FRCP Rule 12(b)(6) is also proper if the complaint lacks an

allegation regarding an element necessary to obtain relief.  See

2 Moore's Federal Practice, § 12.34[4][a].  For FRCP Rule

12(b)(6) purposes, all allegations are taken as true and

construed liberally in favor of the plaintiff.  See In re Stac

Electronics Securities Litigation, 89 F.3d 1399, 1403 (9th Cir.

1996).  However, conclusory allegations of law and unwarranted

inferences are insufficient to defeat a motion to dismiss for

failure to state a claim.  See Epstein v. Washington Energy Co.,

83 F.3d 1136, 1139 (9th Cir. 1996).

Alternatively, a party may obtain summary judgment

where the record shows that "there is no genuine issue of

material fact and that the moving party is entitled to summary

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party

moving for summary judgment need not produce actual "evidence"

negating the existence of material factual issues, but may rest

on the lack of evidence of the essential elements of a claim.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a party

moving for summary judgment has met its burden of proving that

there is no genuine issue of material fact, the opposing party

must "come forward with specific facts evidencing" a need for

- 3 -

trial.  Fed. R. Civ. P. 56(e).  A plaintiff must adduce some "significant probative evidence tending to support the Complaint" and cannot discharge his burden by allegations in the pleadings, legal argument, or a hope that he can produce material evidence at the time of trial.  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  Arguments "based on mere speculation, conjecture or fantasy" are not sufficient to overcome a motion for summary judgment.  <u>O.S.C. Corp. v. Apple Computer, Inc.</u>, 792 F.2d 1464, 1467 (9th Cir. 1986).

Under the above standards, dismissal or summary judgment in favor of the DOE is appropriate on Plaintiffs' Section 504 Rehabilitation Act Claim for all of the reasons set forth below.

**1.    The Second Amended Complaint Fails to Specify Which Section 504 Regulation(s) Were Violated and Therefore Must Be Dismissed.**

From the inception of and throughout the present case, Plaintiffs have never challenged the "design" of Bryan Wiles-Bond's educational program.  In fact, Plaintiffs have agreed that Bryan Wiles-Bond's educational program was properly "designed" to meet his needs as adequately as the needs of non-disabled children are met.  As a result, cognizant of their inability to sufficiently state a claim under Section 504's FAPE regulation, 34 C.F.R. § 104.33, the Second Amended Complaint

- 4 -

disingenuously attempts to conveniently circumvent Section 504's FAPE regulation by carefully removing any mention of FAPE, Section 504 or otherwise.  <u>Compare</u> First Amended Complaint, filed November 20, 2007 with Second Amended Complaint.  This attempt, however, is in direct contravention with the applicable law in the present case as set forth by the Ninth Circuit in <u>Mark H.</u>.  Further, it completely disregards the fact that Section 504's FAPE regulation is invariably implicated in the present case.  As a result, the Second Amended Complaint must be dismissed.

### a.    **The Mark H. Decision**

Clearly, the applicable law in the present case is set forth in the <u>Mark H.</u> decision.  In <u>Mark H.</u>, the Ninth Circuit, <u>inter</u> <u>alia</u>, made it explicitly clear that an IDEA FAPE contains significant differences from a Section 504 FAPE.  As the Ninth Circuit articulated:

> FAPE under the IDEA and FAPE as defined in the § 504 regulations are similar but not identical.  When it promulgated its § 504 regulations, the U.S. DOE described them as "*generally* conform[ing] to the standards established for the education of handicapped persons in . . . the [IDEA].  **Although overlapping in some respects, the two requirements contain significant differences.**

Mark H., at 610[1] (citation omitted) (first emphasis in original, second emphasis added).  Notably,

> unlike FAPE under the IDEA, FAPE under § 504 is defined to require a **comparison between the manner in which the needs of disabled and non-disabled children are met**, and focuses on the **"design"** of a child's educational program.

Id. at 610 [2] (emphases added).  Indeed, in support of its proffered distinction between a Section 504 FAPE and an IDEA FAPE, the Ninth Circuit cited Section 504's FAPE regulation, 34 C.F.R. § 104.33, which states:

> [T]he provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are **designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met** and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

34 C.F.R. § 104.33(b)(1) (emphasis added).

Interpreting 34 C.F.R. § 104.33, the Ninth Circuit in Mark H. aptly observed:

> The plain language of [§104.33] is not violated **by a mere difference in education outcomes of "effects."**  Rather, it is **violated only if a state fails to "design" educational plans so as to meet the needs of both disabled and nondisabled children comparably.**  To "design" something to produce a certain, equal outcome involves some measure of intentionality.  **And an obligation to "design" something in a certain way is not**

- 6 -

> **violated simply because the actual impact of**
> **the design turns out otherwise than intended.**

Id. at 616 (emphases added).

