CARL M. VARADY
ASB Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawai'i 96813
Telephone 808 523-8447
Facsimile 808 523-8448

OF COUNSEL:
DAVIS LEVIN LIVINGSTON
STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON   4161-0
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor<br><br>          Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i<br><br>          Defendants. | CV04-00442 HG/BMK<br>CV05-00247 HG/BMK<br>CONSOLIDATED<br>(Other Civil Action)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT DEPARTMENT OF EDUCATION'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON, SECOND AMENDED COMPLAINT; CERTIFICATE OF SERVICE |

## PLAINTIFFS' OPPOSITION TO DEFENDANT DEPARTMENT OF EDUCATION'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON, SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I.  FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.  STANDARDS OF DECISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

      A.    Motion to Dismiss Under Rule 12. . . . . . . . . . . . . . . . . . . . . -5-

      B.    Summary Judgment Under Rule 56 . . . . . . . . . . . . . . . . . . . -7-

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

      A.    While *Mark H.* Offers Plaintiffs the Option of Invoking Section 504's FAPE Regulations, the Ninth Circuit did not Mandate Plaintiffs Do So. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

      B.    Plaintiffs' Second Amended Complaint Contains Ample Allegations Which, If Proved, Will Satisfy the Requirements of Section 504
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

      C.    Defendant Misrepresents the Plaintiffs' Claims . . . . . . . . . . . . . . -13-

      D.    The Retaliation Claims Already Have Been Approved by the Court and Meet the Requirements of Notice Pleading . . . . . . . . . . . . . . -14-

            1.    The Supreme Court Recognizes Retaliation Claims Implied in Civil Rights Statutes.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

            2.    The Ninth Circuit Recognizes Retaliation As A Cause of Action Implied in Section 504 . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

            3.    Section 504's Anti-Retaliation Regulations Do Not Impose Affirmative Obligations That Go Beyond the Requirements of § 504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

# TABLE OF AUTHORITIES

<u>Cases</u>

*Alex G. v. Bd. of Trs.*, 387 F. Supp. 2d 1119 (D. Cal. 2005) . . . . . . . . . . . . . . .   -18-

*Alexander v. Choate*, 469 U.S. 287 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -3-

*Alexander v. Sandoval,* 532 U.S. 275 (2001) . . . . . . . . . . . . . . . . . . . . . . . -1-, -15-

*Anderson v. Clow*, 89 F.3d 1399 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . .   -6-

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . .   -8-, -9-

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . .   -6-

*Bator v. Hawaii*, 39 F.3d 1021 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . .   -9-

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . -7--9-

*Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 83 (D.D.C. 2003) . . .   -26-

*Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-, -6-

*De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . .   -6-

*First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968) . . . .   -8-

*Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860 (D. Cal. 2007)(same) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -18-

*Greater L.A. Council on Deafness v. Zolin, Inc.* 812 F.2d 1103 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-,-17-

*Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333 (11th Cir. 2002) . . . . . .   -15-

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (U.S. 2005) . . . . . . . . . . .   -14-

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) . . . . . . . . . . . . . -25-

*K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860 (D. Cal. 2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

*Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698 (D. Or. 1997) . . . -17-

*Lynn v. Sheet Metal Workers' International Ass'n*, 804 F.2d 1472 (9th Cir. 1986)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Mark H. v. LeMahieu*, 2008 U.S. App. LEXIS 987 (9th Cir. 2008) . . -1-, -4-, -11-,
-21-

*Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574
(1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Miller v. Glenn Miller Productions*, 454 F.3d 975 (9th Cir. 2006) . . . . . . . . . . -8-

*Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253 (4th Cir. 2001) . . . . . . . . -25-

*Patricia N. v. LeMahieu*, 141 F. Supp. 2d 1243 (D. Haw. 2001) . . . . . . . . . . . -17-

*Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . -24-

*Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262 (10th Cir. 1989) . . . . . . . . . -25-

*Robb v. Bethel School Board #403*, 308 F.3d 1047 (9th Cir. 2002) . . . . . . . . . -21-

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) . . . . . . -6-

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Settlegoode v. Portland Pub. Schs.*, 2002 U.S. Dist. LEXIS 2238 (D. Or. 2002)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004) . . . . . . -18-

*Shah v. County of Los Angeles*, 797 F.2d 743 (9th Cir. 1986) . . . . . . . . . . . . . . -6-

*Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439 (10th Cir. 1988) . . . . . . . . . . -25-

*Smith v. Robinson*, 468 U.S. 992 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Sturm v. Rocky Hill Bd of Ed*, 2005 U.S. Dist. LEXIS 4954 (D. Conn. Mar. 29, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

*Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969) . . . . . . . . . . . . . . . -25-

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

*Thrifty Oil Co. v. Bank of America National Trust & Savings Ass'n*, 322 F.3d 1039, (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*W.B. v. Matula*, 67 F.3d 484 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

*Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2002) . . . . . . . . . . . . . -20-

*Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439 (10th Cir. 1988) . . . . . . . . . -25-

*Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138 (2d Cir. 2002) . . . . . . . . . . . -18-, -20-

*Whitehead v. School Board of Hillsborough County*, 918 F. Supp. 1515 (M.D. FL 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

*Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332 (9th Cir. 1990) . . . . . . -6-

*Williams v. United States,* 704 F.2d 1162 (9th Cir 1983) . . . . . . . . . . . . . . . . . -17-

*Witte v. Clark County School Dist.*, 197 F.3d 1271 (9th Cir. 1999) . . . . . . . . -22-

<u>Statutes and Regulations</u>

20 U.S.C. §1415(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-, -21-

20 U.S.C. § 1681(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -15-

29 U.S.C. § 794a(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

34 C.F.R. § 100.7(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-, -24-

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

Plaintiffs hereby submit their Opposition to Defendant Department of Education's Motion to Dismiss or in the Alternative, for Summary Judgment On, Second Amended Complaint.

## I.  FACTS.

Approximately one month before trial was to begin in the present case, and after the motions in limine, proposed jury instructions, special verdict forms and trial briefs had been filed, the Ninth Circuit issued its decision in *Mark H. v. LeMahieu*, 2008 U.S. App. LEXIS 987 (9th Cir. 2008).  *Mark H.,* according to Defendant "dramatically" changes the law, for claimants seeking money damages under Section 504 for denial of meaningful access and reasonable accommodation in public education.  Defendant's subjective portrayal of *Mark H.* as a "dramatic" change in the law is used to divert the Court's attention from two facts: (1) the majority of appellate court's energy was spent crafting a point-by-point refutation of the trial court's analysis, construing IDEA's relation to Section 504, the U.S. Department of Education's Section 504 regulations and the possible effect of *Alexander v. Sandoval,* 532 U.S. 275 (2001), on private suits to enforce those regulations; and (2) the only new information pertinent to the present case was the court's ruling that free appropriate public education ("FAPE") under IDEA and Section 504 are not synonymous.

This Court, after briefing and argument regarding the possible effect

of *Mark H.*, on the present case, said:

> If Plaintiffs wish to allege a violation of § 504 itself,
> rather than the regulations, Plaintiffs are free to do so in
> their amended complaint.

Docket No. 444 at 3.  This is what Plaintiffs have chosen to do.  Plaintiffs' Second

Amended Complaint sets forth allegations based on evidence developed to date

through depositions and written discovery, and cited throughout its Second

Amended Complaint, to pursue viable claims directly under Section 504. *Mark H.*,

expressly noted: "It has long been established that § 504 contains an implied

private right of action for damages to enforce its provisions."  2008 U.S. App.

LEXIS 987 at *33*, citing, Greater L.A. Council on Deafness v. Zolin, Inc.* 812 F.2d

1103, 1107 (9th Cir. 1987).  On the other hand, the appellate court left open the

question of whether the "family can bring an action to enforce the § 504

regulations will depend on whether those regulations come within the § 504

implied right of action."  *Id*.  The court remanded *Mark H.* for an opportunity to

develop facts and arguments that Section 504's regulations come within the § 504

implied right of action.

The court explained that the right of action under Section 504

provides a remedy that should be broadly construed:

> Regardless of whether or not the § 504 FAPE regulations can be
> characterized as to some degree prohibiting "disparate impacts" or

> imposing "affirmative obligations," the district court gave the prohibition contained in § 504 itself too cramped a reading. The text of § 504 prohibits not only "discrimination" against the disabled, but also "exclu[sion] from . . . participation in" and "deni[al] [of] the benefits of" state programs solely by reason of a disability. 29 U.S.C. § 794(a). This language is nearly identical to the language in Title VI, and, in general, the remedies available under both § 504 and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132, 13 are "linked" to Title VI. *Ferguson v. City of Phoenix*, 157 F.3d 668, 673 (9th Cir. 1998).

*Id.* at *39-39.

> Thus, the appellate court reaffirmed prior precedent that:

> [R]ecognized that the focus of the prohibition in § 504 is "whether disabled persons were denied 'meaningful access' to state-provided services." *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) Thus, although § 504 does not require "substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals," it, like the ADA, does require <u>reasonable modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying " 'meaningful access' to a benefit because of their disability</u>."

