401250.6

**MARK J. BENNETT**        #2672-0
Attorney General, State of Hawaii
**HOLLY T. M. SHIKADA** #4017-0
**GARY K.H. KAM**         #4391-0
**GEORGE S. S. HOM**      #2487-0
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
235 S. Beretania Street, Suite 304
Honolulu, Hawaii 96813
Telephone No. (808)586-1255
Facsimile No. (808)586-1488
E-Mail:  holly.t.shikada@hawaii.gov

WATANABE ING & KOMEIJI LLP
A Limited Liability Law Partnership
**JOHN T. KOMEIJI**       #2498-0
**GREGG M. USHIRODA**     #5868-0
**LEIGHTON M. HARA**      #7826-0
**ROSS T. SHINYAMA**      #8830-0
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii  96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-Mail: gushiroda@wik.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>            Plaintiffs,<br><br>      vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii,<br><br>            Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>CONSOLIDATED<br>(Other Civil Action)<br><br>**DEFENDANT DEPARTMENT OF EDUCATION'S FINAL PRETRIAL STATEMENT; CERTIFICATE OF SERVICE**<br><br>**FINAL PRETRIAL CONFERENCE:**<br>Date:  September 3, 2008<br>Time: 10:00 a.m.<br>Judge: Hon. Alan C. Kay |

_____ )   <u>TRIAL:</u> September 9, 2008

### DEFENDANT DEPARTMENT OF EDUCATION'S <br> <u>FINAL PRETRIAL STATEMENT</u>

COMES NOW Defendant DEPARTMENT OF EDUCATION, STATE OF HAWAII ("DOE"), by and through its counsel, WATANABE ING & KOMEIJI LLP, and hereby submits its Final Pretrial Statement pursuant to Rule 16.6 of the Local Rules of Practice for the United States District Court for the District of Hawaii.

**I.      <u>JURISDICTION AND VENUE</u>**

Plaintiffs ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor (collectively, "Plaintiffs"), allege federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

Plaintiffs also allege that venue is appropriate as the events giving rise to the claim(s) alleged occurred in the County of Hawaii, State of Hawaii.

**II.     <u>SUBSTANCE OF ACTION</u>**

Plaintiffs Ann Kimball Wiles and Stanley Bond (collectively, Parent Plaintiffs) bring this lawsuit on behalf of themselves and on behalf of their minor child Bryan Wiles-Bond ("Bryan"). They allege that the DOE violated Section 504 of the Rehabilitation Act ("Section 504") by failing to provide Bryan with "reasonable accommodations" and "meaningful access" to public education. Parent Plaintiffs further allege that the DOE

retaliated against them in violation of Section 504's anti-retaliation provision, 28 C.F.R. § 42.503(b)(1)(vii).   In support, Plaintiffs' primary complaints are that the DOE failed to provide Bryan with the skills trainers service hours he was entitled to under his Individualized Educational Program ("IEP"), and that the DOE failed to comply with several administrative orders.   On the other hand, the DOE maintains that it did provide Bryan with "reasonable accommodations" and "meaningful access" to a regular public education.   In fact, the DOE made great efforts and committed great expense above and beyond what can be construed as "reasonable."   Moreover, the services that were in fact provided to Bryan clearly allowed him to realize a benefit from a regular public education that was at the very least meaningful.

Plaintiffs have already represented to this Honorable Court that the sole remedy they seek is money damages under Section 504.   Money damages under Section 504, however, require Plaintiffs to prove that the DOE acted with deliberate indifference and/or intentionally discriminated against Bryan, solely on the basis of his disability, in denying Bryan "reasonable accommodations" and "meaningful access."   The DOE maintains that there is no evidence to support such a finding. Rather, the evidence clearly establishes that the DOE acted in good faith in providing Bryan with "reasonable accommodations"

and "meaningful access" to public education.

Furthermore, Parent Plaintiffs must also prove "deliberate indifference" and/or intentional discrimination before recovering money damages under Section 504's anti-retaliation provision.

III.    **UNDISPUTED FACTS**

1.    Bryan is a severely autistic child who was diagnosed with autism spectrum disorder at age 2.  Bryan and his family moved from Maryland to the Big Island of Hawaii.  He was enrolled in the Hawaii public school system from 1999 until he moved to California with his parents in January 2005.

2.    The DOE made efforts to provide Bryan with skills trainers and other services.  The DOE's efforts at recruiting skills trainers included newspaper advertising, posting signs on bulletin boards in the Kailua-Kona and Waimea communities, posting job listings at conventions, leaving business cards at conventions and workshops, placing advertisements on agency websites, and giving Plaintiffs funding to advertise for skills trainers.

3.    The DOE contracted with private agencies, e.g., Child and Family Services, The Institute for Family Enrichment, and Hawaii Behavioral Health, to assist with the recruitment of qualified skills trainers.

4.    At Plaintiffs' insistence, the DOE entered into

contract negotiations with Pacific Child and Family Associates
("PCFA"), a mainland company with expertise in servicing autistic
children, to service Bryan and his family.  The DOE paid
$6,112.50 for two PCFA employees to fly to Hawaii to evaluate and
assess Bryan and his parents.  In November 2004, PCFA submitted a
proposal indicating it's willingness to service Bryan and his
family.  The DOE was willing and ready to pay PCFA $191,670.00 to
provide Bryan with a one-year autism-specific program.  In the
midst of finalizing the contract with PCFA, however, Plaintiffs
relocated to the mainland.

    5.  Plaintiffs acknowledge that the DOE did provide
Bryan with approximately seventy-five percent (75%) of the skills
trainers hours that were requested.

    6.  The evidence shows that the DOE's inability to
provide one-hundred percent (100%) of skills trainer hours
requested may have been attributable to a lack of available
skills trainers and Plaintiffs' own actions.  For example, skills
trainers requested that they be removed from Bryan's case because
of, <u>inter alia</u>, the unsanitary living conditions of Plaintiffs'
home, being left alone with Bryan for the whole day on weekends,
and the parents' expectation that they do household chores.

    7.  Bryan's IEP was properly designed to meet his
needs as adequately as the needs of non-disabled children are
met.

IV.      **DISPUTED FACTUAL ISSUES**

The parties dispute whether Bryan was denied "reasonable accommodations" and "meaningful access" to a regular public education.  The parties further dispute whether the DOE acted with "deliberate indifference" and/or intentionally discriminated against Bryan solely based on his disability in allegedly failing to provide Bryan reasonable accommodations and meaningful access.  As a result, all allegations of wrongdoing relating to these disputed issues of law are denied by the DOE.

V.      **RELIEF PRAYED**

In the Second Amended Complaint, Plaintiffs pray for the following relief against the DOE: (1) a declaration that the DOE is liable to the Plaintiffs; (2) a judgment against the DOE for an amount of money that will recompense Plaintiffs for losses experienced and the economic and non-economic damages caused by the DOE's conduct; (3) a declaratory judgment against the DOE that they have exacerbated Bryan Wiles Bond's condition to such an extent as to make institutionalization or an assisted living setting the only alternatives for Plaintiffs[1]; and (4) an award of attorneys' fees and costs.

---

[1]      Plaintiffs have represented to his Honorable Court on multiple occasions that they are only seeking money damages under Section 504.  As a result, although this declaratory judgment was asserted as a requested relief in the Second Amended Complaint, it is not and should not be an available relief in the present action.

VI.     **POINTS OF LAW**

The DOE submits the following as the anticipated disputed points of law in this matter.

A.     **Section 504**

1.     **Section 504 is an anti-discrimination statute.**

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The central purpose of Section 504 is to ensure the "evenhanded treatment" of disabled individuals in relation to non-disabled individuals. See P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990)(citing Traynor v. Turnage, 485 U.S. 535, 548 (1988)); Alexander v. Choate, 469 U.S. 287, 304 (1985). Accordingly, Section 504 is merely an anti-discrimination statute that simply prevents discrimination on the basis of disability. See Sch. Bd. of Nassau County, Florida v. Arline, 480 U.S. 273, 277-78 (1987)("Congress . . . addressed the broader problem of discrimination against the handicapped by including § 504, an antidiscrimination provision"); Alexander v. Choate, 469 U.S. at 293 n. 7; Smith v. Robinson, 468 U.S. 992, 1017 (1984)(superseded

by statute on an alternative point of law).[2]

### 2. Section 504 requires disabled individuals be provided "meaningful access" to a federally funded benefit available to non-disabled individuals.

Under Section 504, a plaintiff must prove that he is a "qualified individual with a disability" as defined by the Rehabilitation Act; that he was denied "meaningful access" to a federally funded benefit available to non-disabled individuals; and that the denial of "meaningful access" was "solely by reason of" his disability. See id.; Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124, 1135-36 (9th Cir. 2001); Weinreich v. Los Angeles Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).

Before discussing Section 504's "meaningful access" standard, it is helpful to explain the difference in the type of obligations imposed on school districts under the IDEA and Section 504. "The [IDEA] . . . , because of its focus on appropriate education, imposes **affirmative duties regarding the content of the programs that must be provided to the**

---

[2]    The Ninth Circuit in Mark. H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008) highlighted that Section 504 prohibits not only discrimination against the disabled, but also exclusion from participation in and denial of benefits of programs solely by reason of a disability. Id. at 937. The Ninth Circuit's clarification on the prohibitions under Section 504, however, does not take away from the fact that Section 504 is an anti-discrimination statute. As the court stated, the language of Section 504, and its legislative history, simply evidences that the nature of discrimination under Section 504 is construed more broadly. Id.

handicapped." <u>Timms v. Metro. Sch. Dist. Of Wabash County</u>, 722

F.2d 1310, 1318 (7th Cir. 1983)(discussing the predecessor to the

IDEA, the Education for All Handicapped Children Act)(emphasis

added); <u>Sch. Dist. of Wisconsin Dells v. Z.S.</u>, 184 F.Supp.2d 860,

884 (W.D. Wis. 2001)(citing <u>Timms</u>). On the other hand, Section

504 is merely "prohibitory, forbidding exclusions from federally-

funded programs on the basis of handicapped." <u>Timms</u>, 722 F.2d at

1318.

A line of cases in the late 1970's and mid 1980's

clarified the exact type of obligations imposed on recipients of

federal funds under Section 504. In the seminal case,

<u>Southeastern Cmty. Coll. v. Davis</u>, 442 U.S. 397 (1979), the

United States Supreme Court held that "neither the language,

purpose, nor history of § 504 reveals an intent to impose an

affirmative-action obligation on all recipients of federal

funds." <u>Id.</u> at 411-12. Post-<u>Davis</u> cases, however, severely

criticized the Court's use of "affirmative action" stating that

the Court's choice of words failed to appreciate the difference

between "affirmative action" and reasonable accommodation.

