IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>      Plaintiffs,<br><br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii,<br><br>      Defendant. | CIVIL NO. CV 04-00442 ACK-BMK<br><br>**MEMORANDUM IN SUPPORT** |

**MEMORANDUM IN SUPPORT**

I.    **INTRODUCTION**

       Plaintiffs seek money damages for alleged violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Section 504"), and its anti-retaliation regulation, 28 C.F.R. § 42.503(b)(1)(vii). Plaintiffs do not assert a cause of action under the Individuals with Disabilities Education Act ("IDEA").

       Plaintiffs filed their Second Amended Complaint on February 13, 2008. Prior to their filing of the Second Amended Complaint, and in light of the Ninth Circuit Court of Appeals' decision in Mark H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008), this Court provided Plaintiffs with the opportunity to amend their First Amended Complaint to specify which Section 504 regulations they believed had been violated. Notably, this Court provided Plaintiffs with the opportunity to allege a violation of

Section 504's FAPE regulation, 34 C.F.R. § 104.33.  Plaintiffs, however, failed to specify any Section 504 regulations in their Second Amended Complaint.  Instead, and as Plaintiffs have represented to this Court, Plaintiffs' Section 504 claim rests entirely on the statute itself, and its attendant standard of "meaningful access."  In other words, Plaintiffs' Second Amended Complaint alleges that the DOE "acting with deliberate indifference, failed to provide or otherwise prohibited Bryan from having meaningful access to public education in Hawaii."  See Second Amended Complaint at ¶ 4.

Plaintiffs' own pleadings and representations to this Court have made the IDEA and its requirements irrelevant to the instant action.  Section 504 and the IDEA are separate and distinct bodies of law.  Unlike the IDEA, Section 504 itself does not require the provision of a free appropriate public education.  Rather, Section 504 simply requires that a program available to non-disabled students be readily accessible to, and usable by, individuals with disabilities.  Moreover, Section 504 does not impose the types of affirmative obligations required by the IDEA, nor does it require the DOE to alter its program to meet the reality that the disabled have greater needs than that of the non-disabled.  Further, there is absolutely no authority equating Section 504's "meaningful access" standard to the requirements under the IDEA, the provision of an IDEA FAPE, and/or the

2

creation and/or implementation of an Individualized Education Program ("IEP"). As a result, any evidence, testimony, and/or reference to the IDEA and its requirements, including, but not limited to, any settlement agreements, findings by hearing officers, and services required under an IEP, are irrelevant, and must be excluded. Moreover, even if the IDEA and its requirements have some negligible probative value, any evidence, testimony, and/or reference to the IDEA and its requirements must be excluded because it will confuse the issues and mislead the jury.

II. **ARGUMENT**

The IDEA and its requirements, including the provision of FAPE and the affirmative duty to create an IEP, are irrelevant to the instant case. Rule 402 of the Federal Rules of Evidence ("FRE") provides that "[a]ll relevant evidence is admissible . . . . **Evidence which is not relevant is not admissible.**" Fed. R. Evid. 402 (emphasis added). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Moreover, even if relevant, any evidence, testimony, and/or reference to the IDEA and its requirements must be excluded because of the very real possibility that its inclusion

3

would confuse the issues and/or mislead the jury. As FRE Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, **confusion of issues, or misleading the jury**, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403 (emphasis added).

### A. The IDEA and its requirements are irrelevant.

#### 1. Section 504 itself does not require the provision of an IDEA FAPE and/or Section 504 FAPE.

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Notably, Section 504 itself, the basis of Plaintiffs' claim, does not require the provision of FAPE, IDEA or Section 504 (and, in turn, it does not require the provision of services under an IEP). This notable difference was recognized by the Ninth Circuit Court of Appeals in Mark H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008):

> [T]he IDEA contains a statutory FAPE provision . . . . Section 504 contains a broadly-worded prohibition on discrimination against, exclusion of and denial of benefits for disabled individuals, under which the U.S. DOE has promulgated regulations containing a FAPE requirement worded somewhat

4

differently from the IDEA FAPE requirement. Id. at 930.

Thus, where the IDEA contains a statutory requirement to provide FAPE, Section 504 only provides for FAPE through its implementing regulations. Plaintiffs, however, eschewed the recommendations of the Mark H. court and chose not to specify which Section 504 regulations they believe had been violated in the instant action. See generally Second Amended Complaint. This effectively waived Plaintiffs' claim under Section 504's regulations, and, in turn, made any reference to the IDEA and its requirements irrelevant. Indeed, FAPE, Section 504 or IDEA, cannot be relevant where the statute upon which Plaintiffs base their claim does not even require FAPE to be provided. Simply put, as a result of Plaintiffs' own pleadings and representations to this Court, FAPE is of no consequence to the case at Bar.

