COPY

# RELEASE AND SETTLEMENT AGREEMENT

THIS RELEASE AND SETTLEMENT AGREEMENT ("Agreement") is made and entered into this 1 day of July, 2002, by and between:

**RELEASORS:** ANN KIMBALL WILES and STANLEY BOND (the "Bonds"), by and on behalf of their son, BRYAN WILES-BOND ("Bryan"), a minor

**RELEASEES:** DEPARTMENT OF EDUCATION ("DOE"), STATE OF HAWAI'I; DEPARTMENT OF HEALTH ("DOH"), STATE OF HAWAI'I (collectively, the "State")

## I. RECITALS

A. On or about February 27, 2001, the Bonds, on behalf of Bryan, filed a request for a due process hearing with the DOE, pursuant to Section 8-56-72, Hawai'i Administrative Rules, due to the State's alleged failure to provide all of the services to Bryan as specified in his Individualized Education Program ("IEP") and Coordinated Service Plan ("CSP").

B. At a May 7, 2001 due process hearing, the parties presented a stipulated hearing decision (the "Stipulation") by which the State agreed to provide Bryan with the services specified in the Stipulation during the period from May 7 until October 1, 2001 (the "Stipulation Period"), with any hours of adult educational aide services that were not provided during that period to be made up beginning after October 1, 2001.

200347.1/6513-1/FINAL

EXHIBIT "B"

C.  During the Stipulation Period, Bryan did not receive the full number of hours of adult educational aide services required under the Stipulation, with the parties disputing whether the State made up such hours.

D.  On or about February 15, 2002, the Bonds filed a civil case, Civil No. 02-00101 SOM/BMK, and a Motion for Preliminary Injunctive Relief against the State in the U.S. District Court for the District of Hawai'i.

E.  The Bonds alleged that the State had breached federal regulations by, among other things, failing to implement the terms of the Stipulation, failing to provide a free and appropriate public education to Bryan under the Individuals with Disabilities Education Act ("IDEA"), and violating Section 504 of the Rehabilitation Act.

F.  The parties hereto desire to enter into this Agreement in order to provide for the full and final settlement and discharge of all claims which have been made, or might be made, by reason of the claims described in the Recitals above, upon the terms and conditions set forth below.

## II. RELEASE AND AGREEMENT

WHEREAS, the parties have engaged in full and complete discussions of the issues raised by each side and the parties having reached an agreement on the disposition of this case without further court or administrative hearings, the parties agree to the following:

A. The Individualized Education Program ("IEP") dated May 24, 2002, as it may hereafter be revised in accordance with Chapter 56, Hawai'i Administrative Rules, shall be implemented as follows:

1. <u>Therapeutic Aide ("TA") Services</u>

    a. By August 1, 2002, the State shall hire, train, and have in place the TAs needed to consistently provide Bryan with not less than ninety-five percent (95%) per calendar month of the TA hours to which he is entitled.[1]

    b. The State shall continue to provide TA services through its contract with the current service provider and/or its successor.

    c. By August 1, 2002, the State shall procure TA services for Bryan to be provided by qualified individuals through an "expedited contract process". Under this expedited contract process, the State shall pay qualified individuals a minimum of $20.00 per hour, and may offer effective bonus/incentive payments to encourage retention of the TAs for three (3) months or longer. The State shall pay these TAs within 30 days of the TAs' submittal of properly verified time sheets to the State.

---

[1] Under his current IEP, Bryan is entitled to 68.25 hours of TA services per week, consisting of the following:

>Seven and one-fourth (7.25) hours of in-school TA services every weekday;
>Four (4) hours of after-school TA services every weekday; and
>Six (6) hours of weekend TA services every Saturday and Sunday.

    d.    To assist the State in meeting the requirements of Paragraph II.c. above, the Bonds shall be authorized to advertise for TAs in State and national newspapers and other publications, with the cost of said advertising to be paid by the State, up to a total of $1,000.00 per year. The Bonds may refer potential TAs identified through advertising or other means to the State. The State shall determine the individuals' qualifications and pay level, conduct criminal background checks, and require that the individuals undergo and pass physical examinations prior to being hired.

    e.    By August 1, 2002, the State shall create a pool of substitute TAs who are qualified and trained to provide services to Bryan. This pool of substitutes shall consist of a maximum of three individuals, who shall be subject to the Bonds' reasonable approval as to these individuals' presence in the home (but not as to their qualifications). Before providing services to Bryan, each substitute TA shall have reviewed Bryan's IEP, shall be trained to implement Bryan's IEP, and shall have observed Bryan receiving TA services for a minimum of two (2) hours in school and a minimum of two (2) hours in the home. These substitute TAs shall be available to provide services to Bryan on an occasional basis when his regular TAs are unavailable.

