IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>            Plaintiffs,<br><br>    vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>            Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

1

## TABLE OF CONTENTS

I.    **DR. GOKA RELIED EXCLUSIVELY ON THE INCOMPETENT AND INADMISSABLE OPINION TESTIMONY OF BRYNA SIEGEL IN REACHING  HIS CONCLUSIONS**                                      2

II.   **DR. GOKA'S OPINION THAT LUKENS OVERBUDGETED FOR SERVICES TO MEET BRYAN'S NEEDS AND REACHED AN INCORRECT VALUATION OF HIS LIFE CARE PLAN IS CONCLUSORY, UNRELIABLE, AND DOES NOT ASSIST THE JURY**    10

III.  **DR. GOKA'S INABILITY TO DO ANY COST ANALYSIS OF THE NECESSARY SERVICES CONTAINED IN THE LIFE CARE PLAN RENDERS HIS OPINION UNHELPFUL TO THE JURY**            15

IV.   **SPOILATION REQUIRES THAT DR. GOKA'S BE STRUCK OR, ALTERNATIVELY, THAT PLAINTIFFF BE PERMITTED TO COMMENT  ON THE SPOILATION TRIAL**                        20

V.    **CONCLUSION**                                                  22

<u>TABLE OF AUTHORITIES</u>

## Cases

*Daubert v. Merrell Dow Pharmaceuticals*,
    509 U.S. 579, 113 S. Ct. 2786 (1993) .................................................. 7, 16, 17, 18

*Hewitt v. Allen Canning Co.*,
    321 N.J. Super. 178, 728 A.2d 319 (App. Div. 1999)........................................20

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137, 119 S.Ct. 1167 (1999) ....................................................................7

*Matsuura v. E.I. du Pont de Nemours*,
    102 Hawaii 149, 73 P.3d 687 (2003)....................................................................20

*United States v. 0.59 Acres of Land*,
    109 F.3d 1493, 1496 (9th Cir.1997) .......................................................................6

*United States v. Cordoba*,
    194 F.3d 1053 (9th Cir. 1999) .................................................................................6

*United States. v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) .................................................................................6

## Statutes

HRS 465-1............................................................................................................4

## Rules

Fed. R. Evid. 702 .......................................................................................... 2, 16
Fed. R. Evid. 702-03 ...............................................................................................1
Fed. R. Evid. Rule 703...................................................................................... 6, 7, 11

## Treatises

California Business and Professions Code § 2903 ....................................................4

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

Plaintiffs file this *Motion to Exclude the Testimony of Richard Goka, M.D.* ("Dr. Goka"), and respectfully ask that this Court grant this Motion due to the fact that Dr. Goka's testimony is conclusory, unreliable, and offers no assistance to the jury.  Specifically:

(1)    Dr. Goka asserts that he relied exclusively on Dr. Bryna Siegel's diagnosis of Bryan. Dr. Goka has no experience or expertise in the area of autism. Dr. Goka admits that he reached no independent diagnosis and did not perform any independent evaluations or assessments of Bryan. Dr. Goka cannot identify a single issue with respect to the valuation of the recommended life care plan that he claims was improperly reached, nor does Dr. Goka explain or calculate how the evaluation done by Mr. Von Elsner was improperly valued.  Dr. Goka merely asserts a conclusory opinion reiterating the conclusions of Dr. Siegel. These types of unreliable, conclusory, and unsubstantiated opinions are inadmissible under Fed. R. Evid. 702-03.

(2)    Dr. Goka has no independent knowledge from his own research, training or experience concerning the future costs need to provide for Bryan's needs.  Dr. Goka is not an economist nor is he a CPA. Dr. Goka, without offering any data in support of his opinions, merely concludes that the valuation of Plaintiffs' expert witnesses, Loretta Lukens and Keynes Von Elsner, are incorrect

1

without offering any properly supported evaluation of Plaintiffs' claims. Dr. Goka admits that he is not an autism expert, an economist or CPA and undertook no independent investigation to determine the future costs faced by the Wiles-Bonds. Dr. Goka's analysis, as contained in his report of projected needs and costs, fails to establish any data basis for the valuation. Moreover, he does not qualify as an economic expert under even the most basic standards of Fed. R. Evid. 702. Thus, Dr. Goka's criticism provides no value to the jury in determining damages in this case.

