IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>               Plaintiffs,<br>    vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>               Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   ARGUMENT ....................................................................................2

      A.    EVIDENCE OF MONEY SPENT ON BRYAN IS IRRELEVANT ..
           AND  PREJUDICIAL.........................................................................2

      B.    EVIDENCE OF THE COST OF PACIFIC CHILD AND FAMILY ....
           PROGRAM IS IRRELEVANT AND PREJUDICIAL ........................8

      C.    THE COLLATERAL SOURCE RULE DOES NOT  DISCHARGE ...
           DEFENDANT'S LIABILITY..............................................................14

III.  CONCLUSION...............................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ................................................................7

*Battle v. Anderson,*
  564 F.2d 388 (10th Cir. 1977).............................................6

*Bynum v. Magno,*
  106 Hawai`i 81, 101 P.3d 1149 (2004) ............................16

*Cedar Rapids Cmty. Sch. Dist. v. Garret F.*
  526 U.S. 66, 119 S.Ct. 992 (1999) .....................................2

*Duvall v. County of Kitsap,*
  260 F.3d 1124 (9th Cir. 2001) .........................................3, 4

*Jackson v. Bishop,*
  404 F.2d 571 (8th Cir. 1968) ..............................................6

*Kruelle v. New Castle County School Dist.,*
  642 F.2d 687 (3rd Cir. 1981)...............................................5

*Lareau v. Manson,*
  651 F. 2d 96 (2d Cir. 1981) .................................................6

*Lovell v. Chandler,*
  303 F.3d 1039 (9th Cir. 2002) .................................... 2, 4, 5

*Mark H. v. Lemahieu,*
  513 F.3d 922 (9th Cir. 2008) ...........................................2, 4

*Obrey v. Johnson,*
  400 F.3d 691 (9th Cir. 2005) ...............................................1

*Smith v. Sullivan,*
  611 F.2d 1039 (5th Cir. 1980)..............................................6

*Touche Ross & Co. v. Redington,*
  442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ...........7

*United States v. Cordoba,*
  194 F.3d 1053 (9th Cir. 1999)..............................................2

*United States v. State of Hawai'i,*
  885 F. Supp. 212 (1995) ......................................................6

*Wong v. Regents of University of California,*
  192 F.3d 807 (9th Cir. 1999)...............................................3

**Rules**

Fed. R. Evid. 403 ...............................................................................................2, 8
Fed. R. Evid. Rule 402 .................................................................................. 1, 15

**Treatises**
Restatement § 902A(2) .......................................................................................16
Restatement § 902A, comments b and c (4) .......................................................16
Restatement § 920A ...........................................................................................16

**Regulations**
29 C.F.R. § 1630.15(d) .........................................................................................7
29 C.F.R. § 1630.9 ...............................................................................................7
34 C.F.R. § 104.33(a)...........................................................................................5
34 C.F.R. § 300.136 .............................................................................................6

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

I.    <u>INTRODUCTION</u>

Based on their jury instructions, it appears that Defendant DEPARTMENT OF EDUCATION (DOE) will attempt to introduce evidence, testimony, argument, and comment concerning: (1) the amount of money spent or that might have been spent on Bryan, including the proposed cost of a Pacific Child and Family Associates program ("PCFA"); (2) the effect of damages on the DOE and/or that any award will proportionately reduce available services to other students; or (3) evidence that collateral sources of payments in California to Bryan should reduce their liability in this case. Evidence of this sort is inadmissible because cost is not an excuse in the inquiry of whether the DOE discriminated against Plaintiffs with deliberate indifference. Such references intended to limit or reduce Plaintiffs damages to reflect public funding sources are prohibited under the collateral source doctrine.

This type of prejudicial, misleading and irrelevant evidence is does not help the jury evaluate the liability issues in this case. The district court has broad discretion to exclude irrelevant evidence. *See Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005). Except as otherwise provided by the rule, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Fed. R. Evid. Rule 402.

1

A district court's decision to exclude or admit evidence under FRE 403 is afforded "considerable deference." *United States v. Cordoba*, 194 F.3d 1053 (9th Cir. 1999).  Unfair prejudice will arise from the admission of evidence regarding sums of money spent by the DOE.  *See* Fed. R. Evid. 403.

