*29 USC 705*

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

# TITLE 29 - LABOR
## CHAPTER 16 - VOCATIONAL REHABILITATION AND OTHER REHABILITATION SERVICES
### GENERAL PROVISIONS

### § 705. Definitions

For the purposes of this chapter:

**(1) Administrative costs**

The term "administrative costs" means expenditures incurred in the performance of administrative functions under the vocational rehabilitation program carried out under subchapter I of this chapter, including expenses related to program planning, development, monitoring, and evaluation, including expenses for—

  **(A)** quality assurance;

  **(B)** budgeting, accounting, financial management, information systems, and related data processing;

  **(C)** providing information about the program to the public;

  **(D)** technical assistance and support services to other State agencies, private nonprofit organizations, and businesses and industries, except for technical assistance and support services described in section 723 (b)(5) of this title;

  **(E)** the State Rehabilitation Council and other advisory committees;

  **(F)** professional organization membership dues for designated State unit employees;

  **(G)** the removal of architectural barriers in State vocational rehabilitation agency offices and State operated rehabilitation facilities;

  **(H)** operating and maintaining designated State unit facilities, equipment, and grounds;

  **(I)** supplies;

  **(J)** administration of the comprehensive system of personnel development described in section 721 (a)(7) of this title, including personnel administration, administration of affirmative action plans, and training and staff development;

  **(K)** administrative salaries, including clerical and other support staff salaries, in support of these administrative functions;

  **(L)** travel costs related to carrying out the program, other than travel costs related to the provision of services;

  **(M)** costs incurred in conducting reviews of rehabilitation counselor or coordinator determinations under section 722 (c) of this title; and

  **(N)** legal expenses required in the administration of the program.

**(2) Assessment for determining eligibility and vocational rehabilitation needs**

The term "assessment for determining eligibility and vocational rehabilitation needs" means, as appropriate in each case—

  **(A)** (i) a review of existing data—

    **(I)** to determine whether an individual is eligible for vocational rehabilitation services; and

    **(II)** to assign priority for an order of selection described in section 721 (a)(5)(A) of this title in the States that use an order of selection pursuant to section 721 (a)(5)(A) of this title; and

  (ii) to the extent necessary, the provision of appropriate assessment activities to obtain necessary additional data to make such determination and assignment;

EXHIBIT 3

**(B)** to the extent additional data is necessary to make a determination of the employment outcomes, and the nature and scope of vocational rehabilitation services, to be included in the individualized plan for employment of an eligible individual, a comprehensive assessment to determine the unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, including the need for supported employment, of the eligible individual, which comprehensive assessment—

**(i)** is limited to information that is necessary to identify the rehabilitation needs of the individual and to develop the individualized plan for employment of the eligible individual;

**(ii)** uses, as a primary source of such information, to the maximum extent possible and appropriate and in accordance with confidentiality requirements—

**(I)** existing information obtained for the purposes of determining the eligibility of the individual and assigning priority for an order of selection described in section 721 (a)(5)(A) of this title for the individual; and

**(II)** such information as can be provided by the individual and, where appropriate, by the family of the individual;

**(iii)** may include, to the degree needed to make such a determination, an assessment of the personality, interests, interpersonal skills, intelligence and related functional capacities, educational achievements, work experience, vocational aptitudes, personal and social adjustments, and employment opportunities of the individual, and the medical, psychiatric, psychological, and other pertinent vocational, educational, cultural, social, recreational, and environmental factors, that affect the employment and rehabilitation needs of the individual; and

**(iv)** may include, to the degree needed, an appraisal of the patterns of work behavior of the individual and services needed for the individual to acquire occupational skills, and to develop work attitudes, work habits, work tolerance, and social and behavior patterns necessary for successful job performance, including the utilization of work in real job situations to assess and develop the capacities of the individual to perform adequately in a work environment;

**(C)** referral, for the provision of rehabilitation technology services to the individual, to assess and develop the capacities of the individual to perform in a work environment; and

**(D)** an exploration of the individual's abilities, capabilities, and capacity to perform in work situations, which shall be assessed periodically during trial work experiences, including experiences in which the individual is provided appropriate supports and training.

**(3) Assistive technology device**

The term "assistive technology device" has the meaning given such term in section 3002 of this title, except that the reference in such section to the term "individuals with disabilities" shall be deemed to mean more than one individual with a disability as defined in paragraph (20)(A).

