IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>    Plaintiffs,<br><br> vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>    Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

I. FACTS

During the five years Bryan Wiles Bond's parents sought special education and related services for him under the Individuals with Disabilities Education Act (IDEA), several due process hearings were initiated pursuant to 20 U.S.C. § 1415 and related cases were litigated in this Court. These due process hearings and cases were resolved through stipulations, decisions, and settlement agreement. *See* Exhibits 1-5 to the Declaration of Stanley E. Levin.

By this Motion, Plaintiffs seek an order from this Court taking judicial notice and instructing the jury to accept as conclusive findings and conclusions prior administrative decisions, stipulations, and settlement agreement entered into as a result of due process hearings under 20 U.S.C. § 1415, or litigation before this

Court, that resolved those matters and addressed special education and related services for Bryan.[1]

A.     Facts Established by the May 21, 2001 Stipulated Decision and Order.

Bryan's parents initiated a due process hearing in 2001 that was resolved by a Stipulated Decision. *See* Exhibit 1 to the Declaration of Stanley E. Levin. As a result of the Stipulated Decision the following facts are established:

1)     The Department of Education (DOE) and/or the Department of Health (DOH)[2] were ordered to hire and train an educational aide for Bryan by May 21, 2001. The training for the adult educational aide was to include Discrete Trial Training (DDT)[3], TEACCH[4], and Picture Exchange Communication System

---

[1] This Motion is directly related in subject matter to Plaintiffs' Motion in Limine No. 9, which requests an order taking judicial notice of and publication to the jury of the documents in their entirety. The instant motion requests the Court to take judicial notice of and publish to the jury as conclusive specific findings and terms of these same hearing decisions and stipulations.

[2] At this time, DOH was still providing services to children with autism, utilizing a medical model required by the Felix consent decree. DOE took over autism services from DOH in 2002, utilizing a behavioral model.

[3] Discrete trial training (DTT) is a method of providing intervention. According to Anderson et al. (1996), the discrete trial method has four distinct parts: (1) the trainer's presentation, (2) the child's response, (3) the consequence, and (4) a short pause between the consequence and the next instruction (between interval trials).

[4] Founded in the early 1970s by the late Eric Schopler, Ph.D., TEACCH developed the concept of the "Culture of Autism" as a way of thinking about the characteristic patterns of thinking and behavior seen in individuals with this diagnosis. The long-term goals of the TEACCH approach are both skill development and fulfillment of

(PECS)[5] methods for behavioral management and educational instruction. Drs. Ortiz and Smalley were identified as the trainers or someone with similar qualifications and experience. *See* Exhibit 1 at 3.

2) Beginning May 31, 2001 the educational aide had to provide services from 4:00 p.m. to 7:00 p.m. on all regular school days. The aide was required to provide services to Bryan on a consistent basis utilizing the required TEACCH, DTT and PECS methodologies for behavioral management and instruction; *Id.*

3) The time period for which DOE and or DOH were to provide the adult educational aide for Bryan was until October 1, 2001. The State was required to make up any days lost due to absence of the aide, after October 1, 2001. *Id.* at 4.

---

fundamental human needs such as dignity, engagement in productive and personally meaningful activities, and feelings of security, self-efficacy, and self-confidence. To accomplish these goals, TEACCH developed the intervention approach called "Structured Teaching."

The principles of Structured Teaching include:
* Understanding the culture of autism.
* Developing an individualized person- and family-centered plan for each client or student, rather than using a standard curriculum.
* Structuring the physical environment.
* Using visual supports to make the sequence of daily activities predictable and understandable .
* Using visual supports to make individual tasks understandable.

[5] The Picture Exchange Communication System (PECS) is an augmentative communication system developed to help individuals quickly acquire a functional means of communication through the use of a set of pictures. (Bondy and Frost, 1994).

