***COPYING PROHIBITED HRS 606-13/HRCP RULE 30(f)(2)***   FILE COPY   1

```
                    IN THE UNITED STATES DISTRICT COURT

                        FOR THE DISTRICT OF HAWAII

                                ---|---

ANN KIMBALL WILES and STANLEY  ) CIVIL NO.CV 04-00442 HG/BMK
BOND, individually and as      ) CIVIL NO.CV 05-00247 HG/BMK
next friends of their son,     ) CONSOLIDATED
BRYAN WILES-BOND, a minor,     ) (Other Civil Action)
                               )
             Plaintiffs,       )
                               )
        vs.                    ) TRIAL DATE: October 11, 2006
                               )
DEPARTMENT OF EDUCATION,       )
State of Hawaii, and ALVIN     )
RHO, in his official capacity  )
as West Hawaii District        )
Superintendent,                )
                               )
             Defendants.       )
_____)


              DEPOSITION OF KIMBERLY SMALLEY, Ph.D.

Taken on behalf of the Defendants, at the law offices of

Davis Levin Livingston Grand, 400 Davis Levin Livingston

Grand Place, 851 Fort Street, Honolulu, Hawai`i 96813

commencing at 9:02 a.m., on Thursday, July 27, 2006,

pursuant to Notice.


BEFORE:
                Valerie Mariano, CSR No. 353
                Notary Public, State of Hawai`i




                                       EXHIBIT "A"
```

CARNAZZO COURT REPORTING COMPANY, LTD. (808) 532-0222

```
 1    APPEARANCES:

 2


 3    For the Plaintiffs:
      [All colloquy of Mr. Levin is via Litewriter text.]
 4              STANLEY E. LEVIN, ESQ.
                Davis Levin Livingston Grand
 5              400 Davis Levin Livingston Grand Place
                851 Fort Street
 6              Honolulu, Hawai`i 96813

 7


 8    For the Defendants:
                GREGG M. USHIRODA, ESQ.
 9              Watanabe Ing & Komeiji LLP
                First Hawaiian Center, 23rd Floor
10              999 Bishop Street
                Honolulu, Hawai`i 96813
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   property destruction, but now it was bigger.

2        And so whenever something like that happened, she

3   would contact everybody she knew who could help. And

4   then -- so I would either converse with her or potentially

5   with Drew or potentially with Barbara or whoever else was

6   in his life at that point.

7   Q.   Do you know what his mother's background is, if she

8   has a particular background in a profession?

9   A.   She was a DOE employee. She worked at, I think, Risk

10  Youth maybe? Very, very different.

11  Q.   Now this second-to-the-last time --

12  A.   Yeah.

13  Q.   -- did you formulate an opinion as to what was causing

14  this deteriorating behavior?

15  A.   Yeah.

16  Q.   What was your opinion?

17  A.   Well, several factors, but the most important being

18  what we call behavioral drift. His plan had kind of faded

19  away, you know. I don't think it was intentional. But

20  either staff wasn't available, or trained staff wasn't

21  available, or the rules got a little lax, or it was summer

22  school. You know, for a whole variety of explanations, the

23  plan wasn't being followed and wasn't being implemented.

24  His engagement was extraordinarily low. He wasn't doing

25  anything.

1  my questions. If that's happens, then let the objection be
2  made, and you can go ahead and answer the question.
3  A.  Okay. So I would think that Bryan hopefully has
4  not -- I mean, I haven't seen him in a long time.
5  Q.  No, I understand.
6  A.  But I would hope he could pick back up some of the
7  vocabulary he lost. He learned it once. I would hope he
8  could remember or get back in the habit of using the
9  vocabulary he had, and I would hope that he could learn
10 more.
11 Q.  Okay. Are you -- you're not saying that because of
12 the -- what happened in '04 that he's -- he can't learn or
13 get to the level he was before or progress beyond that, are
14 you?
15 A.  I don't know. I mean, I haven't seen him.
16 Q.  Okay.
17 A.  The difference between when he was doing well and when
18 I wrote this report was pretty huge.
19 Q.  Understood. But my question was, it's not your
20 opinion, is it, that he's suffered -- that he's incapable
21 of --
22 A.  It's not my opinion that anybody's incapable of
23 learning. I can't -- I can't assume what -- you know,
24 where he's at now or what the damage is or, you know, how
25 long it will take for him to learn anything else. I don't

*Deposition of Kimberly Smalley, Ph.D.; 7/27/06*   152
\*\*\*COPYING PROHIBITED HRS 606-13/HRCP RULE 30(f)(2)\*\*\*

1   know any of those things.

2   Q.   Or if there was any damage?

3   A.   Oh, there's definitely damage.

4   Q.   Okay.

5   A.   Yeah.

6   Q.   And what was the damage caused by?

7   A.   Lack of programming. You know --

8   Q.   The implementation?

9   A.   Lack of implementation, lack of communication.

10  Q.   But what I'm trying to get at here is whether you have

11  an opinion that that is something that is permanent, that

12  can be made up?

13  A.   I think he missed some valuable time. There is this

14  notion in autism of a window of opportunity, and he was

15  already old when I met him, and he made great gains. So I

16  think it's really unfortunate that those were then lost and

17  that he learned some horrible things that you never want

18  him to learn, you know, to be aggressive and self-injurious

19  to get his own way. And I think those things are likely to

20  have lifelong implication.

21  Q.   Are they irretrievably lost?

22  A.   I hope not, but I have no way of knowing without

23  seeing.

24  Q.   Okay.

25  A.   He is the population -- the way I saw him last, that's

CARNAZZO COURT REPORTING COMPANY, LTD. (808) 532-0222