404269.1
**MARK J. BENNETT**      #2672-0
Attorney General, State of Hawaii

**GARY K.H. KAM**        #4391-0
**GEORGE S. S. HOM**     #2487-0
**HOLLY T. M. SHIKADA**  #4017-0
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
235 S. Beretania Street, Suite 304
Honolulu, Hawaii 96813
Telephone No. (808)586-1255
Facsimile No. (808)586-1488
E-Mail:  Gary.K.Kam@hawaii.gov


WATANABE ING LLP
A Limited Liability Law Partnership

**MELVYN M. MIYAGI**     #1624-0
**GREGG M. USHIRODA**    #5868-0
**LEIGHTON M. HARA**     #7826-0
**ROSS T. SHINYAMA**     #8830-0
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii  96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-Mail: gushiroda@wik.com


Of Counsel:
ROBBINS & ASSOCIATES
Attorneys At Law
A Law Corporation

**KENNETH S. ROBBINS**           #1000-0
**JOHN-ANDERSON L. MEYER**       #8541-0
**SERGIO RUFO**                  #8211-0
Davies Pacific Center
841 Bishop Street, Suite 2200
Honolulu, Hawaii 96813
Telephone No. (808) 524-2355
Facsimile No. (808) 526-0290
E-Mail: defend@robbinsandassociates.net


Attorneys for Defendant
DEPARTMENT OF EDUCATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii,<br><br>　　　　　Defendant. | CIVIL NO. CV 04-00442 ACK-BMK<br>CIVIL NO. CV 05-00247 ACK-BMK<br>CONSOLIDATED<br>(Other Civil Action)<br><br>**DEFENDANT DEPARTMENT OF EDUCATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE, TESTIMONY, ARGUMENT AND COMMENT CONCERNING THE AMOUNT OF MONEY EXPENDED BY THE DOE; DECLARATION OF GREGG M. USHIRODA, EXHIBITS "A"-"B"; CERTIFICATE OF SERVICE**<br><br>**HEARING:**<br>DATE:　September 3, 2008<br>TIME:　10:00 a.m.<br>JUDGE: Honorable Alan Kay<br><br>**TRIAL: September 9, 2008** |

DEFENDANT DEPARTMENT OF EDUCATION'S
MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 3
TO EXCLUDE EVIDENCE, TESTIMONY, ARGUMENT AND COMMENT
<u>CONCERNING THE AMOUNT OF MONEY EXPENDED BY THE DOE</u>

Comes now Defendant DEPARTMENT OF EDUCATION ("DOE"), by and through its attorneys, WATANABE ING LLP and ROBBINS & ASSOCIATES, and hereby opposes "Plaintiffs' Motion in Limine No. 3 to Exclude Evidence, Testimony, Argument and Comment Concerning the Amount of Money Expended by the DOE" (the "Subject Motion").

I.  **INTRODUCTION**

The Subject Motion must be denied because evidence, testimony, argument, and/or comment regarding the significant amount of money expended by the DOE to provide Bryan Wiles-Bond with meaningful access and reasonable accommodations are highly relevant to the ultimate issues to be decided upon by the jury. Indeed, as discussed below in detail, evidence of this nature directly refutes Plaintiffs' argument that the DOE "failed to act" as defined under Section 504's standard of deliberate indifference. Further, evidence of the significant amount of money expended by the DOE is highly relevant to the DOE's defense that it acted in "good faith" to provide Bryan Wiles-Bond with meaningful access and reasonable accommodations.

In addition, the Subject Motion must be denied to the extent it seeks to exclude evidence, testimony, argument, and/or comment regarding the cost of the program to be provided by Pacific Child and Family Associates ("PCFA"). Contrary to what Plaintiffs would have this Court believe, the DOE was ready, willing, and able to pay for the PCFA program. Plaintiffs' relocation to the mainland was the reason for the lack of a finalized contract with PCFA.

Lastly, and as discussed below in detail, evidence of the availability of government subsidized services for Bryan Wiles-Bond's current and future care is not barred by the

"collateral source rule." Accordingly, the Subject Motion must be denied in its entirety.

## II.  ARGUMENT

### A.  Evidence Regarding the Significant Amount of Money Expended by the DOE is Highly Relevant to the Ultimate Issues to be Decided Upon by the Jury.

