Of Counsel:
DAVIS LEVIN LIVINGSTON
STANLEY E. LEVIN                    1152-0
MICHAEL K. LIVINGSTON               4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii  96813
Telephone:  (808) 524-7500/Fax:  (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY                      4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii  96813
Telephone:  (808) 523-8447/Fax:  (808) 523-8448
Email: carl@varadylaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>Plaintiffs,<br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DEPARTMENT OF EDUCTION'S MOTION IN LIMINE #4 TO PRECLUDE TESTIMONY OF DANIEL B. LEGOFF AS IT IS CUMULATIVE OF THE TESTIMONY OF B.J. FREEMAN, PH.D. AND CERTIFICATE OF SERVICE<br>DATE:     September 9, 2008<br>TIME:     9:00 a.m.<br>JUDGE:    Honorable Alan C. Kay<br>TRIAL DATE:  September 9, 2008 |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
DEPARTMENT OF EDUCTION'S MOTION IN LIMINE #4
TO PRECLUDE TESTIMONY OF DANIEL B. LEGOFF AS IT IS
CUMULATIVE OF THE TESTIMONY OF B.J. FREEMAN, PH.D.

Plaintiffs hereby submit their Opposition to Defendant DEPARTMENT OF EDUCATION's (DOE) Motion in Limine #4 to Preclude Testimony of Daniel B. LeGoff, Ph.D. as it Is Cumulative of the Testimony of B.J. Freeman, Ph.D.

I.     **ARGUMENT.**

With very little support, other than reference to their curricula vitae, Defendant asserts that Plaintiffs' expert Daniel LeGoff Ph.D. should be completely precluded from testifying based on a very generalized assertion that his testimony would be "cumulative" with that of Betty Jo ("B.J.") Freeman, Ph. D. Plaintiffs do not dispute that Rule 403 prohibits, among other matters, evidence that is "needless" and "cumulative" to a degree that substantially outweighs its probative value. To state a proper objection to exclude all Dr. LeGoff's testimony, Defendant therefore must establish that all Dr. LeGoff's testimony will be needless and cumulative and that these concerns substantially outweigh its probative value. The proposed evidence must not only be unfairly prejudicial and not only outweigh relevance, but substantially outweigh relevance. *United States v. Rivera,* 83 F.3d 542, 545 (1st Cir. 1996). Defendant offers very little, other than assumptions and generalities, that would justify such a broad exclusion of all of Dr. LeGoff's testimony. Defendant has failed to state succinctly and expressly why

the totality of Dr. LeGoff's testimony substantially outweighs its probative value because it is needlessly cumulative. Defendant's position is based purely on speculation as to the nature of the testimonies, factually flawed, and legally incorrect.

Fed.R.Evid. Rule 403 requires that the Court view the probative force of any evidence and prejudice most favorably to the proponent of the evidence. 1 WEINSTEIN'S EVID. at 403-49 to 403-52. When weighing the probative value of evidence against dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission. *United States v. Day,* 591 F.2d 861, 878 (D.C. Cir. 1978). Respected commentators have noted that, by employing the measure "substantially outweighed," the drafters intended that there must be a significant tipping of the scales against worth of the proffered evidence. 22 WRIGHT & GRAHAM, FEDERAL PRACT. & PROC.: EVIDENCE § 5221 at 309-10. As the Ninth Circuit has stated, "[w]e note the general rule favoring admission of evidence that has probative value." *Pierce Packing Co. v. John Morrell & Co.,* 633 F.2d 1362, 1364 (9th Cir. 1980). Additionally, the Rule is permissive, not mandatory, stating only that relevant evidence "may" be excluded upon application of the prescribed standard. *See Williams v. Nebraska State Penitentiary,* 57 F. 3d 667, 669 (8th Cir. 1995).

"Exclusion of relevant evidence under Rule 403 is used sparingly as it is an extraordinary remedy." Graham, HANDBOOK OF FEDERAL EVID. 6th Ed., § 403:1 at 480. Among other matters, the Court must consider in determining whether evidence should be excluded under the Rule is the potential effectiveness of a limiting instruction. *Id.* at 484. Thus, evidence which, in the context of a case is merely repetitious or time consuming may be excluded, but only if time considerations substantially outweigh the incremental probative value of the proffered evidence. *Id.* at 513-14.

