## Page 1

```
           IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF HAWAII
                        ---!---
ANN KIMBALL WILES and STANLEY ) CIVIL NO.CV 04-00442 HG/BMK
BOND, individually and as     ) CIVIL NO.CV 05-00247 HG/BMK
next friends of their son,    ) CONSOLIDATED
BRYAN WILES-BOND, a minor,    ) (Other Civil Action)
                              )
              Plaintiffs,     )
                              )
         vs.                  ) TRIAL DATE: October 11, 2006
                              )
DEPARTMENT OF EDUCATION,      )
State of Hawaii, and ALVIN    )
RHO, in his official capacity )
as West Hawaii District       )
Superintendent,               )
                              )
              Defendants.     )
                              )

         DEPOSITION OF KIMBERLY SMALLEY, Ph.D.
Taken on behalf of the Defendants, at the law offices of
Davis Levin Livingston Grand, 400 Davis Levin Livingston
Grand Place, 851 Fort Street, Honolulu, Hawai`i 96813
commencing at 9:02 a.m., on Thursday, July 27, 2006,
pursuant to Notice.

BEFORE:
         Valerie Mariano, CSR No. 353
         Notary Public, State of Hawai`i
```

## Page 2

```
 1   APPEARANCES:
 2
 3   For the Plaintiffs:
     [All colloquy of Mr. Levin is via Litewriter text.]
 4       STANLEY E. LEVIN, ESQ.
         Davis Levin Livingston Grand
 5       400 Davis Levin Livingston Grand Place
         851 Fort Street
 6       Honolulu, Hawai`i 96813
 7
 8   For the Defendants:
         GREGG M. USHIRODA, ESQ.
 9       Watanabe Ing & Komeiji LLP
         First Hawaiian Center, 23rd Floor
10       999 Bishop Street
         Honolulu, Hawai`i 96813
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1                I N D E X
 2   EXAMINATION BY:                    PAGE
     Mr. Ushiroda                       4
 3
 4
 5   EXHIBITS FOR IDENTIFICATION:       PAGE
 6   1 - Curriculum Vitae; 16 pages.     7
 7   2 - Fee Schedule.                  79
 8   3 - Behavioral Assessment dated
         8/18/04; 21 pages.             79
 9
10
```

## Page 4

```
 1       (Whereupon, disclosure was made available to counsel.
 2   All colloquy of Mr. Levin is via Litewriter
 3   texting.)
 4       KIMBERLY SMALLEY, Ph.D.,
 5   called as a witness on behalf of the Defendants, being
 6   first duly sworn, was examined and testified as follows:
 7                   EXAMINATION
 8   BY MR. USHIRODA:
 9   Q.  Please state your full name for the record.
10   A.  Kimberly Anne Smalley.
11   Q.  Good morning.  Would you prefer that I address you
12   Dr. Smalley?
13   A.  Kim is fine.
14   Q.  Kim is fine?  Okay.
15       Kim, my name is Gregg Ushiroda.  I represent the
16   Department of Education, State of Hawaii, in a lawsuit
17   brought by the parents of Bryan Wiles-Bond.  I'm here to
18   take your deposition today.
19       Before we start, have you had your deposition taken
20   before?
21   A.  By you in this state?  No.  I mean, generally, yes.
22   Q.  Are you familiar with the guidelines in a deposition?
23   A.  I believe I am.  But if you'd like to review them,
24   that's fine.
25   Q.  Okay.  First of all, do you understand that the
```

Page 93

1 don't have the right training and right support, you move
2 on to someone easier.
3 Q. Okay. In terms of the number of skills trainers
4 available in the Kona area, is that a -- a limited
5 resource?
6 A. I don't know that myself personally. I'm under the
7 impression that it is. During this report, he did have
8 staffing. He had two-on-one staffing. There were bodies
9 there. They just didn't know what to do and weren't doing
10 it when they were given the information to do it.
11 Q. Do you get the sense that they were trying?
12 A. Some of them. Some of them no.
13 Q. Okay. Do you have any names of the skills trainers
14 involved?
15 A. I remember spending a lot of time with a gentleman
16 named Sven, and I remember that because it's a Scandinavian
17 name and he had an accent.
18     There was a young woman whose name I don't know, and
19 it's horrible to identify her this way, but she had very
20 large breasts, and Bryan was very, very interested in her
21 breasts. So I remember talking to her about what to wear
22 and how to keep distance from him and how to support him
23 without touching him.
24     There was an older woman who -- and by "older" I mean
25 that these other two people were kids -- were young. I

