Of Counsel:
DAVIS LEVIN LIVINGSTON
STANLEY E. LEVIN                 1152-0
MICHAEL K. LIVINGSTON            4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii  96813
Telephone: (808) 524-7500/Fax: (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY                   4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii  96813
Telephone: (808) 523-8447/Fax: (808) 523-8448
Email: carl@varadylaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>　　　　　　　Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DEPARTMENT OF EDUCATION'S MOTION IN LIMINE #8 TO EXCLUDE EXPERT TESTIMONY AS TO CAUSATION AND DAMAGES; DECLARATION OF STANLEY E. LEVIN; EXHIBITS 1-5 AND CERTIFICATE OF SERVICE<br><br>DATE:　　September 9, 2008<br>TIME:　　9:00 a.m.<br>JUDGE:　　Honorable Alan C. Kay<br><br>TRIAL DATE: September 9, 2008 |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DEPARTMENT OF EDUCATION'S MOTION IN LIMINE #8 TO EXCLUDE EXPERT TESTIMONY AS TO CAUSATION AND DAMAGES

Plaintiffs hereby submit their Opposition to Defendant DEPARTMENT OF EDUCATION's (DOE) Motion in Limine #8 to Exclude Expert Testimony Regarding Causation and Damages.

**I.   ARGUMENT.**

   A.   Dr. Smalley is not a Retained Expert.

Defendant argues that Plaintiffs should be precluded from presenting expert testimony on causation and damages and specifically refers to the testimony of Dr. Daniel LeGoff and Dr. Kimberly Smalley. While Dr. LeGoff has been retained as Plaintiffs' expert, Dr. Smalley has not. Dr. Smalley was employed as a behavioral expert by the Defendant, to assist with creating an appropriate behavioral program for Bryan Wiles-Bond. The first distinction that must be made, therefore, is that Dr. Smalley, who was deposed by Defendant, is not testifying as Plaintiffs' retained expert, although she clearly is an expert in the field of autism and behavioral modification programs. Plaintiffs note this distinction because throughout its Motion in Limine, Defendants portrays Dr. Smalley as Plaintiffs' retained expert. She is not. Any attempt to convey the impression that her testimony and opinions should be measured by the same standards as Dr. LeGoff's is improper.

B. <u>Defendant's Motion Goes to Weight, Not Admissibility</u>.

Defendant's Motion reiterates arguments made in its motion for summary judgment. Issues of proof regarding causation are disputed, as this Court ruled on December 19, 2006, when it denied the parties' motions for summary adjudication. *See,* Docket No. 215. Defendant, nevertheless, argues that "Plaintiffs' experts have failed to show that the alleged failure to provide autism specific services to Bryan Wiles-Bond have caused the claimed damages to any reasonable degree of probability or certainty." Defendant goes on to argue that any assertion of a causal relationship is "entirely unprovable and unreliable." These obvious arguments about the weight of evidence Defendant speculates will be presented are for the jury, not the Court. This is not the time for a motion to be based on the weight of proof.

C. <u>Defendant Misconstrues the Burden of Proof</u>.

Even if the Motion were appropriate, Defendant has misstated that burden of proof. Defendant's argument is that Plaintiffs' proof is insufficient to permit the jury to consider it and make determinations on liability and damages. Defendant repeatedly asserts, incorrectly, that the burden of proof is to a "certainty," then dismisses testimony elicited from various witnesses that supports Plaintiffs' assertion of causation and damages, on the grounds that this proof is disputed and, thus, not "certain." Yet, the burden of proof here is no different than in any other

civil case – a preponderance of the evidence. Any assertion that a higher standard applies for any proof in this case is false.

>   D.   *Daubert* Does Not Bar Testimony on Causation and Damages

Defendant's lengthy discussion of *Daubert* considerations also is misplaced. When distilled to its essence, *Daubert* stands for one proposition: Courts must require experts to establish appropriate qualifications and a proper foundation for their opinions before allowing them to testify. If a proper foundation cannot be established, expert testimony will be deemed unreliable, even if the witness otherwise satisfies the criteria of an "expert." *Daubert* serves as a reminder that merely because a witness might qualify as an expert and offer testimony that would meet the criteria under Federal Rules of Evidence ("FRE") 703, the proponent and the Court must not lose sight of FRE 104 or the requirement of a proper foundation for the testimony. Review of their curricula vitae and written reports demonstrates that both Dr. LeGoff and Dr. Freeman are highly qualified in the field of autism and have reached their opinions based on standardized tests, administered over a period of three years, review of Bryan's entire education history, review of other witnesses' statements, including Defendant's experts and decades of professional experience.

Dr. LeGoff was the first of these two experts to meet Bryan. He evaluated Bryan in June 2005 and again in June 2007. *See* Exhibit 1 and 2 to the Declaration

of Stanley E. Levin. Dr. LeGoff also prepared an estimate of costs for educational and residential services Bryan will need. *See* Exhibit 3 to the Declaration of Stanley E. Levin. Without reiterating every single detail of his neuro-developmental evaluations, highlights include:

1. In person administration of several psychological tests directly to Bryan including the Leiter-R,[1] Autism Diagnostic Observation Schedule,[2] Test of Auditory Comprehension of Language,[3] and the Expressive One-Word Picture Vocabulary Test,[4] in 2005 and 2007;

2. Assimilating the results of these tests into a neuro-psychological assessment;

3. Forming specific conclusions about Bryan's condition and progress between June 2005 and June 2007;

---

1 The Leiter-R is a completely nonverbal measure of intelligence ideal for use with those who are cognitively delayed, disadvantaged, non-English speaking, hearing impaired, speech impaired, or autistic. Pierangelo & Guiliani, *Special Educator's Complete Guide to 109 Diagnostic Tests,* 229 (1989).

