Of Counsel:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN 1152-0
MICHAEL K. LIVINGSTON 4161-0
851 Fort Street, Suite 400
Honolulu, Hawaii 96813
Telephone: (808) 524-7500/Fax: (808) 545-7802
Email: slevin@davislevin.com

CARL M. VARADY 4873-0
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447/Fax: (808) 523-8448
Email: carl@varadylaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>Plaintiffs,<br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT DOE'S MOTION IN LIMINE #11 TO LIMIT THE TESTIMONY OF SHELBY FLOYD; DECLARATION OF STANLEY E. LEVIN; EXHIBITS 1-7 AND CERTIFICATE OF SERVICE<br><br>DATE: September 9, 2008<br>TIME: 9:00 a.m.<br>JUDGE: Alan C. Kay<br><br>TRIAL DATE: September 9, 2008 |

PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT DOE'S MOTION IN LIMINE #11
TO LIMIT THE TESTIMONY OF SHELBY FLOYD

Plaintiffs hereby submit their Opposition to Defendant DEPARTMENT OF EDUCATION's (DOE) Motion in Limine #11 to Limit the Testimony of Shelby Floyd.

## I. ARGUMENT.

Ms. Floyd served as lead counsel for Plaintiffs until she withdrew on April 21, 2006. Defendants do not contest that Plaintiffs properly identified Ms. Floyd as a witness in this matter in May 2007. *See* Defendant's Memorandum at 6. To provide Defendant a fair opportunity to discover the substance and basis of Ms. Floyd's testimony, Plaintiffs' current counsel wrote to Defendant's counsel on July 25, 2007, making all correspondence between Ms. Floyd and Plaintiffs, her former clients, as well as her legal files available for review and copying, expressly acknowledging that the attorney-client privilege had been waived in order to permit Ms. Floyd to testify. *See* Exhibit 1 to Declaration of Stanley E. Levin. Defendant chose not to depose Ms. Floyd, and instead of attempting to determine the nature of her opinions, after discovery closed, Defendant appeared before the Magistrate Judge requesting that Ms. Floyd be completely barred from testifying. *See* Exhibit 2 to Declaration of Stanley E. Levin.

Defendant previously argued that, as a matter of law, Ms. Floyd is prohibited from testifying in favor of her former clients asserting that she had not been properly designated as an "expert." *See* Docket No. 270. Magistrate Judge Barry M. Kurren denied Defendant's Motion to Strike Ms. Floyd. Additionally, Judge Kurren recognized that there were interactions between Ms. Floyd and the Court and Ms. Floyd and the Defendant, that Plaintiffs would not be able to understand fully, especially discussions within the context of formal legal proceedings.

> THE COURT: Yeah, but you see - - you know, actually now that I've been thinking about this, you know, she - - she is sort of the agent for the plaintiffs interacting with the State.
>
> Mr. Ushiroda: But - -
>
> THE COURT: So the contacts really may be - - she - - that may be the most direct evidence of it.

Exhibit 2 to Declaration of Stanley E. Levin at 5 lines 10-15. The Court recognized that Ms. Floyd would be able to testify more accurately about what occurred during these proceedings.

> THE COURT: Because you see, look, this case is a case, unfortunately, where - - where the contacts between the parties occurred in the context to some litigation. And so, what was actually happening, what was provided or not provided,

> you know, occurred through - - through those proceedings.
>
> So, you know, unfortunately, the lawyers may be in many ways the - - among the - - the better witness to talk about what was actually being provided and what wasn't; don't you think?

*Id.* at 6 lines 13-21.. The Court rejected Defendant's attempt to bar the testimony, noting that it is relevant to the issue of deliberate indifference.

> THE COURT: Well, of course, but she is - - she is the one who's actually for them speaking with DOE. And if the question is whether the DOE's actions amount to deliberate indifference the circumstances surrounding the contacts between the family, through their representative and the DOE, as a percipient witness not as - - you know, not in any other context that - - that's - - that's relevant so long as it's not cumulative of what - - of what is being offered otherwise.

