IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ANN KIMBALL WILES and STANLEY ) 
BOND, individually and as next ) Civ. No. 04-00442 ACK-BMK
friend of their son, BRYAN ) Civ. No. 05-00247 ACK-BMK
WILES-BOND, a minor, ) (Consolidated)
                                )
          Plaintiffs, )
                                )
     v. )
                                )
DEPARTMENT OF EDUCATION, State )
of Hawaii, )
                                )
          Defendant. )
_____ )
                                )
                                )


**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S AMENDED
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT ON
SECOND AMENDED COMPLAINT FILED ON FEBRUARY 13, 2008**

PROCEDURAL BACKGROUND

On July 21, 2004, Plaintiffs Ann Kimball Wiles and

Stanley Bond, individually and as next friend of their son, Bryan

Wiles-Bond, a minor,[1] filed a Verified Complaint in Civil Case

No. 04-00442 HG-BMK.  On July 1, 2005, Plaintiffs filed a

---

[1] Ann Kimball Wiles and Stanley Bond may be referred to
herein as "parents."  Bryan Wiles-Bond may be referred to herein
as "Bryan."  Collectively, Ann Kimball Wiles, Stanley Bond, and
Bryan may be referred to herein as "Plaintiffs."

1

"Verified Amended and Supplemental Complaint"[2] against the Department of Education, State of Hawaii ("DOE" or "Defendant"), and Alvin Rho, in his official capacity as West Hawaii District Superintendent.[3]

On April 8, 2005, Plaintiffs filed a new Complaint against the DOE in Civil Case No. 05-00247 SOM-BMK, alleging that Defendant violated the Rehabilitation Act, 29 U.S.C. § 729, by acting with deliberate indifference in failing to establish a pool of substitute skills trainers, provide Bryan with the required hours of services from skills trainers, implement Bryan's toileting program, and hire qualified skills trainers.

On July 26, 2005, the Court entered an Order Granting the Parties' Stipulation to Consolidate, thereby consolidating Civil Case No. 05-00247 SOM-BMK and Civil Case No. 04-00442 HG-BMK.

On August 8, 2005, the consolidated cases were assigned to Judge Helen Gillmor.

---

[2] The Verified Amended Complaint stated the following claims for relief: (Count One) Declaratory, Compensatory and Injunctive Relief for Violations of the IDEA and Enforcement of Administrative Decisions; (Count Two) Violations of Section 504; (Count Three) Violation of Section 1983; (Count Four) Breach of Contract.  However, at the hearing on March 28, 2006, Plaintiffs clarified that they are only seeking money damages under the Rehabilitation Act, 29 U.S.C. § 729.

[3] On December 17, 2007, the Court approved a Stipulation for Dismissal Without Prejudice as to all Claims for Defendant Alvin Rho.  Thereafter, the DOE became the sole Defendant in this matter.

On December 19, 2006, the Court entered an Order
Denying Defendants' Motion for Summary Judgment, Construed as a
Motion for Judgment on the Pleadings; Denying Plaintiffs' Motion
for Partial Summary Judgment; Granting in Part and Denying in
Part Plaintiffs' Motion to Enforce the Doctrine of Issue
Preclusion Regarding All Administrative Hearing Decisions and the
Settlement Agreement; Denying Plaintiffs' Motion to Strike
Declarations for Non-Compliance with Rule 56(e); and Denying
Plaintiffs' Motion to Amend and/or Supplement the Record
("December 2006 Order").

On September 17, 2007, the Court entered a Minute Order
Granting in Part and Denying in Part Defendants' Motion for
Partial Summary Judgment as to Plaintiffs Ann Kimball Wiles and
Stanley Bond's Individual Claims for Non-Economic Damages
Pursuant to the Rehabilitation Act, 29 U.S.C. § 729.

On November 13, 2007, the Court entered an Order
Granting Plaintiffs Ann Kimball Wiles' and Stanley Bond's Motion
to Amend their Complaint to Include an Express Claim for Non-
Economic Damages for Retaliation ("November 2007 Order").  That
same day, the case was reassigned to Judge Alan C. Kay.

On November 20, 2007, Plaintiffs filed a First Amended
Complaint.

On January 17, 2008, the United States Court of Appeals
for the Ninth Circuit issued a decision in <u>Mark H. v. Lemahieu</u>,

3

513 F.3d 922 (9th Cir. 2008).

On January 24, 2008, the Court entered an Order Denying Defendant's Request to Dismiss for Failure to Pursue Administrative Remedies, Granting Defendant's Request to Continue the Trial, and Granting Leave to Plaintiffs to Amend their Complaint ("January 2008 Order").

On February 13, 2008, Plaintiffs filed a Second Amended Complaint.

On February 28, 2008, Defendant filed a Motion to Dismiss Second Amended Complaint filed on February 13, 2008.

On March 12, 2008, Defendant filed an Amended Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint filed on February 13, 2008 ("Motion").

On March 19, 2008, Defendant filed a Concise Statement in Support of Amended Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint filed on February 13, 2008 ("Motion CSF").[4]  Defendant attached the March 19, 2008 declaration of its attorney, Gregg M. Ushiroda, which authenticates exhibits A-D as true and correct copies of the original documents.

_____

[4] The magistrate judge permitted Defendant with the agreement of Plaintiffs to file the Motion CSF even though it was untimely.  On March 21, 2008, following a status conference, Plaintiffs' deadline to file an Opposition was continued to March 27, 2008, and Defendant's deadline to file a Reply was continued to March 31, 2008.

On March 27, 2008, Plaintiffs filed a Memorandum in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint ("Opposition"). That same day, Plaintiffs filed a Concise Statement in Opposition to Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint filed on February 13, 2008 ("Opposition CSF"). Plaintiffs attached the March 27, 2008 declaration of their attorney, Carl M. Varady, which authenticates exhibits 1-2 as true and correct copies of the original documents.

On March 31, 2008, Defendant filed a Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint ("Reply"). That same day, Defendant filed Objections and Reply to Plaintiffs' Concise Statement in Opposition to Defendant's Separate and Concise Statement of Facts in Support of Motion to Dismiss ("Objections").

The parties appeared before this Court to address Defendant's Motion on April 10, 2008. That same day, without the permission of the Court, Plaintiffs filed a Supplemental Memorandum. On April 11, 2008, without the permission of the Court, Plaintiffs faxed a letter to the Court. On April 14, 2008, the Court issued an Order granting Defendant three days to respond to Plaintiff's Supplemental Memorandum and letter. On

5

April 17, 2008, Defendant filed a Response to Plaintiffs'
Supplemental Memorandum and Letter.[5]

## **FACTUAL BACKGROUND**[6]

At the heart of this case is Bryan, a severely autistic
minor who lived with his family on the Island of Hawaii.  The
extensive factual background in this case is well-documented in
Judge Gillmor's December 2006 and November 2007 Orders.  Those
facts are incorporated herein and will be supplemented to
describe the events that unfolded following the November 2007
Order.

On November 20, 2007, Plaintiffs filed a First Amended
Complaint, alleging violations of the Rehabilitation Act and the
§ 504 anti-retaliation implementing regulation at 28 C.F.R. §
42.503(b)(1)(vii).  As in previous complaints, Plaintiffs' § 504
claim in the First Amended Complaint was based on the following
allegations:

> Beginning in June 2004, despite the Settlement
> Agreement and May 2004 Decision, there was no pool
> of trained substitutes in place, and Bryan was not
> receiving and did not receive 95 percent of the
> hours of services from skills trainers identified
> in the May 11, 2004 Decision.  The toileting
> program ordered has not been implemented.  No ASL

---

[5] Plaintiffs sent another letter to the Court dated April
28, 2008; the Court will not consider it.

