OF COUNSEL:
DAVIS LEVIN LIVINGSTON
STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON   4161-0
400 Davis Levin Livingston Place
851 Fort Street
Honolulu, Hawaii 96813
Telephone: (808) 524-7500 Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

CARL M. VARADY
ASB Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawai'i 96813
Telephone: (808) 523-8447 Fax: (808) 523-8448
E-mail: carl@varadylaw.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>        Plaintiffs,<br>  vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>        Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br>**PLAINTIFFS' FINAL PRE-TRIAL STATEMENT; EXHIBITS "1" – "2" AND CERTIFICATE OF SERVICE**<br><br>**PRE-TRIAL CONFERENCE:**<br>**DATE:   September 3, 2008**<br>**TIME:   10:00 a.m.**<br>**JUDGE:  Alan C. Kay**<br>**TRIAL:  September 9, 2008** |

## PLAINTIFFS' FINAL PRE-TRIAL STATEMENT

## I.    PARTIES

Plaintiffs above-named, by and through their counsel, DAVIS LEVIN LIVINGSTON and the LAW OFFICES OF CARL M. VARADY, hereby submit their final pre-trial statement pursuant to Rule 16.6 of the Local Rules of Practice for the United States District Court for the District of Hawaii.

## II.    JURISDICTION AND VENUE

This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 which afford original jurisdiction of actions arising from federal questions under the Constitution or laws of the United States, including the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e) ("IDEA"), the Rehabilitation Act of 1973, 29 U.S.C. § 729 ("Section 504"), and 42 U.S.C. § 1983.

## III.    SUBSTANCE OF ACTION

This case is brought on behalf of Bryan Wiles-Bond ("Bryan"), a severely autistic boy who now is 15 years old and his parents.  Bryan was born on October 28, 1991, is the youngest child of Ann Kimball Wiles and Stanley Bond.  At age 2, Bryan was diagnosed with pervasive developmental delay and hyperactivity and, at age five or six, he was identified as being autistic.

When Bryan and his family came to Hawaii in 1999, Bryan was about seven years old.  The family moved to Hawaii with the intent of making it their

permanent home.  Ann Kimball Wiles ("Kim"), Bryan's mother, worked as a vice-principal for the Hawaii Department of Education.  Stanley Bond, Bryan's father, was employed by the United States Department of the Interior managing Kaloko-Honokohau National Historic Park, where he worked to restore stone structures, including a fish pond, with traditional Hawaiian building methods.

Bryan first attended Kahakai Elementary (Kahakai) in 1999.  It was clear from the outset that Kahakai staff were not willing or able to implement Bryan's program.  After the futility of trying to have Bryan educated at Kahakai became evident, Bryan's parents agreed to transfer Bryan to Waikaloa Elementary School (Waikaloa), at the DOE's suggestion, and were hopeful that a more willing staff would implement his program there with greater success.  Waikoloa personnel proposed a unilateral move back to Kahakai after Bryan had been at Waikoloa for only two months.  Bryan did move back to Kahakai for a few months at the start of the 2000-2001 school year.  Subsequently, as a result of Kahakai's continued inability to implement his program, Bryan's parents enrolled him at a third elementary school, Kealakekua Elementary (Kealakekua) for the next several years.

From that time until they left Hawaii in 2005, Bryan and his parents assert that the DOE indisputably and repeatedly failed to provide the services that the DOE knew were required by statute, decision and agreement.

Based on the existing record, there is no dispute that the DOE knew what services Bryan's IEPs, the due process orders, and the settlement agreements required. It is equally undisputed that, in the face of the DOE's continued and knowing failure to train an adequate number of skills trainers on the Big Island, Bryan regressed from a child who was partially toilet-trained and beginning to communicate, to a child who not only could no longer use the toilet properly or communicate with his family and teachers. He became aggressive and began to use his toileting "accidents" to self-stimulate and express his frustration.

