IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friend of their son, BRYAN WILES-BOND, a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawai'i,<br><br>Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>Consolidated (Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

I.  **FACTS**

On September 3, 2008 the Court Denied Defendant's Motion in Limine #1 to Exclude Reference to the *Felix* Consent Decree and Contempt Order dated June 1, 2000. The Court found that the *Felix* evidence is highly relevant to what Defendant knew at the time Bryan was receiving special education and related services from the Department of Education. Bryan was a class member of the *Felix* class for the entire time he lived in Hawaii. On September 5, 2008, Plaintiffs provided Defendant's Counsel with copies of the *Felix* documents and sought agreement to their admission as joint exhibits. Defendant's Counsel declined. Declaration of Stanley E. Levin ¶ 5. Plaintiffs now move that they be admitted as exhibits or otherwise

published to the jury. The *Felix* case addressed the systemic failure of the State's special education system. Because Bryan was a *Felix* class member, the *Felix* rulings are relevant to establishing knowledge regarding the systemic shortcomings and Defendant's need to provide and implement educational and mental health services to qualified students, including Bryan.

On January 17, 2008, the United States Court of Appeals for the Ninth Circuit issued its decision in *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008). The Ninth Circuit relied heavily on the *Felix* history and rulings in establishing the historical background in analyzing the facts presented in that case. *See Mark H.*, 513 F.3d at 925-27. Consideration of the *Felix* rulings is appropriate, as the Ninth Circuit relied heavily on it in reaching its decision in *Mark H.*

The *Felix* Decree specifically excluded and reserved individual complaints, such as this, and instead focused on systemic change. As stated in *Mark H.*,

> Later in 1993 a class of plaintiffs comprised of disabled children and adolescents eligible for special education and mental health services sued the Hawaii DOE and the Hawaii DOH in federal court, claiming a failure to comply with the IDEA and with § 504 of the Rehabilitation Act. *Felix v. Waihee*, CV. No. 93-00367-DAE. The district court granted summary judgment for the class on the issue of liability, finding that the agencies "ha[d] systematically failed to provide required and necessary educational and mental health services

2

to qualified handicapped children," in violation of both federal laws. Thereafter, in 1994, the parties entered into a consent decree (the "*Felix* Decree"), which was approved by the district court.

In the *Felix* Decree, the two state agencies acknowledged that they had violated the federal IDEA and § 504 of the Rehabilitation Act. The agencies agreed that the Hawaii DOE would provide all educational services the Felix class members require; that the Hawaii DOH would provide all mental health services the class members require to benefit from the educational services; and that the two agencies would create and maintain a system of care adequate to provide a continuum of services, placements, and programs necessary for disabled students. The Felix Decree defined the plaintiff class as "all children and adolescents with disabilities residing in Hawaii, from birth to 20 years of age, who are eligible for and in need of education and mental health services but for whom programs, services, and placements are either unavailable, inadequate, or inappropriate because of lack of a continuum of services, programs, and placements." Autistic children fall within the *Felix* class.

513 F.3d at 926.

Bryan is a member of the *Felix* class. During the time of the contempt hearing, Bryan was enrolled in Waikaloa Elementary School. The DOE categorized Bryan as "autistic" and because of this category, he was eligible for, and should have been receiving, mental health services from the Defendant. However, instead of receiving these services, his parents were locked in a protracted battle with the Defendant about getting Bryan what the DOE itself established that he needed, including the basic autistic services at any elementary school that could provide the necessary skills trainers. Bryan was the classic *Felix* class member, an IDEA student with an

3

IEP drafted by the DOE that required autistic-specified services, but one who was shuffled between elementary schools that were still being managed by the Defendant on pre-*Felix* standards.

Additionally, *Felix* is very relevant to the main issue to be resolved by the jury, *i.e.* did the state know about and fail to provide Section 504 accommodations Bryan need for meaningful access to public school? *See Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).

The proffered documents will aid the jury in its consideration of what the Defendant knew and when, and will give textual context to the testimony the jury will hear now that the Court has rejected Defendant's request to bar references to *Felix* Consent Decree and Contempt Order. Plaintiffs have proposed only three basic documents, not the 10-year pleading file, that will assist the jury in understanding this testimony.

The Defendant's main defense has been to allege some sort of non-statutory, non-legislated "good faith" effort to provide Bryan the crucial skills trainer services. Plaintiffs main claims are that this position is factually and legally wrong. Central to the whole concept of deliberate indifference is the fundamental notion that government agency must be on notice of the federally secured rights. *See generally, Barnes v. Gorman*, 536 U.S. 181, 122 S.Ct. 2097 (2002). The entire *Felix* proceeding, including the

4

contempt finding is highly probative of what the Defendant knew during the relevant period Bryan was on the Big Island.

## II. ARGUMENT.

### A. Judicial Notice Is Proper Under Federal Rules of Evidence 201 as the Facts are Judicially Established and Relevant

Pursuant to Fed. Rules of Evid. 201, this Court may take judicial notice of any adjudicative fact. The rule explains that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Rule mandates that a court shall take judicial notice if requested by a party and supplied with the necessary information to determine that the fact is adjudicative.

Judicial notice may be taken at any stage of the proceeding. The Rule states that in a civil action: "the court shall instruct the jury to accept as conclusive any fact judicially noticed." This means that the opposing party cannot present contradictory evidence on the fact once it has been judicially noticed; the time for presenting such evidence is when the matter is heard by the Court under Rule 201(e).

Applying the Rule, Courts have taken judicial notice of the record of prior administrative and court proceedings in a wide variety of

circumstances. *E.g., Burbank-Glendale-Pasadena Airport Auth v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (records from other lawsuit between the parties demonstrating that it had been dismissed); *Opoka v. INS*, 94 F.3d 392, 295 (7th Cir. 1996) (taking notice of INS decision to suspend deportation proceedings against applicant's wife); *Aldrich v. SEC*, 139 F.3d 221, 226 (D.C. Cir. 1998) (taking judicial notice of agency decision issued after decision under review by the Court). Similarly, judicial notice will be taken of the record, pleadings or judgment of a case in another forum between the same parties. *Furnari v. Warden,* 218 F.3d 250, 255-56 (3rd Cir. 2000)(notice taken of affidavit filed in another case).

It is appropriate that the Court take judicial notice of them and permit Plaintiffs to publish the *Felix* documents to the jury and instruct the jury that they are conclusive as a matter of law.

    B.    <u>The Documents Give Context to Witness Testimony and Will Be Helpful to the Jury</u>.

As the Court has ruled already that the information contained in the documents is highly relevant. However, without the documents themselves, the jury will be required to consider the testimony in a vacuum, without the obvious assistance reference to the text would provide. Clearly, any evidence is admitted for the primary purpose of assisting the jury in reaching

6

its decisions. The documents proffered clearly serve that purpose and should be admitted with an appropriate limiting instruction to reserve consideration on the issues of the Department's knowledge of shortages in staff and services and to establish a time reference for that important information.

## III. CONCLUSION

For reasons stated herein, Plaintiffs respectfully request this Court issue an in limine order taking judicial notice and instructing the jury to accept as conclusive findings and conclusions contained in the *Felix* evidence, that established what the State knew with respect to the provision and implementation of special educational and mental health services on a systemic basis and when it knew it.

DATED: Honolulu, Hawai'i, September 6, 2008.

/S/ STANLEY E. LEVIN
CARL M. VARADY
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON

Attorneys for Plaintiffs