IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JENNIFER FELIX, by her Mother  )    CV. NO. 93-00367DAE
and Next Friend, FRANKIE       )
SERVIETTI-COLEMAN, ET AL.,     )
                               )
            Plaintiffs,        )
                               )
    vs.                        )
                               )
JOHN WAIHEE, ET AL.,           )
                               )
            Defendants.        )
_____)

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 2 4 1994

at ___ o'clock and ___ min. ___ M.
WALTER A.Y.H. CHINN, CLERK

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR DISMISSAL OR FOR SUMMARY JUDGMENT

        The parties' cross motions for summary judgment were
heard on May 23, 1994.  Shelby Anne Floyd, Esq., Carl M. Varady,
Esq., Susan A. Cooper, Esq., Jennifer Schember-Lang, Esq., Eric
Seitz, Esq., and Mary Martin, Esq., appeared on behalf of
plaintiffs;  Deputy Attorneys General Charleen M. Aina, Esq.,
Russell Suzuki, Esq., and Heidi M. Rian, Esq., appeared on behalf
of defendants.

        After reviewing the motion and the supporting and
opposing memoranda, and hearing oral argument from counsel, the
court finds that defendants Department of Education and
Department of Health of the State of Hawaii, through their
respective directors, have systemically failed to provide
required and necessary educational and mental health services to
qualified handicapped children of the State of Hawaii in
violation of the Individuals With Disabilities Education Act and

Exhibit 1

the Rehabilitation Act of 1973, and are therefore liable to plaintiffs as a matter of law.

## BACKGROUND

In their Second Amended Complaint, plaintiffs seek declaratory and injunctive relief against John Waihee, in his official capacity as the Governor of Hawaii, Charles Toguchi, both individually and in his official capacity as the Director of the State Department of Education ("DOE")[1], John Lewin, both in his individual and in his official capacity as the Director of the State Department of Health ("DOH"). Plaintiffs consist of (1) a certified class containing all children and adolescents with disabilities residing in Hawaii, from birth to 20 years of age, who are eligible for and in need of education and mental health services but for whom programs, services, and placements are either unavailable, inadequate, or inappropriate because of lack of a continuum of services, programs, and placements; and (2) seventeen organizations concerned generally with mental health and social services.

The plaintiffs allege that the defendants have failed to comply with various statutory mandates concerning mental health services available to children. In particular, they allege that defendants have failed to provide a continuum of mental health services, programs, and placements, failed to

---

[1]Charles Toguchi is no longer the Director of DOE. He was recently replaced by Herman Aizawa. At the hearing, the court granted the motion by the State of Hawaii for substitution. Toguchi was also being sued in his individual capacity.

properly develop individualized educational programs responsive to behavioral and health needs of children with disabilities, failed to implement individualized educational programs that include mental health services, failed to provide mental health services in the least restrictive environment, discriminated against these children and adolescents, and denied them their constitutionally protected rights, all in contravention of the Individuals With Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 42 U.S.C. § 1983 and Haw. Rev. Stat. § 321-171.

The IDEA is a comprehensive law concerning education for disabled children. It requires that, in order for a state to receive federal assistance for special education, the state must demonstrate that it "has in effect a policy that assures all children with disabilities the right to a 'free appropriate public education' ("FAPE")." 20 U.S.C. § 1412(1). The term "children with disabilities" is defined to include those with mental retardation, hearing impairments, speech or language impairments, visual impairments, serious emotional disturbance, orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities. 20 U.S.C. § 1401(a)(1); 34 C.F.R. 300.7(a)(1). However, in order to qualify for FAPE, the child's disability must "adversely affect his educational performance." 34 C.F.R. § 300.7(b).

FAPE consists of educational instruction specially designed to meet the unique needs of the disabled child,

supported by such related services as are necessary[2] to permit the child to benefit from the instruction. 20 U.S.C. §§ 1401(a)(16)-(18); 34 C.F.R. §§ 300.8, 300.16(a), 300.17(a). Related services, for the purpose of this action, include psychological services, therapeutic recreation, and counseling services. 20 U.S.C. § 1401(a)(17); 34 C.F.R. § 300.16.

