ROBERT A. MARKS
Attorney General of Hawaii
State of Hawaii

CHARLEEN M. AINA
RUSSELL A. SUZUKI
A. SONIA FAUST
STEVEN CHANG
BLAIR GOTO
HEIDI RIAN
Deputy Attorneys General
State of Hawaii
425 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 586-1500

Attorneys for Defendants

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 2 5 1994

at 9 o'clock and ___min. ___M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

JENNIFER FELIX, by her
Mother and Next Friend,
FRANKIE SERVETTI-COLEMAN;
et al.,

          Plaintiffs,

      vs.

JOHN WAIHEE, in his official
capacity as Governor of the
State of Hawaii, et al.,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL NO. 93-00367-DAE
  (Class Action)

ORDER GRANTING JOINT
MOTION FOR APPROVAL
OF SETTLEMENT AND
CONSENT DECREE, AND
APPOINTING SPECIAL
MASTER; EXHIBIT "A"

ORDER GRANTING JOINT MOTION FOR APPROVAL OF
SETTLEMENT AND CONSENT DECREE, AND APPOINTING SPECIAL MASTER

    On July 27, 1994, the parties filed a Joint Motion for
Preliminary Approval of Settlement and Consent Decree and For
Order Approving Notice to Plaintiff Class and Allowing Initial
Development of Implementation Plan.  A proposed consent decree
(7/27/94 Draft) was attached to the motion as Exhibit "A."

Exhibit 2

By an order filed herein on August 4, 1994, Defendants were required to publish a court-approved notice to the class in certain specified publications, informing class members of their right to file objections to the settlement which the named parties proposed under Fed. R. Civ. Proc. 23(e), and of the hearing on the joint motion.

The hearing for which notice was given was held on October 11, 1994 at 2:15 p.m., before the Honorable David A. Ezra. Shelby Anne Floyd, Eric Seitz, Jennifer Schember-Lang, Susan Cooper, and Carl Varady appeared on behalf of their respective named plaintiff clients and the plaintiff class, and Charleen M. Aina and Russell A. Suzuki, deputy attorneys general, State of Hawaii, appeared on behalf of the Defendants.

By their Memorandum Re Final Approval of Consent Decree, Plaintiffs urged the Court to immediately approve the proposed consent decree and the amounts of attorneys' fees the Defendants and four of the five firms representing plaintiffs agreed were reasonable for work performed through May 31, 1994.

By supplemental memorandum and accompanying declarations, the Attorney General confirmed that the notices Defendants were required to publish had been published, and that only one untimely response from an individual who did not appear to be a member of the plaintiff class had been received.

By Exhibit "C" to the Defendants' supplemental memorandum and the declarations of Shelby Anne Floyd, Jennifer Schember-Lang, Susan Cooper, and Carl M. Varady, the Court was informed

2

that the amounts of reasonable attorneys' fees payable by Defendants to four of the five firms for work performed on behalf of the plaintiffs and the plaintiff class through May 31, 1994, had been jointly agreed upon as follows:

| | |
|---|---|
| Alston Hunt Floyd & Ing | $192,096.03 |
| Protection & Advocacy/Schember-Lang, Esq. | $27,937.50 |
| Eric Seitz, Esq. | $43,575.00 |
| Disabled Rights Legal Project/Cooper, Esq. | $14,812.50 |

Based upon the Court's review of the proposed consent decree, the memoranda and exhibits accompanying the joint motion and the memoranda, declarations, affidavits and exhibits filed since the joint motion's filing, the pleadings on file in this case, and the Court's discussions with counsel for the parties at hearings and in chambers on various occasions,

IT IS HEREBY ORDERED that

1.    The settlement of this class action as set forth in the consent decree attached hereto as Exhibit "A," is approved; in addition, the provisions of the consent decree are incorporated herein and made a part of this order, and they shall be effective as of the date of this order;

2.    Within twelve (12) days of entry of this order, the Defendants shall pay the following amounts to the following law firms/attorneys as the balance of reasonable attorneys' fees payable to them for their representation of the plaintiffs and the plaintiff class through May 31, 1994:

| | |
|---|---|
| Alston Hunt Floyd & Ing | $46,724.07 |

        Protection & Advocacy/Schember-Lang, Esq.       $3,000.00

        Eric Seitz, Esq.                                $15,930.00

        Disabled Rights Legal Project/Cooper, Esq.      $3,562.50

There being no further agreement between Defendants and Carl M.
Varady, Esq., other than that manifest by the Defendants' June
30, 1994 payment of $18,963.00, Mr. Varady may file a motion for
the payment of reasonable attorneys' fees accrued for that same
period within thirty (30) days of the filing of this order.

