405384.1
**MARK J. BENNETT**        #2672-0
Attorney General, State of Hawaii

**GARY K.H. KAM**        #4391-0
**GEORGE S. S. HOM**        #2487-0
**HOLLY T. M. SHIKADA** #4017-0
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaii
235 S. Beretania Street, Suite 304
Honolulu, Hawaii 96813
Telephone No. (808)586-1255
Facsimile No. (808)586-1488
E-Mail:  Gary.K.Kam@hawaii.gov


WATANABE ING LLP
A Limited Liability Law Partnership

**MELVYN M. MIYAGI**        #1624-0
**GREGG M. USHIRODA**        #5868-0
**LEIGHTON M. HARA**        #7826-0
**ROSS T. SHINYAMA**        #8830-0
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii  96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-Mail: gushiroda@wik.com


Of Counsel:
ROBBINS & ASSOCIATES
Attorneys At Law
A Law Corporation

**KENNETH S. ROBBINS**        #1000-0
**JOHN-ANDERSON L. MEYER**        #8541-0
**SERGIO RUFO**        #8211-0
Davies Pacific Center
841 Bishop Street, Suite 2200
Honolulu, Hawaii 96813
Telephone No. (808) 524-2355
Facsimile No. (808) 526-0290
E-Mail: defend@robbinsandassociates.net

Attorneys for Defendant
DEPARTMENT OF EDUCATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>    Plaintiffs,<br><br>    vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii,<br><br>    Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>(Other Civil Action)<br><br>**DEFENDANT DEPARTMENT OF EDUCATION'S REPLY TO PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANT DEPARTMENT OF EDUCATION'S MOTION IN LIMINE #5 TO EXCLUDE ALL EVIDENCE OF (1) "DECISION AND ORDER" DATED 5/21/01; AND (2) ALLEGED IDEA AND SECTION VIOLATIONS BY DEFENDANTS ON OR BEFORE JULY 1, 2002; CERTIFICATE OF SERVICE**<br><br>**TRIAL: September 9, 2008**<br>**JUDGE: Honorable Alan C. Kay** |

**DEFENDANT DEPARTMENT OF EDUCATION'S REPLY TO PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANT DEPARTMENT OF EDUCATION'S MOTION IN LIMINE #5 TO EXCLUDE ALL EVIDENCE OF (1) "DECISION AND ORDER" DATED 5/21/01; AND (2) ALLEGED IDEA AND SECTION VIOLATIONS BY DEFENDANTS ON OR BEFORE JULY 1, 2002**

COMES NOW Defendant DEPARTMENT OF EDUCATION ("DOE"), by and through its attorneys, WATANABE ING LLP and ROBBINS AND ASSOCIATES, and hereby submits its Reply to Plaintiffs' Supplemental Opposition to Defendant Department of Education's Motion in Limine #5 to Exclude All Evidence of (1) "Decision and Order" Dated 5/21/01; and (2) Alleged IDEA and Section 504 Violations by Defendants On or Before July 1, 2002, filed September 6, 2008.

2

At the further pretrial conference held on September 5, 2008, this Court granted Plaintiffs' request to submit written briefs on the issue of whether the Release and Settlement Agreement entered into by the Plaintiffs, the DOE, and the Department of Health on July 1, 2002 (the "2002 Settlement Agreement") precludes Plaintiffs from recovering damages for claims that arose prior to July 1, 2002.  A true and correct copy of the 2002 Settlement Agreement is attached as Exhibit "A" to the Declaration of Gregg M. Ushiroda (the "Ushiroda Declaration").  On September 6, 2008, Plaintiffs filed their Supplemental Memorandum in Opposition to Defendant Department of Education's Motion in Limine #5 to Exclude All Evidence of (1) "Decision and Order" Dated 5/21/01; and (2) Alleged IDEA and Section 504 Violations by Defendants On or Before July 1, 2002, filed September 6, 2008 (the "Supplemental Opposition").  The DOE now submits its Response to Plaintiffs' Supplemental Opposition.

I.   **The 2002 Settlement Agreement Precludes Plaintiffs from Recovering Damages for Claims that Arose Prior to July 1, 2002.**

The 2002 Settlement Agreement was a full and final settlement and discharge of all claims that arose prior to July 1, 2002.  Specifically, but not limited to, the 2002 Settlement Agreement was a full and final settlement and discharge of all claims which may or might have been made by reason of (1) the "Decision and Order" issued by the Hearing Officer on May 21, 2001 (the "2001 Order") and (2) Plaintiffs' February 15, 2002

lawsuit. Recital F of the 2002 Settlement Agreement states as follows:

> The parties hereto desire to enter into this Agreement in order to provide for the full and final settlement and discharge of all claims which have been made, or might be made, by reason of the claims described in the Recitals above, upon the terms and conditions set forth below.

