IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ANN KIMBALL WILES and STANLEY BOND, individually and as next friends of their son, BRYAN WILES-BOND, a minor,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>DEPARTMENT OF EDUCATION, State of Hawaii,<br><br>　　　　Defendant. | CIVIL NO. CV 04-00442 ACK/BMK<br>CIVIL NO. CV 05-00247 ACK/BMK<br>(Other Civil Action)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

Defendant DEPARTMENT OF EDUCATION ("DOE"), by and through its attorneys, WATANABE ING LLP and ROBBINS & ASSOCIATES, hereby submit the following Memorandum in Support of their Motion to Withdraw Daniel LeGoff's Expert Reports as Joint Exhibits and To Preclude the Testimony of Loretta Lukens and Keynes Von Elsner.

I.　**The Expert Reports of Dr. Daniel LeGoff Should Be Removed <u>From the Joint Exhibit List.</u>**

The expert reports of Dr. LeGoff were submitted to this Court as the following joint exhibits: J-25 [Dr. LeGoff's Neuordevelopmental Evaluation dated June 17, 2005]; J-26 [Dr. LeGoff's Report dated December 13, 2005]; and J-27 [Dr. LeGoff's Neuro Re-evaluation dated June 1, 2007]. Based upon the previous representations of Plaintiffs that Dr. LeGoff would be called to testify at trial, the DOE stipulated to Dr. LeGoff's expert

reports being submitted as joint exhibits.  <u>See</u> Declaration of Kenneth Robbins at 3.  On September 17, 2008, the fifth day of trial in the above-captioned case, Plaintiffs, for the first time, notified this Court and the DOE that -- contrary to all previous representations to both the Court and to the DOE -- they would not be calling Dr. LeGoff to testify.  The DOE would never have stipulated to Dr. LeGoff's expert reports as being joint exhibits if it had known that Dr. LeGoff was not going to testify at trial.  <u>See</u> Declaration of Kenneth Robbins at 4.  Accordingly, in light of Plaintiffs' last minute representation, the DOE respectfully requests that the expert reports of Dr. LeGoff be withdrawn from the Joint Exhibit List.

**II.   Federal Rule of Evidence 703 Does Not Permit Experts To Be A Mouthpiece Of A Non-Testifying Expert.**

Federal Rule of Evidence 703 permits testifying experts to rely on **"facts or data"** as a basis for their opinions, even when not themselves admissible, so long as they are of a type reasonably relied upon by experts in the relevant field.  <u>See</u> Fed. R. Evid. 703.  However, "experts may not solely rely on the opinions of other experts."  <u>Jerpe v. Aerospatiale</u>, 2007 WL 1394969 at *6 (E.D. Cal. May 10, 2007).  Further, a testifying expert is not permitted to be a "mouthpiece" of a non-testifying expert.  <u>See</u> <u>Loeffel Steel Prods., Inc. v. Delta Brands, Inc.</u>, 387 F. Supp.2d 794, 808 (N.D. Ill. 2005)("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty")(internal

quotations omitted); In re Sulfuric Acid Antitrust Litigation, 446 F. Supp.2d 910, 916 (N.D. Ill. 2006)(stating that an expert may not testify where he is acting as the "mouthpiece" for the non-testifying individual); State v. Lundstrom, 776 P.2d 1067, 1074 (Ariz. 1989)("If the testifying expert merely acts as a conduit for another non-testifying expert's opinion, the 'expert opinion' is hearsay and is inadmissible, Rule 703 notwithstanding.").

In In re Sulfuric Acid Antitrust Litigation, 446 F. Supp.2d 910, 916 (N.D. Ill. 2006),[1] the district court discussed the issue of the degree to which an expert may rely on a non-testifying expert's opinions. The district court stated:

> Where the providers of the underlying data are merely "gofers or data gatherers," analysis is simple and Rule 703 allows the disclosed expert to rely on the data provided to him. Since the data is not offered for its truthfulness, the hearsay rule is not implicated.
>
> **"Analysis becomes more complicated if the assistants exercise professional judgment that is beyond the expert's ken.** In that context, it must be determined whether the disclosed expert is genuinely forming an opinion based in part of the underlying data or whether he is acting as the 'mouthpiece' for the non-testifying individual on whose data he is relying. If the latter, the hearsay rule prohibits the testimony unless

---

[1] In re Sulfuric Acid Antitrust Litigation is factually distinguishable from the present case to the extent that the non-testifying expert in that case was not disclosed as an expert witness. However, despite this factual difference, the district court's analysis regarding Federal Rule of Evidence 703 is applicable.