Therefore, it is clear that "the obligation created [under Section 504 FAPE] is a **comparative one**." Id. at 617 (emphasis added). Further, in determining whether a school district has met its comparative obligation, courts must only look at the "design" of the child's educational program. The "effects" or implementation of a child's educational program are irrelevant to the issue of whether a Section 504 FAPE was in fact provided.[1] As the Ninth Circuit stated, "[b]y requiring **only** appropriate 'design' of programs, § 104.33 does not fall into that category of 'disparate impacts' about which the Court was most concerned in [Alexander v. Choate, 469 U.S. 287 (1985)]." Id. at 616 (emphasis added). Indeed, in Choate, "the Court repeatedly distinguished disparate impact discrimination from other forms of discrimination by noting that disparate impact

---

[1]    This is not to say, however, that the DOE has a free reign simply by "designing" a proper educational program. Plaintiffs could have potentially raised other claims, outside of Section 504, that may have provided them a valid cause of action based on the DOE's alleged failure to properly implement Bryan Wiles-Bond's Individualized Educational Program ("IEP"). By limiting their claim to Section 504, however, Plaintiffs voluntarily constrained themselves to this issue of "design." Further, and as a result of their failure to plead such claims in the Second Amended Complaint, Plaintiffs have waived any of these other claims that may have potentially provided them with a cause of action for the DOE's alleged failure to implement Bryan Wiles-Bond's educational program.

- 7 -

discrimination arises from actions that discriminate only in 'effect' rather than 'design.'" Id. (citing Choate, 469 U.S. at 292, 297). As the Ninth Circuit noted, "the Court was concerned that a prohibition on any and all disparate impacts would lead to liability for effects brought about wholly inadvertently, indeed, even for effects that agencies had acted to avoid." Mark H., at 616 (citing Choate, 469 U.S. at 298).

> **b.    The Ninth Circuit Instructs Mark H. Plaintiffs to Amend Their Complaint to Specify Which § 504 Regulation(s) Were violated.**

The Mark H. decision drastically changed the legal framework applicable to situations where a disabled child challenges his educational program under Section 504. Undoubtedly cognizant of the drastic implications of its decision, the Ninth Circuit gave the Mark H. plaintiffs "an opportunity to amend its complaint to specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action." Mark H., at 622. Notably, and despite its clear awareness that Section 504 itself provides for an implied private right of action, the Ninth Circuit failed to state that this "opportunity" could be used by

the

- 8 -

plaintiffs to merely clarify its complaint to assert a claim based on § 504 alone.[2]

As a result, two things were explicitly clear at the end of the Ninth Circuit's decision in Mark H.: (1) the present state of plaintiffs' complaint failed to state a privately enforceable cause of action[3]; and (2) in order to state a viable cause of action, plaintiffs must "specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action."

           **c.    The Second Amended Complaint Fails to Specify Which § 504 Regulation(s) Were Violated and Which Support a Privately Enforceable Cause of Action.**

---

[2]    In Plaintiffs' Proposal for a Discovery Plan, filed February 20, 2008 ("Plaintiffs' Discovery Plan"), Plaintiffs state that a claim based on Section 504 alone was also "suggested" by the Ninth Circuit in Mark H.. See Plaintiffs' Discovery Plan at 3. This is clearly incorrect. In allowing the Mark H. plaintiffs to amend their complaint, the Ninth Circuit limited plaintiffs to specifying which Section 504 regulations they believe were violated and which support a privately enforceable cause of action. In the text of the opinion, the Ninth Circuit did mention that Section 504 itself provides an implied private right of action. This notation, however, was made in accordance with the Ninth Circuit's discussion on whether there is an implied right of action to enforce Section 504's regulations. See Mark H., at 614. Indeed, in the paragraph at the end of the opinion advising the Mark H. plaintiffs to amend their complaint, there is absolutely no mention of Section 504's implied private right of action, as an avenue for amending or otherwise.