*Id* at *40-41 (some internal citations and quotations omitted).  Thus, Defendant

must accept that the standard for liability under Section 504, relied upon by

Plaintiffs in this case, was established long before *Mark H.* was decided and well

before the present case was filed, nearly 10 years after *Crowder* was decided in

1996 and more that 20 years after *Alexander v. Choate*, 469 U.S. 287, 302, 83 L.

Ed. 2d 661, 105 S. Ct. 712 (1985), the case upon which *Crowder* relies, issued.

Defendant, fully appreciating the nature of Second Amended

Complaint, asserts that Plaintiffs "conveniently attempt to circumvent § 504's FAPE regulation by carefully removing any mention of FAPE. . . . This attempt, however is in direct contravention with the applicable law . . . as set forth in *Mark H.*" Defendant's Memorandum at 4. This statement is wishful thinking on Defendant's part.

Defendant cannot identify in *Mark H.* any statement by the court confirming a private right of action under Section 504's regulations. On the contrary, the court stated it is open question on remand, whether the "family can bring an action to enforce the § 504 regulations" and that the answer to this question "will depend on whether those regulations come within the § 504 implied right of action."  2008 U.S. App. LEXIS 987 at *33.

On the other hand, to paraphrase the appellate court's admonition against forgetting the statutory basis of liability and focusing only on the regulations, Defendant "appear[s] to have forgotten the established § 504 "reasonable accommodation" and "meaningful access" requirements in evaluating whether the § 504 FAPE regulations come within § 504's substantive scope.  2008 U.S. App. LEXIS 987, at *42.  The appellate court's opinion clearly provides Section 504 litigants the option of invoking the regulations or relying exclusively on the statute.  Plaintiffs, here, have taken the appellate court's admonition to heart

and have eschewed reliance on the regulations and Section 504's FAPE requirement, by design.

Defendant wishes that the appellate court had said: "Plaintiffs seeking damages under Section 504 for exclusion, discrimination or denial of public education, by failing to provide meaningful access or reasonable accommodation to a disabled child, can <u>only</u> be proved by invoking the regulations." The appellate court has not done so; Plaintiffs do not invoke the regulations to prove these claims. *Mark H.* provides no relief for Defendant's desire to defend a different case based on the regulations.

## II. <u>STANDARDS OF DECISION.</u>

A.    <u>Motion to Dismiss Under Rule 12</u>.

Defendants face a heavy burden in bringing a motion to dismiss for failure to state a claim. A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under Federal Rule of Civil Procedure 12(b)(6), in deciding a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the Plaintiffs' allegations contained in the complaint and view them in the light most favorable to the Plaintiffs. *Scheuer v. Rhodes*, 416 U.S.

232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir. 1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir. 1986). Referral in the complaint to attachments or documents whose authenticity is not contested, is permissible under Rule 12, and such incorporation by attachment or reference does not convert the motion to one for summary judgment in which the court weighs competing characterizations of material evidence. *Anderson v. Clow*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

Thus, the complaint must stand unless it appears beyond doubt, after reviewing the complaint and exhibits thereto, that the plaintiff has alleged no facts that would entitle him or her to relief. *Conley*, 355 U.S. at 45-46; *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri*, 909 F.2d at 699, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).

As the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1979). The Court must determine whether or not it

appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims. *Id.*

Applying the foregoing standards to the Second Amended Complaint, including its exhibits, Defendant's motion to dismiss must be DENIED.

B.    Summary Judgment Under Rule 56.

After filing the motion to dismiss, Defendant filed "amended motion," that also included a request for summary judgment on all claims stated in the Second Amended Complaint.[1]  The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A fact is 'material' when, under the governing substantive law, it

---

[1]    The motion did not conform to the LR 56, as no concise statement of material fact was filed, timely, not less than 28 days prior to the date now set for hearing.  Nevertheless, Defendant was allowed to late-file its concise statement, without formally moving for relief, and, at the Magistrate Judge's request, Plaintiffs agreed to file their responsive pleadings after being granted six additional days in which to respond.

could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v. Bank of America National Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)) (internal citation omitted). [2]   Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (*citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Miller v. Glenn Miller Productions*, 454 F.3d 975, 987 (9th Cir. 2006). The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When evaluating a motion for summary judgment, the court must

---

2       Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' International Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986).

construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626, 630-31 (9th Cir. 1987) Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. *Anderson*, 477 U.S. at 249; *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

Defendant relies nearly exclusively on the allegations of the Second Amended Complaint as its statement of "undisputed fact."  Reading the Defendant's Concise Statement, it is apparent that Defendant is accepting as undisputed and proffering to Court all the factual allegations of Plaintiffs' complaint.  Therefore, the factual allegations of the Second Amended Complaint, including the exhibits, must be taken as undisputed.  Defendant does not dispute any of the allegations of the Second Amended Complaint.  That being the case, the Defendant's Rule 56 motion must be construed as what it is: a motion under Rule 12.  Rule 12's analysis must apply.  Defendant's Motion for Summary Judgment, DENIED.