<u>See</u> <u>Alexander v. Choate</u>, 469 U.S. 287, 300 n. 20. Consequently,

in <u>Alexander v. Choate</u>, <u>supra</u>, the Court clarified that its use

of "affirmative action" in <u>Davis</u> "referred to those 'changes,'

'adjustments,' or 'modifications' to existing programs that would

be 'substantial,' or that would constitute 'fundamental

alteration[s] in the nature of a program,' rather than to those
changes that would be reasonable accommodations." Id. (internal
citations omitted); see also Mark H. v. Lemahieu, 513 F.3d 922,
937 (9th Cir. 2008)(stating that Section 504 does not require
"substantial adjustment in existing programs"). As a result, the
IDEA and Section 504 impose differing obligations on school
districts. While the IDEA imposes affirmative duties on school
districts, Section 504 merely imposes an obligation to provide
"reasonable accommodations" to federally funded programs.

       The United States Supreme Court and the Ninth Circuit
Court of Appeals have adopted this standard of "reasonable
accommodations" in determining whether "meaningful access" has
been provided under Section 504. See Alexander v. Choate, 469
U.S. at 301; Bird v. Lewis & Clark College, 303 F.3d 1015 (9th
Cir. 2002). To provide "meaningful access," a school district
"may be required to make reasonable, but not fundamental or
substantial, modifications to its programs." Bird, 303 F.3d at
1020. "Reasonableness depends on the circumstances of each case,
and requires a 'fact-specific, individualized analysis of the
disabled individual's circumstances and the accommodations that
might allow him to meet the program's standards.'" Id. (citations
omitted).[3]

_____

       [3]   Plaintiffs have relied on Lovell v. Chandler, 303 F.3d
1039 (9th Cir. 2002) throughout the instant action. In Lovell,
the State of Hawaii argued that plaintiffs' motion for summary

In its April 29, 2008 Order Denying in Part and
Granting in Part Defendant's Amended Motion to Dismiss or in the
Alternative for Summary Judgment on Second Amended Complaint
filed on February 13, 2008 ("April 2008 Order"), this Court
directed both parties attention to the Ninth Circuit's decision
in Bird.  In Bird, plaintiff, a paraplegic student, sued a
college for disability discrimination under Section 504 and the
ADA for failing to provide her with wheelchair access on certain
occasions during the college's overseas program in Australia.[4]
Id. at 1019.  Before the trip, the student was informed that she
may not be able to participate in certain activities but that the
program could otherwise accommodate her by making available
"adequate facilities."  Id. at 1017.  Once there, however, the
student did not have full wheel-chair access at approximately 22

---

judgment should not be granted because the accommodation in
question would have been a fundamental alteration of the
federally funded program.  Id. at 1054.  The Ninth Circuit,
however, refused to apply the fundamental alteration test.  Id.
As the Ninth Circuit aptly observed, the fundamental alteration
test did not apply to cases of facial discrimination.  Id.
Lovell, however, is inapposite.  The federally-funded program in
question here is not facially discriminatory.  As a result, the
fundamental alteration test is applicable.  If the accommodation
requested is substantial, or fundamentally alters the federally
funded program or benefit, there is no liability under Section
504.

[4]     Courts apply the same analysis under the Rehabilitation
Act and the ADA.  See Zukle v. Regents of the Univ. of Cal., 166
F.3d 1041, 1045 n. 11 (9th Cir. 1999).

locations.[5]  Id. at 1017-18.  She also was precluded from
participating in a number of outdoor activities as a result of
her disability.  Id. at 1018.  The Bird court, however, held that
this was insufficient to prevail on her Section 504 claim.  As
the court articulated, plaintiff "does not prevail on the ADA or
Rehab claim simply because the College failed to provide her with
wheelchair access on a number of occasions . . . [rather] the
central inquiry is whether the program, 'when viewed in its
entirety,' is readily accessible and usable by individuals with
disabilities."  Id. at 1021 (quoting Barden v. City of
Sacramento, 292 F.3d 1073, 1075-76 (9th Cir. 2002)).  Indeed, the
court found that the college had offered "ample evidence" of
accommodating the student's disability and that the student had
enjoyed many benefits offered by the program.[6]  Id. at 1021.  As
a result, the district court did not err in denying plaintiff
equitable relief.  Id.

_____

        [5]     For example, at Stradbroke Island, despite being
assured that her lodgings would be wheelchair-accessible,
plaintiff found the access to her bedroom involved a stairway,
and the doorway for the stalls in the bathroom were too narrow
for her wheelchair.  Id. at 1018.

        [6]     The Ninth Circuit found that the college provided the
student with alternative modes of transportation, e.g., paid for
her use of taxis in Sydney, and for her flight to Brisbane, while
others used buses and trains; arranged for a wheelchair
accessible van; compensated two students enrolled in the program
to be her helpers; purchased a sleeping cot manufactured to her
specifications; purchased a special showerhead for her use; and
provided her with a smaller, narrower wheelchair.  Id. at 1018.

- 12 -

In <u>Davis</u>, <u>supra</u>, another case concerning the issue of reasonable accommodations, respondent, a licensed practical nurse with a hearing disability, brought a Section 504 claim against a college because she was denied admission to the college's nursing program. Respondent argued that Section 504 compelled the college to undertake affirmative actions to accommodate for her disability. <u>Id.</u> at 407. As a result, respondent argued that the nursing program should be modified to provide her with full-time, one-on-one supervision. <u>Id.</u> Moreover, respondent argued that certain required courses be dispensed with altogether. <u>Id.</u> The <u>Davis</u> Court, however, held that this would be a "fundamental alteration in the nature of the program" above and beyond what is required by Section 504. <u>Id.</u> at 410.

### 3. The federally funded program or benefit is a regular public education.

Section 504 mandates that a disabled individual not be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any federally funded program "solely on the basis of his or her disability." 29 U.S.C. § 794(a). The federally funded program or benefit in question is a regular public education afforded to all children, disabled and non-disabled, not an education that has been tailored to the disabled individual's needs. Indeed, if the program or benefit in question is one that is only offered to that particular disabled student, or a program offered only to disabled students,

it is impossible to deny "meaningful access" solely on the student's disability.  Therefore, by Section 504's plain language, the federally funded program or benefit must be one that is afforded to all children, disabled and non-disabled. Indeed, such a practical analysis is in line with the central purpose of Section 504 to ensure "evenhanded" treatment of disabled individuals in relation to non-disabled individuals. See supra.

Plaintiffs are seemingly arguing that the program or benefit in question is the services that are set forth in Bryan's IEPs.  Bryan's IEP, however, sets forth services and accommodations that are tailored to his disability.  It accounts for the reality that disabled students have greater needs than non-disabled students.  In Alexander v. Choate, however, the United States Supreme Court stated, "Section 504 does not require the [recipient of federal funds] to alter this definition of the benefit being offered **simply to meet the reality that the handicapped have greater medical needs.**"  Id. at 303.  As a result, the services and accommodations in Bryan's IEPs is not the federally funded benefit in question.  Instead, the benefit or program in question is the same public education that is provided to non-disabled individuals.

4.    **Section 504 does not prescribe the content of a program.**

Section 504 involves issues of access; it does not

encompass the content of the federally-funded program.  See Timms
v. Metro. Sch. Dist. Of Wabash County, 722 F.2d 1310, 1318 (7th
Cir. 1983)(Section 504 merely "forbids exclusion from programs
rather than **prescribing the program's content**.") (emphasis
added).  In other words, the question is merely whether the DOE
provided Bryan with "reasonable accommodations" and modifications
to its regular public education to provide Bryan with the
opportunity to realize a meaningful benefit.  It does not
encompass what services, curriculum, etc. is actually provided
for under a regular public education.

    It is also important to clarify that Section 504 only
requires a recipient of federal funds to provide a disabled
student the **opportunity** to realize a meaningful benefit.  Section
504 does not require that the disabled individual gain equal
results.  See Alexander v. Choate, 469 U.S. 287, 304 (1985).  The
reality that the disabled individual did not gain equal results
does not mean the benefit was not meaningful.  As a result, the
question is simply whether by expending thousands of dollars on
Bryan, by providing Bryan with hundreds of skills trainers hours,
etc., the DOE provided Bryan with "reasonable accommodations"
that gave him the opportunity to realize a meaningful benefit.

    5.    **IDEA, and any denial of an IDEA FAPE, is
          irrelevant to whether "meaningful access" was
          denied under Section 504.**

    As stated supra, the federally funded program or

- 15 -

benefit in question is a regular public education, not a disabled student's FAPE or corresponding IEP. This alone signifies the irrelevance that the IDEA, and any denial of an IDEA FAPE, has to the instant action. Moreover, a further inquiry into Section 504 law, and the actions of Plaintiffs' in the present case, further reveals that the IDEA, and its requirements, are irrelevant to Plaintiffs' present Section 504 claim.

Prior to Mark H. v. Lemahieu, 513 F.3d 922, 937 (9th Cir. 2008), it was well-settled that the mere denial of a FAPE was insufficient to impose Section 504 liability for compensatory damages. See Order Denying Defendants' Motion for Summary Judgment, construed as a Motion for Judgment on the Pleadings; Denying Plaintiffs' Motion for Partial Summary Judgment; Granting in Part and Denying in Part Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement; Denying Plaintiffs' Motion to Strike Declarations for Non-Compliance with Rule 56(e); and Denying Plaintiffs' Motion to Amend and/or Supplement the Record ("December 2006 Order") at 31; see also M.S. S. Ex rel. G. v. Vashon Island Sch. Dist., 337 F.3d 1115, 1125 n. 14 (9th Cir. 2003); N.L. v. Knox County, 315 F.3d 688, 695 (6th Cir. 2003); Sellers v. Sch. Bd. of the City of Manassas, 141 F.3d 524 (4th Cir. 1998); Monahan v. State of Nebraska, 687 F.2d 1164 (8th Cir. 1982). Post-Mark H., it is also now clear that the requirements

under an IDEA FAPE and a Section 504 FAPE "contain significant differences." Mark H., 513 F.3d at 933.  Further, Plaintiffs, by their own choice, disregarded the recommendation of the Mark H. court and carefully extracted any mention of FAPE, Section 504 or otherwise, from their Second Amended Complaint effectively nullifying the utility of FAPE in the instant action.  See Plaintiffs' Second Amended Complaint filed February 13, 2008. Thus, the appropriate standard of law applicable to the instant action is whether Bryan was denied "meaningful access" to a public education.  Indeed, there is no authority equating "meaningful access" to the denial of an IDEA FAPE.  In fact, there is no authority even equating "meaningful access" to any of the separate requirements created under the IDEA.  As a result, the IDEA, and what is required under the IDEA, is simply irrelevant to the instant action.