> 2. **The purpose of and the types of obligations required under Section 504 are different from those of the IDEA.**

The purpose of Section 504 is to prevent discrimination based on disability by assuring that disabled individuals receive "evenhanded" treatment in relation to non-disabled individuals.[1]

---

[1] The Ninth Circuit in Mark H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008) noted that Section 504 prohibits not only discrimination against the disabled, but also exclusion from participation in and denial of benefits of programs solely by reason of an individuals' disability. Id. at 937. The Ninth Circuit's clarification on the breadth of Section 504, however, does not alter the fact that Section 504 is merely an anti-

5

See P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990)(citing Traynor v. Turnage, 485 U.S. 535, 548 (1988))("The 'clearly established law' concerning § 504 indicates that its central purpose is to assure that handicapped individuals receive '"evenhanded treatment"' in relation to the nonhandicapped."); Sch. Bd. of Nassau County, Florida v. Arline, 480 U.S. 273, 277-78 (1987)("Congress . . . addressed the broader problem of discrimination against the handicapped by including § 504, an anti-discrimination provision"); Alexander v. Choate, 469 U.S. 287, 293 n.7, 304 (1985); Smith v. Robinson, 468 U.S. 992, 1017 (1984)(superseded by statute on an alternative point of law).  In doing so, Section 504 merely serves a prohibitory function, forbidding exclusions from federally-funded programs.  See Timms v. Metro. Sch. Dist. of Wabash County, 722 F.2d 1310, 1318 (7th Cir. 1983).

    The purpose of the IDEA, on the other hand, is "[t]o ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  34 C.F.R. § 300.1.; see also Kutasi v. Las

---

discrimination statute.  As the Ninth Circuit stated, the language of Section 504, and its legislative history, simply evidences that the nature of the discrimination prohibited under Section 504 is construed more broadly.  Id.

6

Virgenes Unified Sch. Dist., 494 F.3d 1162, 1166 (9th Cir. 2007). In fact, this affirmative obligation to provide FAPE to disabled individuals is a condition precedent to a school district's receipt of federal funds. See Kutasi, 494 F.3d at 1166 (9th Cir. 2007). In providing FAPE, the IDEA requires school districts to develop an IEP for each child with a qualified disability. See 34 C.F.R. § 300.1(a); see also Kutasi, 494 F.3d at 1166; Aguirre v. Los Angeles Unified Sch. Dist., 461 F.3d 1114, 1115-16 (9th Cir. 2006)(an IDEA FAPE is provided through the creation of an IEP).

Thus, where Section 504 merely serves a prohibitory function, see supra, the IDEA requires the DOE to take affirmative steps in creating a "comprehensive educational scheme" for disabled students that meet their specific needs. See Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992). Further, the affirmative duties upon which the IDEA conditions federal funding are clearly above and beyond the requirements imposed by Section 504. For example, unlike the individually tailored IEPs required under the IDEA, Section 504 "does not require the [recipients of federal funds] to alter this definition of the benefit being offered **simply to meet the reality that the handicapped have greater . . . needs.**" Alexander v. Choate, 469 U.S. 287, 303 (1985)(emphasis added). Moreover, unlike IEPs that actually create the content of a

disabled individual's program, Section 504 does not prescribe the content of the program offered. <u>See</u> <u>Timms v. Metro. Sch. Dist. of Wabash County</u>, 722 F.2d 1310, 1318 (7th Cir. 1983).

Clearly, Section 504 and the IDEA are separate and distinct statutes. The purpose of both, and the types of obligations and requirements imposed by both, are significantly different. These significant differences make any evidence of the IDEA and its requirements irrelevant to the instant action. Such evidence is simply not of consequence to an action that is based solely on Section 504 itself. As a result, such evidence must be excluded at trial.

> 3. **Section 504's standard of meaningful access does not require compliance with the IDEA and its requirements.**

Section 504 requires school districts to provide "meaningful access" to programs receiving federal funds. <u>See</u> <u>Bird v. Lewis & Clark Coll.</u>, 303 F.3d 1015 (9th Cir. 2002). "Meaningful access" is defined to mean that the federally-funded program, when viewed in its entirety, is readily accessible to and usable by the disabled individual. <u>See</u> <u>id.</u> at 1021. To provide "meaningful access," a school district is not required to create a comprehensive educational plan as required under the IDEA. Rather, a school district must provide "reasonable accommodations." <u>Id.</u> at 1020. To that end, a school district "may be required to make reasonable, but not fundamental or

8

substantial, modifications to its programs." Id. at 1020.