    f.    The above-described TA services shall be provided by qualified TAs who meet the standards for a Level III TA, and are trained in DTT, TEACCH, and PECs methods for autistic children.

g.  The TAs shall complete Bryan's daily behavioral logs and daily log sheets showing the number and completion percentage of DTT and TEACCH trials utilized, and shall complete the DTT log for each trial. Each TA shall sign and date the entries in the daily behavioral logs and daily log sheets.

h.  Oversight and monitoring services for the TAs shall continue to be provided by the current autism consultants contracted by the State, or equally trained personnel. The State is not precluded from removing the current autism consultants and/or their successors for malfeasance, misfeasance, or nonfeasance of their duties.

i.  When school is not in session, either during the regular or extended school year, the State shall provide TA services to Bryan at his home or at another setting deemed appropriate by the IEP team, including a school classroom. The State shall provide Bryan with curb-to-curb transportation to the school or other setting.

On weekends and on State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under Paragraphs II.A.1.c. and II.A.1.e. above), the Bonds shall be responsible for ensuring that at least one of them or another responsible adult is in the home during those times. On weekdays, other than State and/or national holidays, when TA services are to be provided in the home, if required by the TAs' contracting agency or the State (under

Paragraphs II.A.1.c and II.A.1.c above), the State shall be responsible for providing and paying for an additional adult to be present when either of the parents is unable to be in the home during those times; contingent upon the Bonds providing the State with at least two (2) business days' prior notice of the need for an additional adult to be in the home with Bryan and his TA. Any such individuals shall be subject to the Bonds' reasonable approval as to those individuals' presence in the home. The State shall conduct criminal background checks on these individuals, and shall pay these individuals within 30 days of the individuals' submittal of properly verified time sheets to the State.

The Bonds agree to execute an "assumption of risk" provision to permit: (1) specific TAs to be alone with Bryan in the home while providing services, if acceptable to the specific TA's contracting agency, if any; and (2) an additional adult to be present in the home with Bryan and his TA.

2. <u>Additional Occupational and Speech/Language Therapy.</u>

a. Pursuant to his IEP, Bryan currently receives two half-hour sessions per week of occupational therapy and two half-hour sessions per week of speech/language therapy.

b. For an eight-week period, starting as of July 15, 2002, Bryan shall receive two additional half-hour sessions per week of occupational therapy and two additional half-hour sessions per week of speech/language therapy. After this eight-week period, if deemed appropriate by Bryan's IEP

team, with input from Bryan's current autism consultants or their successors, the additional therapy sessions shall be included in Bryan's IEP.

3. <u>Curb-to-Curb Transportation and Supervision of Bryan.</u>

The State shall ensure that Bryan is individually escorted from the bus which transports him from Kealakehe Elementary to the A+ Program at Kahakai Elementary, and shall be turned over to an A+ staff member. He shall not be dropped off in the parking lot and/or left unattended after being escorted to the A+ program.

4. <u>Respite Care.</u>

The Bonds shall be entitled to 32 hours of respite care per month, subject to adjustment ~~through Bryan's IEP.~~ by the Department of Health, Developmental Disabilities Section or its successor. [initials] 7/3/02

B. <u>Stipulation Regarding Need for Intensive Support and Consistent Services.</u>

The parties hereby stipulate that the Bonds currently maintain Bryan in the home environment with intensive support and consistent services from qualified providers. If the required level of support and services are not provided, a higher level of placement, as determined by the IEP team, may be necessary.

C. <u>Term of Agreement</u>

The parties agree that Paragraphs II.A.1.a., b., c., d., e., f., and i. of this Agreement shall remain in effect for a period of two (2) years from the date of this Agreement. All other provisions shall remain in effect for a period of one

(1) year from the date of this Agreement, except where an effective date is otherwise specified.

D. Continuing Jurisdiction of the Court/Future Disputes

1. The parties agree to submit to the continuing jurisdiction of the U.S. District Court for purposes of enforcing this Agreement for a period of one (1) year from the date of this Agreement.

2. Disputes relating to issues raised by future IEPs, if any, will be decided through the procedures of Chapter 56.

E. Reimbursement/Fees and Costs

The State will pay reasonable attorneys' fees and costs to the Bonds as prevailing parties. The Bonds' counsel shall provide the State with copies of invoices for legal fees and costs within ten (10) days of the execution of this Agreement, and the State shall respond within ten (10) days of receipt of said invoices. If the parties cannot resolve the amount of fees and costs to be paid, the Bonds' counsel shall file a fee application in federal court within twenty (20) days of receipt of the State's response.