(3)     Dr. Goka destroyed relevant evidence in this case despite his express knowledge of the existing lawsuit. Dr. Goka was hired specifically as an expert after the onset of the litigation. Defendant is presenting Dr. Goka as an expert to contradict the opinions of Ms. Lukens' opinions and the findings contained in her life care plan, and yet, he destroyed notes used to prepare for Mr. Ushiroda for Ms. Lukens' deposition. His actions conduct constitutes spoliation of evidence warranting the striking of his testimony.

I.     DR. GOKA RELIED EXCLUSIVELY ON THE INCOMPETENT AND INADMISSABLE OPINION TESTIMONY OF BRYNA SIEGEL IN REACHING HIS CONCLUSIONS

Dr. Goka is being called to contradict the opinions provided by Plaintiffs' witnesses, economist Keynes Von Elsner and life care planner Loretta Lukens. Dr. Goka relied directly and exclusively on the opinions reached by Dr. Siegel. Dr.

Goka relied exclusively on information provided by Bryna Siegel, Ph.D., regarding Bryan's diagnosis and prognosis, even though he had never met her or taken any steps to determine whether she possessed the necessary, training, credentials and licensure to perform make diagnoses and prognoses.  Exhibit 1 to Declaration of Stanley E. Levin, Deposition of Richard S. Goka, M.D. at 32:21-33:4; 39:6-11; 42:25-43:13;44:9-50:11;  83:12-25-84:1-14;  113:14-114:14;  115:6-16;  122:24-123:25; 132:19-24; 134:7-15; 137:23:138:7; 151:10-152:10; 155:3-17.  Dr. Goka relied solely and exclusively on Bryna Siegel to review his opinions before they were finalized.  *Id*. 85:17-23.  Dr. Goka stated he would not refer a patient to a person who was not properly trained, credentialed and licensed; at the same time, he sarcastically contended that, in California, psychology was practiced by bartenders, among others.  *Id*. at 52:24-53:20; 56:19-57:7.

Defendants retained Dr. Siegel to offer expert an opinion regarding Bryan's current condition, his progress since leaving Hawai`i, including an assessment of whether the education he is receiving is providing a Free and Appropriate Public Education (FAPE), and a comparison of her observations with the test results of Drs. LeGoff and Freeman.  Exhibits 2&3 to Declaration of Stanley E. Levin, Deposition of Dr. Bryna Siegel at 29:1-23; 38:3-39:20; 185:3-20; June 25, 2007 Report of Dr. Siegel.

3

However, Dr. Siegel lacks the requisite credentials to reach the diagnostic conclusions that Defendants seek to offer in this case. Dr. Siegel is not licensed as a clinical psychologist in either Hawai`i or California. *Id.* 56:4-60:10. However, she has been contracted by Defendants to perform observations, assessments, and evaluations of Bryan. *Id.* 165:18-166:16; 263:13-266:8. The clinical licensure requirements Hawai'i Revised Statutes (HRS) §465-1 and California Business and Professional Code §2910 broadly define the practice of clinical psychology.[1] She

---

[1]  HRS 465-1, defines "Practice of Psychology" as:

*"Practice of psychology" means the observation, description, evaluation, interpretation, or modification of human behavior by the application of psychological principles, methods, or procedures, for the purpose of preventing or eliminating symptomatic, maladaptive, or undesired behavior and of enhancing interpersonal relationships, work and life adjustment, personal effectiveness, behavioral health, and mental health. The practice of psychology includes, but is not limited to, psychological testing and the evaluation or assessment of personal characteristics, such as intelligence, personality, abilities, interests, aptitudes, and neuropsychological functioning; counseling, psychoanalysis, psychotherapy, hypnosis, biofeedback, and behavior analysis and therapy; diagnosis and treatment of mental and emotional disorder or disability, alcoholism and substance abuse, and disorders of habit or conduct, as well as of the psychological aspects of physical illness, accident, injury, or disability; and psychoeducational evaluation, therapy, remediation, and consultation. Psychological services may be rendered to individuals, families, groups, organizations, institutions, and the public. The practice of psychology shall be construed within the meaning of this definition without regard to whether payment is received for services rendered.*