II.    <u>ARGUMENT</u>

II.    <u>ARGUMENT</u>

A.    EVIDENCE OF MONEY SPENT ON BRYAN IS IRRELEVANT
       <u>AND PREJUDICIAL</u>

Plaintiffs anticipate that Defendants will attempt to introduce evidence, testimony, argument and comment concerning the amount of money it spent on Bryan as satisfying its Section 504 obligations.  The State cannot excuse its deliberate indifference toward Bryan, in failing to provide him special education and related services that would allow meaningful access and reasonable accommodations to public school, based upon cost.  *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002); *Cedar Rapids Cmty. Sch. Dist. v. Garret F.* 526 U.S. 66, 77-78, 119 S.Ct. 992, 999 (1999).  The requirement of meaningful access to federally funded programs is not limited by cost; it is needs based according to the individuals need for reasonable accommodation.

*Mark H. v. Lemahieu,* 513 F.3d 922, 938 (9th Cir. 2008), mandates that a public entity is liable for damages under Section 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable

accommodation to disabled persons.    Costs of such services are not a consideration. Deliberate indifference means knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001). The public entity is required to undertake a fact-specific investigation of the individual's needs to determine what constitutes a reasonable accommodation. *Id.* Section 504 creates "a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." 260 F.3d at 1138-39, *citing Wong v. Regents of University of California,* 192 F.3d 807, 818 (9th Cir. 1999).   A school district cannot discharge its legal duty to "act", by merely proffering just any accommodation. 260 F.3d at 1138-39.   The school district must consider the individual's particular needs when investigating what accommodations are reasonable. *Id.* 29 U.S.C. § 794(a).   Therefore, there is no legal defense available based on cost.

Similarly, the DOE may attempt to mislead the jury by introducing evidence that the money it spent while failing to provide Bryan appropriate special education and related services somehow satisfies its Section 504 obligations because "something is better than nothing."   It is noteworthy that Defendants, by their conduct in the almost four years pendency of this case, have never argued or

claimed that the violation of Section 504 was caused by a lack of funding for Bryan's program.  It is appropriate then to consider this defense as waived.

In order to establish that the Defendants acted with deliberate indifference, evidence must show that the DOE acted with "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1139 (9th Cir. 2001).

> The first element is satisfied when the public entity has notice that an accommodation is required. The second element is satisfied if the entity's "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness."  Under the second element, "a public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable."

*Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002), *citing Duvall*, 260 F.3d at 1139 (internal citations omitted).

The Defendants in this case may argue that the DOE lacked the necessary funds and/or trained personnel to address Bryan's needs, or conversely, introduce evidence concerning the amount of money spent on Bryan and/or that any such evidence indicates a lack of discriminatory intent in providing meaningful access to Bryan. Neither *Mark H.*, nor any of the above-cited Section 504 cases that preceded it permit such a cost-benefit argument.

4

Similarly, Defendants may attempt to introduce evidence, testimony, argument and comment that the DOE will be forced to absorb a damage award at the direct expense of other students. Again, evidence of this sort is inadmissible because it is irrelevant to the determination of whether the DOE acted with deliberate indifference to the needs of Plaintiffs.

Plaintiffs contend that admission of any evidence related to money, either in the money spent in the failure to provide a FAPE to Bryan or in the effect of damages on the DOE or on other students within the DOE is prejudicial because, while the Defendants may attempt to introduce the evidence as a mitigating circumstance, it is misleading, irrelevant is inadmissible.

All students with disabilities are entitled to a free appropriate public education. 34 C.F.R. § 104.33(a). As a result, the Department of Education has the legal obligation under Section 504 to fund the provision of whatever services Bryan needed to deliver meaningful access to and prevent Bryan from being excluded from public education. There are definite costs involved, and school districts must pay them in order not to discriminate on the basis of handicap. Federal courts repeatedly have held that financial constraints do not allow states to deprive persons of their constitutional and civil rights. *E.g., Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002); K*ruelle v. New Castle County School Dist.*, 642 F.2d 687, 695 (3rd Cir. 1981); *United States v. State of Hawai'i,* 885 F. Supp.

5

212, 215 (1995). The amount of money the DOE spent on Bryan's program is inadmissible because it is irrelevant.    The lack of money or effect of the expenditure is not a valid defense to providing Bryan meaningful access and it should be noted that budgetary problems cannot be used to justify or excuse violations of constitutional rights and courts do not recognize a "cost defense." *Lareau v. Manson*, 651 F. 2d 96, 104 (2d Cir. 1981); *Smith v. Sullivan*, 611 F.2d 1039, 1043-44 (5th Cir. 1980) (spending limits cannot excuse unconstitutional conditions); *Battle v. Anderson*, 564 F.2d 388, 396 (10th Cir. 1977); *Jackson v. Bishop*, 404 F.2d 571, 580 (8th Cir. 1968).    The lack of money or effects of spending money on Bryan's program are not a valid defense.