**(4) Assistive technology service**

The term "assistive technology service" has the meaning given such term in section 3002 of this title, except that the reference in such section—

**(A)** to the term "individual with a disability" shall be deemed to mean an individual with a disability, as defined in paragraph (20)(A); and

**(B)** to the term "individuals with disabilities" shall be deemed to mean more than one such individual.

**(5) Community rehabilitation program**

The term "community rehabilitation program" means a program that provides directly or facilitates the provision of vocational rehabilitation services to individuals with disabilities, and that provides, singly or in combination, for an individual with a disability to enable the individual to maximize opportunities for employment, including career advancement—

   **(A)** medical, psychiatric, psychological, social, and vocational services that are provided under one management;

   **(B)** testing, fitting, or training in the use of prosthetic and orthotic devices;

   **(C)** recreational therapy;

   **(D)** physical and occupational therapy;

   **(E)** speech, language, and hearing therapy;

   **(F)** psychiatric, psychological, and social services, including positive behavior management;

   **(G)** assessment for determining eligibility and vocational rehabilitation needs;

   **(H)** rehabilitation technology;

   **(I)** job development, placement, and retention services;

   **(J)** evaluation or control of specific disabilities;

   **(K)** orientation and mobility services for individuals who are blind;

   **(L)** extended employment;

   **(M)** psychosocial rehabilitation services;

   **(N)** supported employment services and extended services;

   **(O)** services to family members when necessary to the vocational rehabilitation of the individual;

   **(P)** personal assistance services; or

   **(Q)** services similar to the services described in one of subparagraphs (A) through (P).

**(6) Construction; cost of construction**

   **(A) Construction**

   The term "construction" means—

   **(i)** the construction of new buildings;

   **(ii)** the acquisition, expansion, remodeling, alteration, and renovation of existing buildings; and

   **(iii)** initial equipment of buildings described in clauses (i) and (ii).

   **(B) Cost of construction**

   The term "cost of construction" includes architects' fees and the cost of acquisition of land in connection with construction but does not include the cost of offsite improvements.

**(7) Repealed. Pub. L. 105–277, div. A, § 101(f) [title VIII, § 402(c)(1)(B)], Oct. 21, 1998, 112 Stat. 2681–337, 2681–415**

**(8) Designated State agency; designated State unit**

   **(A) Designated State agency**

   The term "designated State agency" means an agency designated under section 721 (a)(2)(A) of this title.

   **(B) Designated State unit**

   The term "designated State unit" means—

   **(i)** any State agency unit required under section 721 (a)(2)(B)(ii) of this title; or

   **(ii)** in cases in which no such unit is so required, the State agency described in section 721 (a)(2)(B)(i) of this title.

**(9) Disability**

The term "disability" means—

   **(A)** except as otherwise provided in subparagraph (B), a physical or mental impairment that constitutes or results in a substantial impediment to employment; or

*29 USC 705*

NB: *This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

    **(B)** for purposes of sections 701, 711, and 712 of this title, and subchapters II, IV, V, and VII of this chapter, a physical or mental impairment that substantially limits one or more major life activities.

**(10) Drug and illegal use of drugs**

    **(A) Drug**

The term "drug" means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812).

    **(B) Illegal use of drugs**

The term "illegal use of drugs" means the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act [21 U.S.C. 801 et seq.]. Such term does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

**(11) Employment outcome**

The term "employment outcome" means, with respect to an individual—

    **(A)** entering or retaining full-time or, if appropriate, part-time competitive employment in the integrated labor market;

    **(B)** satisfying the vocational outcome of supported employment; or

    **(C)** satisfying any other vocational outcome the Secretary may determine to be appropriate (including satisfying the vocational outcome of self-employment, telecommuting, or business ownership),

in a manner consistent with this chapter.

**(12) Establishment of a community rehabilitation program**

The term "establishment of a community rehabilitation program" includes the acquisition, expansion, remodeling, or alteration of existing buildings necessary to adapt them to community rehabilitation program purposes or to increase their effectiveness for such purposes (subject, however, to such limitations as the Secretary may determine, in accordance with regulations the Secretary shall prescribe, in order to prevent impairment of the objectives of, or duplication of, other Federal laws providing Federal assistance in the construction of facilities for community rehabilitation programs), and may include such additional equipment and staffing as the Commissioner considers appropriate.