4)     If the adult educational aide did not complete his/her tasks during the time periods set for in the stipulated decision, then the DOE and/or DOH were required to find a suitable replacement within two weeks. *Id.*

B.     <u>Facts Established by the July 1, 2002, Settlement Agreement</u>.

After initiating an action in this Court to enforce the terms of the Stipulated Decision and Order, Bryan's parents entered into a settlement agreement with the DOE on July 1, 2002. Exhibit 2 to Declaration of Stanley E. Levin. The Settlement Agreement of July 2002 expressly describes the undisputed facts concerning DOE's obligations to provide the following services to Bryan and his family:

1)     By August 1, 2002, DOE was required to provide, hire, and have in place ninety-five percent (95%) per calendar month of the teaching assistant (TA) hours to which Bryan is entitled. *See* Exhibit 2 at 3.

2)     The DOE was required to provide TA services through its contract with the current service provider and/or its successor. *Id.*

3)     By August 1, 2002, the DOE was required to procure TA services for Bryan to be provided by qualified individuals through an "expedited contract process." *Id.*

4)     By August 1, 2002, the DOE was to create a pool of substitute TAs who were qualified and trained to implement Bryan's Individualized Education

4

Program (IEP), and provide services to Bryan when regular TAs were not available. *Id.* at 4.

      5)      The DOE was required to provide TA services by qualified TAs who met the standards for a Level III TA, and were trained in DTT, TEACCH, and PECs methods for autistic children. *Id.*;

      6)      TAs retained by DOE were required to complete Bryan's daily behavioral logs and daily log sheets showing the number and completion percentage of DTT and TEACCH trials utilized, and also complete the DTT log for each trial. *Id.* at 5.

      7)      When school was not in session during the regular or extended school year, the State was required to provide TA services to Bryan at his home or at another setting deemed appropriate by the IEP team, including a school classroom. *Id.*

C.    <u>Facts Established by the May 11, 2004, Hearing Officer's Decision.</u>

Non-compliance with the settlement agreement led Bryan's parents to again request a due process hearing on February 26, 2004. After the testimony from the DOE and its agencies, and the parents, the Hearings Officer issued her *Findings of Fact, Conclusions of Law and Decision*, on May 11, 2004 (the "Decision"). *See* Exhibit 3 to Declaration of Stanley E. Levin. The Decision establishes the following facts:

1) Bryan is severely autistic. Exhibit 3 at 2.

2) Bryan's disability requires that he be placed in a fully self-contained special education classroom for children with autism. *Id.*

3) Bryan does not speak. He communicates his needs through signs, gestures, and verbal approximations, mainly through American Sign Language (ASL). *Id.*

4) Bryan sought direct interaction with the adults in his program. Direct adult supervision was needed for Bryan due to the severity of his disability and 1:1 adult instructional support ("skills trainer") was necessary for Bryan to progress through the objectives of his IEP. *Id.*

5) The DOE was required to provide Bryan 68 hours of skills trainer services per week. *Id.* at 3.

6) According to the January 9, 2004 IEP, among his other needs, Bryan should (1) increase his signing vocabulary and continue spontaneous use of sign language; (2) learn appropriate toileting skills in the school, home, and community settings; and (3) learn to respect the personal space and the personal property of others (boundaries). *Id.*

7) Necessary functional skills for Bryan included, social skills, appropriate behavior in public, and toileting skills, without which his life would be narrow and confined. *Id.*.

8) From October 2003 to February 2004, the DOE failed to provide Bryan with the required number of skills trainer service hours per week as required in his relevant IEPs. *Id.*

9) The six skills trainers Defendant provided to Bryan in the Fall 2003 through February 2004 did not have prior experience in working with autistic children. Five of the six had no prior experience with ASL. *Id.* at 4.