In the Subject Motion, Plaintiffs ask the Court to exclude evidence, testimony, argument, or comment regarding the significant amount of money expended by the DOE to provide Bryan Wiles-Bond with meaningful access and reasonable accommodations. Plaintiffs argue that such evidence is irrelevant to whether the DOE acted with deliberate indifference in violation of Section 504. However, evidence of the significant amount of money expended by the DOE to provide Bryan Wiles-Bond with meaningful access and reasonable accommodations is highly relevant to the determination of whether the DOE "failed to act" as defined under Section 504's standard of deliberate indifference. Further, such evidence is highly relevant to the DOE's valid-Section 504 defense of "good faith."

Compensatory damages are only available under Section 504 upon a showing that the defendant intentionally discriminated against a disabled individual "solely by reason of his disability." See Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Under Section 504, intentional discrimination requires the plaintiff to prove that the defendant acted with

deliberate indifference. See id. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and **a failure to act** upon that [] likelihood." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001)(emphasis added).

In addition, a finding that the defendant acted in "good faith" to provide Bryan Wiles-Bond meaningful access and reasonable accommodations precludes recovery under Section 504. See Order Denying Defendants' Motion for Summary Judgment, Construed as a Motion for Judgment on the Pleadings, et al., dated December 19, 2006 ("December 2006 Order"); see also Midgett v. Tri-County Metropolitan Transportation District of Oregon, 254 F.3d 846 (9th Cir. 2001) (**good faith intention to comply** with the ADA precluded finding of deliberate indifference); Patricia N. v. Lemahieu, 141 F. Supp.2d 1243 (D. Haw. 2001) (where defendants, in **good faith, believed that they were providing an IDEA FAPE** (though it turned out they were not), recovery under § 504 would be barred); Walker v. District of Columbia, 157 F. Supp.2d 11 (D. C. 2001) (plaintiffs' claim for compensatory damages under the Rehabilitation Act was without merit where the testimony of the child's teachers demonstrated a **good faith attempt** on the part of defendant to **provide the child with an IDEA FAPE**).

Evidence that the DOE, in fact, expended a significant amount of money to provide Bryan Wiles-Bond with meaningful

access and reasonable accommodations are highly relevant to whether the DOE acted with deliberate indifference, and/or whether the DOE acted in "good faith." The mere fact that the DOE expended money firmly rejects Plaintiffs' contention that the DOE "failed to act" in violation of Section 504's standard of deliberate indifference. Further, the fact that the amount of money expended by the DOE was not negligible, and, in fact, very significant, i.e., in excess of $500,000, is highly relevant to the DOE's defense that it acted in "good faith" to provide Bryan Wiles-Bond with meaningful access and reasonable accommodations. Accordingly, evidence regarding the significant amount of money expended by the DOE are relevant to the instant case, and the Subject Motion must be denied.[1]

---

[1] In their First Amended Complaint, Plaintiffs chose to disregard Section 504's implementing regulations, and, instead, base their claim on Section 504 itself. See First Amended Complaint. As a result, Plaintiffs' own actions rendered Section 504's implementing regulations, including Section 504's FAPE regulation, 34 C.F.R. § 104.33, irrelevant to the instant case. In the Subject Motion, however, Plaintiffs cite to Section 504's FAPE regulation, 34 C.F.R. § 104.33, to seemingly argue that the DOE's legal obligation in the instant case was to provide a Section 504 FAPE- an issue that this Court has already granted the DOE summary judgment on. See Subject Motion at 5. Plaintiffs' insistence on continually citing to Section 504's implementing regulations, despite its clear irrelevance to the instant action, is troubling. The DOE fears that if Plaintiffs are allowed to continue this pattern of referencing Section 504's implementing regulations, it will confuse the issues, mislead the jury, and unfairly prejudice the DOE. Accordingly, the DOE requests that this Court enter an order prohibiting Plaintiffs from making any further reference to Section 504's implementing regulations.

    B.    **Evidence Regarding the Cost of the PCFA Program is Highly Relevant to the Ultimate Issues to be Decided Upon by the Jury.**

In the Subject Motion, Plaintiffs ask the Court to exclude evidence, testimony, argument, and comment regarding the cost of the PCFA program. Plaintiffs argue that evidence regarding the cost of the PCFA program is irrelevant because the PCFA contract to provide services to Bryan Wiles-Bond was never finalized, and, in turn, services were never procured. See Subject Motion at 8. Alternatively, Plaintiffs argue that evidence regarding the cost of the PCFA program should be excluded because "[u]nfair prejudice will arise from the admission of this evidence." See id. The Subject Motion, however, must be denied because it misrepresents the factual circumstances surrounding the PCFA program proposal, and disregards the fact that the evidence at issue is highly relevant to the ultimate issues in the instant case.