    A.    <u>There is no Proof that the Evidence to be Presented at Trial will be Unnecessarily Cumulative</u>.

Relying on generalized statements of Dr. LeGoff and Dr. Freeman that their work and opinions have some overlap regarding Bryan's past, present, and future condition is not a sufficient basis alone to grant Defendant's request that Dr. LeGoff should be completely precluded from testifying. Defendant, in effect, argues that two witnesses who observe and interpret data regarding the same topic cannot *per se* testify for one party. Even if the testimonies of Drs. LeGoff and Freeman were congruent, the Defendant is obligated to convince the court that the evidence was unnecessary to the point that resulting delay would result in substantial prejudice. Defendant has failed to provide the Court with such proof. This is not surprising, given Defendant's failure to refer to these expert's reports or expressly address how their findings and opinions expressly are repetitive. Even if

Defendant had done so, and Plaintiffs argue they have not, repetition for the purpose of corroboration is not a basis for exclusion.

For example, in *United States v. Kizeart*, 102 F.3d 320, 325 (7th Cir. 1996), the Court rejected the defendant's contention that a taped statement of a witness was cumulative. The witness was called and had testified as a hostile witness by the government. He denied having given a taped statement to police detectives identifying the defendant as taking part in an armed robbery. The government then called the detectives, who testified that the witness had inculpated the defendant, and then the government introduced the witness's taped statement. The defendant argued that in these circumstances the taped statement was cumulative of the detectives' testimony. The Court found, however, that the tape "added considerable probative force on the issue of [the witness's] veracity because it addressed the contradictions between the statements of [the witness] and the detectives." In other words, the tape provided useful corroboration, which, while entirely repetitive, should have been admitted to corroborate disputed testimony. To the degree Dr. LeGoff's testimony corroborates or is corroborated by Dr. Freeman's, therefore, such testimony should not be excluded.

Defendant has not met its burden of demonstrating to the Court that the testimony of Dr. LeGoff and Dr. Freeman is unnecessary by expressly offering proof of unnecessary repetition and resulting substantial delay that would justify

the result they seek.[1]  Nor, given their reports, can Defendant do so.  The Motion is completely speculative and not founded on fact.

    B.    <u>Dr. LeGoff's and Dr. Freeman's Reports are not Complimentary, Not Cumulative</u>.

Dr. LeGoff was the first of these two experts to meet Bryan.  He evaluated Bryan in June 2005 and again in June 2007.  *See* Exhibit 1 and 2 to the Declaration of Stanley E. Levin.  Dr. LeGoff also prepared an estimate of costs for educational and residential services Bryan will need.  *See* Exhibit 3 to the Declaration of Stanley E. Levin. Without reiterating every single detail of his neuro-developmental evaluations, highlights include:

    1.    In person administration of several psychological tests directly to Bryan including the Leiter-R,[2] Autism Diagnostic Observation Schedule,[3] Test of

---

[1] If, at trial, the testimonies of Dr. LeGoff or Dr. Freeman appear to be cumulative in a manner that could then justify exclusion, their testimonies would be subject to a proper objection under Rule 403.  The Court could, upon such an objection determine whether to grant the objection and limit testimony based upon findings that it was unnecessarily cumulative and substantially delaying the proceedings.

[2] The Leiter-R is a completely nonverbal measure of intelligence ideal for use with those who are cognitively delayed, disadvantaged, non-English speaking, hearing impaired, speech impaired, or autistic. Pierangelo & Guiliani, *Special Educator's Complete Guide to 109 Diagnostic Tests,* 229 (1989) .

[3] The "ADOS" is used to assess and diagnose autism and pervasive developmental disorder across ages, developmental levels, and language skills Lord, et al., 3  J AUTISM DEV DISORD., 205-23. (June 2000)

Auditory Comprehension of Language,[4] and the Expressive One-Word Picture Vocabulary Test,[5] in 2005 and 2007;

2. Assimilating the results of these tests into a neuro-psychological assessment;

3. Forming specific conclusions about Bryan's condition and progress between June 2005 and June 2007;

4. Determining the additional services Bryan would need as a result of DOE's failure to provide service based on Dr. LeGoff's work as a clinician at the Center for Neurodevelopmental Health, in New Jersey;

5. Making specific recommendations for special education and related services that Bryan will need in the future.

Dr. LeGoff also prepared a report concerning the costs necessary to fund Bryan's future needs for additional services. *Id.* Exhibit 3.

As can be determined from a review of his curriculum vitae, Dr. LeGoff's training and work have focused less on research and more on direct client assessment and testing and provision of clinical services.

---

[4] The "TACL" measures receptive spoken grammar, vocabulary, and syntax. It tells you how well a child understands word classes and word relations, grammatical morphemes, and elaborated sentence constructions. *Id.* at 169.