Page 94

1 don't know how old she was. She was a grown-up. She was a
2 mom. And I remember she had effort, you know, and she was
3 willing and interested in learning sign language, and I
4 remember coming and showing her signs when I was there.
5     But even with all that, every time I came to see
6 Bryan, he was laying on the floor, stimming, in his own
7 urine or feces. It was -- I mean, it was neglect.
8 There's -- I was very upset, and I took it to the DOE, and
9 I called HBH, and I tried to help these individuals to do a
10 better job. It wasn't good.
11 Q. Okay. Who did you speak to?
12 A. Whoever would be down the hallway in the SSC's office.
13 Again, if you give me names, I will recognize them.
14 Q. Kate Tolentino?
15 A. Was she SSC? I know that name --
16 Q. I don't know.
17 A. -- but I'm not sure what role. I would -- for ESY
18 summer school, the office was three doors down. I would go
19 down and I would say, okay, here's -- you know, he's locked
20 in the room. He's all wet. Nobody's doing anything with
21 him. And, you know, I would pass that information on. I'm
22 obligated to report. I would pass that information on.
23     I know I called. And again, I think the woman's name
24 is Leilani. Hopefully that's not the new trainer versus
25 who the trainer was at that time. I called CFS, said, your

Page 95

1 people need Problem Solver training in crisis prevention.
2 I know I recommended other names in my report. It's a
3 different acronym, same name, but also Problem Solver
4 because those are people working with severe cognitive
5 disability.
6     CPI, the intervention the State uses, relies more with
7 people with language. They teach you how to talk somebody
8 down. If you're dealing with someone with a mental illness
9 or someone who's irate, you might have the ability to talk
10 them down where if you're dealing with somebody with no
11 receptive language skills or limited receptive language
12 skills, blah, blah, blah. Doesn't matter what you're
13 saying. That whole part of your training isn't going to
14 help you in this instance where Problem Solver focuses a
15 little bit more on developmental disabilities.
16     I recommended HBH, I can train you. I recommended
17 other people that can come out and provide training for
18 their staff. Actually, at that time I was in conversation
19 with HBH about providing some training for them just
20 globally as an agency, not specific to Bryan, but clearly
21 Bryan would have benefitted, and that never came to
22 fruition.
23     At some point in there, that short time frame, they
24 just -- Bryan accidentally knocked someone's tooth out, and
25 it really was accidental. He was also aggressive at this

Page 96

1 time, but in this particular incident he was flailing, and
2 he elbowed a woman and knocked her tooth out. And that was
3 an expensive, you know, workmen's comp claim or whatever it
4 was for HBH, and I think they -- I don't know. This is my
5 opinion. I think they came to the conclusion that they
6 cannot serve this child safely, and then they stopped
7 serving him.
8 Q. Okay. I'm sorry. You said you came --
9 A. I think they came to this conclusion. I had called
10 HBH and said, you know, help. And the person I spoke to
11 said, we're not gonna do this anymore. So they didn't need
12 me to come train his staff because they weren't going to
13 continue serving him.
14 Q. And you base that on?
15 A. Known conversations.
16 Q. And you -- okay.
17 A. Everybody recognized that bad things were happening.
18 The DOE, the providers, the parents, everybody was very
19 upset. They just couldn't see -- they just couldn't seem
20 to find a way out of it. And that's where I hoped that if
21 I wrote a big assessment with all the instructions and all
22 the how-to that they would have something to work from and
23 that we could, you know, hopefully turn some of this
24 around.
25 Q. That's why they called you; is that correct?