2 The "ADOS" is used to assess and diagnose autism and pervasive developmental disorder across ages, developmental levels, and language skills Lord, et al., 3 J AUTISM DEV DISORD., 205-23.( June 2000).

3 The "TACL" measures receptive spoken grammar, vocabulary, and syntax. It tells you how well a child understands word classes and word relations, grammatical morphemes, and elaborated sentence constructions. *Id.* at 169.

4 The "E-OWPVT" is a test of English-speaking vocabulary. http://www.psych-edpublications.com/speech.htm. (last viewed August 8, 2008).

4. Determining the additional services Bryan would need as a result of DOE's failure to provide service based on Dr. LeGoff's work as a clinician at the Center for Neurodevelopmental Health, in New Jersey;

5. Making specific recommendations for special education and related services that Bryan will need in the future.

Dr. LeGoff also prepared a report concerning the costs necessary to fund Bryan's future needs for additional services. *Id.* Exhibit 3.

As can be determined from a review of his curriculum vitae, Dr. LeGoff's training and work have focused less on research and more on direct client assessment and testing and provision of clinical services. *See,* Exhibit 1.

Dr. Freeman is internationally recognized for her more than 30 years of research and writing on the topic of autism, most of it at the UCLA School of Medicine, Department of Psychiatry, where she now holds the position of Professor Emeritus. *See,* Exhibit 4. In addition to reviewing Dr. LeGoff's test results and opinions, Dr. Freeman was retained to: (1) test Bryan in 2006, when Dr. LeGoff did not see him; (2) assess Bryan's social behavioral strengths and needs by interviewing his parents and teachers in 2007; and (3) independently review the reports and recommendations of Defendant's experts, Bryna Siegel, Ph.D. and Richard Goka, MD.

6

Dr. Freeman first met Bryan in 2006, and administered psychological tests at that time. Exhibit 4 to Declaration of Stanley E. Levin. Dr. Freeman then conducted a supplemental observation. In May 2007, Dr. Freeman again visited Bryan and observed his program. She did not administer testing to Bryan, however. Instead she obtained data about Bryan's current levels of performance and needs from interview inventories taken from Bryan's parents and teachers. These are the *Vineland II Adaptive Behavior Scales,*[5] which collects data from others regarding Bryan's performance in areas of communication, daily living skills and socialization, and the *Social Skills Rating Scales,*[6] which collects data from others regarding Bryan's social skills, problem behaviors and academic competence. Exhibit 5 to Declaration of Stanley E. Levin.

Therefore, reviewing their work demonstrates that, as to Bryan, Dr. LeGoff's and Dr. Freeman's formed their opinions based on numerous standardized tests, administered over a period of three years, interviews of family

---

5  Vineland Adaptive Behavior Scales is a measure of personal and social skills needed for everyday living. Pierangelo & Guiliani, *Special Educator's Complete Guide to 109 Diagnostic Tests,* 201 (1989).

6  The Social Skills Rating Scale, like other social behavior ratings, is designed to assist school personnel in identifying student deficits in school-related social behaviors. The test provides an inventory of a student's ability to apply the skills necessary to meet with success in school settings and for eventual success in employment settings. Merrell, *Behavioral, Social, and Emotional Assessment of Children and Adolescents, Second Edition,* 322-32 (2003)

and school staff, review of Bryan's entire education history, review of other witnesses' statements, including Defendant's experts, viewed in the light of these experts' decades of professional experience.

Taken together, Dr. LeGoff's and Dr. Freeman's tests and reports provided sound data, from which they can present to the jury a complete picture of their opinions concerning Bryan and the consequences of Defendant's failure to meet his specific needs in Hawai'i.  Defendant's characterization of these opinions as nothing more than "subjective opinion" is contradicted directly by the qualifications of these experts and the extensive data and experience that underlie their opinions.

  E. <u>Opinions on Causation and Damages are Admissible</u>.

Any assertion that experts cannot express opinions on questions the jury will determine is directly contrary to the language of FRE 704(a), which expressly states:

> *(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible <u>is not objectionable</u> because it embraces an ultimate issue to be decided by the trier of fact*.

Certainly, Plaintiffs' experts are not barred from expressing opinions on ultimate facts by Rule 704 and Defendant's Motion cannot be used as a pretext to circumvent the Rule.

## II.     CONCLUSION.

For the reasons stated above, Plaintiffs respectfully request that Defendant Department of Education's Motion in Limine #8 to Exclude Testimony Concerning an Alleged Educational Standard of Care be DENIED or alternatively, that if granted, the Court's ruling be expressly limited in a manner that does not preclude testimony regarding ultimate facts that would otherwise be allowed under FRE 704(a) as outlined herein.

DATED:    Honolulu, Hawaii, August 11, 2008.

/S/ STANLEY E. LEVIN
_____
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
CARL M. VARADY

Attorneys for Plaintiffs