*Id.* at 12, lines 17-24. The Court stated that it was "up to the trial judge" to address any other concerns. *Id.* at 13, lines 9-10. The Court continued stating:

> THE COURT: Okay. I'm taking Mr. Varady's word. What They're - - what they're going to call her to testify about are on those matters where she really is the primary witness. She

> is the person, you know, that - - that can provide the direct testimony concerning the matters of contact between the DOE and her for which the parents really are not able to - - to testify about.
>
> So it is - - it is principally along those lines. You can object if there's a matter of that's cumulative otherwise, or if it starts to become more than what a percipient witness under these circumstances can raise, and Judge Gillmor will, I'm sure, appropriately address that at the time of trial.

*Id.* at 14, lines 9-20. The Court then denied the Defendant's untimely request to depose Ms. Floyd, after not having done so while discovery was open.

The Order signed by the Court does not fully reflect the Court's rationale, and is stated in crabbed terms that could be interpreted as limiting Ms. Floyd's testimony to communications that occurred with the Plaintiffs were not present. Clearly, this is not what the Court intended when it noted that the communications occurring in Court or other legal proceedings would not be understood by the parents as well as they would be by Ms. Floyd. This is particularly important given the fact that Dr. Bond attended five hearings and/or status conferences in the critical period from July to September 2005, after Ms. Floyd filed a motion for a TRO in this matter. The Order does fairly reflect the

Magistrate's ruling that Defendant is not precluded from raising objections that would be proper at trial. Defendant now attempts to reargue the motion that it already has lost. Though the matter has been determined and not appealed by Defendant, Plaintiffs will again address Defendant's assertions.

A. Ms. Floyd's Testimony Will Be That of a Percipient Witness Who Participated in Discussions, Hearings and Meetings With Defendants Over a Five-Year Period.

Ms. Floyd represented Plaintiffs in Individualized Educational Program ("IEP") meetings, administrative due process hearings under the Individuals with Disabilities Education Act ("IDEA"), and enforcement efforts before this Court from 1999 until Plaintiffs left Hawai‘i in January 2005 to seek services for their son elsewhere. Ms. Floyd was involved in extensive and repeated efforts of the Plaintiffs to obtain, as mandated by law, a free and appropriate education ("FAPE") for Bryan Wiles-Bond, under the IDEA, which he was denied. Ms. Floyd was counsel of record in the initial federal case, CV-02-00101 SOM/BMK, which was filed in 2002, at a time when the family still resided in Hawai‘i and was seeking primarily declaratory and injunctive relief to enforce a prior hearing officer's decision. This lawsuit resulted in a settlement agreement. *See* Exhibits 3 - 5 to the Declaration of Stanley E. Levin.

After a further stipulation and due process hearing (Exhibits 6 - 7 to the Declaration of Stanley E. Levin) and a further lack of compliance by Defendant,

Ms. Floyd initiated the first of the two instant consolidated cases, seeking a TRO to enforce the prior decisions, stipulation and agreement. Ms. Floyd has not represented Plaintiffs in the current damages action. She is a necessary witness with relevant, admissible evidence that is offered to corroborate the facts of Bryan's parents' struggle to obtain an appropriate program, her efforts in finding the means to implement Bryan's program, Defendant's knowledge of Bryan's specific needs, and Defendant's continued failure to fulfill its legal duties, promises and due process decisions.

1. Ms. Floyd was a Percipient Witness to Defendant's Misconduct.

In contrast to the initial action for declaratory and injunctive relief filed by Ms. Floyd, the instant lawsuit subsequently was filed by Plaintiffs' current attorneys to obtain damages under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, for injuries resulting from Defendant's deliberate indifference toward Bryan's educational program and the damages caused him and his parents as a result. The Ninth Circuit has explained that a plaintiff must prove a mens rea of "deliberate indifference" in order to establish liability under § 504. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008); *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001); *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002).

In *Duvall*, the court stated that deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a

failure to act upon that likelihood. *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). The first element is satisfied when the public entity has notice that an accommodation is required. *Id.* The second element is satisfied if the entity's "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.* Under the second element, "a public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." Id. (footnote omitted); *Lovell*, 303 F.3d at 1057-58 (failure to provide insurance services to severely disabled constituted deliberate indifference).