[6] The facts as recited in this Order are for the purpose of
disposing of this motion and are not to be construed as findings
of fact that the parties may rely on in future proceedings in
this case.

training has been conducted and no skills trainers
have been hired who are qualified as required by
the decision.

First Am. Compl. ¶ 36.

All of the actions and inactions by the State of
Hawai'i, by and through its employees were done with
an intention that was deliberately indifferent to
the federal (IDEA) rights of Bryan.

First Am. Compl. ¶ 39.

Defendant's actions and inactions have directly
caused such regression in Bryan that he no longer
can have FAPE provided at home or in a school
setting, but must at some point in time in the near
future be institutionalized or in an assisted
living setting.

First Am. Compl. ¶ 45.

The Defendant has repeatedly been informed of the
need to hire and train an adequate number of skills
trainers to provide services to autistic children
like Bryan.  The Defendant has intentionally or
with deliberate indifference failed to take
necessary action to prevent damage to Bryan
resulting from the lack of trained and consistent
skills trainers.

First Am. Compl. ¶ 47.

Plaintiffs' retaliation claim was primarily based on

the following allegation in the First Amended Complaint:

Defendants retaliated against Ann Kimball Wiles and
Stanley Bond in violation of Section 504 and its
implementing regulations, 28 C.F.R. §
42.503(b)(1)(vii), causing them extreme emotional
and physical distress and economic harm, in
response to the parents' advocacy for their son's
special education and related services, with the
intent of forcing the family to move to the
Mainland, over the period from 1999 until 2005
. . .

7

First Am. Compl. ¶ 50.

Plaintiffs further alleged, <u>inter alia</u>, that Defendant retaliated against them by refusing to comply with administrative orders, settlement agreements and IEPs for five years; sending people into the family home to obtain confidential information about the family; illegally obtaining confidential e-mail and financial information about a particular skills trainer; using false information to resist hiring a particular skills trainer; using false information to oppose a temporary restraining order; isolating Bryan at Kealekehe Intermediate; forcing the parents to withdraw Bryan from Kaelekehe Intermediate; changing Bryan's education placement into an "isolation" environment without the parents' consent; refusing to procure the services of Mainland service providers in a timely fashion; refusing to provide services to Bryan by claiming that he was ill; employing unqualified skills trainers; blaming the parents for cleanliness problems in Bryan's living area; accusing the parents of improperly locking Bryan in his room at night; accusing the parents of asking skills trainers to do household tasks that were a required part of Bryan's program; and committing other retaliatory acts.  <u>See</u> First Am. Compl. ¶ 50(a)-(q).

Approximately one month before this case was scheduled for trial, on January 17, 2008, the Ninth Circuit issued a

decision in Mark H..[7]  As discussed infra, the Ninth Circuit held
that the availability of injunctive relief under the IDEA does
not preclude lawsuits for monetary damages under § 504 of the
Rehabilitation Act of 1973.  See Mark H., 513 F.3d at 925.  The
Mark H. court remanded the case and instructed the district court
to give the plaintiffs an opportunity to amend their complaint to
"specify which § 504 [FAPE] regulations they believe were
violated and which support a privately enforceable cause of
action."  Id. at 939.

On January 18, 2008, this Court held a hearing to
discuss the impact of the Mark H. decision on the instant case.
A further hearing was held on January 24, 2008, after the parties
submitted written briefs.

On January 24, 2008, the Court issued the January 2008
Order, which denied Defendant's request to dismiss Plaintiffs' §
504 FAPE claim for failure to exhaust administrative remedies,
continued the trial to a later date, and granted leave to
Plaintiffs to amend their complaint.  The January 2008 Order
stated in relevant part:

> Instead of proceeding to trial, the Court grants
> leave to Plaintiffs to amend their Complaint to
> conform to the Mark H. decision.  In particular,
> Mark H. dictates that Plaintiffs must "specify
> which § 504 regulations they believe were violated

---

[7] Mark H. involved virtually the same attorneys and was a
long-anticipated and potentially pertinent ruling which was
argued on June 6, 2007.

9

> and which support a privately enforceable cause of
> action." <u>Mark H.</u>, No. 05-16236, slip op. at 622.
> If Plaintiffs only wish to allege a violation of §
> 504 itself, rather than the regulations, Plaintiffs
> are free to do so in their amended Complaint.
> However, the Court notes that it appears the § 504
> implementing regulations would be implicated in
> such a cause of action.

<u>See</u> January 2008 Order at 2.

On February 13, 2008, Plaintiffs filed their Second
Amended Complaint.  Instead of alleging violations of the § 504
regulations, Plaintiffs alleged a cause of action under § 504
itself.  Plaintiffs did so by removing certain references to the
IDEA, FAPE, and Bryan's IEPs, and appending the phrase
"meaningful access to public education" to several existing
allegations.  <u>See</u> Second Am. Compl. ¶¶ 4, 15, 16, 21, 24, 39, 40.
For example, Plaintiffs alleged:

> In 2004, despite the Settlement Agreement and May
> 2004 Decision, there was no pool of trained
> substitute skills trainers in place, and Bryan was
> not receiving and did not receive 95 percent of the
> hours of services from skills trainers identified
> in the May 11, 2004 Decision.  The toileting
> program ordered was created but had not been
> implemented.  No ASL training has been conducted
> and none of the skills trainers hired were trained
> in ASL or behavioral modification methods as
> required by the Decision.  These services were
> necessary to provide Bryan meaningful access to
> public education.

Second Am. Compl. ¶ 36.

> The DOE acted with deliberate indifference [to]
> Bryan's need for accommodation and denied him
> meaningful access to public education.

Second Am. Compl. ¶ 39.  In addition, Plaintiffs added several

10

new factual allegations in support of their § 504 claim that had
reportedly become known to the parties through discovery.[8]  See
Plaintiffs' Proposal for a Discovery Plan, at 3 (Feb. 20, 2008).
Finally, Plaintiffs altered the section of their complaint
involving the retaliation claim by adding that the anti-
retaliation implementing regulation, 28 C.F.R. §
42.503(b)(1)(vii), "authoritatively construes" the prohibition
against retaliation in § 504.  See Second Am. Compl. ¶ 45.

**STANDARD**

**I.   Motion to Dismiss for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) ("Rule
12(b)(6)") permits dismissal of a complaint that fails "to state
a claim upon which relief can be granted."  Under Rule 12(b)(6),
review is generally limited to the contents of the complaint.
Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.
2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir.
1996).  Courts may also "consider certain materials - documents
attached to the complaint, documents incorporated by reference in

---

[8]  The new factual allegations involved, inter alia,
allowing Bryan to be "abducted by a mentally unstable woman
during a community outing"; suspending Bryan from school;
allowing Bryan to be assaulted by a larger classmate; and not
responding to the proposal for Bryan's program from Pacific Child
and Family Associates.  See Second Am. Compl. ¶ 41(a)-(mm).  As
part of their retaliation claim, Plaintiffs added the allegation
that Defendant forced the parents to "quit their jobs, sell their
home and move their family back to the Mainland, thereby
suffering economic losses."  See id. ¶ 45(q).

the complaint, or matters of judicial notice - without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. See Sprewell, 266 F.3d at 988; Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption

12

that all the allegations in the complaint are true (even if
doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955,
1965 (2007) (internal citations and quotations omitted). "While
a complaint attacked by a Rule 12(b)(6) motion to dismiss does
not need detailed factual allegations . . . a plaintiff's
obligation to provide the 'grounds' of his 'entitlement to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do." Id. at 1964 (internal citations and quotations
omitted). Dismissal is appropriate under Rule 12(b)(6) if the
facts alleged do not state a claim that is "plausible on its
face." Id. at 1973.