The final straw for the family was when Bryan began middle school in the Fall of 2004. The DOE had promised Judge Gillmor, at a TRO hearing in August 2004, that it would implement Bryan's program and retain a consultant on the Mainland to assist with this implementation. When Bryan's mother went to his school to observe the new-and-improved middle school program, she found him sliding around on the floor in a puddle of his own urine, self-stimulating, while isolated in a portable classroom. The teacher told Kim: "We just don't know what to do." The Skills Trainer assigned to Bryan commented: "He looks so happy." That day, his parents took Bryan out of school for obvious safety and other concerns.

Even though promising Judge Gillmor they would do so, the DOE never provided Bryan with the services that were mandated and which it repeatedly and

specifically promised to provide.  Ultimately, Bryan and his family moved to California where he now receives services that, while not ideal, are permitting him to make progress toward a more independent and self-regulated life.  Nevertheless, there is no dispute that Bryan has lost time and opportunities to develop language, social and self-care skills that will be costly and time consuming and will never be able to overcome the time lost in Hawaii.

In this case, Bryan and his parents seek compensation commensurate with the services needed to repair harms caused Bryan.  They will also seek compensation for the pain and suffering Bryan and his parents experienced as a result of the DOE's knowing refusal to do what Congress, this Court, Hearings Officers, and the DOE's own promises mandated.  The DOE's failure to provide services that would meet Bryan's needs and avoid the awful consequences – regression to a state that brought Bryan to the brink of institutionalization.  Ann Kimball Wiles and Stanley Bond also seek compensation for Defendants' retaliatory acts in violation of Section 504 and its implementing regulations, 28 C.F.R. §42.503(b)(1)(vii), causing them extreme emotional and physical distress and economic harm in response to their advocacy for Bryan's special education and related services, with the intent of forcing the family to move to the mainland, over the period from 1999 until 2005.

The undisputed record in this case demonstrates that for five years, the DOE knew it was obligated to provide services to Bryan under IEPs, hearing officer's decisions, settlement agreements and court orders, yet the DOE chose to do nothing to create an adequate supply of properly trained teachers, skills trainers, and other service providers. For five years, Bryan and his family suffered the consequences of this decision daily and are living with those consequences today.

This is an action for money damages for the violation of Section 504 for Defendants' knowing failure to provide services mandated by Bryan's IEP, settlement agreements and decisions, over a period of five years and after having agreed to do so at least five separate times.

**IV.**  **UNDISPUTED FACTS**

1) The authenticity of documents;

2) In the five years Bryan was in Hawaii and enrolled at Hawaii public schools, the DOE never fully implemented his IEP;

3) The fact that the DOE held due process hearings that resulted in decisions in May, 2001, May, 2004, and July, 2004;

4) The parties agreed to the IEPs from 2000-2004;

5) The parties are bound by the Decision and Order dated May 21, 2001;

6) The plaintiffs' filed an enforcement Complaint filed February 15, 2002;

7)    The parties entered into a Release and Settlement Agreement dated July 1, 2002;

8)    The parties were bound by Findings of Fact, Conclusions of Law and Decision filed May 11, 2004;

9)    The parties were bound by Findings of Fact, Conclusions of Law and Decision filed July 23, 2004;

10)   The authenticity of all correspondence involving the parties and their agents;

11)   Bryan was eligible at all times for special education and related services under IDEA;

12)   Between 2000 and 2005, Bryan regressed in his behaviors and his toileting;

13)   The DOE had a legal duty to provide all of the services set forth in the IEP;

14)   In 2004, the DOE retained Dr. Kim Smalley to write and assess Bryan's behaviors and write a functional behavioral assessment, behavioral support plan and toileting plan;

15)   The DOE knew about the severe shortage of skills trainers in 1999;

16)   The DOE never had a training program to train skills trainers;

17)   The DOE was provided with the private e-mails of Kim Wiles and

Christy Edwards, e-mails that asserted Ms. Edwards was being investigated for improper and unlawful activity on Kwajalein and Ms. Edward's paypal account number;

18) Bryan learned aggression, and other negative behaviors while in the custody and control of Defendants;

19) Bryan's entire toileting plan was disrupted and blocked by the actions and inactions of Defendants;

20) May 11, 2004 Decision: "From October 2003 to February 2004: 1) The DOE repeatedly failed to provide the skills trainer services required by Bryan's November 18, 2002, November 25, 2003 and January 9, 2004 IEPs; 2) The DOE failed to ensure that trained skills trainers were hired and available to provide services to Bryan; and 3) The DOE failed to provide skills trainers who could communicate with Bryan using [American Sign Language]." and

21) July 23, 2004 Decisions: "The DOE failed to provide Bryan "with a qualified special education teacher who has experience teaching autistic children and is proficient in [American Sign Language] during the [Extended School Year] period."