IDEA requires each state to designate a single agency ("SEA") to be responsible for compliance. 20 U.S.C. § 1412(6). The SEA must develop and implement an individualized education program ("IEP") for every handicapped child covered by IDEA. 34 C.F.R. § 300.341. The IEP must contain all programs and services needed to provide the FAPE, and the SEA is responsible for providing all services listed in the IEP. 34 C.F.R. § 300.346. The legislative history of these provisions concerning SEA responsibility indicates that Congress intended to:

> assure a single line of responsibility with regard to
> the education of handicapped children, and to assure
> that in the implementation of all provisions of this
> Act and in carrying out the right to education for
> handicapped children, the State educational agency
> shall be the responsible agency . . . . While the
> Committee understands that different agencies may, in
> fact, deliver services, the responsibility must remain
> in a central agency overseeing the education of
> handicapped children, so that failure to deliver
> services or the violation of the rights of handicapped
> children is squarely the responsibility of one agency.

---

[2]The requirement of necessity has also been emphasized by the courts. Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982) ("services as are reasonably calculated to enable the child to benefit from the instruction"); Clovis Unified School Dist. v. Calif. Office of Admin. Hearings, 903 F.2d 635, 642-43 (9th Cir. 1990) (service must be necessary for child to benefit from special education, not just supportive, even if child cannot fully benefit from education without it).

4

S. Rep. No. 94-168, 94th Cong., 1st Sess. 24, reprinted in 1975 U.S. Code Cong. & Ad. News 1425, 1448; see also Kruelle v. New Castle County School Dist., 642 F.2d 687, 697 (3d. Cir. 1981).

Hawaii has designated the State Department of Education as its SEA. HRS § 301-22. This statute provides:

> In order to effectively accomplish such purpose [of providing care to exceptional children to allow them to lead normal lives,] the department of education shall establish and administer instruction, special facilities, and special services for the education, therapy, and training of exceptional children, and provide in connection therewith corrective therapy, together with academic, occupational, and related training. The department shall cooperate with other agencies of the State charged with the administration of laws providing any type of service or aid to the exceptional child . . . .

Hawaii also has several statutes which include DOH in the efforts to provide adequate mental health services. Section 301-27 of the Hawaii Revised Statutes ("HRS") makes DOH responsible, "within the funds available," for mental health, psychological, and other related services for special education children in Hawaii's public schools, in cooperation with DOE. In addition, HRS § 321-171 states that "all eligible children and youth between the ages of birth and seventeen shall receive necessary mental health services to insure their proper and full development." This statute also describes the responsibilities of DOH to provide "diagnostic and treatment services for emotionally disturbed children and youth" and "treatment and rehabilitative services for mentally ill children and youth." In

light of these statutory mandates, DOE and DOH[3] signed a Memorandum of Agreement reflecting the two agencies' commitment to provide the services required. HRS § 321-174 (mandating this memo of agreement).

DOE has also, however, contracted with numerous private providers in order to meet its obligations under the IDEA. See Affidavit of Dr. Margaret Donovan, dated March 7, 1994, attached as Exhibit A to Defendants' Summary Judgment Motion, and Affidavit of Dr. Margaret Donovan, dated March 31, 1994, attached to Defendants' Opposition Memorandum to Plaintiffs' Summary Judgment Motion. On numerous occasions, DOE has been compelled to send children to private providers in other states. DOE assumes full costs for the care given by both in-state and out-of-state providers. Id.