        3.    Pursuant to Fed. R. Civ. Proc. 53, Jeffrey S. Portnoy,
Esq., is appointed to serve as special master during this Court's
retention of jurisdiction over this matter.  The special master
shall be compensated at no more than $200 per hour and actual
costs disbursed, for work performed pursuant to this appointment.
The special master shall submit an invoice to the Court, and
serve one copy each upon the Superintendent of Education and
Director of Health, or their respective designees, after the last
day of any month in which services are provided.  The Defendants
shall have 10 days after service of the invoices to pay the
invoice in full or to file a motion in the Court objecting to all
or any portion of the compensation for which the special master
seeks payment.

        4.    The special master shall perform those tasks which are
designated in the consent decree to be performed by the Court,
including receiving the recommendations of the Monitor concerning
enforcement or compliance (paragraphs 44 f and h), ex parte
communications from the Monitor (paragraph 46), appeals from the

4

parties from decisions of the Monitor (paragraph 47); and petitions from a party requesting the dismissal of the Monitor (paragraph 48); determining the amount Defendants shall be required to pay for all necessary expenses of the Monitor, Technical Assistance Panel, and their staff, during each fiscal year that the consent decree is in effect (paragraph 50); determining a party's compliance with the provisions of the consent decree (paragraph 51); and resolving matters which the parties are unable to resolve by mutual consent (paragraph 55). From time to time, the Court may also require the special master to review requests for payments of attorneys' fees and costs and determine their reasonableness (paragraph 54). Every determination or resolution of a matter which the special master makes pursuant to this order shall be conveyed as a recommendation to the Court, in a report submitted to the Court, with copies served upon all parties. Within ten (10) days after being served with a copy of the special master's report, a party may serve and file objections to the report, and the Court shall

consider such objections de novo and may set aside or modify any portion of the special master's report.

DATED:    Honolulu, Hawaii,    OCT 2 5 1994                    .

_____

DAVID A. EZRA

JUDGE OF THE ABOVE-ENTITLED COURT

APPROVED AS TO FORM:

_____

Shelby Anne Floyd
Mary Martin
Susan Cooper
Eric Seitz
Carl M. Varady
Jennifer Schember-Lang

Attorneys for Plaintiffs and Plaintiff Class

Order Granting Joint Motion for Approval of Settlement and
Consent Decree, and Appointing Special Master; Exhibit "A"; Felix
et al., v. Waihee, et al., Civil No. 93-0367DAE

<u>CONSENT DECREE</u>

I.  **<u>Introduction</u>**

       1.  Plaintiffs, and Defendant Waihee, Defendant
Sybinsky in his capacity as Acting Director, Department of Health
("DOH"), and Defendant Aizawa in his capacity as Superintendent
of the Department of Education ("DOE") (hereinafter "the
parties") have consented to the entry of this Decree as an order
and judgment of the Court.

       2.  The parties' agreement to entry of this Decree is
the outcome of negotiations and bargaining.  Both the Plaintiffs
and the Defendants have made concessions that they believed were
unnecessary in light of prevailing law and the facts of this
case.  Likewise, both Plaintiffs and the Defendants have obtained
concessions they might not have obtained from this Court.