See Exhibit "B" at 2.

Section 3 of the 2002 Settlement Agreement states as follows:

> In consideration of the provisions set forth above, the Bonds hereby completely waive, and release, and forever discharge the State from any and all past, present, or future claims or demands, obligations, actions, causes of actions [sic], rights, damages, costs, expenses, attorneys fees, and any compensation of any nature whatsoever, arising out of the claims described in the Recitals above.

See Exhibit "B" at 9.

Thus, by entering into the 2002 Settlement Agreement, Plaintiffs are precluded from recovering damages for any and all claims that arose prior to July 1, 2002.

II. **Judge Gillmor Did Not Hold that Plaintiffs are Entitled to Damages for Claims that Arose Prior to July 1, 2002.**

In their Supplemental Opposition, Plaintiffs appear to argue that if the Court were to adhere to the plain language and purpose of the 2002 Settlement Agreement, thus, precluding Plaintiffs from recovering damages for any and all claims that arose prior to the 2002 Settlement Agreement, that the Court

4

would be overturning Judge Gillmor's December 2006 Order Denying Defendants' Motion for Summary Judgment Construed as a Motion for Judgment on the Pleadings, et al. (the "December 2006 Order"). Plaintiffs' argument is completely meritless.  Indeed, during the March 28, 2006 hearing before Judge Gillmor, Judge Gillmor stated that Plaintiffs may recover damages only for claims that arose after the 2002 Settlement Agreement.  Judge Gillmor stated:

> Okay. So, that settlement, whatever it was, deals with all of the rights up until that point; and whatever that settlement is, it is.  And I don't know how it relates to the '04 case, **but we aren't going back beyond that to find <u>damages</u> because that's the point at which parties came to an agreement.**

<u>See</u> Transcript of the March 2006 Hearing at pp. 12:22- 13:2, a true and correct copy of which is attached as Exhibit "B" to the Ushiroda Declaration (emphasis added)

On two other occassions during the March 28, 2006 hearing, Judge Gillmor stated similar observations:

> However, let me point out to you, Mr. Varady, that as far as I understand the situation, there have been settlements.  And the settlements are -- at that point in time rights were given up and the settlements exist and they are the point from which you go forward.  Because, otherwise, what's the point of having a settlement.

<u>See</u> Exhibit "B" at pp. 11:23- 12:3.

> So, I guess my question to you is: At what point are you -- you know, what's the last settlement that takes care of both sides' rights up to that point?  Because I don't see how you can be talking about a remedy other than what goes forward from the last settlement.

<u>See</u> Exhibit "B" at p. 13:19-23.

Judge Gillmor made it explicitly clear that Plaintiffs are not entitled to recover damages for claims that arose prior to the "last settlement agreement" - the 2002 Settlement Agreement.  Thus, Plaintiffs' contention that were the Court to hold that Plaintiffs are precluded from recovering damages for claims that arose prior to July 1, 2002 that it would be overturning Judge Gillmor's December 2006 Order is completely meritless.[1]

## III. Plaintiffs Have Disavowed Any "Breach of Contract" Claim.

In their Supplemental Opposition, Plaintiffs cite to numerous case law regarding claims for "breach of contract." Plaintiffs, however, have disavowed any claim for "breach of contract" in this lawsuit.  Judge Gillmor stated in the December 2006 Order:

> At the hearing before this Court on March 28, 2006, the Plaintiffs conceded that in this

---

[1]    In their Supplemental Opposition, Plaintiffs state that the DOE's submission of a limiting instruction regarding the Felix Consent Decree "confirms that Defendant clearly understood the Court's denial of Defendant's Motion."  See Supplemental Opposition at 3.  The DOE understands that this Court DENIED its Motion in Limine #5 to Exclude All Evidence of: (1) "Decision and Order" dated May 21, 2001; and (2) Alleged IDEA and Section 504 Violations On or Before July 1, 2002 ("Motion in Limine #5").  As the Court held, such evidence is relevant to whether the DOE had knowledge that harm to Bryan's federally protected rights under Section 504 was substantially likely.  Nonetheless, the above referenced limiting instruction was not in response to this Court's denial of the DOE's Motion in Limine #5.  Rather, the above referenced limiting instruction was provided to this Court in response to this Court's ruling on the DOE's Motion in Limine #1 to Exclude Reference to the Felix Consent Decree and Contempt Order dated June 1, 2001.