- 3 -

the non-testifying individual also testifies.

Id. at 915-916 (citations omitted)(emphasis added).

In the same case, the district court aptly observed:

The *Daubert* test must be applied with due regard for the specialization of modern science. A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science. A theoretical economist, however able, would not be allowed to testify to the findings of an econometric study conducted by another economist if he lacked expertise in econometrics and the study raised questions that only an econmetrician could answer. **If it were apparent that the study was not cut and dried, the author would have to testify he could not hide behind the theoretician.**

Id. (citation omitted)(emphasis added).[2]

### III. Loretta Lukens And Keynes Von Elsner Should Be Precluded From Testifying At Trial.

Both Loretta Lukens ("Ms. Lukens") and Keynes Von

---

[2] Some courts have permitted the use of the "facts or data" underlying a non-testifying expert's report being relied upon, so long as the jury is instructed that the contents of the expert report is admissible for the limited purpose of showing the bases of that expert's opinions, and that it is not being used as substantive evidence of the proof of the matter asserted. See State v. Lundstron, 776 P.2d 1067, 1074 (Ariz. 1989). The DOE submits, however, that the minimal probative value that Dr. Legoff's expert reports would have if used in this manner would be substantially outweighed by the certain jury confusion that will arise. See Fed. R. Evid. 403. If Ms. Lukens and/or Mr. Von Elsner are permitted to testify as to the contents of Dr. LeGoff's expert reports, and the DOE is not afforded the opportunity to examine Dr. LeGoff, the jury will invariably conclude that Dr. LeGoff's expert opinions are true. Further, this certain jury confusion cannot be remedied by a mere limiting instruction.

Elsner ("Mr. Von Elsner") rely heavily on the expert reports, opinions, and recommendations of Dr. LeGoff.  Indeed, Dr. LeGoff is not a mere "gofer or data gatherer" – rather, he renders expert **opinions** that neither Ms. Lukens nor Mr. Von Elsner hold the requisite expertise to testify to.  As a result, Ms. Lukens and Mr. Von Elsner would be mere "mouthpieces" of Dr. LeGoff.  As set forth above, such use of expert testimony is clearly improper.

Further, without the testimony of Dr. LeGoff, the jury will be unable to understand Ms. Lukens' and/or Mr. Von Elsner's testimony at trial.  Moreover, the jury will be unable to determine the accuracy of Ms. Lukens' and/or Mr. Von Elsner's expert opinions.  Indeed, without Dr. LeGoff's testimony, Ms. Lukens and Mr. Von Elsner would be placing monetary figures on services that the jury has not heard are even necessary in Bryan's case.  The determination of whether or not these services are, in fact, necessary cannot be left to the jury – such a determination requires the type of "specialized" knowledge held by an expert witness.  Accordingly, the DOE respectfully requests that Ms. Lukens and Mr. Von Elsner be precluded from testifying at trial.

IV.  **It Is Not Sufficient For Ms. Lukens and Mr. Von Elsner To Merely Rely On the Expert Reports Of Dr. LeGoff.**

It is expected that Plaintiffs will argue that the mere presence of Dr. LeGoff's expert reports obviates the need to have