[3]    As the Ninth Circuit stated, "[w]e do not here decide whether the H. family has alleged a privately enforceable cause of action for damages against the state." Mark H., at 622.

- 9 -

The present case is identical to the <u>Mark H.</u> case. Indeed, even this Court recognized such as it followed the Ninth Circuit and directed Plaintiffs to amend their complaint to conform to the <u>Mark H.</u> decision. Nonetheless, in direct contravention of the Ninth Circuit's decision in <u>Mark H.</u> and in complete disregard of this Court's cautionary words in its January 2008 Order, Plaintiffs, in the Second Amended Complaint, fail to specify any Section 504 regulations which they believe were violated. Instead, Plaintiffs' rely solely on Section 504 itself, an option that was not articulated in or even suggested by the Ninth Circuit in <u>Mark H.</u>, and an option that this Court clearly cautioned Plaintiffs from utilizing. Regardless, as this Court alluded to in its January 2008 Order, Section 504's implementing regulations are invariably implicated in the present case. As a result, Plaintiffs failure to specify and sufficiently plead Section 504's FAPE regulation in the Second Amended Complaint requires that the Second Amended Complaint be dismissed.

Section 504 provides that Bryan Wiles-Bond shall not, "solely by reason of [] his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any **program or activity** receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). Clearly, the "program or activity" in question in the present

case is Bryan Wiles-Bonds' FAPE (and in light of <u>Mark H.</u>, his Section 504 FAPE).  Indeed, as pertinent to disabled children, a federally funded public elementary or secondary education "program or activity" "shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap."  34 C.F.R. § 104.33.  In essence, the Plaintiffs' Section 504 claim can be and should be read as follows: Bryan Wiles-Bond was "solely by reason of [] his disability, [] excluded from . . . participation in [a Section 504 FAPE], . . . denied the benefits of [a Section 504 FAPE], or . . . subjected to discrimination under [a Section 504 FAPE]."  As a result, it is clear that Section 504's FAPE regulation is unavoidably implicated in the present case.

    In the present case, Plaintiffs have had sufficient time and notice to amend the Second Amended Complaint to conform with the Ninth Circuit's clear and explicit instructions set forth in <u>Mark H.</u>.  During their allotted time, Plaintiffs could have easily specified that their claim is being brought pursuant to Section 504's FAPE regulation, and set forth allegations supporting the contention that the DOE failed to meet its comparative obligation by failing to "design" Bryan's educational program to meet his needs as adequately as the needs of non-disabled children are met.  Such a complaint would have

- 11 -

easily sufficed under the applicable law set forth in <u>Mark H.</u>.

Plaintiffs, however, have refused to comply with the Ninth

Circuit's instructions.

Nonetheless, despite Plaintiffs' disingenuous attempt

to circumvent Section 504's implementing regulations, these

regulations, specifically Section 504's FAPE regulation, are

invariably implicated in the present case.  As a result,

Plaintiffs failure to specify as directed by the Ninth Circuit

clearly warrants and mandates a dismissal of the Second Amended

Complaint for failure to state a claim upon which relief can be

granted.[4]

---

[4]  Alternatively, even if this Court finds it necessary to
liberally construe the Second Amended Complaint to include a
marginal reference to Section 504's FAPE regulation(s)(which the
DOE strongly urges this Court not to do, as Plaintiffs have had
adequate notice and time to conform to the explicit instructions
articulated by the Ninth Circuit), Plaintiffs fail to allege that
there was anything wrong with the "design" of Bryan's educational
program or that the DOE failed to meet its "comparative"
obligation.  Indeed, the Second Amended Complaint fails to assert
any allegations that calls into question the sufficiency of the
"design" of Bryan's educational plan.  In fact, if anything, the
Second Amended Complaint proves that Bryan Wiles-Bond's
educational program was in fact properly "designed" to meet his
needs as adequately as the needs of non-disabled children are
met.  <u>See</u> Second Amended Complaint at pp. 8-9 (recognizing that
the DOE and Plaintiffs mutually entered into a Settlement
Agreement setting forth the services needed in Bryan Wiles-Bond's
educational program).  Further, and as more fully set forth
below, the Second Amended Complaint fails to assert any
allegations that Bryan Wiles-Bond's needs are not being met as
adequately as the needs of non-disabled individuals are being
met.  Rather, the Second Amended Complaint merely provides
conclusory allegations that Bryan Wiles-Bonds' needs are not
being met.  Clearly, this is not sufficient to state a claim
under Section 504's implementing regulations.