## III. **ARGUMENT.**

Plaintiffs' argument flows from the following analytical framework: (1) Defendant's motion to dismiss the complaint pursuant to Rule 12 fails because the Second Amended Complaint, read as a whole states claims upon which relief can be granted; and (2) Defendant's motion for "summary judgment" is baseless, as Defendant has accepted as undisputed the allegations in the Second Amended Complaint.  Defendant has not come forward with undisputed facts.

> A.    While *Mark H.* Offers Plaintiffs the Option of Invoking Section 504's FAPE Regulations, the Ninth Circuit did not Mandate Plaintiffs Do So.

As described above, the Ninth Circuit spent the majority of its efforts in *Mark H.* explaining why the trial court had erred in its construction of Section 504 and its implementing regulations.  The bulk of its energy was taken up wrestling the trial court's analysis, and distinguishing Section 504's regulations from those at issue in *Alexander v. Sandoval*. *Mark H.* did, for the first time, express the novel position that free appropriate public education is not the same under IDEA and Section 504.  Thus, Plaintiffs seeking to rely on the FAPE regulations promulgated by the U.S. DOE, may no longer assert that denial of FAPE under the strict-liability provisions of IDEA conclusively establishes liability under Section 504.  Even though Congress responded to the Supreme Court's repudiation of Section 504 in *Smith v. Robinson,* 468 U.S. 992 (1984), by

-10-

expressly restoring it as an remedy for failure to provide meaningful access to

public education in IDEA (20 U.S.C. §1415(l)), the Ninth Circuit panel concluded

that a violation of the FAPE requirements of IDEA would not lead to liability *per

se* under Section 504's FAPE regulation.

The Court reaffirmed its own prior precedent, however, and

acknowledge Supreme Court precedent that permits a direct right of action under

Section 504 itself for individuals who are denied "meaningful access" through

"reasonable accommodation" to federally funded programs.    2008 U.S. App.

LEXIS 987 at *38-*41.   The Ninth Circuit's holding, thus directly contradicts

Defendants' assertion that there are no causes of action.

> B.  Plaintiffs' Second Amended Complaint Contains Ample
> Allegations Which, If Proved, Will Satisfy the Requirements of
> Section 504.

Plaintiffs' Second Amended Complaint, among other matters, alleges

that, over a five year period, DOE ignored promises it made in settlement

agreement and which it was ordered to undertake as a result of Hearing Officer

decisions.  Exhibit 1 at ¶¶ 18-35 & Exhibits A-D thereto; Exhibit 2.  Plaintiffs'

Second Amended Complaint, further states:

> *39. The DOE acted with deliberate indifference Bryan's
> need for accommodation and denied him meaningful
> access to public education.*

\* \* \* \*

> *41. Section 504 of the Rehabilitation Act, prohibits Defendant from excluding Bryan from the participation in, denying Bryan the benefits of, or subjecting Bryan to discrimination in public education. Defendant has violated these provisions and acted with deliberate indifference by failing to provide or otherwise prohibiting meaningful access for Bryan to public education, without limitation.*

In the 38 following sub-paragraphs, Plaintiffs offer detailed statements of some of the ways in which Defendant "deprived Bryan meaningful access to public education." *See,* Exhibit 1, ¶¶ 41.a to 41.mm.  Based on Defendant's Concise Statement, these facts are not disputed.

The Second Amended Complaint, coupled with its exhibits, provide detailed factual support of Plaintiffs' assertion that Defendant excluded Bryan from participation in, denied Bryan the benefits of, subjected Bryan to discrimination in public education through Defendant's deliberate indifference in failing to provide or otherwise prohibiting meaningful access for Bryan to public education.  *Mark H.* requires nothing more to plead proper claims under Section 504.  Summary judgment should be granted for Plaintiffs.

      C.    <u>Defendant Misrepresents the Plaintiffs' Claims</u>.

After spending much energy asserting that *Mark H.* imposes a requirement that Plaintiffs invoke Section 504's regulations, Defendant next asserts

that Plaintiffs do not allege Bryan was treated differently that other children in

Hawaii's public schools.  Defendant overlooks, among others, paragraph 41 of the

Second Amended Complaint, which states:

> 41. Section 504 of the Rehabilitation Act, prohibits
> Defendant from excluding Bryan from the participation
> in, denying Bryan the benefits of, or subjecting Bryan to
> discrimination in public education. Defendant has
> violated these provisions and acted with deliberate
> indifference by failing to provide or otherwise
> prohibiting meaningful access for Bryan to public
> education, without limitation.