Similarly, Bryan's "Individualized Education Program" or "IEP" is equally irrelevant to the instant action.  An IDEA FAPE is provided through the creation of an IEP.  See Aguirre v. Los Angeles Unified Sch. Dist., 461 F.3d 1114, 1115-16 (9th Cir. 2006).  An IEP, however, is not created to comply with Section 504's "meaningful access" standard.  Indeed, an IEP provides services that are above and beyond "reasonable accommodations." There is absolutely no authority stating that each and every service, or even half of the services, designated in an IEP must

- 17 -

be provided in order to provide a disabled student "meaningful access" under Section 504. As a result, evidence of Bryan's IEP is simply irrelevant to the instant action.

6. **Compensatory damages under Section 504 carries an extraordinarily high burden.**

The standard of proving a Section 504 claim is "extraordinarily high." DOE v. Arlington County Sch. Bd., 41 F.Supp.2d 599, 608 (E.D. Va. 1999). Indeed, compensatory damages under Section 504 are only available if a plaintiff proves that the defendant intentionally discriminated against the plaintiff "solely by reason of his disability." 29 U.S.C. § 794(a); Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001); see also December 2006 Order at 36.

Intentional discrimination, and in turn an award of compensatory damages, requires a plaintiff to prove by a preponderance of the evidence that the defendant acted with "deliberate indifference." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that [] likelihood." Id. at 1139. The first element is satisfied only upon a showing that the public entity had notice that an accommodation was required. Id. The second element is satisfied if a plaintiff proves that the entity's failure to act was "a result of conduct that is more than negligent, and **involves an**

- 18 -

element of deliberateness." Id. Further, "deliberate
indifference" requires more than a showing of mere recklessness
or negligent behavior. It "does not occur where a duty to act
may simply have been overlooked, or a complaint may reasonably
have been deemed to result from events taking their normal
course." Id. It does not occur where the failure to act "may be
attributable to bureaucratic slippage that constitutes negligence
rather than deliberate action or inaction." Id.

In addition, the majority of courts have also required
proof of "bad faith" or "gross misjudgment" before finding a
Section 504 violation. See Sellers v. Sch. Bd. Of the City of
Manassas, Virginia, 141 F.3d 524, 529 (4th Cir. 1998)(plaintiffs
"allege no facts which would suggest the defendants
discriminated, i.e., that they acted with bad faith or gross
misjudgment"); Monahan v. State of Nebraska, 687 F.2d 1164, 1171
(8th Cir. 1982)("either bad faith or gross misjudgment should be
shown before a § 504 violation can be made out, at least in the
context of education of handicapped children"); Alex G. ex rel.
Dr. Steven G. v. Bd. of Trustees of Davis Joint Unified Sch.
Dist., 387 F.Supp.2d 1119, 1124 (E.D. Cal. 2005)(same); Zayas v.
Commonwealth of Puerto Rico, 378 F.Supp.2d 13, 21 (D. P.R.
2005)(dismissing plaintiffs' Section 504 claim with prejudice
where "[p]laintiffs presented no evidence of deliberate
indifference or bad faith"); Brantley v. Indep. Sch. Dist. No.

625, 936 F.Supp. 649 (D. Minn. 1996)(showing of bad faith or

gross misjudgment required for Section 504 claim).

As the Monahan court aptly observed, a bad faith or

gross misjudgment standard of liability:

> reflects what we believe to be a proper
> balance between the rights of handicapped
> children, the responsibilities of state
> educational officials, and the competence of
> courts to make judgments in technical fields.
> **So long as the state officials involved have
> exercised professional judgment, in such a
> way as not to depart grossly from accepted
> standards among educational professionals,** we
> cannot believe that Congress intended to
> create liability under § 504.

Monahan, 687 F.2d at 1171 (emphasis added).

The Monahan court's observations undeniably coincides

with the inclination of courts to give great deference to the

professional judgment of educators.  See Regents of the Univ of

Michigan v. Ewing, 474 U.S. 214, 225 (1985)(stating that courts

"should show great respect for the faculty's professional

judgment"); Zukle v. Regents of the Univ. Of California, 166 F.3d

1041-1047-48 (9th Cir. 1999)(agreeing with the First, Second, and

Fifth Circuits that an "educational institution's academic

decisions are entitled to deference."); Brantley v. Indep. Sch.

Dist. No. 625, 936 F.Supp. 649, 657 (D. Minn. 1996)(rejecting

plaintiffs' claim of disability discrimination stemming from IDEA

type educational decisions because any inappropriate decisions

made by the defendant school district were, at most, errors in

professional judgment).

        Plaintiffs must also specifically prove "bad faith" or "gross misjudgment"; it is insufficient for Plaintiffs to simply couch their allegations in these legal catchphrases.  For example, in <u>Sellers</u>, <u>supra</u>, the plaintiffs claimed that the complete failure by the school board to provide **any** special education services to their child for over ten years, despite persistent and repeated requests by the mother to do so, was a total failure of its responsibilities and exhibited "gross misjudgment" sufficient to at least raise an issue of material fact on their Section 504 claim.  <u>See</u> Appellants' Opening Brief, 1997 WL 33492433 at *7-10 and *18-21.  Similarly, in <u>Petaluma Joint Union High Sch. Dist.</u>, 2000 WL 1229059 at *1 (N.D. Cal. 2000), the plaintiffs argued that the school district's failure to provide special education services, despite its knowledge that the child needed such services, amounted to "bad faith, gross misjudgment or deliberate indifference."  In both of these cases, the courts dismissed the plaintiffs' claims as a matter of law. These courts found that these types of allegations, despite the legal catchphrases used, basically consisted of "mere denials of a FAPE" that were insufficient to create liability under Section 504.

    B.    **<u>Section 504 Retaliation Claim</u>**

        Parent Plaintiffs' retaliation claim is based on

Section 504's implementing regulation, which provides:

> (b) Discriminatory actions prohibited.
>
>> (1) A recipient may not discriminate on the basis of handicap in the following ways directly or through contractual, licensing, or other arrangements under any program or activity receiving Federal financial assistance.
>>
>> \*       \*       \*
>>
>> (vii) Intimidate or retaliate against any individual, whether handicapped or not, for the purpose of interfering with any right secured by section 504 or this subpart.

28 C.F.R. § 42.503(b)(1)(vii); see also 29 C.F.R. § 1614.101(b)("No person shall be subject to retaliation for opposing any practice made unlawful by . . . the Rehabilitation Act . . . or for participating in any stage of administrative or judicial proceedings under those statutes.").

### 1.    Alleged improper action must be taken "because of" retaliation.

At trial[7], Parent Plaintiffs must "show by a preponderance of the evidence that the challenged [action] was 'because of' [retaliation]." See Costa v. Desert Palace, Inc.,

---

[7]    The McDonnell Douglas burden-shifting test commonly used to evaluate Title VII retaliation claims, as well as Section 504 claims, generally is limited to determining motions for summary judgment. See Kendrick v. Penske Transp. Svcs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000); see also Costa v. Desert Palace, Inc., 299 F.3d 838, 856-57 (9th Cir. 2002) (en banc), aff'd 539 U.S. 90 (2003) ("[r]egardless of the method chosen to arrive at trial, it is not normally appropriate to introduce the McDonnell Douglas burden-shifting framework to the jury).

299 F.3d 838, 856-57 (9th Cir. 2002)(en banc), aff'd 539 U.S. 90
(2003)(Title VII disparate treatment case); Stegell v. Citadel
Broad. Co., 350 F.3d 1061, 1068 (9th Cir. 2003)(retaliation case
citing Costa for preceding statement of law).  In other words,
Plaintiffs must prove by a preponderance of the evidence the
following:

> (1)  Plaintiffs engaged in a protected
>      activity under the Rehabilitation Act;
>
> (2)  Plaintiffs were subjected to an adverse
>      action at the time, or after, the
>      protected activity occurred; and
>
> (3)  Plaintiffs were subjected to the adverse
>      action because of their participation in
>      a protected activity.

Under the first element, Parent Plaintiffs must prove
that they were engaged in a "protected activity."  A "protected
activity" is "an informal or formal complaint about, or other
opposition to, [a federal funding recipient's] practice or act .
. . if the [complainant] reasonable believes such an act to be in
violation of the [Rehabilitation Act]."  Jeseritz v. Potter, 282
F.3d 542, 548 (8th Cir. 2002).

Under the second element, Parent Plaintiffs must prove
that they were subjected to an adverse action.  In Burlington
Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405
(2006), a Title VII retaliation case, the United States Supreme
Court, recognizing a split among circuits, set forth a uniform
standard in determining an "adverse employment action."  The

purpose of Title VII's anti-retaliation provision is to prohibit
employer actions that are likely "to deter victims of
discrimination from complaining . . . ."  Id. at 2415 (citation
omitted).  This is a purpose similar to that of the
Rehabilitation Act's anti-retaliation provision.  See 28 C.F.R. §
42.503(b)(1)(vii); 29 C.F.R. § 1614.101(b).  As a result, while
the instant case is not an employment or Title VII case, the DOE
submits that the Burlington decision is, at the very least,
instructive in analyzing Parent Plaintiffs' retaliation clam.

In Burlington, the Court held that to establish an
"adverse employment action," "a plaintiff must show that a
reasonable employee would have found the [ ] action materially
adverse."  Id. at 2415.  "Materially adverse" is defined to mean
an action that would have likely "dissuaded a reasonable worker
from making or supporting a charge of discrimination."  Id.
(citation omitted).  The Court stated that the significance of
the "materially adverse" standard was to "separate significant
from trivial harms."  Id.  Trivial harms such as petty slights or
minor annoyances do not create a deterrence sufficient to
constitute an "adverse employment action."

Finally, the third element requires Parent Plaintiffs
to establish a causal connection between the protected activity
and the adverse action.  This means that Parent Plaintiffs must
prove by a preponderance of the evidence that they were subjected

- 24 -

to the adverse action "because of" their participation in the protected activity.