In this action, Plaintiffs are arguing that the services articulated under Bryan's IEPs were necessary for him to receive "meaningful access" under Section 504. Bryan's IEPs, however, were not created to comply with the standard of "meaningful access." The services in Bryan's IEPs were not included because they amounted to "reasonable accommodations"; nor were Bryan's IEPs created to provide Bryan with "evenhanded" treatment in relation to non-disabled individuals. Rather, the services articulated under Bryan's IEPs go above and beyond what can be deemed "reasonable accommodations." Indeed, the services contained in Bryan's IEPs were included to meet each of his educational needs that were a result of his disability, **regardless of whether those needs were also that of a non-disabled individual.** As the IDEA regulations state, an IEP includes, inter alia:

> A statement of measurable annual goals, including academic and functional goals designed to--
>
> > (A) Meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and
> >
> > **(B) Meet each of the child's other educational needs that result from the child's disability.**

34 C.F.R. § 300.320(a)(2)(i)(emphasis added).

9

Indeed, there is absolutely no authority equating a school district's requirement of providing "meaningful access" with the specific services articulated under an IEP. In fact, there is absolutely no authority stating that even half of the services provided for under an IEP needs to be provided in order for a disabled student to have "meaningful access" under Section 504. As a result, the IDEA and its requirements are simply irrelevant to the instant Section 504 action and should be excluded.

### 4. The federally funded program in question is a regular public education, not an IDEA FAPE.

It is expected that Plaintiffs will argue that the federally funded program in question is an IDEA FAPE, and, as a result, the IDEA and its requirements are relevant. Plaintiffs, however, are mistaken. The federally funded program in question is a regular public school education.

By its plain language, Section 504 requires that the federally funded program or benefit be one that is afforded to both disabled and non-disabled individuals. Indeed, if the program or benefit in question is merely one that is limited to non-disabled individuals, such as an IDEA FAPE and IEP that is tailored to that specific individual's disability, it would be impossible to deny an individual "meaningful access" based solely on disability. Such a practical interpretation of Section 504 coincides with Section 504's central purpose of ensuring

10

"evenhanded" treatment. Such an interpretation is also in line with the fact that Section 504 is an anti-discrimination statute.

Further supporting the fact that the federally-funded program in question is a regular public education are the significant differences in the types of requirements imposed under the two statutes. An IDEA FAPE, and specifically an IEP, is individually tailored to meet the educational needs of the disabled student that result from that student's disability. See 34 C.F.R. § 300.320(a)(2)(i). In other words, an IEP requires a school district to alter its definition of the benefit being offered to meet the reality that individuals with disabilities have greater needs. Section 504, however, "does not require the [recipient of federal funds] to alter [its] **definition of the benefit being offered simply to meet the reality that the handicapped have greater . . . needs.**" Alexander v. Choate, 469 U.S. 287, 303 (1985)(emphasis added). Thus, the program or benefit being offered cannot be an IDEA FAPE and IEP - both of which are tailored to meet the reality that individuals with disabilities have greater needs. Rather, the program in question is a regular public school education, which is provided to all students, regardless of disability, and which does not take into account the reality that those with disabilities have greater needs.

Clearly, the federally-funded program or benefit at issue here is a regular public education. Thus, any evidence, testimony, and/or reference to the IDEA and its requirements is irrelevant and should be excluded.

### B. The IDEA and its requirements will confuse the issues and mislead the jury.

As articulated supra, there are significant differences in the requirements under Section 504 and the IDEA which render the IDEA and its requirements irrelevant. However, even if the IDEA and its requirements have some negligible probative value, despite the significant differences, any evidence, testimony, and/or reference to the IDEA and its requirements must be excluded because it will confuse the issues and mislead the jury.

Section 504 requires "meaningful access" through "reasonable accommodations," while the IDEA, through an IEP, requires services that meet each of the disabled student's educational needs that result from that student's disability. Obviously, what is reasonable and what meets every educational need that results from a student's disability are significantly different. However, if evidence, testimony, and/or reference to both Section 504 and the IDEA are permitted, there is the very real possibility that a jury - misunderstanding the differences between the IDEA and Section 504, and therefore applying the incorrect standard- could find the DOE liable under Section 504 because the DOE failed to comply with the inapplicable

requirements of the IDEA. Indeed, even the <u>Mark H.</u> court stated that counsel for both parties in that case were confusing IDEA requirements with Section 504 requirements. <u>See</u> <u>Mark H. v. Lemahieu</u>, 513 F.3d 922 (9th Cir. 2008).

Consequently, given the relative complexity of the IDEA and Section 504; the significant differences in the requirements under each; and the inapplicability of the IDEA requirements to the case at Bar, permitting evidence, testimony, and/or reference to the IDEA and its requirements would pose an extraordinarily high risk of confusing the issues and misleading the jury. This extraordinarily high risk, compared with the negligible probative value that the IDEA and its requirements may have, warrants the exclusion sought by the instant Motion.

### III. <u>CONCLUSION</u>

Under these circumstances and based upon the foregoing argument and authorities, it is respectfully requested that this Honorable Court grant the instant motion.

DATED: Honolulu, Hawaii, August 4, 2008.

<u>/s/ Gregg M. Ushiroda</u>
MELVYN M. MIYAGI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendant
DEPARTMENT OF EDUCATION