F. Release and Dismissal

1. Upon execution of this Agreement, all pending proceedings and all claims asserted in Civil No. 02-00101 SOM/BMK shall be dismissed.

2. The Bonds will prepare and the State will execute a stipulation to dismiss with prejudice the claims and proceedings in Civil No.

02-00101 SOM/BMK. The stipulation shall incorporate by reference the terms of this Agreement and be subject to approval of the Court.

3. In consideration of the provisions set forth above, the Bonds hereby completely waive, and release, and forever discharge the State from any and all past, present, or future claims or demands, obligations, actions, causes of actions, rights, damages, costs, expenses, attorneys fees, and any compensation of any nature whatsoever, arising out of the claims described in the Recitals above.

4. It is specifically understood and agreed that the provisions set forth and recited herein are intended to compensate the Bonds for loss of income, attorneys' fees, and any element of special damages arising out of the claims described in the Recitals above.

5. The obligations in this Agreement shall apply to the State's past, present, and future attorneys, agents, servants, representatives, employees, predecessors, and successors in interest.

6. This Agreement, on the part of the Bonds, shall be a fully binding, and complete settlement between the Bonds, and the State, and their respective representatives, heirs, assigns, and successors as to the claims described in the Recitals above. It is understood and agreed to by the parties that this Agreement is a compromise of disputed claims, and that any payments are not to be construed as an admission of liability on the part of the State, by whom liability and obligation is expressly denied.

7. The State denies liability, negligence, breach of duty, breach of any assignment, misconduct, violation of federal and state statutes and laws, and/or wrongdoing of any kind, character or nature whatsoever, and any consideration paid by the State to the Bonds is solely in compromise of disputed claims.

### III. INDEMNITY

The Bonds hereby stipulate and agree, for the foregoing consideration, to indemnify and forever hold harmless, and defend the State and its respective officers, directors, attorneys, agents, servants, representatives, employees, subsidiaries, agencies, affiliates, predecessors and successors in interest, against loss and liability from any and all claims, services, liens, judgments, costs, expenses, attorneys fees, demands or actions, claims or actions for contribution, indemnity or reimbursement (contractual or otherwise), cross-claim and third-party claims, whether such claims or actions have merit or not, that may have or may be hereafter at any time be made or brought against the State by the Bonds or by anyone acting on their behalf, or holding by or through them, against the parties herein released which may be sustained in consequences of the claims described the Recitals above. It is understood and agreed that the Bonds are not indemnifying the State against claims arising in the future for payment of obligations created by this Agreement.

## IV. WARRANTY OF CAPACITY TO EXECUTE AGREEMENT

The Bonds represent and warrant that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, except as otherwise set forth herein; that the Bonds have the sole right and exclusive authority to execute this Agreement and receive the sums specific in it; and that the Bonds have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Agreement.

## V. GOVERNING LAW

This Agreement shall be construed and interpreted in accordance with the laws of the State of Hawai'i.

## VI. FULL COOPERATION; ADDITIONAL DOCUMENTS

Each of the Parties agrees to cooperate fully and act in good faith by taking all necessary steps to give full force and effect to the basic terms and intent of this Agreement, including but not limited to executing any and all supplementary documents.

## VII. NO RELIANCE BY RELEASORS

The Bonds and their counsel have not relied upon any express or implied representation of the State, or any of their agents as to the tax consequences of this Agreement, and the Bonds release the State from any and all liabilities in connection with such tax consequences.

## VIII. ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Agreement contains the entire agreement between the Bonds and the State with regard to the matters set forth in it and shall be binding upon, and inure to the representatives, heirs, successors and assigns of each.

## IX. EFFECTIVENESS

This Agreement shall become effective immediately following execution by each of the parties.

_____
ANN KIMBALL WILES

Date: 7/1/02

_____
STANLEY BOND

Date: July 1, 2002

"RELEASORS"

_____
DEPARTMENT OF EDUCATION,
STATE OF HAWAI'I

Date: 7/3/02

                                                   _____
                                                   DEPARTMENT OF HEALTH,
                                                   STATE OF HAWAI'I

                                               Date:   JUL 12 2002

                                                                                "RELEASEES"

APPROVED AS TO FORM:

_____
SHELBY ANNE FLOYD, ESQ.
JERILYNN ONO HALL, ESQ.
Attorneys for Releasors


_____
EARL I. ANZAI, ESQ.
Attorney General
PAMELA A. TOGUCHI, ESQ.
Deputy Attorney General
Attorneys for Releasees