California Business and Professions Code § 2903 defines the practice of psychology as:
*The practice of psychology is defined as rendering or offering to render for a fee to individuals, groups, organizations or the public any psychological service involving the application of psychological principles, methods, and procedures of understanding, predicting, and influencing behavior, such as the principles*

has also included clinical diagnoses in her expert reports in direct contravention of the governing licensing provisions contained in.  Copies are attached as Exhibit 3 to Declaration of Stanley E. Levin. Therefore, Dr. Siegel is not qualified to testify as an expert on matters related to diagnosis and the proposed treatment course. Without a clinical license, Dr. Siegel is unable to reach the clinical assessments and recommendations upon which Dr. Goka relied.

Dr. Goka himself is neither an economist nor an expert on autism and is not qualified to reach the opinions he proffers in this case.  Dr. Goka himself is unqualified to offer his opinion on economic feasibility of the life care plan or the value of the grievous damage caused to Bryan in this case.

Several rules apply specifically to expert testimony. Under Fed. R. Evid. Rule 702, an expert witness may provide opinion testimony if "the testimony is based upon sufficient facts or data" and "is the product of reliable principles and methods," which have been "applied ... reliably to the facts of the case."  The rule "affirms the court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." Advisory Comm. Notes, Fed. R. Evid. Rule 702 (2000).

---

*pertaining to learning, perception, motivation, emotions, and interpersonal relationships; and the methods and procedures of interviewing, counseling, psychotherapy, behavior modification, and hypnosis; and of constructing, administering, and interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions, and motivations.*

Under Fed. R. Evid. Rule 703, the "facts or data ... upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." However, if the expert relies on facts or data that are otherwise inadmissible, then those facts "shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."[2]

This Court has discretion to determine the reliability of expert testimony. *United States. v. Hankey*, 203 F.3d 1160, 1166 (9th Cir. 2000). A district court's decision to exclude or admit evidence under FRE 403 is reviewed with "considerable deference." *United States v. Cordoba*, 194 F.3d 1053, 1063 (9th Cir. 1999). A district court's rulings on the admissibility of expert testimony are

---

[2] To the extent that inadmissible evidence is reasonably relied upon by an expert, a limiting instruction typically is needed - i.e., where the evidence is admitted only to help the jury evaluate the expert's evidence. *E.g.*, *United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir.1997) (reversible error to admit hearsay offered as the basis of an expert opinion without a limiting instruction). There is a presumption against disclosure to the jury of inadmissible information used as the basis for expert's opinion. See Advisory Comm. Notes, Rule 703 (2000).

reviewed for an abuse of discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999).

Rule 702 assigns the district court "the task of ensuring an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 2799 (1993). As the gate-keeper, the trial judge must determine if the expert's opinion is trustworthy and should "disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." Fed. R. Evid. 703. Here, Dr. Goka's opinion fails to meet the rigorous foundational requirements of Rule 702.

Dr. Goka's proffered testimony is inherently unreliable as it relies on inadmissible evidence in this case as the sole and exclusive basis of his cost calculations. The gist of Dr. Goka's testimony is: "I do not know what Bryan's current or future needs are, I made no attempt to ascertain what they are, but based on the opinions of Dr. Siegel, the Plaintiffs over budgeted for levels of services and their corresponding costs." Such testimony is conclusory, unreliable, and does not assist the jury. Dr. Goka explained his reliance on Dr. Siegel's opinions during his deposition:

> Q. Now, you've identified Bryna Siegel as a person who assisted you in forming your opinions; is that correct?
> A. She was the one that – these are her opinions, other than the costs.

Q. So you're expressing no opinion on the needs for services. You're only expressing an opinion as to cost. Is that the substance of your testimony?