The same result applies with regard to trained personnel.  The DOE agreed to provide appropriately trained personnel when it accepted federal funding under Section 504 of the Rehabilitation Act.  *See, e.g.* 34 C.F.R. § 300.136.  Because it also had the duty to ensure that Byran's needs were met, the DOE could not base its decisions regarding the delivery of services on whether its service providers were adequately and appropriately staffed or skills trainers had time available to address Bryan's needs.

Unlike Title I of the Americans with Disabilities Act, that governs employment and its implementing regulations that prohibit discrimination in employment, Section 504 does not contain an "undue hardship" defense that would

permit the Department to plead poverty or <u>undue</u> hardship.  The ADA regulations provide that it may be a defense to a charge of discrimination, as described in 29 C.F.R. § 1630.9, that a requested or necessary accommodation would impose an undue hardship on the operation of the covered entity's business. 29 C.F.R. § 1630.15(d).  No similar provision exists for Section 504, supporting the conclusion that Congress, when it intends such a defense to exist, is perfectly capable of creating one expressly.   If Congress had wanted and intended federally funded programs to have the protection of such a defense, it could have simply created one.  It did not do so and, by legal and logical implication, did not intend one.

Such private rights and defenses are not to be lightly implied.  Congressional intent is the keystone as to whether a federal private right exists for a federal statute. *See Alexander v. Sandoval,* 532 U.S. 275, 286, (2001). Without a showing of congressional intent, such rights do not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.: *Id.* at 286-87. This Court must "begin . . . [its] search for Congress's intent with the text and structure" of the statute, *id.* at 288, and cannot ordinarily conclude that Congress intended to create  a right  when none was explicitly provided. *See, e.g., Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best).

7

Consequently, the Plaintiffs respectfully request that the Defendants be barred from arguing cost as a defense or asserting DOE lacked funding for additional trained personnel,. Undue hardship is expressly omitted as a defense under Section 504, in contrast to the ADA. The Court should not create such a defense for Defendant, as the cases clearly demonstrate that rights not expressed by Congress should not be lightly applied.

B.    EVIDENCE OF THE COST OF PACIFIC CHILD AND FAMILY
      PROGRAM IS IRRELEVANT AND PREJUDICIAL

Plaintiffs anticipate that Defendant may also attempt to introduce evidence, testimony, argument and comment concerning the proposed cost of a program provided by PCFA.

Plaintiffs seek an order excluding the cost of the PCFA program from evidence in the instant action. Evidence of this sort is inadmissible under the above analysis, and because it is irrelevant, as the monies never were expended or contract signed for services from PCFA. Unfair prejudice will arise from the admission of this evidence. See Fed. R. Evid. 403. Plaintiffs contend that admission of the evidence will be unfair and prejudicial because it concerns a wholly unconsummated proposal that followed an incomplete observation of Bryan, his school and his home by PCFA director Cara Entz. Additionally, it is wholly inappropriate and irrelevant to use unreliable evidence that the DOE was

8

<u>prepared</u> to spend funds on Bryan as evidence of compliance with Section 504. Such a defense would relieve DOE from ever having to spend, as long as it could assert it was "considering it."

The DOE has previously demonstrated its willingness to parade this irrelevant and misleading evidence as proof of their effort to provide a program for Bryan. Indeed, instead of allowing Ms. Entz to complete the necessary evaluation on October 22, 2004, the second day of her two day observation trip, the DOE suddenly changed the scheduled observation and meetings at the last minute to present her at a hearing before Judge Kurren where they represented Ms. Entz and her efforts to provide a proposal as evidence of their ability and willingness to spend considerable funds to comply with the various IEPs, Hearings Orders and settlement agreements.

In her deposition, Ms. Entz testified regarding her observation schedule located at Exhibit 8 to her deposition as follows:

> Mr. Ushiroda: … But now if you go down to October 22nd, '04, Friday, it has two items, DOE/AG meeting  from 9:00 to 12:00 and also a meeting with DOE/AG and PCFA at the West Hawai`i District Office.  But both appear to be crossed off.
> A.    Yes.  It all changed and we flew to Honolulu to meet with a judge.  And I can't remember his name.
> Q.    Oh, okay.
> A.    So that kind of took up the whole day.
> Q.    And that went from 9:00 to 5:00?

A.    Yes.

***

Q.    Do you know why these meetings got cancelled?

A.    I can't really tell you why.  We where just told that we needed to go and present our findings to this judge and they wanted to do it before I left. I was leaving, I think, that evening.  So they wanted him to hear from me before I left.