**(13) Extended services**

The term "extended services" means ongoing support services and other appropriate services, needed to support and maintain an individual with a most significant disability in supported employment, that—

    **(A)** are provided singly or in combination and are organized and made available in such a way as to assist an eligible individual in maintaining supported employment;

    **(B)** are based on a determination of the needs of an eligible individual, as specified in an individualized plan for employment; and

    **(C)** are provided by a State agency, a nonprofit private organization, employer, or any other appropriate resource, after an individual has made the transition from support provided by the designated State unit.

**(14) Federal share**

    **(A) In general**

Subject to subparagraph (B), the term "Federal share" means 78.7 percent.

    **(B) Exception**

The term "Federal share" means the share specifically set forth in section 731 (a)(3) of this title, except that with respect to payments pursuant to part B of subchapter I of this chapter to any State that are used to meet the costs of construction of those rehabilitation facilities identified in

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

section 723 (b)(2) of this title in such State, the Federal share shall be the percentages determined in accordance with the provisions of section 731 (a)(3) of this title applicable with respect to the State.

### (C) Relationship to expenditures by a political subdivision

For the purpose of determining the non-Federal share with respect to a State, expenditures by a political subdivision thereof or by a local agency shall be regarded as expenditures by such State, subject to such limitations and conditions as the Secretary shall by regulation prescribe.

### (15) Governor

The term "Governor" means a chief executive officer of a State.

### (16) Impartial hearing officer

#### (A) In general

The term "impartial hearing officer" means an individual—

  (i)  who is not an employee of a public agency (other than an administrative law judge, hearing examiner, or employee of an institution of higher education);

  (ii)  who is not a member of the State Rehabilitation Council described in section 725 of this title;

  (iii)  who has not been involved previously in the vocational rehabilitation of the applicant or eligible individual;

  (iv)  who has knowledge of the delivery of vocational rehabilitation services, the State plan under section 721 of this title, and the Federal and State rules governing the provision of such services and training with respect to the performance of official duties; and

  (v)  who has no personal or financial interest that would be in conflict with the objectivity of the individual.

#### (B) Construction

An individual shall not be considered to be an employee of a public agency for purposes of subparagraph (A)(i) solely because the individual is paid by the agency to serve as a hearing officer.

### (17) Independent living core services

The term "independent living core services" means—

  (A)  information and referral services;

  (B)  independent living skills training;

  (C)  peer counseling (including cross-disability peer counseling); and

  (D)  individual and systems advocacy.

### (18) Independent living services

The term "independent living services" includes—

  (A)  independent living core services; and

  (B)
  (i)  counseling services, including psychological, psychotherapeutic, and related services;

  (ii)  services related to securing housing or shelter, including services related to community group living, and supportive of the purposes of this chapter and of the subchapters of this chapter, and adaptive housing services (including appropriate accommodations to and modifications of any space used to serve, or occupied by, individuals with disabilities);

  (iii)  rehabilitation technology;

  (iv)  mobility training;

  (v)  services and training for individuals with cognitive and sensory disabilities, including life skills training, and interpreter and reader services;

  (vi)  personal assistance services, including attendant care and the training of personnel providing such services;

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

**(vii)**  surveys, directories, and other activities to identify appropriate housing, recreation opportunities, and accessible transportation, and other support services;

**(viii)**  consumer information programs on rehabilitation and independent living services available under this chapter, especially for minorities and other individuals with disabilities who have traditionally been unserved or underserved by programs under this chapter;

**(ix)**  education and training necessary for living in a community and participating in community activities;

**(x)**  supported living;

**(xi)**  transportation, including referral and assistance for such transportation and training in the use of public transportation vehicles and systems;

**(xii)**  physical rehabilitation;

**(xiii)**  therapeutic treatment;

**(xiv)**  provision of needed prostheses and other appliances and devices;

**(xv)**  individual and group social and recreational services;

**(xvi)**  training to develop skills specifically designed for youths who are individuals with disabilities to promote self-awareness and esteem, develop advocacy and self-empowerment skills, and explore career options;

**(xvii)**  services for children;

**(xviii)**  services under other Federal, State, or local programs designed to provide resources, training, counseling, or other assistance, of substantial benefit in enhancing the independence, productivity, and quality of life of individuals with disabilities;

**(xix)**  appropriate preventive services to decrease the need of individuals assisted under this chapter for similar services in the future;

**(xx)**  community awareness programs to enhance the understanding and integration into society of individuals with disabilities; and

**(xxi)**  such other services as may be necessary and not inconsistent with the provisions of this chapter.

**(19)  Indian; American Indian; Indian American; Indian tribe**

**(A)  In general**

The terms "Indian", "American Indian", and "Indian American" mean an individual who is a member of an Indian tribe.