10) Neither of the two agencies, Child and Family Services (CFS) and The Institute for Family Enrichment (TIFFE), who provided skills trainers to Bryan during that period were able to locate individuals who had experience working with autistic children or who were proficient in ASL. *Id.*;

11) Since Bryan's trainers had no experience in working with autistic children, Dr. Copeland had to train them. During the 18 months she worked with Bryan, Dr. Copeland trained 12 skills trainers. *Id.*;

12) Plaintiffs, on their own, placed advertisements in newspapers to locate skills trainers for Bryan. Over time, they located eight skills trainers for Bryan who were hired by the DOE. *Id.*;

13) The person prompting Bryan and his skills trainers must be proficient in ASL and use Bryan's vocabulary bank of ASL signs. *Id*;

14) Bryan's teacher does not know ASL and does not use ASL to communicate with Bryan and two other children in his class who use signs as their

primary mode of communication. It is frustrating for Bryan to communicate with someone who does not know ASL and he therefore does not progress. *Id.*

15) When Bryan did not receive the number of skills trainer hours specified in his IEPs from October 2003 through February 2004, he regressed in a number of areas. *Id.*;

16) One significant area of Bryan's regression involved his toileting skills. *Id*;

17) A second significant area of Bryan's regression involved learning to behave independently and respecting the personal space and personal property of others (boundaries). *Id.*

18) Bryan had to learn appropriate boundary behaviors in order to function at school and in the community. *Id.*

19) In Fall 2003 to February 2004, the DOE attempted to locate skills trainers for Bryan through CFS and TIFFE. The DOE, however, was unable to provide Bryan with the number of skills trainer hours required by his January 9, 2004 IEP until March 2004. *Id.* at 5-6.

20) The DOE was ordered to hire, train, and have in place the skills trainers needed to consistently provide Bryan with not less than 95% per calendar months of the skills trainer hours to which he was entitled under his IEP. If the

DOE failed to do so, Bryan's parents were authorized to hire them directly at DOE's expense. *Id.* at 10.

21) All skills trainers hired were to meet DOE standards and be trained in DTT, TEACCH methods, and ASL sufficiently to implement Bryan's program. *Id.*

22) The DOE was required to provide Bryan's Intensive Instructional Services Coordinator with additional hours of employment to train new skills trainers so that they could meet the criteria of paragraphs 20 and 21, above. *Id.*

23) The DOE was required to obtain and provide services from a knowledgeable consultant to design, implement, and monitor a toileting program for Bryan. *Id.*

D.  Facts Established by the July 23, 2004 Stipulated Partial Decision and Order.

On July 23, 2004, Bryan's parents and the DOE entered into a *Stipulated Partial Decision and Order* (Partial Decision). *See* Exhibit 4 to the Declaration of Stanley E. Levin. These facts are established by the Partial Decision:

1) The DOE was required to prepare a written structured social skills curriculum for Bryan no later than the end of the first week of the 2004-2005 school year. *Id.* at 2.

2) The DOE was required to hire, train, and have in place by the beginning of the 2004-2005 school year a licensed, certified special education

teacher with experience teaching autistic children and proficiency in American Sign Language. *Id.*

    3)    The DOE was required to complete a functional behavioral assessment for Bryan to be completed no later than August 7, 2004; *Id.*

E.    <u>Facts Established by the July 23, 2004, Hearing Officer's Findings of Fact, Conclusions of Law and Decision</u>.

The same Hearings Officer on the same date entered her *Findings of Fact, Conclusions of Law and Decision* (Findings and Decision). *See* Exhibit 5 to Declaration of Stanley E. Levin. The Findings and Decision established these facts:

    1)    Bryan's primary means of communication was American Sign Language. Exhibit 5 at 3.

    2)    Bryan's IEP required that the DOE provide him with special education services every day of the year except Thanksgiving, Christmas, New Year's Day, Easter, and the Fourth of July. *Id.*

    3)    Bryan's IEP required that he receive approximately 70 hours of services per week, in school, in his home, and in the community. *Id.*

    4)    Bryan's teacher in the summer of 2004 was not a qualified special education teacher, did not have experience teaching autistic children, and did not know American Sign Language. *Id.* at 4.