The Subject Motion attempts to "paint a picture" that the DOE was solely to blame for the lack of a final contract with PCFA.[2] In the Subject Motion, however, Plaintiffs completely

---

[2] In the Subject Motion, Plaintiffs misrepresent the testimony of Cara Entz ("Ms. Entz") as stating that Ms. Entz met with Judge Kurren during her visit to Honolulu. See Subject Motion at 9-11. During her deposition, Ms. Entz testified that she did not recall which Judge she met in Honolulu. Ms. Entz testified:

- 7 -

ignore this Court's December 2006 Order finding the following undisputed facts:

- At Plaintiffs' insistence, the DOE hired a mainland company, Pacific Child and Family Associates, with expertise in servicing autistic children, to work with Bryan and his family.

- The DOE paid for two individuals from Pacific Child and Family Associates to come to Hawaii and assess Bryan and his family.[3]

- In November 2004, Pacific Child and Family Associates submitted a proposal indicating that it was willing to service Bryan and his family.

- **The DOE was willing to pay one hundred ninety-one thousand six hundred seventy dollars ($191,670.00) for a one-year program.**

---

(By Mr. Ushiroda)

    Q:   Do you recall the judge's name?

    A:   I don't.

    Q:   A man?

    A:   It was a man.

    Q:   Barry Kurren, does that sound familiar?

    A:   No.

See Deposition Transcript of Cara Entz dated June 28, 2007 at pp. 109:22-110:2, a true and correct copy of which is attached as Exhibit "A" to the Declaration of Gregg M. Ushiroda (the "Ushiroda Declaration").

    [3]   The DOE paid $6,112.50 for two PCFA employees to fly to Hawaii to assess Bryan Wiles-Bond and his parents.

- 8 -

- <u>**In the midst of entering into a contract for Pacific Child and Family Associates' services, Plaintiffs relocated to the mainland**</u>.

See December 2006 Order at 50 (emphases added); see also generally Declaration of Kate Tolentino dated March 10, 2006, a true and correct copy of which is attached as Exhibit "B" to the Ushiroda Declaration..

As a result, contrary to what Plaintiffs would have this Court believe, the DOE was not to blame for any failure to finalize the PCFA contract. Rather, and as this Court found undisputed, the lack of a finalized contract was the direct result of Plaintiffs' relocation to the mainland. Accordingly, the Subject Motion must be denied.

Notwithstanding Plaintiffs' inaccurate depiction of the undisputed facts surrounding the PCFA program proposal, the Subject Motion must be denied because evidence regarding the PCFA program proposal, including the proposed cost, are highly relevant to the ultimate issues present in the instant case. As articulated supra, evidence regarding the significant amount of money expended by the DOE, and, as relevant here, were willing to expend on Bryan Wiles-Bond, are highly relevant to whether the DOE "failed to act" as defined by Section 504's deliberate indifference standard. Further, evidence of this nature supports the fact that the DOE acted in "good faith" to provide Bryan Wiles-Bond with meaningful access and reasonable accommodations. Indeed, it evidences that the DOE was ready, willing, and able to

go "outside-the-box," and well beyond its legal obligations, to provide Bryan Wiles-Bond with meaningful access and reasonable accommodations.

Evidence regarding the PCFA program proposal, and the proposed cost, are highly relevant to the instant case. Further, the significant probative value of such evidence greatly outweighs any negligible, if any, "unfair prejudice" Plaintiffs complain of. Accordingly, the Subject Motion must be denied.

### C. Evidence of the Availability of Government Subsidized Services for the Current and Future Care of Bryan Wiles-Bond are Not Barred by the "Collateral Source Rule."

In the Subject Motion, Plaintiffs ask the Court to exclude evidence regarding the availability of government subsidized services for Bryan Wiles-Bond's current and future care. Plaintiffs argue that such evidence is barred under the "collateral source rule." The "collateral source rule," however, is inapposite to the instant action. Indeed, it does not bar evidence regarding the availability of public services for Bryan Wiles-Bond because: (1) the available public services in question will not reduce the DOE's liability in the instant case since Bryan Wiles-Bond is no longer in Hawaii and so the DOE no longer has any responsibility to provide Bryan Wiles-Bond with any such services; and (2) the application of the "collateral source rule" is limited to those benefits earned in some way by the Plaintiffs.