[5] The "E-OWPVT" is a test of English-speaking vocabulary. http://www.psych-edpublications.com/speech.htm. (last viewed August 8, 2008).

Dr. Freeman is internationally recognized for her more than 30 years of research and writing on the topic of autism, most of it at the UCLA School of Medicine, Department of Psychiatry, where she now holds the position of Professor Emeritus.  In addition to reviewing Dr. LeGoff's test results and opinions, Dr. Freeman was retained to: (1) test Bryan in 2006, when Dr. LeGoff did not see him; (2) assess Bryan's social behavioral strengths and needs by interviewing his parents and teachers in 2007; and (3) independently review the reports and recommendations of Defendant's experts, Bryna Siegel, Ph.D. and Richard Goka, MD.

Dr. Freeman first met Bryan in 2006, and administered psychological tests at that time.  *See* Exhibit 4 to Declaration of Stanley E. Levin.  Dr. Freeman then conducted a supplemental observation.  In May 2007, Dr. Freeman again visited Bryan and observed his program.  However, she did not administer testing to Bryan.  Instead she obtained data about Bryan's current levels of performance and needs from interview inventories taken from Bryan's parents and teachers.  These are the *Vineland II Adaptive Behavior Scales,*[6] which collects data from others regarding Bryan's performance in areas of communication, daily living skills and

---

[6]  Vineland Adaptive Behavior Scales is a measure of personal and social skills needed for everyday living.  Pierangelo & Guiliani, *Special Educator's Complete Guide to 109 Diagnostic Tests,* 201 (1989).

socialization, and the *Social Skills Rating Scales*,[7] which collects data from others regarding Bryan's social skills, problem behaviors, and academic competence. *See* Exhibit 5 to the Declaration of Stanley E. Levin.

Therefore, reviewing their work demonstrates that, as to Bryan, Dr. LeGoff's and Dr. Freeman's work was complementary, not cumulative. Dr. LeGoff's 2005 and 2007 individual psychological testing of Bryan compliments, but does not reiterate testing by Dr. Freeman. Dr. Freeman performed individual psychological testing in 2006, when Bryan was not tested by Dr. LeGoff, and obtained data in 2007 regarding Bryan's behavioral strengths and needs through third-party social-behavioral inventories she administered to his parents and teachers. Dr. Freeman's work in 2006 and 2007 was clearly distinct from Dr. LeGoff's work, and utilized to obtain individual and social data regarding Bryan that Dr. LeGoff had not obtained. Taken together, Dr. LeGoff's and Dr. Freeman's tests and reports provided a complementary set of data, from which Bryan's parents can present to the jury a complete picture of Bryan from 2005, the first

---

[7] The Social Skills Rating Scale, like other social behavior ratings, is designed to assist school personnel in identifying student deficits in school-related social behaviors. The test provides an inventory of a student's ability to apply the skills necessary to meet with success in school settings and for eventual success in employment settings. Merrell, *Behavioral, Social, and Emotional Assessment of Children and Adolescents, Second Edition,* 322-32 (2003).

year he was in the California system after moving from Hawaiʻi, to the present. Without the testimony of both, that picture will be incomplete.

    C.    <u>Dr. Freeman was Retained to Critique and Rebut the Testimony of Defendant's Experts</u>.

In addition to her tests and observations regarding Bryan, Dr. Freeman was retained to critique and comment on opinions rendered by Defendant's experts:

| | | |
|---|---|---|
| 68:7 | Q | And finally, there is a manilla file about an |
| 68:8 | | inch thick labeled Their Experts, and I take it that |
| 68:9 | | pertains to Dr. Siegel and Dr. Richard Goka? |
| 68:10 | A | That's correct. |
| 68:11 | Q | And there's some handwritten notes of -- I'll |
| 68:12 | | mark this as an exhibit later. I'm just going to show it |
| 68:13 | | to you; is this your handwriting? |
| 68:14 | A | That is correct. |
| 68:15 | Q | And these notes, do they contain your |
| 68:16 | | observations and thoughts on the reports by Dr. Goka and |
| 68:17 | | Dr. Siegel? |
| 68:18 | A | There's the notes I made in reading those |
| 68:19 | | reports, the same as the ones in the green file. |
| 68:20 | Q | Have you been asked to render an opinion on the |
| 68:21 | | reports authored by Dr. Goka and Dr. Siegel? |

10

--

> 68:22    A    Yes.

Deposition of Dr. Freeman, attached as Exhibit 6 to Declaration of Stanley E. Levin.