In sum, the deliberate indifference standard requires that the Plaintiffs prove that the Defendant had notice (knowledge that harm to a federally protected right is substantially likely) and that Defendant's failure to act is more than negligent, it is with knowledge that the accommodation offered is improperly designed to address the specific need.

The Court is well aware of Ms. Floyd's lengthy direct participation attempting to secure appropriate educational programs and related services for Bryan and his parents, through IEP meetings, due process hearings, and proceedings before this Court. No one, other than Bryan's parents, is a more apt witness to establish that Defendants knew of Bryan's educational needs and

repeatedly and knowingly failed to fulfill its legal obligations to meet those needs than Ms. Floyd. Any assertion that Ms. Floyd's testimony on these issues would not satisfy the requirements of Rule 401 is false.

Defendant's reiterated motion in limine seeks to prevent Plaintiffs' most knowledgeable percipient non-party witness from testifying in this case. There is no basis whatsoever from barring her testimony.

2. Defendant's Arguments are Purely Speculative.

Defendant's position that Ms. Floyd's testimony would be cumulative, hearsay, or unduly prejudicial[1] are speculative and factually deficient. Defendant did not take any steps to depose Ms. Floyd or otherwise discover the scope or substance of her testimony. The discussion and assertions contained in pages 9 through 11 of Defendant's memorandum[2] therefore are pure speculation. Had Defendant deposed Ms. Floyd and presented the Court with instances of objectionable testimony, rather than rank speculation regarding what such testimony might be, there might be some factual basis for the Court's consideration

---

1 Defendant incorrectly asserts the standard as "prejudicial" leaving out the requirement that it be "unduly" so. FRE 403. All relevant evidence is prejudicial; the Rule gives the Court discretion to exclude "unduly" prejudicial evidence.

2 Defendant again has filed a memorandum in excess of 15 pages without a table of contents or authorities in violation of LR 7.5. Furthermore, the type face appears to be 12 not 14 point, which would lengthen the brief even further.

of Defendant's arguments. As it is, there is no evidentiary basis for such a ruling by the Court. Defendant's Motion should be denied. Any of the speculative arguments raised by Defendant can be addressed in trial, as contemplated by the Magistrate Judge. Plaintiffs continue to assert that this is the appropriate course to address any legitimate concerns Defendant may have.

B. Defendant's Arguments Regarding Rule 408 Are Bogus and Contrary to the Advisory Committee Notes.

There is no question that a former attorney can in fact testify on behalf of a former client, and there are no ethical or professional problems in doing so. *E.g.*, *Towe Antique Ford Foundation v. I.R.S.*, 999 F.2d 1387 (9th Cir. 1993). The instant case poses far fewer concerns than *Towe* as there is no hint of adversity or any involuntary breach of client confidence. Without having made any effort to determine the subject matter of Ms. Floyd's testimony, Defendants assert that she should be barred from testifying, assuming all of her testimony would be governed by Rule 408's prohibition. There is no factual basis, for ruling that Rule 408 applies; having chosen not to depose Ms. Floyd, Defendant cannot establish what Ms. Floyd's testimony would address.

Defendants refer to Plaintiffs' complaint in order to speculate as to what Ms. Floyd's testimony would be, "to offer Ms. Floyd's testimony in an effort to highlight DOE's alleged failure to provide Bryan Wiles-Bond with the services

required by various orders, and agreements made by the DOE, including the settlement agreement Plaintiffs and Defendant entered into on July 1, 2002." Defendant's Memorandum at 16. Even if Defendant's assumption were correct, Rule 408 would not bar such testimony.

First, Rule 408 does not apply to matters witnessed by Ms. Floyd in the course of her representation of Plaintiffs in due process hearings, IEP meetings, other discussions, or observations regarding Bryan's program or Defendant's implementation of it. Statements that are not part of compromise discussions are not subject to Rule 408. *E.g., Sage Realty v. Insurance Co. of N. America*, 34 F.3d 124, 128 (2nd Cir. 1994). Discussions that pertain to these hearings, IEPs, and other matters unrelated to the cited agreement, simply are not subject to Rule 408's bar. Second, there is no question that Rule 408 does not require exclusion of evidence of settlement of a claim different from the one being litigated. *E.g., Towerridge, Inc., v. T.A.O., Inc*, 111 F.3d 758, 769-70 (10th Cir. 1997).