**II.  Motion for Summary Judgment**

The purpose of summary judgment is to identify and
dispose of factually unsupported claims and defenses. See
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary
judgment is therefore appropriate when the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56©.

"A fact is 'material' when, under the governing
substantive law, it could affect the outcome of the case. A

13

'genuine issue' of material fact arises if 'the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party.'"  Thrifty Oil Co. v. Bank of America National Trust &
Savings Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))
(internal citation omitted).[9]  Conversely, where the evidence
could not lead a rational trier of fact to find for the nonmoving
party, no genuine issue exists for trial.  See Matsushita
Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986) (citing First National Bank of Arizona v. Cities
Service Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court
as to the absence of a genuine issue of material fact.  Celotex,
477 U.S. at 323; Miller v. Glenn Miller Productions, 454 F.3d
975, 987 (9th Cir. 2006).  The moving party may do so with
affirmative evidence or by "'showing' - that is pointing out to
the district court - that there is an absence of evidence to
support the nonmoving party's case."  Celotex, 477 U.S. at 325.[10]

_____

[9] Disputes as to immaterial issues of fact do "not preclude
summary judgment."  Lynn v. Sheet Metal Workers' International
Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

[10] When the moving party bears the burden of proof at trial,
that party must satisfy its burden with respect to the motion for
summary judgment by coming forward with affirmative evidence that
would entitle it to a directed verdict if the evidence were to go
uncontroverted at trial.  Miller, 454 F.3d at 987 (quoting C.A.R.
Transportation Brokerage Co. v. Darden Restaurants, Inc., 213
F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party bears

14

Once the moving party satisfies its burden, the
nonmoving party cannot simply rest on the pleadings or argue that
any disagreement or "metaphysical doubt" about a material issue
of fact precludes summary judgment.  See Celotex, 477 U.S. 323;
Matsushita Elec., 475 U.S. at 586; California Architecture
Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d
1466, 1468 (9th Cir. 1987).[11]  The nonmoving party must instead
set forth "significant probative evidence" in support of its
position.  T.W. Electrical Service, Inc. v. Pacific Electrical
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Summary
judgment will thus be granted against a party who fails to
demonstrate facts sufficient to establish an element essential to
his case when that party will ultimately bear the burden of proof
at trial.  See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the
court must construe all evidence and reasonable inferences drawn
therefrom in the light most favorable to the nonmoving party.

---

the burden of proof at trial, the party moving for summary
judgment may satisfy its burden with respect to the motion for
summary judgment by pointing out to the court an absence of
evidence from the nonmoving party.  Miller, 454 F.3d at 987.

[11] Nor will uncorroborated allegations and "self-serving
testimony" create a genuine issue of material fact.  Villiarimo
v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002);
see also T.W. Electrical Service, 809 F.2d 626, 630 (9th Cir.
1987).

See <u>T.W. Electrical Service</u>, 809 F.2d at 630-31.[12]   Accordingly,

if "reasonable minds could differ as to the import of the

evidence," summary judgment will be denied.   <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986).

### DISCUSSION

Defendant asks this Court to dismiss Plaintiffs' claim

that Bryan was denied "meaningful access to public education" in

violation of § 504.   Alternatively, Defendant seeks summary

judgment on Plaintiffs' underlying § 504 claim.   Defendant

further requests dismissal of Plaintiffs' § 504 retaliation claim

for failure to exhaust administrative remedies.   The Court

addresses the merits of each argument in turn.

### I.   Section 504 Statutory Claim

In the January 2008 Order, this Court provided

Plaintiffs with an opportunity to amend their complaint to

specifically allege the § 504 FAPE regulations.   Instead,

Plaintiffs continued to assert a cause of action under § 504

itself.   The Court must now decide whether the <u>Mark H.</u> decision

dictates that Plaintiffs' particular cause of action must be

based on the § 504 implementing regulations in order to state a

claim, or whether Plaintiffs may rely on the statute alone.

---

[12] At the summary judgment stage, the court may not make
credibility assessments or weigh conflicting evidence.   <u>Anderson</u>
<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>Bator v. State</u>
<u>of Hawai`I</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).

16

Before tackling this question, the Court reviews the relevant provisions of the IDEA, the Rehabilitation Act, and the § 504 implementing regulations, as well as the Ninth Circuit's decision in Mark H..

**A.   The IDEA**

The IDEA is a "comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs."   Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992).   In enacting the IDEA, Congress sought to "ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."   20 U.S.C. § 1400(d)(1)(A).   Under the IDEA, a FAPE is defined as:

> special education and related services that–(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).   The IDEA allows parents to obtain judicial review of decisions they deem unsatisfactory or inappropriate. Robb v. Bethel Sch. Dist. #403, 308 F.3d 1047, 1049 (9th Cir.

2002).  However, monetary damages are not generally available

under the IDEA.  Witte v. Clark County Sch. Dist., 197 F.3d 1271,

1275 (1999); see also Taylor v. Honig, 910 F.2d 627, 628 (1990)

(noting that "injunctive or other prospective relief is

ordinarily the remedy under the [IDEA] and damages are usually

inappropriate").

### B.  Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act of 1973 provides:

> No otherwise qualified individual with a disability
> in the United States . . . shall, solely by reason
> of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be
> subjected to discrimination under any program or
> activity receiving Federal financial assistance . .
> .

29 U.S.C. § 794(a).  Section 504 further defines "program or

activity" as "all of the operations of . . . a local educational

agency," among other entities.  Id. § 794(b)(2)(B).  The Ninth

Circuit has "recognized a private right of action under section

504, and Plaintiffs suing under section 504 may pursue the full

panoply of remedies, including equitable relief and monetary

damages."  See Greater L.A. Council on Deafness, Inc. v. Zolin,

812 F.2d 1103, 1107 (9th Cir. 1987) (internal citations omitted).

The predecessor to the U.S. Department of Education

promulgated regulations implementing § 504.  As relevant to the

instant case, the § 504 regulations require recipients of federal

funds to "provide a free appropriate public education to each

18

qualified handicapped person who is in the recipient's
jurisdiction, regardless of the nature or severity of the
person's handicap." <u>See</u> 34 C.F.R. § 104.33(a).  The main § 504
FAPE regulation states that the

> provision of an appropriate education is the
> provision of regular or special education and
> related aids and services that (i) are designed to
> meet individual educational needs of handicapped
> persons as adequately as the needs of
> nonhandicapped persons are met and (ii) are based
> upon adherence to procedures that satisfy the
> requirements of §§ 104.34, 104.35, and 104.36.

<u>Id.</u> § 104.33(b)(1).