## V.  DISPUTED FACTUAL ISSUES

### A.  LIABILITY

1) Whether the defendants knew of Bryan's needs and did not provide the services needed to address them;

2) Bryan's parents were uncooperative, maintained an unsanitary home and improperly confined Bryan;

3) The personnel provided by the DOE to implement Bryan's program were properly trained to meet the requirements of his IEPs, hearing officer decisions, court orders and settlement agreements;

4) The DOE did not retaliate against Bryan's parents;

5) The DOE's actions did not constitute deliberate indifference;

### B.  DAMAGES (POSITIONS TAKEN BY THE DOE)

1) Defendants did not harm Bryan or his parents;

2) Bryan was so disabled he could not make progress;

3) Bryan and his parents have recovered from any harm caused by the DOE.

## VI.  RELIEF PRAYED

A. Declare that Defendant DOE has violated Plaintiffs' rights;

B. Declare that Defendant DOE is liable to the Plaintiffs for special and compensatory damages;

C.    Enter judgment against Defendants and in favor of Plaintiffs for an amount of money that will properly and justly compensate Plaintiffs for the $2,000,000 in economic and $4,000,000 in non-economic damages caused by Defendants conduct herein;

D.    Award the costs of prosecuting this case for the Plaintiffs, including but not limited to an award of attorneys' fees.

## VII.  POINTS OF LAW

The following legal issues may be in dispute:

Whether the acts and failure were done with the deliberate indifference by the DOE; and whether the State of Hawaii retaliated against the Plaintiffs;

The DOE has repeatedly been informed of the need to hire and train an adequate number of skills trainers to provide services to autistic children like Bryan.  The DOE has intentionally or with deliberate indifference failed to take necessary action to prevent damage to Bryan resulting from the lack of trained and consistent skills trainers.

Liability of Defendant for its actions and inactions regarding Bryan will be determined by whether those actions and inactions constitute "deliberate indifference" to known risks of harm. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  Deliberate indifference requires "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that

likelihood." 260 F.3d at 1139, *citing City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1988).

The public entity "is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Id.* Section 504 creates "a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." *Id.*, citing *Wong v. Regents of University of California*, 192 F.3d 807, 818 (9th Cir. 1999). The DOE cannot discharge its legal duty to "act" on Bryan's behalf, by merely proffering just any accommodation. *Id.* Rather, it must consider Bryan's particular needs when investigating what accommodations are reasonable. *Id.* See also, 28 C.F.R. §35.160(b)(2) (establishing a regulatory mandate to "give primary consideration to the requests of the individual with disabilities"). In this case, there is no question that: (1) the DOE had full knowledge of Bryan's needs and federally protected rights; and (2) that the DOE did not fulfill its known obligations to provide Bryan the particularized services required to fulfill his individual needs, as set forth in his IEPs, hearing orders, this Court's Orders and the DOE's own settlement agreements.

From the amended complaint at paragraph 48: As a direct result of their advocacy for their son's special education and related services over the period from 1999-2005, Bryan's parents Ann Kimball Wiles and Stanley Bond have been

subjected to a retaliatory conduct by Defendants that has caused them emotional, psychological and physical harm for which they are eligible for compensation under the Rehabilitation Act and its implementing regulations.