Plaintiffs have also alleged violations of Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability in programs or activities receiving federal funds. 29 U.S.C. § 794. The regulations implementing § 504 mirror the obligations imposed under IDEA. For example, a federal funds recipient must "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a). The recipient must provide "an appropriate program of regular or special

---

[3]DOH is specifically obligated to provide these services through its Child and Adolescent Mental Health Division ("CAMHD").

education and related aids and services that (1) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33(b). "Special education may include specially designed instruction in classrooms, at home, or in private or public institutions and may be accompanied by such related services as developmental, corrective, and other supportive services." 42 Fed. Reg. 22690.[4]

Plaintiffs have moved for partial summary judgment as to the defendants' liability under these statutes. Defendants have filed a cross motion for summary judgment on liability, asserting that they are currently in compliance with all statutory mandates. They have also moved to dismiss the claims against the Director of the DOH and against Governor Waihee for failure to state a claim, and to dismiss the claims against the Directors of DOE and DOH in their individual capacities. Thirdly, defendants claim this court has no jurisdiction to hear this case, because plaintiffs have failed to exhaust their administrative remedies. Finally, defendants have moved to dismiss all of the organizational plaintiffs for lack of standing.

---

[4]While § 504 might arguably be broader than IDEA, both parties in this case have referred to the two statutes interchangeably. Accordingly, for purposes of this motion, the court will treat the two statutes as a single unit which imposes obligations upon the state.

STANDARD OF REVIEW

I.  Motion to Dismiss

        A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint should not be dismissed unless it appears to a certainty that plaintiff can prove no set of facts which would entitle the plaintiff to relief.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989); <u>Fidelity Fin. Corp. v. Federal Home Loan Bank</u>, 792 F.2d 1432, 1435 (9th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1064 (1987); <u>Stender v. Lucky Stores, Inc.</u>, 766 F. Supp. 830, 831 (N.D. Cal. 1991).  All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff.  <u>Stender</u>, 766 F. Supp. at 831. However, where the court considers evidence outside of the pleadings, the motion is properly treated as one for summary judgment.  Fed. R. Civ. P. 12(c).

II.  Summary Judgment

        Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (<u>citing</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970)).

However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial.  <u>Id.</u> at 322.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed. R. Civ. P. 56(e).  The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence.  <u>Musick v. Burke</u>, 913 F.2d 1390, 1394 (9th Cir. 1990).  The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict:  does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law.  <u>Id.</u> (citation omitted).

<u>DISCUSSION</u>

I.  <u>Jurisdiction -- Exhaustion of Remedies</u>

Defendants assert that each member of the plaintiff class must exhaust his or her administrative remedies prior to

9

bringing this action.  In 1986 Congress amended the IDEA to make clear that nothing in the IDEA restricted or limited the rights, procedures, and remedies available under the Constitution, Title V of the Rehabilitation Act of 1973 (which includes § 504), or other federal statutes protecting the rights of the handicapped. However, Congress required that a plaintiff, before filing a civil action under laws seeking relief available under the IDEA, must exhaust the administrative procedures under that Act.  See 20 U.S.C. § 1415(f) (1993).  Nevertheless, the United States Supreme Court has held that, while it is true that judicial review is normally not available under the IDEA until all administrative proceedings are completed, a plaintiff may bypass the administrative process where exhaustion would be "futile" or "inadequate."  Honig v. Doe, 484 U.S. 330, 326-27 (1988). Congress itself specified the situations in which exhaustion of administrative remedies is not a prerequisite.  These situations involve complaints that:

> (1) it would be futile to use the due process procedures . . .;  (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law;  (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought) . . . .

Mrs. W. v. Tirozzi, 832 F.2d 748, 756 (2nd Cir. 1987) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)); see also Hoeft v. Tucson Unified School Dist., 967 F.2d 1298 (9th Cir. 1992).

Defendants themselves admit that exhaustion of administrative remedies is not required when violations are systemic.  See Defendants' Class Certification Opposition

10

Memorandum, at 6.  However, defendants maintain that plaintiffs'
claims do not in fact involve a systemic failure which could not
be redressed through administrative procedures.  Defendants state
that, if one properly focuses on the DOE's responsibilities
rather than on the operation of the DOH's Child and Adolescent
Mental Health Division, "it becomes clear that there is a genuine
and substantial question as to whether there is indeed a systemic
inability presently existing that would excuse application for
the IDEA exhaustion requirement."  Id. at 10-11.