       3.  In agreeing to the entry of this Decree, the
parties intend to ensure that the Plaintiff Class has available
to them the free appropriate public education they are entitled
to under the Individuals with Disabilities Education Act
("IDEA"), 20 U.S.C. § 1401, et seq., and Section 504 of the
Vocational Rehabilitation Act, 29 U.S.C. § 729, and that a system
of care which includes a continuum of services, placements, and
programs following the principles of the Hawaii Child and
Adolescent Service System Program ("CASSP") is created for the
Plaintiff Class.  At minimum, the DOE shall provide all
educational services the members of the Plaintiff Class require,
and the DOH shall provide all the mental health services members
of the Plaintiff Class may require to benefit from those

educational services.  The Decree emphasizes (1) the affirmative obligations of the DOE and DOH to seek out children who are having emotional or behavioral difficulties in the school setting or who may be eligible for services under Part H of the IDEA to determine their eligibility under IDEA or Section 504, and (2) the creation of partnerships (a) between the DOE and DOH, (b) between the DOE/DOH and other state and private agencies and individuals who provide related services to class members, and (c) between the families of class members and their schools, including alternative placements in programs, facilities and institutions away from their schools.  It also emphasizes coordination of services between responsible agencies, timely and adequate intervention, delivery of services in home- and community-based settings and in a culturally-relevant manner. Its implementation requires initiatives in the areas of service development, training, and quality assurance.  This Decree contemplates that fundamental change will occur wherever necessary to establish a system of care that satisfies the law and the principles embodied herein.  The planning process must be careful and complete.  There may need to be structural change and the assistance of all branches of state government may be called for.

　　　　4.　　Instead of specifying the precise means for accomplishing these ends, the Decree lays out a set of "operating principles" or "standards" and requires that these principles or standards be incorporated into the new system of care which

2

Defendants will design and implement by the intermediate and final dates set out in or to be established under this Decree.

  5. The Decree requires that, by seven months after the effective date of this Decree, Defendants deliver an Implementation Plan to Plaintiffs' counsel for review and approval and subsequent submission to the Court for its approval. The Implementation Plan shall identify the agencies and resources, including funding, which will be required to establish the new system of care. It shall also describe tasks which must be completed, including rulemaking and the establishment of an interagency computerized data base and information system, and identify steps that must be taken and by whom to complete the plan and establish the new system. Because this Decree sets in motion a process involving complex and fundamental reforms, this Decree allows the Defendants a period of six years within which to complete the Implementation Plan and make the new system of care fully operational.

## II. Liability

  6. On May 24, 1994, the Court entered an Order Granting In Part and Denying In Part Plaintiffs' Motion For Summary Judgment and Granting In Part and Denying In Part Defendants' Motion For Dismissal Or For Summary Judgement, holding that Defendants "have systematically failed to provide required and necessary educational and mental health services to qualified handicapped children of the State of Hawaii in

3

violation of the Individuals with Disabilities Education Act and the Rehabilitation Act of 1973." This holding was based, in part, on the acknowledgement of Defendants of deficiencies in the system of care.

7. The parties acknowledge that the persons currently named in their official capacities will leave those positions, and be replaced by other persons. However, it is understood and agreed that the State of Hawaii, through its elected and appointed representatives in the executive branch, has the continuing obligation to carry out the terms of this Decree, including timetables, irrespective of changes in officials and personnel.

## III. The Plaintiff Class

8. The "Plaintiff Class" is "all children and adolescents with disabilities residing in Hawaii, from birth to 20 years of age, who are eligible for and in need of education and mental health services but for whom programs, services, and placements are either unavailable, inadequate, or inappropriate because of lack of a continuum of services, programs, and placements."

9. The parties agree that the Plaintiff Class is currently larger than the numbers currently identified as eligible under IDEA or Section 504, but that all members of the Plaintiff Class cannot be identified or served until there is reform of the system currently in place to serve them.

4

IV.  <u>Definitions</u>

10.  For the purpose of this Decree and related documents, the terms are defined as follows and shall be construed as they are used in Section 504 and IDEA, as amended:

a.  assessment - performance of a holistic evaluation of a class member's levels of functioning and a resulting identification of needs, if any.

b.  case management - assuming primary responsibility for coordinating all aspects of the delivery of services under IDEA or Section 504:  identification, diagnosis, assessment, program planning, placement, monitoring, and follow-up.

c.  community-based - services or programs provided in reasonable geographic proximity to a child's residence and in community settings in which children without disabilities may participate.