6

consolidated lawsuit the only remedy they
seek is money damages under Section 504 "for
the harm caused to Bryan and his parents by
the DOE" as a result of the "DOE's deliberate
indifference."

See December 2006 Order at 14.

Further, as this Court is aware, the Ninth Circuit
Court of Appeals has already rejected efforts to frame challenges
to IEPs as breach of contract claims.  See Van Duyn v. Baker Sch.
Dist. 5J, 502 F.3d 811, 820 (9th Cir. 2007).  Plaintiffs,
however, argue that Van Duyn "merely affirms that an IEP is not
enforceable as a contract," and that it "does not concern or
refer to enforcement of settlement agreements."  See Supplemental
Opposition at 9 n. 3 (emphasis in original).  Plaintiffs'
argument, however, conveniently disregards the fact that, in
entering into the 2002 Settlement Agreement, the DOE agreed to
implement the May 24, 2002 IEP.  See Exhibit "A" at 3.  Indeed,
the 2002 Settlement Agreement lists all the educational and
related services that the DOE agreed to provide Bryan under the
IDEA.  Thus, any claim for "breach of contract" of the 2002
Settlement Agreement would essentially be a claim for "breach of
contract" of the May 24, 2002 IEP.  As a result, Plaintiffs do
not have a viable claim for "breach of contract" in this
lawsuit.[2]

_____

[2]     In their Supplemental Opposition, Plaintiffs argue that
"[t]he Settlement Agreement may be rescinded and repudiated if
Defendants materially breached it."  See Supplemental Opposition
at 8.  "Rescission" is a contract remedy, and, as evidenced
supra, Plaintiffs do not have a valid claim for "breach of

Regardless of whether Plaintiffs have a viable "breach of contract" claim, Plaintiffs should not now be afforded the opportunity to reassert such a claim. By their own choice, Plaintiffs have disavowed any claim for "breach of contract." Further, Plaintiffs have been on notice since March 28, 2006 that the 2002 Settlement Agreement precluded Plaintiffs from recovering damages for claims that arose prior to July 1, 2002. As Judge Gillmor informed Plaintiffs at the March 28, 2006 hearing, "we aren't going back beyond [the last settlement agreement] to find damages because that's the point at which parties came to an agreement." See supra. To allow Plaintiffs to now reassert a claim for "breach of contract" would be unfairly prejudicial to the DOE.[3]

---

contract." Further, in Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaii 277, 288, 172 P.3d 1021, 1032 (Haw. 2007), a case cited by Plaintiffs, the Hawaii Supreme Court held that a settlement agreement may be rescinded where the plaintiff was induced to enter into such settlement agreement by fraudulent or material misrepresentations. The plaintiff's reliance on such fraudulent or material misrepresentations must be justified. See id. In this case, there is no evidence of any fraudulent or material misrepresentations. Indeed, if it was never the intent of the DOE to fulfill the terms of the 2002 Settlement Agreement, which Plaintiffs claim, why would the DOE provide 75% of the skills trainers hours required. Further, Plaintiff Ann Kimball Wiles, as an educator, and at the time she entered into the 2002 Settlement Agreement, was well aware of the fact that the DOE had trouble finding a sufficient amount of skills trainers in Kona. Thus, even if Plaintiffs had a viable "breach of contract" claim, rescission of the 2002 Settlement Agreement would not be an appropriate remedy.

[3]    Plaintiffs request that this Court "permit both parties to present their evidence to the jury regarding contract formation." Contract formation, however, is a "question of law for the court to determine." Wall Data Inc. v. Los Angeles

**IV.  CONCLUSION**

Based upon the foregoing and upon argument to be presented at the hearing, the DOE respectfully requests that this Court enter an order precluding Plaintiffs from recovering damages for any and all claims that arose prior to July 1, 2002.[4]

DATED:  Honolulu, Hawaii, September 8, 2008.


/s/GREGG M. USHIRODA
MELVYN M. MIYAGI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

KENNETH S. ROBBINS
JOHN-ANDERSON L. MEYER
SERGIO RUFO

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendant

---

County Sheriff's Dep't., 447 F.3d 769, 785 (9th Cir. 2006). Presenting evidence to the jury regarding contract formation would thus be inappropriate.

[4]    If this Court does preclude Plaintiffs from recovering damages for claims that arose prior to July 1, 2002, the DOE respectfully requests that this Court afford the DOE the opportunity to submit a limiting instruction regarding the differences between services required under the IDEA and accommodations required under Section 504.  While the DOE has no objections to this Court's proposed limiting instruction regarding the differences between the IDEA and Section 504, the DOE respectfully contends that a limiting instruction specific to the 2002 Settlement Agreement is appropriate.