Dr. LeGoff testify at trial, and, thus, Ms. Lukens and Mr. Von Elsner should be allowed to testify at trial. However, as more fully set forth below, Dr. LeGoff testified in his deposition to various facts and opinions which are not included in any of his expert reports. See Declaration of Kenneth Robbins at 5. Further, some of Dr. LeGoff's opinions in his expert reports, as well as in his deposition, fail to account for certain crucial facts that have arose since Bryan Wiles-Bond left Hawaii and in trial. Dr. LeGoff also renders opinions in his expert reports and deposition in which the bases of such opinions are neither explained nor clarified. Dr. LeGoff also sets forth opinions in his expert reports that are beyond the understanding of lay persons, including Ms. Lukens and Mr. Von Elsner. Lastly, to the extent that Plaintiffs argue that Dr. LeGoff has explained the bases for his opinions in his deposition, and, thus, the need for live testimony is obviated, such deposition testimony should not be read into the record.[3] Examples of such instances are as follows:

- In his December 13, 2005 report, Dr. LeGoff opines that Bryan's "daily adaptive and self-care skills were significantly below where they should be based on an assessment of his learning potential (i.e., consistent with functioning in the severe

---

[3] Plaintiffs did not designate the deposition of Dr. LeGoff. As a result, since the deadline has passed, Plaintiffs should not now be allowed to read into the record Dr. LeGoff's deposition. Further, even if this Court entertains such an idea, Plaintiffs have failed to show that Dr. LeGoff is not available to testify at trial.

- 6 -

to profound range of mental retardation, as opposed to the moderate range)." See December 13, 2005 Report of Daniel LeGoff at p. 2, a true and correct copy of which is attached as Exhibit "B". The jury will not know whether the above was a function of Bryan's autism, his mental retardation, or any alleged lack of consistent educational services in Hawaii.  This is beyond the understanding of a lay person, and is beyond the expertise of both Ms. Lukens and Mr. Von Elsner.

- Dr. LeGoff opines that "[r]esidential services for Bryan, if he were functioning in the moderate range of mental retardation and did not require more intensive staffing and supervision, could be provided at the group home level." See Exhibit "B" at p. 4.  Dr. LeGoff does not explain whether Bryan's mental retardation would, in and of itself, require Bryan be placed in an institution. Dr. LeGoff does not address what level of mental retardation requires instutionalization or the level of institutionalization required.  Such opinions are beyond the expertise of both Ms. Lukens and Mr. Von Elsner.

- Dr. LeGoff opines as to the cost of services that Bryan now requires compared to the costs of services he would have required had he received an appropriate education in Hawaii.  See Exhibit "B" at p. 4.  Dr. LeGoff's report, however, does not explain or clarify the bases for his cost estimates for Bryan had he received an appropriate education.

- Dr. LeGoff opines that "[i]f Bryan had received appropriate educational services in Hawaii and had not regressed in terms of his behavioral issues and communication and self-care skills, he likely would have been able to receive much less intensive services, including being able to attend a less-restrictive educational setting, and being eligible for group home placement." See Exhibit "B" at p. 5.  Dr. LeGoff's report, however, does not take into account Bryan's behaviors in California.  However, Plaintiff Stanley Bond has testified that Bryan's behaviors are under control.  The DOE should be afforded the opportunity to cross-examine Dr. LeGoff regarding this apparent conflict.

- Dr. LeGoff's June 17, 2005 and June 1, 2007 reports include neurodevelopmental assessment test results of Bryan. True and correct copies of which are attached as Exhibits "A" and "C". Such assessments are beyond the understanding of lay persons, including Ms. Lukens and Mr. Von Elsner.

- Dr. LeGoff attributes a significant portion of Bryan's future needs based on his behavioral issues. Plaintiff Stanley Bond, however, testified in his deposition transcript, and has testified at trial, that Bryan is again a model student and his behaviors are under control. See Transcript of the Deposition of Stanley Bond, dated December 10, 2007 at p. 33:20-25, a true and correct copy of which is attached as Exhibit "D". The DOE should be afforded the opportunity to cross-examine Dr. LeGoff as to this issue. Further, the jury should be afforded the opportunity to consider how this affects Dr. LeGoff's cost estimates. Indeed, with Bryan's behaviors now under control, the jury should be afforded the opportunity to consider whether Dr. LeGoff's recommendations of future care are appropriate, or even necessary.