2.    **The Second Amended Complaint Fails to Plead an Essential Requirement of Any § 504 Claim.**

Even assuming, _arguendo_, Plaintiffs may sufficiently sustain a claim under Section 504 itself, Plaintiffs' fail to plead an essential requirement of any Section 504 claim.  As more fully set forth below, Section 504 requires Plaintiffs to show that Bryan Wiles-Bond was not provided "evenhanded treatment" in relation to non-disabled individuals.  In the Second Amended Complaint, Plaintiffs merely alleges that the DOE denied Bryan Wiles-Bond "meaningful access" by failing to provide him services that adequately met his needs.  The Second Amended Complaint, however, is silent as to any allegation that the services provided to Bryan Wiles-Bond were provided to non-disabled individuals.  In fact, the Second Amended Complaint is void of any mention of non-disabled individuals.  Since the Second Amended Complaint fails to allege an essential element of any Section 504 claim, it fails to state a claim upon which relief can be granted and must be dismissed.

"[T]he central purpose of § 504, . . . is to assure that **handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals.**"  Traynor v. Turnage, 485 U.S. 535, 548 (1988)(quoting Alexander v. Choate, 469 U.S. 287, 304 (1985))(emphasis added); see also Bowen v. American Hosp. Assoc., 476 U.S. 610, 637 n. 23 (1986)(recognizing that § 504 would only be violated where benefits afforded to non-handicapped

individuals were not afforded to handicapped individuals); P.C.
v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990)(noting that
this is "clearly established law). Indeed, even the Ninth
Circuit has subtly recognized this need for a comparison between
disabled and non-disabled individuals. See Lovell v. Chandler,
303 F.3d 1039, 1053 (9th Cir. 2002)(recognizing that plaintiffs'
contention that they were excluded from participation in state's
health insurance program must be "viewed in relation to similarly
situated nondisabled individuals"). As a result, any Section 504
claim requires a comparison between disabled and non-disabled
individuals. Without a comparative analysis, there would be no
means to determine whether the disabled individual was, in fact,
not receiving "even-handed" treatment as required under Section
504.

Indeed, this central purpose of "even-handed" treatment
coincides with the fact that Section 504 is often considered an
anti-discrimination statute. See M.P. v. Indep. Sch. Dist. No.
721, 439 F.3d 865, 867 (8th Cir. 2006)("Section 504 is a
proscriptive, anti-discrimination statute"); N.L. v. Knox County
Sch., 315 F.3d 688, 696 n. 5 (6th Cir. 2003)("[S]ection 504 is a
. . . anti-discrimination statute"); P.C. v. McLaughlin, 913 F.2d
1033, 1041 (2d Cir. 1990)("Section 504 is governed by the rules
governing the anti-discrimination law"). As a result, by its
very nature as an anti-discrimination statute, Section 504

requires a comparison between the benefits being provided to disabled individuals versus the benefits being provided to non-disabled individuals. Clearly, Plaintiffs' failure to allege that Bryan Wiles-Bond was treated differently than that of non-disabled individuals is fatal to the Second Amended Complaint. As a result, the Second Amended Complaint must be dismissed.

The DOE is well aware of the language in Mark H. clarifying that Section 504 prohibits "not only 'discrimination' against the disabled, but also 'exclu[sion] from . . . participation in' and 'deni[al] [of] the benefits of' state programs solely by reason of a disability." Mark H., at 617. This language, however, does not relieve Plaintiffs of the burden to prove that Bryan Wiles-Bond did not receive "even-handed" treatment. Regardless of whether Plaintiffs base their claim on the "exclusion from," "denial of benefits of," and/or "discrimination" provisions of Section 504, Plaintiffs must still prove that Bryan Wiles-Bond did not receive "evenhanded" treatment in relation to non-disabled individuals. Indeed, the Second Circuit Court of Appeals' decision in P.C. v. McLaughlin, 913 F.2d 1033 (2d Cir. 1990) is instructive.