Clearly, these allegations state that Bryan was the subject of discrimination and

that he was denied meaningful access to public education in Hawai'i.  Unless

Defendant is to argue that all children in Hawai'i are denied meaningful access to

public education, the allegations are sufficient to establish claims that Bryan was

treated differently.  The 38 subparagraphs give Defendant detail that is sufficient to

satisfy Rule 8(b).  There should be no doubt as to what is alleged: Bryan was

discriminated against, excluded from and denied the benefits of public education as

a result of the Defendant's failure or refusal to provide meaningful access through

reasonable accommodation to his needs.

    D.    <u>The Retaliation Claims Already Have Been Approved by the
Court and Meet the Requirements of Notice Pleading</u>.

    1.    <u>The Supreme Court Recognizes Retaliation Claims Implied in
Civil Rights Statutes</u>.

-13-

Plaintiffs' retaliation claims already have been reviewed and approved by the Court.  Docket No. 326.  Defendant now argues that Section 504, coupled with the U.S. DOE's  regulations do not properly state a cause of action.  Review of the Supreme Court's analysis in a recent Title IX claim, as well as Ninth Circuit precedents, demonstrates that Defendant's argument false.

In the Title IX,[3] case, a girls' basketball coach at a public high school complained unsuccessfully to his supervisor that the team was not receiving equal funding and equal access to athletic equipment and facilities, the coach began to receive negative work evaluations and ultimately was removed as the girls' coach. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (U.S. 2005).  The fired coach brought an action against the local board of education alleging that (1) the board had retaliated against him because he had complained about sex discrimination against the girls' team, and (2) such retaliation violated Title IX of the Education Amendments of 1972 (20 U.S.C. §1681 *et seq.*), which, in 20 U.S.C. § 1681(a), required that no person "on the basis of sex" be "subjected to discrimination under

---

3       Title IX prohibits gender discrimination by recipients of federal education funding. The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

any education program or activity receiving Federal financial assistance."

      The terminated coach's suit was dismissed by the trial court and the dismissal affirmed by the appellate court.  The appellate court ruled that: (1) Title IX did not provide a private right of action for retaliation, and (2) even if Title IX prohibited retaliation, the coach would not have been entitled to relief, as he was not within the class of persons protected by the statute .  *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333 (11th Cir. 2002).   The Eleventh Circuit focused on the Supreme Court's analysis in  *Alexander v. Sandoval*, 532 U.S. 275 (2001), and concluded that a Department of Education regulation expressly prohibiting retaliation does not create a private cause of action for retaliation: "Because Congress has not created a right through Title IX to redress harms resulting from retaliation, [the regulation] may not be read to create one either."  309 F.3d, at 1346.

      On certiorari, the United States Supreme Court reversed and remanded. In its opinion, the Court held that the private right of action implied by Title IX  encompassed claims of retaliation for complaining about sex discrimination, as:

    (1) Such retaliation was (a) by definition, an intentional act; (b) a form of "discrimination;" and (c) "on the basis of sex."

    (2) The Supreme Court repeatedly had construed "discrimination"

under Title IX broadly.

(3) By using in Title IX the broad term "discrimination," Congress had given the statute a broad reach.

(4) A person unfairly treated in response to complaining about an alleged violation of Title IX was a victim of discriminatory retaliation regardless of whether the complainant was the subject of the original complaint.

544 U.S. at 173-77.

The Court expressly rejected the argument that *Alexander v. Sandoval*

required a different result. *Id.* at 178. The Court concluded that:

Where the retaliation occurs because the complainant speaks out about sex discrimination, the 'on the basis of sex' requirement is satisfied. The complainant is himself a victim of discriminatory retaliation, regardless of whether he was the subject of the original complaint. . . . Congress enacted Title IX not only to prevent the use of federal dollars to support discriminatory practices, but also "to provide individual citizens effective protection against those practices." We agree with the United States that this objective "would be difficult, if not impossible, to achieve if persons who complain about sex discrimination did not have effective protection against retaliation." If recipients were permitted to retaliate freely, individuals who witness discrimination would be loathe to report it, and all manner of Title IX violations might go unremedied as a result.

*Id.* at 179-80 (internal citations omitted). A similar analysis applies here.

      2.    <u>The Ninth Circuit Recognizes Retaliation As A Cause of Action Implied in Section 504</u>.