> ## 2.    A Section 504 retaliation claim for money damages requires proof of deliberate indifference.

The Ninth Circuit has recognized that "[t]o recover monetary damages under . . . the Rehabilitation Act, a plaintiff must prove intentional discrimination." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Similarly, in Sheely v. MRI Radiology Network, P.A., 2007 WL 3087215 at *18 (11th Cir. Oct. 24, 2007), the Eleventh Circuit held that non-economic compensatory damages are available under Section 504 only upon a showing of intentional discrimination. Indeed, the Honorable Helen Gillmor recognized this required proof as it relates to Parent Plaintiffs' Section 504 retaliation claim, stating:

> Plaintiff parents may recover non-economic damages suffered by them as a result of [the DOE's] allegedly retaliatory conduct to the extent proven at trial. . . . [T]he Plaintiffs must prove that [the DOE] acted with deliberate indifference in order to recover such damages.

See Order Granting Plaintiffs Ann Kimball Wiles' and Stanley Bond's Motion to Amend their Complaint to Include an Express Claim for Non-Economic Damages for Retaliation ("November 2007 Order") at 17 (citation omitted)(emphasis added).

As a result, to recover money damages for their Section 504 retaliation claim, Parent Plaintiffs must prove that intentional discrimination or "deliberate indifference" on the

part of the DOE.[8]

VII.    <u>PREVIOUS MOTIONS</u>

     The following is a listing of the motions that have been filed in this case and each motion's disposition:

  A    <u>Motion No. 1</u>

       Title:       Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Relief Against Defendants filed July 30, 2004.

       Disposition:  Motion WITHDRAWN on February 9, 2005.

  B.    <u>Motion No. 2</u>

       Title:       Plaintiffs' Amended Motion To Enforce Administrative Order filed September 17, 2004.

       Disposition:  Motion WITHDRAWN on February 10, 2005.

  C.    <u>Motion No. 3</u>

       Title:       Plaintiffs' Motion For Leave To File Amended and Supplemental Complaint

       Disposition:  Motion GRANTED on May 19, 2005.

  D.    <u>Motion No. 4</u>

---

[8]    Parent Plaintiffs' retaliation claim should not be confused with a claim for parents' own personal injuries allegedly arising from the DOE's alleged intentional discrimination against Bryan. As this Court has already concluded, Parent Plaintiffs lack standing to bring the latter claim because they are not disabled, and are not a participant in, or a beneficiary of, a program receiving federal funds. <u>See</u> December 2006 Order at 39.

|   |   |
|---|---|
| Title: | Motion By Plaintiff's To Consolidate |
| Disposition: | Motion granted on July 26, 2005. |

E.    **Motion No. 5**

|   |   |
|---|---|
| Title: | Motion By Defendant Department of Education to Stay Proceedings |
| Disposition: | Motion DENIED on December 14, 2005. |

F.    **Motion No. 6**

|   |   |
|---|---|
| Title: | Plaintiffs' Motion To Determine that the Request For Admissions are Deemed Admitted |
| Disposition: | Motion GRANTED on April 21, 2006. |

G.    **Motion No. 7**

|   |   |
|---|---|
| Title: | Defendants Motion for Summary Judgment filed on February 24, 2006. |
| Disposition: | Motion DENIED on December 19, 2006. |

H.    **Motion No. 8**

|   |   |
|---|---|
| Title: | Plaintiffs' Motion to Compel Attendance at Deposition |
| Disposition: | Motion TERMINATED ON April 21, 2006. |

I.    **Motion No. 9**

|   |   |
|---|---|
| Title: | Motion For Partial Summary Judgment by Ann Kimball Wiles, Stanley Bond, Bryan Wiles-Bond filed February 22, 2006. |
| Disposition: | Motion DENIED on December 19, 2006. |

J.    **Motion No. 10**

|  | Title: | Plaintiffs' Motion to Strike Declarations for Non-Compliance with Rule 56(e) filed March 17, 2006. |
|---|---|---|
|  | Disposition: | Motion DENIED on December 19, 2006. |

**K.    Motion No. 11**

|  | Title: | Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement filed April 24, 2006. |
|---|---|---|
|  | Disposition: | Motion GRANTED IN PART and DENIED IN PART on December 19, 2006. |

**L.    Motion No. 12**

|  | Title: | Plaintiffs' Motion To Amend and/or Supplement the Record filed August 17, 2006. |
|---|---|---|
|  | Disposition: | Motion DENIED on December 19, 2006. |

**M.    Motion No. 13**

|  | Title: | Defendants Department of Education and Alvin Rho's Motion for Partial Summary Judgment re: Plaintiffs' Individual Claims for Non-Economic Damages Pursuant to the Rehabilitation Act 29 U.S. C. Sec. 729 filed July 12, 2007. |
|---|---|---|
|  | Disposition: | Motion GRANTED IN PART and DENIED IN PART on September 17, 2007. Motion GRANTED to the extent that Plaintiffs seek to rely on Winkleman v. Parma City School District, 127 S.Ct. 1994 (2007) as an expansion of their rights. MOTION DENIED WITHOUT PREJUDICE to the extent it seeks to preclude Plaintiffs from asserting a |

retaliation claim under the Rehabilitation Act and from recovering non-economic damages for such a claim.

N.   **Motion No. 14**

Title:          Defendants' Motion to Strike Shelby Floyd As a Witness filed September 5, 2007.

Disposition:    Motion DENIED on December 14, 2007.

O.   **Motion No. 15**

Title:          Plaintiffs' Motion To Compel the Oral Deposition of Lono Beamer filed September 24, 2007.

Disposition:    Motion DENIED on October 3, 2007. Lono Beamer to send letter to Court by October 2, 2007 on where emails came from, how emails got to JoAnn Hill, and to corroborate that Ms. Hill gave the emails to Mr. Beamer.

P.   **Motion No. 16**

Title:          Defendants' Motion To Compel Department of Human Services To Produce Child Welfare Services Records For Bryan Wiles-Bond filed October 2, 2007.

Disposition:    Motion DENIED without prejudice on December 14, 2007.

Q.   **Motion No. 17**

Title:          Plaintiffs Ann Kimball Wiles's and Stanley Bond's Motion To Amend Their Complaint To Include An Express Claim For Non-Economic Damages For Retaliation filed October 2, 2007.

Disposition:   Motion GRANTED on November 13,
2007.

R.   **Motion No. 18**

Title:   DOE's Amended Motion to Dismiss, or
in the Alternative for Summary
Judgment on, Second Amended
Complaint filed on February 13,
2008

Disposition:   Motion GRANTED IN PART and DENIED
IN PART on April 29, 2008.

VIII.   **WITNESSES TO BE CALLED**

1.   Ann Kimball Wiles, c/o Davis Levin Livingston
Grande, 400 Davis Levin Livingston Grande Place, 851 Fort Street,
Honolulu, HI  96813.  Ms. Wiles is Bryan's mother and is one of
the plaintiffs in this case.  In general, Ms. Wiles will testify
on issues pertaining to liability and damages.  Ms. Wiles will
also testify regarding, among other things, that Bryan was not
completely excluded from receiving a public education; the DOE
provided Bryan with at least 75 percent of the services set forth
in his IEP; there were difficulties finding and retaining
qualified skills trainers; she approved the hiring of skills
trainers; and the DOE brought in Pacific Child & Family
Associates at Plaintiffs' request.

2.   Stanley Bond, plaintiff, c/o Davis Levin
Livingston Grande, 400 Davis Levin Livingston Grande Place, 851
Fort Street, Honolulu, HI  96813.  Mr. Bond is Bryan's father and
is one of the plaintiffs in this case.  In general, Mr. Bond will

testify on issues pertaining to liability and damages.  Mr. Bond
will also testify regarding, among other things, that Bryan was
not completely excluded from receiving a public education; that
the DOE provided Bryan with at least 75 percent of the services
set forth in his IEP; there were difficulties finding and
retaining qualified skills trainers; that he approved the hiring
of skills trainers; and that the DOE brought in Pacific Child &
Family Associates at Plaintiffs' request.

        3.   Alvin Rho, c/o Watanabe Ing & Komeiji LLP, First
Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI
96813.  Mr. Rho was the West Hawaii Complex Area Superintendent
until December 31, 2004.  He is expected to testify as to, among
other things, the DOE's efforts to implement the IEPs and provide
services, funding of Bryan's educational program and  approval of
funding to hire Pacific Child & Family Associates, efforts to
comply with the administrative court orders and the Settlement
Agreement, and other matters related to liability and damages.

        4.   Judith Anne Radwick, c/o Watanabe Ing & Komeiji
LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor,
Honolulu, HI 96813.  Ms. Radwick was the District Education
Specialist for the West Hawaii Complex from 1999 until May 2004.
She is expected to testify as to, among other things, her
observations and interactions with Plaintiffs, participation and
implementation of the IEPs, interactions with the provider

agencies, efforts to recruit and train skills trainers, efforts to comply with the administrative court orders and the Settlement Agreement, and other matters related to liability and damages.

5.    JoAnn Hill, Resource Teacher, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Hill was the Temporary District Education Specialist for the West Hawaii Complex from May 2004 to October 2004.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, her interactions with the provider agencies, efforts to recruit and train skills trainers, efforts to comply with the administrative court orders and the Settlement Agreement, and other matters related to liability and damages.

6.    Linda Price, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Price was the program coordinator for Child & Family Services, one of the provider agencies under contract with the DOE, from 2002 until September 2004, and is the current District Educational Specialist for the West Hawaii Complex.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, efforts to recruit and train skills trainers, efforts to comply with the administrative court orders

- 32 -

and the Settlement Agreement, and other matters related to
liability and damages.

7.   Kate Tolentino, c/o Watanabe Ing & Komeiji LLP,
First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu,
HI 96813.  Ms. Tolentino is the current principal at Honokaa
Elementary School, and was District Educational Specialist
assigned to Bryan's case from late September 2004 up until the
time Plaintiffs left Hawaii in January 2005.  She is expected to
testify as to, among other things, her observations and
interactions with Plaintiffs, participation and implementation of
the IEPs, interactions with the provider agencies, efforts to
recruit and train skills trainers, efforts to comply with the
administrative court orders and the Settlement Agreement, efforts
to hire Pacific Child & Family Associates, and other matters
related to liability and damages.