A. Essentially, what's reasonable and what's obtainable within, you know, what Dr. Siegel felt was a reasonable treatment plan.

Q. Well, you're not vouching for her opinions, because that's not permitted; you understand that?

A. No. But I'm utilizing her opinions to establish my opinions.

Q. Okay. So you can say you relied on them; is that correct?

A. True.

Q. But your reliance on them was for one purpose only and that was to calculate the cost of specific services; is that correct?

A. True.

Q. You were not making an independent assessment as to whether or not those particular services were necessary; is that correct?

A. §That is true.

Exhibit 1, Deposition of Richard Goka at 83:12-25; 84:1-14.

Dr. Goka did not possess an adequate or independent basis to support his opinions and stated repeatedly throughout his deposition that he is not an expert on autism.  In this case, Dr. Goka is not competent to provide expert evidence on costs related to the proposed life care plan where treatment following a competent diagnosis of Bryan's medical condition and its consequential effects are a critical inquiry.

Dr. Goka relied on the inadmissible clinical opinions of Dr. Siegel. However, Dr. Goka testified in a clinical setting, where he was providing or recommending treatment, he would not rely on the clinical opinions of someone without proper credentials or certification:

Q. And you would be forced to reject the opinion of someone who didn't have the proper credentials in that case; isn't that correct?

Mr. Ushiroda: Objection. Calls for speculation, assumes facts not in evidence. It's also argumentative.

A. We're talking from a clinical aspect?

By Mr. Varady:

Q. Yes.

A. Okay. If the person didn't have – if I didn't – if I knew the person was not validly credentialed and certified and whatever else and received all the blessings from everybody that they need to, I probably wouldn't have sent them in the first place, so therefore, that's a moot point.

Q. So you wouldn't accept – you wouldn't have sent them to such a person if you knew the person was not properly credentialed?

A. Correct.

Exhibit 1, 47:17-48:10.

If Dr. Goka would not refer a patient for clinical diagnosis, prognosis or treatment to an unlicensed clinician because it would be unsound, there is no reason why he should be allowed to render opinions on the basis of such unsound clinical assessment or recommendations. Exercising its important role to protect the jury and fact finding process from being infected by opinions that do not have adequate foundations, the Court should strike Dr. Goka's testimony. Dr. Goka himself indicated that he would not rely on the opinions of an unlicensed clinician for diagnosis, prognosis or treatment recommendations. Permitting him to use such recommendations for purposes of testimony at trial would be no less improper and the risk of harm would be the same: improper assessment and treatment

decisions made in Bryan's case, by the fact finder. This danger can be avoided only by striking Dr. Goka's report and testimony.

II.    DR. GOKA'S OPINION THAT LUKENS OVERBUDGETED FOR SERVICES TO MEET BRYAN'S NEEDS AND REACHED AN INCORRECT VALUATION OF HIS LIFE CARE PLAN IS CONCLUSORY, UNRELIABLE, AND DOES NOT ASSIST THE JURY

Dr. Goka's analysis in his report of projected needs and costs fails to meet even the most basic requirements that would assure the soundness of his calculations. Moreover, he does not qualify as an economic or life care expert under even the most basic standards of Fed. R. Civ. P. 702.

Dr. Goka's testimony consists entirely of conjecture, assumptions and unfounded assertions, with no firsthand knowledge of Bryan, his family, or the totality of Bryan's condition or the services he needs. Dr. Goka opines that Dr. LeGoff, Ms. Lukens, and Von Elsner, over budgeted for services such as speech therapy, occupational therapy, dental services, residential care, psychological care, and psychiatric care to valuate Bryan's current and future needs, which resulted in an inflated valuation of the life care plan.  As noted above, Dr. Goka relied exclusively on Bryan Siegel's opinions to support these conclusions.  Strikingly, other than calling his own dentist (Exhibit 1, 126:13-127:15) and a regional health center (*id.* 97:2-106:5) in California, Dr. Goka does not attempt to provide any bases for his recommendations that Bryan's services, treatments, therapies be dramatically reduced. He merely concludes that a reduction is reasonable.