Q.    And when you say "they," who is "they"?

A.    Well, Kate and then there was another attorney, I believe, for the district.

Q.    Lono Beamer?

A.    What was the name again?

Q.    Lono?

A.    No.  It was a woman.

Q.    Holly?

A.    Holly, yes.

Q.    Holly Shikada?

A.    Yes, yes.

*See* Exhibit 1, Deposition of Cara Entz  110:11-25-111:19.

Later in her deposition, Ms. Entz testified as follows:

Mr. Varady: When you were originally scheduled to go to the Big Island, you were going to spend Thursday making observations and then had meetings on Friday.

How was it determined that instead of having meetings on Friday, you would be flying over to Honolulu to meet with Judge Kurren?

A.    I don't know how it was determined, but Holly or someone said that that's what needed to happen, basically, I guess.  I don't – I can't remember why.

Q.    So was any –

A.    Well, sorry.

Q.    Go ahead.

10

A.  Except that they wanted me to be able to present my information before I left, I think.

Q.  That's what I was going to ask you.

A.  Yeah.

Q.  Why were you told that you needed to go tell the judge what at least the outline of your proposal was going to be, what was explained to you?

A.  It wasn't really explained to me.

Q.  Okay.

      You were just told this is what you're going to do next?

A.  They wanted me to present it to the judge before I left Hawaii.  Yeah, I mean, I don't remember the reason why.

Q.  And I think what you said was Shelby [Floyd] was already in Honolulu at that time, she was not traveling with you?

A.  No.

Q.  And when you were told you would be meeting with Judge Kurren, she was not party to that discussion; is that correct?

A.  Correct.

*Id.* 303:25-305:8.

This unexpected change in the schedule to appear before Judge Kurren left Ms. Entz unable to resolve a discrepancy between what the DOE represented to her in advance regarding Bryan's high levels of needs, versus what she observed firsthand, and she was not allowed to meet with the DOE and resolve those concerns on Friday as contemplated by the schedule.  PCFA therefore made alternative proposals based on the DOE's description versus her first hand observation of Bryan.

However, any effort to introduce evidence of the PCFA proposal is wholly disingenuous for a number of reasons.  First, there was never a final contract between the DOE and PCFA and no efforts were made to negotiate a final accepted program.  A proposal was received on November 23, 2004 and yet the DOE did nothing further to accept, reject or modify the proposal.  As exemplified in this following exchange regarding the November proposal, Ms. Entz testified that she did not hear anything back from the DOE:

> Q.  Now, after this proposal was sent to Kate and Shelby on November 23rd, did you receive any response, feedback?
>
> A.  No, I don't remember any feedback.  I may have followed up with phone calls to see what was going on.  I – yeah, that's about all I can recall.  I don't remember a lot of feedback or --
>
> Q.  Do you have any –
>
> Do you have a recollection or perhaps speaking with Kate Tolentino about this proposal?
>
> A.  No, actually, I don't recall that.  I have a vague recollection, but I couldn't – I'm not sure what the conversation was about.
>
> Q.  A vague recollection of –
>
> A.  Of having a conversation with her.
>
> Q.  With Kate?
>
> A.  Following this, yes, but not remembering.
>
> Q.  Okay.
>
> Other than this vague recollection, do you have any recollection of further work that was done once this proposal was sent out?
>
> A.  No.
>
> Q.  Just never heard back?
>
> A.  Right.

12

*** 

Q.  Did you receive any information that the DOE or the school district was willing to pay for this proposal?

A.  No.

Q.  Do you know or have any information as to whether the DOE approved this proposal?

A.  No information.

*Id.* 216: 23-25; 217:1-21; 218:13-20.  No steps were taken by PCFA to register their business in Hawaii or to employ people in Hawaii because the proposal was not accepted and they would not undertake those kinds of formal measures without it.  *Id.* 282: 14-23.

Secondly, at the time PCFA submitted a proposal, the DOE was actively looking at various residential placements for Bryan on the mainland.  As of November 16, 2004, the following institutions had space available and were under consideration by the DOE: Heartspring School in Kansas, Indiana Developmental Training Center, The Center for Discovery in New York and Chileda in Wisconsin. *See* Exhibit "2", November 16, 2004 Facsimile Transmittal from Cynthia Esaki to Kate Tolentino.  See Exhibit "3", November 17, 2004 Facsimile Transmittal from Kate Tolentino to Holly Shikada and Lono Beamer.