**(B)  Indian tribe**

The term "Indian tribe" means any Federal or State Indian tribe, band, rancheria, pueblo, colony, or community, including any Alaskan native village or regional village corporation (as defined in or established pursuant to the Alaska Native Claims Settlement Act [43 U.S.C. 1601 et seq.]).

**(20)  Individual with a disability**

**(A)  In general**

Except as otherwise provided in subparagraph (B), the term "individual with a disability" means any individual who—

**(i)**  has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and

**(ii)**  can benefit in terms of an employment outcome from vocational rehabilitation services provided pursuant to subchapter I, III, or VI of this chapter.

**(B)  Certain programs; limitations on major life activities**

*29 USC 705*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

Subject to subparagraphs (C), (D), (E), and (F), the term "individual with a disability" means, for purposes of sections 701, 711, and 712 of this title, and subchapters II, IV, V, and VII of this chapter, any person who—

   **(i)**  has a physical or mental impairment which substantially limits one or more of such person's major life activities;

   **(ii)**  has a record of such an impairment; or

   **(iii)**  is regarded as having such an impairment.

**(C)  Rights and advocacy provisions**

   **(i)**  In general; exclusion of individuals engaging in drug use

   For purposes of subchapter V of this chapter, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use.

   **(ii)**  Exception for individuals no longer engaging in drug use

   Nothing in clause (i) shall be construed to exclude as an individual with a disability an individual who—

   **(I)**  has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

   **(II)**  is participating in a supervised rehabilitation program and is no longer engaging in such use; or

   **(III)**  is erroneously regarded as engaging in such use, but is not engaging in such use;

   except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in subclause (I) or (II) is no longer engaging in the illegal use of drugs.

   **(iii)**  Exclusion for certain services

   Notwithstanding clause (i), for purposes of programs and activities providing health services and services provided under subchapters I, II, and III of this chapter, an individual shall not be excluded from the benefits of such programs or activities on the basis of his or her current illegal use of drugs if he or she is otherwise entitled to such services.

   **(iv)**  Disciplinary action

   For purposes of programs and activities providing educational services, local educational agencies may take disciplinary action pertaining to the use or possession of illegal drugs or alcohol against any student who is an individual with a disability and who currently is engaging in the illegal use of drugs or in the use of alcohol to the same extent that such disciplinary action is taken against students who are not individuals with disabilities. Furthermore, the due process procedures at section 104.36 of title 34, Code of Federal Regulations (or any corresponding similar regulation or ruling) shall not apply to such disciplinary actions.

   **(v)**  Employment; exclusion of alcoholics

   For purposes of sections 793 and 794 of this title as such sections relate to employment, the term "individual with a disability" does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others.

**(D)  Employment; exclusion of individuals with certain diseases or infections**

*29 USC 705*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

For the purposes of sections 793 and 794 of this title, as such sections relate to employment, such term does not include an individual who has a currently contagious disease or infection and who, by reason of such disease or infection, would constitute a direct threat to the health or safety of other individuals or who, by reason of the currently contagious disease or infection, is unable to perform the duties of the job.

### (E)  Rights provisions; exclusion of individuals on basis of homosexuality or bisexuality

For the purposes of sections 791, 793, and 794 of this title—

**(i)**  for purposes of the application of subparagraph (B) to such sections, the term "impairment" does not include homosexuality or bisexuality; and

**(ii)**  therefore the term "individual with a disability" does not include an individual on the basis of homosexuality or bisexuality.

### (F)  Rights provisions; exclusion of individuals on basis of certain disorders

For the purposes of sections 791, 793, and 794 of this title, the term "individual with a disability" does not include an individual on the basis of—

**(i)**  transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

**(ii)**  compulsive gambling, kleptomania, or pyromania; or

**(iii)**  psychoactive substance use disorders resulting from current illegal use of drugs.

### (G)  Individuals with disabilities

The term "individuals with disabilities" means more than one individual with a disability.