5) The proper delivery of Bryan's program required that the DOE coordinate his special education and related services under the supervision of a special education teacher who was trained and qualified to deliver services to an autistic child and who was also proficient in American Sign Language. *Id.*

6) The DOE's failure to provide Bryan with a qualified special education teacher who had experience teaching autistic children and was proficient in ASL during the ESY period, resulted in a loss of educational benefit to Bryan. *Id.* at 5.

7) Bryan was denied FAPE. *Id.* at 5-6.

8) The DOE was ordered, immediately, to hire a qualified special education teacher, with experience in teaching autistic children, proficient in ASL, and qualified to deliver the special education services specified in Bryan's IEP during ESY periods. *Id.* at 6.

I.   ARGUMENT.

A.   Judicial Notice Is Proper Under Federal Rules of Evidence 201

Pursuant to Fed. Rules of Evid. 201, this Court may take judicial notice of any adjudicative fact. The rule explains that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Rule mandates that a court shall take judicial notice if requested

by a party and supplied with the necessary information to determine that the fact is adjudicative.

Judicial notice may be taken at any stage of the proceeding. The Rule states that in a civil action: "the court shall instruct the jury to accept as conclusive any fact judicially noticed." This means that the opposing party cannot present contradictory evidence on the fact once it has been judicially noticed; the time for presenting such evidence is when the matter is heard by the Court under Rule 201(e).

Applying the Rule, Courts have taken judicial notice of the record of prior administrative and court proceedings in a wide variety of circumstances. *E.g., Burbank-Glendale-Pasadena Airport Auth v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (records from other lawsuit between the parties demonstrating that it had been dismissed); *Opoka v. INS*, 94 F.3d 392, 295 (7th Cir. 1996) (taking notice of INS decision to suspend deportation proceedings against applicant's wife); *Aldrich v. SEC*, 139 F.3d 221, 226 (D.C. Cir. 1998) (taking judicial notice of agency decision issued after decision under review by the Court). Similarly, judicial notice will be taken of the record, pleadings or judgment of a case in another forum between the same parties. *Furnari v. Warden,* 218 F.3d 250, 255-56 (3rd Cir. 2000)(notice taken of affidavit filed in another case).

B.   The Facts are Not Subject to Re-litigation.

12

Findings of fact by administrative agencies acting in quasi-judicial capacities as well as legal determinations have been treated as determinative and entitled to preclusive effect by this Court. *Patricia N. v. LeMahieu*, 141 F. Supp. 2d 1243, 1257 (D. Haw. 2001) (applying principles of Hawai'i law and holding Hearings Officer's findings in IDEA cases preclude re-litigation of facts); *Ancheta v. Watada*, 135 F. Supp. 2d 1114, 1119 (D. Haw. 2001) (prior administrative determination of fact cannot be re-litigated).

Given the vigor with which Hawaii applies the principles of issue preclusion to administrative decisions (*see, Bator v. State of Hawaii*, 39 F.3d 1021, 1027 (9th Cir. 1994)), there should not be any question that the findings below, which were not appealed, are judicial in nature and the jury must be instructed that they are conclusive.

Thus the decisions and settlement agreement (attached hereto as Exhibits 1-5 to the Declaration of Stanley E. Levin), all pertaining to Bryan Wiles Bond, his special education and related services, all arising in the context of due process hearings between Plaintiffs and Defendant are judicial in nature. It is appropriate that the Court take judicial notice of them permit Plaintiffs to publish them to the jury and instruct the jury that they are conclusive as a matter of law.

III.   CONCLUSION

For reasons stated herein, Plaintiffs respectfully request this Court issue an in limine order taking judicial notice and instructing the jury to accept as conclusive findings and conclusions these prior administrative decisions, stipulations, and settlement agreement entered as a result of due process hearings under 20 U.S.C. § 1415, or litigation before this Court, that resolved those matters and address special education and related services for Plaintiff Bryan Wiles Bond.

DATED:  Honolulu, Hawai'i, August 4, 2008.

/S/ STANLEY E. LEVIN
CARL M. VARADY
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
Attorneys for Plaintiffs