> 1. **The "collateral source rule" does not apply to bar evidence of the availability of government benefits for Bryan Wiles-Bond's future.**

Under Hawaii's definition of the collateral source rule, "**a tortfeasor** is not entitled to have **its liability** reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor." Sam Teague, Ltd. v. Hawaii Civil Rights Commission, 89 Hawaii 269, 971 P.2d 1104 (1999)(emphasis added). Thus, the collateral source rule applies only to payments made by someone other than the defendant to satisfy damages for which the defendant is liable.

Plaintiffs claim that Bryan Wiles-Bond, who has autism, has been permanently damaged as a result of the DOE's failure to provide him with trained and consistent skills trainers. As a result, Plaintiffs are seeking damages for the cost of Bryan Wiles-Bond's future residential and educational needs. However, for the reasons set forth in Defendant Department of Education's Motion in Limine #14 to Exclude Evidence of Bryan Wiles-Bond's Economic Damages, filed concurrently with the Subject Motion on August 11, 2008, and for the reasons listed herein, the DOE is not liable for the cost of Bryan Wiles-Bond's future services and so the government services in question cannot be deemed collateral sources of payment that would reduce any liability of the DOE.

It is undisputed that prior to coming to Hawaii, Bryan Wiles-Bond required assistance as an autistic individual in terms of education, general health and wellness. Before coming to Hawaii, Bryan Wiles-Bond received these services at little or no cost from the State of Florida and the State of Maryland while residing in those states. Bryan Wiles-Bond required residential and educational services during his residency in Hawaii. Bryan Wiles-Bond is currently living in California and continues to require residential and educational services paid for by the State of California. Thus, Bryan Wiles-Bond has required a significant level of home and educational services for his severe autism, and will continue to require these services. Given Bryan Wiles-Bond's condition, he would undoubtedly still have an ongoing need for these services even if he never came to Hawaii and so the cost of these services are not recoverable damages resulting from any wrongful conduct of the DOE. Rather, Bryan Wiles-Bond's ongoing need for these services results from his autism, which pre-existed his being in Hawaii.

It is well-settled that plaintiff may not recover for injuries or disabilities that would have resulted from the natural progression of a preexisting condition. See The Sweet Milk Co. v. Stanfield, 353 F.2d 811, 813 (9th Cir. 1965) (recognizing that an individual is not liable for a pre-existing disability and is only liable to the extent of the aggravation of

such); Montalvo v. Lapez, 77 Haw. 282, 300, 884 P.2d 345, 363 (Haw. 1994) (noting that jury must apportion damages if plaintiff's pre-existing condition was not fully resolved or not dormant or latent at the time of the subject incident) ; see also Hawaii Standard Jury Instruction No. 7.3 ("if you find that plaintiff(s) was/were not fully recovered and that the pre-existing injury or condition was not latent at the time of the subject incident, you should make an apportionment of damages by determining what portion of the damages is attributable to the preexisting injury or condition and limit your award to the damages attributable to the injury caused by defendant(s)"); and California Standard Jury Instruction BAJI 14.65 (2005) ("[a] person who has a condition or disability at the time of an injury is not entitled to recover damages therefor.").

In this case, Plaintiffs cannot prove any damages resulting from the alleged wrongful acts or omissions of the DOE. **Certainly, the DOE did not cause Bryan's autism.** At best, Plaintiffs' claim is more accurately stated that Bryan Wiles-Bond suffered a set-back in his condition or progress which now requires additional or different services. However, even if this were true, once Bryan Wiles-Bond moved to California, any claim against the DOE for damages due to inadequacy of services provided would cease. From that point on, California would be obligated under the Individuals with Disabilities Education Act

("IDEA") to provide Bryan Wiles-Bond with Free and Appropriate Public Education ("FAPE"), as well as appropriate residential and health services, no matter what condition Bryan Wiles-Bond was in.  Thus, if Bryan Wiles-Bond now requires additional or different services, those services must be provided by the State of California.  To the extent Bryan Wiles-Bond is not currently being provided with necessary services, Plaintiffs might have a claim against the California educational system; not the DOE.

Therefore, since the DOE is not liable for the cost of Bryan Wiles-Bond's future residential and educational needs, the government benefits available to satisfy these future needs do not constitute a collateral source of payment.  Thus, evidence of the availability of these government services are not barred by the collateral source rule.  Accordingly, the DOE should be permitted to introduce evidence that Bryan Wiles-Bond's current needs are being provided to him by the State of California, and that such benefits will be available to Bryan Wiles-Bond in the future.  Moreover, this evidence is necessary so that the jury is not mislead into believing that Bryan Wiles-Bond requires a damages award in order to receive these services.