Defendant, therefore, is fully aware that Dr. Freeman was retained not only to complete the picture of Bryan's progress, ongoing deficits and needs, but to render opinions regarding the reports and opinions of Dr. Siegel and Dr. Goka. Defendant deposed her on those opinions at length. For example, the passage quoted above continues:

> 68:23    Q    And what are those opinions?
>
> 68:24    A    What are the opinions I have now about those
>
> 68:25    reports?
>
> 69:1    Q    Yes.
>
> 69:2    A    Well, I thought that -- well, Dr. Goka's report
>
> 69:3    was -- as I said in my report, that's his opinion and
>
> 69:4    his -- as near as I could tell, very little background in
>
> 69:5    autism.  He relied on only Dr. Siegel's report and the
>
> 69:6    records, and did not see Bryan or talk to the family or
>
> 69:7    talk to the school.  It was just an opinion he formed.
>
> 69:8    It was a paper opinion.  So to me that's not very
>
> 69:9    meaningful.

> 69:10   Dr. Siegel's report, on the other hand, was
>
> 69:11   very well written, and I felt that I agreed with most of
>
> 69:12   it. What I did not agree with was I do not understand
>
> 69:13   how she reached the conclusion she reached given what -
>
> 69:14   the rest of her report.
>
> 69:15   Q   And you don't understand the conclusion she
>
> 69:16   reached in light of what she wrote in the report?
>
> 69:17   A   Right. Because her conclusion is inconsistent
>
> 69:18   with what she writes in her report. It doesn't follow
>
> 69:19   logically. And there's some information in her report
>
> 69:20   that's not correct in terms of her information on the
>
> 69:21   Leiter, for example.69:21
>
> 69:22   Q   I just wanted to get a general idea, and th**en**
>
> 69:23   we'll go over it**.**

*Id.* Dr. Freeman testified regarding the research cited by her in contrast to that cited by Dr. Siegel.

> 176:16   Q   In terms of scientific corroboration for these
>
> 176:17   conclusions, would you rely on that study you performed
>
> 176:18   in 200 children by the Vineland?
>
> 176:19   A   I would rely on the literature in general on

--

| | | |
|---|---|---|
| 176:20 | | outcome in children with autism. |
| 176:21 | Q | That's Volkmar? |
| 176:22 | A | Well, it's Volkmar and a lot of other people. |
| 176:23 | | If you look at the Lovaas study and the outcome study |
| 176:24 | | that was done, we find that, again, with intervention the |
| 176:25 | | children are doing better when they have consistent |
| 177:1 | | intervention. |
| 177:2 | | A lot of the literature Dr. Siegel attached to |
| 177:3 | | her last report, I believe, some list of -- some |
| 177:4 | | summaries of articles, the abstracts, and the majority of |
| 177:5 | | those have -- those studies were retrospective.  And |
| 177:6 | | if -- I actually have looked at those and marked some of |
| 177:7 | | the problems with some of those research studies. |
| 177:8 | Q | Do you have them with you? |
| 177:9 | A | Yes. |

\* \* \* \*

| | | |
|---|---|---|
| 177:20 | A | There are a number of studies attached.  She |
| 177:21 | | attached abstracts in attempt to support her conclusion |
| 177:22 | | from several publications, and I reviewed them. |
| 177:23 | Q | Then the handwriting there is yours? |

| | | | |
|---|---|---|---|
| 177:24 | A | Yes.  That's my handwriting. | |
| 177:25 | Q | Do you mind if I keep this on the side? | |
| 178:1 | A | Absolutely not.  That's why I brought it. | |

*Id.*

Dr. Freeman's critiques of both Dr. Goka and Dr. Siegel were fully developed in her deposition.  *Id.* at 259-62 (Dr. Goka) and 263-88 (Dr. Siegel). These critiques and opinions were the exclusive product of Dr. Freeman's review of their work as well as Bryan's entire educational record (id. 70-75).  There is no basis for asserting that they are in any way cumulative or that the Court should exercise its discretion to prevent Dr. LeGoff from testifying based on anything expressed by Dr. Freeman.

## II.   **CONCLUSION.**

For the reasons stated above, Plaintiffs respectfully request that Defendant Department of Education's Motion in Limine #4 to Preclude Testimony of Daniel B. LeGoff, Ph.D. as it Is Cumulative of the Testimony of B.J. Freeman, Ph.D. be DENIED.

DATED: Honolulu, Hawai'i, August 11, 2008.

/S/ STANLEY E. LEVIN
_____
STANLEY E. LEVIN
CARL M. VARADY
MICHAEL K. LIVINGSTON

Attorneys for Plaintiffs