> [T]he "general principle is that "'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'" *Uforma/Shelby Business Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293-94 (6th Cir. 1997) (*quoting* 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5314 (1st ed. 1980) at n.25). Similarly, the Tenth Circuit Court of Appeals has observed that "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th

> Cir. 1997); *accord Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992).

*Johnson v. Land O' Lakes*, 181 F.R.D. 388, 393 (D. Iowa 1998)(because evidence of compromise of claims concerned different claims Rule 408 not applicable).

Plaintiffs in the present case are not seeking to enforce a prior agreement nor litigate Defendant's liability to provide services to allow Bryan meaningful access to public education covered by the July 1, 2002 settlement agreement. Plaintiffs are seeking to recover money damages under Section 504 of the Rehabilitation Act for the consequences to their son and themselves resulting from Defendant's failure to provide meaningful access to public education for Bryan for five years. Plaintiffs allege that Defendant did not fulfill the terms of the settlement agreement. Ms. Floyd would testify to that fact. This testimony is no different than any other case where the terms of an agreement are presented to a jury to determine whether those terms were fulfilled. To quote one court, "Obviously a settlement agreement is admissible to prove the parties' 'undertakings in the agreement, should it be argued that a party broke the agreement.'" *Cates v. Morgan Portable Building Corp.*, 780 F.2d 683, 691 (7th Cir. 1985). Courts routinely admit statements made during settlement negotiations in suits asserting breach to prove the terms of the agreement. *E.g.*, *Central Soya Co. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982).

Therefore, even if the present action were not separate and apart from the initial action filed by Ms. Floyd, and even if Ms. Floyd were to testify regarding Defendant's failure to fulfill, among other legal duties, their contractual obligations regarding the July 1, 2002 agreement, her testimony is not barred for that purpose as the Advisory Committee Notes to Rule 408 expressly explains citing the cases above.

C. Ms. Floyd's Testimony is not Parol Evidence.

Again, without a shred of fact to support their argument, Defendant asserts that Ms. Floyd's testimony would be offered to vary or modify the terms of Defendant's promises to provide Bryan an appropriate program, as set forth in the July 1, 2002 agreement. *See* Defendant's Memorandum at 13. For the Court to consider this argument, Defendant would first need to demonstrate that Ms. Floyd's testimony was being offered for the stated purpose – to vary the terms of the cited agreement. No such proof is before the Court. Plaintiffs do not seek to contradict the terms of the July 1, 2002 agreement through Ms. Floyd's testimony; they seek to confirm its origins and the facts underlying its alleged breach. There is no basis for asserting that the parol evidence rule bars Ms. Floyd's testimony.

D. Ms. Floyd's Testimony is a Percipient Witness, Not an Expert Witness

Ms. Floyd's testimony is being offered as necessary, percipient witness testimony. That she may be knowledgeable in the area of special education law

does not preclude her from testifying as a witness to the underlying facts confirming Bryan's parents' struggle to obtain an appropriately implemented educational program for Bryan. Defendant's discussion of the requirements of Rule 26 are irrelevant for two reasons: (1) Ms. Floyd is being offered as a necessary, percipient witness, not an expert; thus Rule 26 does not require disclosure of her opinions; and (2) any lack of knowledge regarding the nature and scope of Ms. Floyd's testimony could easily have been cured by taking her deposition. Defendants chose not to do so and cannot complain of their decision and resulting lack of knowledge. Rule 26 imposed no obligation on Plaintiffs to disclose Ms. Floyd's testimony or its bases. Any surprise is due solely to Defendant's gamesmanship in discovery.

**II. CONCLUSION.**

For the reasons stated above, Plaintiffs respectfully request that Defendant Department of Education's Motion in Limine #11 to Limit the Testimony of Shelby Floyd be DENIED.

DATED: Honolulu, Hawaii, August 11, 2008.

/S/ STANLEY E. LEVIN

STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
CARL M. VARADY

Attorneys for Plaintiffs