The first cross-referenced regulation, § 104.34, sets
forth the proper educational settings for qualified handicapped
persons. <u>See</u> <u>id.</u> § 104.34.  The second cross-referenced
regulation, § 104.35, mandates recipients of federal funds to
establish and conduct certain evaluation and placement procedures
for qualified handicapped persons. <u>See</u> <u>id.</u> § 104.35.  The third
cross-referenced regulation, § 104.36, requires recipients of
federal funds to "establish and implement" procedural safeguards
for any actions related to the "identification, evaluation, or
educational placement" of qualified handicapped persons. <u>See</u> <u>id.</u>
§ 104.36.  The main § 504 FAPE regulation further specifies that
"[i]mplementation of an [IEP] developed in accordance with the
[IDEA] is one means of meeting" the design standard in §
104.33(b)(1)(i). <u>See</u> <u>id.</u> § 104.33(b)(2).

In addition, 28 C.F.R. § 42.503 details discriminatory

19

actions that recipients of federal funds are prohibited from committing under § 504, and includes intimidation or retaliation "against any individual, whether handicapped or not, for the purpose of interfering with any right secured by section 504 or this subpart."   28 C.F.R. § 42.503(b)(1)(vii).

C.   **The <u>Mark H.</u> Decision**

As this Court is among the first to attempt to interpret the <u>Mark H.</u> decision,[13] the Court reviews the decision in some detail.

In <u>Mark H.</u>, the Ninth Circuit considered whether a district court properly held that there is no cause of action under § 504 for violations of the IDEA's affirmative obligations, and that the § 504 regulations are not enforceable through a private right of action.   <u>See</u> 513 F.3d at 925-26.   The H. parents and their two autistic daughters, Natalie and Michelle, initiated administrative proceedings against the Hawaii DOE under the IDEA

_____

[13] The Court is aware of only one other district court's interpretation of the <u>Mark H.</u> decision.   In <u>J.W. v. Fresno Unified School District</u>, No. 08-129, 2008 WL 850250, at *2-3 (E.D. Cal., Mar. 28, 2008), the court considered whether to dismiss a plaintiff's § 504 claim in light of <u>Mark H.</u> because the plaintiff had not identified violations of the § 504 regulations in the complaint.   In relevant part, the hearing-impaired plaintiff in <u>J.W.</u> alleged that during the 2003-2006 school years, the school district failed to provide him with a FAPE "designed to meet his unique needs" in violation of § 504.   <u>Id.</u> at *1.   In responding to the defendant's motion to dismiss, the plaintiff requested leave to amend his complaint to specify the § 504 regulations.   <u>Id.</u> at *2.   The court found that based on <u>Mark H.</u>, the plaintiff's § 504 claim failed to state a claim, but granted leave to the plaintiff to amend his complaint.   <u>Id.</u> at *2-3.

and § 504, alleging deficient IEPs, denial of FAPE, and various procedural violations. Id. at 927. The administrative officer ruled that Natalie and Michelle's IEPs were deficient, they had been denied a FAPE under the IDEA, and numerous procedural violations had taken place. Id. at 928. The administrative officer directed the DOE to take certain steps to remedy the violations. Id. The H. family subsequently filed a federal lawsuit against the DOE under the IDEA and § 504. Id. at 928, 930. The district court ultimately granted summary judgment in favor of the DOE, holding in relevant part that: (1) there is no cause of action under § 504 for violation of any affirmative right to FAPE; and (2) the § 504 regulations cannot be enforced through the implied right of action under § 504. Id. at 931-32.

First, the Ninth Circuit rejected the district court's conclusion that lawsuits for monetary damages under § 504 are barred by the availability of injunctive relief under the IDEA. Id. at 932. The Mark H. court emphasized that FAPE under the IDEA and FAPE under § 504 are "similar but not identical," and that the most important difference is that "unlike FAPE under the IDEA, FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the 'design' of a child's educational program." Id. at 933. Moreover, the court found it significant that Congress had "clearly expressed its intent that

21

remedies be available under the Rehabilitation Act for acts that also violate the IDEA" when it added the provision now found at 20 U.S.C. § 1415(l).  <u>Id.</u> at 934.

Second, the <u>Mark H.</u> court reaffirmed that § 504 itself contains an implied right of action, but explained that the question of "[w]hether the H. family could bring an action to enforce the § 504 <u>regulations</u> will depend on whether those regulations come within the § 504 implied right of action."  <u>Id.</u> at 935 (emphasis in original).  Offering a few considerations to assist the district court on remand, the <u>Mark H.</u> court noted that unlike the regulations in <u>Alexander v. Sandoval</u>, 532 U.S. 275 (2001), the § 504 regulations are "not fairly viewed as imposing liability based only on unintentionally created 'effects' or outcomes."  <u>Id.</u> at 935-36.  The court stated:

> The plain language of this first, overarching FAPE requirement is not violated by a mere difference in educational outcomes or 'effects.'  Rather, it is violated only if a state fails to 'design' educational plans so as to meet the needs of both disabled and nondisabled children comparably.  To 'design' something to produce a certain, equal outcome involves some measure of intentionality.  And an obligation to 'design' something in a certain way is not violated simply because the actual impact of the design turns out otherwise than intended.

<u>Id.</u> at 936.  The <u>Mark H.</u> court further declared that the main § 504 FAPE regulation creates a "comparative" obligation, and "school districts need only design educational programs for disabled persons that are intended to meet their educational

22

needs to the same degree that the needs of nondisabled students are met, not more." Id. at 936-37.  Criticizing the district court's reading of the prohibition in § 504 as "too cramped," the Mark H. court emphasized that the statute not only prohibits discrimination against the disabled, but also prohibits exclusion from and denial of the benefits of state programs solely based on disability.  Id. at 937.  Moreover, the court maintained that the focus of the prohibition in § 504 remains on "'whether disabled persons were denied 'meaningful access' to state-provided services.'"[14]  Id. (quoting Crowder v. Kitigawa, 81 F.3d 1480, 1484 (9th Cir. 1996).

Finally, the court observed that "to be enforceable through the § 504 implied right of action, regulations must be tightly enough linked to § 504 that they 'authoritatively construe' that statutory section, rather than impose new obligations." Id. at 939.  The court explained that it would not decide whether the H. family alleged a privately enforceable cause of action because the issue of whether the § 504 FAPE regulations were violated was never litigated, due to the parties' assumption that FAPE was identical under the IDEA and § 504.  Id.  Therefore, the Ninth Circuit reversed and remanded for further proceedings, instructing the district court to give the

---

[14] The Mark H. court also confirmed that a plaintiff must prove a mens rea of "deliberate indifference" to establish liability for damages under § 504.  Id. at 938.

H. family "an opportunity to amend its complaint to specify which § 504 regulations they believe were violated and which support a privately enforceable cause of action."  Id.

### D. Plaintiffs' Underlying § 504 Claim

The key issue is whether, in light of Mark H., Plaintiffs must specifically assert violations of the § 504 FAPE regulations to properly state a claim upon which relief can be granted.  In their Second Amended Complaint, Plaintiffs assert that Defendant acted with deliberate indifference in failing to provide Bryan with "meaningful access to public education" under § 504 itself.  See Second Am. Compl. ¶¶ 4, 15, 16, 21, 24, 39, 40.  Defendant argues that Plaintiffs' failure to proceed under the § 504 regulations warrants dismissal of the Second Amended Complaint based on Mark H..  Conversely, Plaintiffs read Mark H. as offering the option of invoking the § 504 regulations while leaving intact the implied right of action under the statute. The Court agrees with Plaintiffs and denies Defendant's motion to dismiss or in the alternative for summary judgment on the underlying § 504 claim.

The Court reaches this conclusion based on a fundamental distinction between this case and Mark H.. Throughout this lawsuit, Plaintiffs have challenged the implementation of Bryan's IEP.  In Mark H., however, the H. family contended that the design of their daughters' IEPs was

24

deficient.  See Mark H., 513 F.3d at 927.  In other words, this case focuses on the implementation phase of FAPE while Mark H. focused on the design phase of FAPE.  The Mark H. court explained for the first time that § 504 FAPE, unlike IDEA FAPE, includes a special design requirement.  See id. at 933 (citing 34 C.F.R. § 104.33(b)(1)) ("The most important differences are that, unlike FAPE under the IDEA, FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the 'design' of a child's educational program.").  The Mark H. court offered the H. family an opportunity to amend its complaint to assert which § 504 regulations involving the design phase had been violated and which support a privately enforceable cause of action.  Id. at 939.  At the same time, however, the Mark H. court noted that § 504 prohibits not only discrimination against the disabled, but also exclusion from participation in and denial of the benefits of state programs solely by reason of a disability.[15]  Id. at 937-938.

In this case, the parties, through their Settlement Agreement and at the hearing, have agreed that the comparative

---

[15] It would appear the Ninth Circuit in Mark H. did not rule on the § 504 statutory claim because the focus in that case was on the design phase, which is well-defined in the regulations; and the parties and the district court in Mark H. had erroneously assumed that a FAPE violation under the IDEA constituted a FAPE violation under § 504, so the Ninth Circuit gave the parties an opportunity to address the § 504 FAPE regulations.

needs of the design phase had been met.  Therefore, it would be
meaningless to require Plaintiffs to amend their complaint to
allege violations of the § 504 FAPE regulations pertaining to the
design phase.  Instead, the focus here is whether Bryan has been
excluded from participation in or denied the benefits of a free
appropriate public education solely by reason of his disability
during the implementation phase, such that his § 504 statutory
rights have been violated.  See 29 U.S.C. § 794(a).

        Long before Mark H., the Ninth Circuit recognized an
implied private right of action under § 504.  See Zolin, 812 F.2d
at 1106; see also Kling v. County of Los Angeles, 633 F.2d 876,
878 (9th Cir. 1980).  The Ninth Circuit has previously allowed
plaintiffs to bring causes of action based on special education-
related violations of § 504 without requiring specific reference
to the § 504 implementing regulations.  See Bird v. Lewis & Clark
College, 303 F.3d 1015, 1019, 1020-21 (9th Cir. 2002) (holding
that a paraplegic student's claims under § 504 and the Americans
with Disabilities Act ("ADA") fail because the college offered
"ample evidence of having accommodated [her] disability"); Wong
v. Regents of the Univ. of Cal., 192 F.3d 807, 816, 821 (9th Cir.
1999) (reversing a district court's grant of summary judgment
against a medical student who claimed that a medical school
failed to reasonably accommodate his disability in violation of §
504 and the ADA); Cf. Witte v. Clark County Sch. Dist., 197 F.3d

26

1271, 1272, 1276 (9th Cir. 1999) (holding that a disabled student could bring an action for money damages directly under § 504, among other claims, without first exhausting IDEA administrative remedies).[16]  In <u>Mark H.</u>, the court explicitly confirmed the existence of the private right of action under § 504.  <u>See Mark H.</u>, 513 F.3d at 930, 935.  This Court must conclude that in the aftermath of <u>Mark H.</u>, Plaintiffs may proceed directly under § 504.[17]

In asserting improper implementation of an IEP rather than improper design, the Court finds that Plaintiffs are more similar to the plaintiff in <u>Bird v. Lewis & Clark College</u>, 303 F.3d 1015 (9th Cir. 2002), than to the H. family.  In <u>Bird</u>, a

---

[16]  At the hearing on April 10, 2008, Defendant admitted that it could not reconcile the <u>Witte</u> decision with its position that Plaintiffs must assert a cause of action under the § 504 FAPE regulations.

[17] The Court further notes that given the test for determining whether a particular regulation is enforceable, it would be illogical to find, as Defendant urges, that Plaintiffs can no longer assert a statutory cause of action.  As the Ninth Circuit explained in <u>Mark H.</u>, "[f]or purposes of determining whether a particular regulation is ever enforceable through the implied right of action contained in a statute, the pertinent question is simply whether the regulation falls within the scope of the statute's prohibition."  <u>Id.</u> at 938.  In other words, the inquiry as to whether a regulation can be enforced begins and ends with the statute.  Thus, it would be incongruous to require a plaintiff to proceed under a regulation while blocking off the original path under the statute.  Likewise, as noted above, it would be illogical to require a plaintiff challenging the implementation of an IEP, agreed to by both parents and the school district, to proceed under regulations addressing the design phase of FAPE.

paraplegic student sued a college for disability discrimination
under § 504 and the ADA for failing to provide her with
wheelchair access on certain occasions during the college's
overseas program in Australia.[18]  Id. at 1019.  Before the trip,
the student was informed that she may not be able to participate
in certain activities but the program could otherwise accommodate
her, and that "adequate facilities would be available in most of
the outdoor trips."[19]  Id. at 1017.  The Bird court stated that
the student "does not prevail on the ADA or Rehab claim simply
because the College failed to provide her with wheelchair access
on a number of occasions . . . the central inquiry is whether the
program, 'when viewed in its entirety,' is readily accessible to
and usable by individuals with disabilities."  Id. at 1021
(quoting Barden v. City of Sacramento, 292 F.3d 1073, 1075-76
(9th Cir. 2002)).  The Ninth Circuit found that the college had
offered "ample evidence" of accommodating the student's
disability and that the student had enjoyed many benefits offered
by the program; thus, the district court did not err in denying
equitable relief.  Id.  Like the plaintiff in Bird, Plaintiffs

---

[18] Courts apply the same analysis under the Rehabilitation
Act and the ADA.  Zukle v. Regents of the Univ. of Cal., 166 F.3d
1041, 1045 n.11 (9th Cir. 1999).

[19] In one instance, at Stradbroke Island, the student had
been assured that her lodging would be wheelchair accessible.
Id. at 1018.  However, once she arrived, she found that "access
to her bedroom involved a stairway, and the doorway for the
stalls in the bathroom was too narrow for her wheelchair."  Id.

here contend that Bryan did not receive services that were
promised to him by a federally funded school.  Plaintiffs can
assert a cause of action directly under § 504, just like the
plaintiff in <u>Bird</u>.

It would seem obvious that parents and students who
have been subjected to violations of the § 504 implementation
phase - as opposed to the design phase - should be entitled to
some redress.  But when the Court asked counsel for Defendant
what remedy would be available, the only remedy that Defendant
could proffer at the hearing was that an IEP is a contract that
can be enforced through a breach of contract action.  Defendant
is mistaken.  In <u>Van Duyn v. Baker School District 5J</u>, 502 F.3d
811, 820 (9th Cir. 2007), the Ninth Circuit rejected a
plaintiff's argument that the terms of an IEP should be
interpreted under state contract law.  The court explained:

> First, the IEP is entirely a federal statutory
> creation, and courts have rejected efforts to frame
> challenges to IEPs as breach-of-contract claims.
> <u>See</u>, <u>e.g.</u>, <u>Ms. K. v. City of South Portland</u>, 407
> F.Supp.2d 290, 301 (D. Me. 2006) ("[A]n IEP is not
> a legally binding contract.").  Van Duyn offers no
> example of a court treating an IEP as a contract,
> nor have we been able to locate any. . . . An IEP is
> not a contract - but even if it were, we could not
> read into it additional terms the parties did not
> agree to include.

<u>Id.</u>  In a subsequent memorandum, counsel for Defendant proffered
that the remedy would be a contract action to enforce the July 1,

2002 Release and Settlement Agreement ("Settlement Agreement").[20]

Without addressing whether or not there would be any enforceable

contract remedy under the Settlement Agreement and the adequacy

of any such remedy, the Court notes that in virtually all § 504

cases the parties would not have entered into a settlement

agreement.  Defendant also proffered that the remedy could be

compensatory education under Robb, 308 F.3d at 1050.  That too

would be inadequate under the circumstances of this case where

there has been a prolonged series of administrative hearings and

lawsuits over a period of five years.  Thus, Defendant could not

suggest any remedy for situations in which the design phase of

FAPE is not properly implemented.  Nor has the Court found any

recourse other than under the § 504 statute itself and certain §

504 regulations that are not at issue in this case.  Cf. Mark H.,

513 F.3d at 935 ("[A]vailability of relief under the IDEA does

not limit the availability of a damages remedy under § 504 for

failure to provide the FAPE independently required by § 504 and

its implementing regulations."); see also id. at 938 n.14

(observing that certain § 504 regulations related to parental

---

[20] Plaintiffs included a breach of contract claim based on
the Settlement Agreement in their Verified Amended Complaint.
However, at the hearing on January 24, 2008, Plaintiffs' counsel
stated that Plaintiffs had withdrawn their breach of contract
claim.  See Hearing Transcript ("Hr'g Tr.") 16-19, January 24,
2008 ("There is no breach of contract claim.").  Plaintiffs did
not include a breach of contract claim in the Second Amended
Complaint.

notification and testing - namely 34 C.F.R. §§ 104.35 and 104.36
- "require adherence to certain procedures intended to facilitate
provision of a FAPE").

Therefore, the Court concludes that Plaintiffs have
sufficiently stated a claim under § 504 itself in the Second
Amended Complaint.[21]   The Court further finds that there are

---

[21] Defendant argues in the alternative that Plaintiffs
failed to plead an essential element of § 504, that Bryan was not
provided "evenhanded treatment" in relation to non-disabled
individuals.  See Motion at 13-17.  Defendant primarily relies
upon the Second Circuit's decision in P.C. v. McLaughlin, 913
F.2d 1033 (2d 1990), and suggests that the Second Circuit granted
summary judgment in favor of the defendant because the plaintiff
never addressed in its complaint the adequacy of services he was
provided in relation to non-disabled individuals.  Id. at 16.
Defendant misconstrues the holding in P.C..  The P.C. court
granted the defendant's motion for summary judgment because the
record was completely devoid of any evidence that discriminatory
animus prompted the treatment that the plaintiff received.  See
P.C., 913 F.2d at 1041-42.  Moreover, the P.C. court found that
there was no proof "to suggest that more suitable accommodations
were available and not offered to" the plaintiff.  Id. at 1042.
Therefore, this Court finds that P.C. does not support
Defendant's argument.
     The Court further notes that the question of
"evenhanded treatment" is addressed in the design phase of § 504
FAPE.  Here, the parties agreed through their Settlement
Agreement that the design phase of § 504 FAPE was satisfied.  The
parties surely considered any § 504 requirement of "evenhanded
treatment" when determining Bryan's entitlement to services under
the Settlement Agreement.  See Settlement Agreement at 2,
attached to Second Am. Compl. as Ex. A ("The Bonds alleged that
the State breached federal regulations by, among other things,
failing to implement the terms of the Stipulation, failing to
provide a free and appropriate public education to Bryan under
the [IDEA], and violating Section 504 of the Rehabilitation
Act.").  Even if the parties had not entered into a Settlement
Agreement or agreed that Bryan's IEP was properly designed, the
Court would find that under the liberal federal pleading
standards, Plaintiffs' allegations are sufficient to show that
Bryan was treated differently than non-disabled children in the

genuine issues of material fact as to whether Defendant acted

with deliberate indifference in excluding Bryan from

participation in, denying him the benefits of, or subjecting him

to discrimination in his public education solely based on his

disability.  See 29 U.S.C. § 729; Lovell v. Chandler, 303 F.3d

1039, 1056 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d

1124, 1138 (9th Cir. 2001).  Accordingly, the Court denies

Defendant's motion to dismiss and denies summary judgment on

Plaintiffs' underlying § 504 claim.

## II.  Summary Judgment on the Design Phase of FAPE

Although the Court finds that Plaintiffs' underlying §

504 claim survives, the Court nevertheless addresses Defendant's

alternative request for summary judgment on the narrow issue of

whether Bryan's IEP satisfied the design phase of FAPE.  As noted

above, the parties agree that Bryan's IEP was properly designed.

See Motion CSF ¶ 4; Opposition CSF ¶ 4.  Defendant further

asserts that "Plaintiffs do not allege that the DOE failed to

meet its comparative obligation by failing to design Bryan Wiles-

Bond's educational program to meet his needs as adequately as the

needs of non-disabled children are met."  See Motion CSF ¶ 3.  At

the hearing on April 10, 2008, Plaintiffs' counsel conceded that

_____

Hawaii school system.  See Second Am. Compl. ¶ 41 ("Defendant has
violated [§ 504] and acted with deliberate indifference by
failing to provide or otherwise prohibiting meaningful access for
Bryan to public education, without limitation.").

32

Bryan's IEP was designed to meet his needs as adequately as the
needs of non-handicapped children are met and that Defendant is
entitled to summary judgment on the design phase of FAPE.[22]

   Therefore, the Court concludes that there are no
genuine issues of material fact regarding the design of Bryan's
IEP.  The Court finds that Defendant satisfied the design phase
of the § 504 FAPE requirement specified in 34 C.F.R.
104.33(b)(1)(i).  As noted above, however, Plaintiffs can still
offer evidence regarding any failures to implement Bryan's IEP
when attempting to demonstrate that Bryan was denied "meaningful
access" to public education solely based on his disability.[23]

---

[22] The following exchange took place between Plaintiffs'
counsel and the Court:

> THE COURT: So, you do agree that the IEP . . . for
> Bryan was designed to meet his needs as adequately
> as the needs of non-handicapped children are met?
> MR. VARADY: That is correct.
> THE COURT: And you agree that the needs of the non-
> handicapped children in Hawaii are adequately met?
> . . .
> MR. VARADY: We do, yes.
> . . .
> THE COURT: So you agree that the design phase for
> Bryan's FAPE was satisfactorily met?
> MR. VARADY: That is correct.  And what we're
> challenging here is the denial of meaningful access
> to public education by the failure of the DOE to
> implement that program.
> THE COURT: So, you agree that the defendants are
> entitled to summary judgment on the design phase?
> . . .
> MR. VARADY: Yes.

See Hr'g Tr. 29-30, April 10, 2008.

[23] As an aside, the Court is not persuaded by Plaintiffs'
argument in the Opposition and Opposition CSF that by citing to

## III.  **Administrative Exhaustion of § 504 Retaliation Claim**

Defendant asks this Court to dismiss Plaintiffs' § 504
retaliation claim for failure to exhaust administrative
remedies.[24]  Defendant acknowledges that over a span of some five
years, Plaintiffs have received three favorable administrative
orders and one federal court order obligating the DOE to provide
services to Bryan that were required by his IEP.  Nevertheless,
Defendant contends – and Plaintiffs do not dispute – that
Plaintiffs' § 504 retaliation claim in particular was never
raised during the IDEA administrative proceedings.  See Motion
CSF ¶ 7; Opposition CSF ¶ 7.

The IDEA sets out several administrative procedures
that must be completed prior to filing a lawsuit.  Under the
IDEA, parents of a disabled child may present a complaint about
any matter relating to the child's "identification, evaluation, .
. . placement," or free appropriate public education to the state
educational agency.  See 20 U.S.C. § 1415(b)(6)(A).  If the
complaint is not resolved, the parents may request an impartial
due process hearing conducted by the state or local educational

---

the Second Amended Complaint in the Motion CSF, Defendant is
accepting all of the facts in the Complaint as undisputed.  See
Opposition at 9; Opposition CSF ¶ 1; Objections ¶ 1.

[24] As discussed infra, the Court has already ruled that
since Plaintiffs did exhaust their IDEA claims in administrative
proceedings pursuant to Mark H., the underlying § 504 claim need
not be further addressed administratively.  See January 2008
Order at 2.

agency.  See id. § 1415(f).  After completing the administrative

process, the IDEA permits aggrieved parties who are dissatisfied

with the outcome to "bring a civil action with respect to the

complaint presented [to the educational agency]," either in state

court or in federal district court.  See id. § 1415(i)(2)(A); see

also Witte, 197 F.3d at 1274.  The purpose of the IDEA's

administrative exhaustion requirement is to "ensure that

educational agencies have the first opportunities to remedy

shortcomings in their educational programs for disabled

students."  Blanchard v. Morton Sch. Dist., 420 F.3d 918, 921

(9th Cir. 2005).  Moreover, administrative exhaustion allows

educational disputes to be resolved more efficiently and more

expeditiously to minimize disruption to a child's education.  Cf.

Crocker v. Tenn. Secondary Sch. Athletic Assoc., 873 F.2d 933,

935 (6th Cir. 1989) (noting that administrative exhaustion

effectuates the fundamental IDEA policy of collaboration between

parents and the state on educational programs, and promotes the

state and federal interest in efficient enforcement of the IDEA).

"Parents and disabled children may seek relief for

education-related injuries under federal laws other than the

IDEA."  Kutasi v. Las Virgenes Unified Sch. Dist., 494 F.3d 1162,

1167 (9th Cir. 2007).  However, § 1415(l) of the IDEA provides:

> Nothing in this chapter shall be construed to
> restrict or limit the rights, procedures, and
> remedies available under the Constitution, the
> Americans with Disabilities Act of 1990 [42 U.S.C.A.

> § 12101 et seq.], title V of the Rehabilitation Act
> of 1973 [29 U.S.C.A. § 791 et seq.], or other
> Federal laws protecting the rights of children with
> disabilities, except that before the filing of a
> civil action under such laws seeking relief that is
> also available under this subchapter, the procedures
> under subsections (f) and (g) of this section shall
> be exhausted to the same extent as would be required
> had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Thus, a plaintiff who brings a lawsuit

under another statute but seeks "relief that is also available

under" the IDEA must first exhaust IDEA administrative remedies.

See Blanchard, 420 F.3d at 921.

Defendant argues that Plaintiffs did not satisfy the

IDEA's exhaustion requirement because they never specifically

raised their § 504 retaliation claim during the administrative

proceedings.[25]  Plaintiffs contend that further exhaustion of

their § 504 retaliation claim is not required based on a plain

reading of the statute and Ninth Circuit precedent.  See

Opposition at 21 n.4.  The Court agrees with Plaintiffs for

several reasons.

First, the Mark H. decision suggests, albeit

_____

[25] Plaintiffs respond by stating that the retaliation claim
was already "reviewed and approved by the Court," citing the
November 2007 Order.  See Opposition at 14.  This argument fails,
as the issue of administrative exhaustion was not before Judge
Gillmor at that time.  Plaintiffs further respond in a footnote
by stating that the Court already rejected Defendant's
administrative exhaustion argument.  See Opposition at 21 n.4.
Plaintiffs appear to be referring to the January 2008 Order.
However, the Court notes that at that time the focus was only on
Plaintiffs' underlying § 504 claim.  See January 2008 Order at 2.

cryptically, that presenting IDEA violations during the IDEA
administrative process is sufficient to satisfy the exhaustion
requirement with respect to § 504 claims.  In Mark H., the
plaintiffs alleged violations of § 504 and the IDEA at the
administrative level but the administrative officer only
addressed the IDEA violations in his ruling.  See 513 F.3d at 928
n.3.  The court stated in a footnote:

> Because the § 504 FAPE requirement differs from the
> IDEA FAPE requirement, it is not clear how the
> exhaustion provision of § 1415(l) applies to suits
> for damages for failure to provide a § 504 FAPE.  We
> need not reach this issue, because the H. family did
> exhaust the IDEA administrative remedies.

Mark H., 513 F.3d at 935 n.11.  Although this footnote is
somewhat unclear, it indicates that asserting IDEA violations at
the administrative level is sufficient to satisfy the exhaustion
requirement with respect to claims under § 504, including
retaliation.[26]  Moreover, it would be nonsensical to send the

_____

[26] Defendant urges this Court to follow two non-binding
cases: M.T.V. v. Dekalb County School District, 446 F.3d 1153
(11th Cir. 2006) and Sarah Z. V. Menlo Park School District, No.
06-4098, 2007 WL 1574569 (N.D. Cal. May 30, 2007).  The Court
declines.  In M.T.V., the court held that plaintiffs who went
through the IDEA administrative process but failed to
specifically raise their retaliation claim were required to
further exhaust their administrative remedies as to that claim.
M.T.V., 446 F.3d at 1158-59.  Likewise, in Sarah Z., the court
found that a plaintiff had not exhausted her administrative
remedies with respect to her retaliation claim, even though she
had raised four other issues at a due process hearing.  Sarah Z.,
2007 WL 1574569 at *5-6.  The Court does not believe that this
reasoning has been adopted by the Ninth Circuit, especially in
light of the footnote in Mark H., discussed above, and the
circumstances in this case, where there were three administrative

retaliation claim back to the administrative level if, as <u>Mark H.</u> suggests and this Court has ruled, the exhaustion requirement has been satisfied for the underlying § 504 claim.  Such administrative review of the retaliation claim would involve virtually the same considerations as a review of the underlying § 504 claim, which <u>Mark H.</u> ruled is not required where there has been an IDEA administrative review.  Administrative review of the underlying § 504 claim would be exponentially more helpful to this Court's analysis.

_____

rulings and one court ruling in favor of Plaintiffs, and where further exhaustion would be futile, as more fully discussed <u>infra</u>.

       Furthermore, the Court has carefully considered the application of <u>Kutasi</u> to the instant case.  In <u>Kutasi</u>, the plaintiff parents filed a lawsuit under § 504 and 42 U.S.C. § 1983 alleging that a school district had "engaged in a pattern and practice of retaliatory and discriminatory actions against" them and their son.  <u>See</u> 494 F.3d at 1164.  After the complaint was filed, the school district requested an administrative hearing to determine the adequacy of a proposed IEP for the son. <u>Id.</u> at 1166-67.  In <u>Kutasi</u>, no prior administrative due process hearing had been requested regarding the student's disputed IEP, and the district court dismissed the suit while the administrative hearing was still pending.  <u>Id.</u> at 1165-66.  The Ninth Circuit held that the plaintiffs were required to exhaust their administrative remedies regarding the issues raised in their complaint because their injuries could be redressed to some degree by the IDEA.  <u>Id.</u> at 1166, 1170.  In the instant case, Plaintiffs' allegations of retaliation and discrimination are somewhat similar to the allegations in <u>Kutasi</u>.  Unlike the plaintiffs in <u>Kutasi</u>, however, Plaintiffs had already received three favorable administrative rulings attempting to resolve their educational concerns over the course of five years prior to filing this lawsuit.  Moreover, the Court reiterates that subsequently in <u>Mark H.</u>, the Ninth Circuit ruled that administrative review of IDEA claims sufficed for administrative review of § 504 claims.  <u>See Mark H.</u>, 513 F.3d at 935 n.11.

38

Moreover, Plaintiffs have unquestionably availed themselves of the administrative procedures in the IDEA.  Indeed, § 1415(l) simply states that plaintiffs who are seeking relief that is also available under the IDEA must first go through the IDEA administrative proceedings.  See 20 U.S.C. § 1415(l).  Defendant analogizes this case to Robb and Charlie F..  In those cases, however, the plaintiffs were trying to bypass the administrative process entirely.  See Robb, 308 F.3d at 1049; Charlie F., 98 F.3d at 991.  That is not the case here; Plaintiffs have participated in two administrative hearings and requested a third, which resulted in Defendant stipulating to liability.  Over a period of some five years, Plaintiffs have received three administrative decisions and one district court ruling ordering Defendant to provide the services and skills trainers mandated by Bryan's IEPs.  Plaintiffs also entered into a Settlement Agreement with Defendant.  See December 2006 Order at 7-10.  From 2001 through 2004, Plaintiffs clearly attempted to resolve all educational issues at the administrative level before resorting to filing this lawsuit.  Cf. Witte, 197 F.3d 1275 (finding that plaintiffs alleging violations of § 504 were not seeking relief that was available under the IDEA because they were only seeking monetary damages and the parties had resolved all of the educational issues).

Even if Plaintiffs were required to specifically raise

39

their retaliation claim at the administrative level, the Court is
not convinced that Plaintiffs' injuries "could be redressed to
any degree by the IDEA's administrative procedures and remedies"
at this late stage in the litigation.  See Robb, 308 F.3d at
1050.  Plaintiffs have clarified that they are only seeking
monetary damages under § 504.[27]  See December 2006 Order at 14.
Although Plaintiffs cannot avoid the IDEA's exhaustion
requirement simply by limiting their prayer for relief to money
damages, see Robb, 308 F.3d at 1049, the Court questions what
kind of relief an administrative officer could provide to these
Plaintiffs.  They have already sought and received three
administrative orders and a court judgment ordering Defendant to
provide Bryan with the services he required.  Plaintiffs'
retaliation allegations appear to stem from Defendant's alleged
mishandling of Bryan's educational program, just like the
allegations supporting their underlying § 504 claim.  The Court
must question: what kind of relief could the IDEA now provide
that Plaintiffs were not already offered in 2004, prior to filing

---

[27] The Court observes that in the Second Amended Complaint,
Plaintiffs request a "declaratory judgment in favor of Plaintiffs
and against Defendant that Defendant has exacerbated Bryan's
condition to such an extent as to make institutionalization or an
assisted living setting which are the only real alternatives for
Plaintiffs."  See Second Am. Compl. ¶ C.  At the hearing on April
10, 2008, Plaintiffs accepted that they are bound by the December
2006 Order, in which the Court confirmed that Plaintiffs were
only seeking monetary damages.  See Hr'g Tr. 45-46, April 10,
2008.  Therefore, the Court will not consider Plaintiffs' request
for a declaratory judgment.

this lawsuit?  If administrative exhaustion is intended to give

educational agencies the first opportunity to rectify

shortcomings in educational programs, see Blanchard, 420 F.3d at

921, and to resolve educational conflicts more quickly and

efficiently, see Crocker, 873 F.2d at 935, the Court stresses

that the DOE had several opportunities to fix any deficiencies in

the implementation of Bryan's educational program.[28]  Monetary

relief is the only proper redress for Plaintiffs' injuries at

this late stage in the litigation.

Finally, the Court finds that even if Plaintiffs were

required to exhaust their retaliation claim in particular,

further exhaustion would be both futile and inadequate.  See

Honig v. Doe, 484 U.S. 305, 327 (1988) (noting that "parents may

bypass the administrative process where exhaustion would be

futile or inadequate"); see also Hoeft, 967 F.2d at 1303 ("Courts

universally recognize that parents need not exhaust the

procedures set forth in 20 U.S.C. § 1415 where resort to the

administrative process would be either futile or inadequate.").

The Court finds that further exhaustion would "serve no useful

---

[28] Given that the purpose of administrative exhaustion is to
allow educational agencies the first chance to resolve issues
related to educational programs, see Blanchard, 420 F.3d at 921,
and to resolve educational conflicts more quickly and
efficiently, see Crocker, 873 F.2d at 935, it would seem that the
exhaustion requirement should be less rigid where, as here, the
parents have participated in more than one administrative hearing
to correct problems with the child's educational program over the
course of several years.

41

purpose" in this case.  See Hoeft, 967 F.2d at 1303.  As noted above, the Court is not convinced that an administrative officer would be able to provide Plaintiffs with an adequate remedy, given that over a five-year period Plaintiffs have already received three administrative rulings and a court order in their favor.  Moreover, as a practical matter, Plaintiffs have relocated to the Mainland.[29]  Under the special circumstances of this case, the Court cannot justify sending Plaintiffs back to the administrative level to address their retaliation claim when the record reflects at least five long years of administrative proceedings and litigation.

Accordingly, the Court denies Defendant's motion to dismiss and denies summary judgment on Plaintiffs' § 504 retaliation claim for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES Defendant's motion to dismiss and DENIES summary judgment on Plaintiffs' underlying § 504 claim;

(2) GRANTS summary judgment to Defendant on the narrow issue of whether Bryan's IEP was properly designed in accordance with 34 C.F.R. § 104.33(b)(1)(i); and

(3) DENIES Defendant's motion to dismiss and DENIES

---

[29] The Court is not suggesting that Plaintiffs should necessarily benefit from having left Hawaii; and such relocation occurred some months after this suit was filed.

42

summary judgment on Plaintiffs' § 504 retaliation claim for

failure to exhaust administrative remedies.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 29, 2008.



_____
Alan C. Kay
Sr. United States District Judge

<u>Wiles v. Dep't of Educ.</u>, Civ. Nos. 04-00442; 05-00247 ACK-BMK, Order Denying
in Part and Granting in Part Defendant's Amended Motion to Dismiss or in the
Alternative for Summary Judgment on Second Amended Complaint Filed on February
13, 2008.

43