As targets of retaliation, Bryan's parents have actions for general damages in their own right.  The remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d et seq.] shall be available to <u>any person aggrieved</u> by any act or failure to act by any recipient of Federal assistance of Federal provider of such assistance under section 794 of [the Rehabilitation Act] 29 U.S.C. §794a(a)(2).  *See e.g.*, *Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004)(sustaining award of $500,000 in non-economic damages for retaliation against teacher who advocated for disabled students; accord *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138 (2d Cir. 2002)(and cases cited therein acknowledging cause of action on behalf of parents claiming retaliation for seeking educational services for disabled child); *Alex G. v. Bd. of Trs.*, 387 F. Supp. 2d 1119 (D. Cal. 2005)(adopting *Weixel*'s analytical framework); *K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. Lexis 24860 (D. Cal. 2007)(same).

Plaintiffs' post-*Mark H.* Second Amended Complaint [Filed February 13, 2008, sets forth claims directly under Section 504, asserting that Bryan was denied meaningful access to public education as a result of Defendant's deliberate indifference.  *Mark H.* expressly noted: "It has long been established that § 504

contains an implied private right of action for damages to enforce its provisions." 2008 U.S. App. LEXIS 987 at *33, *citing, Greater L.A. Council on Deafness v. Zolin, Inc.* 812 F.2d 1103, 1107 (9th Cir. 1987). On April 29, 2008, the court agreed, denying Defendant's motion to dismiss or in the alternative for summary judgment on the claims stated in the Second Amended Complaint.

Additionally, in its April 29, 2008, order, the Court ruled that the parents' claims for retaliation were properly stated in the Second Amended Complaint.

## VII.  **PREVIOUS MOTIONS**

Both parties have filed Motions for Summary Judgment and have been denied and granted in part and other motions listed as follows:

1.  Defendants' Motion for Summary Judgment filed on February 24, 2006, construed as a Motion for Judgment on the Pleadings, is denied.

2.  Plaintiffs' Motion for Partial Summary Judgment filed on February 22, 2006, is denied.

3.  Plaintiffs' Motion to Enforce the Doctrine of Issue Preclusion Regarding All Administrative Hearing Decisions and the Settlement Agreement filed on April 24, 2006, is granted in part and denied in part.

4.  Plaintiffs' Motion to Strike Declarations for Non-Compliance with Rule 56(e) filed on March 17, 2006, is denied.

5.     Plaintiffs' Motion to Amend and/or Supplement the Record filed on August 17, 2006, is denied.

6.     On September 17, 2007, the Court entered a Minute Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment as to Plaintiffs Ann Kimball Wiles and Dr. Stanley Bond's Individual Claims for Non-Economic Damages.

7.     On November 13, 2007, the Court issued an Order Granting Plaintiffs' Motion to Amend their Complaint to Include an Express Claim for Non-Economic Damages for Retaliation.

8.     On November 13, 2007, the case was reassigned to the Honorable Alan C. Kay, United States District Judge.

9.     On November 20, 2007, Plaintiffs filed a First Amended Complaint.

10.     On January 17, 2008, the United States Court of Appeals for the Ninth Circuit issued its decision in *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008).

11.     On January 18, 2008, the District Court held a hearing to discuss the impact of the Ninth Circuit's decision in *Mark H. v. Lemahieu*.

12.     On January 22, 2008, the parties filed Memoranda to the Court Regarding *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008).

13.    On January 24, 2008, the District Court held a further hearing after the parties filed their written briefs.

14.    On January 24, 2008, the Court issued an Order Denying Defendant's Request to Dismiss for Failure to Pursue Administrative Remedies, Granting Defendant's Request to Continue Trial, and Granting Leave to Plaintiffs to Amend their Complaint.

15.    On February 13, 2008, Plaintiffs filed a Second Amended Complaint.

16.    On February 28, 2008, Defendant filed a Motion to Dismiss Second Amended Complaint.

17.    On March 12, 2008, Defendant filed an Amended Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint.

18.    On March 19, 2008, Defendant filed a Concise Statement in Support of Amended Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint.

19.    On March 27, 2008, Plaintiffs filed a Memorandum in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment on the Second Amended Complaint.  Plaintiffs also filed a Concise Statement in Opposition to Defendant's Motion to Dismiss or

in the Alternative for Summary Judgment on the Second Amended Complaint.

20. On March 31, 2008 Defendants filed a Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment on the Second Amended Complaint.

21. On April 10, 2008, the Court held a hearing on the Amended Motion to Dismiss or in the Alternative for Summary Judgment on Second Amended Complaint.

22. On April 29, 2008, the District Court issued its Order Denying in Part and Granting in Part Defendant's Amended Motion to Dismiss or in the Alternative For Summary Judgment on Second Amended Complaint. Specifically, the District Court denied Defendant's Motion to Dismiss and denied Summary Judgment on Plaintiffs' underlying retaliation claim; granted summary judgment to Defendant on the narrow issue of whether Bryan's IEP was properly designed in accordance with 34 C.F.R. § 104.33(b)(1)(i); and denied Defendant's Motion to Dismiss and denied Summary Judgment on Plaintiffs' Section 504 retaliation. *Wiles et. al., v. DOE*, 555 F.Supp.2d 1143, 1157 (D. Haw. 2008)

23.     The District Court, finding that Plaintiffs have "unquestionably availed themselves" of the procedures in the IDEA, held that further exhaustion of Plaintiffs' Section 504 retaliation claim is not required based on a plain reading of the statute and Ninth Circuit precedent.

24.     A pretrial conference before the Honorable Barry M. Kurren, United States Magistrate Judge was set for July 14, 2008.

25.     Kenneth S. Robbins of Robbins & Associates filed his appearance on August 8, 2008; the Motion to Continue Trial was filed on August 8, 2008; the hearing on the Motion to Continue Trial was heard on August 20; and the motion was denied.

26.     A final pretrial conference is set for September 3, 2008 before the Honorable Alan C. Kay, United States District Judge.

27.     Jury selection and trial are set to begin on September 9, 2008.

## IX.    WITNESSES TO BE CALLED

1.      Dr. Kimberly Smalley
        c/o Behavioral Counseling and Research Center LLC
        575 Cooke Street, Suite A-1622
        Honolulu, HI 96813
        (808) 254-0909

Dr. Smalley will provide testimony regarding all issues of liability and damages.  She will describe the relevant events that took place during the period August 1999 through the present.

     2.     Ann Kimball Wiles
              c/o Davis Levin Livingston
              400 Davis Levin Livingston Place
              851 Fort Street
              Honolulu, HI 96813

Mrs. Wiles will provide testimony regarding all issues of liability and damages. She will describe the relevant events that took place during the period August 1999 through the present.

     3.     Stanley Bond
              c/o Davis Levin Livingston
              400 Davis Levin Livingston Place
              851 Fort Street
              Honolulu, HI 96813

Mr. Bond will provide testimony regarding all issues of liability and damages. He will describe the relevant events that took place during the period August 1999 through the present.

     4.     Dru Copeland
              c/o Alakai Na Keiki
              1100 Alakea Street, Suite 900
              Honolulu, HI 96813

Dru Copeland will provide testimony regarding all issues of liability and damages. She will describe the relevant events that took place during the period August 1999 through the present.

     5.     Daniel V. LeGoff, Ph.D.
              Child and Adolescent Resources for Education
              105 South Princeton Avenue
              Wenonah, NJ 08090
              (856) 616-6466

Dr. LeGoff will provide expert testimony regarding all issues of liability and damages. He will describe the relevant events, causation and damages.

6.    Loretta M. Lukens, M.D., R.N., C.R.R.N.
29 West Rhea Road
Tempe, AZ 85284
(480) 839-0799

Ms. Lukens will testify regarding all issues related to the development of a life care plan for Bryan Wiles Bond.

7.    Betty Jo Freeman, Ph.D.
Professor Emerita of Medical Psychology
UCLA School of Medicine
3940 Mandeville Canyon Road
Los Angeles, CA 90049
(310) 440-8543

Dr. Freeman will provide expert testimony regarding all issues of liability and damages. She will describe the relevant events, causation and damages.

8.    Keynes D. Von Elsner, CPA
Economist
50 S. Beretania Street
Suite C-113
Honolulu, HI 96813
(808) 538-6904

Mr. Von Elsner will provide expert testimony regarding the valuation of damages in this case.

9.    Cara Entz
Pacific Child and Family Associates, APC
410 Wet Arden Avenue, Suite 203
Glendale, CA 91203

Ms. Entz will provide testimony regarding all issues related to the program at Pacific Child and Family Associates and all relevant events that took place during the period January 2004 through the present.

 10.    Shelby Anne Floyd
        74-5620 Palani Road, Suite 104
        Kailua-Kona, HI 96740
        Telephone: (808) 326-7979
        Fax: (808) 326-4779

Ms. Floyd will provide testimony regarding all issues of liability and damages.  She will describe the relevant events that took place during the period August 1999 through the present.

 11.    Alvin Rho
        c/o Melvyn M. Miyagi, Esq.
        Gregg M. Ushiroda, Esq.
        Leighton M. Hara, Esq.
        Ross T. Shinyama, Esq.
        WATANABE ING LLP
        First Hawaiian Center, 23rd Fl.
        999 Bishop Street
        Honolulu, Hawaii 96813

Mr. Rho will provide testimony regarding all issues of liability and damages. He will describe the relevant events that took place during the period August 1999 through the present.

 12.    Kate Tolentino
        c/o Melvyn M. Miyagi, Esq.
        Gregg M. Ushiroda, Esq.
        Leighton M. Hara, Esq.
        Ross T. Shinyama, Esq.
        WATANABE ING LLP
        First Hawaiian Center, 23rd Fl.
        999 Bishop Street
        Honolulu, Hawaii 96813

Ms. Tolentino will provide testimony regarding all issues of liability and damages.

13.    William Beljean
    c/o Melvyn M. Miyagi, Esq.
    Gregg M. Ushiroda, Esq.
    Leighton M. Hara, Esq.
    Ross T. Shinyama, Esq.
    WATANABE ING LLP
    First Hawaiian Center, 23rd Fl.
    999 Bishop Street
    Honolulu, Hawaii 96813

Mr. Beljean will provide testimony regarding all issues of liability and damages.

14.    All witnesses identified by Defendants.  Any person listed in Defendants' Pre-Trial Statement, Disclosure Statement, written discovery or any amendments or supplements thereto.

15.    All witnesses needed to authenticate documents or other evidence.

16.    Rebuttal witnesses.

## X.    <u>EXHIBITS, SCHEDULES AND SUMMARIES</u>

The exhibits have been exchanged between the counsel and have been pre-marked and are ready for trial.  The Plaintiffs and Defendants' Joint Exhibit list is attached hereto as Exhibit "1 and Plaintiffs' Exhibit list is attached hereto as Exhibit "2" and incorporated herein by reference.

All exhibits identified or submitted by Defendants.

All rebuttal documents.

## XI.    STIPULATIONS

Plaintiffs propose that all parties stipulate to the authenticity of the documents.

## XII.    AMENDMENTS, DISMISSALS

Not applicable.

## XIII.  SETTLEMENT DISCUSSION

There have been no settlement discussions since the last settlement conference with Judge Kurren on October 23, 2007.  Defendants have forced trial by refusing any consideration of settlement.

## XIV.   BIFURCATION, SEPARATE TRIAL OF ISSUES

Not applicable.

## XV.    REFERENCE TO MASTER OR MAGISTRATE JUDGE

Not applicable.

## XVI.   APPOINTMENT AND LIMITATION OF EXPERTS

Plaintiffs have a challenge to the credentials and experience for the Defendants' experts and motions in limine still be filed to resolve this issue.

## XVII.  TRIAL

This is a jury trial.

## XVIII. ESTIMATE OF TRIAL TIME

Trial in this case will take approximately two to three weeks.

## XIX. **CLAIMS OF PRIVILEGE OR WORK PRODUCT**

Not applicable.

## XX. **MISCELLANEOUS**

Not applicable.

DATED: Honolulu, Hawai'i, August 27, 2008.

/S/ STANLEY E. LEVIN

_____

STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
CARL M. VARADY

Attorneys for Plaintiffs