However, defendants have admitted liability[5] even
though there remain genuine issues of fact concerning the precise
extent of noncompliance at present.[6]  In addition, as discussed
below, the court's liability assessment will not be limited to
the practices of DOE, but will include those of DOH as well.  The
record before this court clearly establishes a systemic failure
by the defendants to comply with IDEA's statutory requirements.

Plaintiffs may therefore properly proceed under the
"systemic violation" exception to the IDEA exhaustion doctrine,
and jurisdiction of this court is proper.  Moreover, § 504
contains no administrative exhaustion requirement.  Jurisdiction
is therefore proper under § 504 as well.

II.  The Standing of the Organizational Plaintiffs

Plaintiffs consist of both a certified class and
seventeen organizations who are concerned generally with mental

_____

[5]See Def. Pretrial Statement at 6-7.

[6]See Liability discussion below.

11

health and social services.  Defendants assert that none of these organizations has standing to bring this suit either in a representative capacity or on its own behalf.  Because the court must resolve this issue by looking to evidence outside the pleadings, it will treat this motion as one for summary judgment.[7]

Congress intended standing under the IDEA to be considered under Article III standards.  Family & Children's Ctr v. School City, 13 F.3d 1052 (7th Cir. 1994).  The "irreducible constitutional minimum of standing" contains three distinct elements.  Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992).  First, a plaintiff must have suffered an "injury in fact."  "Injury in fact" requires first "'a distinct and palpable injury to [the party].'"  Gollust v. Mendell, 111 S. Ct. 2173, 2180 (1991) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).  This injury must be "'actual or imminent, not conjectural or hypothetical.'"  Lujan, 112 S. Ct. at 2136 (citing Whitmore v. Kansas, 495 U.S. 149, 155 (1990)).  In other words, "'the party

_____

[7]See Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2137 (1992) (internal citations omitted):
    At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken as true.

requesting standing [must have] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues[.]'" Id. (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985)).

Second, a party seeking standing must show a fairly discernable link between that injury and the challenged conduct. County of Riverside v. McLaughlin, 111 S. Ct. 1661, 1667 (1991). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan, 112 S. Ct. at 2136 (citing Simon v. Eastern Ky. Welfare Rights Org., 425 U.S. 26, 38 (1976)). With respect to burden of proof, the party invoking federal jurisdiction bears the burden of establishing each of the standing elements, not merely of pleading them. Lujan, 112 S. Ct. at 2136 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)).

A. Suit in a Representative Capacity

An organization has standing to sue in a representative capacity when (1) at least one of its members[8] would otherwise have standing to sue in her own right; (2) the interests the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the suit. Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).

---

[8]Cruz v. Playboy Enterprises, Inc., 111 S. Ct. 388 (1990) (injury to one member is sufficient for organization to appear in representative capacity).

13

Without identifying each organization by name and by asserted interest and injury, the court finds that only those organizations with at least one member who can be classified as an IDEA-child or the parent of an IDEA-child have standing to sue, in a representative capacity, to enjoin the defendants to comply with the IDEA.[9] The other organizations, while their dedication to improved mental health services is commendable, simply represent interests which are too diverse or remote "to sharpen the presentation of issues" in this litigation.[10] <u>See</u>

---

[9]It appears at this point that the only plaintiff-organizations which meet this test are the Autism Society of Hawaii and the Learning Disabilities Association of Hawaii.

[10]Plaintiffs argue correctly that neither the IDEA nor Section 504 expressly limits standing to children deprived of services. They contend that <u>anyone</u> who can demonstrate any kind of injury and a causal nexus can sue under the IDEA and Section 504. Plaintiffs cite in support of this sweeping statement one case from the Second Circuit in which the court allowed the father of an IDEA-child, his legal guardian, to sue to enforce IEP determinations. <u>Heldman v. Sobol</u>, 962 F.2d 148 (2d Cir. 1992).

This court fully agrees with the Second Circuit that parents of IDEA-children should be allowed to enforce the statute, on their own behalf and on behalf of their children. The injuries suffered by parents of IDEA-children are, however, much closer to this particular litigation than are those suffered by mental health professionals or volunteers whose jobs are simply made more difficult by the alleged lack of IDEA compliance in Hawaii. This court simply cannot extend the concept of standing to allow all persons whose lives are somehow tangentially affected by the alleged lack of IDEA-mental health services to participate in this lawsuit, through their representative organizations.

In addition, the court notes that advocate organizations are frequently allowed to enforce the rights of handicapped children. <u>See, e.g.</u>, <u>Kerr Center Parents Ass'n v. Charles</u>, 897 F.2d 1463, 1471 (9th Cir. 1990) (IDEA); <u>St. Louis Dev. Dis. Treatment Ctr. Parents Ass'n v. Mallory</u>, 591 F. Supp. 1416 (W.D. Mo. 1984), <u>aff'd</u>, 767 F.2d 518 (8th Cir. 1985) (IDEA and Section 504); <u>New Mexico Ass'n for Retarded Citizens v. State of New Mexico</u>, 678 F.2d 847 (10th Cir. 1982) (Section 504).

<u>Simon</u>, 425 U.S. at 39-40 (special interest of members in the health problems of the poor is insufficient to establish standing in suit against the IRS concerning tax treatment of hospitals).

B.    <u>Suit on Organization's Own Behalf</u>

For standing to sue on its own behalf, an organization must meet the requirements for individual standing and must also have such a personal stake in the outcome of the controversy so as to warrant federal court jurisdiction. <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363, 378-79 (1982). The organization must allege more than just a setback to its abstract social interests; it must prove concrete and demonstrable injury to the organization's activities. <u>Id.</u> at 379 (<u>citing</u> <u>Sierra Club v. Morton</u>, 405 U.S. 727 (1972); <u>Simon</u>, 425 U.S. at 39-40 (IRS policy which conflicts with or impedes organization's goal of improving access of the poor to health services does not amount to concrete injury to the organization itself). An organization which merely has an interest in a problem, no matter how long-standing its interest nor its expertise relating to the issue, does not have standing unless it can prove a concrete injury. <u>McKinney v. U.S. Dep't of Treasury</u>, 799 F.2d 1544 (Fed. Cir. 1986).

In assessing whether any of the seventeen mental health and/or social service organizations has standing to sue on its

_____

However, the IDEA-eligible children of Hawaii do not need these organizations to represent their interests, because every such child is a member of the certified class. The court has seen no evidence that the lawyers for the plaintiff class are unable to adequately represent the interests of all the class members, and the record does not justify presuming otherwise.

own behalf, the court first notes that several of these
organizations have not alleged injury to themselves as
organizations (i.e., Hawaii Psychiatric Medical Association,
Pacific Head Injury Association, Hawaii Psychological
Association, Hawaii Council of Churches, Hawaii Council on Child
and Adolescent Psychiatry). Those organizations cannot,
therefore, raise standing arguments under this theory.

The remaining organizations assert the following
injuries allegedly caused by Hawaii's lack of IDEA compliance:
frustration of mission in promoting access to mental health
services, frustration of mission in promoting youth services, and
expenditure of resources (including money, time and stress) on
this issue (rather than on other issues). The court finds none
of these alleged injuries sufficiently concrete to establish
standing in this lawsuit.

With respect to the frustration of mission arguments,
the court notes that, with two exceptions,[11] none of these
organizations is specifically dedicated to serving IDEA-children
and their families. They are concerned generally with improving
access to mental health services for residents of Hawaii, and
some specifically target children for mental health and other
services. However, none of these fifteen groups has so narrowly
defined its mission to include only IDEA-children and their
families within their sphere of service. As a result, there is

---

[11]The two organizations noted in footnote 9, which the court
has already determined have standing to sue in a representative
capacity, would be potential exceptions.

no evidence to support a finding that the entire purpose of these organizations has been frustrated by the state's alleged lack of compliance with two specific statutes. See Simon, 426 U.S. at 39-40 (organization's general purpose to promote increased access to health care for poor was not sufficiently injured by IRS interpretation of a tax statute concerning tax treatment of hospitals).

Turning next to the diversion of resources argument, the court finds this injury too remote to give rise to standing in this case. Under a "diversion of resources" theory of injury, an organization which had chosen to spend any amount of money or time in support of a given issue could allege that its decision to forego sponsoring or funding other issues constitutes a cognizable injury. While many of these organizations are non-profit and may be operating on tight budgets, there is no basis to extend the concept of injury to include voluntary decisions made by the organization which affect its allocation of resources. This diversion of resources argument is particularly unpersuasive where the organization has failed to state a claim for damages, to compensate it for money spent to counteract the harmful effects of the defendants' actions. Cf. Havens Realty, 455 U.S. at 379 (equal housing opportunities organization had standing to sue for damages under Fair Housing Act to recover significant resources it had devoted to identify and counteract the defendants' racial steering practices).

17

In sum, then, all but two of the organizations lack standing to sue either in a representative capacity or on their own behalf.  Only those organizations which have established that their membership contains at least one IDEA-child or parent thereof have standing to seek injunctive relief against the state for IDEA compliance.  All others must be dismissed from this action.  This holding will not significantly affect the outcome of the litigation.  The certified class plaintiffs and the remaining organizations are in a position to adequately represent the interests of all concerned organizations and children in fashioning the appropriate injunctive relief.

III.  Liability of the Defendants

In support of their motion for summary judgment, plaintiffs have submitted approximately twenty-five documents, reports, letters, and internal memos which they claim establish, as a matter of law, that the defendants are not currently in compliance with the above statutes.  According to the plaintiffs, the State of Hawaii presently fails to provide adequate mental health services to thousands of children across the state.

Defendants' response to the liability claim is twofold. First, in their Pretrial Statement, filed on May 16, 1994, defendants "acknowledge that there have been instances, particularly at the beginning of the current school year, when related services in the form of mental health services were not timely provided to class members who were determined to need

18

them."  See Def. Pretrial Statement at 6.  Defendants also list

as "Undisputed Facts" the following:

1.    All members of the plaintiff class have not been
      identified, had their mental health needs assessed, or
      timely received mental health services they require in
      order to benefit from their educational services.

2.    All members of the plaintiff class in need of in-
      patient, residential, therapeutic group and foster
      home, day-treatment, and other community-based programs
      and placements have not been able to be placed in such
      settings in their communities or in the State to timely
      receive mental health services needed to allow them to
      benefit from their educational services.

3.    IEPs of some class members have not been effective and
      have not been timely modified when shown to be
      ineffective.

In short, defendants have admitted that they are not in

compliance with the statutes, and summary judgment is therefore

appropriate as to liability.

      However, defendants nonetheless challenge the evidence

presented by the plaintiffs, and raise issues of fact as to the

scope of liability.  On the one hand, plaintiffs' materials refer

to data that may in some cases be outdated; many of the reports

detailing the problems and Hawaii's inadequate response are dated

1991 and 1992, and are based on data gathered in preceding years.

Defendants assert that, while Hawaii may have failed to comply in

previous years, its current compliance rate is much higher.

Defendants submit affidavits from DOE officials attesting to the

present level of compliance, and a letter from the federal

Department of Education from the summer of 1993 indicating that

the federal government is satisfied with Hawaii's achievements in this area.[12]

A second alleged problem concerns the scope of plaintiffs' materials. Many of the documents which plaintiffs claim establish IDEA violations refer generally to a lack of mental health services available to the children of Hawaii. However, the IDEA is an education-based statute which requires only that the State provide mental health services to <u>IDEA-children</u>, not to all children. More specifically, the statute obligates the state to offer mental health services only to children who need the services in order to benefit from their education. If a child's mental or emotional disability does not interfere with his education, the state is not obligated under the IDEA to provide help. While the subset of children in need of mental health services is not mutually exclusive of the subset of children covered by the IDEA, defendants have submitted affidavits from mental health professionals indicating that the two are certainly not identical, and are not subject to a one-to-one relationship.[13] Consequently, all of the materials produced by the plaintiffs which refer generally to the lack of mental health services available to children, and fail to identify those

---

[12]The defendants have not argued that the actions taken by the federal agency have pre-empted this citizen suit to enforce the statutes.

[13]For example, a teenager who tries to commit suicide after his girlfriend leaves him clearly needs mental health services, but until his problems affect his ability to function in school, he would not be an IDEA-child.

services needed by IDEA-children, do not establish clear and present IDEA violations by the State.[14]

The defendants have therefore raised genuine issues of fact as to the extent of their liability. The defendants' current compliance, or lack thereof, with the requirements of the statute must be determined after a thorough evaluation of all the evidence, including qualified experts' opinions.

IV.  **Defendants' Motion to Dismiss All Claims Against DOH and Waihee**

Defendants argue, in essence, that only defendant DOE is responsible for the alleged non-compliance, because DOE is the designated SEA in Hawaii. According to defendants, the fact that DOE contracted with DOH to perform services pursuant to this compliance responsibility does not render DOH itself, or Governor Waihee, liable under the statute. DOH's responsibilities arise purely under state statutes and the Memorandum of Agreement, which was executed pursuant to state law. Because, according to the defendants, the Eleventh Amendment bars this court from enforcing the purely state-based arrangements, plaintiffs have no cause of action against DOH in federal court.

---

[14]The court recognizes that plaintiffs also allege that the state's mechanism for identifying IDEA-children is flawed, and thus that the current number of IDEA-children in the state is deceptively low. Even assuming that this allegation were true, the plaintiffs have established neither the number of unidentified but potential IDEA-children nor that the statistics on general mental health needs are limited only to this number. Hence, the general statistics provided by the plaintiffs fail to establish the extent of the state's noncompliance with respect to both identified and unidentified IDEA-children.

21

The defendants' arguments are unpersuasive with respect to DOH's responsibilities for several reasons.  First, the IDEA expressly precludes Eleventh Amendment defenses.  20 U.S.C. § 1403.  Second, DOH has been designated the lead agency for IDEA compliance for children between the ages of zero and three, who are currently part of the plaintiff class.  20 U.S.C. § 1476(b)(9).  DOH is therefore directly and primarily responsible for violations allegedly committed against a portion of the class.

Third, while the court agrees that DOE, as the SEA for children aged three to seventeen, is directly and primarily responsible for violations allegedly committed with respect to that portion of the class, the court does not agree that DOH is simply "off the hook" because its obligations arise under state law.  Under the Memorandum of Agreement, DOE and DOH agreed to a compliance plan, under which DOH would provide, within the boundaries of available funding, mental health services to IDEA-children.[15]  Two principles of contract law provide useful analogies for DOH's liability to plaintiffs:  assignment of rights/delegation of duties, and third party beneficiary claims.

In contracting with DOH to provide services for which DOE was statutorily responsible, DOE delegated to DOH some of its obligations under the statutes.  Assuming this was a valid

_____

[15]There appear to be genuine issues of fact concerning the extent to which DOH has met its obligations under the Agreement.

22

delegation,[16] plaintiffs would be entitled to sue either the delegatee or the delegator for breach of the duty. Moreover, although defendants contend that IDEA places all responsibility on the SEA and leaves delegation of duties up to the state, the court is disinclined to allow the legislative history language concerning a "single line of responsibility" to be used by non-SEA defendants as a complete defense to liability. The "single line of responsibility" scheme was clearly intended to prevent the "collective responsibility failure": where a number of agencies share the responsibility for educating disabled children, each agency might succumb to the tendency to abdicate its responsibility based on its expectation that the others will pick up the slack. See Kruelle v. New Castle County Sch. Dist. 642 F.2d 687, 696 (3d Cir. 1981) (citing S. Rep. No. 168, 94th Cong., 1st Sess. 24, reprinted in [1975] U.S. Code Cong & Ad. News 1425, 1448 ("Without this requirement, there is an abdication of responsibility for the education of handicapped children."). Moreover, such a statutory scheme would not prevent a liability determination as to DOH; it would instead simply designate DOE the lead agency responsible for compliance with any court order.

Alternatively, plaintiffs could be considered intended third party beneficiaries of the Memorandum of Agreement. A party seeking to bring a claim as an intended third party beneficiary

[16]I.e., it was not expressly prohibited, the contract was not for personal services, and DOE had no specific and unique expertise.

of a contract must demonstrate that, at the time of the contract, the contracting parties knew of the beneficiary's existence, and intended the contract to satisfy a duty which the promisee party owes the beneficiary. Restatement (Second) of Contracts § 133. Moreover, the beneficiary can only assert his rights if they have vested, that is, if he knows of them and has relied on them, or if he has filed suit to enforce them. Here, DOE and DOH knew of the existence of IDEA-children at the time they signed the Agreement, which specifically and intentionally governs services which both agencies must provide, by statute, to the IDEA-children such as the plaintiffs. Thus, plaintiffs meet the test for intended third party beneficiaries, and can assert their rights against the promisor and promisee because those rights have vested.

Finally, the court notes that plaintiffs have also alleged claims under 42 U.S.C. § 1983 against defendants Waihee and Lewin. Because both are state officials responsible for enforcing laws, the court agrees that they are proper defendants in this lawsuit. In sum, the court denies the motion to dismiss claims against Governor Waihee and against John Lewin, in his official capacity as Director of DOH.

V.  <u>Defendants' Motion to Dismiss All Claims Against Defendants'</u>
<u>Toguchi and Lewin in their Individual Capacities</u>

Plaintiffs' Second Amended Complaint seeks declaratory and injunctive relief against defendants Toguchi and Lewin in their official and personal capacities. "Personal-capacity suits

24

seek to impose personal liability upon a government official for
actions he takes under color of state law." <u>Kentucky v. Graham</u>,
473 U.S. 159, 165 (1985) (<u>citing</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232,
237-38 (1974)).  In contrast, official-capacity suits "'generally
represent only another way of pleading an action against an
entity of which an officer is an agent.'" <u>Id.</u> (<u>citing</u> <u>Monell v.
New York City Dep't of Social Services</u>, 436 U.S. 658, 690
(1978)).  Where the agent is sued in his official capacity, the
plaintiff's lawsuit is not "against the official personally, for
the real party in interest in the entity." <u>Id.</u> at 166.  In this
lawsuit, any prospective declaratory or injunctive relief would
be granted against defendants only in their official capacities,
and thereby against the state itself,[17] as no allegations
implicate any non-official action by Toguchi or Lewin.

Plaintiffs have not included in their prayer for relief
any damage claims.[18]  The plaintiffs do not, and could not, seek
retroactive monetary damages against the state officials in their
official capacities. <u>Edelman v. Jordan</u>, 415 U.S. 651, 666-67
(1974), <u>reh'g denied</u>, 416 U.S. 1000.  Because plaintiffs do not
seek damages against the defendants in their individual

---

[17]<u>See</u>, <u>e.g.</u>, <u>Chaloux v. Killen</u>, 886 F.2d 247 (9th Cir.
1989).

[18]Plaintiffs' request for "such other appropriate relief as
may be just and proper" will not be construed as a veiled request
for damages.

capacities, plaintiffs have failed to state a claim against Toguchi and Lewin as individuals.[19]

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART the cross motions for summary judgment as to liability, GRANTS defendants' motion to dismiss all claims against defendants Toguchi and Lewin in their individual capacities, DENIES defendants' motion to dismiss all claims against defendants Waihee and Lewin in their official capacities, DENIES defendants' motion to dismiss for lack of jurisdiction, and GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment as to the organizational plaintiffs for lack of standing.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, _May 24, 1994_.

DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE

Jennifer Felix, et al. vs. John Waihee, et al., Civil No. 93-00367 DAE; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR DISMISSAL OR FOR SUMMARY JUDGMENT

---

[19]Because the court has found that plaintiffs have failed to state a claim against the defendants in their individual capacities, it need not address defendants' qualified immunity.

26