d.  culturally relevant - services which are planned and delivered in a setting and a manner which recognize and are consistent with the cultural values of the class member and his family.

e.  early intervention services - as defined in 34 C.F.R. § 303.12.

f.  educational services - regular, adapted regular, or special education.

g.  foster home - a family home into which a class member may be placed which provides 24-hour care and

supervision on a short or long term basis for the class member.

       h.    guardian - a person or agency appointed under state law.

       i.    individualized education program ("IEP") - a written statement which is developed and implemented in accordance with 34 C.F.R. § 300.41 - § 300.350 which includes statements of present levels of performance, annual goals, including short-term instructional objectives, and the specific special education and related services to be provided, including transition services as defined in 34 C.F.R. § 300.18; the projected beginning dates and duration that services will be provided; and objective criteria and evaluation procedures and schedules for determining whether stated instructional objectives are met.

       j.    individualized family service plan ("IFSP") - as defined in 34 C.F.R. § 303.340(b).

       k.    individualized transition plan ("ITP") - as defined in 34 C.F.R. § 300.346, that portion of an IEP for a class member age 16, or younger when appropriate, which anticipates the class member's movement from school to post-school activities, and describes the types and forms of delivery of transition services to facilitate that move; as defined in 34 C.F.R. § 303.344, that portion of an IFSP for a class member under the age of 4 which describes the types and delivery of transition services a class member needs to facilitate transition into school activities, including preschool.

l.    modification plan ("MP") - a written statement describing the specific regular or adapted regular education and related services to be provided a class member who does not require special education, including long- and short-term instructional goals and objectives, and identifying who will provide the services described.

m.    normal - as close as reasonably possible to conditions or circumstances faced by a child who is not disabled.

n.    parent - as defined in 34 C.F.R. § 300.13 and 34 C.F.R. § 303.18.

o.    parent counseling and training - as defined in 34 C.F.R. § 300.16(b)(6).

p.    partnership - a relationship in which the parties work together toward the common goal of enhancing the provision of appropriate services to a child.

q.    recreation - as defined in 34 C.F.R. § 300.16(b)(9).

r.    related services - those services as are required to assist a child with a disability to benefit from special education (34 C.F.R. § 300.16), or that are required by 34 C.F.R. § 104.33, including aids.

s.    residential placement - placement in an alternative residential setting outside the class member's home to provide 24-hour care, supervision and treatment on short or long term basis, including wilderness camps, addiction treatment facilities, etc.  See also 34 C.F.R. § 104.33(c)(3).

7

t.  respite - provision of assistance or relief for caregivers of class members.

u.  services - educational and related services, or early intervention services.

v.  special education - specially designed instruction as defined in 34 C.F.R. § 300.17 which is provided in accordance with 20 U.S.C. §§ 1401 et seq., and its implementing regulations and 29 U.S.C. § 794 and its implementing regulations.

w.  surrogate parent - as defined in 34 C.F.R. § 300.514 and 34 C.F.R. § 303.406.

x.  therapeutic foster home - a foster home which is supported by professional therapists and relief personnel.

y.  timely - in accordance with the applicable time requirements of the IDEA and Section 504.

z.  transition services - as defined in 34 C.F.R. § 300.18 for a class member age 16, or younger when appropriate, and as defined in 34 C.F.R. § 303.344 for a class member under the age of 4.

aa.  vocational education - as defined in 34 C.F.R. § 300.17(b)(3).

V.  **Obligations of Defendants**

11.  Defendants shall, pursuant to the timetable in this Decree and the Implementation Plan:

a.  Establish a system of care which consists of (1) a system of care of programs, placements and services, and

(2) organizational and managerial infrastructure capable of supporting the system, and which, at minimum, ensures that the requirements of the IDEA and Section 504 and the principles and standards of this Decree are satisfied.

b. Develop an Implementation Plan, i.e., a plan of operations with specific goals and a timetable, for establishing the system of care and implementing the requirements of this Decree.

12. Subject to the timetable and other specific requirements in the Implementation Plan, each and every member of the Plaintiff Class is entitled to be treated in accordance with the "principles" or "standards" in Section VI below.

13. Irrespective of the timetable in the Implementation Plan, Defendants shall not decrease the quality or quantity of programs or services available to the class members. The benchmark for measuring compliance with this maintenance of effort requirement is those programs, placements and services in place or for which legislative appropriation had been made as of May 2, 1994. In addition, Defendants shall continue at all times prior to the termination of this Decree to develop additional services, programs and placements as the needs of the Plaintiff Class require.

## VI. Principles and Standards

14. The new system of care which Defendants design and establish shall be designed and shall operate in conformity with the following "principles" and "standards."

a.    Class members will be provided prompt access to a continuum of programs, placements and services that provides educational, related services or early intervention services appropriate to their age and needs.

b.    Class members will be served in the least restrictive environment appropriate to their needs.  No class member will be placed on the mainland for services unless it is not possible, through the timely provision of services (including intensive and flexible home-based services and family support), to provide an appropriate program in Hawaii.

c.    Programs and planning will anticipate the special developmental needs of each class member.

d.    Programs and planning will be integrated to ensure a seamless delivery of services.

e.    Where possible, the system's programs, placements, and services will be linked with other service systems in the community, so that planning, financing and service delivery for overlapping services such as education, health, mental health, child welfare, juvenile justice, vocational rehabilitation, etc. are integrated.

f.    Services will be child and family centered, involving and consulting families in planning, evaluation, training, treatment, and support functions.

g.    Services should provide as "normal" an environment for children and youth as possible.

h.    Class members and their families may refuse

10

services to the extent permitted under law.

   i. Class members and their families will be encouraged and assisted to access services.  When class members or their families refuse or fail to access services, the reasons for their doing so shall be assessed and the services that have been offered shall be modified or alternative services will be offered to encourage acceptance of services.

   j. Class members will be provided individualized services based on each one's unique strengths and needs.

VII. **The System of Care to be Designed and Implemented**

   15. The system will be capable of recognizing the strengths and needs of each class member.  Those strengths and needs shall dictate the type and mix of services provided; the type and mix of services provided will not be dictated by the availability of services.  Services must be adapted to class members.  Services will be developed when they are needed but unavailable.

   16. Services to class members will be delivered pursuant to an IEP, IFSP or MP which contains a detailed description of all educational, related, or early intervention services to be provided.

   17. There must be a reasonable prospect that the services provided in response to a class member's needs will achieve their purpose.  The services must be of a type and mix likely to be effective in meeting the class member's needs.

   18. Each IEP, IFSP, or MP will be based on a

11

comprehensive, individualized assessment of the strengths and needs of each class member, and recognize the environment in which the class member lives.

19. Each IEP, IFSP, or MP will identify the specific steps to be taken by service providers toward meeting the short-term and long-term objectives stated in the program or plan and will include objective criteria to measure a class member's progress toward the goals and objectives of the program or plan.

20. The system's infrastructure shall include mechanisms to monitor and shall monitor implementation of each IEP, IFSP or MP, and to immediately update and modify the types and forms of delivery of services identified in them to meet their goals and objectives or to prevent and address deterioration in functioning.

21. The presence of at-risk factors such as failure to realize social, emotional, or developmental milestones; lack of success or marked change in functioning in social or intervention programs, at home or at school; repeated absences from school; or significant behavioral problems in any of the above environments at home or at school shall be considered indicators of the need for an assessment to determine whether a class member is eligible for special education services, adapted regular education services, related services, or early intervention services, or whether the educational, related, or early intervention services identified and being delivered in an IEP, IFSP or MP are appropriate in type or quantity.

22. Class members, parents, and surrogate parents shall be accurately and timely informed, in language understandable to them, concerning: their rights under the IDEA and Section 504; the contents of an IEP, IFSP or MP, including objectives, the services to be provided, placements, and options.

23. Provisions will be made for class members, parents, and surrogate parents to be involved in the planning and delivery of services, in accordance with paragraphs a, b and c below.

a. Each class member shall be treated as a partner in the planning, delivery and evaluation of services if the class member is age 10 or older and, if the class member is under the age of 10, when possible.

b. Each class member's parents shall be treated as partners in the planning, delivery and evaluation of services if the class member is living with his or her parents, or if his parents' rights have not been terminated.

c. When necessary, services shall be provided class members and parents to enable them to participate as partners. Such services shall include advance discussions, scheduling consideration, interpreter's services, assistance with understanding written materials, and other accommodations as needed.

24. The system shall be sensitive to cultural differences and the special needs of ethnic and racial groups. Services shall be provided in a manner that respects these

13

differences and attends to these special needs.  These differences and special needs shall not be used as an excuse for failing to provide services.

25.  Special education shall be recognized as a service, not a place, and shall be delivered in school-based, home-based, and community-based settings.

a.  Written policies of the system shall reinforce the principle common to the IDEA, Section 504, and CASSP that placements outside a class member's school, community, or the State are the exception not the rule, and must include provisions for maintaining a class member's ties with and facilitating a class member's return to school, community or the State if placement is outside the school, community or State.

b.  Stability in class members' living situations should be promoted.  Written policies will describe when and how class members placed outside their family or community are to be returned to their family and community in the shortest possible time.

c.  The system shall be designed to minimize multiple placements, including educational placements.  Short-term placements shall be used only when they are specifically required to meet the needs of the class member.

26.  The system shall be designed to and shall provide for IEPs, IFSPs, MPs, and programs, placements, and services which minimize regression resulting from gaps or transitions in educational programs or related services, such as spring breaks,

14

summer vacation, changes in service providers and similar events.

27.  The system shall ensure that services are delivered in a coordinated manner, consistent with the class member's strengths and needs.

28.  Services shall be provided by competent staff, including professionals who meet all relevant professional standards, who are adequately trained and supervised and who have appropriate caseloads.

29.  The system's infrastructure must include quality assurance and monitoring processes to be used by the DOE/DOH to regularly evaluate the system's effectiveness; regular assessments of the system's programs, services and placements shall be made to determine whether they are effective.  It must also include an interagency computerized data base and information system to support the system of care which is implemented.

30.  Any behavior modification program employed in the treatment or management of a class member shall be individualized and meet generally accepted professional standards, including that:

a.  The program rely primarily on rewards for appropriate behavior, instead of punishments;

b.  The program be based on a careful assessment of the antecedents of the behavior that the program is designed to change; and

c.  The program be consistently implemented in

15

school, and out-of-school to the extent possible.

31. The system shall be designed to inform and train and shall inform and train persons appointed to serve as surrogate parents about their obligations and the provisions of the IDEA, Section 504 and CASSP to enable them to effectively serve as surrogate parents. Caseloads of surrogate parents appointed for class members shall be small enough to permit them to be actively and effectively involved in the planning and monitoring of the delivery of educational and related services, or early intervention services.

32. Appropriate representatives of the DOE and DOH shall participate in meetings and similar efforts to plan appropriate educational, related or early intervention services for class members. The system shall be designed to maximize interfaces with and class members' participation in programs, services, and placements of other public and private agencies, and to facilitate cooperation between the DOE/DOH and these other agencies.

33. The IEPs, IFSPs, or MPs of class members who are in foster care shall be coordinated with their foster care individual service plans.

34. The system will include programs, placements and services to promote smooth transitions for class members through the Part H programs and 3-20 special education programs, and into post-school activities.

35. The system shall promote development of skills

16

necessary for the smooth transition of class members to independent living, including, where appropriate, the provisions of vocational education and supportive independent living programs.

36. Class members shall be provided effective assistance and support in applying for SSI benefits. Where it is necessary that a class members' parents apply for benefits, such assistance and support shall be provided to the parents.

37. Early identification and timely intervention in order to enhance the likelihood of positive outcomes shall be promoted. The system will include processes to ensure that all referrals and requests for an assessment of mental health needs are timely and appropriately responded to.

38. DOE and DOH staff and the departments' service providers will be given information and training about state-of-the-art methods, strategies, and materials for serving class members and their families.

39. The system will include and foster strategies to promote the utilization of services by class members and their families, to evaluate the services, their utilization levels and their effectiveness, and to permit ready adjustments to and alternatives for services offered.

VIII. **Implementation**

40. An Implementation Plan (i.e., a plan of operation which describes the specific design for the new system of care, and includes a specific schedule with critical milestones for

17

implementing the design) shall be delivered to Plaintiffs' counsel within seven months after the effective date of this Decree for review and approval. Plaintiffs shall present the plan to the Court for its review and approval or, if Plaintiffs believe changes are required, with a motion to amend the proposed implementation plan.

41. The system of care required to be established under this Decree shall be fully implemented and operational by June 30, 2000. The Implementation Plan shall be developed to assure compliance with this requirement, and include intermediate deadlines for this purpose.

42. Defendants shall prepare and submit to the Legislature such legislation Defendants deem necessary to assure compliance with this Decree and completion of the Implementation Plan in accordance with its timetable.

43. Throughout the pendency of this Decree, class members and their parents, including surrogate parents, shall be timely and accurately informed in language understandable to them of their rights under this Decree.

IX. **Monitor, Technical Assistance Panel and Staff**

   A. Monitor

   44. Dr. Ivor Groves shall serve as Monitor of this Consent Decree. The Monitor shall:

      a. Monitor Defendants' efforts to implement the provisions of this Decree and the Implementation Plan, pursuant to the Monitoring Plan;

18

b.    Issue ~~semiannual~~ reports concerning

Defendants' progress in implementing this Decree and the

~~Implementation~~ Plan;

c.    Otherwise keep the parties apprised of

Defendants' implementation of and compliance with this Decree;

d.    Upon request of a party, meet with the party

to discuss progress and further measures needed to achieve

compliance;

e.    Timely respond to written inquiries from the

parties;

f.    Make recommendations to the Court concerning

enforcement of compliance;

g.    Develop the Monitoring Plan, with review by

and input from DOE, DOH, the technical assistance panel, and

necessary design consultants, to measure the Defendants' progress

in establishing the new system of care in accordance with this

Decree and the Implementation Plan, and the effectiveness of the

new system of care as it is being implemented; and

h.    Review complaints or concerns brought to his

attention and, if in his professional judgment they raise

concerns of a systemic nature that may have an impact on the

Defendants' compliance with this Decree, make appropriate

recommendations to Defendants so that they may address the

situation and, if necessary under subparagraph f of this

paragraph or under paragraph 46, to the Court. ~~Consistent with~~

~~the class action status of this case, individual complaints shall~~

19

not be acted upon in this action by the Monitor or the Court.

45.    The Monitor shall have access to all information and documents in the possession of or available to the DOE and DOH which the Monitor may require to perform his job.    Access shall include access to:  DOE and DOH personnel at all levels, class members, service providers at placements in which class members receive educational or related services, and educational or mental health case records concerning class members and their families, as permitted by any further order of this Court.

46.    The parties may have ex parte communications with the Monitor; however, the Monitor shall disclose all communications to both sides if requested.  If the Monitor and the Court so agree, the Monitor may communicate ex parte with the Court on any matter at any time.

47.    Any party who disagrees with a decision of the Monitor which is material to the rights of the parties hereto may appeal that decision to the Court, and the Court's decision on the matter shall be final.

48.    The Monitor may be dismissed and replaced (a) by agreement of the parties or (b) by the Court upon petition of either party when exceptional circumstances are shown.

B.    Technical Assistance Panel

49.    The DOE and DOH shall utilize a technical assistance panel consisting of at minimum Dr. Ivor Groves, Dr. Lenore Behar, and Dr. Judith Schrag to assist the DOE and DOH to design the new system of care and to formulate the Implementation

Plan.  The panel or the Defendants may also retain experts on
special education, mental health, or systems reform, persons
knowledgeable about Hawaii's educational and mental health
systems, and others with specialized knowledge or skills who
would be of assistance in satisfying the requirements of this
Decree.

    C.   Budget and Administration

    50.  Defendants shall provide the Monitor and Technical
Assistance Panel with a fully furnished office site, and
sufficient funds annually to pay all necessary expenses,
including a full-time staff of at least one person, to carry out
the functions of the Monitor, Technical Assistance Panel and
staff.  The budget for the first fiscal year shall be $400,000,
subject to modification by agreement of the parties or further
order of the court if necessary.  Payment shall be made by state
warrant which shall be delivered to the Felix Monitoring Project,
c/o the Alston Hunt Floyd & Ing client trust account by June 30,
1994.  The state warrant paying an amount not to exceed that sum
in the following fiscal years beginning July 1, 1995 shall be
delivered to the Monitor or such other person as the Court shall
order, within ten working days of the beginning of the fiscal
year.  The exact amount of each subsequent years' payments shall
be agreed upon by parties by April 30 prior to the start of the
new fiscal year or, if the parties are unable to agree by that
date, shall be determined by the Court.  An interest bearing
account into which the state warrants shall be deposited will be

21

opened.  Quarterly reports of the expenditures from the account
shall be distributed to counsel for all parties within thirty
days of the closing of a fiscal quarter.

**X.    Primacy of this Decree and Deadlines**

51.  Only this Court shall have the authority to
determine compliance with this Decree.

52.  Nothing in this Decree supersedes, or diminishes
or qualifies the provisions of the IDEA and Section 504 or their
implementing regulations.

**XI.   Attorneys Fees and Costs**

53.  Plaintiffs are "prevailing parties" in this
litigation and shall recover (a) the expenses of their counsel,
(b) reasonable attorneys fees, and (c) the fees and expenses of
expert witnesses.

54.  Plaintiffs have represented through billing
information submitted by counsel's letter dated June 7, 1994 that
attorney fees in the following amounts have been accrued by their
respective counsel to date:

| | |
|---|---|
| Alston Hunt Floyd & Ing | $242,288.28 |
| Susan A. Cooper | $18,750.00 |
| Jennifer Schember-Lang | $41,562.50 |
| Eric Seitz | $46,075.00 |
| Carl M. Varady | $31,605.00 |

and that the expenses incurred, including experts fees and costs,
are in the range of $90,000 to $110,000.  On the basis of such
information, Defendants agree to reimburse Plaintiffs' counsel

22

for 60 per cent of the amounts indicated above by June 30, 1994
and 100 per cent of the unduplicated expenses described in the
billing information submitted.  Thereafter, unless the parties
are able to agree as to the balance of fees and expenses to be
paid by Defendants, Plaintiffs may file a motion for an award of
all or part of the balance of reasonable expenses and attorney
fees described in the billing information.  Plaintiffs may
further seek to recover the attorneys fees incurred in the
preparation and prosecution of such petition.

**XII. Resolution of Disputes; Termination of Decree**

55.  This Decree anticipates ongoing efforts by the
parties to resolve matters by mutual consent.  If the parties are
unable to resolve a matter by mutual consent, the matter shall be
referred to the Court for resolution.

56.  The failure of the parties to reach mutual
agreement on any matter or matters shall not invalidate or
nullify this Decree or any requirement of this Decree.

57.  The parties hereto stipulate to the jurisdiction
of this Court over the matters contained herein, and waive all
right to appeal from the Court's May 24, 1994 order, the Order
Granting Motion to Certify Class entered on March 8, 1994, or
from any matter consented to herein.

58.  On or after June 30, 1999, but before June 30,
2000, the Defendants may move for termination of this Decree upon
a showing that they are in substantial compliance with the
requirements of the Decree and of the Implementation Plan and

23

that there is a reasonable prospect that they will remain in substantial compliance. If a motion is not brought pursuant to this paragraph to sooner terminate this Decree, and there are no motions pending before the Court concerning compliance or to extend the time for full compliance with this Decree beyond June 30, 2000, then this Decree shall terminate and the Court shall relinquish jurisdiction over this matter on June 30, 2000.

59. References to the IDEA and section 504 shall be construed to include subsequent amendments to those laws. Either or both parties may bring motions to amend this Decree if amendments to the IDEA or Section 504 are made. Provisions of this Decree which are not contrary to any amendment to the IDEA or Section 504 and not incorporated in the Decree by motion of a party or the parties, shall continue to have full force and effect notwithstanding the amendments to the two federal laws. Motions shall be filed with the Court within sixty days of the effective date of the amendments to the two laws.

24