- Dr. LeGoff does not render an opinion in his expert reports regarding the "window of opportunity." In his deposition, however, Dr. LeGoff opines that the "window of opportunity" is a critical range of time for the education of children with autism. See Transcript of the Deposition of Daniel LeGoff ("LeGoff Deposition") at pp. 83:13-84:22, a true and correct copy of which is attached as Exhibit "E". This issue of the "window of opportunity" is a point of contention in this case. The DOE would be unduly prejudiced if it were not afforded the opportunity to cross-examine Dr. LeGoff on this issue.

- In his deposition, Dr. LeGoff testified that he had discussions with Betty Jo Freeman, Ph.D. regarding Bryan's current functioning and his education program in California. Both Dr. LeGoff and Dr. Freeman were not particularly happy with the level of coordination of services in California. For example, they were concerned about the difficulty in getting qualified staff who were fluent in American Sign Language as well

as the gaps in services due to staffing changes. <u>See</u> Exhibit "E" at pp. 101:1-103:17. Dr. LeGoff's expert reports, however, do not take these concerns into account.

- In his deposition, Dr. LeGoff testified that Bryan's education program in California in 2005 was similar to the situation in Hawaii in terms of inconsistencies in the implementation of his educational program. <u>See</u> Exhibit "E" at p. 220:11-23. Dr. LeGoff's reports do not state or explain the impact this would have in the level or degree of institutionalization. If Ms. Lukens and Mr. Von Elsner are allowed to testify, the DOE should be afforded the opportunity to cross-examine Dr. LeGoff as to what extent did the inconsistences in California affect Bryan in terms of his future care.

- In his deposition, Dr. LeGoff discussed the inability of Bryan's parents to provide an adequate level of supervision and intervention. Dr. LeGoff testified that Bryan's behaviors were "fairly out of control" in 2005 and that Bryan's parents were overly permissive. Dr. LeGoff's deposition testimony, however, is contrary to the trial and deposition testimony of Plaintiff Stanley Bond that Bryan's behaviors are under control in California. <u>See</u> Exhibit "E" at pp. 231:6-233:1. If Ms. Lukens and Mr. Von Elsner are allowed to testify, the DOE should be afforded the opportunity to cross-examine Dr. LeGoff as to how this impacts his recommendations for Bryan's future care.

- In his deposition, Dr. LeGoff testified that Bryan needs a significant increase in the intensity of his current educational services and program in California. <u>See</u> Exhibit "E" at pp. 233:2-234:7. If Ms. Lukens and Mr. Von Elsner are allowed to testify, the DOE should be afforded the opportunity to cross-examine Dr. LeGoff as to his knowledge of whether a significant increase in the intensity of Bryan's current educational services and program in California has actually occurred. The DOE should also be afforded the opportunity to cross-examine Dr. LeGoff as to how such a significant increase, regardless of whether it occurred or not, impacts his opinions as to Bryan's future care.

- In his deposition, Dr. LeGoff testified that it was his opinion that Bryan would be placed in a residential program and institutional setting even if he had received all the educational services and interventions in Hawaii. <u>See</u> Exhibit "E" at p. 268:1-7. This is not stated or explained in Dr. LeGoff's reports. The DOE should be afforded the opportunity to highlight this fact to the jury, especially considering the fact that Ms. Lukens renders an opinion as to the costs of such a residential setting. Indeed, if the DOE posed this question to Ms. Lukens as to whether Bryan would have needed to be placed in a residential setting regardless of the educational services Bryan received in Hawaii, Ms. Lukens would not be qualified to render such an opinion.

As a result, the expert reports of Dr. LeGoff are not sufficient replacements to his live testimony. Accordingly, to the extent that Plaintiffs argue that the expert reports of Dr. LeGoff obviate the need to have Dr. LeGoff testify at trial, and, thus, Ms. Lukens and Mr. Von Elsner should be permitted to testify at trial, such arguments are meritless.

DATED: Honolulu, Hawaii, September 17, 2008.

/s/GREGG M. USHIRODA
MELVYN M. MIYAGI
GREGG M. USHIRODA
LEIGHTON M. HARA
ROSS T. SHINYAMA

KENNETH S. ROBBINS
JOHN-ANDERSON L. MEYER
SERGIO RUFO

GARY K.H. KAM
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendant

- 10 -