In McLaughlin, plaintiff brought a claim under Section 504 contending that "he was denied meaningful access to the benefits provided to other handicapped individuals because the

- 15 -

services provided did not adequately meet his needs."
McLaughlin, at 1041.  As applicable to plaintiff's claim, the
Second Circuit stated that Section 504 provides that "'[n]o
otherwise qualified individual with handicaps . . . shall, solely
by reason of her or his handicap, . . . **be denied the benefits of**
. . . any program or activity receiving Federal financial
assistance.'"  Id. (quoting 29 U.S.C. § 794)(emphasis added).  The
Second Circuit held, recognizing that the central purpose of
Section 504 is to assure "evenhanded treatment" of
non-handicapped individuals, that Section 504 "mandated only that
services provided non-handicapped individuals not be denied [to
plaintiff] because he is handicapped."  Id.  Notably, the Second
Circuit, in ultimately instructing the district court to grant
the defendant's motion for summary judgment as to plaintiff's
Section 504 claim, never "address[ed] the adequacy of the
services" plaintiff was provided.  Id.

        In the Second Amended Complaint, Plaintiffs similarly
base their claim on the standard of "meaningful access."  See
e.g., Second Amended Complaint at ¶ 4 ("the [DOE], acting with
deliberate indifference, failed to provide or otherwise
prohibited Bryan from having **meaningful access** to public
education in Hawaii")(emphasis added).  Likewise, Plaintiffs
argue that Bryan Wiles-Bond was denied meaningful access because
the DOE failed to provide services that adequately met his needs.

- 16 -

See e.g., Second Amended Complaint at ¶ 26 at p. 9 ("All of the aforementioned services were necessary to provide Bryan meaningful access to public education"). Plaintiffs, however, fail to allege that the services that the DOE allegedly failed to provide Bryan Wiles-Bond were provided to non-disabled individuals.

As it stands, the Second Amended Complaint fails to provide any allegations setting forth the types of services provided to non-disabled individuals. Further, the Second Amended Complaint fails to provide any allegations that Bryan Wiles-Bond was not provided equal "meaningful access" to public education in relation to non-disabled individuals. Rather, the Second Amended Complaint simply alleges that Bryan Wiles-Bond, because he was not provided services that adequately met his needs, was denied "meaningful access" to public education. Indeed, there are no allegations to dispute as to whether Bryan Wiles-Bond received "evenhanded" treatment. As a result, similar to McLaughlin, the Second Amended Complaint must be dismissed.

B.    **Plaintiffs' Section 504 Retaliation Claim**

For the following reasons and arguments, the DOE respectfully submits that Plaintiffs' § 504 retaliation claim should be dismissed for failure to exhaust administrative remedies.

1.    **A Plaintiff Must Exhaust His/her Administrative Remedies Under the Individuals With Disabilities Act.**

The Individuals with Disabilities Act ("IDEA"), is a "comprehensive educational scheme conferring on disabled students a substantive right to . . . free appropriate public education." Witte v. Clark County School District, 197 F.3d 1271, 1274 (9th Cir. 1999). If someone believes that his or her child is not receiving FAPE, they are required under the IDEA to exhaust the available administrative remedies before filing a law suit in court. See Hoeft v. Tucson Unified School District, 967 F.2d 1298, 1303 (9th Cir. 1992); 20 U.S.C. §1415(l). This means that the Plaintiffs were required to request and complete the impartial due process hearing process set forth in 20 U.S.C. § 1415(f) before filing a law suit in court for retaliation in violation of Section 504. See also Hawaii Administrative Rules ("HAR") § 8-36-16 (1994); HAR § 8-56-72 (2000).

The exhaustion requirement "embodies the notion that educational agencies, not the courts, ought to have primary responsibility for the educational programs that Congress has charged them to administer." Hoeft, 967 F.3d at 1303 (quoting McCarthy v. Madigan, 503 U.S. 140, 112 S.Ct. 1081, 1086, 117 L.Ed.3d 291 (1992)). This requirement also ensures that federal courts, "'generalists with no experience in the educational needs of [disabled] students,'" are given the benefit of expert fact-

finding by a state agency devoted to that very purpose. <u>Robb v.</u>
<u>Bethel Sch. Dist. #403</u>, 308 F.3d 1047, 1051 (9th Cir. 2002).

>       As explained by the Ninth Circuit:

>       [it] allows for the exercise of discretion and
>       educational expertise by state and local agencies,
>       affords full exploration of technical educational
>       issues, furthers development of a complete factual
>       record, and promotes judicial efficiency by giving
>       these agencies the first opportunity to correct
>       shortcomings in their educational programs for disabled
>       children.

<u>Hoeft</u>, 967 F.2d at 1303 (<u>quoting</u> <u>McKart v. United States</u>, 395
U.S. 185, 193-195, 89 S.Ct. 1657, 1662-63 (1969)).

>       The exhaustion requirement must be fulfilled whenever a
plaintiff is "seeking relief that is <u>also</u> available under IDEA."
<u>See</u> 20 U.S.C. §1415(l).  This is true even when a plaintiff
requests relief under a different statute.  <u>Glass v. Hillsboro</u>
<u>Sch. Dist. 1J</u>, 2000 WL 1877647 (D. OR. 2000)(Court ruled that
plaintiff must exhaust administrative process when they "seek
relief available under IDEA even if the suit is brought pursuant
to a different statute.")(<u>quoting</u> <u>Weber v. Cranston School</u>
<u>Committee</u>, 212 F.3d 41, 49 (1st Cir. 2000)).

>       "Available" relief is a broad term that means "<u>relief</u>
<u>suitable to remedy the wrong done the plaintiff</u>, which may not
always be relief in the precise form the plaintiff prefers.[5]"

---

[5]     Although money damages are not available under the
IDEA, a plaintiff cannot avoid the IDEA exhaustion requirement by
limiting his/her damages to money damages.  <u>Robb</u>, 308 F.3d at
1049.

Robb, 308 F.3d at 1049 (emphasis added).  In other words, "when a plaintiff has alleged injuries that could have been redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required."  Id. (emphasis added).  This is especially true when "a plaintiff's injuries are part and parcel of the educational process." Id. at fn.4.  Moreover, "[w]here the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give the educational agencies an initial opportunity to ascertain and alleviate the alleged problem."  Id.  Thus, whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings.  See M.T.V. v. Dekalb County School Dist., 446 F.3d 1153, 1158 (11th Cir. 2006).

In this case, Plaintiffs' retaliation claims are subject to the IDEA's exhaustion requirement.  See M.T.V., 446 F.3d at 1158.  See also Weber v. Cranston School Committee, 212 F.3d 41, 50-52 (1st Cir. 2002); Sarah Z. v. Menlo Park City School Dist., 2007 WL 1574569 (N.D. Cal. 2007).  The underlying rationale is that the complaint provision of the IDEA affords the "opportunity to present complaints with respect to *any* matter *relating to* the identification, evaluation, or educational placement of the child or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6) (emphasis added).

- 20 -

In <u>M.T.V. v. Dekalb School Dist.</u>, the plaintiff parents alleged that the School District retaliated against them for advocating for their son's legal rights to receive an appropriate education. <u>Id</u>. at 1158.  Among their injuries, plaintiff parents alleged the School District harassed them at IEP meetings, wrote intimidating letters in response to their educational demands, and subjected their son to needless and intrusive testing.  <u>Id</u>. In considering plaintiff parents' retaliation claims within the framework of 20 U.S.C. § 1415(b)(6), the Court found that "[t]heir retaliation claims clearly relate to <u>M.T.V.</u>'s evaluation and education, and therefore, are subject to the exhaustion requirement." <u>Id</u>. at 1158-59. <u>See also</u> <u>Weber</u>, 212 F.3d at 51 (mother's retaliation claim literally related to identification, evaluation, or educational placement of her child); <u>Rose v. Yeaw</u>, 214 F.3d 206, 210 (1st Cir. 2000)(holding all plaintiffs' claims, including claim that school retaliated in response to parents efforts to enforce educational rights were subject to IDEA's exhaustion requirement because they relate unmistakably to the evaluation and educational placement of the student).

In this case, the Plaintiff Parents allege in their Second Amended Complaint that the DOE retaliated against them in violation of Section 504 in response to their advocacy for their son's special education and related services.  <u>See</u> Second Amended Complaint at ¶ 45.  The Plaintiff Parents allege that the DOE

- 21 -

retaliated against them by, among other things, refusing to comply with the due process hearing decisions and the IEPs; surreptitiously obtaining information about the parents that could be used against them by the DOE to withdraw special education services; using confidential information as grounds to resist/oppose the hiring a skills trainer named Christy Edwards; changing Bryan's educational placement into an "isolation" environment at Kealakehe Intermediate School; refusing to procure services from Mainland service providers; employing unqualified skills trainers for Bryan's educational program; and engaging in other retaliatory attacks on them and Bryan's educational program in direct response to their advocacy for him and his rights under Section 504. Id.

Like the retaliation claims asserted by the parents in M.T.V., Weber and Sarah Z., the Plaintiff Parents' retaliation claims in this case clearly relate to Bryan Wiles-Bond's evaluation and educational placement within the meaning of 20 U.S.C. § 1415(b)(6), and, therefore, are subject to the IDEA exhaustion requirement.

      **2.    Plaintiffs' Retaliation Claim In The Second Amended Complaint Must Be Dismissed for Failure To Exhaust Administrative Remedies**

Plaintiffs' retaliation claim in the Second Amended Complaint should be dismissed because Plaintiffs have failed to exhaust their administrative remedies in this case. It is clear

that Plaintiffs were required to present their retaliation claim

to the hearings officer at the administrative level before filing

the instant lawsuit.  See M.T.V., 446 F.3d at 1158; Weber, 212

F.3d at 50-52; Sarah Z., 2007 WL 1574569 (N.D. Cal. 2007).

Plaintiffs, however, failed to do so.[6]  Indeed, Plaintiffs, in

the Second Amended Complaint, fail to even allege that their

retaliation claim was presented at the administrative level.  See

generally Second Amended Complaint.  Since Plaintiffs failed to

address and/or present their retaliation claims at the IDEA

administrative level, Plaintiffs have failed to exhaust their

administrative remedies under the IDEA and therefore, their

retaliation claim must be dismissed.

_____

[6]     The administrative proceedings that occurred in this
case are well documented.  See Order Denying Defendants' Motion
For Summary Judgment, Construed As A Motion For Judgment On The
Pleadings and Denying Plaintiffs' Motion For Partial Summary
Judgment and Denying In Part And Granting In Part Plaintiffs'
Motion To Enforce The Doctrine Of Issue Preclusion Regarding All
Administrative Hearing Decisions And The Settlement Agreement and
Denying Plaintiffs' Motion To Amend And/Or Supplement The Record,
filed December 19, 2006 ("December 2006 Order").  Due process
hearings were held on April 5, 2004 and July 6, 2004.  In early
June 2004, Plaintiffs also submitted a request for a due process
hearing (which ultimately resulted in a Stipulation of Facts
dated July 5, 2004).  These hearings and this hearing request led
to respective Findings of Fact, Conclusions of Law, and
Decisions.  Throughout this administrative process, however, it
is clear that Plaintiffs have never presented and/or addressed
their retaliation claim.  Rather, during the administrative
process, Plaintiffs' presented claims were limited to what types
of services were not being provided, and what types of services
needed to be provided.

### 3.  Exhaustion of Administrative Remedies Would Neither Be Futile Nor Inadequate

It is anticipated that Plaintiffs will argue that they are excused from the IDEA's exhaustion requirement based on the doctrines of futility and inadequacy of relief.  See Doe v. Ariz. Dept of Educ., 111 F.3d 678, 681 (9th Cir. 1997).  More specifically, Plaintiffs are expected to argue that:

1.  They exhausted their administrative remedies by applying for and obtaining favorable decisions from the hearings officer and therefore re-application would be futile; and

2.  That the hearings officer lacks authority to provide Plaintiffs with an adequate remedy.

Plaintiffs' anticipated argument regarding futility would fail because the fact that they applied for and obtained several decisions in their favor is insufficient to establish exhaustion.  See M.T.V., 446 F.3d at 1159.  To pursue claims for retaliation, the plain language of the IDEA requires Plaintiffs to file a separate administrative complaint to raise that specific issue and exhaust all administrative remedies regarding that complaint before filing a judicial action.  Id.  In this case, Plaintiffs simply failed to raise the issue of retaliation at the state administrative level.  See, generally, Second Amended Complaint.

With respect to inadequate relief, Plaintiffs will argue that they only seek monetary damages in the present case, and therefore, under Witte, the exhaustion of administrative

- 24 -

remedies is not required.  This argument, however, fails for several reasons.  First, it is undisputed that Plaintiffs only seek monetary damages under Section 504.  See December 2006 Order at 14.  Nevertheless, in Robb, a case decided after Witte, the Ninth Circuit held that "a plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief to money damages."  Id., 308 F.3d at 1049.  As the Ninth Circuit noted, this holding was in line with previous holdings of the First, Sixth, Seventh, Tenth, and Eleventh Circuit Courts.  Id. Further expounding on its holding, the Ninth Circuit Court stated:

> The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to **any degree** by the IDEA's administrative procedures and remedies.  If so, exhaustion of those remedies is required.

Id. at 1050 (emphasis added).

In Robb, the Ninth Circuit relied on the Seventh Circuit Court of Appeals decision in Charlie F. v. Board of Education of Skokie School District, 98 F.3d 989 (7th Cir. 1996). In Charlie F., the Seventh Circuit stated that "what 'relief' is available does not necessarily depend on what the aggrieved party wants."  Expounding on this statement, the Seventh Circuit aptly observed:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even

> if the party has not demanded such relief in
> the party's pleadings." The nature of the
> claim and the governing law determine the
> relief no matter what the plaintiff demands.

Id. at 991-992 (quoting Fed. R. Civ. P. 54(c)).

In Charlie F., the Seventh Circuit ultimately held that
despite the fact that plaintiff's sole claim was for monetary
damages, the plaintiff was still required to exhaust his
administrative remedies prior to filing a civil action. In
holding such, the Seventh Circuit clearly found the School
District's argument to be persuasive:

> Why do Charlie's parents want money? Presumably
> at least in part to pay for services (such as
> counseling) that will assist his recovery of self-
> esteem and promote his progress in school.
> Damages could be measured by the cost of these
> services in kind under the IDEA. If it turns out
> that the school is *not* obliged to provide such
> services, that may be because Charlie's parents
> have exaggerated what happened [ ], the
> consequences of those events, or both. **In other
> words, the educational professionals and hearing
> officers who evaluate claims under the IDEA may
> conclude (a) that adequate remedial services can
> be provided, or (b) that Charlie does not today
> require services. The first outcome would show
> that relief is available under the IDEA; the
> second would provide information relevant to
> Charlie's claims under statutes other than the
> IDEA. In either event, pursuit of the
> administrative process is justified.** Charlie
> would not get the kind of relief the complaint
> demands, but this is not what § 1415(f) says. We
> read "relief available" to mean relief for events,
> condition, or consequences of which the person
> complains, not necessarily relief of the kind the
> person prefers.

Id. at 992 (emphasis added).

- 26 -

Thus, the mere fact that Plaintiffs only seek money damages is not conclusive in determining whether or not they must exhaust all administrative remedies available to them prior to filing a civil action. Like Charlie F., Plaintiffs had to first present the issue of retaliation in violation of Section 504 to educational professionals and hearing officers under the procedures set forth in the IDEA.[7]

As stated above, the exceptions to the exhaustion doctrine do not apply to Plaintiffs and therefore, Plaintiffs' were required to exhaust their administrative remedies before filing the Second Amended Complaint with the retaliation claim. Their failure to do so requires dismissal.

------------------------

[7] In Witte, the Ninth Circuit declined to follow Charlie F.. In declining to follow Charlie F., the Ninth Circuit held that Charlie F. was readily distinguishable from Witte because (1) in Charlie F., there was no indication that the parties had mutually agreed on all educational issues; (2) in Witte, the plaintiff only sought retrospective damages (plaintiff expressly eschewed any claim for monetary damages to provide, or to be measured by any cost of, remedial services); and (3) in Witte, the plaintiff's allegations centered around physical abuse and injury, and thus the remedies available under the IDEA would not appear to be well suited to address these types of injuries. See Witte, 197 F.3d at 1275-1276. In the present case, the parties have not come to any mutual agreement. Further, Plaintiffs' claim for money damages is not limited to damages that are retrospective. Lastly, the design of an educational program, and whether or not it compares to that provided to non-disabled individuals, are clearly issues that could be, if found inadequate, addressed under the "remedies available under the IDEA." As a result, Witte's dismissal of the Charlie F. decision is inapposite as applicable to the present case.

- 27 -

III. <u>CONCLUSION</u>

        Based on the foregoing authorities and arguments, the DOE respectfully submits that the Subject Motion be granted in its entirety.

        DATED:  Honolulu, Hawaii, March 12, 2008.

                                    /s/ Gregg M. Ushiroda
                                  JOHN T. KOMEIJI
                                  GREGG M. USHIRODA
                                  LEIGHTON M. HARA
                                  ROSS T. SHINYAMA

                                  GARY K.H. KAM
                                  GEORGE S.S. HOM
                                  HOLLY T. SHIKADA

                                  Attorneys for Defendant
                                  DEPARTMENT OF EDUCATION