Section 504's remedial provision states:

-16-

> The remedies, procedures, and rights set forth in Title VI
> of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d *et
> seq.*] shall be available to <u>any person aggrieved</u> by any
> act or failure to act by any recipient of Federal assistance
> or Federal provider of such assistance under section 794
> of [the Rehabilitation Act]. 29 U.S.C. § 794a(a)(2).

Thus, the remedies provision, like Title IX, contains a broad definition

of those persons protected by Section 504.  The analysis by the Court in *Jackson*

leads to one conclusion: the "any person aggrieved" provision language brings

non-disabled individuals like Bryan's parents within the zone of interests of the

Rehabilitation Act's remedial provision. *See Greater Los Angeles Council on

Deafness v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987)(holding advocates for deaf

have standing to enforce Section 504); *Williams v. United States,* 704 F.2d 1162,

1163 (9th Cir 1983) (allowing organizations that represent persons with disabilities

to maintain Section 504 action, and listing similar decisions in other circuits);

*Patricia N. v. LeMahieu*, 141 F. Supp. 2d 1243 (D. Haw. 2001) (holding that the

"aggrieved by" language of 29 U.S.C. § 794a(a)(2) gave parents of autistic child a

cause of action under section 504 of the Rehabilitation Act); *Independent Living

Resources v. Oregon Arena Corp*., 982 F. Supp. 698, 763 (D. Or. 1997)(same).

Thus, without any reference to the regulations, Bryan's parents have standing to

sue for retaliation under Section 504's remedy provisions as "aggrieved persons."

Bryan's parents allege that, as a proximate result of the State's

-17-

retaliation against them for seeking services for their disabled son, they can assert violation of Section 504.  Compensatory damages have been awarded under Section 504 where the state has acted retaliated toward those eligible to participate in programs receiving federal funds or those who advocate for them.  The Ninth Circuit has accepted compensatory damages as an available for retaliation claims, upholding a jury award under Section 504.  *E.g., Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004)(sustaining award of $500,000 in non-economic damages for retaliation against teacher who advocated for disabled students); *accord  Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138 (2d Cir. 2002)(and cases cited therein acknowledging cause of action on behalf of parents claiming retaliation for seeking educational services for disabled child); *Alex G. v. Bd. of Trs.*, 387 F. Supp. 2d 1119 (D. Cal. 2005)(adopting *Weixel's* analytical framework); *K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 24860 (D. Cal. 2007)(same).  In *Settlegoode,* the Ninth Circuit expressly ruled that the school board was liable under the Rehabilitation Act for compensatory damages where it retaliated against a teacher who advocated for her disabled students.  371 F.3d at 512 n.6 & 516 n. 11.  The Ninth Circuit, thus, reversed the trial court's ruling that, because the plaintiff-teacher was not an "individual with a disability" as defined by the Rehabilitation Act, she was not protected as a "person aggrieved by any act or

-18-

failure to act by any recipient of Federal assistance." *See, Settlegoode v. Portland Pub. Schs.*, 2002 U.S. Dist. LEXIS 2238 at **11-12 (D. Or. 2002)(lower court's rejection of argument that teacher was an "aggrieved person" and, thus entitled to relief for retaliation).

Like Ms. Settlegoode, Bryan's parents have demonstrated a history of vigorous advocacy on behalf of a disabled person. And also like Ms. Settlegoode, they allege they have suffered retaliation as result. Clearly, Bryan is not capable of advocating on his own behalf. The statute prohibits retaliation for his parents' advocacy for him.

> 3.    Section 504's Anti-Retaliation Regulations Do Not Impose Affirmative Obligations That Go Beyond the Requirements of § 504.

There is no question that parents, as "aggrieved persons," enjoy a direct right of action for economic and psychological harm suffered as a result of retaliation against them for opposing prohibited discrimination directed at their children under Section 504's implied anti-retaliation provision. In similar instances where the enabling statute contains such protections, courts have not hesitated to conclude that the anti-retaliation provisions of the subsequently adopted regulations are an enforceable extension of the statue. *See, e.g., Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2000); (Section 504, with lengthy explanation);

*Weixel,* 287 F.3d at 149 (ADA  and Section 504); *Whitehead v. School Board of*

*Hillsborough County*, 918 F. Supp. 1515 (M.D. FL 1996), (Section 504); *Sturm v.*

*Rocky Hill Bd of Ed*, 2005 U.S. Dist. LEXIS 4954 (D. Conn. Mar. 29, 2005)

(Section 504).

> Given the broad remedial provisions of Title VI and the Rehabilitation
> Act and the breadth of the anti-retaliation regulation adopted pursuant
> to those laws, it is not surprising that courts have accorded standing to
> non-disabled individuals suing because of retaliation for attempts to
> vindicate the rights of a disabled person.
>
> * * * *
> Although Congress could have limited the remedial provisions of the
> Rehabilitation Act to claims brought by or on behalf of disabled
> individuals, it did not do so in apparent recognition of the fact that
> disabled individuals may need assistance in vindicating their rights
> from individuals who may have their own claim to relief under the
> Act. The anti-retaliation regulation set forth in 34 C.F.R. § 100.7(e) is
> consistent with this recognition. It is a practical reality that recipients
> of federal funds sometimes respond to complaints about their
> treatment of a disabled child by retaliating against the disabled child,
> the initiator of the complaint (who is often a parent), or both.

*Weber*, 212 F.3d at 48-49.

As noted in *Mark H.,* regulations can only be enforced through the

private right of action contained in a statute when they "authoritatively construe"

the statute.  2008 U.S. App. LEXIS 987 *34.  Thus, for example, in *Sandoval*, the

disparate impact regulations were not privately enforceable (even though valid), as

they exceeded the authorizing statute's prohibition against "intentional"

-20-

discrimination.  As applied here, *Sandoval* and *Mark H.* instruct that "whether the

Section 504 regulations are privately enforceable turns on whether their

requirements fall within the scope of the prohibition contained in Section 504

itself." *Id.*

Like the *H.* family, whether the Parents here "can bring an action to

enforce the § 504 regulations will depend on whether those regulations come

within the § 504 implied right of action."  2008 U.S. App. LEXIS 987 *33.   As

*Settlegoode* and the other cases cited above confirm, a private right of action exists

for "aggrieved persons" under Section 504 itself, Defendant cannot establish that

the regulations extend beyond the scope of protection already embodied in the

statute itself, in a manner that *Sandoval* would exclude.[4]  This conclusion is

bolstered by the fact that, although the *Mark H.*, court did not expressly confirm a

private right of action under the regulations, it went to great lengths to evaluate

---

4        Defendant revisits its exhaustion argument, an argument
already rejected by the Court.  Plaintiffs' 504 claims fall outside of § 1415(l)'s
rubric and exhaustion is unnecessary.  *See Robb v. Bethel School Board #403*, 308
F.3d 1047, 1050 (9th Cir. 2002).  Plaintiffs at this stage are seeking only money
damages, for violations of Section 504, a remedy not available under the IDEA.
Plaintiffs are not seeking relief that is also available under the IDEA, 20 U.S.C. §
1415 (l).  Under a plain reading of the statute and existing Ninth Circuit precedent
left untouched by *Mark H.*, exhaustion of administrative remedies is not required.
*Witte v. Clark County School Dist*., 197 F.3d 1271, 1275 (9th Cir. 1999) (*citing
W.B. v. Matula*, 67 F.3d 484, 495 (3rd Cir. 1995)).

Section 504's FAPE regulations, distinguished then from those at issue in *Sandoval* and remanded to permit the parents to invoke the regulations as a basis for claims in their case.   *Mark H.*, which examined Section 504's FAPE regulations, not its anti-retaliation provisions, identified key differences from the regulations at issue in *Sandoval*.   Unlike the regulations at issue in *Sandoval,* the Ninth Circuit noted that nothing in the Section 504 FAPE regulations would result in liability as a result of "unintentionally created 'effects' or outcomes."   *Id.* at * 35.   In contrast, a disparate effect or impact "could be entirely accidental, and need not be recognized once it occurs."   *Id.* at *36.

       Section 504's FAPE regulations do not create "affirmative obligations" beyond that embodied in the statue, the court concluded, they merely advance the statutory prohibition against discrimination toward disabled children, mandating qualitative equivalence in access to, design and effect of public education for disabled children.   *Id.* at **36-38.   These concerns are well within "the prohibition in § 504 [asking] 'whether disabled persons were denied "meaningful access" to state-provided services.'"   *Id*. at * 39.   Thus, to "the degree the § 504 FAPE regulations that the H. family invokes can be interpreted as a variety of meaningful access regulation, they will fall within the § 504 implied cause of action."   *Id.* at * 44.

This analysis is instructive.  The regulation 34 C.F.R. § 100.7(e), states:

> (e) Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. . . .

34 C.F.R. § 100.7(e)(emphasis added).  Thus, the regulation, like the statute, protects the disabled and non-disabled alike, from retaliatory conduct. As retaliation is intentional conduct and the regulation advances the statute's prohibition against retaliation, private enforcement of the regulation is consistent with *Sandoval*.

In a nearly identical case, construing Section 601 of Title VI of the Civil Rights Act of 1964, the Fourth Circuit reviewed statutory language directly parallel to that of Section 504,[5] and considered the existence of a private right of action under 34 C.F.R § 100.7(e).

After thoroughly reviewing the *Sandoval* opinion and its application to the question of the regulation's effect, the court said:

---

5       Section 601 of Title VI states:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

-23-

> To determine whether there is a private cause of action for retaliation
> under Title VI, we must resolve the question of whether 34 C.F.R. §
> 100.7(e)'s retaliation prohibition is an interpretation of § 601's core
> antidiscrimination mandate. If § 100.7(e) is an interpretation of § 601
> that is valid under *Chevron*, it commands deference and may be
> enforced via an implied private right of action. If instead, § 100.7(e) is
> a regulation which, even if valid as a . . ."means of effectuating" Title
> VI, nonetheless "forbid [s] conduct that § 601 permits," *Sandoval*, 532
> U.S. at 285, namely conduct other than intentional discrimination, the
> regulation may not be enforced via an implied private right of action.

*Peters v. Jenney*, 327 F.3d 307, 316 (4th Cir. 2003).

Analyzing the lengthy history of cases that had found implied rights of

action for retaliation in a variety of civil rights statutes, the Fourth Circuit

concluded that § 100.7(e) is enforceable in a private action because it is a

regulation applying § 601's ban on intentional discrimination. *Id.* at 317-19. The

court rejected the argument that Section 601 did not protect Peters, as she was a

Caucasian punished for advocating for minorities, not a minority herself, and

concluded that Peters was protected by the implied prohibition against retaliation

found in Section 601. *Id.*

> Further, the failure of § 601 to include a specific prohibition on
> retaliation apart from its general prohibition of racial discrimination
> cannot, in light of relevant precedent interpreting similarly worded
> antidiscrimination statutes, lead to an inference that Congress did not
> mean to prohibit retaliation in § 601, or that those who oppose
> intentional discrimination violative of § 601 are not within the class
> for whose benefit Congress enacted that provision.

*Id.* at 316-17, *citing, Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229 (1969)

-24-

(white man who was expelled from a neighborhood board for attempting to sell property to a black man could maintain an action under 42 U.S.C. § 1982); *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 258 (4th Cir. 2001) (white motel customer evicted due to association with black customers may maintain private action under 42 U.S.C. § 1981); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 576 (6th Cir. 2000)(white plaintiff allegedly retaliated against for opposing discrimination may bring suit under 42 U.S.C. § 1981); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1266-67 (10th Cir. 1989) (white attorney who alleged adverse action because of his representation of black clients, may maintain action under 42 U.S.C. §  1981); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1447 (10th Cir. 1988) (white employee allegedly terminated for assisting a black employee could maintain an action under 42 U.S.C. § 1981).

The Court concluded that "the retaliation regulations are enforceable via an implied private right of action to the extent that they forbid retaliation for opposing practices that one reasonably believes are made unlawful by § 601. *Id.* at 319. Other courts reviewing *Sandoval* and *Perry* have reached similar conclusions regarding other civil rights statutes.

For example, the District of Columbia Circuit concluded that an action against retaliation is implicitly within the scope of Title VI's prohibition on

intentional discrimination.  *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 83 (D.D.C. 2003).

The same conclusion is warranted here for the same reasons.  Bryan's parents are protected from retaliation under the language and purpose of Section 504's anti-retaliation regulations.  Defendants do not dispute the facts put forth to establish that the retaliation occurred.

## IV.  CONCLUSION.

For the reasons set forth herein, Plaintiffs respectfully request that Defendant Department of Education's Separate and Concise Statement of Facts in Support of Motion to Dismiss or in the Alternative, for Summary Judgment On, Second Amended Complaint be DENIED.

DATED: Honolulu, Hawai'i, March 27, 2008.

/s/   Carl M. Varady
CARL M. VARADY
STANLEY E. LEVIN
Attorneys for Plaintiffs

-26-

## <u>CERTIFICATE OF SERVICE</u>

        I certify the attached document was served electronically via CM/ECF

on the date indicated below addressed to:

        Gregg M. Ushiroda gushiroda@wik.com
        Daniel K. Obuhanych dobuhanych@wik.com
        Leighton M. Hara lhara@wik.com,
        rgeorge@wik.com
        Watanabe Ing & Komeiji
        First Hawaiian Center
        999 Bishop St 23rd Flr
        Honolulu  HI 96813


        Holly T. Shikada holly.t.shikada@hawaii.gov
        Cheryl.H.Oeda@hawaii.gov,
        michael.t.burke@hawaii.gov
        Deputies Attorney General
        235 S. Beretania, Room 304
        Honolulu HI 96813

        Attorneys for Defendants

        DATED: Honolulu, Hawai'i,  March 27, 2008.

                /s/ Carl M. Varady
                Carl M. Varady