8.   Kelly Stern, Waimea Middle School, 67-1229
Mamalohoa Highway, Kamuela, HI 96743.  Ms. Stern was the program
administrator for The Institute For Family Enrichment ("TIFFE"),
one of the provider agencies under contract with the DOE, from
February 3, 2003 to August 1, 2005.  She is expected to testify
as to, among other things, her observations and interactions with
Plaintiffs, participation and implementation of the IEPs,
interactions with other provider agencies, efforts to recruit and
train skills trainers, efforts to comply with the administrative

court orders and the Settlement Agreement, and other matters related to liability and damages.

      9.  Lori Bolton, Psy.D, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Dr. Bolton is the current DOE clinical psychologist assigned to Ka`u High School and Pahala Elementary School, and was the temporary District Education Specialist for Autism for the District of Hawaii from July 14, 2004 to September 1, 2004. She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, interaction with provider agencies, efforts to recruit skills trainers, efforts to comply with the administrative court orders and the Settlement Agreement, and other matters related to liability and damages.

      10.  Dru Copeland, Ph.D., 9 Deer Run, Randolph, New Jersey 07869.  Dr. Copeland was the Autism Consultant with Ala Kai Na Keiki and then with TIFFE who was assigned to Bryan's case from September 2002 up until the Plaintiffs left Hawaii in January 2005.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, supervising and training skills trainers, DOE's efforts to implement IEPs and provide educational services, DOE efforts to recruit and train skills trainer, and other matters related to liability and

damages.

11.  Art Souza, c/o Watanabe Ing & Komeiji LLP, First
Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI
96813.  Mr. Souza is the current West Hawaii Complex Area
Superintendent and was the former principal at Waikoloa
Elementary School.  He is expected to testify as to, among other
things, his observations and interactions with Plaintiffs,
participation and implementation of the IEPs, and other matters
related to liability and damages.

12.  Nancy Perry, c/o Watanabe Ing & Komeiji LLP, First
Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI
96813.  Ms. Perry was one of Bryan's Special Education ("SPED")
teachers at Waikoloa Elementary School.  She is expected to
testify as to, among other things, her observations and
interactions with Plaintiffs, participation and implementation of
the IEPs, and other matters related to liability and damages.

13.  John Walker, c/o Watanabe Ing & Komeiji LLP, First
Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI
96813.  Mr. Walker was one of Bryan's SPED teachers at Waikoloa
Elementary School.  He is expected to testify as to, among other
things, his observations and interactions with Plaintiffs,
participation and implementation of the IEPs, and other matters
related to liability and damages.

14.  Tristine Graetz, c/o Watanabe Ing & Komeiji LLP,

First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Graetz is currently an Educational Assistant at Honaunau Elementary School, and was the Educational Assistant at Waikoloa Elementary School.  Ms. Graetz was also hired by the Plaintiffs to provide home care for Bryan in 1999.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, and other matters related to liability and damages.

15.  Nancy Matsukawa, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Matsukawa is the current principal at Kealakehe Elementary School.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, and other matters related to liability and damages.

16.  Shirley Revelle, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Revelle is currently a SPED teacher at Waikoloa Elementary School, and was Bryan's SPED teacher at Kealakehe Elementary School.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, and other matters related to liability and damages.

17.  Rebecca Pierson, c/o Watanabe Ing & Komeiji LLP,

First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Pierson is the current Autism Resource Teacher in the West Hawaii District Office, and was Bryan's SPED teacher at Kealakehe Elementary School.  Ms. Pierson also worked with Bryan during the Summer 2004 ESY session.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, and other matters related to liability and damages.

18.  Robert Gentzel, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Mr. Gentzel was the principal at Kealakehe Intermediate School until October 2004.  He is expected to testify as to his observations and interactions with Plaintiffs, participation and implementation of the IEPs, efforts to comply with the administrative court orders and the Settlement Agreement, and other matters related to liability and damages.

19.  Bill Brown, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Mr. Brown was Bryan's teacher for the summer 2004 ESY session.  He is expected to testify as to, among other things, his observations and interactions with Plaintiffs, participation and implementation of the IEPs, and other matters related to liability and damages.

20.  Jennifer Harris, c/o Watanabe Ing & Komeiji LLP,

First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Harris is currently a SPED teacher at Keaau High School, and was Bryan's SPED teacher at Kealakehe Intermediate School.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, participation and implementation of the IEPs, and other matters related to liability and damages.

   21.  Karen Johnston, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Johnston is the Student Services Coordinator at Kealakehe Intermediate School.  She is expected to testify as to her observations and interactions with Plaintiffs, if any, the procurement of educational services, and other matters related to liability and damages.

   22.  Leimomi Respicio, Hawaii Behavioral Health, 234 Waianuenue Avenue, Hilo, HI 96720.  Ms. Respicio was the Skills Trainer Coordinator for the Big Island for Hawaii Behavioral Health, one of the provider agencies under contract with the DOE She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, if any, efforts to recruit and train skills trainers, and other matters related to liability and damages.

   23.  William "Bill" Beljean, 75-309 Malulani Drive, Kailua-Kona, HI 96740.  Mr. Beljean was a skills trainer with

Child & Family Services ("CFS") who provided skills trainer services to Bryan from June 26, 2003 to January 27, 2004. He is expected to testify as to, among other things, his observations and interactions with Plaintiffs, and other matters related to liability and damages.

24. Barbara Coffman, Program Director, Child & Family Service, 81-6587 Mamalahoa Highway, Kealakekua, HI 96750. Ms. Coffman was a skills trainer with the DOE who provided skills trainer services to Bryan from October 2002 to December 2002. She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, and other matters related to liability and damages.

25. Richi Stallard, 114 Howards Hill, Kure Beach, North Carolina 28449. Ms. Stallard was a skills trainer with TIFFE who provided skills trainer services to Bryan July 28, 2003 to October 20, 2003. She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, and other matters related to liability and damages.

26. Danielle Doucette, P.O. Box 154, Kealakekua, HI 96750. Ms. Doucette was a skills trainer with TIFFE who provided skills trainer services to Bryan from March 2, 2004 to July 30, 2004. She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, and other matters related to liability and damages.

27.  Rebecca Gavin, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Gavin was a skills trainer with TIFFE who provided skills trainer services to Bryan from March 3, 2003 to July 27, 2004.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, and other matters related to liability and damages

28.  Rae Graber, 1300 Kamehameiki Road, Kula, HI 96790. Ms. Graber was a skills trainer with TIFFE who provided skills trainer services to Bryan from February 9, 2004 to June 23, 2004. She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, and other matters related to liability and damages

29.  Sven Lindemann, P.O. Box 29, Holualoa, HI 96725. Mr. Lindemann was a skills trainer with TIFFE who provided skills trainer services to Bryan from August 2, 2004 to September 10, 2004 at Kealakehe Intermediate School.  He is expected to testify as to, among other things, his observations and interactions with Plaintiffs, and other matters related to liability and damages.

30.  Corrina Serrao, 73-1084 Loloa Drive, Kailua-Kona, HI 96740.  Ms. Serrao was a skills trainer with Hawaii Behavioral Health who provided skills trainer services to Bryan from August 2, 2004 to September 10, 2004 at Kealakehe Intermediate School. She is expected to testify as to, among other things, her

observations and interactions with Plaintiffs, and other matters related to liability and damages.

31.  Jeremy Watson, Skills Trainer, 44 Project 32 Road, Accord, New York 12404.  Mr. Watson was a skills trainer with TIFFE who provided skills trainer services to Bryan from October 20, 2004 up until Plaintiffs' left Hawaii.  He is expected to testify as to, among other things, his observations and interactions with Plaintiffs, and other matters related to liability and damages.

32.  Cara Entz, M.A., MFT, Pacific Child and Family Associates, 410 West Arden Avenue, Suite 203, Glendale, CA 91203.  Ms. Entz is the Clinical Director for Pacific Child and Family Associates ("PCFA").  She is expected to testify as to, among other things, her on-site evaluation in October 2004, PCFA's proposal to provide services to Bryan, her observations and interactions with Plaintiffs, and other matters related to liability and damages.

33.  Sherri Adams, c/o Watanabe Ing & Komeiji LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI 96813.  Ms. Adams is a DOE Speech Pathologist who provided speech pathology services to Bryan.  She is expected to testify as to, among other things, her observations and interactions with Plaintiffs, if any, participation and implementation of the IEPs, and other matters related to liability and damages.

- 41 -

34.    Naomi Shiraishi, c/o Watanabe Ing & Komeiji LLP,
First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu,
HI 96813.  Ms. Shiraishi is a DOE Speech Pathologist who provided
speech pathology services to Bryan at Kealakehe Intermediate
School.  She is expected to testify as to, among other things,
her observations and interactions with Plaintiffs, if any,
participation and implementation of the IEPs, and other matters
related to liability and damages.

35.    Wendy Clark, c/o Watanabe Ing & Komeiji LLP, First
Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu, HI
96813.  Ms. Clark is a DOE Occupational Therapist at Kahakai
Elementary School who provided services to Bryan.  She is
expected to testify as to, among other things, her observations
and interactions with Plaintiffs, if any, and other matters
related to liability and damages.

36.    Mahea Edwards, c/o Watanabe Ing & Komeiji LLP,
First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu,
HI 96813.  Ms. Edwards was a DOE Resource Teacher.  She is
expected to testify as to, among other things, her observations
and interactions with Plaintiffs, if any, participation and
implementation of the IEPs, and other matters related to
liability and damages.

37.    Dayle Yokoyama, c/o Watanabe Ing & Komeiji LLP,
First Hawaiian Center, 999 Bishop Street, 23rd Floor, Honolulu,

HI 96813.  Ms. Yokoyama is a SPED teacher at Kealakehe

Intermediate School.  She is expected to testify as to, among

other things, her observations and interactions with Plaintiffs,

participation and implementation of the IEPs, if any, her

purchase of materials and supplies for Bryan's education program,

and other matters related to liability and damages.

    38.  Andrell Beppu Aoki, c/o Watanabe Ing & Komeiji

LLP, First Hawaiian Center, 999 Bishop Street, 23rd Floor,

Honolulu, HI 96813.  Ms. Aoki was the State of Hawaii's contract

specialist for the DOE contract office.  She will testify as to

the total expenditures and costs spent on Bryan's education

program.

    39.  Connie Santana, Child Protective Services, 73-

4257, Hulikoa Drive, #C, Kailua-Kona, HI 96740.  Ms. Santana is

expected to testify as to, among other things, a report made to

her by Kate Tolentino.

    40.  Allan Zachary, Department of Human Services, P.O.

Box 6, Naalehu, HI 96772.  Mr. Zachary is an investigator with

the Department of Human Services.  He is expected to testify as

to, among other things, his inspection of the Plaintiffs' home

and of the conditions he found to exist at the time of his

inspection.

    41.  Bryna Siegel, Ph.D. (Expert), Langley Porter

Psychiatric Institute, University of California at San Francisco,

401 Parnassus Avenue, San Francisco, CA 94143-0984. Dr. Siegel is expected to testify as to, among other things, her observations and examinations of Bryan, her review of reports submitted by Plaintiffs' expert witnesses, and her assessment of Bryan's developmental disability.

      42. Richard Goka, M.D. (Expert), P.O. Box 14090, Pinedale, CA 93650. Dr. Goka is expected to testify as to, among other things, his opinions related to a life care plan for Bryan and his review of reports submitted by Plaintiffs' expert witnesses.

      43. Custodians of Records as deemed necessary, including, but not limited to DOE representatives such as Desiree Kaiawe to authenticate documents.

      44. Any person listed in Plaintiff's Pre-Trial Statement, Disclosure Statement or any amendments or supplements thereto.

      45. The DOE reserves the right to call additional and/or rebuttal witnesses as necessary.

IX.      **EXHIBITS, SCHEDULES, AND SUMMARIES**

      The parties' trial exhibits and exhibit lists are due to be exchanged by July 28, 2008. The following is a preliminary list of exhibits, schedules and summaries.

<b>LIST OF EXHIBITS</b>

| DOC. NO(S) | DESCRIPTION |
|---|---|
| WB0005-0018 | Individualized Education Program Report, dated 10/19/99 |
| WB 0054-0072 | Individualized Education Program Report, dated 1/29/01 |
| WB0073-0092 | Individualized Education Program Report, dated 1/28/02 |
| WB0093-0113 | Individualized Education Program Report, dated 5/21/02 |
| WB0114-0130 | Individualized Education Program Report, dated 11/18/02 |
| WB0131-0147 | Individualized Education Program Report, dated 11/25/03 |
| WB0148-0159 | Individualized Education Program Report, dated1/09/04 |
| WB0160-0171 | Individualized Education Program Report, dated 6/02/04 |
| WB0172-0183 | Individualized Education Program Report, dated 7/21/04 |
| WB0184-0197 | Individualized Education Program Report, dated 8/16/04 and 8/25/04 |
|  | Individualized Education Program Report, dated 4/10/06 |
|  | Individualized Education Program Report, dated 11/29/04 |
| DOE 1073 | Prior Written Notice of Department Action from Robert Gentzel, Principal of Kealakehe Intermediate School, dated 6/07/04 |
| DOE 1210-1213 | Kealakehe Intermediate School's 7/20/04 Eligibility Meeting Information and Notes, 11/04/02 Initial Evaluation Summary Report, 7/20/04 Prior Written Notice of Department Action, and 7/20/04Student Support or Re-Evaluation Team Meeting Information and Notes re: Bryan Wiles-Bond |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 1233 | Kealakehe Intermediate School Meeting Announcement, dated 9/13/02 |
| DOE 1234 | Kealakehe Intermediate School Eligibility Meeting Information and Notes, dated 11/08/02 |
| DOE 1230-1232 | Kealakehe Intermediate School Evaluation Summary Report, dated 11/14/02 |
| DOE 1235 | Kealakehe Intermediate School Prior Written Notice of Department Action, dated 11/14/02 |
| DOE 0013 | Gilpin Manor Elementary School Final Progress Report prepared by Sharon Bond, for period 4/12/99 thru 5/07/99 |
| DOE 0016 | Individualized Education Plan, 1998-1999 |
| DOE 0017-0019 | Occupational Therapy Evaluation prepared by Sharleen Engel, Test Date 4/20/99 |
| DOE 0020-0026 | Individualized Education Program Report, Part 2 |
| DOE 0034 | Cecil County Public Schools Speech and Language Progress Report for School Year 1988-1999, Grade K |
| DOE 0042-0043 | Memo dated 3/01/99 from Ann Wiles and Stanley Bond to Alan Loman, Special Education Coordinator |
| DOE 0044-0045 | Cecil County Public Schools Special Education Speech/Language Assessment Report dated ___/20/99, prepared by Sharon Bond, Speech Language Pathologist |
| DOE 0048 | Cecil County Public Schools Individualized Education Plan, dated 12/09/98 |
| DOE 0106 | Speech/Language Progress Notes, dated March 1997, prepared by Melissa Glendenning, Webster School |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 0107 | Occupational Therapy Report dated March 1997, prepared by Sheryl Bas |
| DOE 0108-0109 | The Webster School Narrative Summary Report for 2nd Quarter, dated 2/03/97 |
| DOE 0110 | Speech/Language Progress Notes, dated February 1997, prepared by Melissa Glendenning |
| DOE 111-0112 | The Webster School Narrative Summary Report, dated 11/12/96 |
| DOE 0126-0126a | Waikoloa Elementary School Educational Evaluation, dated Oct 1 & 7, 1999 |
| DOE 0131-0134 | DOE Hawaii District Office Special Services Social Summary, dated 9/14/99 |
| DOE 0135 | Criteria for Autism, Waikoloa Elementary School, dated 10/19/99 |
| DOE 0136-0138 | Vineland Adaptive Behavior Scales Narrative Report, dated 9/14/99 |
| DOE 0139-0142 | Department of Health Initial Occupational Therapy Evaluation, Test date 10/06/99 |
| DOE 0363 | Training Schedule for DTT and Structured Teaching, Five-Day Session #1 Kealakehe Intermediate School, dated October 2004 |
| DOE 0377 | Memo dated 4/22/03 from Colleen Matsushita to Hawaii Tribune Herald Classified Dept re: Circulation of Recruitment Ad for Skills Trainers |
| DOE 0403 | Verification Letter dated 9/15/04 from Mahea Edwards re: develop curriculum and activities to address the goals and objectives of IEP for Bryan Wiles-Bond |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 0404 | Resume of Jennifer Susan Harris |
| DOE 0405 | Letter dated 9/14/04 from Jennifer Harris re: educational background |
| DOE 0406-0408 | Various Sign-In Sheets for Sign Language Support Sessions, dated 8/25/04, 9/01/04 and 9/08/04, Kealakehe Intermediate School |
| DOE 0455-0501 | Curriculum Materials for Sign, Math, Reading and Social; Schedules for Home School and Community; Sensory Activities; and Toileting Data from September through October |
| 106-110 | The Webster School Narrative Summary Report for 2nd Quarter, dated 2/03/97 |
| 098-101 | DuPont Hospital for Children Augmentative Communication Evaluation Speech-Language Pathology Report of Bryan Wiles-Bond, dated 6/18/99, signed by Richard Lytton, Speech Language Pathologist |
| 102-105 | DOE Hawaii District Office Special Services Social Summary, dated 9/14/99 |
| 085-087 | Vineland Adaptive Behavior Scales Narrative Report, dated 9/14/99 |
| 083-084 | Waikoloa Elementary School Educational Evaluation, dated Oct 1 & 7, 1999 |
| 088-091 | Department of Health Initial Occupational Therapy Evaluation, dated 10/06/99, prepared by Grace Salera |
| DOE 0143-145 | School Psychiatric Report of Bryan Wiles-Bond, dated 10/19/99, prepared by Richard H. Mesco, Hawaii Family Guidance Center |
| DOE 1222-1236 | Request for Evaluation made by Rebecca Pierson, SPED Teacher, received by DOE 9/13/02 |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 1269-1271 | DOE Special Services Social Work Report, dated 10/07/02, prepared by Judy Volquardsen |
| DOE 1272-1275 | Psychoeducational Profile Evaluations of Bryan Wiles-Bond, conducted by Rebecca Pierson & Wendy Clark on 10/03/02; and Rebecca Pierson & Sandy Harrington on 11/06/02 |
| | Alternate Assessment for the HCPS II State Assessment for Bryan Wiles-Bond, dated March 3-April 30, 2003, Kealakehe Elementary |
| DOE 1180-1186 | Draft Toileting Plan prepared by Kimberly Smalley |
| DOE 2229-2232 | Update to Original Toileting Plan prepared by Kimberly Smalley, dated 3/18/04 |
| DOE 2846-2851 | Update to Original Toileting Plan, prepared by Kimberly Smalley |
| DOE 1242-1246 | Facsimile dated 6/03/04 from Judi R. to Bob G. and Kimberly Smalley's Update to Toileting Plan |
| DOE 0409-0435 | Functional Behavioral Assessment of Bryan Wiles-Bond dated 8/18/04, Positive Behavioral Plan and Update to the Original Plan, prepared by Kimberly Smalley, Ph.D. |
| DOE 1128-1148 | Functional Behavioral Assessment of Bryan Wiles-Bond prepared by Kimberly Smalley, dated 8/18/04 |
| DOE 1153-1170 | Draft Behavioral Assessment of Bryan Wiles-Bond prepared by Kimberly Smalley, dated 8/18/04 |
| DOE 1254 | Behavior Management Plan for Bryan Wiles-Bond |
| DOE 1171 | Draft of Crisis Plan for Bryan Wiles-Bond |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 2721 | Discussion Points To Be Addressed, dated 9/09/03 |
| WB 0274 | Draft of Crisis Plan for Bryan Wiles-Bond, dated 9/28/04 |
| DOE 0326 | Salary Schedule for DOE Supplemented Skills Trainers |
| DOE 0869-0873 | List of Skills Trainers, Dates of Services and Actual Hours of Service |
| DOE 2167 | Memo dated 7/22/02 from Mahea Edwards to Kathy Gaughen, Nancy Matsukawa and Judi Radwick (cc Desiree Baez, Sheri Adams) |
| DOE 1801-1808 | Letter dated 8/18/02 from Stan Bond and Kim Wiles to Judith Radwick and Mahea Edwards |
| DOE 2168-2169 | Email dated 8/26/02 from Mahea Edwards to Pamela Toguchi, et al. (cc: Nancy Matsukawa, Judi Radwick, Sheri Adams, Rebecca Pierson, Kathy Gaughen, Wendy Clark, Steve Ferrang, Naomi Shiraishi, MWright and Desiree Baez re: Update on Bryan Wiles-Bond |
| DOE 0332 | Letter of Recommendation dated 10/01/02 re: Danielle Doucette |
| DOE 1755 | Memo from Barbara Coffman to Judi Radwick (cc Sheri Adams, Mahea Edwards) re: 1/29/03 discussion with Dru Copeland |
| DOE 2912-2914 | Facsimile from Kim Wiles to Desiree Baez with Resume of Sasha Pickles |
| DOE 0377 | Memo dated 4/22/03 from Colleen Matsushita to Hawaii Tribune Herald Classified Dept re: Ads for Skills Trainers |
| DOE 2140-2141 | Memo dated 11/21/03 from Judith Radwick to West Hawaii Complex Area Principals, Vice-Principals, Special Education Teachers and SASAs re: Ad & Flyer for Part-Time Positions |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 0334-0336 | Resume and Letter dated 1/22/04 from Rae Graber |
| DOE 1364-1366 | Letter dated 2/06/04 from Kelly Stern re: Efforts to provide Skills Trainers for Bryan Wiles-Bond |
| DOE 2255-2262 | Schedule of Skills Trainers, Location of Services, Service Dates, Hours of Services and Costs for Services, dated 3/24/04 |
| DOE0859-0868 | Schedule of Skills Trainers, Location of Services, Service Dates, Hours of Service and Costs for Services, dated 3/29/04 |
| DOE 0316-0321 | May-September 2004 Calendar Schedule of Service Providers, Dates of Services, Type of Services and Hours of Service |
| DOE 2589-2591 | Facsimile dated 4/26/04 from Kelly Stern to Desiree Baez with draft of 4/20/04 letter from Kelly Stern to Kim Wiles and Stan Bond |
| DOE 2578 | Email dated 6/07/04 from Dave Graber to Kelly Stern |
| DOE2574-2578 | Facsimile dated 6/10/04 from Kelly Stern to Desiree /Joann with Incident Report and Email dated 6/07/04 from Dave Graber to Kelly Stern re: documenting past events concerning Bryan Wiles-Bond |
| DOE 1367-1368 | Memo dated 6/28/04 from Desiree Baez to JoAn Hill and Lorri Bolton re: Skills Trainer Recruitment Ad |
| DOE 1360-1363 | Letter dated 6/30/04 from Kelly Stern to Joanne Hill re: Status of efforts to recruit, train and provide qualified Skills Trainers for Bryan Wiles-Bond |
| DOE 2768 | Email dated 7/02/04 from Bobbie Puente to Joan Hill (cc: Kelly Stern, Marvin St. Clair, Kim Wiles) re: service gap for Bryan Wiles-Bond |
| DOE1372 | Resume and Letter dated 7/06/04 from Debra Rusnak |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 2757-2758 | Facsimile dated 7/07/04 from JoAn Hill to Lono Beamer, Esq. and 7/08/04 news article, "*Big Island Schools trying to fill teaching vacancies*" |
| DOE 1975 | Letter dated 7/06/04 from Shelby Floyd, Esq. to Alvin Rho re: Parents will hire Christie Edwards as skills trainer |
| DOE 0436 | Affidavit of Publication re: verifying circulation of Ads for Skills Trainers |
| DOE 1375-1388 | Various Letters from Individuals responding to Ad for Skills Trainers |
| DOE 2390-2391 | Email dated 7/27/04 from Lorri Bolton to JoAn Hill and Salary Schedule for DOE Supplemented Skills Trainers |
| DOE 0323-0325 | Letter dated 7/28/04 from Desiree Baez to Stanley Bond re: hiring of skills trainers |
| DOE 1369-1371 | Facsimile dated 7/30/04 from Desiree Baez to CFS, HBH, TIFFE re: Skills Trainer Recruitment and JoAnn Hill 7/24/07 letter to Applicants |
| DOE 2273-2274 | Letter dated 8/03/04 from Kelly Stern to JoAnn Hill re: Recruiting efforts to provide Skills Trainers for Bryan Wiles-Bond |
| DOE 2624-2627 | Facsimile dated 8/10/04 from Desiree Baez to Linda Price, Lemomi and Kelly Stern and Signing Sessions Schedule for August 2004 |
| DOE 1969-1968 DOE 1970-1974 | Various Facsimiles dated 8/24/04 from Desiree Baez with Skills Trainers Schedule for Weeks 8/16/04 and 8/23/04 |
| DOE 1647-1652 | The Institute for Family Enrichment Employee Training Logs FY 2002-2003 and 2003-2004 for Rebecca Gavin |
| DOE 1653-1655 | The Institute for Family Enrichment Employee Training Log FY2003-2004 for Rae Graber |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 1656-1661 | The Institute for Family Enrichment Employee Training Logs FY 2003-2004, and 2004-2005 for Kathryn Cardines |
| DOE 1662-1664 | The Institute for Family Enrichment Employee Training Log FY 2003-2004 for Danielle Doucette |
| DOE 1665-1667 | The Institute for Family Enrichment Employee Training Log FY 2004-2005 for Sven Lindemann |
| DOE 1901 | Letter dated 9/14/04 from Leimomi Respicio to Lono Beamer, Esq. re: Assignment of Skills Trainer Corrinna Serrao per Ann Wiles consent and level 65 services for Bryan Wiles-Bond |
| DOE 1898-1900 | Memo dated 9/14/04 from Kelly Stern to Alvin Rho re: Request for Information Regarding Skills Trainers |
| DOE 1355-1356 | Letter dated 9/14/04 from Kelly Stern to JoAnn Hill re: Discrepancy of dates and clarification of service gaps for skills trainer services |
| DOE 1352-1354 | Letter dated 9/15/04 from Kelly Stern to Alvin Ro re: Recruiting efforts and hiring challenges for Bryan Wiles Bond |
| DOE 0376 | Letter dated 9/15/04 from Leimomi Respicio and JoAn Hill to Desiree Baez re: Recruitment of Skills Trainers |
| DOE 0373-0375 | Letter dated 9/15/04 from Kelly Stern to Alvin Rho re: Recruiting efforts and hiring challenges for Bryan Wiles-Bond |
| DOE 0595 | Letter addressed to Kate Tolentino re: qualifications of TIFFE skills trainers and schedule of services (printed 9/27/04) |
| DOE1343-1347 | Monster.com and Honolulu Advertiser website printouts of classified ad information, (printed 9/25/04) |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 1348-1351 | KauaiWorld.com Internet Advertising printout dated 9/25/04 |
| DOE1830 | 7/22/02 West Hawaii Today Classified Newspaper Ad |
| | Resume of Christy Edwards |
| | Reference Check on Christy Edwards |
| DOE 1905 | Notes with handwritten remarks re: Christy Edwards |
| | Invoice showing charges for Ad placement in West Hawaii Today for In-Home Programming Aide |
| | 6/28/04 Honolulu Advertiser Classified Ad for Skills Trainers |
| DOE 2748-2749 | 7/13/04 Honolulu Advertiser Classified Ad for Skills Trainers |
| DOE 0378-0402 | Corrinna Serrao's Progress Notes of Bryan Wiles Bond |
| DOE 2453-2537 | Rebecca Gavin's Progress Notes of Bryan Wiles-Bond |
| DOE 2684-2707 | Journal entries of handwritten notes re: Bryan Wiles-Bond |
| DOE 2197-2198 | J. Radwick Handwritten Notes |
| DOE 1595-1599 | Handwritten Notes |
| DOE 1600 | Handwritten Notes |
| DOE 1371 | Letter dated 7/27/04 from JoAn Hill to Applicants for Skills Trainers |
| DOE 0528-0535 | Facsimile dated 10/18/04 from Jennifer Harris to Kate Tolentino and Daily Personal Notes recorded by Harris of Bryan Wiles-Bond on 10/07/04, 10/11/04 and 10/18/04 |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 1570-1577 | Facsimile dated 10/18/04 from Jennifer Harris to Kate Tolentino and Daily Personal Notes recorded by Harris of Bryan Wiles-Bond on 10/25/04, 10/28/04, 11/04/04 and 11/08/04 |
| DOE 0688-0700 | 7/01/02 Release and Settlement Agreement by and between Ann Kimball Wiles and Stanley Bond on behalf of their son Bryan Wiles-Bond and the Department of Education and the Department of Health, State of Hawaii |
| DOE 1323-1332 | 5/11/04 Findings of Fact, Conclusions of Law and Decision in Administrative Hearing No. DOE 2004-026 |
|  | 7/23/04 Findings of Fact, Conclusions of Law and Decision in Administrative Hearing No. DOE 2004-070 |
| DOE 2000-2002 | 7/23/04 Stipulated Partial Decision and Order in Administrative Hearing No. DOE 2004-070 |
| DOE 1188-1193 | Letter dated 7/28/04 from Shelby Floyd, Esq. to Alvin Rho with Findings of Fact, Conclusions of Law and Decision in Administrative Hearing No. DOE 2004-070 |
| DOE 2581-2582 | Memo dated 5/09/04 from Dru Copeland, Ph.D. re: Summary of Behavioral and Academic Data for Bryan Wiles-Bond from October 2003 through February 2004 |
| DOE 1603 | 8/06/04 Handwritten Notes re: CBI |
| DOE 1642 | Memo dated 8/14/04 from Dru Copeland, Ph.D. re: Friendship Club, Kealakehe Intermediate School |
| DOE 0348-03354 | Memo dated 9/14/04 from Dru Copeland, Ph.D. re: Duties as IISC for Bryan Wiles-Bond and Curriculum Vitae of Dru Copeland |
| DOE 0854 | Email dated 10/20/04 from Kate Tolentino to Kelly Stern re: Dru Copeland |
| DOE 1640-1641 | Incident Report of 9/17/04 made by Corrinna Serrao |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 0601-0602 | Letter dated 9/20/04 from Stanley Bond to Robert Gentzel re: isolating Bryan |
| DOE 0600 | Letter dated 9/20/04 from Shelby Floyd, Esq. to Alvin Rho re: isolating Bryan |
| DOE 0603-0604 | Draft Letter to Stanley Bond re: isolating Bryan [unsigned and undated] |
|  | Letter dated 9/21/04 from Kim Wiles to JoAn Hill (cc: Kim Smalley, Shelby Floyd, etc.) re: Bryan's isolated placement |
| DOE 0599 | Letter dated 9/21/04 from JoAn Hill to Kim Wiles re: Bryan's isolated placement |
| DOE 0596 | Emails from Kelly Stern to Kate Tolentino re: Sunday scheduling |
|  | Letter dated 9/22/04 from Robert Gentzel to Stanley Bond re: isolating Bryan |
| DOE 1023 | IEP Meeting Agenda of 9/30/04 |
| DOE 0508 | Email dated 11/08/04 from Jennifer Harris to Kate Tolentino re: Part 2 |
| DOE 0564 | Email dated 10/05/04 from Kate Tolentino to Alfonsina Davies (cc: Alvin Rho, Stephen Miyasato) re: Columbus teachers at KIS |
| DOE 0558 | Email dated 10/05/04 from Kate Tolentino to Alvin Rho re: RT schedule for Bryan Wiles-Bond |
| DOE 0559 | Email dated 10/05/04 from Kate Tolentino to Cynthia Esaki re: Supervise ESY (summer) program at Kealakehe Intermediate School for Bryan Wiles-Bond |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE0555 | Email dated 10/06/04 from Kate Tolentino to Alvin Rho re: Bryan Wiles-Bond ESY Coverage Schedule |
| DOE 1476-1477 | Letter dated 10/08/04 from Katherine Tolentino to Kim Wiles re: Bryan Wiles-Bond's Educational Program at Kealakehe Intermediate |
| DOE 0542 | Email dated 10/09/07 from Dayle Yokoyama to Kate Tolentino re: Bryan Wiles-Bond at Kealakehe |
| DOE 0541 | Email dated 10/11/04 from Dayle Yokoyama to Kate Tolentino re: Kealakehe Intermediate Autism Room Situation |
| DOE 1449-1450 | Memo dated 10/11/04 from Alvin Rho to JoAn Hill re: ESY Coverage for Bryan Wiles-Bond |
| DOE 1452 | Email dated 10/12/04 from JoAnn Hill to Kate Tolentino re: Hill's Hawaii and California certification in SPED |
| 000088 | Letter dated 7/16/04 from Cara Entz (Pacific Child & Family Associates) to Kim Wiles re: Hawaii Proposal for IEP services to Bryan Wiles-Bond |
| DOE 1309-1311 | Letter dated 9/17/04 from Shelby Floyd, Esq. to Lono Beamer, Esq. re: Preliminary comparison of costs of providing services set out in Bryan Wiles-Bond IEP |
| DOE 1303-1304 | Cara Entz (Pacific Child & Family Associates) Proposal dated 9/21/04 re: Bryan Wiles-Bond IEP services |
| DOE 0545 | Email dated 10/07/04 from Kate Tolentino to Jennifer Harris, Naomi Shiraishi, Alfonsina Davies (cc: Alvin Rho) re: Pacific Child & Family Associates observation of Bryan Wiles-Bond |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 1302<br>DOE 1290 | Email dated 10/11/04 from Kate Tolentino to Kim Wiles and : PCFA observation schedule for 10/21/04 and 10/22/04 |
|  | Facsimile dated 10/15/04 from Kate Tolentino to Shelby Floyd, Esq. with Prior Written Notice of Department Action dated 9/30/04 from Robert Gentzel, Kealakehe Intermediate School |
| DOE 0525 | Email dated 10/20/04 from Kate Tolentino to Kim Wiles re: PCFA observation Schedule |
| DOE 1561-1564 | Cara Entz (Pacific Child & Family Associates) Revised Proposal dated 11/05/04 |
| DOE 1985-1989 | Facsimile dated 11/15/04 from Kate Tolentino to Linda Price and Cara Entz (Pacific Child & Family Associates) Revised Proposal dated 11/05/04 |
| DOE 1736 | Emails dated 11/15/04 between Kate Tolentino and Cara Entz re: Revised Proposal |
| DOE 0502-0504 | Emails dated 11/01/04 and 10/28/04 between Cara Entz and Shelby Floyd, Esq. re: Bryan Wiles-Bond Hawaii Proposal |
|  | Letter dated 11/28/03 from Holly Shikada, Esq. to Shelby Floyd, Esq. (cc Judi Radwick) re: Investigation of skills trainer services for Bryan Wiles-Bond |
| DOE 1487-1491 | Facsimile dated 10/18/04 and Request for Impartial Hearing from Shelby Floyd, Esq. to Alvin Rho, dated 10/18/04 |
| DOE 1556-1557 | Facsimile dated 10/29/04 from Alfonsina Davies to Kate Tolentino and Letter dated 10/28/04 from Shelby Floyd, Esq. to the Principal of Kealakehe Intermediate School re: Request information concerning Bryan Wiles Bond's program and services |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| DOE 1615-1618 | Memo dated 11/01/04 from Debra Farmer to Alfonsina Davies, Linda Price and Alvin Rho re: Verification of Hearing Decision, Follow-Up Requirements and Timeline Extension |
| DOE 1619-1622 | Memo dated 11/03/04 from Debra Farmer to Alfonsina Davies, Linda Price and Alvin Rho re: Verification of Hearing Decision, Follow-Up Requirements and Timeline Extension |
| DOE 2819 | Email dated 1/03/05 from Dayle Yokoyama to Kate Tolentino (cc: Don Merwin, Karen Johnston, Robin Ohara, Jennifer Harris and Naomi Shiraishi re: Schedule for Bryan Wiles-Bond |
| DOE 3053-3054 | DOE Separation From Service Form submitted by Ann Kimball Wiles re: Resignation from Waimea Elementary School to relocate to California for husband's employment |
| DOE 2444-2447 | Invoices dated 7/16/04 for Procurement of Services from Child & Family Services |
| DOE 2379-2384 | Facsimile dated 7/30/04 from Desiree Baez to Danielle Doucette re: sample vendor invoices |
| | Declaration of Linda Price, dated 3/10/06 |
| | Declaration of Judith Radwick, dated 3/10/06 |
| | Declaration of Kelly Stern, dated 3/10/06 |
| | Declaration of Katherine Tolentino, dated 3/10/06 and Exhibit "1" (Child and Family Associates 11/05/04 Proposal for Services) |
| | Declaration of Rebecca Pierson, dated 3/22/06 |
| | Declaration of William Beljean, dated 3/23/06 |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| | Declaration of Barbara Coffman, dated 3/23/06 |
| | Declaration of Richi Stallard, dated 3/23/06 |
| | Supplemental Declaration of Kelly Stern, dated 3/23/06 |
| | Supplemental Declaration of Katherine Tolentino, dated 3/22/06 |
| DOE 0322 | Verification Statement of Lorri Bolton, Psy.D, dated 9/14/04 and acknowledged by Alvin Rho |
| DOE 0327-0328 | Resume and letter dated 1/28/03 from Rebecca Gavin to Anna, Human Resources Dept, Institute for Family Enrichment re: opening for Skills Trainer with TIFFE |
| DOE 0329-0333 | Resume of Danielle Doucette and Letters of Recommendation |
| DOE0334-0336 | Resume of Rae Graber |
| DOE 0337-0340 | Resume for Kathryn Cardines |
| DOE 0341-0342 | Resume of Sven Lindemann |
| DOE 0343-0344 | Resume of Corrinna Serrao |
| DOE 0345-0346 | Resume of Leigh S. Mitchell |
| DOE 0348-0354 | Memo dated 9/14/04 from Dru Copeland, Ph.D. re: Duties as IISC for Bryan Wiles-Bond and Curriculum Vitae |
| DOE 0355-0362 | Sign Language Support Session Training Schedule, August 2004 |
| | June 28, 2006 Report by Richard S. Goka, M.D. |

| DOC. NO(S) | DESCRIPTION |
|---|---|
| | June 28, 2006 Supplemental Report by Richard S. Goka, M.D. |
| | June 22, 2007 Supplemental Report by Richard S. Goka, M.D. |
| | Curriculum Vitae of Richard S. Goka, M.D. |
| | June 22, 2006 Report by Bryna Siegel, Ph.D. |
| | June 25, 2007 Report by Bryna Siegel, Ph.D. |
| | Curriculum vitae of Bryna Siegel, Ph.D. |
| | Expert Testimony Last Five Years (2002-2007) for Bryna Siegel, Ph.D. |
| | Figure 5-3 of prenatal brain development and Figure 5-4 of brain cells from one month to fifteen months |
| | "Fertile Minds" by J. Madeline Nash, Time Magazine, February 3, 1997 |
| | June 28, 2006 Supplemental Report Following "Rule 26" Guidelines by Richard S. Goka, M.D. |

The DOE reserves the right to add additional documents and/or transcripts of depositions disclosed or taken as allowed by the applicable rules of procedure.

X.      **FURTHER DISCOVERY OR MOTIONS**

      A.    **Discovery**

Discovery is completed.

      B.    **Motions**

There are currently no motions pending.

XI.     **STIPULATIONS**

- 61 -

None at this time.

XII.    **AMENDMENTS AND DISMISSALS**

None at this time.

XIII.    **SETTLEMENT DISCUSSION**

The parties have participated in two mediation sessions with Keith Hunter in November 2005 and March 2007, and a settlement conference with Magistrate Judge Barry M. Kurren in October 2007. The parties were unable to arrive at a settlement. Defendants, however, remain open to address any reasonable settlement discussions.

XIV.    **AGREED STATEMENT**

The presentation of this action, in whole or in part, upon an agreed statement of facts is neither feasible nor desired.

XV.    **BIFURCATION, SEPARATE TRIAL OF ISSUES**

Bifurcation of trial is neither feasible nor desired.

XVI.    **REFERENCE TO MASTER OR MAGISTRATE JUDGE**

Reference to a Master or Magistrate is neither feasible nor desired.

XVII.    **APPOINTMENT AND LIMITATION OF EXPERTS**

Appointment of an impartial expert witness is neither feasible nor desired.

XVIII.    **TRIAL**

Trial is currently set to commence on September 9, 2008 before Senior District Judge Alan C. Kay.  Trial will be before a jury.

**XIX.**    **ESTIMATE OF TRIAL TIME**

It is anticipated that trial will be completed in three (3) weeks.

**XX.**    **CLAIMS OF PRIVILEGE OR WORK PRODUCT**

None at this time.

**XXI.**    **MISCELLANEOUS**

None at this time.

DATED: Honolulu, Hawaii, July 7, 2008

_/s/ Gregg M. Ushiroda_
JOHN T. KOMEIJI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendant

---

Ann Kimball Wiles, et al., Plaintiffs vs. Department of Education, Defendant; Civil Nos.: CV04-00442 ACK/BMK and CV 05-00247 ACK/BMK Consolidated; Defendant Department of Education's Final Pretrial Statement

- 63 -