10

Similarly, although Dr. Goka is being offered to opine that Ms. Luken's and Mr. Von Elsner's valuation of Bryan's life care plan is incorrect, he cannot provide the jury with what the basis for the appropriate levels of care should be—other than the conversation he had with his own dentist or the anonymous call to the regional health center, in which he did not discuss Bryan's specific needs and which provides services in an area in which Bryan does not even reside. Exhibit 1, 126:13-127:1; 97:2-106:5. Because Dr. Goka cannot offer an independent evaluation and assessment of the life care plan offered by Ms. Lukens and Mr. Von Elsner, his testimony provides no assistance to the jury in valuing Bryan's life care plan. It should therefore be excluded under Fed. R. Evid. 702-03.

United States District Courts have broad discretion to determine the reliability and admissibility of expert testimony. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Under Fed. R. Evid. Rule 702, expert testimony is only admissible "if it will assist the trier of fact to understand the evidence or determine a fact in issue" and it is trustworthy. Accordingly, a trial judge must "disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." Fed. R. Evid. Rule 703. In this case, Dr. Goka's testimony, which is nothing more than a conclusory vouching for the opinions of Dr. Siegel is untrustworthy and provides no assistance to the jury. The centerpiece of Dr. Goka's opinion is that many of the services in Ms. Lukens' life

care plan "would be required to a lesser extent."  Both his two page report and his

deposition testimony reveal the conclusory and unreliable nature of his opinions.

First, although Dr. Goka asserts that the level of services used in Ms. Lukens' life

care plan were inappropriate, he readily concedes that he has no independent,

trustworthy source of information, i.e. evaluations, test data, or assessments to

support those conclusions.

In addition to Dr. Goka's unfamiliarity with Bryan and his family, he

conceded that he did not perform any independent evaluation upon which to base

his future needs valuation. In his deposition, Goka testified as follows:

> Q. My question is – you state that in reviewing Ms. Leukens' (sic) life care
> plan and a discussion with Dr. Siegel, many of the services would be
> required to a lesser extent. Do you see that?
>
> A. Correct.
>
> Q. Now my question for you is: Are you saying that after Bryan's in a group
> home, many of the services will be needed to a lesser extent, or are you
> saying something else? Because that doesn't seem to be tied to anything
> other than the prior paragraph, which talks about him going to a group
> home.
>
> A. It's to the entire plan that Ms. Leukens (sic) had presented by that time.
>
> Q. Okay. So that's both before and after Bryan turns        18 you think she's
> recommending services at too high a level; is that correct?
>
> A. Correct.
>
> Q. An that's without any expertise in the field of autism and without having
> met or assessed Bryan on your own; is that correct?
>
> A. That's with feedback from Dr. Siegel.
>
> Q. So Dr. Siegel told you that and you put that in your report; is that correct?
>
> A. Essentially.

*See* Exhibit 1, 113:14-114:14.   Based on this testimony, Dr. Goka's testimony should be excluded. Dr. Goka clearly has not evaluated Bryan and offers no qualified opinion on costs for his life care plan.   Thus, his opinions are baseless, and do not assist the jury in deciding damages in this case.

Dr. Goka's conclusory testimony also does not explain how or to what extent the use of test data, evaluations, and assessments by Dr. LeGoff and Ms. Lukens should be reduced to reach the lesser extent of services reached by Dr. Siegel.  The stated intention of Dr. Goka's report is to show the reasonableness of proposed services, yet in this case, he finds a reduction in services is warranted apropos to nothing.  Dr. Goka simply states this premise as a conclusion and does not explain the basis for his opinion.  Simply put, he asks the jury to take his word for it.

For instance, with regard to psychiatric services, Dr. Goka states that Ms. Lukens recommends a psychiatrist six times a year, continuing that there "are neither specifics nor medical records that indicate this frequency."  Exhibit 1, 115:6-119:12.  However, he agrees that Bryan may require medication in the future and yet, despite suffering adverse reactions in the past while on medication, that "it would be reasonable for him to see a psychiatrist two to four times a year." *Id.* 116:19-119:12.  Dr. Goka renders this assessment, even though he was not aware of whether Bryan currently takes psychotropic medication that would require monitoring of his renal and hepatic functions to avoid kidney and liver damage.

13

*Id.* 115:6-119:12; 125:16-126:9. In his deposition, Dr. Goka additionally testified

as follows:

> Q. All right. You say Ms. Lukens has recommended a psychiatrist six times a year, period. There are neither specifics or medical records that indicate this frequency. Did I read that accurately?
>
> A. That's true.
>
> Q. Did you assess Bryan for whether or not he needs psychiatric or psychotropic medications?
>
> A. No.
>
> Q. Do you know whether he's taking any psychiatric or psychotropic medications at this time?
>
> A. Prior to – as of Dr. Bonds' reevaluation – not Dr. Bonds – Dr. LeGoff's reevaluation, no, he was not.
>
> Q. Is it your testimony that you are competent to express an opinion to a reasonable medical probability that he will never need psychiatric or psychotropic medication?
>
> A. No.
>
> Q. Your answer would be you don't know whether he will or not; is that correct?
>
> A. That's correct.
>
> Q. You do state that if Bryan were to be placed on medications, it would be reasonable for him to see a psychiatrist two to four times a year. Did I read that accurately?
>
> A. That's correct.
>
> Q. You're not a psychiatrist?
>
> A. Correct.

*Id.* 115:21-116:25. This type of conclusory and unsubstantiated testimony typifies

the foundations underlying Dr. Goka's opinions and renders them wholly

untrustworthy as opinions that would assist the jury calculating damages.

14

Finally, nothing in his testimony confirms that Dr. Goka possess sufficient knowledge, training or experience to make an assessment of Ms. Lukens' life care plan for Bryan's future needs.  Dr. Goka's testimony is not admissible under Rules 702-03.

In sum, Dr. Goka criticizes Ms. Lukens' life care plan even though he has no idea (1) what Bryan's present and future needs are; or (2) a fact-based analysis of the availability of the costs of those services in Bryan's locale.  His testimony should therefore be excluded.

III.    DR. GOKA'S INABILITY TO DO ANY COST ANALYSIS OF THE NECESSARY SERVICES CONTAINED IN THE LIFE CARE PLAN RENDERS HIS OPINION UNHELPFUL TO THE JURY

Dr. Goka's opinions apparently also are being offered to rebut the economic analysis of Mr. Von Elsner.  Dr. Goka is not an economist.  Therefore, he does not possess the requisite skill, training or experience offer opinion testimony regarding the cost of Bryan's present and future services contained in Ms. Lukens' reports. He is unable provide data—other than the conversation with his dentist and the anonymous call to the regional center—to support the cost analysis that he was retained to perform. Dr. Goka's opinions reach an even greater level of unreliability and uselessness when considering his complete lack of knowledge regarding any costing or economic evaluation.

The Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786 (1993) held that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589, 113 S. Ct. at 2795. Dr. Goka did not derive his findings through scientific method or base his testimony on scientifically valid or reliable principles and they should be rejected under Fed. R. Evid. Rule 403 or Rule 702.[3] *Daubert*, 509 U.S. 579, 595, 113 S. Ct. 2786, 2798 (1993). In fact, there is no foundation offered whatsoever, for Dr. Goka's cost analysis.

> The Supreme Court's opinion in *Daubert* focuses closely on the language of Fed. R. Evid. 702, which permits opinion testimony by experts as to matters amounting to "scientific ... knowledge." The Court recognized, however, that knowledge in this context does not mean absolute certainty. 509 U.S. at ----, 113 S.Ct. at 2795. Rather, the Court said, "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." Id. Elsewhere in its opinion, the Court noted that Rule 702 is satisfied where the proffered testimony is "based on scientifically valid principles." Id. at ----, 113 S.Ct. at 2799. Our task, then, is to analyze not what the experts say, but what basis they have for saying it.

*Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

---

[3] While the Court declined to set forth a "definitive checklist or test," *Daubert*, 509 U.S. at 593, 113 S.Ct. at 2796, the Court explicated several factors federal judges can consider in determining whether to admit expert scientific testimony under Fed R. Evid. 702: whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable. *Id*. at 593-94, 113 S.Ct. at 2796-97.

Dr. Goka's costs analysis *fails* to satisfy the requirements under Rule 702 and *Daubert.*  He does not assert that he is expert in calculating damages and lacks the necessary training, experience and credentials to do so.  He relied on no approach that is generally accepted.  He is not a member of any professional organizations (for example, the Association of Forensic Economics, the National Association of Certified Valuation Analysts or the American Society of Appraisers – affiliations that one would normally expect from an expert performing forensic damage calculations).  He has no basis to support his opinions except two informal phone calls to inquire about costs.  The lack of trustworthiness in Dr. Goka's concept of the cost of Bryan's life care in this case is self-evident. His inability to testify about critical facts in the analysis of Bryan's grievous damages is further exemplified in this following exchange regarding Bryan's future dental needs:

> Q. Looking at the next paragraph, it refers to dental care.
> A. Correct.
> Q. And Ms. Lukens suggested it be done monthly. Do you see that?
> A. Correct.
> Q. You indicate that it could be done twice a year. Do you see that?
> A. Correct.
> Q. Is that your opinion or Dr. Siegel's opinion?
> A. That's my opinion, I think, on that one.  But most dentists, basically – under anesthesia, in talking to my own personal dentist, they'd only do it twice a year.
> Q. Are you aware of any special problems related to dental hygiene that Bryan's case presents?

A. It presents a major problem with dental hygiene, because of the fact of his autism and his behavior and the frequency of his brushing his teeth. Therefore, that – you know, that he needs to basically really have a twice a year exam and cleaning.

Q. So am I correct that the basis of your opinion here is a conversation with your own dentist?

A. Correct.

Q. Who is that?

A. Tsutsui.

***

A. What is Dr. Tsutsui's first name and where is he --.

Q. Kenneth. And he retired.

A. Where is he located?

Q. In Fresno. I just asked him hypothetically what he would do with someone. Again, I didn't specifically use Bryan's name to any of these people I discussed it with.

Exhibit 1, 126:13-128:5.

This kind of armchair analysis is not the "product of reliable principles and methods" as required by the Federal Rules of Evidence. The methodology used in Dr. Goka's valuation in his report is not clear and is not even remotely principled. Dr. Goka is not qualified to render the opinions that he does and he does not possess the requisite knowledge, skill, experience, training or education to opine or testify about a valuation of Bryan's future needs.

Based on this failure to meet the requirements of Rule 702 and *Daubert*, Dr. Goka's testimony should be excluded. It is manifestly clear that Dr. Goka has left out critical facts and has engaged in pure speculation in formulating the opinions –

opinions that he is not even qualified to make.  Dr. Goka's opinion cannot assist the jury in determining the costs of Bryan's future needs and, consequently damages.

In light of all these deficiencies, he simply concludes that Ms. Lukens is wrong.  Dr. Goka's testimony is not admissible under Fed. R. Evid. Rules 702-03. Thus, he should be prohibited from testifying in this case.

## IV.    SPOILATION REQUIRES THAT DR. GOKA'S BE STRUCK OR, ALTERNATIVELY, THAT PLAINTIFFF BE PERMITTED TO COMMENT ON THE SPOILATION TRIAL

Dr. Goka admitted during his deposition that he destroyed relevant evidence despite his express knowledge of the existing lawsuit.  Dr. Goka was hired specifically as an expert after the onset of the litigation. Defendants are seeking to have Dr. Goka testify in contradiction of Ms. Lukens' opinions and the findings contained in her life care plan. Yet, knowing he had been so retained, Dr. Goka testified during his deposition that he destroyed the notes used to prepare Mr. Ushiroda for Ms. Lukens' deposition. Exhibit 1, 158:23-163:7. This conduct constitutes spoilation of evidence.

Essentially, the tort action for spoilation of evidence provides damages where the actor knows that litigation exists or is probable, the spoliator willfully or negligently destroys evidence with a design to disrupt plaintiff's case, or where such disruption is foreseeable, plaintiff's case is in fact disrupted and plaintiff

19

suffers damages proximately caused by the spoliator's acts.  *Hewitt v. Allen Canning Co.*, 321 N.J. Super. 178, 728 A.2d 319 (App. Div. 1999).

In *Matsuura v. E.I. du Pont de Nemours*, 102 Hawaii 149, 73 P.3d 687 (2003), the Supreme Court of Hawai`i held that Plaintiffs were entitled to an independent cause of action for fraud arising from the discovery and settlement process arising from an earlier litigation.  The court did not resolve the certified question from the United States District Court for the District of Hawai`i of whether Hawai`i recognizes an independent tort of intentional spoilation of evidence.  However, the court recognized that "[e]vidence of spoilation, if produced at trial, may be addressed by a variety of trial devices such as appropriate instructions, striking of defenses, limitation of testimony, etc."  102 Hawaii at 169, 73 P.3d at 707 (Acoba, J., concurring).

Dr. Goka destroyed potentially key evidence to prove that Lukens' report contained accurate information despite his knowledge of existing and ongoing litigation.  His lack of consideration is further exemplified in this following exchange regarding his assistance and preparation of Mr. Ushiroda for Ms. Lukens' deposition:

> Q. Did you identify to Mr. Ushiroda any questions you had about Ms. Leukens' report?
>
> A  Such as?
>
> Q. Any.

A.  Well, yeah.  I mean, I told him what I felt was – I mean, what I felt, you know, as I documented in my supplemental and primary reports.

Q.  My question isn't did you tell him you disagreed with it.  That's not my point.

My point is:  Were there any questions in your mind about things contained within her report that you wanted clarification on that you talked to Mr. Ushiroda about and said, Gee, Mr. Ushiroda, I'd like to get more information about why she's coming to this conclusion?

A.  I think there's some figures I wanted validated, how she came to that conclusion and how she got them, and who made the recommendations of – some of the recommendations, and she verified that.

Q.  And she did that in her deposition, is that correct?

A.  Yes.

Q.  Did you assist Mr. Ushiroda in preparing for Loretta Luekens' deposition by providing those types of questions?

A.  A couple like those.  That's – you know, those are the type things.  I wanted to figure out where she got her figures from and, you know, the biggest question I had was how come she didn't – what was the reason that the financial figures didn't change from her two reports.

*** 

Q.  My question to you is:  Did you provide a list of questions to Mr. Ushiroda to ask Ms. Leukens?

A.  I gave him some questions, yes.

Q.  Were those in writing?

A.  Some were.  Some were verbal.

Q.  Have copies of those been produced to us?

A.  No.  I don't have them anymore.  It was just I wrote some notes, I thought about it and I told him, and then I just got rid of it.

Q.  What do you mean you got rid of it?  You destroyed them?

A.  Yeah.

Q.  There's no copy of those remaining?

Q.  Not that I know of.

*Id.* 158:1-25; 159:1-6, 23-25;160:1-12.

A reasonable inference can be drawn that Dr. Goka wanted to avoid answering questions he had submitted to Mr. Ushiroda to attack Ms. Lukens' conclusions and opinions. Dr. Goka has deprived Plaintiffs of the opportunity to try the shoe out on Dr. Goka's foot. A further inference can be drawn that Mr. Ushiroda asked Dr. Goka to help him obtain responses that would justify Dr. Goka finding lower care levels were needed, and avoid the consequences of the fact that Dr. Goka is not a life care planner. Finally, there may have been other matters discussed that were not directly related to Ms. Lukens' work. Based on this intentional destruction of evidence, Goka's testimony should be excluded.

Alternatively, the Plaintiffs should be permitted to comment to the jury regarding the possible contents and reasons for destruction of these notes, with an instruction from the Court regarding the reason such comment is being permitted.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Dr. Richard Goka's expert testimony be excluded.

DATED: Honolulu, Hawai`i, August 4, 2008.

/S/ STANLEY E. LEVIN_____
STANLEY E. LEVIN
CARL M. VARADY
MICHAEL K. LIVINGSTON
Attorneys for Plaintiffs