Defendants may seek to introduce evidence that the proposed cost of a PCFA program indicates that the DOE was prepared spend a significant amount of funds to provide Bryan's program as required.  Plaintiffs nonetheless argue that any probative value is substantially outweighed by the risk that the jury would be

13

confused or mislead by the PCFA proposal.  Evidence of some proposed amount of money that may have spent contracting with PCFA is wholly irrelevant.  Not only did the DOE not fund a PCFA proposal, they did not respond to it or negotiate with them to reduce the proposal to a final contract.  There was no contract between the DOE and PCFA for providing Bryan's program.   More importantly, any evidence of the cost of PCFA will only mislead and confuse the jury because not only was there no money spent on the PCFA proposal, it is of no consequence whatsoever, because the DOE has to provide FAPE no matter the cost.

The cost of a PCFA program is inadmissible because it is irrelevant.  For the foregoing reasons, Plaintiffs' respectfully request that the Court exclude any evidence, testimony, argument and comment concerning the PCFA proposal.

## C.    THE COLLATERAL SOURCE RULE DOES NOT DISCHARGE DEFENDANT'S LIABILITY

Plaintiffs anticipate that Defendant will attempt to introduce evidence, testimony, argument and comment concerning collateral sources of payment for Bryan's future care and needs.

Plaintiffs seek an order excluding any reference to collateral sources of funding or argument that social legislation payments discharge any liability or obligation of Defendant in the instant action.  The collateral source rule applies to prevent the reduction of Plaintiffs' damages award pursuant to the availability of

14

government subsidized services for Bryan's present and future care provided by the State of California. Evidence of this sort is inadmissible because it is irrelevant under the Fed. R. Evid. Rule 402.

Dr. Goka's report contains speculative references to California State sources of possible funding for Plaintiffs' services, for example, the school district or the Regional Center. *See* Exhibit 4, June 28, 2006 Report of Richard S. Goka, M.D.; Exhibit 5, Deposition of Richard S. Goka at 97. Dr. Siegel may also testify that alternate sources of social legislation funding will adequately compensate Plaintiffs and will meet Bryan's needs for future care. *See* Exhibit 6, Deposition of Bryna Siegel, Ph.D. 116-117:142; 207, 213. Such references intended to limit or reduce Plaintiffs damages to reflect public funding sources are prohibited under the collateral source doctrine.

On a certified question from the United States District Court for the District of Hawai`i (Ezra, J., presiding), the Supreme Court of Hawai`i considered whether the collateral source rule prohibits reducing a patient's damages award due to discounted social legislation payments. The court adopted the RESTATEMENT (SECOND) OF TORTS: DAMAGES (Restatement) view that payments or benefits conferred on an injured party are not credited to the wrongdoer's liability pursuant to the collateral source rule. "The 'collateral source rule,' in general, provides that benefits or payments received on behalf of a plaintiff, from an independent source,

15

will not diminish recovery from the wrongdoer." *Bynum v. Magno*, 106 Hawai`i 81, 86, 101 P.3d 1149, 1154 (2004) (citation omitted). The doctrine further provides that "[u]nder the collateral source rule, a tortfeasor is not entitled to have its liability reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor." *Id.* (citation and internal quotation marks omitted).

Under the Restatement § 920A, entitled, "Effect of Payments Made to Injured Party," further establishes that under the collateral source rule, "[p]ayments made to *or benefits conferred* on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or part of the harm for which the tortfeasor is liable." Restatement § 902A(2) (emphasis added). The Restatement further provides that that the collateral source rule applies to "[b]enefits from collateral sources" and "social legislation benefits." Restatement § 902A, comments b and c (4). Section 504 of the Rehabilitation Act is a social legislation provision enacted by Congress designed to encourage states to provide meaningful education to individuals with disabilities. Any benefits that California (assuming that Plaintiffs remain in California) pays to provide Plaintiffs IDEA benefits are precluded by the collateral source rule.

16

Therefore, Dr. Goka's testimony, Dr. Siegel's testimony and reports of these benefits are barred by the collateral source rule, are irrelevant and will only mislead and confuse the jury and therefore should be excluded from the record.

III.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully seek an in limine Order restraining Defendant from attempting to introduce evidence, testimony, argument and comment concerning: (1) the amount of money expended on Bryan including the proposed cost of services purchased from third parties; (2) the effect of costs or a damage award on the DOE insofar as an award might proportionately reduce available services to other students; and  (3) that collateral sources of payments to Bryan should reduce their liability in this case for damages.

DATED:  Honolulu, Hawai`i, August 4, 2008.

/S/ STANLEY E. LEVIN
STANLEY E. LEVIN
CARL M. VARADY
MICHAEL K. LIVINGSTON
Attorneys for Plaintiffs