## (21)  Individual with a significant disability

### (A)  In general

Except as provided in subparagraph (B) or (C), the term "individual with a significant disability" means an individual with a disability—

**(i)**  who has a severe physical or mental impairment which seriously limits one or more functional capacities (such as mobility, communication, self-care, self-direction, interpersonal skills, work tolerance, or work skills) in terms of an employment outcome;

**(ii)**  whose vocational rehabilitation can be expected to require multiple vocational rehabilitation services over an extended period of time; and

**(iii)**  who has one or more physical or mental disabilities resulting from amputation, arthritis, autism, blindness, burn injury, cancer, cerebral palsy, cystic fibrosis, deafness, head injury, heart disease, hemiplegia, hemophilia, respiratory or pulmonary dysfunction, mental retardation, mental illness, multiple sclerosis, muscular dystrophy, musculo-skeletal disorders, neurological disorders (including stroke and epilepsy), paraplegia, quadriplegia, and other spinal cord conditions, sickle cell anemia, specific learning disability, end-stage renal disease, or another disability or combination of disabilities determined on the basis of an assessment for determining eligibility and vocational rehabilitation needs described in subparagraphs (A) and (B) of paragraph (2) to cause comparable substantial functional limitation.

### (B)  Independent living services and centers for independent living

For purposes of subchapter VII of this chapter, the term "individual with a significant disability" means an individual with a severe physical or mental impairment whose ability to function independently in the family or community or whose ability to obtain, maintain, or advance in employment is substantially limited and for whom the delivery of independent living services will improve the ability to function, continue functioning, or move toward functioning independently in the family or community or to continue in employment, respectively.

### (C)  Research and training

For purposes of subchapter II of this chapter, the term "individual with a significant disability" includes an individual described in subparagraph (A) or (B).

**(D) Individuals with significant disabilities**

The term "individuals with significant disabilities" means more than one individual with a significant disability.

**(E) Individual with a most significant disability**

   **(i) In general**

The term "individual with a most significant disability", used with respect to an individual in a State, means an individual with a significant disability who meets criteria established by the State under section 721 (a)(5)(C) of this title.

   **(ii) Individuals with the most significant disabilities**

The term "individuals with the most significant disabilities" means more than one individual with a most significant disability.

**(22) Individual's representative; applicant's representative**

The terms "individual's representative" and "applicant's representative" mean a parent, a family member, a guardian, an advocate, or an authorized representative of an individual or applicant, respectively.

**(23) Institution of higher education**

The term "institution of higher education" has the meaning given the term in section 1001 of title 20.

**(24) Local agency**

The term "local agency" means an agency of a unit of general local government or of an Indian tribe (or combination of such units or tribes) which has an agreement with the designated State agency to conduct a vocational rehabilitation program under the supervision of such State agency in accordance with the State plan approved under section 721 of this title. Nothing in the preceding sentence of this paragraph or in section 721 of this title shall be construed to prevent the local agency from arranging to utilize another local public or nonprofit agency to provide vocational rehabilitation services if such an arrangement is made part of the agreement specified in this paragraph.

**(25) Local workforce investment board**

The term "local workforce investment board" means a local workforce investment board established under section 117 of the Workforce Investment Act of 1998 [29 U.S.C. 2832].

**(26) Nonprofit**

The term "nonprofit", when used with respect to a community rehabilitation program, means a community rehabilitation program carried out by a corporation or association, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual and the income of which is exempt from taxation under section 501 (c)(3) of title 26.

**(27) Ongoing support services**

The term "ongoing support services" means services—

   **(A)** provided to individuals with the most significant disabilities;

   **(B)** provided, at a minimum, twice monthly—

      **(i)** to make an assessment, regarding the employment situation, at the worksite of each such individual in supported employment, or, under special circumstances, especially at the request of the client, off site; and

      **(ii)** based on the assessment, to provide for the coordination or provision of specific intensive services, at or away from the worksite, that are needed to maintain employment stability; and

   **(C)** consisting of—

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

    **(i)**  a particularized assessment supplementary to the comprehensive assessment described in paragraph (2)(B);

    **(ii)**  the provision of skilled job trainers who accompany the individual for intensive job skill training at the worksite;

    **(iii)**  job development, job retention, and placement services;

    **(iv)**  social skills training;

    **(v)**  regular observation or supervision of the individual;

    **(vi)**  followup services such as regular contact with the employers, the individuals, the individuals' representatives, and other appropriate individuals, in order to reinforce and stabilize the job placement;

    **(vii)**  facilitation of natural supports at the worksite;

    **(viii)**  any other service identified in section 723 of this title; or

    **(ix)**  a service similar to another service described in this subparagraph.

**(28)  Personal assistance services**

The term "personal assistance services" means a range of services, provided by one or more persons, designed to assist an individual with a disability to perform daily living activities on or off the job that the individual would typically perform if the individual did not have a disability. Such services shall be designed to increase the individual's control in life and ability to perform everyday activities on or off the job.

**(29)  Public or nonprofit**

The term "public or nonprofit", used with respect to an agency or organization, includes an Indian tribe.

**(30)  Rehabilitation technology**

The term "rehabilitation technology" means the systematic application of technologies, engineering methodologies, or scientific principles to meet the needs of and address the barriers confronted by individuals with disabilities in areas which include education, rehabilitation, employment, transportation, independent living, and recreation. The term includes rehabilitation engineering, assistive technology devices, and assistive technology services.

**(31)  Secretary**

The term "Secretary", except when the context otherwise requires, means the Secretary of Education.

**(32)  State**

The term "State" includes, in addition to each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands.

**(33)  State workforce investment board**

The term "State workforce investment board" means a State workforce investment board established under section 111 of the Workforce Investment Act of 1998 [29 U.S.C. 2821].

**(34)  Statewide workforce investment system**

The term "statewide workforce investment system" means a system described in section 111(d)(2) of the Workforce Investment Act of 1998 [29 U.S.C. 2821 (d)(2)].

**(35)  Supported employment**

  **(A)  In general**

  The term "supported employment" means competitive work in integrated work settings, or employment in integrated work settings in which individuals are working toward competitive work, consistent with the strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice of the individuals, for individuals with the most significant disabilities—

    **(i)**

        **(I)** for whom competitive employment has not traditionally occurred; or

        **(II)** for whom competitive employment has been interrupted or intermittent as a result of a significant disability; and

    **(ii)** who, because of the nature and severity of their disability, need intensive supported employment services for the period, and any extension, described in paragraph (36)(C) and extended services after the transition described in paragraph (13)(C) in order to perform such work.

  **(B) Certain transitional employment**

    Such term includes transitional employment for persons who are individuals with the most significant disabilities due to mental illness.

**(36) Supported employment services**

The term "supported employment services" means ongoing support services and other appropriate services needed to support and maintain an individual with a most significant disability in supported employment, that—

  **(A)** are provided singly or in combination and are organized and made available in such a way as to assist an eligible individual to achieve competitive employment;

  **(B)** are based on a determination of the needs of an eligible individual, as specified in an individualized plan for employment; and

  **(C)** are provided by the designated State unit for a period of time not to extend beyond 18 months, unless under special circumstances the eligible individual and the rehabilitation counselor or coordinator involved jointly agree to extend the time in order to achieve the employment outcome identified in the individualized plan for employment.

**(37) Transition services**

The term "transition services" means a coordinated set of activities for a student, designed within an outcome-oriented process, that promotes movement from school to post school activities, including postsecondary education, vocational training, integrated employment (including supported employment), continuing and adult education, adult services, independent living, or community participation. The coordinated set of activities shall be based upon the individual student's needs, taking into account the student's preferences and interests, and shall include instruction, community experiences, the development of employment and other post school adult living objectives, and, when appropriate, acquisition of daily living skills and functional vocational evaluation.

**(38) Vocational rehabilitation services**

The term "vocational rehabilitation services" means those services identified in section 723 of this title which are provided to individuals with disabilities under this chapter.

**(39) Workforce investment activities**

The term "workforce investment activities" means workforce investment activities, as defined in section 101 of the Workforce Investment Act of 1998 [29 U.S.C. 2801], that are carried out under that Act.

(Pub. L. 93–112, § 7, formerly § 6, as added Pub. L. 105–220, title IV, § 403, Aug. 7, 1998, 112 Stat. 1097; amended Pub. L. 105–244, title I, § 102(a)(9)(A), Oct. 7, 1998, 112 Stat. 1619; renumbered § 7 and amended Pub. L. 105–277, div. A, § 101(f) [title VIII, § 402(a)(1), (b)(3), (c)(1)], Oct. 21, 1998, 112 Stat. 2681–337, 2681–412, 2681–413, 2681–415; Pub. L. 105–394, title IV, § 402(a), Nov. 13, 1998, 112 Stat. 3661.)

### References in Text

The Controlled Substances Act, referred to in par. (10)(B), is title II of Pub. L. 91–513, Oct. 27, 1970, 84 Stat. 1242, as amended, which is classified principally to subchapter I (§ 801 et seq.) of chapter 13 of Title 21, Food and Drugs. For complete classification of this Act to the Code, see Short Title note set out under section 801 of Title 21 and Tables.

The Alaska Native Claims Settlement Act, referred to in par. (19)(B), is Pub. L. 92–203, Dec. 18, 1971, 85 Stat. 688, as amended, which is classified generally to chapter 33 (§ 1601 et seq.) of Title 43, Public Lands. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of Title 43 and Tables.

The Workforce Investment Act of 1998, referred to in par. (39), is Pub. L. 105–220, Aug. 7, 1998, 112 Stat. 936, as amended. For complete classification of this Act to the Code, see Short Title note set out under section 9201 of Title 20, Education, and Tables.

### Prior Provisions

Provisions similar to this section were contained in section 706 of this title prior to repeal by Pub. L. 105–220.

A prior section 705, Pub. L. 93–112, § 6, Sept. 26, 1973, 87 Stat. 359; Pub. L. 99–506, title X, § 1001(a)(2), Oct. 21, 1986, 100 Stat. 1841; Pub. L. 100–630, title II, § 201(b), Nov. 7, 1988, 102 Stat. 3303; Pub. L. 102–569, title I, § 128(b)(1), Oct. 29, 1992, 106 Stat. 4388, related to consolidated rehabilitation plan, prior to repeal by Pub. L. 105–220, title IV, § 403, Aug. 7, 1998, 112 Stat. 1093.

A prior section 7 of Pub. L. 93–112 was renumbered section 8 and is classified to section 706 of this title.

Another prior section 7 of Pub. L. 93–112 was classified to section 706 of this title prior to repeal by Pub. L. 105–220.

### Amendments

1998—Pub. L. 105–277, § 101(f) [title VIII, § 402(b)(3)], made technical amendment to section designation and catchline in the original and inserted par. (1) heading.

Par. (2)(B). Pub. L. 105–277, § 101(f) [title VIII, § 402(c)(1)(A)], substituted "nature" for "objectives, nature,".

Par. (3). Pub. L. 105–394, § 402(a)(1), which directed the amendment of section 6 of the Rehabilitation Act of 1973 by substituting "3002" for "2202(2)", was executed to this section, which is section 7 of that act, to reflect the probable intent of Congress and the renumbering of section 6 as 7 by Pub. L. 105–277, § 101(f) [title VIII, § 402(a)(1)].

Par. (4). Pub. L. 105–394, § 402(a)(2), which directed the amendment of section 6 of the Rehabilitation Act of 1973 by substituting "3002" for "2202(3)", was executed to this section, which is section 7 of that act, to reflect the probable intent of Congress and the renumbering of section 6 as 7 by Pub. L. 105–277, § 101(f) [title VIII, § 402(a)(1)].

Par. (7). Pub. L. 105–277, § 101(f) [title VIII, § 402(c)(1)(B)], struck out heading and text of par. (7). Text read as follows: "The term 'criminal act' means any crime, including an act, omission, or possession under the laws of the United States or a State or unit of general local government, which poses a substantial threat of personal injury, notwithstanding that by reason of age, insanity, or intoxication or otherwise the person engaging in the act, omission, or possession was legally incapable of committing a crime."

Par. (16)(A)(iii). Pub. L. 105–277, § 101(f) [title VIII, § 402(c)(1)(C)], substituted "eligible individual" for "client".

Par. (23). Pub. L. 105–244 substituted "section 1001 of title 20" for "section 1141 (a) of title 20".

Par. (36)(C). Pub. L. 105–277, § 101(f) [title VIII, § 402(c)(1)(D)], substituted "employment outcome" for "rehabilitation objectives".

### Effective Date of 1998 Amendment

Amendment by Pub. L. 105–244 effective Oct. 1, 1998, except as otherwise provided in Pub. L. 105–244, see section 3 of Pub. L. 105–244, set out as a note under section 1001 of Title 20, Education.