> 2. **The "collateral source rule" does not apply to the government benefits in question because the benefits are free and available to anyone with Bryan Wiles-Bond's condition.**

While the Hawaii appellate courts have addressed the application of the collateral source rule only with regard to

past benefits received (e.g., workers compensation and unemployment benefits), other jurisdictions have ruled that the collateral source rule does not preclude evidence that a plaintiff was eligible to receive public benefits with regard to the issue of future damages.

In <u>Florida Physician's Insurance Reciprocal v. Stanley</u>, 452 So.2d 514 (1984), the Supreme Court of Florida ruled that "evidence of free or low cost services from governmental or charitable agencies available to anyone with specific disabilities" was admissible on the issue of future damages. In so ruling, the court held:

> We believe **the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care**. Keeping such evidence from the jury may provide an undeserved and unnecessary windfall to the plaintiff.

<u>Id.</u>, 452 So.2d at 515 (emphasis added). The <u>Stanley</u> Court explained the rationale for its holding as follows:

> [T]he policy behind the collateral source rule simply is not applicable if the Plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation. This is further made apparent upon comparison of the present case with a situation in which the collateral source rule is frequently applied, that of the defendant who seeks a

> reduction of damages because the plaintiff has received insurance benefits. It is a well-settled rule of damages that the amount recoverable for tortious personal injuries is not decreased by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance where the tortfeasor did not contribute to the payment of premiums of such insurance. This rule is usually justified on the basis that the wrongdoer should not benefit from *the expenditures made by the injured party* in procuring the insurance coverage. In a situation in which the injured party incurs no expense, obligation, or liability, we see no justification for applying the rule.

Stanley, 452 So.2d at 515-16 (quoting Perterson v. Lou Bachrodt Chevrolet Co., 76 Ill.2d 353, 362-63, 392 N.E.2d 1, 5 (1979)) (internal quotation marks and citations omitted).

The Stanley Court also cautioned that applying the collateral source rule to benefits for which the plaintiff has incurred no expense would go beyond the purpose of compensatory damages by operating as a windfall to the plaintiff, and serve to punish the defendant.

> The purpose of compensatory tort damages is to compensate; it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs. **The view that a windfall, if any is to be enjoyed, should go to the plaintiff borders too closely on approval of unwarranted punitive damages, and it is a view not espoused by our cases**.

Id. 452 So.2d at 516 (quoting Perterson v. Lou Bachrodt Chevrolet Co., 76 Ill.2d 353, 362-63, 392 N.E.2d 1, 5 (1979)) (internal quotation marks and citations omitted) (emphasis added).

- 16 -

Similarly, in <u>Washington v. Barnes Hospital</u>, 897 S.W.2d 611 (Missouri S.Ct. 1995), the Supreme Court of Missouri, sitting <u>en banc</u>, ruled that the collateral source rule did not prohibit defendant from introducing evidence that plaintiff was entitled to a free public special education after the plaintiff introduced evidence that special private schooling expenses would be required.  <u>Id.</u>, 897 S.W.2d at 621.

In this case, Plaintiffs are requesting future damages in the form of a life care plan for Bryan Wiles-Bond that would require the DOE to pay for, among other things, residential and educational services.  However, these and many other services are already available to Bryan Wiles-Bond (and others with his disability) free of charge from the California.  Based on the foregoing, the collateral source rule does not apply in this case to preclude DOE from introducing evidence that Bryan Wiles-Bond is eligible to receive services from the State of California and therefore will not suffer the damages that Plaintiffs are claiming.  Applying the collateral source rule here would not only give Plaintiff a windfall and double recovery, but would also serve to punish the DOE.  The Supreme Court of the United States has held that punitive damages are not allowed in 504 actions.  <u>See</u> <u>Barnes v. Gorman</u>, 536 U.S. 181, 122 S.Ct. 2097 (2002).  Accordingly, the Subject Motion must be denied.

III. **CONCLUSION**

For the foregoing reasons, the DOE respectfully requests that the Subject Motion be denied in its entirety.

DATED: Honolulu, Hawaii, August 11, 2008.

/s/ Gregg M. Ushiroda
MELVYN M. MIYAGI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

KENNETH S. ROBBINS
JOHN-ANDERSON L. MEYER
SERGIO RUFO

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendant